**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| In re: | Case No. 22-_60043_ |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER: (I) APPROVING DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES; (II) APPROVING ADEQUATE ASSURANCE PROCEDURES; PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE; AND (IV) GRANTING RELATED RELIEF**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

RELIEF IS REQUESTED NOT LATER THAN AUGUST 3, 2022.

The above-captioned Debtor and Debtor in Possession (collectively, the "Debtor" or "FSS") states the following in support of this motion (the "Motion"):[1]

## RELIEF REQUESTED

1. By this Motion, the Debtor seeks entry of an order, substantially in the form attached hereto (the "Order"): (i) approving the Debtor's proposed adequate assurance of payment for future utility services; (ii) approving the Debtor's proposed procedures for resolving additional adequate assurance requests; (iii) prohibiting utility providers from altering, refusing or discontinuing service; and (iv) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtor confirms its consent to the entry of a final order.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

**A.    Case Background**

6. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor is operating its

---

[1] A description of the Debtor and its business, and the facts and circumstances supporting this Motion, are set forth in the Declaration of Marc Schwartz, Chief Restructuring Officer of the Debtor in Support of Chapter 11 Petition and First Day Pleadings (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

businesses and managing its assets as Debtor in possession pursuant to Bankruptcy Code sections 1182(2). No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no official committee have been appointed or designated.

**B.     FSS' Background[2]**

7.     Alex Jones began his career in the broadcasting industry fresh out of high school. Austin Public Access provided the forum for Alex's first broadcast. In 1996 he transitioned to talk radio. After leaving talk radio in 1999, he started broadcasting over the internet with a handful of employees. Revenue was largely generated from advertising and the sale of books, T-shirts, and videos.

8.     What began as a family business continued to expand and in 2007 FSS was formed. The business continued to grow, adding a full-blown studio, and employing over 60 people. By 2013, FSS started selling dietary supplements to its growing listener base.

9.     Despite the rapid growth in the scale, diversity of operations and revenue, FSS remained a family run business and did not retain professional management or install professional management systems.

10.    FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, which airs via the Genesis Communications Network on over 100 radio stations across the United States and via the internet through websites including Infowars.com.

---

[2] Additional factual background and information regarding the Debtor and its operations is set forth in the *Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions*

11. On its Infowars.com[3] website today, FSS makes available to customers dietary supplements, ranging from Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts and other products Jones advertises during his radio talk show. The vast majority of FSS revenues comes from sales of dietary supplements which have traditionally been supplied by PQPR Holdings Limited, LLC ("PQPR"), an affiliated entity.

12. As of July 1, 2022, FSS employed a workforce of 58 individuals, the majority of whom had direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios. This is the building where Jones produces his shows, including The Alex Jones Show. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a building where warehousing and product sales fulfillment takes place. All of the studios and offices are in leased space.

13. FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Approximately 80% of FSS' revenue is derived from product sales. Of the remainder, 11% is historically from advertising and the balance from a variety of sources.

14. Through its online sales channel, FSS currently sells (i) dietary supplements purchased by PQPR, (ii) dietary supplements purchased by FSS, and (i) books, DVD's, t-shirts, and other merchandise purchased by FSS. The allocation of proceeds from the sale of products after credit card processing charges varies depending upon which of the above categories the product falls under. PQPR receives a fee for of ten percent of the net proceeds (the proceeds from

---

[3] FSS licenses the Inforwars.com domain and trademark for InfoWars from InfoW, LLC.

the sale of the products less processing charges) as a royalty for introducing the supplement and vitamin market to FSS.

15. Due to the content of Alex Jones' shows, Jones and FSS have faced an all-out ban of Infowars from mainstream online spaces. Shunning from financial institutions and banning Jones and FSS from major tech companies began in 2018. Today, Facebook, Twitter, YouTube, Spotify, PayPal, and Apple have banned Infowars and Jones. Since being deplatformed by most mainstream commercial entities in 2018, FSS has had to operate in a harsh and unfriendly commercial environment.

16. FSS purchased to sell on its website two categories of products: (a) dietary supplements ("Supplements"), and (b) books, DVDs, t-shirts, and other merchandise ("Non-Supplements"). FSS relied on PQPR as no other vendor would supply the Supplements for Jones to advertise on his shows. PQPR ordered and paid for Supplements, which it marked up, and then sold to FSS. Jones would publicize the Supplements on his show and FSS and/or PQPR fulfilled the orders to ship to its customers.

17. As to Non-Supplements, FSS purchased the products, sold them, and fulfilled the sale through its own employees from its warehouse in Austin. Depending on whether a Supplement or Non-Supplement was sold, FSS and PQPR split the cost of the sale on an agreed to formula.

18. Since 2018 FSS has had difficulty finding third parties willing and able to fulfill product sales. In the past, both FSS and PQPR attempted to provide fulfillment services for product sales. Recently, FSS employed a fulfillment company to take over this function. All former FSS employees responsible for fulfillment have been hired by this company. The fulfillment company charges FSS a flat fee per order regardless of size. Historically, fulfillment

has cost an average of ten percent of sales, without considering payroll, the new agreement is estimated to cost sixteen percent of sales.

19. The revenues generated from the Debtor's ongoing operations will form the basis of the subchapter v plan of reorganization the Debtor will be proposing in this case.

## DEBTOR'S UTILITY PROVIDERS

20. In connection with the operation of its businesses and management of its properties, the Debtor obtains electricity, natural gas, telecommunications, internet, water, and other similar services (collectively, the "Utility Services") from a number of utility companies or brokers (collectively, the "Utility Providers"). A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors on the Petition Date (the "Utility Services List") is attached hereto as Exhibit A.[4] The relief requested herein is with respect to all Utility Providers providing Utility Services to the Debtors.

21. Uninterrupted Utility Services are essential to the Debtor's ongoing business operations, and hence the overall success of the chapter 11 case. The Debtor's business operations include multiple broadcast studios with significant and sensitive video, computer, electronic equipment at its facilities which require it to maintain uninterrupted power, electricity and network services, among other utilities. The Debtor's operations also require electricity for lighting, heating and air conditioning, which are critical to maintaining the appropriate environment at its media studio center. In addition, the Debtor occupies corporate offices in the management of its businesses. These offices require electricity, telecommunications and other similar services in order to operate. Should any Utility Provider refuse or discontinue service,

---

[4] The inclusion of any entity on, or the omission of any entity from, the Utility Services List is not an admission by the Debtor that such entity is, or is not, a utility within the meaning of Bankruptcy Code section 366, and the Debtor reserves all rights with respect to any such determination.

6

even for a brief period, the Debtor's business operations would be disrupted, jeopardizing the Debtor's ability to manage its reorganization efforts and significantly lowering the value of the Debtor's assets and estates. Accordingly, it is essential that the Utility Services continue uninterrupted during the chapter 11 case.

22. To the best of the Debtor's knowledge, as of July 29, 2022, there are no defaults or arrearages with respect to the undisputed invoices for prepetition Utility Services.. To the best of the Debtor's knowledge, the Debtor does not have any existing prepayments with respect to any Utility Providers.

## PROPOSED ADEQUATE ASSURANCE

*Adequate Assurance Deposit*

23. The Debtor intends to pay post-petition obligations owed to the Utility Providers in a timely manner. Cash held by the Debtor and cash generated in the ordinary course of business will provide sufficient liquidity to pay the Debtor's Utility Service obligations in accordance with its prepetition practice.

24. The Debtor submits that the Debtor's ability to pay for future utility services with cash on hand in accordance with its prepetition practices (the "Proposed Adequate Assurance") constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of Bankruptcy Code section 366.

*Adequate Assurance Procedures*

25. Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each an "Additional Assurance Request") pursuant to the adequate assurance procedures set forth in the proposed Order (the "Adequate Assurance Procedures").

26. The proposed Adequate Assurance Procedures are as follows:

Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve an Additional Assurance Request on the Notice Parties (as defined in the Order). An Additional Assurance Request may be made at any time.

Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in its business judgment, subject to the terms of any cash collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in this chapter 11 case and the U.S. Trustee upon request.

If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "<u>Determination Hearing</u>"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

In addition, if an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance pursuant to the Adequate Assurance Procedures.

27. The Adequate Assurance Procedures sets forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtor to continue its business operations uninterrupted. More specifically, the Adequate Assurance Procedures permits a Utility Provider to object to the

Proposed Adequate Assurance by filing and serving an Additional Assurance Request upon certain notice parties. The Debtor, in its discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtor may seek Court resolution of the Additional Assurance Request. Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366; and (ii) forbidden to discontinue, alter or refuse services to, or discriminate against, the Debtor on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

*Subsequent Modifications*

28. To the extent the Debtor discontinues any Utility Services, the Debtor may seek authority in its sole discretion to amend the Utility Services List to remove any Utility Provider. To the extent the Debtor identifies additional Utility Providers, the Debtor will serve on such Utility Provider, within two (2) business days, a copy of the entered Order regarding Utility Services, including the Adequate Assurance Procedures, and provide such Utility Provider a time period of 14 days to object to the inclusion of such Utility Provider on the Utility Services List. If an objection is received, the Debtor shall request a hearing before this Court.

29. The Debtor request that the terms of the Order and the Adequate Assurance Procedures apply to any subsequently identified Utility Provider in the event that no objection is filed by such Utility Provider.

**BASIS FOR RELIEF**

30. Bankruptcy Code section 366 protects a debtor against the immediate termination or alteration of utility services following the commencement of these chapter 11 cases. See 11

U.S.C. § 366. Bankruptcy Code section 366(c) requires the debtor to provide "adequate assurance" of payment for post-petition services in a form "satisfactory" to the utility company within 30 days of the petition date, or the utility company may alter, refuse or discontinue service. 11 U.S.C. § 366(c)(2). Bankruptcy Code section 366(c)(1)(A) provides a non-exhaustive list of examples for what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1)(A). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g., In re Great Atl. & Pac. Tea Co.,* 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment but are not required to give the equivalent of a guaranty of payment in full"); *In re Tekoil & Gas Corp.*, No. 08-80270G3-11, 2008 WL 2928555, at *2 n.1 (Bankr. S.D. Tex. July 21, 2008) ("[A] debtor may continue to pay a utility, and a utility may continue to provide service, in the absence of an injunction preventing the utility from terminating service.") (citing *In re Viking Offshore (USA) Inc.,* No. 08-31219-H3-11, 2008 WL 782449, at *3 n.3 (Bankr. S.D. Tex. Mar. 20, 2008)).

31. When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See, e.g., In re Keydata Corp.,* 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha,* 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.,* 280 B.R. 63, 81–82 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co. v. Caldor, Inc.-N.Y.,* 117 F.3d 646, 650 (2d Cir. 1997) (internal quotations omitted)

(citing *In re Penn Jersey Corp.,* 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) (abrogated on other grounds by *In re LEASE-A-FLEET, INC.,* 131 B.R. 945 (Bankr. E.D. Pa. 1991)).

33. Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Debtor's ongoing ability to meet obligations as they come due in the ordinary course provides assurance of the Debtor's payment of its future obligations. Moreover, termination of the Utility Services could result in the Debtor's inability to operate its business to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.,* 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the Debtor "would have to cease operations" and that Bankruptcy Code section 366 "was intended to limit the leverage held by utility companies, not increase it").

33. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under Bankruptcy Code section 366. *See, e.g., In re Circuit City Stores Inc.,* No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of § 366 of the Bankruptcy Code allows the court to adopt the [p]rocedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtor "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in its efforts to reorganize." *Id*. Here, notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under Bankruptcy Code sections 366(b) and 366(c)(2) are wholly preserved under the Adequate Assurance Procedures. *See id*. at *5–6. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id*. at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for

11

adequate assurance that would force the Debtor to pay under the threat of losing critical Utility Services. *See id*. at *5

34. The Adequate Assurance Procedures are reasonable and in accord with the purposes of Bankruptcy Code section 366, and thus the Debtor requests that the Court grant the relief requested herein. Further, the Court possesses the power, under Bankruptcy Code section 105(a), to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under Bankruptcy Code sections 366 and 105(a) and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

35. Based on the foregoing, the Debtor submits that the relief requested herein is necessary and appropriate, is in the best interest of the Debtor's estate and should be granted in all respects.

## EMERGENCY CONSIDERATION

36. The Debtor requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case when that relief is necessary to avoid immediate and irreparable harm to the estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtor's operations, and any delay in granting the relief requested could hinder its operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of the chapter 11 case could severely disrupt the Debtor's operations at this critical juncture and imperil the Debtor's restructuring. Accordingly, the Debtor requests that the Court approve the relief requested in this Motion on an emergency basis.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

37. To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

38. To the extent that any contract or agreement in connection with any of the Utility Providers is deemed an executory contract within the meaning of Bankruptcy Code section 365, the Debtor does not at this time intend to assume such contract or agreement. As such, the Debtor requests that the Court's authorization regarding the Debtor's funding of the Adequate Assurance Deposit and any action taken by the Debtor in furtherance of the Order shall not be deemed to constitute an assumption of any contract or agreement pursuant to Bankruptcy Code section 365. The Debtor is currently in the process of reviewing all of its contracts and agreements and reserve all of its rights with respect thereto.

39. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's, or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on

property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's or any other party in interest's rights to subsequently dispute such claim.

## NOTICE

40.     The Debtor will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the entities listed as holding the 20 largest unsecured claims against the Debtor; (c) counsel for PQPR Holdings, Limited, LLC; (d) the Utility Providers, and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no further notice is necessary.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtor requests entry of an order, substantially in the form of the Order filed with this Motion, granting the relief requested herein and granting such other relief as the Court deems just, proper and equitable.

Respectfully submitted this 29th day of July, 2022.

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

## CERTIFICATE OF ACCURACY

I hereby certify that the forgoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Raymond W. Battaglia*

## CERTIFICATE OF SERVICE

      I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list, and (c) the following parties by email:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei, Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Cliff Walson
Walsont Bowlin Callendar, PLLC
4199 San Filipe Street, STE 300
Houston, TX 77027
cliff@wbctrial.com

Jon Maxwell Beatty
The Beatty Law Firm PC
1127 Eldridge Pkwy, Suite 300, #383
Houston, TX 77077
max@beattypc.com

                                            /s/ Raymond W. Battaglia

*U.S.P.S. Service List*

Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

2

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

Utility Providers

City of Austin
PO Box 2267
Austin, TX 78783

DirectTV
PO Box 5006
Carol Stream, IL 60197

Grande Communications
PO Box 679367
Dallas, TX 75267

Lumen/Level 3 Communications
PO Box 910182
Denver, CO 80291-0182

Spectrum Business/Spectrum Enterprise
PO Box 60074
City of Industry, CA 91716

Texas Gas Service
PO Box 219913
Kansas City, MO 64121

Verizon
PO Box 660108
Dallas, TX 75266

Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

Parties Filing Notice of Appearance

N/A

Subchapter V Trustee

N/A (Not Yet Appointed)

U.S. Trustee

Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

Additional Notice Parties

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604