IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**DEBTOR'S RESPONSE TO EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Free Speech Systems LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby files this response to the *Emergency Motion for Relief from the Automatic Stay* [ECF No. 15] (the "Lift Stay Motion") filed by David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Connecticut Plaintiffs") as follows:

**PRELIMINARY STATEMENT**

1.       The automatic stay is one of the central features of the U.S. bankruptcy system. It protects the debtor's assets, provides temporary relief from creditors, and enables equity of distribution by preventing a race to the courthouse. *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985).  The purpose of the automatic stay is to give an ailing business "a breathing spell and time to work constructively with its creditors" without the financial and operational pressure from ongoing or new litigation. H.R. Rep. 95-595, 174, 1978 U.S.C.C.A.N. 5963, 6135.

2.       The automatic stay goes hand-in-hand with the traditional bankruptcy function embodied in the claims allowance process whereby claims against a debtor's bankruptcy estate are

adjudicated through summary proceedings to provide for the orderly allocation of estate property. *See In re Brown*, 521 B.R. 205, 213 (Bankr. S.D. Tex. 2014). Together, the automatic stay and claims allowance process provide a mechanism to efficiently adjudicate claims against a debtor's estate without undue expense, thereby maximizing the value of the estate for all creditors and enabling equitable distribution of that value.

3.      Because of the importance of the automatic stay to the bankruptcy process, relief from the automatic stay should be granted to liquidate an unsecured claim only where the "balance of hardships" favors determining the claim in the creditors preferred forum. *See In re UTEX Communs. Corp.*, 457 B.R. 549, 570 (Bankr. W.D. Tex. 2011) (quoting *In re U.S. Brass Corp*., 173 B.R. 1000 (Bankr. E.D. Tex. 1994); *see also In re Kao*, No. 15-31193-H3-13, 2015 Bankr. LEXIS 4293, at *6 (Bankr. S.D. Tex. Dec. 21, 2015); *In re Young*, No. 06-80397-G3-7, 2006 Bankr. LEXIS 2934, at *6 (Bankr. S.D. Tex. Oct. 20, 2006).

4.      The balance of harms here favors maintaining the automatic stay with respect to the Connecticut Action while the Debtor continues its efforts to increase revenue. The costs of litigating the Connecticut Plaintiffs claims for the next 2 ½ months plus the revenue lost by Alex Jones being off the air would place at risk the improvements to the Debtor's financial condition in recent weeks and its ability to ultimately pay creditors under a plan of reorganization in this chapter 11 case.[1] On the other hand, the Connecticut Plaintiffs allege no pecuniary loss from the continuation of the automatic stay.[2]

---

[1] Prior to the Petition Date, the Debtor significantly reoriented its business and anticipates increasing revenues over the course of this chapter 11 case. Assuming these increased revenues materialize, the Debtor may be able to afford to go forward with a jury trial in the Connecticut Action after the early stages of this case.

[2] Despite the allegations in the Lift Stay Motion, the Connecticut Action has never been delayed by any actions of the Debtor or Alex Jones.

5.      The other factors pointed to by the Connecticut Plaintiffs also do not support lifting the automatic stay at this time. The applicable case law from this district indicates that a tort must involve physical injury to be a "personal injury tort" within the meaning of 28 U.S.C. § 157(b)(5). *See Hurtado v. Blackmore*, No. B-06-149, 2007 U.S. Dist. LEXIS 108019, at *5 (S.D. Tex. July 18, 2007). The assertions in the Lift Stay Motion that the Connecticut Plaintiffs' claims cannot be determined without a jury trial are not supported by applicable case law. If the Connecticut Plaintiff's desired jury trial is not available after the Debtor's financial condition stabilizes, the Connecticut Plaintiffs' claims can be determined through the claims allowance process at substantially less expense to the estate and the Connecticut Plaintiffs.

6.      Liquidation of the Connecticut Plaintiffs' claims through a jury trial may be appropriate later, but only if and when doing so does not jeopardize the Debtor's continued operations and ability to reorganize. The benefits that the Connecticut Plaintiffs assert that they would obtain from a jury trial (but not through the more efficient claims allowance process)—i.e., holding the Debtor accountable for its actions in the eyes of the public and finding personal closure for the harms done them, Lift Stay Motion ¶ 28—would still available if the stay remains in place until a jury trial is feasible. The Debtor therefore requests that the Court deny the Lift Stay Motion without prejudice.

## RESPONSE

### A.  Applicable Standards.

7.      Under Bankruptcy Code § 362(d)(1), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause." The party seeking relief from the automatic stay must first make an initial showing of "cause." *In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D.

Tex. 2017). Only after the movant establishes cause does the burden shift to the Debtor on all other issues, including retaining the automatic stay in place notwithstanding the cause shown. *Id.*

8.    Courts in this district have employed the twelve-factor analysis originating from *In re Curtis*, 40 B.R. 795, 804 (Bankr. D. Utah 1984), to guide their decision on motions for relief from stay to continue prepetition litigation. These twelve (12) factors are:

> 1) whether the relief will result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves debtor as a fiduciary; 4) whether a specialized tribunal has been established to hear the particular cause of action; 5) whether the debtor's insurer has assumed full responsibility; 6) whether the action primarily involves third parties; 7) whether litigation in the other forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success would result in a judicial lien avoidable by the debtor; 10) interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the proceedings have progressed to the point that parties are ready for trial; and 12) impact of the stay on the parties and the balance of harm.

*In re Mosher*, 578 B.R. at 773 (quoting *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014)). Not every factor is relevant to each case. *See In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. at 112.

9.    In the context of a creditor seeking relief from stay to liquidate an unsecured claim in the creditor's preferred forum, relief from stay should be granted only where the "balance of hardships" favors such relief. *See In re UTEX Communs. Corp.*, 457 B.R. 549, 570 (Bankr. W.D. Tex. 2011) (quoting *In re U.S. Brass Corp.*, 173 B.R. 1000 (Bankr. E.D. Tex. 1994); *see also In re Kao*, No. 15-31193-H3-13, 2015 Bankr. LEXIS 4293, at *6 (Bankr. S.D. Tex. Dec. 21, 2015); *In re Young*, No. 06-80397-G3-7, 2006 Bankr. LEXIS 2934, at *6 (Bankr. S.D. Tex. Oct. 20, 2006). Where relief from the stay would harm the Debtor more than it would benefit the moving creditors, it should be denied.

4

**B. The Balance of Harms Favors Leaving the Automatic Stay in Place with respect to the Connecticut Litigation.**

10.     The Debtor cannot presently afford to litigate the Connecticut Action through a jury trial at this time without significant disruptions to its ability to operate and reorganize.[3] The Debtor estimates that it would incur legal fees of approximately $550,000 to its trial counsel to litigate the Connecticut Action to judgment, plus expenses of approximately $50,000. Even more damaging to the Debtor's estate is that Alex Jones would not be able to host his show for the Debtor.[4] The Debtor has historically experienced a significant decrease in revenue on days when Jones is not hosting his program. The Debtor believes that the decrease would be more pronounced if Jones was required to have an extended absence over the course of the Connecticut trial and the Debtor lacked the ability to set up an alternative studio in Connecticut.

11.     The Debtor would also face difficulties in securing representation in the Connecticut Action if the automatic stay was lifted to allow the Connecticut Action to proceed. The Debtor's state court trial counsel—Pattis & Smith Law Firm and The Reynal Law Firm— have not been retained as special counsel for the Debtor. And the Connecticut Superior Court judge overseeing the Connecticut Action has initiated disciplinary proceedings against the Debtor's prepetition counsel for the possible improper disclosure of confidential discovery material and it

---

[3] The Debtor undertook efforts prior to the Petition Date that may have enabled the Debtor to afford to continue to litigate the Connecticut Action but were ultimately unsuccessful. On May 27, 2022, the Debtor and Jones filed the Defendants' Partially Unopposed Motion to Correct/Modify "Order on Attorney's Fees for Plaintiffs' Motion for Sanctions Regarding Corporate Deposition [SIC]" in the Travis County District Court (the "Motion to Modify"), a true and correct copy of which is attached hereto as Exhibit A. In the Motion to Modify, the Debtor sought an order of the Texas state deferring the payment deadline of sanctions ordered in the Texas litigation because immediate payment would burden the Debtor's access to the Courts. *See* Motion to Modify at p. 3-4. The Travis County court denied the requested relief on June 27, 2022, as reflected in the *Order on Defendants' Motions to Modify and/or Clarify*, a true and correct copy of which is attached as Exhibit B hereto. Sanctions of $1.1 million were paid by the Debtor to counsel for the Texas plaintiffs the week prior to the Petition Date, leaving the Debtor with insufficient funds to continue the Connecticut Action at this time.

[4] This issue was not present in the Heslin and Lewis matter because that trial was proceeding in Austin, Texas, where the Debtor maintains its studio facilities.

is not currently clear whether the Debtor's prepetition counsel would be available to be retained by the Debtor.[5] Finding replacement counsel—if possible given the tortured history of the Connecticut Action—would likely cost *substantially* more than having the Debtor's prepetition state court attorneys litigate the matter.

12.     The Debtor would also have to overcome procedural hurdles to obtain Connecticut state court counsel. The Connecticut Plaintiffs vigorously opposed the retention of any professionals in the InfoW, LLC cases. Emergency retention of state court counsel here would likely be opposed no matter how necessary. The Debtor would also need to obtain use of cash collateral for the payment of state court counsel fees and expenses. Simply obtaining interim use of cash collateral so that the Debtor could ship increased orders garnered objections and required a four-hour hearing even though the Texas and Connecticut Plaintiffs' ostensible position is that the asserted lien on cash collateral is invalid (which would mean that the Debtor's cash is not collateral requiring an order to use in the ordinary course). The same kind of fight would ensue if the Debtor was required to obtain counsel to litigate the Connecticut Action in state court, at significant cost to the estate and distracting the Debtor from moving this case forward.

13.     The Connecticut Plaintiffs, on the other hand, do not allege that they would face *any* pecuniary harm from the continuation of the automatic stay. Although they assert that "substantial costs for litigation have already been borne," Lift Stay Motion ¶ 27, and that the "[Connecticut Plaintiffs] and their counsel have expended considerable time and expense preparing for the August 2 *voir dire* and September 6 trial[,]" Lift Stay Motion ¶ 28, continuation of the automatic stay until the Debtor can afford to litigate the Connecticut Action will not destroy

---

[5] Copies of the Connecticut Court's show cause order and the related transcript of the August 10, 2022, hearing are attached as <u>Exhibit C</u> and <u>Exhibit D</u>, respectively.

the value of the work already done, whether the claims are determined through a jury trial at a later date or through the claims allowance process.

14.     The Connecticut Plaintiffs will have the same opportunity to obtain the non-pecuniary benefits that they hope to achieve through a jury trial if the stay remains in effect until the Debtor's business is stabilized. The Connecticut Plaintiffs assert that they "look to a jury trial to hold the Jones Defendants accountable for their actions in the eyes of the public; to find personal closure for the harms done to them, to the extent possible; and to liquidate their damages." Lift Stay Motion ¶ 28. But the Lift Stay Motion is silent about any material harm by the continuation of the automatic stay for the period necessary for the Debtor to realize the benefits of the business and operational changes it initiated prior to the Petition Date.

15.     Further, the Connecticut Plaintiffs' non-pecuniary benefits and their costs in preparing for the litigation will be realized even if the automatic stay remains in place and their claims are liquidated through the claims allowance process. The Connecticut Superior Court is continuing the litigation of the claims against only Alex Jones individually in a bifurcated proceeding.[6] Jury selection has begun and would need to start from scratch to go forward against the Debtor, which has not participated in *voir dire* of the jury to this point. Lifting the automatic stay to allow a consolidated proceeding would *delay* the vindication the Connecticut Plaintiffs seek through a jury trial.[7]

---

[6] Although the Debtor remains a party to the litigation, the Connecticut Superior Court is proceeding only as to Alex Jones as reflected in the transcript of the August 2, 2022, hearing before the Connecticut Superior Court attached hereto as Exhibit E.

[7] Recognizing the issues that could result from proceeding in the manner decided by the Connecticut Superior Court, the Debtor removed the Connecticut Action; however, the action was remanded by the U.S. Bankruptcy Court for the District of Connecticut.

**C. The Automatic Stay Furthers Judicial Economy.**

16.    The U.S. District Court for the Southern District of Texas has held that only torts that results in a physical injury are "personal injury tort" claims for purposes of 28 U.S.C. § 157(b)(5). *Hurtado v. Blackmore*, No. B-06-149, 2007 U.S. Dist. LEXIS 108019, at *5 (S.D. Tex. July 18, 2007) ("[T]o hold that a tort with no resulting physical injury constitutes a 'personal injury tort' under  § 157 'would contradict the statute's text, Congressional intent, and the majority of relevant judicial decisions.'"); *accord Belcher v. Doe*, Civil Action No. SA-06-CA-1068-WWJ, 2008 U.S. Dist. LEXIS 143761, at *8 (W.D. Tex. Mar. 11, 2008) ("[T]his Court will adopt the narrow understanding of 'personal injury tort.'"). The Connecticut Plaintiffs' claims could therefore be liquidated in the bankruptcy court and such resolution would promote judicial economy by avoiding the lengthy *voir dire* process required in Connecticut courts. *See* Lift Stay Motion ¶ 18. Judicial economy does not weigh in favor of relief from the stay.

**D. Comity is Not a Ground for Granting Relief from the Automatic Stay.**

17.    The Lift Stay Motion does not reference any authority that supports the proposition that comity is a factor that applies to this Court's decision whether to grant relief from the automatic stay or argument on how it should be applied.

18.    The sole case cited by the Connecticut Plaintiffs—*In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106 (Bankr. S.D. Tex. 2014)—involved a request to lift the stay to proceed on a motion for criminal contempt against a non-debtor equityholder. *Id.* at 108. The court held in the alternative that (a) the automatic stay did not apply to the non-debtor under the facts at issue in that matter; (b) if the automatic stay did apply to the non-debtor, the criminal contempt proceeding would not be stayed pursuant to operation of Bankruptcy Code § 362(b)(1); and (c) if the automatic stay did apply to the non-debtor and Bankruptcy Code § 362(b)(1) did not except criminal

contempt proceedings from the automatic stay, the court would grant relief from stay. *Id.* at 109. The word "comity" does not appear anywhere in the opinion.

19.    The facts of *In re Xenon Anesthesia of Texas, PLLC* and the rationale of that decision are completely different from those at issue here. The Connecticut Plaintiffs are seeking relief from the stay to proceed to a jury trial, in a civil matter, against the Debtor. The decision is inapposite.

## ADMISSIONS AND DENIALS

The Debtor responds to the factual allegations in the Lift Stay Motion pursuant to Local Bankruptcy Rule 4001-1(a)(10) and Rule 8 of the Federal Rules of Civil Procedure, for purposes of the contested matter initiated by the Lift Stay Motion only, as follows:

1.    The Debtor admits that (a) the factual allegations of the first sentence of Paragraph 1 of the Lift Stay Motion; (b) Alex Jones or other individuals on programs that were broadcast by the Debtor stated the words quoted in the third sentence of Paragraph 1 of the Lift Stay Motion as further detailed in Ex. A to the Lift Stay Motion, Complaint ¶ 185 (Jones); ¶ 223 (Jones); ¶¶ 140-41 (Wolfgang Halbig and Jones); ¶¶ 117, 273 (Jones), ¶¶ 138, 149, 223 (Jones); ¶ 295 (Steve Pieczenik); ¶¶ 112, 120-21, 185, 197 (Jones); (c) Alex Jones urged his audience to "investigate"; (d) as the result of a default judgement entered in the Connecticut Action the factual assertions in the Connecticut Plaintiffs respective complaints have been deemed admitted for purposes of the Connecticut Action; and (e) Exhibits A-C to the Lift Stay Motion are copies of the complaints in the three consolidated causes currently pending in Connecticut. The Debtor specifically denies that Mr. Jones knew his audience would respond to his urge to "investigate" by cyberstalking, harassing, and/or threatening the Connecticut Plaintiffs. By way of further answer, the Debtor asserts that (x) Mr. Jones has since retracted his statements and apologized to the Connecticut

Plaintiffs and (y) the Debtor disputes that the default judgement entered in the Connecticut Action was justified under the facts and applicable non-bankruptcy law.

2.      The Debtor admits that (a) it is the debtor and debtor-in-possession in this chapter 11 case; (b) the liability of the Debtor and Alex Jones has been established in the Connecticut Action as the result of the disciplinary default; and (c) in the abstract, wasting significant resources would be both imprudent and inefficient. The Debtor specifically denies that (w) Alex Jones or the Debtor have sought to use the bankruptcy process to delay trial in the Connecticut Action against Mr. Jones or the Debtor; (x) the Connecticut trial court entered orders against Jones and the Debtor as the result of egregious litigation tactics; (y) Mr. Jones or the Debtor have previously delayed the adjudication of the Connecticut Action; and (z) that the claims of the Connecticut Plaintiffs cannot be liquidated in this Court. By way of further answer, the Debtor asserts that (a) the chapter 11 cases of InfoW, LLC and its affiliated Debtors were not filed by the Debtor or Jones; (b) the Connecticut Action has not been previously delayed by action of the Debtor or Jones; and (c) the default ruling in the Connecticut Action was based on findings that Jones and the Debtor failed to provide required discovery, including the failure to produce subsidiary ledgers for InfoW, LLC, IWHealth, LLC, Prison Planet TV, LLC (which the Connecticut Plaintiffs now assert in the Lift Stay Motion had no operations), corrections to FSS trial ledgers by an expert retained by the Debtor, and purported failure to produce Google and social media analytics.

3.      The Debtor admits that (a) the Connecticut Action has been pending for approximately four years; (b) the Connecticut Action is pending in the Connecticut Superior Court in the Judicial District of Waterbury, Connecticut, before the Honorable Barbara Bellis; (c) Judge Bellis has presided over the Connecticut Action since its inception; and (d) jury selection was scheduled to commence on August 2, 2022, with evidence following on September 6, 2022, at the

time the Lift Stay Motion was filed. The Debtor specifically denies that (u) Mr. Jones or the Debtor previously used the bankruptcy process to evade or derail the trial in the Connecticut Action; (v) liquidating the Connecticut Plaintiffs' claims in state court is the better course; (w) InfoW, LLC, IWHealth, LLC, and Prison Planet TV, LLC were owned and controlled by Mr. Jones when those entities filed for chapter 11 bankruptcy; (x) it required "great efforts" of the Connecticut Plaintiffs to maintain the trial date in the Connecticut Action; (y) the efforts of the Connecticut Plaintiffs and Texas plaintiffs were the cause of the dismissal of the InfoW, LLC chapter 11 cases; and (z) emergency relief should be granted to allow adjudication of the Connecticut Action to proceed as to the Debtor.

4.      The Debtor admits that (a) the Debtor filed an emergency motion to modify the automatic stay with respect to the Heslin/Lewis matter pending in Texas state court that was filed at ECF No. 2; (b) the Heslin/Lewis trial was commenced on July 25, 2022, and was pending when the Lift Stay Motion was filed; (c) the Connecticut Plaintiff's seek emergency consideration of the Lift Stay Motion. The Debtor specifically denies that the factors that justified modification of the automatic stay with respect to the Heslin/Lewis matter also justify modification of the automatic stay with respect to the Connecticut Action.

5.      The Debtor admits that (a) the Court has the authority indicated in Paragraph 5 of the Lift Stay Motion under 11 U.S.C. § 105(a), Bankruptcy Rule 9006(c)(1), and Local Bankruptcy Rule 9013-1(i) and (b) the Connecticut Plaintiffs are seeking the relief indicated in Paragraph 5 of the Lift Stay Motion. The Debtor specifically denies that the relief requested in the Lift Stay Motion is justified for the reasons indicated in Paragraph 5 of the Lift Stay Motion or otherwise.

6.      The Debtor admits that (a) the Connecticut Plaintiffs assert claims against Alex Jones and the Debtor in the Connecticut Action for the alleged actions of Jones set out in Paragraph

6 of the Lift Stay Motion; (b) the Connecticut Plaintiffs did not loan Jones money or become the victim of some fraudulent scheme designed to take their money; and (c) the facts alleged in Paragraph 6 of the Lift Stay Motion are deemed admitted in the Connecticut Action to the extent they are contained in the relevant pleadings of the Connecticut Plaintiffs. The Debtor specifically denies that (a) the Connecticut Plaintiffs are not creditors in a sense to which the Court is accustomed; (b) Jones began asserting that the Sandy Hook Elementary School shooting was a hoax and that the Connecticut Plaintiffs where crisis actions almost immediately after the shooting on December 14, 2012; and (c) Jones made repeated falsehoods directly about the Connecticut Plaintiffs.

7.      The Debtor admits (a) Alex Jones or other individuals on programs that were broadcast by the Debtor stated the words quoted in the third sentence of Paragraph 7 of the Lift Stay Motion as further detailed in Ex. A, Complaint ¶ 185 (Jones); ¶ 223 (Jones); ¶¶ 140-41 (Wolfgang Halbig and Jones); ¶¶ 117, 273 (Jones), ¶¶ 138, 149, 223 (Jones); ¶ 295 (Dr. Steve Pieczenik); ¶¶ 112, 120-21, 185, 197 (Jones) and (b) Alex Jones urged his audience to "investigate." The Debtor specifically denies that (x) Jones targeted the Connecticut Plaintiffs through the Debtor or those killed in the Sandy Hook Shooting for more than five years and (y) Jones knew that his audience would respond to his urge to "investigate" by cyberstalking, harassing, and/or threatening the Connecticut Plaintiffs.

8.      The Debtor admits that (a) the Connecticut Action has proceeded in Connecticut Superior Court for approximately four years and is currently before that court; (b) the Connecticut Action was removed to the U.S. District Court for the District of Connecticut twice and remanded twice; (c) the Debtor and Jones were sanctioned in June 2019 on grounds that included violations of the state court's discovery orders; (d) Jones was sanctioned in June 2019 on the grounds that he

had threatened the Connecticut Plaintiffs' counsel and the sanction was affirmed by the Connecticut Supreme Court; (e) the Debtor and Jones moved to recuse the Connecticut Superior Court judge who presided over the case since its inception, which was denied; (f) the Connecticut state court entered a default against the Debtor and Jones on November 15, 2021, as indicated in the ruling reflected in Exhibit D to the Lift Stay Motion; and (g) the Connecticut state court ruled that the default would be binding. The Debtor specifically denies that (u) Jones and the Debtor resisted the authority of the Connecticut Superior Court by every conceivable means; (v) the Debtor was sanctioned for threatening counsel to the Connecticut Plaintiffs; (w) the denial of the existence of certain of the financial records was false; (x) the Debtor produced fabricated financial records; (y) the Debtor simply refused to produce analytics data concerning revenue and content distribution; and (z) the motion to recuse was filed because the Debtor or Jones knew a sanction of default was likely imminent.

9.      The Debtor admits that (a) the Debtor is wholly owned by Alex Jones; (b) the Debtor was previously completely subject to the control of Jones; and (c) default orders were entered in the Connecticut Action and certain lawsuits in Texas and the basis for such orders were findings that Jones and the Debtor engaged in discovery misconduct. The Debtor specifically denies that (x) the Debtor is currently completely subject to the control of Jones and (y) that the default orders were justified under applicable law and the facts.

10.     The Debtor admits the factual allegations contained in Paragraph 10 of the Lift Stay Motion.

11.     The Debtor admits that (a) InfoW, LLC, IWHealth, LLC, and Prison Planet TV LLC (the "Former Debtors") were previously defendants in the Connecticut Action and filed petitions for relief under chapter 11, subchapter v, of the Bankruptcy Code; and (b) the Former

Debtors filed notices of removal the Connecticut Action and the actions in Texas within hours after the Former Debtors' petitions were filed to remove the actions to the United States Bankruptcy Courts for Connecticut and Western District of Texas on the basis of "related to" jurisdiction and the Former Debtors' bankruptcy. The Debtor specifically denies that (x) the Former Debtors' bankruptcy cases were attempts by Jones to use the bankruptcy process to stall or evade the Connecticut Action or the actions in Texas; (y) the removals effectively stayed the Connecticut Action and actions in Texas in their entirety; and (z) the Former Debtors are best described as "shell companies."

12.    The Debtor admits that (a) the Former Debtors had no assets used in active operations by the Former Debtors and (b) the U.S. Trustee filed a motion to dismiss the Former Debtors' chapter 11 cases and made the arguments indicated in Paragraph 12 of the Lift Stay Motion. The Debtor specifically denies that (x) the Former Debtors held no assets that could be liquidated and (y) the Former Debtors had no businesses to reorganize or liquidate. By way of further answer, the Debtor asserts that (a) among the grounds for the default orders entered by the Connecticut and Texas courts were assertions by the Connecticut Plaintiffs and the plaintiff in the actions pending in Texas that the Former Debtors and the Debtor *did* engage in business and failed to provide financial information demonstrating that business and (b) the assertions that the Connecticut Plaintiffs make here, and previously made in the Former Debtors' chapter 11 cases, are inconsistent with their assertions in the Connecticut Action, which were adopted by the Connecticut state court in entering default judgment against the Debtor.

13.    The Debtor admits that (a) the Connecticut Plaintiffs promptly moved to dismiss the Former Debtors' chapter 11 cases on the grounds that the cases were filed in bad faith and (b) the Connecticut Plaintiffs dismissed their state-court causes of action against the Former Debtors

and the remaining proceeding was remanded to the Connecticut Superior Court from the U.S. Bankruptcy Court for the District of Connecticut. The Debtor lacks information sufficient to form a belief as to the truth of the allegation that obtaining immediate remand and retaining the trial date motivated the Connecticut Plaintiffs decision to dismiss their causes of action against the Former Debtors. The Debtor specifically denies that the briefing schedule on the Connecticut Plaintiffs' motion to dismiss would have resulted in delay that was likely to affect the Connecticut Plaintiff's state-court trial date.

14.     The Debtor admits the factual allegations in Paragraph 14 of the Lift Stay Motion.

15.     The Debtor admits the factual allegations in Paragraph 15 of the Lift Stay Motion.

16.     The Debtor admits the factual allegations in Paragraph 16 of the Lift Stay Motion.

17.     The Debtor admits the factual allegations in Paragraph 17 of the Lift Stay Motion.

18.     The Debtor admits the factual allegations in Paragraph 18 of the Lift Stay Motion.

19.     The Debtor admits the factual allegations in Paragraph 19 of the Lift Stay Motion.

20.     The Debtor admits the factual allegations in Paragraph 20 of the Lift Stay Motion.

21.     The Debtor specifically denies the factual allegations in Paragraph 21 of the Lift Stay Motion. By way of further answer, the Debtor asserts that (a) the Connecticut Action has not been delayed or disrupted by the bankruptcy system and (b) the Connecticut Plaintiffs' claims against the Debtor can be liquidated in this Court.

22.     The Debtor admits the factual allegations in Paragraph 22 of Lift Stay Motion.

23.     The Debtor admits that the Connecticut Plaintiffs seek the relief indicated in Paragraph 23 of the Lift Stay Motion. The Debtor specifically denies that the relief requested is necessary or warranted.

24.     The Debtor admits that the statement of law regarding the automatic stay in sentences one through five of Paragraph 24 of the Lift Stay is generally accurate, subject to the more specific description of the applicable law set forth in this Response. The Debtor specifically denies that (a) the timing of the Debtor's filing weighs heavily in favor of lifting the automatic stay; (b) there is any ongoing abuse of the judicial process by the Debtor; and (c) that any other unspecified factor in Paragraph 24 of the Lift Stay Motion weighs heavily in favor of lifting the automatic stay.

25.     The Debtor admits that certain bankruptcy courts, including at times courts in this district, have utilized the three-factor test indicated in Paragraph 25 of the Lift Stay Motion for determining when the automatic stay should be lifted. The Debtor specifically denies that (a) all three prongs of the test weigh in favor of the relief requested in the Lift Stay Motion and (b) that the three-factor test, as described in the Lift Stay Motion, is the appropriate test here. By way of further answer, the Debtor asserts that relief from stay is appropriate to liquidate an unsecured claim is appropriate *only* where the balance of hardships favors relief from the automatic stay, notwithstanding the other considerations. *See In re UTEX Communs. Corp.*, 457 B.R. 549, 570 (Bankr. W.D. Tex. 2011) (quoting *In re U.S. Brass Corp*., 173 B.R. 1000 (Bankr. E.D. Tex. 1994); *see also In re Kao*, No. 15-31193-H3-13, 2015 Bankr. LEXIS 4293, at *6 (Bankr. S.D. Tex. Dec. 21, 2015); *In re Young*, No. 06-80397-G3-7, 2006 Bankr. LEXIS 2934, at *6 (Bankr. S.D. Tex. Oct. 20, 2006).

26.     The Debtor admits that (a) the claims of the Connecticut Plaintiffs require adjudication for purposes of distribution in the bankruptcy case absent a consensual resolution; (b) except as modified by the Bankruptcy Code and related statutes, the Connecticut Plaintiffs have preserved their rights to a jury trial and the Connecticut Action was set for jury selection to

commence on August 2, 2022; (c) the Connecticut Plaintiffs' claims exist and must be resolved in some fashion; (d) the automatic stay currently prevents adjudication of the Connecticut Plaintiffs' claims against the Debtor; (e) the automatic stay was not intended to indefinitely prevent adjudication of claims, provided that such adjudication is generally through the claims allowance process in bankruptcy court; and (f) courts often grant creditors relief from the automatic stay so they can adjudicate their unliquidated claims against a debtor outside of bankruptcy court, particularly when the claims are already the subject of pending litigation. The Debtor specifically denies that (x) the Connecticut Plaintiffs are personal injury tort claimants excluded from liquidation in this chapter 11 case through the claims allowance process or estimation procedure, *see Hurtado v. Blackmore*, No. B-06-149, 2007 U.S. Dist. LEXIS 108019, at *5 (S.D. Tex. July 18, 2007) ("[T]o hold that a tort with no resulting physical injury constitutes a 'personal injury tort' under  § 157 'would contradict the statute's text, Congressional intent, and the majority of relevant judicial decisions.'"); *Belcher v. Doe*, Civil Action No. SA-06-CA-1068-WWJ, 2008 U.S. Dist. LEXIS 143761, at *8 (W.D. Tex. Mar. 11, 2008) ("[T]his Court will adopt the narrow understanding of "personal injury tort.") and (y) that the only issue before the Court is when the Connecticut Plaintiffs' Claims should move forward in a jury trial.

27.     The Debtor admits that (a) the Connecticut Plaintiffs' claims therein have been pending in the Connecticut Action for approximately four years; (b) the Connecticut Plaintiffs' claims have been substantially investigated; (c) the Debtor's liability has been established by default in the Connecticut Action with the only damages remaining to be decided, subject to the Debtor's appellate rights; and (d) the Debtor and Alex Jones have actively sought and received contributions from supporters defending the Connecticut Action and the actions pending in Texas. The Debtor lacks information sufficient to form a belief as to the truth of the allegations that (x)

the Connecticut Plaintiffs' claims have been prepared for trial and (y) the Connecticut Plaintiffs have already borne substantial costs for litigation. The Debtor specifically denies that (a) the Connecticut Plaintiffs' claims have been substantially litigated; (b) there will be no prejudice to the Debtor in adjudicating the Connecticut Plaintiffs' claims to final judgment in the Connecticut Action in state court; and (c) judicial efficiency and conservation of party resources are best served by permitting adjudication of the Connecticut Action in state court.

28.     The Debtor admits that (a) lifting of the Automatic Stay is necessary for the Connecticut Plaintiffs to adjudicate their claims against the Debtor in Connecticut state court; (b) the Connecticut Plaintiffs are the immediate family members of children and educators killed in the Sandy Hook Elementary School shooting on December 14, 2012, and one first responder to the shooting; (c) the for the purposes of pleading, that the Connecticut Plaintiffs desire a jury trial for the reasons indicated in sentence 5 of Paragraph 28 of the Lift Stay Motion; and (d) bankruptcy does not relieve the Debtor of the burden of ultimately liquidating existing claims in some forum. The Debtor lacks information sufficient to form a belief as to the truth of the allegations that (v) the harm of the Connecticut Plaintiffs have endured is inherent in the nature of their claims[8]; (w) the Connecticut Plaintiffs and their counsel have expended considerable time and expense preparing for the August 2 *voir dire* and September 6 trial date; (x) pretrial motions have been drafted based on the current record; (w) travel arrangements have been made and parties and expert and fact witnesses schedules have been coordinated; and (z) the Connecticut Plaintiffs have prepared themselves mentally for trial. The Debtor specifically denies that (a) that the Connecticut Plaintiffs claims cannot be adjudicated through the claims allowance process in the bankruptcy court without relief from the automatic stay; (b) the characterization of the Connecticut Plaintiffs

---

[8] The Debtor contends that the meaning of this allegation is ambiguous.

as victims of Jones's lies; (c) that the trial of the Connecticut Action has been delayed and frustrated by obstruction by the Debtor or Jones; (d) that failure to grant relief from the automatic stay will impose a great hardship on the Connecticut Plaintiffs; (e) that the hardship of the automatic stay on the Connecticut Plaintiffs outweighs the hardship that the Debtor would face if relief from stay was granted; (f) the procedural posture of the Connecticut Action limits the burden on the Debtor; and (g) the continuation of the automatic stay will increase the burden faced by the Debtor or the Connecticut Plaintiffs..

29.     The Debtor admits that (a) in the abstract, even a slight probability of success on the merits may be sufficient to satisfy the prong of the three-part test advanced by the Connecticut Plaintiffs regarding probability of success; (b) the Debtor's liability in the Connecticut Action has been established. The Debtor denies (x) that there will be no more litigation with respect to the Connecticut Action after damages are determined and (y) that the Connecticut Plaintiffs are assured to obtain damages. By way of further answer, the Debtor anticipates that it or Alex Jones would likely appeal any substantial final judgment from the Connecticut Action.

30.     The Debtor admits that (a) bankruptcy courts have considered the *Curtis* factors in connection with the motions for relief from the automatic stay; (b) the *Curtis* factors need not be assigned equal weight and only the relevant factors to the particular case need to be considered; and (c) courts have held that a decision to lift the automatic stay may be upheld on the ground of judicial economy alone under certain facts. By way of further answer, the Debtor asserts that the impact of the stay on the parties and the balance of harms is the most important factor.

31.     The Debtor denies the factual allegations in Paragraph 31 of the Lift Stay Motion. By way of further answer, in addition to the argument set out above, the Debtor asserts that (a) the Connecticut Action is estimated to require approximately 2½ months of continuous litigation; (b)

this chapter 11 case could continue without immediate liquidation of the Connecticut Plaintiffs' claims; (c) it has yet to be determined whether the Connecticut Plaintiffs' claims will be the largest creditors in this case; (d) continuing to litigate the Connecticut Action would increase the Debtor's financial distress as the result of the costs of such litigation and the interreference with the Debtor's operations.

32.      The Debtor admits that (a) the Connecticut Action is ready for jury trial in the state court of Connecticut on the limited issue of damages after *voir dire* is conducted with respect to the Debtor and (b) the Connecticut Plaintiffs are not seeking relief from the stay to pursue collection against the Debtor. The Debtor specifically denies that (x) proceeding with the Connecticut Action will not interfere with the Debtor's chapter 11 case; (y) denial of the relief requested in the Lift Stay Motion will result in substantial harm to the Connecticut Plaintiffs; and (z) lifting the automatic stay will not prejudice other creditors.

33.      The Debtor admits that (a) the Connecticut Plaintiffs have a right to a jury trial except as altered by the claims allowance process in this bankruptcy case and (b) all of the issues in the Connecticut Action are based on issues of state law. The Debtor specifically denies all remaining factual allegations in Paragraph 33 of the Lift Stay Motion.

34.      The Debtor admits that (a) the Connecticut trial judge has presided over the Connecticut Action for approximately four years; (b) the trial date for the Connecticut Action was scheduled approximately one year ago; and (c) for the purposes of pleading, the Connecticut court and the Connecticut Plaintiffs are prepared to proceed to trial. The Debtor specifically denies that (x) judicial economy favors lifting the stay; (y) allowing the Connecticut Action to proceed is the most efficient use of judicial resources; and (z) that the Debtor has trial counsel that is prepared to proceed to trial in Connecticut state court. By way of further answer, the Debtor asserts that (a)

20

the month-long jury selection process required if the Connecticut Plaintiffs' claims against the Debtor are determined in the Connecticut Trial court would increase the costs and judicial resources required compared to the claims allowance process in this Court and (b) the Debtor's prepetition trial counsel has not been retained in this chapter 11 case.

35.     The Debtor admits that (a) comity considerations should generally be taken into account by this Court; (b) the Debtor and Jones were sanctioned in the Connecticut Action; and (c) in *In re Xenon Anesthesia of Texas, PLLC*, the bankruptcy court, as an alternative holding, granted relief from stay to proceed with a criminal contempt action in state court. The Debtor specifically denies that (x) comity considerations favor granting relief from the automatic stay here; (y) the fact that the Connecticut Superior Court has issued sanctions previously is grounds for the relief sought in the Lift Stay Motion; and (z) the Court should lift the automatic stay to permit the Connecticut Plaintiffs to proceed against the Debtor in the Connecticut Action.

36.     The Debtor admits that the Connecticut Plaintiffs are requesting the relief indicated in Paragraph 36 of the Lift Stay Motion.

Pursuant to Rule 8(b)(3) of the Federal Rules of Civil Procedure, the Debtor generally denies all allegations except those specifically admitted or about which the Debtor has indicated it lacks knowledge or information sufficient to form a belief as to truth.

## STATEMENT OF EFFORTS TO REACH AGREEMENT

The Debtor, through its counsel, has engaged in discussions with counsel for the Connecticut Plaintiffs in an attempt to resolve the Lift Stay Motion and anticipates in engaging in further negotiation efforts prior to the hearing thereon. As of the date of this Response, however, no agreement has been reached.

## <u>CONCLUSION</u>

Based on the foregoing, the Debtor requests that the Court deny the Lift Stay Motion without prejudice. The prejudice to the Debtor significantly outweighs the prejudice to the Connecticut Plaintiffs. The relief requested by the Connecticut Plaintiffs is simply not justified at this time.

Dated: August 17, 2022

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*R. J. Shannon*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served (a) at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and (b) within one hour of filing, by email on the following parties:

Ryan Chapple
CAIN & SKARNULIS PLLC
303 Colorado Street Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Melissa Haselden
Subchapater V Trustee
700 Milam, Suite 1300
mhaselden@haseldenfarrow.com

Randy W. Williams
BYMAN & ASSOCIATES PLLC
7924 Broadway, Suite 104
Pearland, Texas 77581
rww@bymanlaw.com

Ha Nguyn
OFFICE OF THE U.S. TRUSTEE
515 Rusk Ave STE 3516
Houston, TX 77002
Ha.Nguyen@usdoj.gov

/s/R. J. Shannon
R. J. Shannon