**EXHIBIT D**

Transcript of August 10, 2022, Show Cause Hearing

```
DKT NO:  X06-UWY-CV186046436-S    :  COMPLEX LITIGATION DKT

ERICA LAFFERTY                    :  JUDICIAL DISTRICT WATERBURY.

v.                                :  AT WATERBURY, CONNECTICUT

ALEX EMRIC JONES                  :  AUGUST 10, 2022

DKT NO:  X06-UWY-CV186046437-S


WILLIAM SHERLACH

v.

ALEX EMRIC JONES


DKT NO:  X06-UWY-CV186046438-S


WILLIAM SHERLACH

v.

ALEX EMRIC JONES
```

         BEFORE THE HONORABLE BARBARA N. BELLIS, JUDGE


A P P E A R A N C E S :


   Representing the Plaintiff(s):

       ATTORNEY CHRISTOPHER MATTEI



   Representing the Defendant(s):

       ATTORNEY NORMAN PATTIS for Jones Defendants
       ATTORNEY WESLEY MEAD for Norman Pattis
       ATTORNEY BRIAN STAINES for Chief Disciplinary Counsel




                              Recorded By:
                              Darlene Orsatti

                              Transcribed By:
                              Darlene Orsatti
                              Court Recording Monitor
                              400 Grand Street
                              Waterbury, CT 06702

1  THE COURT: All right. Good afternoon. This is
2  Judge Bellis; we are on the record in the show cause
3  hearing for Attorney Pattis in the Lafferty matters.
4  If counsel could please identify themselves for the
5  record.
6  ATTY. MATTEI: Good afternoon, your Honor. This
7  is Chris Mattei on behalf of the plaintiffs.
8  ATTY. STAINES: Good afternoon, your Honor. I
9  am Brian Staines, Chief Disciplinary Counsel.
10  THE COURT: Good afternoon.
11  ATTY. PATTIS: Norm Pattis, judge.
12  THE COURT: Good afternoon.
13  ATTY. PATTIS: I think Mr. Mead is on mute.
14  ATTY. MEAD: I'm sorry, Judge. I apologize.
15  Wesley Mead for Mr. Norm Pattis, your Honor. Good
16  afternoon.
17  THE COURT: Good afternoon. Welcome. All
18  right. So let's take up first the housekeeping
19  matter. There was an objection to the filming or
20  recording of this civil procedure. And Practice Book
21  111b controls the burden of proving that electronic
22  coverage should be limited or precluded, is on
23  counsel for Attorney Pattis, who has objected to the
24  coverage. So you have the floor, Attorney Mead.
25  ATTY. MEAD: Judge, my objection is two-fold.
26  One is the issue that I raised is that in most
27  jurisdictions these proceedings are confidential

1   until a attorney's deemed to have been – committed a
2   grievable offense in this instance.  And the reason
3   that is judge, is because as I stated in my
4   objection, it exposes attorneys in general, to damage
5   to their reputation and character, which sometimes
6   can't be restored.
7       And that's the one objection I cited, both the
8   New York Statue and the Connecticut – the Connecticut
9   Statute in that regard.  The other issue too judge,
10  is as you know, I've requested that the – that these
11  proceedings be adjourned due to my Covid issue.  I
12  certainly don't – I'm not inclined normally to have
13  my home, you know – part of a livestream.  I was
14  anticipating that the Court would have adjourned this
15  to another date.  It didn't do so.  So based on both
16  of those reasons I had requested the livestreaming
17  not occur.  And that is my application, judge.
18      THE CLERK:  You're muted, your Honor.
19      THE COURT:  Thank you.  Thank you, Attorney
20  Mead.  So under the Practice Book, the Court has to
21  determine whether the coverage would undermine the
22  legal rights of a party or significantly compromise
23  the safety or a witness, or other interested person,
24  or impact significant privacy concerns.  This is of
25  course different than the normal disciplinary
26  proceeding, where the matter is private until there's
27  a finding of probable cause.  This obviously is a

1  show cause hearing that the Court is conducting.
2  I would also point out that I only learned of
3  this issue by reading headlines. And I understand
4  that it was a part of a very public trial that was
5  livestreamed. For those reasons I am going to
6  overrule the objection. So to the extent that any of
7  the media has logged on, they can now log off and
8  they are permitted to broadcast.
9  All right. So I am mindful that you have – some
10 of you have a 3 o'clock bankruptcy conference, and I
11 don't expect to be long, especially given Attorney
12 Mead's situation. So I'll be as brief as possible.
13 Of course originally this was the show cause hearing,
14 but given Attorney Mead's situation, I'll just go
15 through the history and the background, and lay
16 everything out, and then we can pick a date for the
17 show cause hearing.
18 ATTY. MATTIE: Your Honor –
19 THE COURT: I want to –
20 ATTY. MATTIE: Just for clarity's sake. The
21 3 o'clock bankruptcy proceeding has been moved to
22 Friday. So that will not be happening at 3 o'clock
23 today.
24 THE COURT: Okay. Thank you.
25 So I want this proceeding to be fair and
26 transparent, so I am going to go into considerable
27 detail regarding prior disciplinary issues in this

1    case.  And the questions that I want addressed in
2    connection with what appears to be improper
3    disclosure of highly protected records.
4         ATTY. MEAD:  Judge, I apologize.  Before we
5    begin.  I just wanted to preserve my clients right to
6    an objection as to jurisdiction, and ask your Honor
7    just for the record, if I may request a briefing
8    schedule on jurisdiction.  There is a bankruptcy stay
9    in this case.  I've done a little research; I don't
10   believe this Court has jurisdiction.  I saw the show
11   cause notice.  I believe your Honor is – seemed to
12   have carved out an exception, because it allegedly
13   relates to attorney discipline.  However, the issues
14   that your Honor will be having to delve into in order
15   to decide that issue, relate directly to the
16   confidentially order –
17        THE COURT:  All right.  So, Attorney Mead –
18        ATTY. MEAD:  – in this case, which is now –
19        THE COURT:  – I am going to interrupt you.
20        ATTY. MEAD:  Yes, your Honor.
21        THE COURT:  And I'm going to ask all counsel to
22   mute their devices.  I see some other devices are not
23   muted, because I am getting some feedback.  This
24   matter is not an issue in the actual lawsuits that
25   are being filed.  So this is not sanctions against
26   the parties.  This issue is between the Court and
27   Attorney Pattis, and next week it will between the

1     Court and Attorney Reynal.  So certainly Attorney
2     Mead, you can raise whatever issue you think is
3     appropriate.  I'm certainly not going to enter in a
4     briefing schedule.  I know for a fact that the Court
5     always has jurisdiction over the conduct of the
6     attorneys that appear before it.  So I will not delay
7     this.
8         If by some chance that you happen to be right,
9     which I do not believe in any way, shape, or form, to
10    be the case.  Then my actions of course would be void
11    and not voidable, as is with any bankruptcy
12    proceeding.  But again, just to make it clear.  This
13    issue is between the Court and Attorney Pattis today.
14    It is not any – no parties are being sanctioned here.
15    All right.  But I do note your concern for the
16    record, so…
17        All right.  So on August 4th 2022, the Court
18    issued an order for Attorney Pattis to show cause as
19    to whether he should be referred to disciplinary
20    authorities or sanctioned by the Court directly, if
21    appropriate, Pursuant to Practice Book Section 245.
22    Regarding the release of medical records of the
23    plaintiff's, which I understand may include
24    psychiatric records to unauthorized individuals.
25        And as I said before Attorney Mead, in order to
26    accommodate you, we will schedule the actual show
27    cause hearing for one day next week, hopefully in

1  person.  And I am pleased to see that you are here
2  appearing for Attorney Pattis, as this is a serious
3  matter.  And I will tell you now, in the interest of
4  candor.  That I do intend to handle this matter
5  directly, rather than making a referral to
6  disciplinary authorities.  And I am also thankful
7  that Attorney Staines, as Chief Disciplinary Counsel,
8  is attending today and will participate in these
9  proceedings.
10        So I will just state for the record, especially
11  since Attorney Mead is not necessarily familiar with
12  the entire background here.  But the show cause
13  hearing for Attorney Pattis, and the show cause
14  hearing for Attorney Reynal next week, are the third
15  and fourth disciplinary issues involving the Jones
16  defendants defense counsel.  So four disciplinary
17  hearings for three attorneys in the same lawsuit, is
18  unprecedented.  Just one is highly unusual, and here
19  we are now on our third and fourth.
20        The first disciplinary issue also involved
21  Attorney Pattis.  It involved an affidavit of Alex
22  Jones that was sworn to and filed with the Court by
23  Attorney Pattis.  Where the signature of Mr. Jones on
24  the affidavit was not actually that of Mr. Jones.
25  The local - and the Court, instead of it doing a show
26  cause hearing, as it is now, referred the matter to
27  Disciplinary Counsel.  And I understand Attorney

1          Pattis to his accredit, also referred the matter
2          himself.
3               The local grievance panel found probable cause
4          for misconduct, and a public hearing and a public
5          decision followed.  And I am going to read three or
6          four sentences from that public decision.  The
7          respondent, Attorney Pattis, acknowledged that he
8          made a mistake in connection with the execution of
9          the affidavit.  When the respondent realized his err,
10         he immediately corrected it.
11              We find the respondent credible.  That he made a
12         mistake and had no intent to deceive the Court or
13         opposing counsel.  Notwithstanding, we are critical
14         of the respondents' level of diligence in researching
15         how to handle an affidavit involving an attorney, in
16         fact, acting under a Texas power of attorney and a
17         Connecticut civil proceeding.  It is the opinion of
18         this reviewing committee, that the respondent's
19         practice was sloppy with regard to the execution of
20         the affidavit, and that he exercised bad judgment.
21         Further, it was inappropriate not to request the
22         power of attorney document for review.  Finally,
23         since we conclude that the respondent did not violate
24         the rules of professional conduct, we dismissed the
25         complaint.
26              The second disciplinary matter involved the
27         Jones defendant's former attorney Jay Wolman.  And

1  that involved deposition misconduct at the deposition
2  of a former employee of the defendant, Free Speech
3  Systems.  Following a show cause hearing, the Court
4  issued a formal reprimand as to Attorney Wolman, and
5  that reprimand and decision is also a public record.
6  That brings us to the present show cause hearings
7  involving Attorney Pattis, and next week, Attorney
8  Reynal.
9      So the history is as follows:  On July 6, 2022,
10 Attorney Pattis filed with the Court an application
11 for permission for Attorney Reynal to appear pro hac
12 vice in this matter.  In the application, Attorney
13 Pattis, as is required by our Rules of Practice,
14 agreed to sign all filings with the Court.  Assumed
15 full responsibility for all court filings.  And
16 assumed full responsibility for the conduct of the
17 cause or proceeding, and of Attorney Reynal.  The
18 Court granted the pro hac application on July 22,
19 2022.  But before Attorney Reynal even filed an
20 appearance in the underlying lawsuits, Attorney
21 Reynal was removed from the case by agreement on July
22 26, '22, having never filed an appearance in the
23 case.
24     So that brings us to why we are here.  It
25 appears that the medical and/or psychiatric records
26 of the plaintiff's in the underlying lawsuits, were
27 recently provided to unauthorized individuals.

1  Whether it was by Attorney Pattis and/or Attorney
2  Reynal.  Disciplinary counsel is now involved, and I
3  expect to hear evidence at our show cause hearing,
4  relating to who sent the records.  When they were
5  sent.  The level of technological expertise the
6  sender had.  If the staff sent the records, under
7  what attorney's supervision.  What records were sent.
8  Were they medical and psychiatric records, or other
9  records subject to the Court's protective order?  I
10 want to know exactly who received the records.  And
11 if that requires testimony from lawyers or others in
12 the Texas case, so be it.
13     I want to know whether any records were involved
14 that were subject to this Court's order.  This Court
15 had entered orders regarding confidential records,
16 highly confidential record, and attorney eyes only
17 records.  So I want evidence on what if any of the
18 records were subject to the protective order.  And I
19 am obviously very concerned about the unauthorized
20 release of confidential private records that were
21 protected under the Court's protective order.  And
22 I'm troubled that medical records that are protected
23 under state and federal law.  And psychiatric or
24 psychological, or counseling records, which enjoy a
25 very high level of protection under the law, might
26 have been improperly released to unauthorized
27 individuals.

1        So in short.  With respect to any of the
2   plaintiff's medical records or other records that
3   were subject to the Courts order, I want to know
4   whether they got sent to unauthorized individuals.
5   How did they get sent?  Who sent them?  When did they
6   get there?  I want the details of the transmissions.
7   I want specifics.  Were electronic files sent?  Were
8   the files named?  Were the actual files sent, or were
9   they converted?  And did they have a Bates number?
10       And I want to know what steps specifically were
11   taken by Attorney Pattis, or anyone that he was
12   supervising.  Whether it was Attorney Reynal at the
13   period that Attorney Reynal had pro hac status.  Or
14   any attorney's or office staff, what step – what
15   training they had and what steps were taken to flag
16   confidential or protected materials.
17       And then importantly, I want to know exactly
18   what steps were taken by Attorney Pattis or anyone
19   that he was supervising, to remedy any improper
20   disclosure, if in fact there was improper disclosure.
21   So not only the transmission of these records, but
22   then what if anything was done to remedy any improper
23   disclosure.  I want to know as well, whether
24   plaintiffs' counsel in the underlying lawsuit was
25   ever notified of any improper disclosure, if there
26   was an improper disclosure.  I do note that no
27   disclosure was ever made to this Court.  I don't know

1     whether the disclosure was ever made to the
2     Bankruptcy Court for the Alex Jones case that was
3     removed to Bankruptcy Court.
4          All right.  I do want to mark as a court
5     exhibit, Mr. Ferraro, the protective order in the
6     underlying lawsuits, which is entry number 850.  That
7     is the most recent protective order that was granted
8     by the Court.  And I imagine that will be utilized in
9     the show cause proceeding.
10         So with respect to notice of the specific
11    possible rules of professional conduct violations.
12    The Court is concerned with the possible following
13    violations.  Rule 1.1, competence.  Did Attorney
14    Pattis have the requisite technological knowledge and
15    skill necessary to conduct electronic discovery.  If
16    in fact that was done here.  Rule 3.4(3).  Whether
17    Attorney Pattis knowingly disobeyed an obligation
18    under the rules of the Court with respect to the
19    handling of the plaintiffs' confidential records.
20    Both in the disclosure of documents to unauthorized
21    individuals.  If that happened.  And then steps that
22    were taken or not taken to remedy any unauthorized
23    disclosure.
24         Rule 5.1b.  Whether Attorney Pattis, by having
25    supervisory authority over Attorney Reynal, made all
26    reasonable efforts to ensure that Attorney Reynal
27    conformed to the Rules of Professional Conduct.  And

```
 1              5.1(c)1 and 2.  Whether Attorney Pattis either
 2         ratified Attorney Reynal's conduct, or knew of the
 3         conduct, and failed to take any reasonable necessary
 4         remedial action.  Or 5.3.  Whether Attorney Pattis
 5         bears any responsibility to the extent any
 6         non-lawyers were involved in the transmission of the
 7         records.  Rule 8.4(4).  Whether Attorney Pattis
 8         engaged in any conduct that is prejudicial to the
 9         administration of justice.
10              Basically all of the concerns that the Court has
11         relates to the possible dissemination of the
12         plaintiff's confidential records.  Whether they were
13         made confidential under the Court's order in the
14         underlying lawsuits, or whether they were statutorily
15         protected.  At this point I'm not even sure, and we
16         will find out at the hearing, whether Attorney
17         Reynal, who never filed an appearance and was only
18         accorded pro hac status on July 20th, whether it was
19         even permissible under the Court's order for Attorney
20         Pattis to send the documents to Attorney Reynal.
21         Whether it was intentional to send them to Attorney
22         Reynal, unintentional, and who else they might be –
23         might have been sent to.  I have no idea at this
24         point.
25              So, these are the Courts' concerns about
26         possible rules of professional conduct violations.
27         And I hope by giving all these details, that I've
```

1   sufficiently conveyed to your client, Attorney Mead,
2   how concerned the Court is about the events and the
3   purported release of protected records of the
4   plaintiffs in the underlying lawsuit.  So at this
5   point, unless Attorney Staines or Attorney Mead wants
6   to be heard, we can consult our schedules.  Attorney
7   Mead and Attorney Staines and pick the date for the
8   actual show cause hearing.  And I anticipate a
9   briefing schedule following the close of the show
10  cause hearing when we're done with any witnesses or
11  evidence.  I will then – we can then come up with a
12  briefing schedule.  All right.  So, I think you gave
13  some dates next week, Attorney Mead, that you were
14  available?
15       ATTY. MEAD:  Yeah.  Judge, I did.  I gave –
16  before I get into that.  I gave 8/17 and 8/19, I
17  believe next week.  But, as you know, your Honor, in
18  one of these proceedings, the character witnesses are
19  available to be presented to my – on the defense of
20  Mr. Pattis, if necessary.  So I would – I'm going to
21  be checking with potential character witnesses, to
22  see if they're available on any either those dates.
23       The other issue, Judge.  Is, I took – you cut
24  out a couple times.  I got most of what you said
25  about the – the alleged disciplinary issues.  As far
26  as your Honors' orders – with the notice –
27       THE COURT:  Well, I'm going to just interrupt

1    you for one second, Attorney Mead, because you
2    actually have been breaking up on and off throughout
3    your conversations.
4         ATTY. MEAD:  Okay.
5         THE COURT:  But I will order a transcript of my
6    comments, and I'll put the transcript in the file,
7    and so you will have that.
8         ATTY. MEAD:  Okay.
9         THE COURT:  And I understand that we're going to
10   pick the date, hopefully one of the dates that you
11   gave next week that fit into your schedule.  And I
12   surely understand that witnesses may or may not be
13   available.  And I don't necessarily even need to do
14   this one the record.  I don't have a problem,
15   Attorney Mead, with you and Attorney Staines off the
16   record, speaking with Attorney Ferraro.
17        But I don't want this – I want to handle it
18   sooner rather than later.  But certainly I want you
19   both to have time to prepare, since frankly I just
20   laid out all the Courts' concerns today.  All right.
21   So would you prefer to do that?  Would you prefer
22   Attorney Mead and Attorney Staines to –
23        ATTY. MEAD:  Yes.  I can consult with Mr.
24   Ferraro and Mr. Mattie, and we can select a date that
25   works for your Honor as well.
26        THE COURT:  Well, Attorney Mattie, I'm not so
27   worried about.  No offense, Attorney Mattie.  But

1 he's not – this is as I keep saying. This is a show
2 cause hearing between the Court and Attorney Pattis.
3 So really, Attorney Mattie, I'm sure – I shouldn't
4 say, I'm sure, but may very well be involved as a
5 witness. But the schedules that I really care about
6 besides Ron's because Ron needs to be available, is
7 myself, you, and Attorney Staines. Okay. So that's
8 really what I'm looking to do. So if – unless there
9 are any other issues to address, we can adjourn and –
10 ATTY. MEAD: Just – just one, Judge. If I may?
11 And I hope you can hear me all right now. I'm trying
12 to speak slowly. You referenced the State and
13 Federal Statutes in your show cause notice. Which
14 State and Federal Statutes are you referring to? So
15 I can properly advise my client.
16 THE COURT: I'm not really here to answer those
17 kind of questions. I put you on notice of what the
18 concerns were and what the practice – Code of
19 Professional Responsibility potential rule violations
20 are. And I laid out that it looks like medical
21 records. It could be psychiatrist records,
22 psychological records, counseling records. I don't
23 know. But I am clearly gravely concerned about what
24 I had to hear in headlines on the news. It was never
25 reported to me by counsel that there were any issues.
26 But just what I read in the news. And it may be that
27 there were no violations. And that would be

```
 1          wonderful for everyone that's involved.
 2                But clearly, Attorney Mead, you can look at the
 3          statutes.  You'll see if you're not already familiar.
 4          That there are separate statues because these are
 5          such highly protected records.  If we're talking
 6          about sex abuse counseling records, there's a statute
 7          for that.  Domestic violence records, there's a
 8          statute for that.  Marital counseling records,
 9          there's a statute for that.  But since I don't know
10          what records have been disclosed, I can't list all
11          the statutes for you.  But I suggest you go pull the
12          volumes out and take a look, because there's all
13          separate statues.  Psychological records has its own
14          statute.  Psychiatric records have its own statute.
15          So I think that you – that's not something that we
16          need to discuss today.
17                Any other issues?  Seeing none, we're adjourned.
18   (The matter concluded.)
```

```
DKT NO:  X06-UWY-CV186046436-S     :   COMPLEX LITIGATION DKT
ERICA LAFFERTY                     :   JUDICIAL DISTRICT WATERBURY
v.                                 :   AT WATERBURY, CONNECTICUT
ALEX EMRIC JONES                   :   AUGUST 10, 2022
DKT NO:  X06-UWY-CV186046437-S

WILLIAM SHERLACH

v.

ALEX EMRIC JONES

DKT NO:  X06-UWY-CV186046438-S

WILLIAM SHERLACH

v.

ALEX EMRIC JONES
```

*C E R T I F I C A T I O N*

I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, G.A. #4, Waterbury, Connecticut, before the Honorable Barbara Bellis, Judge, on the 10th day of August, 2022.

Dated this 10th day of August, 2022 in Waterbury, Connecticut.

_____
Darlene Orsatti
Court Recording Monitor