**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

# EXHIBIT G

SUPERIOR COURT
COMPLEX LITIGATION DOCKET
AT WATERBURY

ERICA LAFFERTY, ET AL        )
                             )
                             )   X06-UWY-CV-18-6046436-S
V.                           )
                             )
ALEX EMRIC JONES, ET AL      )

_____

WILLIAM SHERLACH            )
                             )
                             )   X06-UWY-CV-18-6046437-S
V.                           )
                             )
ALEX EMRIC JONES, ET AL      )

_____

WILLIAM SHERLACH, ET AL     )
                             )
                             )   X06-UWY-CV-18-6046438-S
V.                           )
                             )
ALEX EMRIC JONES, ET AL      )   JULY 21ST, 2022

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
   REMOTE VIDEOCONFERENCE AND VIDEOTAPED DEPOSITION OF
                   ALEX EMRIC JONES
                   JULY 21ST, 2022
                     VOLUME IV
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

REMOTE VIDEOCONFERENCE AND VIDEOTAPED DEPOSITION of ALEX
EMRIC JONES, produced as a witness at the instance of the
Plaintiffs and duly remotely sworn was taken remotely in
the above-styled and numbered cause on the 21st of July,
2022, from 10:04 a.m. to 10:39 a.m. Central Time, before
SUSAN L. GRAHAM, CSR in and for the State of Texas,
reported remotely by machine shorthand, in the City of
Houston, Harris County, Texas, pursuant to the
Connecticut Rules of Civil Procedure, Notice and the
provisions stated on the record or attached hereto.

Alex E. Jones Volume IV
July 21, 2022

1                    A P P E A R A N C E S

2

   FOR THE PLAINTIFFS:
3          Christopher M. Mattei, Esq.
           Alinor Sterling, Esq.
4          Koskoff Koskoff & Bieder, PC
           350 Fairfield Avenue, Suite 501
5          Bridgeport, Connecticut  06604
           Phone:   203-336-4421
6          E-mail:  cmattei@koskoff.com
                    asterling@koskoff.com
7

8  FOR THE DEFENDANTS ALEX EMRIC JONES AND FREE SPEECH
   SYSTEMS, LLC:
9          Norman A. Pattis, Esq.
           Pattis & Smith, LLC
10         383 Orange Street, First Floor
           New Haven, Connecticut  06511
11         Phone:   203-393-3017
           E-mail:  npattis@pattisandsmith.com
12

13 ALSO PRESENT:
           Pritika Seshadri
14         Mark Hendrix, Videographer

15

16

17

18

19

20

21

22

23

24

25

Alex E. Jones Volume IV
July 21, 2022

1   your right hand, please, sir?

2                       ALEX EMRIC JONES

3   having been first duly remotely sworn, testified as

4   follows:

5                       EXAMINATION

6   QUESTIONS BY MR. MATTEI:

7        Q.   Mr. Jones, you can't see me.  Ordinarily we

8   would all be able to see each other on the Zoom but I can

9   see you and your counsel.

10                 MR. MATTEI:  Does everybody agree that we

11  can proceed without my video working so long as the

12  document sharing function is working fine?

13                 MR. PATTIS:  Agreed, yes, sir.

14                 MR. MATTEI:  All right.

15                 MS. STERLING:  Chris, before you go on

16  just for the record this is Alinor Sterling also on.

17       Q.   (By Mr. Mattei)  All right.  Mr. Jones, the

18  reason that we're here today is because we had made

19  discovery requests for a number of materials to be

20  produced in connection with your deposition, including

21  any loan documents or other contracts between Free Speech

22  Systems and PQPR and other entities that you're

23  associated with.  After your deposition we received two

24  documents purporting to be promissory notes and one

25  document purporting to be a security agreement, which I

1    had not previously had a chance to question you about so

2    that's why we're here for your continued deposition is to

3    examine you on the issues raised by those documents.  Do

4    you understand that?

5            A.   I understand.

6            Q.   One of the documents that was produced to us

7    was a document captioned Promissory Note dated August

8    13th, 2020 between Free Speech Systems and PQPR Holdings

9    Limited, LLC.  Are you familiar with that document?

10           A.   No.

11           Q.   Have you reviewed it prior to today's

12   deposition?

13           A.   No.

14           Q.   Are you aware of having signed such a document

15   on behalf of Free Speech -- Free Speech Systems?

16           A.   Yes.

17           Q.   Okay.  And why is it that you say you're not

18   familiar with the document?

19           A.   I mean I haven't looked at it since whenever I

20   signed it.

21           Q.   Okay.  What's your understanding of what that

22   document purported to do?

23           A.   Can you show me the document?

24           Q.   Before I do that I want you to answer the

25   question I asked you.  What is your understanding of the

 1    purpose of that promissory note that you entered in

 2    August 13th, 2020 on behalf of Free Speech Systems?

 3         A.    After deplatforming approximately four years

 4    ago and legal bills from lawsuits, we began to have to

 5    spend basically all the money from profits from PQPR to

 6    build new infrastructure and pay legal bills and taxes

 7    and when the, when the debt got so large we, we developed

 8    a plan to start pay -- try to pay down that debt, at

 9    least not have it grow, and so that's, that's what I

10    remember the reason it was done.

11         Q.    Okay.  So if I understand you correctly, your

12    testimony is that when you were deplatformed -- and when

13    you say deplatformed what are you referring to?

14         A.    It's like what happened in Nazi Germany but in

15    a modern sense where the Jews weren't allowed to have

16    businesses or operate and so it's when the corporations

17    and the system gangs up on you and then doesn't let you

18    bank, doesn't let you be on major platforms, doesn't let

19    you use software, basically attempts to put you into a

20    dic -- a non-digital ghetto.  So that's, that's what

21    deplatforming is, the first step in isolating and

22    impoverishing populus loyal Americans ahead of the

23    globalist takeover.

24         Q.    And so you -- it's, it's your testimony that

25    the -- what you describe as the deplatforming of Free

1    reset, corporate takeover of America, yes.

2         Q.    Okay.  And I want to ask you specifically

3    though -- by the way did -- about the debt and its

4    connection to what you claim was that deplatforming.  You

5    indicated that the debt started to accrue about four

6    years ago when this deplatforming took place and can, can

7    we agree that the, the approximate time frame we're

8    talking about is when the social media companies removed

9    you from their platforms, correct?

10        A.    And the banks and the software companies and,

11   and, and everyone else.

12        Q.    And you, you continue to have continuous

13   access to banking since 2018, correct?

14        A.    We, we have found alternate banking.

15        Q.    Right.  And the reason we know that is because

16   you produced at least some bank account information to us

17   in this case, correct?

18        A.    Yes.

19        Q.    All right.  So but if we're talking about the

20   deplatforming, you would peg that to about the time in

21   2018 where Twitter, Facebook, and YouTube removed your

22   content from its platforms, correct?

23        A.    There, there was the beginning of

24   deplatforming happening years before that but, but, but

25   that's, that's when the -- it kind of goes like this on

1    build.  That was the number one thing and then there was

2    taxes and then legal, yes.

3           Q.   Okay.  So let's just figure out what these

4    buckets are.  One is as a result of deplatforming in 2018

5    Free Speech Systems needed to build out new

6    infrastructure, correct?

7           A.   Yes.

8           Q.   Okay.  That was a new expense for which it did

9    not have the funds and so PQPR lent it money in order to

10   meet those expenses, correct?

11                  MR. PATTIS:  Objection, form.

12          A.   Yes.

13          Q.   (By Mr. Mattei)  Okay.  In addition, Free

14   Speech Systems had legal costs related to this lawsuit

15   and related litigation in Texas that it did not have the

16   funds to cover and so PQPR provided a loan in part to

17   fund those expenses, correct?

18                  MR. PATTIS:  Object as to form.

19          A.   Yes.

20          Q.   (By Mr. Mattei)  All right.  And then beyond

21   that Free Speech Systems had tax obligations that it was

22   not able to fund and so it took a loan from PQPR in part

23   to satisfy those tax obligations, correct?

24          A.   It -- but -- but -- yes and so --

25                  MR. PATTIS:  Objection, form.

1       A.    -- you're asking for buckets.  Let me help you

2   and give you the facts.  Actually --

3       Q.    (By Mr. Mattei)  No, the -- no, no, I --

4   there's no other question pending.  You answered my

5   question.

6       A.    But --

7       Q.    You said yes.  All right.

8       A.    Well, taxes first, then deplatforming, then

9   legal but taxes was the big one now that I'm, I'm

10  thinking about this.

11      Q.    Thank you.  Any other components of increased

12  costs that Free Speech Systems wasn't able to meet for

13  which it took out a loan from PQPR?

14            MR. PATTIS:  Objection as to form.

15      A.    There was a lot of -- I -- I -- cases.  I

16  can't remember.  It's a lot of stuff.

17

18

19

20

21

22

23

24

25

```
 1   THE STATE OF TEXAS

 2   COUNTY  OF  HARRIS

 3          I, Susan L. Graham, Certified Shorthand

 4   Reporter in and for the State of Texas, hereby certify

 5   that at the time and place stated the witness, ALEX EMRIC

 6   JONES, personally appeared remotely before me and after

 7   being by me first duly sworn to tell the truth, was

 8   examined by counsel for the respective parties hereto;

 9   that the testimony of said witness was taken in shorthand

10   by me, and the foregoing pages are a true and correct

11   transcript of said testimony; that examination and

12   signature of the transcript was submitted to the witness

13   to read and sign;

14          That the amount of time used by each party at

15   the remote videoconference and videotaped is as follows:

16       Christopher M. Mattei - :27

17          GIVEN under my hand and seal of office on this

18   the 31st day of July, 2022.

19

20   _____
     Susan L. Graham
21   Texas CSR No. 2534
     Expires:  January 31, 2024
22   Firm Registration No. 122
     16825 Northchase Drive
23   Suite 800
     Houston, Texas  77060
24   (713) 653-7100

25
```