# THE REYNAL LAW FIRM, P.C.

**PRIVILEGED AND CONFIDENTIAL**

Via E-Mail: Mschwartz@schwartzassociates.us

Marc Schwartz
Chief Restructuring Officer
Free Speech Systems, LLC
3019 Alvin Devane Blvd-Suite 300
Austin, Texas 78704

August 21, 2022

Re: **Legal Services Agreement:** Lawsuits Set Out in Exhibit "1"

Gentlemen:

You have asked me and my firm The Reynal Law Firm, P.C. (the "Reynal Firm" or "Firm") to act as special litigation and trial counsel for Free Speech Systems, LLC ("FSS", "you" or "Client") on certain matters described below. Pursuant to a February 28, 2022, engagement letter among Alex Jones, Infowars LLC and Free Speech Systems, LLC, those entities retained Fertitta & Reynal LLP to represent them in connection with suits brought against them by plaintiffs Fontaine, Heslin, Pozner and Lewis in Texas (the "Original Engagement Agreement"). A true and correct copy of the Original Engagement Agreement is attached hereto as **Exhibit "2"** and incorporated by reference as if fully set out. This Engagement Letter amends certain provisions of the Original Engagement Agreement for the new work you want us to handle during FSS's bankruptcy case.

As a result of our expertise and experience with the trial on the Heslin\Lewis matter, you have asked me and my Firm to act as special litigation and trial counsel for FSS in connection with the lawsuits set out in **Exhibit "1",** including three (3) defamation and intentional infliction of emotional distress suits in Texas pending in Travis County (two arising from the Sandy Hook shootings and one involving the shooting in Parkland, Florida), an appeal brough by Jerome Corsi to the Fifth Circuit Court of Appeals and the Lafferty Matter, defined in Exhibit "1". FSS understands that with respect to the Lafferty Matter, it is retaining Pattis & Smith as its primary litigation and trial counsel. Based on the experience the Firm has with trying the Heslin\Lewis's suit in Travis County last month, you have asked us to consult on and assist Pattis & Smith with the Lafferty Matter, preparing witnesses for trial, consulting on presentations to the court and briefing on any issues requiring legal research. We appreciate the trust and confidence that your decision places in us and we look forward to a close and mutually rewarding relationship.

The purpose of this letter (the "Engagement Letter") is to set forth the terms of legal representation of FSS, as a debtor-in-possession, specify the scope of engagement and amend the Original Engagement Agreement for the matters. Except as otherwise amended by this Engagement

Free Speech Systems, LLC
August 21, 2022
Page 2 of 12

Letter, all the other terms and conditions of the Original Engagement Agreement shall control the retention of the Firm by FSS.

*Scope of Engagement.* The Firm shall serve as attorney and legal counsel for the Client in connection with the following (the "Matters") effective as of July 29, 2022 (the "Petition Date"): The Firm shall act as special litigation and trial counsel for FSS in connection with the lawsuits described in **Exhibit "1"** (the "Professional Services").

*Legal Fees and Expenses.* The Firm shall be compensated for Professional Services provided to the Client on the Matters, in accordance with the Original Engagement Agreement, as amended by this Engagement Agreement. **None of the provisions relating to a flat fee arrangement contained in the Original Engagement Agreement shall apply to these Matters**.

For Professional Services provided to Client by the Firm, the Firm shall be entitled to a fee in the amount equal to the time expended by each attorney, multiplied by the hourly rates set forth in the attached Hourly Billing Rate Schedule. The Client is responsible for reimbursing the Firm for expenses incurred on behalf of the Client pursuant to the attached Client Expense Policy.

*Retainer.* As a condition to The Reynal Firm accepting this engagement, you have agreed to provide a retainer of $50,000.00 (the "Retainer") in connection with these Matters, subject to such payment being approved by the United States Bankruptcy Court, Southern District of Texas, Houston Division (the "Bankruptcy Court"). The instructions for remitting the retainer funds to the Firm will be provided in a separate electronic correspondence. The Retainer will serve as a security deposit and will be applied towards our final invoice for these Matters. Any balance will be returned to you. If you do not pay your invoices timely, the Firm may apply the Retainer to an unpaid invoice. Subject to Bankruptcy Court approval, the Firm reserves the right to have the Retainer replenished by the Client if the Firm anticipates that there is a risk in collecting future attorney's fees and/or reimbursement of costs. Notwithstanding anything contrary contained herein, the Firm understands and agrees that payment of its fees and expenses is subject to Bankruptcy Court approval, either on an interim basis pursuant to an order approving a procedure for interim compensation or pursuant a fee application.

*Invoices/Fee Statements.* The Firm's invoices will be issued to you during the month, if not more often, following the month that services are provided. The invoice will include a fee statement providing the details of the legal services performed, and the expenses incurred, for the Client. The invoices shall be informational only and shall only be paid upon allowance by a Bankruptcy Court order or pursuant to an order approving interim compensation of professionals.

*Conflicts.* The Firm has conducted an initial conflicts search based on information you provided. The Firm did not identify any connection that would prevent the Firm from representing you in this Matter. The firm may conduct additional conflicts searches following the commencement of this engagement. If the Firm identifies any conflict, then the Firm shall immediately notify the Client and the Firm and the Client shall take further actions as may reasonably be required to satisfy the Firm's ethical obligations and duties to the Client, all as more particularly described in the Terms of Retention.

Free Speech Systems, LLC
August 21, 2022
Page 3 of 12

While not a conflict, The Reynal Firm discloses that Alex E. Jones, a co-defendant, in all the lawsuits set out in Exhibit A, is also a client of the Firm. The Reynal Firm has represented both FSS and Alex Jones prior to the Petition Date and will continue to do so on most of these Matters.

*General Prospective Waiver and Informed Consent.* The Firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future Clients will have disputes or transactions with you. You agree that we may continue to represent or may undertake in the future to represent existing or new Client in any business or transactional matter that is not substantially related to our work for you, even if the interests of such Client in those other matters are directly adverse to you. We are not aware of any such matters at the present time. We agree, however, that your prospective consent to conflicting representations contained in the preceding sentence shall not apply in any instance where, because of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage. <u>You are not giving the Firm a prospective waiver as to conflicting representation related to a litigation matter against you</u>. We encourage you to seek independent counsel regarding the import of the potential conflicts and prospective waiver discussed and this acknowledgment, waiver, and informed consent. We emphasize that you remain completely free to seek independent counsel at any time even if you decide to sign this Engagement Letter agreeing to its terms and the Terms of Retention.

Please call me with any questions you have after you complete your review of this Engagement Letter including the Terms of Retention. If the Engagement Letter is acceptable to you in this form, please indicate so by signing, dating, and returning it to me and filing an Emergency Application to Retain the Firm as Special Litigation and Trial Counsel.

Very truly yours,

*Andino Reynal*

The Reynal Law Firm, P.C.

ACCEPTED AND AGREED:

Free Speech Systems, LLC

  /s/*W. Marc Schwartz*
Authorized Officer of Free Speech Systems, LLC

    8/22/22
Dated

Free Speech Systems, LLC
August 21, 2022
Page 4 of 12

## ADDENDUM TO ENGAGEMENT LETTER

The appropriate Client point of contact to address payment status:

Name:
Title:
Phone:
Work Email:

Invoices are to be delivered as follows:

☐ By email:            _____

      Email:            _____

☐ By regular mail:

Address:            _____

                    _____

                    _____

Free Speech Systems, LLC
August 21, 2022
Page 5 of 12

## TERMS OF RETENTION

These Terms of Retention are part of The Reynal Firm Engagement Letter. Because they are an integral part of our agreement to provide legal services, we ask that you review this document carefully. If you have any questions after reading it, please contact us promptly.

*Who Will Provide Legal Services?* In most cases, one attorney will be your principal contact. From time to time, that attorney may delegate parts of your work to other attorneys or to legal assistants or non-legal professionals in the Firm. We do this to involve those with special knowledge or experience in an area and to provide services to you in a timely, efficient, and cost-effective manner. Andino Reynal will be the primary attorney from our Firm who will be representing the Client.

*Scope of the Representation.* As a Firm, we undertake to provide representation and advice on the legal matters for which we are engaged, and it is important that we both have a clear understanding of the legal services that the Firm has agreed to provide. In our Engagement Letter with you, we specify the matter in which we will provide representation and the scope of the services we will provide. Please note that we do not provide legal advice regarding any tax issues or effects nor are we responsible for notifying any insurance carrier of any lawsuit. If there are any questions about the terms of engagement, including the scope of the representation that we are to provide in the matter, please raise those questions promptly with your principal contact at the Firm.

*Identity of Client.* It is our policy to represent only the person or entity identified in our Engagement Letter and not any affiliates. For example, unless otherwise specifically stated in our Engagement Letter, if you are a business organization (corporation, partnership, LLC, etc.), our representation does not include any parents, subsidiaries, employees, officers, owners, or affiliates (including commonly owned companies); if you are an individual, our representation does not include your employer, partners, spouse, siblings, or other family members.

*Your Cooperation.* To enable us to provide effective representation, you agree to: (1) disclose to us, fully and accurately and on a timely basis, all facts and documents that are or might be material or that we may request, (2) keep us apprised on a timely basis of all developments relating to the representation that are or might be material, (3) attend meetings, conferences, and other proceedings when it is reasonable to do so, and (4) otherwise cooperate fully with us.

*Outcomes.* We cannot and do not guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is, of course, limited by our knowledge of the facts and based on the law at the time of expression. It is also subject to any unknown or uncertain factors or conditions beyond our control. Any expressions on our part concerning the outcome of the representation, or any other legal matters, are based on our professional judgment and are not guarantees.

*Conflicts of Interest.* We attempt to identify actual and potential conflicts at the outset of any engagement. In some instances, the applicable rules of professional conduct may limit our ability to represent Client with conflicting or potentially conflicting interests. Those rules of conduct often allow us to exercise our independent judgment in determining whether our relationship with one client prevents us from representing another. In other situations, we may be permitted to represent a client only if both or all

Client consent to that representation. If a controversy unrelated to the subject matter of the representation develops between you and any other client of the Firm, we will follow the applicable rules of professional responsibility to determine whether we may represent either you or the other client in the unrelated matter. Unfortunately, sometimes conflicts arise or become apparent after work begins on an engagement. If this happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all our affected Client. Rules concerning conflicts of interest vary with the jurisdiction. To avoid any uncertainty, the Connecticut Rules of Professional Conduct will be applicable to the representation.

*Fees.* The basis for determining our fee for legal services is set forth in the Engagement Letter itself. If you are unclear about the basis for determining your fee, please contact the attorney responsible for your representation. Clients frequently ask us to estimate the fees and other charges they are likely to incur in connection with a particular matter. We are pleased to respond to such requests, whenever possible, with an estimate based upon our professional judgment. This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.

*Expenses.* Our Firm may incur and pay a variety of charges on your behalf in connection with the engagement. Whenever we incur such charges on your behalf, we will bill them to you as part of your invoice in accordance with the attached Client Expense Policy.

*Delinquent Account and Withdrawal of Engagement.* Because FSS is a chapter 11 debtor, the charging of fees and termination of services are subject to Bankruptcy Court approval.

*Additional Retainer.* Subject to Bankruptcy Court approval, if the representation will require a concentrated period of activity, such as a trial, arbitration, or hearing, we reserve the right to require the payment of all amounts then owing to us and the payment to us of an additional retainer for the fees and expenses we estimate will be incurred in preparing for and completing the trial, arbitration, or hearing, as well as arbitration fees likely to be assessed. If you fail to timely pay any retainer deposit requested, we will have the right to cease performing further work for you and withdraw from the representation.

*Obligation to Pay Fees and Expenses.* Unless your Engagement Letter expressly provides that a third-party is agreeing to pay your attorney's fees and such third-party has agreed in writing, regardless of whether you are insured to cover the particular risk or pursuing parties for recovery of attorneys' fees and other charges, it remains your obligation to pay all amounts due to us within the time periods reflected in the Engagement Letter, as may be modified by an order of the Bankruptcy Court.

*Retention of Complementary Counsel.* From time to time during our engagement it may become prudent to engage additional counsel to work with and complement our representation of you. That complementary representation will only be done with your prior written consent and on terms and conditions which you approve. The engagement of complementary counsel may be done directly with you or through our firm, depending on the nature and extent of the representation involved, and shall be done only after written notice and approval of such retention by the Bankruptcy Court.

Free Speech Systems, LLC
August 21, 2022
Page 7 of 12

*Conclusion of Engagement.* Because our Firm has been engaged to provide legal services in connection with the representation in the Matter as specifically defined in our Engagement Letter, the attorney-client relationship terminates upon our completion of our services related to the representation in the Matter. After completion of the representation, upon written notification by the Firm that the matter is terminated, changes may occur in the applicable laws or regulations that could affect your future rights and liabilities regarding the Matter. Unless we are engaged after the completion of the representation to provide additional legal services, the Firm has no continuing obligation to give advice with respect to any future legal developments that may relate to the Matter. If you later retain us to perform further or additional services, our attorney-client relationship will be subject to the terms of engagement agreed to at that time; in the absence of any specific agreement, these Additional Terms of Engagement shall apply to the further or additional representation.

*Termination.* We look forward to the opportunity to complete our representation of you on the specified matter. You may, however, terminate our representation at any time, with or without cause, by notifying us in writing. We will return your papers and other property to you promptly upon receipt of your request for those materials unless they are appropriately subject to a lien. You agree that we will own and retain our own files pertaining to the matter or case, including, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal attorney's work product such as drafts, notes, internal memoranda, and legal and factual research including investigative reports, prepared by or for the internal use of attorneys. Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

*Document Retention.* You acknowledge and agree that the Firm may maintain all documents related to your matter digitally. The Firm is not required to maintain physical copies of any documents. At the conclusion of our representation of you, it is our firm's policy to return to you any physical documents to you. We will provide you with copies of any other documents you specifically request (such as copies of depositions, court documents, etc.), and you agree to pay for the associated copying costs and any professional time incurred in identifying any such documents you request. You agree that our Firm may elect to keep at its own expense, copies of any documents related to this matter or otherwise returned to you. Anytime following seven (7) years after the conclusion of our representation of you, the Firm may destroy or delete any files related to your engagement.

*Dispute Resolution.* The Engagement Letter is being entered and is to be performed within the State of Texas. The Engagement Letter shall be interpreted in accordance with Texas law (without application of choice of law principles). FSS is under supervision of the Bankruptcy Court. Therefore, this Engagement Letter amends the Original Engagement Letter to delete all references and requirement for either party to arbitrate any disputes under this Engagement Agreement. Instead, all disputes regarding this Engagement Agreement shall be subject to review by the United States Bankruptcy Court.

*By returning the executed Engagement Letter, you acknowledge that you have been provided ample opportunity to have counsel explain to you the advantages and disadvantages of binding arbitration to make an informed decision about agreeing to the provision.*

Free Speech Systems, LLC
August 21, 2022
Page 8 of 12

*Modifications*. The Engagement Letter and these Additional Terms of Engagement reflect our entire agreement on the terms of this engagement. These written terms of engagement are not subject to any oral agreements or understandings, and any change in those terms can only be made in writing signed by you and the Firm.

Free Speech Systems, LLC
August 21, 2022
Page 9 of 12

## Hourly Billing Rate Schedule

| BILLER | RATE |
|---|---|
| F. Andino Reynal | $800 |
| Joseph Magliolo | $800 |
| Lynn Hardaway | $800 |
| West Medlin | $400 |

Free Speech Systems, LLC
August 21, 2022
Page 10 of 12

Client Expense Policy

In connection with the representation of a client, the Firm may incur expenses. Unless the Engagement Letter expressly provides to the contrary, the Firm's and the Client's rights and responsibilities related to such expenses are as follows:

*Legal Research and Related Services.* The Firm subscribes to certain online research services. These subscription-based services are part of the Firm's overhead and not charged to the Client. Certain services are charged on a per-transaction including, without limitation, the following examples: UCC searches, lien searches, title searches and other record searches. The Client is responsible for these pre-transaction charges. The Firm will advance the costs for all such services and submit bills to you for reimbursement. The Firm may seek prior approval from you if the anticipated aggregate monthly expense for such services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Document Management and eDiscovery Services.* The Firm subscribes to advanced document management software systems. These subscription-based systems are part of the Firm's overhead and not charged to the Client. The Client is responsible for eDiscovery services. eDiscovery service providers typically charge per gigabyte of information stored. Additional services from the outside vendor may be required other than storage of the information and typically these are separately charged. If the Firm uses an eDiscovery service during the representation, then the Firm will seek the Client's prior approval before incurring expenses for such services. Rather than billing these expenses through the Firm, the Firm reserves the right to have the Client contract directly with the outside vendor to pay for these expenses. For the avoidance of doubt, the Client is responsible to the Firm for the payment of all fees and expenses incident to the firm's review and processing of discovery materials that are not handled by an outside vendor.

*Printing, Shipping, Postage and Related Expenses.* For all printing, shipping, postage, and related services the Firm may handle them in house or use an outside vendor. The Client is responsible for all such printing, shipping, postage, and related services at costs or the prevailing market rate if handled in house. The Firm may seek prior approval from the Client if the anticipated aggregate monthly expense for printing, shipping, postage, and related services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Travel Expenses.* The Client will reimburse the Firm for expenses incurred in connection with out-of-town travel, but only for first class travel and, where appropriate, the cost of a rental car. All related travel expenses, i.e., lodging and meals, must be reasonable under the circumstances. The Firm will advance all such travel expenses and submit bills to you for reimbursement which will be included in the regular invoices to the Client. The attorney handling your matter will confer with you prior to traveling for your matter. Consistent with local bankruptcy rules, the Firm bills travel at ½ billable hourly rate when the lawyer is not working on the Client matter while travelling. The Firm will endeavor to locate a substitute service agent.

*Court Costs.* If requested by the Firm, the Client will advance court filing fees and all similar expenses prior to the Firm incurring such expenses. Any such expenses incurred by the Firm, will be included in the Firm's invoices to the Client for payment.

### EXHIBIT "1"

### Matters For Which FSS is Retaining The Reynal Firm

Fontaine v. Free Speech Systems, LLC, et al., D-1-GN-18-001605 (459th District Court, Travis County, Texas)

Heslin, et al. v. Free Speech Systems, LLC, et al, D-1-GN18-001835 (459th District Court, Travis County, Texas)

Pozner, et al. v. Free Speech Systems, LLC, et al. D-1-GN-18-001842 (459th District Court, Travis County, Texas)

Corsi et al. v. Free Speech Systems, LLC, et al., 21-50954 (5th Cir. Court of Appeals)

Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones and Free Speech Systems, LLC, Case No., X06-UWY-CV-18-6046436-S (the "Lafferty Matter") *

William Sherlach v. Alex Emric Jones and Free Speech Systems, LLC, X06-UWY-CV-18-6046437-S*

William Sherlach and Robert Parker v. Alex Emric Jones and Free Speech Systems, LLC, X06-UWY-CV-18-6046438-S*

*All these proceedings are before the Connecticut Superior Court, Waterbury District and consolidated in the Lafferty matter.

Free Speech Systems, LLC
August 21, 2022
Page 12 of 12

## Exhibit "2"

## Original Engagement Letter, Dated February 28, 2022

# Fertitta & Reynal LLP

February 28, 2022

Alex Jones
Infowars, LLC.
Free Speech Systems, LLC.

**LEGAL SERVICES AGREEMENT (Subject to Binding Arbitration)** —*Fontaine v. Jones*, D-1-GN-18-001605; *Heslin v. Jones*, D-1-GN18-001835; *Pozner v. Jones*, D-1-GN-18-001842; *Lewis v. Jones*, D-1-GN-18-006623.

Dear Mr. Jones,

You have asked that Fertitta & Reynal LLP (the law firm) represent you; Infowars, LLC; and Free Speech Systems, LLC. in the above-referenced matters. "You" and "Clients" in this agreement refer to the clients to be represented and not to a person who pays any legal fees or expenses for the benefit of the client (a person who pays legal fees for another person is not the client).

We have met, discussed this case, and agreed that the law firm will handle this case based on monthly flat fee of $100,000, beginning March 1, 2022. We have further agreed that if the trials, currently scheduled to commence in April and May, are delayed for any reason, then the firm's monthly fee will be $50,000 per month until such time as the cases are set for trial again, at which point the fee would once more become $100,000 per month for trial.

The scope of our representation at this time is limited to our engagement to represent you regarding these cases and no other matter, including but not limited to any criminal, administrative, civil, forfeiture, immigration, or other matter. Any other legal services will require a written engagement agreement for that purpose.

You have carefully reviewed this letter and asked any questions that you had about the meaning of any language in this agreement (including the scope of representation and any applicable fees), we have agreed on the flat fee arrangement described above. Prior to your signature below on this agreement, we discussed the alternative of charging you on an hourly fee basis, instead of a flat fee. Specifically, we discussed the potential advantages and disadvantages of flat fees versus a fee

1

_____
(Your initials)

713.228.5900     917 Franklin, Sixth Floor, Houston, Texas 77002     www.frlaw.us

based on hourly fees calculated as an hourly rate multiplied by each hour or portion of an hour for all time involved in this representation. For example, Fertitta Reynal's hourly rate is at least $800 an hour, depending on various factors, so the applicable hourly charges would be multiplied by the amount of time spent as measured by the hour (or increment of each hour). You have consulted with an attorney and determined independently that a monthly flat fee arrangement is to your advantage.

The law firm includes F. Andino Reynal, Zachary Fertitta, Joseph Magliolo, and Lynn Hardaway, and any one of these may work on your case (in addition to interns, law clerks, and other sub-contracted attorneys for legal research and writing that the law firm employs at its own expense, assuming a flat fee) at Fertitta Reynal's discretion. With notice to you, the firm is authorized to employ such other persons who it deems necessary for the proper handling of your case; however, you will be asked to approve the employment of other persons not in our law firm and may be [If mutually agreed] required to pay for their services by advance fee retainer or otherwise. These "other persons" may include (but are not limited to) consulting and/or testifying experts, investigators, consultants, translators, and other attorneys.

Court costs, deposition costs, duplication costs, consultant's fees and expenses, room and board, travel, translators, and other professional fees incurred on your behalf will be paid directly by you, or when advanced by the firm, will be borne by and paid for by you upon receipt of a statement for said expenses. Certain expenses will be forwarded to you for payment directly. [as mutually agreed]

The firm will provide to you, upon request, at monthly or otherwise appropriate intervals, an itemized statement setting forth in reasonable detail all advances for the above-mentioned expenses and a description in reasonable detail of all work performed on your behalf in these matters with the cost for services performed. Full payment is due on receipt of the statement of expenses. Interest will be charged at the rate of ten percent (10%) per annum on any balance, whether for fees or expenses, more than thirty (30) days past due.

You understand that no representations have been made concerning the successful outcome of any actions that may be taken on your behalf.

In the event that you desire to terminate the firm and retain other counsel to represent your interests in any manner encompassed by this employment, it is understood that you agree to pay all fees, costs and expenses incurred by you or on your behalf up to and including the date of termination.

2

_____
(Your initials)

The firm may withdraw from your representation in this matter at any time for any reason permitted by law including, but not limited to, if you render the representation unreasonably difficult for the firm to carry out, insist that the firm engage in conduct that is contrary to the judgment and advice of the attorneys and/or ethical requirements or other law, or fail to cooperate and comply fully with all reasonable requests by the firm on any matter encompassed by or made the basis of this representation or contract. The firm may also withdraw from your representation for non-payment of fees and expenses under this contract.

The firm shall withdraw if discharged by you. Such discharge shall be communicated in writing by you to the firm. If permission for withdrawal from employment is required by the rules of the court, the firm shall withdraw if the court approves.

You and the law firm agree that any claim or dispute between them or against any agent, employee, successor, or assign of the other, whether related to this agreement or otherwise, and any claim or dispute related to this agreement or the attorney-client relationship or legal duties contemplated under this argument, including the validity of this arbitration clause, shall be resolved by binding arbitration.

If a dispute should arise under this agreement, either party may make a demand for arbitration by filing a demand in writing with the other.

The parties to this agreement may agree on a single arbitrator, but in the event that they cannot so agree, there shall be three arbitrators, one named in writing by each of the parties within thirty (30) days after demand for arbitration is made, and a third to be chosen by the two arbitrators so named. Should either party fail to timely join in the appointment of the arbitrators, the arbitrators shall be appointed in accordance with the provisions of Texas Civil Practice and Remedies Code Section 171.041.

Any arbitration hearing conducted under the terms of this agreement, and all proceedings to enforce any of the provisions of this agreement, shall take place in Harris County, Texas only or a venue agreed upon by you and the law firm. The hearing before the arbitrator(s) of the matter to be arbitrated shall be at the time and place within that county selected by the arbitrator(s). Notice of hearing shall be given and the hearing conducted in accordance with the provisions of Section 171.044 et seq. of the Texas Civil Practice and Remedies Code. The arbitrator(s) shall hear and determine the matter and shall execute and acknowledge the award

3

_____
(Your initials)

in writing and deliver a copy thereof to each of the parties by registered or certified mail.

If there is only one arbitrator, his or her decision shall be binding and conclusive on the parties. If there are three arbitrators, the decision by any two shall be binding and conclusive. The submission of a dispute to the arbitrator(s) and the rendering of the arbitrator(s)' decision shall be a condition precedent to any right of legal action on the dispute. A judgment confirming the award of the arbitrators may be rendered by any court having jurisdiction; or the court may vacate, modify, or correct the award in accordance with the provisions of the Texas General Arbitration Act (Texas Civil Practice and Remedies Code Section 171.087 et seq.).

The cost and expenses of arbitration, including the fees of arbitrator(s), shall be borne by the losing party, or in such proportions as the arbitrator(s) shall determine. These fees, costs and expenses could be substantial.

The law firm advises you, regarding the advantages and disadvantages of arbitration as compared with a judicial (in court) determination of disputes, the following:

(1) There could be cost and time savings with an arbitration; however, these cost and time savings are not guaranteed and arbitration could, in some instances, be more expensive and take longer than a judicial determination of a dispute.

(2) Participation in arbitration results in the waiver of significant rights, such as the right to trial by jury.

(3) Arbitration could possibly result in a reduced level of discovery; which has the potential of saving costs, but savings are not guaranteed.

(4) Arbitration generally has the relaxed application of rules of evidence, which has the potential of saving costs, but savings are not guaranteed—and relaxed application of the rules of evidence may mean that certain evidence may be admitted or excluded in ways inconsistent with such rules.

(5) Arbitration awards are generally final and results in the loss of the right to judicial review because arbitration decisions can be challenged only on very limited grounds; and

4

_____
(Your initials)

>   (6)   Generally, arbitrations are more private compared to a public trial (i.e., arbitrations are confidential and not open to the public—unlike what occurs in court).

We cite these factors and considerations so that you will be aware that there are some significant advantages and disadvantages of arbitration. Should you need more information about arbitration before signing this agreement, the law firm encourages you to ask questions, until you feel your questions are answered, and encourage you to seek independent counsel to advise you before signing this agreement if you feel that a third party could help you better understand your responsibility under this agreement. While it is not necessary for you to get advice from a third party, the law firm encourages you to do so if you still have questions before signing this agreement. By signing this agreement, you are representing that all your questions have been satisfactorily answered and that you either have, or have not, sought advice from independent counsel and that you are satisfied that entering into this contact of representation with an arbitration provision to handle disputes concerning it, is in your best interest, and you want to proceed accordingly.

Following the final disposition of your case, the firm will place your file in storage. The firm will destroy your file no earlier than five years from the date of the final disposition of your case. Please immediately contact me if you would like anything, especially any original documents or items, from the file.

If you use a credit card to pay legal fees or expenses, a 3% (three percent) convenience/processing fee will be added to the charge. For example, if you pay $1,000 in fees on your credit card, the law firm will charge the card for $1,030. You understand and agree to this charge if you use a credit card. If you do not want to incur the convenience/processing fee, then you are welcome to use another form of payment such as cash, check, money order, cashier's check, or bank wire.

All terms and conditions of our agreement are set forth in this letter and can only be modified in a subsequent writing that you and I sign. Please read this letter carefully and feel free to ask me any questions. If you are satisfied with this letter and the reasonableness of its terms and conditions, sign your initials and name where indicated as evidence that you have fully read, understand, and agree to the terms and conditions. I will provide you with a photocopy of the signed letter. Further, if any language or provision in this agreement is determined by an arbitrator or court to be invalid or unenforceable, then the remaining provisions and language are preserved and shall be interpreted to give them full legal force and effect.

_____
(Your initials)

Sincerely,

*[signature]*

F. ANDINO REYNAL

I have carefully read, understand, and agree to the terms and conditions as set forth in this fee agreement for legal services. If I had any questions about the meaning of anything in this agreement, I asked those questions before signing below.

AGREED:

*[signature: Alex Jones]*

Alex Jones, individually and on behalf of
Infowars, LLC. and Free Speech Sytems, LLC.

6

_____
(Your initials)