IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Case No. 22--60043 |
| | § | |
| DEBTOR. | § | Chapter 11 (Subchapter V) |
| | § | |

**DEBTOR'S RESPONSE TO THE SANDY HOOK FAMILIES' CORRECTED MOTION
TO EXPEDITE MOTION TO (I) APPOINT TORT CLAIMANTS COMMITTEE AND
(II) REMOVE THE DEBTOR IN POSSESSION**

Free Speech Systems LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby files this response to *The Sandy Hook Families' Corrected Motion to Expedite Motion to (I) Appoint Tort Claimants' Committee and (II) Remove the Debtor in Possession* [ECF No. 107] (the "Motion to Expedite") filed by Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine ( the "Texas Plaintiffs") and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (the "Connecticut Plaintiffs") (together the "Plaintiffs") and would state as follows:

**PRELIMINARY STATEMENT**

1.     The Plaintiffs' Motion to Expedite should be denied. First, there is no emergency justifying expedited relief present or even asserted. Second, the only issue in common among the Plaintiffs' *Motion to (I) Appoint Tort Claimants' Committee and (II) Remove the Debtor in Possession* [ECF No. 102] (the "Plaintiffs' Motion") and the Debtor's motion to use cash collateral [ECF No. 6] (the "Cash Collateral Motion") is whether the secured claim asserted by

PQPR is void *ab initio*. But that issue is only tangentially relevant to the Plaintiffs' Motion, and judicial economy and the Debtor's estate is better served by holding separate hearings. The focus of the hearing on the Cash Collateral Motion should be on the validity of PQPR's asserted claim and the proposed use of cash collateral, rather than scurrilous attacks on the independence and business judgment of the Debtor's chief restricting officer (the "CRO"). Finally, there are additional reasons that justify allowing the full notice period for the Debtor and other parties-in-interest to respond to the Plaintiffs' Motion and holding separate hearings.

2.      While the Debtor and its CRO are endeavoring to reorganize the Debtor's business for the benefit of creditors, the Plaintiffs' objective is to put Alex Jones and the Debtor out of business.[1] The Plaintiffs' Motion is nothing more than a thinly veiled effort to derail the Debtor's reorganization in furtherance of that goal. The refusal of the Plaintiffs or their counsel to certify the accuracy of the Plaintiffs Motion as an emergency motion under Bankruptcy Local Rule 9013-1(i)—and instead seeking reduced notice through the limited Motion to Expedite— confirms that the Plaintiffs' Motion is just a distraction. Neither the Plaintiffs nor their counsel are willing to stand behind the allegations as required by this district's Bankruptcy Local Rules.

3.      At the end of the day, the Plaintiffs could have filed the Plaintiffs' Motion in time to be heard on regular notice if they wanted it considered at the same time as the Cash Collateral Motion. But they chose not to. They could have described the emergency requiring expedited relief and certified the accuracy of the Plaintiffs' Motion as required by the Bankruptcy Local Rules. But again, they chose not to. Under these circumstances, the Court should allow the Debtor and other parties in interest the twenty-one days to respond provided under the

---

[1] After the Petition Date, Chris Ball, an attorney representing the Texas Plaintiffs, made his clients' goals clear when he asked the jury in the Heslin/Lewis Suit to "*not only take Alex Jones's platform that he talks about away*" and "*make certain that he can't rebuild the platform*" and asserted "*that's what matters*." *See* https://www.youtube.com/clip/Ugkx811OqvsGol7sxgzxpL6LeZtf4BW-DVGH. The Plaintiffs are pursuing the same thing in this case and it is the very antithesis of the purposes of chapter 11 of the Bankruptcy Code.

Bankruptcy Local Rules and time to conduct relevant discovery so they can fairly participate in this chapter 11 case.

## **RESPONSE**

### **A.  There is No Emergency Justifying an Expedited Setting of the Plaintiffs' Motion.**

4.      Emergency relief is only appropriate where a delay in the relief requested will cause material harm to the moving party or the bankruptcy estate. Bankruptcy Local Rule 9013-1(i) requires a "detailed statement why an emergency exists, and the date relief is needed to avoid the consequences of the emergency." In the same vein, this Court's procedures require an explanation in the body of the motion setting forth why emergency consideration is required and the harm that will be suffered if emergency relief is not obtained. *Court Procedures, Christopher M. Lopez, United States Bankruptcy Judge* at ¶ 5.

5.      No emergency exists here and neither the Plaintiffs' Motion nor the Motion to Expedite even attempt to argue that one does.[2] The Debtor's estate is operating profitably and generating significant positive cash flow. The Plaintiffs are actively involved in this chapter 11 case and able to investigate the Debtor's actions. The Debtor and PQPR have voluntarily agreed to provide the Plaintiffs and the Subchapter V Trustee all the information that a committee would customarily receive. If the Plaintiffs' Motion is an "emergency," it is hard to imagine *any* request for relief in a chapter 11 case for which the full notice period provided by the Bankruptcy Local Rules would be required.

---

[2] Merriam Webster provides two (2) definitions of "emergency": 1. "an unforeseen combination of circumstances or the resulting state that calls for immediate action" 2: an urgent need for assistance or relief. The Motion to Expedite fails to articulate any unforeseen circumstances requiring immediate action or urgent need for relief.

**B. Judicial Economy Would Not be Served by an Expedited Setting of the Plaintiffs' Motion at the Same Time as the Hearing on the Cash Collateral Motion.**

6.      The Plaintiffs attempt to justify an expedited setting on the grounds that "[m]any factual issues overlap between the cash collateral objections and the Sandy Hook Families' request to appoint a committee and remove the Debtor in Possession" and the reduced notice will enhance judicial economy. However, the Plaintiffs fail to identify any factual issues that overlap or describe how judicial economy would be better served by a combined hearing. There are none and it would not.

7.      The Plaintiffs objected to the Cash Collateral Motion on the grounds that the secured claim asserted by PQPR was void *ab initio* and use of cash collateral should be narrowly tailored with respect to insider payments. The Court has given the Plaintiffs wide latitude in the previous hearings on the use of cash collateral, but many hours of testimony and argument had absolutely nothing to do with the Plaintiffs' primary cash collateral objection.[3]

8.      While the issues in dispute on the Cash Collateral Motion are discrete, the Plaintiffs' Motion is more wide-ranging. The crux of that 10,000-word fiction is that removal of the Debtor as a debtor-in-possession and appointment of a tort claimants is justified because (1) the CRO had some undefined conflict of interest when he sent the Debtor an engagement letter on May 19, 2022, even though the Plaintiffs had taken action to dismiss all their claims against the InfoW Debtors with prejudice either by May 19, 2022; (2) the CRO's decision to address PQPR's lien through an avoidance action, a plan of reorganization, subordination, or other procedure after obtaining authority to use cash collateral; and (3) the Debtor engaged in insider

---

[3] Although the Debtor has doubts that either the Cash Collateral Motion or the Plaintiffs' Motion properly put the issue before the Court, no exigency exists that requires immediate consideration of the validity of the PQPR claim or lien. The Debtor and PQPR have not sough validation of the PQPR's asserted claim or liens in connection with the use of cash collateral. They have not sought a waiver of the rights to challenge PQPR's asserted claim or lien, nor have they requested any limited "challenge period" to contest PQPR's asserted claims or liens. And there is no jeopardy of limitations applying to any challenge to PQPR's claim or liens. Quite simply, there is no emergency even if the Plaintiffs' challenge to the Cash Collateral Motion fails.

transactions and had substandard business operations and operating results prior to the Petition Date and the appointment of the CRO. Whether PQPR's asserted claim and lien are void *ab initio*—as opposed to merely avoidable under chapter 5 of the Bankruptcy Code or under TUFTA—is not *entirely* irrelevant to the Plaintiffs' Motion, but what is really at issue is whether the CRO exercised proper business judgement in deciding not to immediately challenge PQPR's claim in its first day motions.[4]

9.      Judicial economy and the Debtor's bankruptcy estate would be far better served if the hearing on cash collateral remains focused on the validity of PQPR's claim. If the Court allows the Plaintiffs to muddy the issue by setting the Plaintiffs' Motion at the same time as the Cash Collateral Motion, the hearing on cash collateral will devolve into the Plaintiffs' counsel throwing that mud instead of focusing on the evidence and arguments relevant to the validity of PQPR's claim and the wisdom of the proposed uses of cash on which PQPR asserts a lien. The result of a combined hearing would be more of the same absurd obfuscation of the cash collateral issues with improper character assassination of the CRO as has been the Plaintiffs main thrust to date.

**C. Other Cogent Reasons Compel Allowing the Full Notice Period and Hold Separate Hearings on the Cash Collateral Motion and the Plaintiffs' Motion.**

   *i.   Holding Hearings on the Cash Collateral Motion and the Plaintiffs' Motion at the Same Time Would Put the Debtor in a Difficult Position.*

10.      Combining the hearings on the Cash Collateral Motion and the Plaintiffs' Motion would also potentially put the Debtor in a catch-22. Responding to the Plaintiffs' Motion

---

[4] Most of the allegations in the Plaintiffs' Motion, if established, would tend toward PQPR's claim and/or lien being avoidable rather than void *ab initio*. The Debtor, through its CRO, recognized this and negotiated in its proposed cash collateral order for (a) no validation of PQPR's asserted claim or lien, (b) replacement liens only to the extent of the valid and unavoidable prepetition liens, (c) no releases of any causes of action, including avoidance actions, against PQPR, (d) no limit on the challenge period for any other party in interest in the Debtor's chapter 11 case, and (e) no restriction on the use of cash collateral to fund an avoidance action against PQPR. It is hard to imagine what else the Debtor could have received in a consensual cash collateral order, but the Plaintiffs views will presumably come to light in the hearing on the Cash Collateral Motion if the Plaintiffs are forced to focus.

requires the Debtor to justify the business judgment behind its decision not to immediately challenge PQPR's asserted claim in connection with obtaining authority to use cash collateral. It would be useful—though not required—for the Debtor to present as evidence the documents that support the validity of PQPR's claim that the CRO considered when deciding to put off any fight with PQPR for another day.[5] However, that evidence would be contrary to the Plaintiff's position that PQPR's claim is invalid, to the detriment of the Debtor's estate.[6] The Court should not allow the Plaintiffs put the Debtor into that position through the dubious Motion to Expedite.

11.     Fortunately, there is a simple and practical solution. If the Court holds the hearing on the Plaintiffs' Motion *after* the hearing on the Cash Collateral Motion, the evidence for and against the validity of PQPR's claim will already have been presented to the Court and possibly ruled upon. Evidence showing the validity of the PQPR's claim and lien will have been submitted by PQPR, the entity with the clear interest in establishing the validity of its claim, rather than the Debtor incurring unnecessary expense trying to navigate between the Scylla and Charybdis that the Plaintiffs want to create to baselessly impede the Debtor's reorganization.[7]

---

[5] Although these documents are not strictly necessary to establish that the CRO exercised proper business judgment, they would be useful to the Court's final determination. The Debtor should be allowed to present such evidence in connection with the Plaintiffs' Motion without having to contradict the Plaintiffs' position that PQPR has no claim that requires adequate protection at the hearing on the Cash Collateral Hearing.

[6] It would of course be good for the Debtors' estate for the Plaintiffs to succeed in their opposition to PQPR's claim, even though there are significantly less expensive ways and more probable ways to achieve that result than in connection with a contested first-day motion for authority to use cash collateral.

[7] In any hearing on the use of cash collateral, "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p)(2). The Debtor's burden is to establish that the proposed adequate protection is sufficient. 11 U.S.C. § 363(p)(1). The Plaintiffs are arguing, in effect, that *less or no* adequate protection is appropriate because PQPR does not have a valid claim secured by the Debtor's cash.

     *ii.*    *Providing the Debtor and Other Parties in Interest the Standard Amount of Time to Respond to the Plaintiffs' Motion Would Allow the Debtor to Conduct Discovery and the Subchapter V Trustee to Investigate.*

12.     The Debtor intends to take discovery related to the Plaintiffs' Motion. Written discovery will likely drastically reduce the disputed issues. Giving the Debtor twenty-one days to respond and setting a hearing a reasonable time thereafter will allow time for that process.

13.     It would also give the Subchapter V Trustee time to investigate the costs and benefits of removing the Debtor as debtor in possession. The Debtor suggested to the Subchapter V Trustee prior to the filing of the Plaintiffs' Motion that she inspect the Debtor's operations but that has not yet been able to happen. Information about the ability of the Subchapter V Trustee to take control of the Debtor's operations without diminishing the value of the estate is necessary to determine whether to remove the Debtor as debtor-in-possession. The Court should allow reasonable time for that investigation.[8]

     *iii.*    *Allowing The Debtor and Other Parties in Interest the Standard Amount of Time to Respond to the Plaintiffs' Motion Would Allow the Plaintiffs to Properly Serve the Plaintiffs' Motion and Comply with the Bankruptcy Local Rules.*

14.     Bankruptcy Local Rule 9013-1(d) governs service of pleadings related to contested matters in this district. The twenty largest unsecured creditors are among the parties that should be served with the Plaintiffs' Motion.

15.     Here, the Plaintiffs failed to provide notice to any of the other unsecured creditors in this case of the Plaintiffs' Motion. The Plaintiffs are not the only creditors or parties in interest in this chapter 11 case and should not be allowed to ignore the notice requirements and trample the rights of other creditors whose primary interest is getting paid, not destroying the source from

---

[8] If anything, a reasonable amount of time would exceed the twenty-one-day period to respond provided under the Bankruptcy Local Rules. It would certainly not be less than that period.

which claims can be paid. Before a hearing on the Plaintiffs Motion takes place, this Court should compel the Plaintiffs to give adequate and proper service.

16.     Bankruptcy Local Rule 9013-1(i) is another problem for the Plaintiffs. The rule provides that "that a motion seeking an emergency hearing must be certified for its accuracy by the party seeking emergency relief or by its counsel." The allegations in the *motion* must be certified as accurate.

17.     In an apparent attempt to avoid certifying the accuracy of the Plaintiffs' Motion, the Plaintiffs instead filed it as a regular motion and then filed separately the Motion to Expedite. The certification attached to the Motion to Expedite provides:

**BLR 9013-1(i) CERTIFICATE**

Pursuant to BLR 9013-1(i), I hereby certify that the information contained in the foregoing document with respect to the need for emergency relief is accurate, true, and correct to the best of my knowledge.

/s/ Jarrod B. Martin
Jarrod B. Martin

The only thing being certified as accurate is the "need for emergency relief." But the Motion to Expedite does not assert there *is* any need for emergency relief. *See supra* ¶ 5. The certification is a clever effort by the Plaintiffs to certify nothing at all.

18.     The reason for the reluctance of the Plaintiffs or their attorneys to certify the accuracy of the Plaintiffs' Motion will become obvious at trial. The evidence will show that the Plaintiffs' Motion is brimming with inaccuracies and allegations that have no basis in fact.

19.     The Bankruptcy Local Rules in this district make requesting emergency relief procedurally easy but require movants to stand behind their allegations through certification. The Plaintiffs and their counsel are unwilling to make that required certification and take responsibility for the many inaccuracies in the Plaintiffs' Motion. In light of this failure, the

Court should give the Debtor and other parties in interest the full notice period provided by the Bankruptcy Local Rules and time for discovery.

## **CONCLUSION**

20.     There is no emergency here and judicial economy will not be served by an expedited hearing on the Plaintiffs' Motion. The Plaintiffs could have easily filed the Plaintiffs' Motion in time to allow it to be set at the same time as the Cash Collateral Motion. The Plaintiffs—or, more likely, their attorneys—chose not to do so, just like they chose not to properly serve the Plaintiffs' Motion or certify to its accuracy as required by the Bankruptcy Local Rules. The Motion to Expedite should therefore be denied and the hearing set after the Debtor and other parties in interest have the full twenty-one days to object and time to conduct discovery.

21.     Further, the hearing on the Plaintiffs' Motion should be conducted separately from the hearing on the Cash Collateral Motion. The factual and legal issues are distinct and judicial economy would be furthered by separate hearings. The Plaintiffs have wasted enough of the Court's time and the estate's money already.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 28, 2022.

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*R. J. Shannon*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served (a) at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and (b) within one hour of filing, by email on the following parties:

Ryan Chapple
CAIN & SKARNULIS PLLC
303 Colorado Street Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Randy W. Williams
BYMAN & ASSOCIATES PLLC
7924 Broadway, Suite 104
Pearland, Texas 77581
rww@bymanlaw.com

Jarrod B. Martin
Chamberlain, Hrdlicka, White, Williams &
Aughtry, PC
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlainlaw.com

Avi Moshenberg
McDowell Hetherington LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
avi.moshenberg@mhllp.com

Melissa Haselden
Subchapater V Trustee
700 Milam, Suite 1300
mhaselden@haseldenfarrow.com

Ha Nguyen
OFFICE OF THE U.S. TRUSTEE
515 Rusk Ave STE 3516
Houston, TX 77002
Ha.Nguyen@usdoj.gov

*/s/R. J. Shannon*
R. J. Shannon