IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 22–60043 |
| Free Speech Systems, LLC, | § § | Chapter 11 |
| Debtor. | § § | Subchapter V |

**THE TEXAS PLAINTIFFS' EMERGENCY MOTION TO COMPEL DISCOVERY FROM PQPR HOLDINGS LIMITED, LLC**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (the "**Texas Plaintiffs**"), creditors and parties-in-interest, by and through their undersigned counsel, file this Emergency Motion to Compel Discovery from PQPR Holdings Limited, LLC (the "**Motion**") and respectfully state the following:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012–6 (S.D. Tex. May 24, 2012). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105 of the Bankruptcy Code,[1] Rules 7026, 7033, 7034, 9014 of the Federal Rules of Bankruptcy Procedure,[2] and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas.

3. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PRELIMINARY STATEMENT

4. A key question that has emerged in this bankruptcy is whether the alleged $54 million secured debt that Free Speech Systems LLC ("**FSS**" or the "**Debtor**") owes PQPR Holdings Limited, LLC ("**PQPR**") is a valid claim (the "**PQPR Claim**"). The PQPR Claim allegedly arose from unpaid amounts due from the debtor for vitamin products purchased by PQPR, marked up, and then resold to the Debtor dating back to some unspecified date prior to 2018. The question over the PQPR Claim's validity goes to several motions presently before the Court. One of these motions is the Debtor's cash-collateral motion[3]—in which Alex Jones's company, FSS, seeks to pay enormous sums to Alex Jones's other company, PQPR, under the alleged PQPR Claim. The Texas Plaintiffs (and the Connecticut Plaintiffs) objected to the cash-collateral motion largely because they

---

[1] Any reference to "**Code**" or "**Bankruptcy Code**" is a reference to Title 11 of the United States Code, and any reference to "**Section**" or "**§**" refers to the corresponding section in Title 11, unless stated otherwise.
[2] Any reference to "**Rules**" or "**Bankruptcy Rules**" is a reference to the Federal Rules of Bankruptcy Procedure, unless stated otherwise.
[3] ECF No. 6

doubted the debt's legitimacy. In support of their objection, they served PQPR with *The Sandy Hook Plaintiff's First Set of Interrogatories and First Requests for Production of Documents to PQPR Holdings Limited, LLC* (the "**Requests**"), aimed at unearthing evidence about the PQPR Claim.

5. PQPR responded by lodging a volley of impermissible boilerplate objections and by making a production wholly insufficient under the standard required by the Bankruptcy Rules, and far less than what the requests sought. At bottom, it has largely refused to provide documents and information in response to requests that investigate the core issue of whether the PQPR Claim is real. It merely produced a handful of self-serving documents, like recently prepared spreadsheets allegedly used to calculate the debt, without historical documents proving the creation or accrual of that alleged debt or which could corroborate or undermine its alleged legitimacy.

6. What's more, instead of responding to reasonable discovery requests or even conferring with the Texas Plaintiffs about its discovery responses, PQPR has: (1) filed a motion to have the Subchapter V Trustee conduct an investigation; (2) sought to expedite that motion; and (3) requests that the Court abate the hearing on the Sandy Hook Plaintiffs' motion to appoint a tort committee and remove FSS as debtor in possession. PQPR's failure to produce documents and information in accordance with its obligations under the Rules casts serious doubt on any assurances of its offering to cooperate with an investigation by the subchapter V Trustee into the validity of the PQPR Claim. The intransigence PQPR has demonstrated raises questions as to whether PQPR is a true creditor, or a mere front to funnel Alex Jones's money.

7. Regardless of whether PQPR desires to cooperate in discovery—and all current signs indicate that it does not want to—the Rules do not account for a party's whims; PQPR must comply. By this motion, the Texas Plaintiffs respectfully request that the Court compel PQPR to provide the information sought by the Requests.

## BACKGROUND

8. The Texas Plaintiffs sued Alex Jones and FSS ("**Jones Defendants**") based on their lies that the mass shooting at Sandy Hook Elementary was a hoax.[4] During the litigation, these Jones Defendants' discovery abuses were so severe and recurrent that the trial court granted default judgments on liability. Subsequent to the default judgment, a series of trials on the issue of damages commenced. The first of the Texas Plaintiffs' damages trials was this past August and resulted in the jury awarding over $49 million. Before the bankruptcy was filed, two other cases were set to be tried this year.

9. While these cases were pending, however, the Jones Defendants started diverting their assets. Along with drawing millions of dollars from FSS, Alex Jones had his company enter into two secured promissory notes with PQPR, a company owned and controlled directly and indirectly by Alex Jones and his parents. The notes cover a supposedly unpaid debt that began accruing years earlier in an arrangement where FSS sold PQPR's products on the InfoWars website. Under this alleged arrangement, PQPR was to be reimbursed for the costs of the products and receive a percentage of the sales revenue. FSS supposedly never paid PQPR, and accumulated a $54 million debt. Before default judgments were rendered, FSS had no memory of this $54 million debt. But after

---

[4] Marcel Fontaine's claims are based on falsehoods the Jones Defendants spread that he was the shooter responsible for murdering 17 people at a high school in Parkland, Florida.

these default judgments were entered in favor of the Texas Plaintiffs, FSS conveniently recalled these ostensible debts and began paying PQPR about $11,000 a day.

10. The validity of the PQPR Claim is a central issue in this chapter 11 case, and therefore a full and transparent discovery process is crucial to this case's speedy resolution. The Texas Plaintiffs have a pending motion to appoint a tort claimants' committee and to remove FSS as debtor in possession, in large part because of the PQPR debt's disputed legitimacy.[5] PQPR responded with its own motion, asking the Court to authorize the subchapter V trustee to investigate the alleged debt—implicitly indicating to the Court that PQPR will cooperate fully in such an investigation, and have now asked the Court to expedite consideration of its motion.[6]

11. But PQPR has not cooperated in an investigation or the discovery process, and instead has caused unnecessary delay, the accrual of costs to the estate, and wasted time as a result of its discovery games. PQPR has obstructed the Texas Plaintiffs' attempts to investigate the PQPR Claim as it relates to SS's cash-collateral motion. As the Court knows, that motion seeks to pay PQPR sizable amounts for the PQPR Claim, a course of action to which the Texas Plaintiffs emphatically object.

12. In support of their objection, the Texas Plaintiffs served PQPR with interrogatories and requests for production that explore the alleged debt's validity.[7] PQPR responded with boilerplate objections that do not apply, and vague objections that obscure whether PQPR is withholding responsive documents.[8] Unfortunately, when confronted

---

[5] ECF Nos. 102, 103, and 104.
[6] ECF Nos.124 and 136.
[7] See **Exhibit 1**.
[8] See **Exhibit 2**.

**THE TEXAS PLAINTIFFS' EMERGENCY MOTION TO COMPEL DISCOVERY FROM PQPR**     PAGE | 5

about its discovery responses, PQPR disappeared. The Texas Plaintiffs have emailed PQPR's counsel numerous times in the past week to confer about its discovery responses.[9]

13. But PQPR, adhering to the Alex Jones and FSS discovery playbook, has ignored the emails altogether, and has not responded to or spoken with the Texas Plaintiffs to meet and confer.

## ARGUMENTS AND AUTHORITIES

14. The Court should compel PQPR to produce all responsive, non-privileged, documents and information sought in the Texas Plaintiffs' discovery requests.[10] "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit."[11] Responses to written discovery that contain an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."[12] Through that lens, PQPR's barebones responses and objection warrant an order compelling full and complete discovery.

---

[9] See **Exhibit 3**.
[10] Fed. R. Civ. P. 37(a)(1) (stating that after a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery).
[11] Fed. R. Civ. P. 26(b)(1).
[12] Fed. R. Civ. P. 37(a)(4).

A. **THE TEXAS PLAINTIFFS' DISCOVERY REQUESTS RELATE TO THE CORE ISSUE OF WHETHER THE PQPR DEBT IS LEGITIMATE.**

15.     The Texas Plaintiffs' discovery requests target the key concerns raised in their objection to the Debtor's cash-collateral motion—whether the PQPR Claim is valid.[13] Even if that issue is deferred and not addressed in the context of cash collateral, it is relevant to the Tort Committee Motion and will be front and center in connection with any ultimate plan proceedings and/or adversary proceedings related to the PQPR debt and its alleged secured status.  PQPR does not seem to disagree that the validity of the PQPR Claim is a discoverable topic, it manifestly is.  Yet, PQPR has largely refused to provide documents and information in response to requests that investigate this core issue.  It produced merely self-serving records, like a recently prepared spreadsheet allegedly used to calculate the debt, and produced none of the historical documents proving when the alleged debt was establish or how it accrued, which could corroborate or undermine its legitimacy.  The Texas Plaintiffs requested support for PQPR's alleged secured claim, and they're entitled to discover them.

16.     The following summary of these requests shows they are well in line with the process contemplated by the Rules:[14]

- **Requests 1–5:** seek communications and documents related to any contracts between FSS and PQPR—including their drafting, negotiation, transmittals, and execution.

- **Request 6:** seeks documents and communications evidencing efforts by FSS or PQPR to enforce any of their contracts.

- **Request 7:** seeks documents and communications relating to the negotiation of the forbearance agreement between FSS and PQPR—including its drafting, negotiation, transmittal, and execution.

---

[13] *See also* ECF No. 27.
[14] *See* Ex. 1

- **Request 8:** seeks PQPR's financial statements, profit and loss reports, reports of expenditures, bank statements, ledgers, accounting-software (like QuickBooks) entries.

- **Requests 9–12:** seek documents and communications related to products or services exchanged between PQPR and FSS and payments made in return and other payments by FSS to PQPR.

- **Requests 13–21**: seek documents and communications related to PQPR's organization, employee lists and records, and business operations.

- **Interrogatories 1–2**: seek to identify by year amounts paid by PQPR for products and services it bought on behalf of or sold to FSS, and amounts paid by FSS to PQPR for products and services.

- **Interrogatories 3–4:** seek to identify who participated in the negotiations of any contracts between FSS and PQPR, and who participated in efforts by FSS or PQPR to enforce them.

- **Interrogatories 5–6**: seek to identify PQPR's employees and facilities.

- **Interrogatories 7–8**: seek to identify payments PQPR made to its owner(s) and to identify who provided accounting or bookkeeping services.

17. These requests are relevant to the validity of the PQPR Claim, and the Texas Plaintiffs are entitled to discovery on that issue before the Debtor pays PQPR the enormous amounts proposed in its cash-collateral motion.

B. **PQPR'S DISCOVERY RESPONSES CREATE NO LEGAL GROUNDS FOR DENYING DISCOVERY.**

18. Nevertheless, PQPR apparently refuses to produce documents and information sought in the discovery requests. As a threshold matter, it's unclear what documents and information PQPR is withholding and under what objection the documents and information are being withheld. For the most part, PQPR simply lists boilerplate objections and then declares what documents it will supposedly produce. Given the nature of information requested and that PQPR produced a meager 119 pages, either PQPR is

withholding documents or the documents do not exist. (Unfortunately, PQPR has refused to speak or email the Texas Plaintiffs, let alone enlighten the Texas Plaintiffs which of the options it is.)  It is impossible to imagine that no further responsive documents exist, but if that is the case PQPR should withdraw its objections and state they have produced everything. Obviously, the non-existence of further files is itself is probative of whether the PQPR Claim is valid.

19. If the documents do exist but are being withheld, then the Texas Plaintiffs are entitled to receive those documents—and to know what objection they're being withheld under.

20. To date, however, PQPR has obscured whether other responsive documents exist or are being withheld.  Instead, it has only allowed the Texas Plaintiffs access to the self-serving information on the debt's validity that it's willing to share.  So, for example, rather than provide all responsive information, PQPR uses boilerplate objections insisting the requests "are not relevant to the [Plaintiffs] claims or the promissory notes at issue" and repeatedly chooses instead to produce only the "promissory notes at issue in this matter the work papers used to determine the debt underlying the notes."[15]  The Texas Plaintiffs are entitled to discover more than this, and if PQPR thinks differently, it must specifically identify why, in proper responses and objections, not the boilerplate objections that are disdained by the Rules.

21. Independent of PQPR's unsupportable objections, PQPR has refused to produce any documents in native format or any documents and communications evidencing the execution or transmittal of any documents produced.  Production in native format, with

---

[15] *See generally* Ex. 2.

metadata intact is common in discovery and essential to dating the creation of the alleged notes. But, PQPR produced only pdf versions of records like the two promissory notes and security agreement at issue. And beyond that, it has not produced *any* documents evidencing when the promissory notes and security agreement were actually executed. No emails attaching them were produced. No records requesting that Jones sign them were produced. No communications were produced that discuss with FSS why promissory notes are needed. Nor were any communications produced explaining why the notes needed to be secured by essentially everything FSS owns. In a case where the authenticity of the underlying debt, the promissory notes, and the security agreement are in question, native files showing when these documents were created and transmitted must be produced.

22.     As another example, despite being requested in the underlying Sandy Hook cases, PQPR has only now produced a handful of invoices to FSS supposedly issued in 2015. But PQPR has produced no documents or communications showing when these invoices were made or transmitted to FSS. PQPR has not produced accounting entries (certainly not in native format) substantiating when the supposed debts were recorded in PQPR's books. PQPR has not produced any documents or communications it received from FSS in response to these supposed invoices that were issued. PQPR has not provided any underlying records supporting the amounts owed that are reflected in the invoices. Again, the authenticity of these invoices goes to the core issue of whether the PQPR Claim is legitimate. Yet PQPR has produced no responsive documents or information requested that one would expect to exist if the debt was *bona fide*. Instead, PQPR handpicked the documents it wants the Texas Plaintiffs to see—not what responsive documents actually exist.

23. And little needs to be said about PQPR's objection that the requests are "not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues."[16] That PQPR believes one set of discovery requests into whether a $54 million debt should be paid is too burdensome and expensive begs the question of how massive an alleged debt must be before its legitimacy merits discovery. Nothing about the discovery requests themselves impose any unreasonable burden or expense, and PQPR has not attempted to identify anything to that effect. PQPR has not articulated what actual burden and expense the requests would cause it to incur, because it cannot do so. In any event, any hypothetical burden or expense would hardly outweigh discovery into one of the core issues in this bankruptcy and the Debtor's cash-collateral motion—the PQPR Claim's legitimacy. How PQPR can insist that third-party discovery into the debt's validity carries low importance to other parties' motion and objections raises serious concerns about PQPR's commitment to cooperate in any investigation.

24. The peculiar circumstances surrounding the PQPR Claim should place the Court on high alert that important information in the documents and communications exist that PQPR does not want to provide. When weighing burdens and benefits here, the scales tip in favor of discovery.

**EMERGENCY RELIEF REQUESTED**

25. Emergency consideration of this Motion is warranted because the information requested in discovery is necessary for preparation relating to the corporate

---

[16] *See generally* Ex. 2.

representative depositions of PQPR and FSS, with the FSS deposition scheduled for September 23, 2022.

## CONCLUSION

WHEREFORE, the Texas Plaintiffs respectfully request that the Court enter an order compelling PQPR to produce all responsive information sought in the Texas Plaintiffs' discovery requests and granting related relief.

Dated: September 9, 2022

Respectfully submitted,

**MCDOWELL HETHERINGTON LLP**

By: */s/ Avi Moshenberg*
Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

and

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
Tara T. LeDay
Texas Bar No. 24106701
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com
E: tara.leday@chamberlainlaw.com

*Bankruptcy Counsel for the Texas Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 9, 2022, a true and correct copy of this Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

## BLR 9013-1(i) CERTIFICATE

Pursuant to BLR 9013-1(i), I hereby certify that the facts and circumstances giving rise to the emergency relief contained in the Motion are true and correct to the best of my knowledge, information, and belief.

*/s/ Jarrod B. Martin*
Jarrod B. Martin