# Exhibit 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | Chapter 11 |
| **Free Speech Systems LLC,** § | |
| § | Case No. 22–60043 (CML) |
| Debtor. § | |

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), as made applicable hereto by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Federal Bankruptcy Rules**"), and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, the "**Texas Plaintiffs**") creditors and parties-in-interest in the above-captioned case ("**Bankruptcy Case**"), by and through their undersigned counsel, serve their First Set of Interrogatories (collectively, the "**Interrogatories**" and each individually, an "**Interrogatory**") and First Requests for Production of Documents (collectively, the "**Requests**" and each individually, a "**Request**") to PQPR Holdings Limited, LLC ("**PQPR**").  Please produce on a rolling basis all Documents and other things requested herein, in accordance with the definitions and instructions set forth herein and all applicable Federal Rules, Federal Bankruptcy Rules, and Local Rules to the offices of McDowell Hetherington, LLP, 1001 Fannin Street, Suite 2700, Houston, Texas 77002, and by electronic mail to the undersigned counsel.  The written responses to these Requests shall be due on August 17, 2022.

## DEFINITIONS

The following definitions apply to the Requests. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

2. The terms "*all*," "*any*," and "*each*" shall each be construed as encompassing any and all of these terms.

3. The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents or responses that might otherwise be construed to be outside of its scope.

4. The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing, or constituting.

5. The term "*Debtors*" shall refer to Free Speech Systems, LLC.

6. The term "*Document*" is defined to be synonymous in meaning and equal in scope to the usage of the term "*documents or electronically stored information*" in Fed. R. Civ. P. 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations. This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

7. The term "*FSS*" shall mean and refer to "Free Speech Systems, LLC."

8. The term "*including*" shall mean "including, but not limited to."

9. The term "*Person*" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

10. The term "*Petition Date*" shall mean July 29, 2022.

11. The term "*PQPR*" shall mean PQPR Holdings Limited, LLC.

12. The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, consultants, advisors, and testifying or non-testifying experts.

13. The terms "*You*" and "*Your*" shall mean and refer to PQPR Holdings Limited, LLC.

14. The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

15. Any references to a Person shall be deemed to include such Person's agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, or any other individual or entity acting or purporting to act on behalf of such Person.

16. The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

## INSTRUCTIONS

1. These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules, the Federal Rules, and the Local Rules.

2. Each Request is continuing in nature. If at any time additional Documents responsive to the Requests come into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3. You are requested to produce all Documents and information requested herein that are within Your possession, custody, or control or in the possession, custody, or control of Your current and former officers, directors, agents, employees, representatives, Affiliates, Professionals, or any other Person or entity acting or purporting to act on Your behalf.

4. All Documents shall be produced in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format. All Documents shall be produced with metadata, including but not limited to the date created/sent, author, recipients, cc-copies, bcc-blind copies, and whether the document contains redactions.

5. If the response to any Request consists, in whole or in part, of an objection on the basis of or including burdensomeness, then provide those documents that can be produced without undue burden. For such documents that are too burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

6. Any Document or other information that falls within the scope of these Requests that is withheld on the basis of a claim of privilege, work product protection, or any other grounds should be identified in writing by date, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, document type, and topic covered and listed with a statement of the grounds alleged for withholding such document, communication, or other information, including any common interest or joint defense privilege claimed.

7. If Your response to any Request is any other objection, You must indicate if information is being withheld based on the objection(s), provide all information not covered by the objection, and state the specific basis of the objection.

8. If any Document responsive to these Requests has been destroyed, state when the Document was destroyed, identify the Person who destroyed the Document, and the Person who directed that it be destroyed. Additionally, detail the reasons for the destruction, describe the nature of the Document, identify the Persons who created, sent, received, or reviewed the Document, and state in as much detail as possible the contents of the Document.

9. Subject to Instruction No. 4 above, Documents should be produced in the manner they are kept in the ordinary course of business. In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

10. Except where otherwise specified, the Requests seek Documents dated, created, or otherwise obtained through the present. For the avoidance of doubt, these Requests seek Documents created before and after the Petition Date.

11. By serving these Requests, the Sandy Hook Plaintiffs reserve all rights, do not waive any of their rights, and expressly reserve the right to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1. Produce all agreements, contracts, and/or promissory notes between FSS and PQPR.

2. Produce all documents and communications evidencing any agreements, contracts, and/or promissory notes between FSS and PQPR.

3. Produce all communications (internal and with FSS) relating to the negotiation of terms and execution of any agreements, contracts, and/or promissory notes between FSS and

PQPR—including but not limited to exchange of drafts of any agreements, contracts, and/or promissory notes and all documentation evidencing their transmittals in real time.

4. Produce all communications (internal and with FSS) evidencing the alleged debts memorialized by the promissory notes between FSS and PQPR dated August 2020 and November 2021.

5. Produce all communications (internal and with FSS) relating to security agreement between FSS and PQPR dated August 2020.

6. Produce all documents and communications evidencing any efforts by FSS or PQPR to enforce the terms of any agreements, contracts, and/or promissory notes between FSS and PQPR.

7. Produce all communications (internal and with FSS) relating to the negotiation of terms of any forbearance agreement with FSS—including but not limited to exchange of drafts and all documentation evidencing transmittals in real time.

8. Produce unredacted copies of all financial statements (balance sheets, income statements, statements of equity or retained earnings, cash flow), profit and loss reports, reports of expenditures, bank statements, ledgers, Quickbooks (or other accounting software) entries, and the like, from September 1, 2013, to present.

9. Produce all documents and communications evidencing PQPR's payment of products it bought on behalf of or sold to FSS.

10. Produce all documents and communications evidencing payments made by FSS to PQPR.

11. Produce all documents and communications evidencing PQPR's requests to FSS to pay for goods and services bought by PQPR on behalf of or sold to FSS.

12. Produce all documents and communications evidencing the services that were provided by FSS to PQPR, and evidencing PQPR's payment for such services.

13. Produce all organizational charts and/or employee lists for PQPR, from September 1, 2013, to present.

14. Produce all documents and communications related to the ownership of the warehouse in which PQPR operates, including any lease or purchase agreements.

15. Produce all documents and communications evidencing the ownership of PQPR, from its inception to the present.

16. Produce all records of payments made by PQPR to its owner(s), from September 1, 2013, to present.

17. Produce all records identified in response to the interrogatories listed below.

18. Produce all wage and employment records of any employees of PQPR, and/or documents sufficient to identify the PQPR employee payroll, the wages paid each employee, the dates the employee performed services for PQPR, and what services were performed.

19. If any manager or member of the PQPR received compensation for services to PQPR, produce documents sufficient to identify the amounts paid to such manager or member, and what services were performed in exchange for such payments.

20. Produce all leases to which PQPR is a party, and all title to any real property PQPR holds.

21. Produce all tax returns filed by PQPR or on behalf of PQPR, from September 1, 2013 to the present.

## INTERROGATORIES

1. Identify, by year, all amounts paid by PQPR for products and services which PQPR bought on behalf of or sold to FSS, from January 1, 2013 to present.

2. Identify, by year, all amounts paid by FSS to PQPR for products and services which PQPR bought on behalf, or sold to FSS from January 1, 2018 to present.

3. Identify who participated in the negotiations of any agreements, contracts, and/or promissory notes between FSS and PQPR.

4. Identify who participated in any efforts by FSS or PQPR to enforce any agreements, contracts, and/or promissory notes between FSS and PQPR.

5. Identify all employees of PQPR from January 1, 2013, to present. For purposes of this request, "employees" means all persons paid, by PQPR, wages reportable on either IRS forms 1099 or W-2, and for which PQPR was not reimbursed by any other entity.

6. Identify all facilities, including warehouses, offices, and physical locations, used by, maintained by, or owned by PQPR.

7. Identify all payments made by PQPR to its owner(s), from January 1, 2013, to present.

8. Identify who provided accounting or bookkeeping services to FSS, in what time frame, and what services were provided.

Dated: August 9, 2022

>Respectfully submitted,
>
>**MCDOWELL HETHERINGTON LLP**
>
>*/s/ Avi Moshenberg*
>Avi Moshenberg
>Texas Bar No. 24083532
>1001 Fannin Street, Suite 2700
>Houston, Texas 77002
>D: 713-337-5580
>F: 713-337-8850
>E: Avi.Moshenberg@mhllp.com
>
>*Counsel for the Texas Plaintiffs*
>
>**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**
>
>Jarrod B. Martin
>Texas Bar No. 24070221
>1200 Smith Street, Suite 1400
>Houston, Texas 77002
>D: 713.356.1280
>F: 713.658.2553
>E: jarrod.martin@chamberlainlaw.com
>
>*Bankruptcy Counsel for the Texas Plaintiffs*

**Certificate of Service**

I certify that on August 9, 2022, a true and correct copy of the foregoing document was served via email to PQPR's counsel.

>*/s/ Jarrod B. Martin*
>Jarrod B. Martin