## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR** | § | |

**UNITED STATES TRUSTEE'S OBJECTION TO THE APPLICATION OF THE DEBTOR FOR AN ORDER (A) AUTHORIZING EMPLOYMENT OF W. MARC SCHWARTZ AS CHIEF RESTRUCTURING OFFICER, (B) AUTHORIZING EMPLOYMENT OF STAFF OF SCHWARTZ ASSOCIATES, LLC IN DISCHARGE OF DUTIES AS CHIEF RESTRUCTURING OFFICER, AND (C) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

　　Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), by and through his undersigned counsel, hereby submits his objection (the "Objection") to Free Speech Systems, LLC's (the "Debtor" or "FSS") application to employ W. Marc Schwartz as chief restructuring officer ("Schwartz") and employing the staff of Schwartz and Associates LLC (collectively referred to as "Schwartz Application") pursuant to Section 327(a) of the Bankruptcy Code. In support of his Objection to the Schwartz Application, the U.S. Trustee states to the Court as follows:

### INTRODUCTION

　　1.　The U.S. Trustee objects to the Schwartz Application because Schwartz failed to disclose his connections to FSS in the bankruptcy cases of InfoW, LLC, IWHealth, LLC and Prison Planet TV, LLC (collectively referred to as the "InfoW Debtors" or "InfoW Cases").[1] In the InfoW Cases, the InfoW Debtors represented to the Court and parties that they would negotiate at arm's

---

[1] References to the InfoW Cases refer to Case Nos. 22-60020, 22-60021, and 22-60022 filed in the Southern District of Texas. References to the "InfoW Docket" refer to Case No. 22-60020.

1

length with FSS and Alex Jones ("Jones"), the proposed third-party funders and counterparties to the negotiations. Schwartz was designated as chief restructuring officer (the "CRO") for the InfoW Debtors and was poised to play a key role in the negotiations. Yet, while the InfoW Debtors were seeking to employ Schwartz as their CRO, Schwartz sought employment with FSS. On May 19, 2022, Schwartz sent an engagement letter to FSS confirming that "Alex E. Jones, has delegated to W. Marc Schwartz…those managerial duties ¶ 8.01 of Free Speech Systems, LLC's Company Agreement to act as its Chief Restructuring Officer." FSS Docket No. 83-2.[2] During the InfoW Cases, Schwartz never disclosed his connections to FSS, and he failed to amend or supplement his declaration in the InfoW Cases, in which he affirmatively stated that he had no connections to FSS (the "InfoW Schwartz Declaration"). The connections to FSS were only discovered in this case.

2.   The defective disclosures in the InfoW Schwartz Declaration, while filed in a previous case, are not minor matters to ignore.  The Court should address the issue in this case, which is, in many ways, a continuation of the previous cases. Section 327(a) of the Bankruptcy Code provides the Court with broad discretion to consider prior acts of the applicant to determine whether to approve an employment application.  Moreover, the disclosure mandate in Bankruptcy Rule 2014 is clear—professionals must disclose all connections and may not unilaterally determine which connections impact their disinterestedness. Schwartz did not comply with this mandate. Schwartz's conduct in the InfoW Cases involved related debtors and almost the identical parties in interest. Schwartz was employed by FSS while the InfoW Debtors, under his authorization and approval, filed pleadings and made statements to the Court in the InfoW Cases that indicated that all InfoW estate professionals, including the CRO, were independent and without outside influences. Schwartz should not be exempt from the consequences of his nondisclosure because the InfoW

---

[2] The references to the "FSS Docket" refer to Case No. 22-60043, filed in the Southern District of Texas.

Cases were dismissed; especially when Schwartz is now seeking approval from this Court to be employed by FSS – the very connection that Schwartz previously concealed from the Court.

3. This is an unusual scenario. The Court never had the opportunity to rule on Schwartz's application in the InfoW Cases. Because the InfoW Cases are now closed, it is appropriate for the Court in this case to exercise its broad discretion under Section 327 to consider the nondisclosures in the related InfoW Cases to determine whether to approve the Schwartz's Application. To protect the integrity of the bankruptcy system, the Court should refuse to overlook the disclosure failures in the InfoW Cases and as a result, should deny the Schwartz Application in the present case.

4. Separately, the Sandy Hook Plaintiffs have raised various allegations in their Motion to (I) Appoint Tort Claimants Committee and (II) Remove the Debtor in Possession, and if proven true, would be additional grounds to deny the Schwartz Application. Alternatively, if the Court is not inclined to deny the Schwartz Application for the reasons stated in the Objection, the U.S. Trustee requests that the ruling on the Schwartz Application be deferred until the hearing on the removal of the debtor-in-possession.

## **FACTUAL BACKGROUND**

### **A. General Information**

5. On July 29, 2022, FSS filed a chapter 11 voluntary petition and elected to proceed under Subchapter V of chapter 11 on its petition.

6. On August 2, 2022, the U.S. Trustee appointed Melissa Haselden as the FSS' Subchapter V Trustee in the present case.

7. No committee has been appointed. Unless the Court determines there is cause for the appointment of a creditors' committee and orders the appointment of one, the U.S. Trustee is prohibited from soliciting and appointing a committee in a subchapter V case. 11 U.S.C. §

1102(a)(3).

**B. The InfoW Debtors create a structure to negotiate opposite FSS and Jones and file their bankruptcy cases.**

8.   On April 17, 2022, and April 18, 2022, the InfoW Debtors filed chapter 11 voluntary petitions and elected to proceed under Subchapter V of chapter 11 on their respective petitions.[3] The InfoW Debtors, like FSS, were all 100% owned by Alex Jones before the filing of the cases. InfoW Docket No. 6 at ¶¶ 6.

9.   On April 18, 2022, the U.S. Trustee appointed Melissa Haselden as the InfoW Debtors' Subchapter V Trustee.

10. Before the filing of the InfoW Cases, in 2018, certain plaintiffs brought actions in Texas and Connecticut against Jones, FSS, and the InfoW Debtors relating to statements made by Jones and other employees of FSS stating, among other things, that the Sandy Hook school shootings were a hoax (such plaintiffs are referred to herein as the "Sandy Hook Plaintiffs" and individually as the "Connecticut Plaintiffs" and "Texas Plaintiffs").

11. In 2022, Jones, FSS, and the InfoW Debtors sought to limit their liability to the Sandy Hook Plaintiffs' defamation claims through the creation of the Litigation Settlement Trust (the "LST") and the Plan Support Agreement (the "PSA). Three days prior to the filing of the InfoW Cases, the InfoW Debtors, Jones, and FSS entered into the LST, with Jones and FSS agreeing to fund $725,000 into the LST to pay the administrative expenses of the InfoW Cases. The LST was designed to remove control of the equity of the InfoW Debtors from Jones and give it to a trust held by trustees.  According to the InfoW Debtors, "[t]his provides a clean break between the [InfoW]Debtors' former management and allows the funding of a proposed plan to be negotiated

---

[3] InfoW, LLC filed just shortly before midnight on April 17, 2022, while IWHealth, LLC and Prison Planet TV, LLC's petitions were docketed shortly after midnight on April 18, 2022.

at arm's length between the Debtors, FSS, and Jones." InfoW Docket No. 6 at ¶¶ 18.

12. Simultaneously with the creation of the LST, the InfoW Debtors entered into the PSA with Jones and FSS that dictated a roadmap for the InfoW Cases. FSS and Jones would be the funders of the plan because the InfoW Debtors had little or no assets. InfoW Docket No. 6 at 7. As part of the roadmap, the InfoW Debtors sought to retain Schwartz as the chief restructuring officer for the InfoW Debtors. InfoW Docket No. 6-2.

13. On April 18, 2022, the InfoW Debtors filed an emergency application to employ Schwartz as the CRO. The application was accompanied by the InfoW Schwartz Declaration as required by Bankruptcy Rule 2014.

14. The InfoW Schwartz Declaration provided that:

> SALLC performed the following actions to determine whether it or any of its professionals has any disclosable connections to the Debtors, creditors, any other party in interest, their attorneys, and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas:
>
> …(b) Second, SALLC staff conducted a computerized search of all clients of SALLC using the list of parties in interest listed in <u>Schedule I</u> hereto.
>
> … I personally reviewed the list of parties in interest listed in Schedule I hereto. I do not have any connections with the searched parties other than (a) I have worked with certain of the professionals on matters unrelated to the Debtor and (b) I have worked on matters before the U.S. Bankruptcy Court for the Southern District of Texas unrelated to the Debtors.

InfoW Docket No. 7-1, ¶ 4.

15. Schedule I attached to the InfoW Schwartz Declaration included "Free Speech Systems, LLC" and "Alex Jones" as "Searched Parties." InfoW Docket No. 7-3.

16. On April 27, 2022, the Connecticut Plaintiffs filed a motion to dismiss the InfoW Cases. InfoW Docket No. 36. On that same day, the Texas Plaintiffs joined the motion to dismiss and filed their supplemental motion to dismiss. InfoW Docket No. 42.

17. On April 29, 2022, the U.S. Trustee filed his motion to dismiss. InfoW Docket No. 50. The U.S. Trustee alleged, among other reasons, that the InfoW Cases were filed in bad faith and were engineered for the purpose of shielding Jones and FSS from liability. *Id*. at ¶ 36.

18. A status conference was held on April 29, 2022. At the status conference, the Court scheduled an evidentiary hearing for all three motions to dismiss for May 27, 2022.

19. On May 13, 2022, the Connecticut Plaintiffs filed a notice of dismissal with prejudice of claims against the InfoW Debtors in the United States Bankruptcy Court for the District of Connecticut. A status conference was scheduled for May 24, 2022, for the Connecticut Court to consider the Connecticut Plaintiffs' dismissal of the InfoW Debtors from the defamation lawsuits. InfoW Docket No. 98.

20. On May 19, 2022, the Texas Plaintiffs agreed to dismiss their claims against the InfoW Debtors in the defamation lawsuits filed in state court. The Court entered the "Stipulation and Order" which memorialized this agreement between the Texas Plaintiffs and the InfoW Debtors. InfoW Docket No. 99.

**C. Schwartz and Attorney Lee begin to represent FSS in addition to the InfoW Debtors but do not inform the Court.**

21. On May 18, 2022, the InfoW Debtors, through Kyung Lee ("Attorney Lee"), filed an Emergency Motion to Continue Hearing Date on Motion to Dismiss (the "Emergency Continuance Motion"). In the continuance request, the InfoW Debtors represented that:

> Continuing the Original Hearing Date until June will also permit the CRO who has been engulfed in evaluating the dismissals with prejudice issues to now focus on the remaining creditors of the Debtors. The CRO will be able to evaluate either before or by the June hearing date whether he should proceed with trying to confirm a subchapter v plan of reorganization or handle these claims outside of bankruptcy. Again, such effort will be [sic] wise use of limited financial resources. Such an approach will also save valuable judicial resources.

InfoW Docket No. 95, at ¶ 21.

22. On May 19, 2022, the Court conducted a hearing on the Emergency Continuance Motion. At the hearing, the Connecticut Plaintiffs and Texas Plaintiffs announced that they were proceeding with their dismissal with prejudice of the InfoW Debtors as defendants in both the Texas and Connecticut defamation lawsuits.

23. In consideration of parties working to finalize the state court dismissals with prejudice, Attorney Lee requested additional time to respond to the U.S. Trustee's motion to dismiss the InfoW Cases. Among the bases for the continuance was that the CRO needed additional time to fulfill his fiduciary duties to the other creditors and Attorney Lee stated that "the other part that I have to do is renegotiate the plan support agreement if the debtors intended to move forward with respect to a small subchapter v plan." Tr. May 19, 2022, at 16, 21-24.

24. Based on the representations made by Attorney Lee, the Court reset the evidentiary hearing for June 10, 2022. Towards the conclusion of the status hearing, Attorney Lee assured the Court of Schwartz's commitment to the InfoW Debtors and stated the following:

> MR. LEE: I do want you to know that Mr. Schwartz in his fiduciary capacity is evaluating all alternatives.
>
> THE COURT: Oh, I'm sure he is.
>
> MR. LEE: I just want you to know that.

Tr. May 19, 2022, at 23, 13-16.

25. Despite those representations, according to Schwartz, sometime on that same day, May 19, 2022, Attorney Lee asked Schwartz to send an engagement letter to FSS outlining his retention as the CRO for FSS. Schwartz prepared an engagement letter that day and it was sent via e-mail to Ray Battaglia, counsel for FSS. FSS Docket No. 14-4.

26. On May 26, 2022, Attorney Lee appeared on behalf of the InfoW Debtors at the Section

341 Meeting. Due to a conflict, Schwartz did not attend the 341 Meeting. The U.S. Trustee continued the creditors' meeting for one week, to June 2, 2022. As of May 26, 2022, there was no agreement between the U.S. Trustee and the InfoW Debtors to dismiss the InfoW Cases.

27. On June 1, 2022, the U.S. Trustee and the InfoW Debtors finalized a stipulated dismissal order. The stipulated dismissal order was submitted later that day.

28. On June 2, 2022, the InfoW Debtors, through Attorney Lee, filed a response to the U.S. Trustee's motion to dismiss. The InfoW Debtors asserted that, as of June 2, 2022, the InfoW Cases still served valid bankruptcy purposes, despite their agreement with the U.S. Trustee to dismissal just a day before. At the time of the response, both Attorney Lee and Schwartz were providing services to FSS, but the InfoW Debtors stated that the CRO was "independent" and "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." InfoW Docket No. 112 at ¶¶ 6-7. The response did not mention any relationship between FSS and Schwartz or between Lee and FSS.

29. On June 10, 2022, the Court held a hearing on the motion to dismiss and allowed all parties to provide any comments. Neither Schwartz nor Lee, who both addressed the Court that day, informed the Court of their connections to FSS. The Court then entered the stipulated order dismissing the InfoW cases. InfoW Docket No. 114.

**D.  During the FSS case, the Court and parties learn about Schwartz's and Lee's representation of FSS during the InfoW cases.**

30. On July 26, 2022, the damages phase of the defamation lawsuit against FSS and Jones began in Austin, Texas. On July 29, 2022, at the conclusion of the first week of trial in Austin, FSS filed for bankruptcy protection.

31. On that same day, Schwartz filed a Declaration with the Court in support of the first day motions. Docket No. 10. In that Declaration, Schwartz informed the Court for the first time that

"[o]n June 7, 2022, the Debtor confirmed my retention as the Debtor's Chief Restructuring Officer (the "CRO") and SALLC as its financial advisors as of May 19, 2022.  *Id.*  at ¶ 9.  Schwartz also declared, "Since May 19, 2022, FSS has retained Schwartz as its Chief Restructuring Officer ("CRO"), with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized." *Id.*  at ¶ 40. SALLC was retained to perform various accounting and forensic work associated with his mandate.

32. On August 1, 2022, at the consent of FSS and the Texas Plaintiffs, the Court entered an order lifting the automatic stay and allowing the trial in Austin to proceed to judgment. Further, at this hearing, the Court expressed concerns about transparency in the bankruptcy process, specifically the May 19th engagement between Schwartz and FSS while the InfoW Cases were pending. The Court asked the following:

> I need to understand as well, on May 19th, you were representing three debtors who are on the opposite side of a proposed plan support agreement. We never took action but you were also seeking retention from Free Speech at the same time? I don't think I ever knew about that.

33. On August 3, 2022, the Court conducted a cash collateral hearing (the "<u>August 3rd hearing</u>"). At the hearing, Schwartz, who was now acting as the CRO for FSS, testified for several hours. Again, a point of concern raised by the Court was the nondisclosure of connections between the estate professionals[4] in the InfoW Cases and FSS and Jones. The Court asked the following:

> Let me get the question – I might as well ask it now because it's a good spot...I just need to understand it. On May 19th, there was a hearing before me where on May 18th, there was a request for a continuation on a motion to dismiss…and in this case, there is a letter dated by you to Free Speech dated the same day. I may

---

[4] During CRO Schwartz's testimony, the Court indicated that it had concerns regarding Attorney Lee's retention by FSS as well: "I [ask] Mr. Lee a few questions as well at some point, but I'll need to understand that as well, but today's not that day. Today's cash collateral, and so I do want – and I know I took this off on a tangent." Tr. August 3, 2022, at 150, 9-11.

be reading much into this, but it seems to me that you – either you wrote the letter that day or you had been in conversation with Free Speech before you wrote that – before that day you sent the letter. And I just need to understand – none of this was ever disclosed to me in connection with the case and the cases were dismissed on June the 10th officially, which tells me that Mr. Jones signed a retention letter. So, you were actively retained before these cases were dismissed – the last cases were dismissed – and I just need to understand, one, why that was never disclosed to me, and two, when did you begin to start soliciting or having conversations about representing Free Speech Systems…

Tr. August 3, 2022, at 147-148, 21:19.

In response to the Court's questions, Schwartz stated that he could not recall the date but assured the Court that conversations concerning the FSS engagement only occurred "after we had been substantially convinced that we were going to be terminating the InfoWars bankruptcy." Tr. August 3, 2022, at 149, 4-8.

34. After listening to several hours of testimony at the August 3rd Hearing and upon the Sandy Hook Families' oral request for the formation of a tort claimant committee, the Court stated the following:

> [T]here's been oral request for the appointment of a committee, and that can be done by the Court for cause. I'm not going to grant that today, but I am going to express some real concerns about what I heard, and I'll express what they are. You know, whether you realize it or not, Mr. Schwartz was negotiating on both sides of a deal.

Tr. August 3, 2022, at 239, 9:17.

35. Based on the testimony at the August 3rd Hearing, the Court further questioned the independence of Attorney Lee and Schwartz at the outset of the present case as it relates to potential claims against Jones and other insiders:

> [T]he Debtor is going to have to make some tough decisions at some point. And it's going to have to really analyze those claims and see whether those claims have any merit…[and] I'm not sure that parties who were introduced in the last case could fill that role either. But the Debtor needs to hear that from me, and I think debtors are entitled, especially early on in a case, to think about what the judge may have to say. And these are certainly rare comments, but these are

certainly uncommon cases.

Tr. August 3, 2022, at 241, 5-19.

36. On August 20, 2022, FSS filed applications to employ Schwartz (the "FSS Schwartz Declaration") as the Debtor's CRO and Shannon and Lee LLP ("S & L") as co-counsel.

37. In the Schwartz Application, FSS asserted that "the CRO and SALLC's mandate to 'lead InfoW's management and personnel through the restructuring process' had for all practical purposes concluded by May 19, and for sure by June 6." FSS Docket No. 83, ¶ 44.

38. On August 25, 2022, the Sandy Hook Families filed a motion to request the appointment of a tort claimants committee and to remove the debtor-in-possession. The Sandy Hook Families alleged, among other reasons, that Schwartz mismanaged the estate resources for Alex Jones' benefit and failed to disclose his connections to FSS while acting as the CRO for the InfoW Debtors. FSS Docket No. 102.

## OBJECTION

39. The Schwartz Application should be denied due to Schwartz's omissions of his connections to FSS and Jones in the related InfoW Cases. The disclosure process is self-policed by the professionals that appear before the Court, and when a disclosure violation occurs, it should be met with a strong rebuke. While this is an unusual scenario in that Schwartz's application in the InfoW Cases was never heard and the InfoW Cases are now closed, the current case is related to the prior cases and includes substantially all the same players.   To effectuate the disclosure mandates in Bankruptcy Rule 2014 and to address the prior nondisclosure, the Court should exercise its broad discretion under Section 327 to consider Schwartz's prior acts in violation of the disclosure obligations and to deny the Schwartz Application in this related case.

**A. The Court has Broad Discretion under 11 U.S.C. § 327(a) in Deciding Whether to Approve an Application to Employ an Estate Professional.**

40. The Bankruptcy Code provides a uniform scheme for retaining and compensating court-authorized attorneys under 11 U.S.C. §§ 327-331, 503, and 507. Section 327 provides that the debtor-in-possession may employ, with the Court's approval, professionals who are disinterested and who do not hold or represent interest adverse to the estate. 11 U.S.C. §§ 327.[5] In addition, the applicants must also comply with Bankruptcy Rule 2014(a). *See In re Bechuck*, 472 B.R. 371, 375 (Bankr. S.D. Tex. 2012).

41. Section 327(a) of the Bankruptcy Code provides the Court with a wide latitude of discretion when professionals are seeking to work on behalf the bankruptcy estates. The statutory language of section 327(a) shows that Congress intended the bankruptcy court to have broad discretion in making its determination, as it provides that "the trustee [or debtor in possession, under 11 U.S.C. § 1107], with the court's approval *may* employ one or more [professionals]." [emphasis added]. Congress could not have more clearly stated that (i) no professionals, on any terms, can be employed without prior court authorization, and (ii) the court has broad discretion in deciding whether to approve or disapprove an employment application, and is not required to accept the proposed professional's application. The court may – or may not, in its sound discretion – approve a proposed employment application. *Cf. United States v. Rodgers,* 461 U.S. 677, 706 (1983) ("the word 'may,' when used in a statute, usually implies some degree of discretion").

---

[5] The term "disinterested person" means a person that (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor." 11 U.S.C. § 101(14). The term "insider" includes, among others, (1) director of the debtor; (2) officer of the director; and (3) person in control of the debtor. 11 U.S.C. §§ 101(31)(B)(i)-(iii). The term "insider" also includes "affiliate, or insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. § 101(31)(E). Under these definitions, Schwartz may not be qualified as a disinterested person and the Schwartz Application should be denied if Schwartz is an insider pursuant to Section 101(31)(E), as well as those other reasons articulated in the Objection. Schwartz acted as the CRO for the InfoW Debtors and was in control of those debtors during the pendency of the InfoW Cases. The InfoW Debtors are arguably affiliates of FSS, and under Sections 101(31)(E) and 101(14), Schwartz may not be disinterested for purposes of Section 327.

42. Many decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a). *See, e.g.*, *In re Jackson*, 484 B.R. 141, 154 (Bankr. S.D. Tex. 2012) *citing Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995); *In re Bigler, LP*, 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010) ("This Court has substantial discretion to grant an application to employ a professional for the estate."); *Miller v. United States Trustee*, 197 F.3d 13, 17 (1st Cir. 1999) ("Bankruptcy courts historically have been accorded wide discretion to oversee the terms and conditions of a debtor's engagement of professionals[.]"); *Interwest Bus. Equip. v. United States Trustee*, 23 F.3d 311, 315 (10th Cir.)("[W]e will not second guess a decision not to approve professionals under § 327 unless it exhibits a clear abuse of discretion[.]"); *Harold & Williams Dev. Co.*, 977 F.2d 906, 909(4th Cir. 1992) (the Bankruptcy Code "gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the . . . estate"); In re *Martin*, 817 F.2d 175, 182 (1st Cir. 1987) ("Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals."); *Elias v. Lisowski Law Firm (In re Elias)*, 215 B.R. 600, 603 (B.A.P. 9th 1997) ("A bankruptcy court's decision regarding an application for the employment of a professional is reviewed for abuse of discretion.").

43. The Court is not required to approve an application that satisfies the requirements of Section 327(a). "Even if the technical requirements of disinterestedness and not holding or representing an interest adverse to the estate are met, the Court has the discretion to deny the application." *In re LTHM Houston-Operations*, LLC, 2014 WL 5449737, at *5 (Bankr. S.D. Tex. 2014). Additionally, "while disinterestedness and the absence of conflicts may be central to the inquiry, they are by no means exclusive. Indeed, section 327(a) vests the authority for 'approval'

13

within the sound discretion of the court. That authority would be eviscerated were the Court required to approve counsel who met the technical test for disinterest but was ill-suited for other reasons…" *In re Kurtzman,* 220 B.R. 538, 542 (S.D.N.Y. 1998).

44. In the exercise of its discretion under Section 327, the Court is instructed "into taking account the facts of a particular bankruptcy case and the overall objectives of the bankruptcy system." *LTHM Houston-Operations, at \*5; see also Official Comm. of Unsecured Creditors v. Harris* (*In re Southwest Food Distribs., LLC*), 561 F.3d 1106, 1112-13 (10th Cir. 2009) (bankruptcy court does not err in considering proposed compensation terms when ruling on employment application); *Harold & Williams Dev. Co.*, 977 F.2d at 910 (bankruptcy court must not "abdicate the equitable discretion granted to it," but must "take into account the facts of a particular case and the overall objectives of the bankruptcy system")*; In re Kurtzman*, 220 B.R. 538, 540 (S.D.N.Y. 1998) (finding that the bankruptcy court did not abuse its discretion when it denied the retention of counsel based on "prior problems involving time records, billing errors, professional conduct, and overall costs of legal services that had led to its conclusion of loss of confidence in the firm") Here, the requirements that professionals lay bare their connections play an integral part of the Court's function to determine a proposed professional's fitness to represent the bankruptcy estate. "Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *In re Downs*, 103 F.3d. 472, 480 (6th Cir. 1996). Bankruptcy courts must be able to expect the proposed professional appointed under 327 to disclose all connections and follow the applicable rules concerning disclosure. "Plainly, the Court will not approve the employment of counsel that does not comport with the applicable ethical and disciplinary regulations." *In re Doors & More Inc.*, 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991).

**B. As Part of Their Duty to the Court and the Estate, Professionals Have a Continuing Duty to Disclose All Connections with Creditors and Parties in Interest.**

45. Bankruptcy Rule 2014 imposes a complementary duty of disclosure on the applicant so that the Court and parties in interest can determine whether the professional satisfies Section 327's disinterestedness requirements. Rule 2014 has one primary purpose – to facilitate strict compliance with Section 327. "[T]he requirements of Fed. R. Bankr. P. 2014 are more encompassing than those governing disinterestedness inquiry under section 327. For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed." *In re Leslie Fay Companies, Inc*., 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994).

46. The applicant has the duty to disclose all relevant information to the court and "may not exercise any discretion to withhold information." *In re Woodcraft Studios, Inc*., 464 B.R. 1, 8 (N.D. Cal. 2011). Thus, "professionals 'cannot pick or choose which connections are irrelevant or trivial.'" *U.S. v. Gallene*, 182 F.3d 578, 588 (7th Cir. 1999) (concluding that a misstatement in a Rule 2014 statement constitutes a material misstatement for purposes of 18 U.S.C. § 152). The duty to disclose under Bankruptcy Rule 2014 is ongoing, continues throughout the case, and "requires 'spontaneous, timely, and complete disclosure.'" *In re The Harris Agency*, 462 B.R. 514, 524 (E.D. Pa. 2011); *see also In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998)* (court should not have to "rummage through files or conduct independent fact-finding investigations" to determine whether the professional should be disqualified).

47. Applicants "who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012) (citations omitted). "[L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end

there was no prejudice." *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 664 (Bankr. N.D. Ill. 2001); *see also In re Rabex Amuru of N.C., Inc.*, 198 B.R. 892, 897 (Bankr.M.D.N.C.1996) (attorneys for debtor removed because of appearance of impropriety, even though no harm done to debtor). Professionals must "be meticulous in disclosing 'all connections' with the debtor and other parties in interest, the failure to do so justifying a court's taking significant punitive or corrective action." *In re Byington*, 454 B.R. 648, 657 (Bankr. W.D. Va. 2011); *see also In re EBW Laser Inc.*, 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005) ("The Bankruptcy Court may, in its discretion, disqualify counsel, or deny compensation, as a sanction for failure to make the disclosure required.").

## C. In Exercising Its Broad Discretion, the Court Should Deny Schwartz's Application Because of His Failure to Affirmatively and Timely Disclose His Connections with FSS.

48. The defective disclosure in the InfoW Schwartz Declaration, which was a statement under penalty of perjury before the Court, is not a minor matter. It "goes to the heart of the integrity of the bankruptcy system." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005). "[T]he duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate." *Id.* As noted, Rule 2014 "is not intended to condone a game of cat and mouse where the professional seeking appointment provides only enough disclosure to whet the appetite of the UST, the court, and other parties in interest, and the burden shifts to those entities to make inquiry in an effort to expand the disclosure." *In re Matco Elec. Group, Inc.*, 383 B.R. 848, 853-54 (Bankr. N.D.N.Y. 2008).

49. Additionally, the parties that retained Schwartz as the CRO played significant parts in the

16

InfoW Cases and were on opposite sides of each other. Under the PSA and LST in the InfoW Cases, Jones and FSS were designated as the "Third Party Funders." The question regarding the validity of the PSA and LST, and the negotiations surrounding the origination of these documents, were contested issues at the center of the InfoW Cases. Unlike other plan support agreements in other chapter 11 cases, no creditors, including the Sandy Hook Plaintiffs, participated in the drafting or negotiations of the PSA and LST. The primary parties to those negotiations were the InfoW Debtors, FSS, and Jones. FSS was on the other side of the transaction from the InfoW Debtors. Schwartz acted as the CRO for the InfoW Debtors, and after May 19, 2022, was also the CRO for FSS, of which he was ultimately hired by Jones to serve those roles. Even Schwartz acknowledged that the questions of control, independence, and loyalty were key concerns in the InfoW Cases, stating: "Concerns were expressed at the inception of the InfoW Debtors' bankruptcy case whether I would be serving Alex Jones or the creditors of InfoW Debtors." FSS Docket No. 83-3, ¶ 27. Schwartz did not disclose his connections to FSS or Jones during the InfoW Cases. Bankruptcy Rule 2014 required that Schwartz discloses any and all connections to these parties or any subsequent connections that developed during the InfoW Cases. Schwartz had a duty to inform the Court of his connections to FSS and Jones, while acting as the CRO for the InfoW Debtors.

50. Even after the InfoW Debtors reached agreements with the Sandy Hook Plaintiffs, the InfoW Debtors, taking their directions from Schwartz, did not agree to dismiss the InfoW Cases until June 1, 2022. Attorney Lee informed the Court on May 19, 2022, that he might have to renegotiate the PSA with FSS and Jones to pay the remaining creditors should the InfoW Debtors remain in bankruptcy. In effect, Schwartz would be negotiating on one side as the CRO for the InfoW Debtors and on the other side, as the CRO for FSS. As the Court correctly recognized,

Schwartz was on both sides of the deal. Tr. August 3, 2022, at 239, 9:17.

51. Moreover, Schwartz had multiple opportunities to disclose to the Court his connections to FSS and Jones. Although Schwartz was engaged as CRO for FSS, the InfoW Debtors filed a response to the U.S. Trustee's motion to dismiss, maintaining that "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." FSS Docket No. 112, ¶ 7. The response is silent concerning the fact that just days before, Attorney Lee asked Schwartz to send an engagement letter to FSS outlining his retention as the CRO for FSS, which Schwartz prepared and sent via e-mail to Ray Battaglia, counsel for FSS. Following the response on June 2, the Court conducted a hearing on the stipulation to dismiss in the InfoW Cases on June 10, 2022. Neither the CRO nor Attorney Lee, who both addressed the Court that day, informed the Court of their connections to FSS. By remaining silent, whether in pleadings, at hearings, or by failing to amend the Schwartz Declaration, Schwartz misrepresented his connections to the Court.

52. The Court should also reject Schwartz's attempt to excuse his noncompliance with the disclosure requirements. In the Schwartz Application, Schwartz states that "[for] all practical purposes, my mandate to reorganize the [InfoW Debtors] had concluded" as of May 19, 2022. This statement ignores the InfoW Debtors' own assertions in the Emergency Continuance Motion, filed on May 18, 2022, that Schwartz required more time to fulfill his duties to the creditors. Even if the statement was accurate, it did not absolve Schwartz of his disclosure obligations under Bankruptcy Rule 2014. "The professional must disclose all facts that bear on his disinterestedness and cannot usurp the court's function by unilaterally choosing which connections impact his disinterestedness…" *Keller Fin. Servs.* 248 B.R. 859, 897 (Bankr. M.D. Fla 2000). Here, it was not for Schwartz to pick and choose which connections were material requiring disclosure and which connections were so remotely *de minimis* that they can be ignored. Bankruptcy Rule 2014

required that Schwartz lay bare all of his connections, whether or not he believed them to be material, and to allow the Court to serve its function in determining Schwartz's fitness to represent the estate. Schwartz failed to do so here.

53. Additionally, Schwartz's contention that he was not required to supplement the stale information on the InfoW Schwartz Declaration is without merit and not supported by the case law on continuing disclosures in bankruptcy.[6] Bankruptcy Rule 2014 does not limit disclosures exclusively at the timing of the filing of the application. Rather, Rule 2014 requires the professional to put forth information to the best of the applicant's knowledge and should the applicant's knowledge change during the application period, the applicant is required to supplement. "Although this provision does not explicitly require ongoing disclosure case law has uniformly held that under Rule 2014(a)(1), full disclosure is a *continuing responsibility*, and (2) [the professional] is under a duty to promptly notify the court if any potential for conflict arises." *In re W. Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir. 2005) (emphasis added). "Thus, any professional who seeks to be employed by a bankruptcy estate assumes an affirmative duty to disclose all connections with parties in interest, and to reveal any interest which may be antagonistic or opposite of the interest of the estate. Such duty continues to exist throughout the

---

[6] Q. In your experience as a bankruptcy professional, do you think there's a continuing obligation for professionals that appear before the court to supplement their disclosures and tell the court of any connections that occurred during the case?

A. Yeah. The appointment orders require that.

Q. And that didn't happen in the InfoW Cases, correct?

A. Correct. There was no appointment.

Q. But you still had a verified statement that was filed with the Court, and you didn't supplement that verified statement?

A. No, I didn't – I was never appointed.

pendency of the employment." *In re C & C Demo, Inc.*, 273 B.R. 502, 506 (Bankr. E.D. Tex. 2001). Here, Schwartz failed to supplement the InfoW Schwartz Declaration with new information regarding his connections to FSS. Schwartz's failure to inform the Court, U.S. Trustee, and the creditors of his connections during the InfoW Cases was inexcusable and any claim otherwise should be rejected. "Continuing disclosure is necessary to preserve the integrity of the bankruptcy system by ensuring that the trustee's professionals remain conflict free." *In re Granite Partners, L.P.*, 219 B.R. at 35.

54. While noncompliance with Bankruptcy Rule 2014 may result in disqualification and/or total disgorgement of fees, Schwartz's transgressions in the InfoW Cases eclipsed the confines of Bankruptcy 2014 because those cases are now dismissed. Bankruptcy Rule 2014 alone is not sufficient to address Schwartz's nondisclosure of his connections to FSS in the InfoW Cases. However, the integrity of the bankruptcy system requires that the Court address Schwartz's omissions of his connections to FSS and Jones in the InfoW Schwartz Declaration. Here, it is appropriate for the Court to exercise its broad discretion under Section 327(a) to address Schwartz's prior acts in the related cases—which this case is, in many ways, a continuation of— and deny the Schwartz Application. Put simply, Schwartz did not inform the Court of his connections to FSS in a related case, involving many of the same parties. When FSS was represented to be on the opposite side of negotiations with the InfoW Debtors, Schwartz was employed by FSS while pleadings filed and statements made to the Court at the time indicated that all estate professionals, including himself and Attorney Lee, were independent and without outside influences. Schwartz should not be exempt from the consequences of his prior acts because the InfoW Cases were dismissed; especially when Schwartz is now seeking approval from this Court to be employed by FSS—thereby asking the Court to bless the very connection that Schwartz

previously concealed from the Court. To maintain the integrity of the bankruptcy system and to fully effectuate the mandatory disclosure requirements in Rule 2014, the Court should deny the Schwartz Application.

## **CONCLUSION**

**Wherefore,** the U.S. Trustee respectfully requests that the Court deny the Schwartz Application and grant such other relief as is just and proper. In the alternative to the relief requested herein, the U.S. Trustee requests that the Court defer ruling on the Schwartz Application and consider all facts related to Schwartz's employment with the Sandy Hook Plaintiffs' request to remove the debtor-in-possession at the same time.

RESPECTFULLY SUBMITTED:
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

DATED: 9/12/2022

*/s/ HA M NGUYEN*
Ha Nguyen, Trial Attorney
CA Bar #305411
FED ID NO. 3623593
United States Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
E-mail: Ha.Nguyen@usdoj.gov
Cell: 202-590-7962

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases, on the 12th day of September, 2022.

/s/ Ha M. Nguyen
Ha M. Nguyen