# **EXHIBIT D**

| | |
|---|---|
| **Subject:** | InfoW |
| **Date:** | Tuesday, May 17, 2022 at 8:34:29 AM Central Daylight Time |
| **From:** | Ruff, Jayson B. (USTP) |
| **To:** | kslee50@gmail.com |
| **Attachments:** | image001.png |

***Settlement Communication Subject to FRE 408***
Kyung,

Following on our conversation yesterday, please let me know when you have had a chance to discuss these matters with Marc.  As I mentioned yesterday, the UST still believes that the best option is for these cases to be dismissed and we intend to push forward with our motion.  That will include getting discovery from your client.  I have been holding off on doing that at your request, but time is running very short so we will need to resolve these matters very soon or you will need to give me a date early next week for a deposition of Marc.  As set forth in our pleadings, these cases have the badges of a bad faith filing.  Even with all of the Sandy Hook Plaintiffs "leaving the party" so to speak, that does not change how these cases arrived.  I understand that there are a few creditors that remain, but each of those can be paid following dismissal and payment agreements could be made outside of bankruptcy.

A few things to consider:

- I would note that according to the schedules filed by these Debtors, Mr. Jones and FSS (the "Jones Parties") are co-liable for all of the Debtors' remaining debts.  Given that the Jones Parties are also the primary source of funding for these Debtors' cases, they can agree to fund payment of these claims outside of bankruptcy as well.
- Inside of bankruptcy, it would appear that because Mr. Jones was taking royalty payments that belonged to IWHealth prepetition, that Debtors' estates would have claims against Mr. Jones for the return of those funds anyway.  Another reason for the Jones Parties to agree to pay the Debtors' remaining creditors outside of bankruptcy.  I am sure the royalty payments he received exceeds the amount of the Debtors' remaining debts.
- The Jones Parties are the primary funding sources for Debtors inside of and outside of bankruptcy.  They have already committed $725k toward resolving the claims of these Debtors.  Is there any reason why those funds could not be used to pay the remaining creditors of the Debtor following dismissal?  Seems like that amount may be more than enough.  Continuing in the bankruptcy will likely require significantly more funding.
- Based on the declarations filed with the petitions and statements made in court, it appears these Debtors are simply holding companies with no operations to speak of.  What is there to even reorganize?  Seems that dismissal or possibly conversion even are the better options for these Debtors.  Although, I understand that conversion would mean that the Jones Parties ability to use the IP held by the Debtors may then be at risk.  Another reason for them to agree to pay those creditors outside of bankruptcy.
- Dismissal is the more efficient and cheaper option for these Debtors as it will save from administrative and litigation costs and will still allow Debtors options to resolve their claims.

More can be said, but I believe the foregoing is enough.  I am hopeful that we can come to an agreement soon.  Please let me know when you believe you will be in a position to discuss these matters further.

Kinds regards,

***Jayson B. Ruff***
Trial Attorney
Office of the United States Trustee
515 Rusk St., Suite 3516
Houston, Texas 77002
713-718-4650 Ext 252 (office)
202-573-6960 (mobile)
jayson.b.ruff@usdoj.gov



PLEASE DO NOT read, copy or disseminate this Internet E-mail if you are not the intended addressee. This E-mail may contain privileged information intended only for the addressee. If you have received this E-mail in error, please call us immediately at (713) 718-4650 and ask to speak to the sender of the communication.  Also, please notify the sender immediately, by E-mail, that you have received this E-mail in error and have deleted it.