UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Case No. 22 - 60043 |
| | § | |
| DEBTOR. | § | |
| | § | Chapter 11 (Subchapter V) |

**DEBTOR'S REPLY TO UNITED STATES TRUSTEE'S OBJECTION TO THE APPLICATION OF DEBTOR FOR AN ORDER (A) AUTHORIZING EMPLOYMENT OF W. MARC SCHWARTZ AS CHIEF RESTRUCTURING OFFICER, (B) AUTHORIZING EMPLOYMENT OF STAFF OF SCHWARTZ ASSOCIATES, LLC IN DISCHARGE OF HIS DUTIES AS CHIEF RESTRUCTURING OFFICER, AND (C) GRANTING RELATED RELIEF**

Free Speech Systems, LLC (the "Debtor" or "FSS"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, replies to the U.S. Trustee's objection [ECF. No. 145] (the "Objection") to the Application of Debtor for an Order (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC In Discharge of His Duties as Chief Restructuring Officer, and (B) Granting Related Relief [ECF No. 83] (the "Application") as follows:

**LIES, FABRICATIONS AND MISREPRESENTATIONS BY THE U.S. TRUSTEE**

1.      In the 22-page Objection, the U.S. Trustee never once questions, disputes, or contests any of the representations in the Schwartz Application or otherwise contends that Marc Schwartz (the "Proposed CRO" or "Schwartz") and Schwartz Associates LLC (the "Schwartz Firm") the firm selected to assist him (the Proposed CRO and the Schwartz Firm, collectively, the "Applicant") (a) do not hold or represent any disqualifying adverse interest and is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14) (Application ¶¶ 38, 48 & 52); (b) disclosed all relevant connections in this case (Application ¶¶ 45 & 53); (c) are well qualified to

1

provide management services that will assist and enhance the Debtor's efforts to maximize value to creditors (Application ¶¶ 30 & 31). The U. S. Trustee also does not challenge the proposed terms of reimbursement, compensation, and hourly rates of the Applicant and that they are reasonable (Application ¶ 35). Finally, the U.S. Trustee does not claim that denial of the Application would benefit the Debtor's estate.

2. Instead, the *sole* basis for the Objection is that "Schwartz failed to disclose his connections to FSS in the bankruptcy cases of InfoW, LLC, IWHealth, LLC and Prison Planet TV, LLC (collectively, "InfoW Debtors")" in Case No. 22-60022 (the "InfoW Bankruptcy Cases"). (Objection ¶1). To support the Objection, the U.S Trustee sprinkles his 22-page missive with fake-tabloid headlines, fabrications, and misrepresentation without any credible evidence.[1] The fabrications of the U.S Trustee in the Objection are glaring and unethical.

3. For the sake of denying the Schwartz Application here, the U.S. Trustee simply grabs out of thin air the idea that one case is a continuation of the other without any evidence. Paragraph 2 of the Objection begins by trying to tie the FSS case as a "continuation" of the InfoW Debtor cases, when in fact they have no such relationship. "The Court should address the issue in this case, which is, in many ways, a continuation of the previous case."[2] Objection ¶ 2. The FSS case is not a continuation of the InfoW Bankruptcy Cases. The Plaintiffs all dismissed their claims against those three debtors. Those three debtors are not involved in any of the Sandy Hook

---

[1] Applicant and the Debtor reserve the right to request that costs in replying to the Objection be taxed against the U.S. Trustee or other appropriate relief pursuant to Rule 11 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Bankruptcy Rule 9011, or the Court's inherent power to sanction vexatious conduct. The U.S. Trustee, despite the name, is just another party in bankruptcy proceedings and must comply with Rule 11 and other requirements when filing pleadings and making representations to the Court.

[2] US Trustee repeats without any evidence with mantra that "the current case is related to the prior cases and includes substantially all the same players" Objection ¶ 39. There are *many* more creditors involved in the Debtor's chapter 11 case than were involved in the InfoW bankruptcy Cases.

2

Litigation in Texas and Connecticut. Those three companies are out of bankruptcy and do not face the same claims faced by FSS. Making this headline grabbing argument without any evidence is especially heinous for a party who has been intimately involved in both cases and knows that it is not true.

4.  In a bold contradiction that the U. S. Trustee hoped no one would catch, he plainly contradicts his own statements in his Objection. Paragraphs 14 and 15 of the Objection describe the disclosures Schwartz make about Free Speech Systems, LLC in the InfoW Bankruptcy Cases. The U.S. Trustee describes that as of April 18, 2022, Schwartz disclosed in a declaration in support of his application in the InfoW Bankruptcy Cases that he was aware of FSS, and made all "disclosable connections". Objection ¶¶ 14, 15. Yet without batting an eye, the U.S. Trustee then writes 34-35 paragraphs later in paragraph 49 of the Objection, "***Schwartz did not disclose his connections to FSS or Jones during the InfoW Cases***." That is not true—the Applicant *did* disclose his connections to FSS and Jones in his April 18, 2022, declaration. There were no connections to disclose on April 18, 2022. What the U.S. Trustee takes issue with is that the Applicant did not make a supplemental disclosure after the InfoW Debtors had decided to agree to the U.S. Trustee's motion to dismiss their cases and Applicant was taking actions to effectuate that dismissal.

5.  The U.S. Trustee also mischaracterizes the timing of events (which is critical to this matter). In paragraph 50 of the Objection, the U.S. Trustee claims that "[e]ven after the InfoW Debtors reached agreement with the Sandy Hook Plaintiffs, the InfoW Debtors, taking their direction from Schwartz, did not agree to dismiss the InfoW Cases until *June 1, 2022*." Objection ¶ 50. Yet the very same attorney signing the Objection was a recipient of an email on May 25, 2022, in which he was told by Attorney Lee that the CRO of the InfoW Debtors had made his

3

decision to dismiss and instructed him to file a motion to dismiss the InfoW Bankruptcy Cases. A subsequent email by his colleague that same day suggests that the dismissal be done by stipulation. Attached as Exhibit A hereto is a true and correct copy of the May 25, 2022, email to attorneys Jayson Ruff and Ha Nguyen of the U.S. Trustee's Office and the subsequent discussion with Attorney Ruff regarding the dismissal.

6. The recitation in paragraph 50 of the Objection is an intentional misrepresentation to this Court, plain and simple. The U.S. Trustee's attorneys are in possession of their own emails which could have been—and should have been—checked before making that false statement to malign the Applicant, instead of attempting to tell the Court the truth of what took place to the Court. The attorney for the U.S. Trustee who signed the Objection had personal knowledge that the representation was not true. While always inappropriate, it is nothing short of shocking that an attorney signing a pleading accusing others of ethical violations would attempt to mislead the Court in this way.

7. Not being content just ignoring (or, more accurately, failing to disclose) the facts easily discovered by a quick look through an email inbox, the U.S. Trustee then broadcasts falsely in paragraph 54 of the Objection that "***When FSS was represented to be on the opposite side of the negotiations with the InfoW Debtors, Schwartz was employed by FSS while pleadings filed and statements made to the Court at the time indicated that all estate professionals, including himself and Attorney Lee, were independent and without outside influences.***" Objection ¶ 54.

8. First, Applicant and Attorney Lee had no outside influences or connection to FSS when InfoW Debtors participated in negotiations with FSS. The negotiations by Applicant and Attorney Lee occurred prior to and at the beginning of the InfoW Bankruptcy Cases and led to the Plan Support Agreement having the consideration of $750,000 cash for professionals, $2,000,000

4

of cash on the Effective Date of the Plan, and quarterly dividends to be made available to the Trusts for a total distribution of up to $10,000,000 during the duration of a confirmed plan. Second, Applicant and Attorney Lee did not represent FSS when the Plan Support Agreement underwent revisions during the InfoW Bankruptcy Cases and the amended agreements were filed with the Court on April 29, 2022 [Case No. 22-60020, Dkt. No. 48]. Third, Schwartz did not engage in negotiations with FSS or Jones over additional funding under the Plan Support Agreement because Schwartz exercised his judgment that it did not make good business sense for the InfoW Debtors' estates to incur the cost of litigating with the U.S. Trustee over its motion to dismiss the InfoW Bankruptcy Cases (the "Motion to Dismiss"). There were no negotiations with FSS or Jones, and, therefore, it was impossible for Applicant and Attorney Lee to be on both sides of the negotiation. This myth has been perpetuated by the U.S. Trustee by pointing the lynching mob to the May 19 date of the FSS engagement letter, rather than any other fact associated with the retention of Applicant by FSS.

9.  Just as problematic is that the U.S. Trustee appears to think that full candor is not required to this Court when discussing the applicable law. An example is found in paragraph 53 of the Objection wherein the U.S. Trustee relies on *Delta Oil* for the proposition that "'Athough this provision does not explicitly require ongoing disclosure case law has uniformly held that under Rule 2014(a)(1), full disclosure is a *continuing responsibility*, and (2) [the professional] is under a duty to promptly notify the court if any potential for conflict arises.' *In re W. Delta Oil Co. Inc.*, 432 F.3d 347, 355 (5th Cir. 2005) (emphasis added)." But the U.S. Trustee fails to point out to the Court the sentences before and after the quoted language that is critical to the instant matter:

> In addition, Federal Rule of Bankruptcy Procedure 2014(a) requires ***any professional applying for employment*** to set forth "to the best of the applicant's knowledge" all known connections of the applicant with the "debtor, creditors, or any other party in interest,

5

> their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Although this provision does not explicitly require ongoing disclosure, "case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises." Although this provision does not explicitly require ongoing disclosure, "case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises." "Though this provision allows the fox to guard the proverbial hen house, counsel who fail to disclose timely and completely their connections proceed at their own risk *because failure to disclose is sufficient grounds to revoke an employment order and deny compensation.*

*Id.* (citations omitted). At the U.S. Trustee's insistence, no employment order was entered or compensation requested in the InfoW Bankruptcy Cases.³

10. After May 19, 2022, the only party that opposed the continuation of the InfoW Bankruptcy Cases with an active motion to dismiss was the U.S. Trustee. The Applicant made the business decision to dismiss the InfoW Bankruptcy Cases within four (4) days after May 19 and prior to meeting with FSS on May 24. That decision was not just wholly supported by the U.S. Trustee, but *demanded* but the U.S. Trustee. At that point in time, Applicant was not seeking employment as a CRO in the InfoW Bankruptcy Cases. The Debtor submits that distinction is important, especially when the U.S. Trustee actively negotiated for a resolution of the InfoW bankruptcy Cases where the Applicant would **NOT** to be retained by the estate.

11. The Applicant exercised business judgment during a compressed period, wherein its attention was focused on (1) making sure the estate did not have lingering claims from the Texas and Connecticut Plaintiffs after their dismissals and (2) minimizing the administrative cost of

---

³ If the U.S. Trustee was focused on the integrity of the bankruptcy process—rather than sound bites—he would have acknowledged this contrary language in the authority he cited in the Objection and argued why his position was nevertheless correct. Instead, he attempted to mislead the Court about the applicable law.

determining how to handle the estate after eliminating the Texas and Connecticut Plaintiffs' claims. The period in which these events took place was between May 19 and June 1, and Applicant did not believe during that period of time that it was still seeking to be retained under section 327 of the Bankruptcy Code as an estate professional.[4] In fact, the Applicant was specifically told by the U.S. Trustee's counsel that he would oppose any consideration of the pending application to employ in the InfoW Bankruptcy Cases until after the Court considered the U.S. Trustee's Motion to Dismiss.

### THE U.S. TRUSTEE MISUSES VALID QUESTIONS RAISED BY THE COURT AND FAILS TO CONDUCT ANY INVESTIGATION OR PROVIDE CONTEXT

12. Not being satisfied besmirching Applicant and Attorney Lee with innuendos, lies, and misrepresentations, the U.S. Trustee decided to pour gasoline on an ember by quoting the concerns expressed by the Bankruptcy Court without providing useful context or information from any investigation or the evidence within the U.S. Trustee's possession. Instead, the U.S. Trustee attempts to use the Court's questions as evidence of wrongdoing, even though the information in the U.S. Trustee's own possession would resolve the Courts' concerns.

---

[4] The U.S. Trustee specifically demanded that the InfoW Debtor's application to employ not be considered until after the U.S. Trustee's Motion to Dismiss was considered. As the U.S. Trustee's attorney Jayson Ruff stated to the Court at the May 19, 2022, status conference in the InfoW Bankruptcy Cases:

> The only other comment I would say is to the extent that the Court does push that out, assuming these cases are dismissed, then we don't think that any of the other pending motions applications should be heard until that same date after that time.

May 29, 2022, Hrg. Tr. at 14:9-13. Attorney Ruff further represented to the Court:

> If these cases aren't to continue, then none of that is really necessary. The cases can get dismissed. You know, the debtors can go ahead and pay their creditors, *including their professionals* however they want to. The only thing we probably would want to have some treatment for in the dismissal order, again, assuming that's the route that we end up toing, is to allow for Ms. Hazelton to apply for her fees and make sure that this Court retains jurisdiction for the payment of her fees.

*Id.* at at 15:1-9 (emphasis added). While it is now clear that taking the U.S. Trustee's statements to this Court as true and accurate is pure folly, the Applicant's belief was reasonable at that time, even if the Court determines that Attorney Ruff misrepresented the situation to the Court at the May 19, 2022, status conference and the Applicant's the belief based on Attorney Ruff's misrepresentation was incorrect.

13. The U.S. Trustee recites in paragraphs 32, 33 and 34 of its Objection the concerns raised by the Court. The Applicant and the Debtor shall addresses these below.

14. In paragraph 32 of the Objection, the U.S Trustee writes:

> 32. On August 1, 2022, at the consent of FSS and the Texas Plaintiffs, the Court entered an order lifting the automatic stay and allowing the trial in Austin to proceed to judgment. Further, at this hearing, the Court expressed concerns about transparency in the bankruptcy process, specifically the May 19th engagement between Schwartz and FSS while the InfoW Cases were pending. The Court asked the following:
>
> *I need to understand as well, on May 19th, you were representing three debtors who are on the opposite side of a proposed plan support agreement. We never took action, but you were also seeking retention from Free Speech at the same time? I don't think I ever knew about that.*

15. As will be demonstrated in Court at the September 20 hearing on the Application, the following is the timeline of events, of which the U.S. Trustee was aware:

   i. On May 3, 2022, both the Texas and Connecticut Plaintiffs gave notice of their intent to dismiss the InfoW Debtors from their lawsuits and not be creditors of the InfoW Debtors. Therefore, all the documents and agreements, including the Amended Plan Support Agreement [Case No. 22-60020, Dkt. No. 48] negotiated and filed with the Court on April 28, 2022, only 5 days before, essentially became unsustainable, as the major condition for funding could not possibly occur.

   ii. By May 19, 2022, both the Texas and Connecticut Plaintiffs, comprising what was estimated to be the large majority of the creditors of the InfoW Debtors, had released or taken action to dismiss with prejudice their claims against the Debtors.

   iii. On May 19, 2022, FSS had **NOT** retained Applicant in any capacity. The Applicant prepared a proposed engagement letter on May 19, 2022, but an approved representative of FSS did not sign and engage Applicant for FSS until June 6, 2022.

   iv. Assuming May 19, 2022, is the operative date (which the Debtor and Applicant do not concede), the Plan Support Agreement had expired under its terms and did not have any support from FSS or Alex Jones to renegotiate the Plan Support Agreement. The whole purpose of the Plan Support Agreement—to have the Plaintiffs be part of the settling group—disappeared between May 3, 2022, when the Plaintiffs informed the Court that they intended to dispose of their claims against the InfoW Debtors, and May 18,

8

2022, when the Connecticut Plaintiffs filed their notice of dismissals with prejudice and the Texas Plaintiffs entered into the stipulation resolving their claims.

16. It is true that Attorney Lee said on May 19 that he would need to consider re-negotiating the PSA but, as all responsible bankruptcy lawyers understand, he was obligated to explore all alternatives with his clients (whether they turned out to be feasible or not) and explain the risks and benefits of the available options.[5] Attorney Lee's statements did not mean that the InfoW Debtors thought that it made business sense to undertake those negotiations or to continue the InfoW Bankruptcy Cases with further funding. Based on advice of his professionals and exercise of his business judgment, including the cost of litigation with the U.S. Trustee over its Motion to Dismiss, Applicant made an independent determination that the InfoW Debtors should dismiss their case rather than attempt to secure additional funding just so they could afford a fight with the U.S. Trustee. After the announcements in open court on May 19, the InfoW Debtors,

---

[5] Attorney Lee also noted that InfoW Debtors might decide to instead dismiss their cases and address the remaining claims outside of bankruptcy. Attorney Lee's representation to the Court was:

> And again, Mr. Schwartz and I are going to evaluation whether after the dismissals [with] prejudice [of] the Texas and Connecticut Plaintiffs, whether these debtors need to proceed with trying to confirm a plan with an amended plan support agreement or whether we are able to handle these creditors, the remaining creditors, outside of bankruptcy.

May 29, 2022, Hrg. Tr. at 8:16-21. What Attorney Lee said to the Court was entirely true.

At that same hearing, attorney Jayson Ruff, on behalf of the U.S. Trustee, represented to the Court:

> If these cases aren't to continue, then none of that is really necessary. The cases can get dismissed. You know, the debtors can go ahead and pay their creditors, ***including their professionals*** however they want to. The only thing we probably would want to have some treatment for in the dismissal order, again, assuming that's the route that we end up going, is to allow for Ms. Hazelton to apply for her fees and make sure that this Court retains jurisdiction for the payment of her fees.

*Id.* at 15:1-9 (emphasis added). The U.S. Trustee's position in the Objection is entirely contrary to the one represented to the Court on May 19, 2022, by Attorney Ruff.

through Attorney Lee, informed the U.S. Trustee on May 25, 2022 (6 days later) that the InfoW Debtors would agree with the U.S. Trustee's demand that their bankruptcy cases be dismissed.

17. Finally, Schwartz never addressed or discussed the issues regarding the InfoW Debtors when he attended the meetings with FSS starting on May 24, 2022—other than to confirm the InfoW Debtors intent to obtain dismissal of their cases—or at any time thereafter for FSS. Applicant never sat on both sides of negotiations regarding the Plan Support Agreement. Any negotiations with FSS regarding any matters under the Plan Support Agreement on behalf of the InfoW Debtors occurred prior to (a) the filing of the InfoW Debtors' cases on April 17, 2022, (b) the filing of Notice of Amended and Restated Declaration of Trust and Plan Support Agreement [ECF. 48], and (c) the April 29, 2022, status conference.

18. In paragraphs 33 and 34 of the Objection, the U.S. Trustee writes:

> 33. On August 3, 2022, the Court conducted a cash collateral hearing (the "August 3rd hearing"). At the hearing, Schwartz, who was now acting as the CRO for FSS, testified for several hours. Again, a point of concern raised by the Court was the nondisclosure of connections between the estate professionals[4] in the InfoW Cases and FSS and Jones. The Court asked the following:
>
> > *Let me get the question – I might as well ask it now because it's a good spot...I just need to understand it. On May 19th, there was a hearing before me where on May 18th, there was a request for a continuation on a motion to dismiss…and in this case, there is a letter dated by you to Free Speech dated the same day. I may be reading much into this, but it seems to me that you – either you wrote the letter that day or you had been in conversation with Free Speech before you wrote that – before that day you sent the letter. And I just need to understand – none of this was ever disclosed to me in connection with the case and the cases were dismissed on June the 10th officially, which tells me that Mr. Jones signed a retention letter. So, you were actively retained before these cases were dismissed – the last cases were dismissed – and I just need to understand, one, why that was never disclosed to me, and two, when did you begin to start soliciting or having conversations about representing Free Speech Systems.*

> Tr. August 3, 2022, at 147-148, 21:19.
>
> In response to the Court's questions, Schwartz stated that he could not recall the date but assured the Court that conversations concerning the FSS engagement only occurred "after we had been substantially convinced that we were going to be terminating the InfoWars bankruptcy." Tr. August 3, 2022, at 149, 4-8.

34. After listening to several hours of testimony at the August 3rd Hearing and upon the Sandy Hook Families' oral request for the formation of a tort claimant committee, the Court stated the following

> *There's been oral request for the appointment of a committee, and that can be done by the Court for cause. I'm not going to grant that today, but I am going to express some real concerns about what I heard, and I'll express what they are. You know, whether you realize it or not, Mr. Schwartz was negotiating on both sides of a deal.*

> Tr. August 3, 2022, at 239, 9:17.

19. First, FSS did not sign the Applicant's engagement letter on May 19, 2022. On May 24, 2022, the Schwartz attended a meeting with FSS where he obtained information about FSS and its financial condition. From May 24 through June 6, 2022, Applicant started work on FSS matters, even though FSS had not signed the agreement.[6] But no one made any promises to Applicant that Applicant would be retained without question. Alex Jones finally signed the Applicant's engagement letter on June 6, 2022.

20. Second, Schwartz did not even know about the potential for his engagement by FSS assignment until after nearly all of the claims against InfoW Debtors were released or about to be

---

[6] The services provided to FSS by the Applicant prior to June 1, 2022, when the stipulation agreeing to dismissal of the InfoW Cases was filed consisted of the following:

- May 24, 2022—7.25 hours related to travel to Austin, TX and meeting regarding the potential representation and background information on FSS.
- May 25, 2022—1.0 hour related to call with Axos bank re potential for DIP accounts and merchant services for FSS.

dismissed with prejudice. On or about May 19, 2022, a FSS representative contacted Attorney Lee and asked whether he and Schwartz could work with FSS on its restructuring. Attorney Lee did not mention or discuss this possible new assignment to Schwartz until **AFTER** the 2:00 p.m. hearing on Thursday May 19, 2022, wherein the Bankruptcy Court approved the dismissal with prejudice of claims held by the Texas Plaintiffs. On May 13, 2022, the Connecticut Plaintiffs had already filed their Motions to Dismiss with Prejudice their Claims Against the InfoW Debtors in Connecticut. When he did mention the new assignment, Attorney Lee requested Schwartz to carefully evaluate whether the InfoW Debtors should fight with the U.S. Trustee to continue their cases and only take on further representation if he came to that conclusion. Prior to providing any services to FSS, Schwartz determined that the InfoW Bankruptcy Cases should be dismissed.

21. Third, Attorney Lee and Schwartz engaged in the good faith analysis of whether any (1) further work required the Applicant's attention in the InfoW Bankruptcy Case, and (2) whether there were any other issues to cover before embarking on a new project, and (3) whether the work for FSS would create a conflict of interest for Applicant, *to wit*, did it make Schwartz no longer disinterested. The InfoW Debtors had been dismissed by the Plaintiffs and therefore no longer had any claims of contribution or indemnity between each other. Second, the license agreement between the two entities was in place and no breach or dispute existed between the two parties (even if such a dispute occurred, Schwartz and Attorney Lee recognized that conflict counsel for FSS would have to handle such a matter).

22. Fourth, FSS and the InfoW Debtors companies had 3 or 4 creditors to which they were jointly liable, and, hence, a reorganization of FSS would benefit the InfoW companies as FSS had more cash flow and assets to satisfy the creditors than did the InfoW Debtors after dismissal

of their bankruptcy cases. While not memorialized, the following are the topics that were considered and discussed between Schwartz and Attorney Lee, and the actions taken to enact their conclusions.

    a. To save costs and reduce administrative expenses, Attorney Lee immediately started drafting a motion to dismiss the InfoW Bankruptcy Cases. By May 23, 2022, Schwartz had determined that it was best to dismiss the cases and Attorney Lee had completed a draft of the motion to dismiss.

    b. On Wednesday May 25, 2022, Attorney Lee relayed Schwartz's decision to the U.S. Trustee. Both parties then worked in earnest to document that dismissal of the InfoW Bankruptcy Cases.

    c. From May 26, 2022, through May 31, 2022, Applicant spent zero hours working on matters for FSS matters and 1.33 hours working on matters for the InfoW Debtors. The matters for the InfoW Debtors comprised review of the stipulation dismissing the InfoW Bankruptcy Cases.

    d. On June 1, 2022, InfoW Debtors and U. S. Trustee filed Stipulation to Dismiss the InfoW Bankruptcy Cases [Case No. 22-60020, Dkt. No. 110].

    e. On June 10, 2022, the Bankruptcy Court approved the Stipulation and dismissed the IW Bankruptcy cases [Case No. 22-60020, Dkt. No. 114].

23. The InfoW Bankruptcy Cases lasted from April 17, 2022, through June 10, 2022: a total of 55 days and 40 business days. The duration between the dismissal of the Texas Plaintiffs' claims on May 19 and the decision to dismiss the InfoW Cases on May 23 was 4 days total and 1 business day. It took 9 total days and 6 business days from the decision to dismiss the InfoW Bankruptcy Cases and the filing of the stipulation of dismissal agreed with the U.S. Trustee.

24. Applicant and the Debtor do not contend or suggest that the short duration of the InfoW Bankruptcy Cases excuses any requirement to disclose under Bankruptcy Rule 2014. The recitation is set out to demonstrate that (1) the Applicant knew (and will testify about) that he ***could not*** "negotiate on both sides of a deal", (2) the Applicant made a business decision that it was not in the best interest of the estate to even re-negotiate a revised PSA after May 19, 2022,

and (3) that his failure to amend his Rule 2014 at that time was because, for all practical purposes the InfoW Bankruptcy Cases had concluded, especially with the U.S. Trustee wanting to have the bankruptcy cases dismissed, opposing the retention of any professionals by the estate, and asserting that the remaining claims could be handled outside of the bankruptcy process.

25. While the Court's comments were absolutely an appropriate basis for the U.S. Trustee to investigate, that is not what happened. The U.S. Trustee took no action for 42 days after he heard the concerns of the Court. Debtor's counsel was not called. No letter was sent. A Rule 2004 exam was never held. An informal interview to explain the facts was never requested. While the Court's valid questions went uninvestigated by the very agency responsible for overseeing the integrity of the bankruptcy process, the U.S. Trustee did not hesitate to use them to carelessly lob serious allegations against a well-qualified Applicant in the Objection, along with other material misrepresentations, and without providing the Court any context or additional information. The U.S. Trustee had information that would have addressed the Court's concerns but the Objection fails to provide any context, including that the U.S. Trustee played a direct role and advocated for the very circumstances with which the U.S. Trustee now take issue.

## THE APPLICATION SHOULD BE GRANTED

26. The U.S. Trustee wants this Court to not only find that Schwartz' disclosure violated Bankruptcy Rule 2014 in the InfoW Bankruptcy Cases, but that the violation was so severe that it warrants what is in effect a sanction against Schwartz in against Schwartz in a *different* case for a *different* debtor. The U.S. Trustee's position is not supported by the law or the facts and is inconsistent with the role the U.S. Trustee Program is supposed to fill in the bankruptcy process.

27. Bankruptcy Rule 2014 requires a verified statement disclosing connections to accompany an application to employ and courts have held that Bankruptcy Code 327(a) implies that the obligation continues for professionals that *are employed by* or *are seeking employment by* the estate. After reaching agreements resolving the claims of the Connecticut Plaintiffs (on May 13, 2022) and the Texas Plaintiffs (on May 18, 2022), the InfoW Debtors decided to agree to dismiss their cases as demanded by the U.S. Trustee. By May 23, 2022, the InfoW Debtors had decided to agree to the U.S. Trustee's demands to dismiss their cases and Attorney Lee had drafted a motion to dismiss the InfoW Bankruptcy Cases. Schwartz was no longer seeking to be employed as an estate professional on May 24, 2022, when he attended the meeting with FSS.

28. Further, even if Schwartz was required by Bankruptcy Rule 2014 and Bankruptcy Code 327(a) to supplement his disclosure of connections despite the InfoW Debtors' decision to dismiss, that oversight would not justify denying *this* Debtor's application to employ Applicant in *this* chapter 11 case. None of the authorities cited in the Objection support that position and the relief would be entirely unprecedented.[7] While the Court has discretion to consider factors beyond just technical compliance with Bankruptcy Code 327(a), that discretion should be reasonably applied. What matters is whether employing Applicant benefits the Debtor's estate and furthers administration of its chapter 11 case. The U.S. Trustee does not dispute these issues favor approving the employment of Applicant.

29. The U.S. Trustee does not dispute that the Application and Applicant meet all the requirements of Bankruptcy Code 327(a) and Bankruptcy Rule 2014 for employment in the

---

[7] Attached as Exhibit B to the reply to the U.S. Trustee's objection to the Debtor's application to employ Shannon & Lee LLP is an analysis of the cases cited in the Objection. Not a *single* case cited in the Objection supports what the U.S. Trustee asks the Court to do here.

Debtor's chapter 11 case. Nor does the U.S. Trustee dispute the allegations in the Application that the Applicant (a) does not hold or represent any disqualifying adverse interest and is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14) (Application ¶¶ 38, 48 & 52); (b) disclosed all relevant connections in this case (Application ¶¶ 45 & 53); (c) is well qualified to provide management services that will assist the an enhance the Debtor's efforts to maximize value to creditors (Application ¶¶ 30 & 31). The U. S. Trustee also does not challenge the proposed terms of reimbursement, compensation, and hourly rates of the Applicant are reasonable (Application ¶ 35). Most importantly, the U.S. Trustee does not dispute that Debtor's employment of Applicant is in the best interests of the Debtor's bankruptcy estate.

30. The Applicant's work for the Debtors was and continues to be critical to the Debtor's ability to operate in chapter 11 and administer this case. Among other things the Applicant:

    a. Obtained a bank account with an approved depository when the Debtor's previous efforts to find banking failed;

    b. Worked to get the Debtor's books for 2021 and so far in 2022 posted and closed;

    c. Renegotiated the Debtor's credit card processing to reduce the cost by 6% of the Debtor's gross revenue;

    d. Found and hired a business manager for the Debtor;

    e. Developed a plan to finance a significant increase in inventory without risking the Debtor's current assets or incur debt obligation through a consignment agreement with an unrelated party and is working to effectuate such plan;

    f. Is working to obtain further reductions to the Debtor's cost of processing credit card charges;

    g. Replaced the Debtor's health insurance program, reducing the Debtor's annual cost by an estimated $80,000 while also decreasing costs to employees;

    h. Employed an operations manager and new bookkeeper;

  i. Continues to be involved in formulating a plan of reorganization and directing other aspects of the Debtor's chapter 11 case.

Based on this, the Court should approve the Application so the Applicant can continue to provide these services to the Debtor and lead this chapter 11 case to a confirmed plan of reorganization.

  31. As the arguments and the legal authorities relied on by the U.S. Trustee in his Objection to the Applicant are substantially the same as the ones asserted by the U.S. Trustee in his objection to the Debtor's application to employ Shannon & Lee LLP, Applicant and the Debtor adopt and incorporate by reference the additional responses, arguments, and authorities set forth in the Debtor's reply to such objection [ECF No. 166].

## **CONCLUSION**

  32. If the U.S. Trustee believes that Bankruptcy Rule 2014 required the Applicant to submit a supplemental disclosure in the InfoW Bankruptcy Cases despite that the InfoW Debtors had agreed to the U.S. Trustee's own Motion to Dismiss prior to obtaining authority to employ any professionals, there is a way to raise that issue. But it is not in objecting to the employment of the Applicant in a different case by a different Debtor. There is no dispute that Applicant meets the requirements for employment and that its employment will benefit the estate and administration of these bankruptcy cases. The Application should therefore be granted.

*[Remainder of Page Intentionally Left Blank]*

Dated: September 18, 2022

**LAW OFFICES OF RAY BATTAGLIA, PLLC**
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Co-Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor-in-Possession*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served (a) at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and (b) within one hour of filing, by email on the following parties:

| | |
|---|---|
| Ha Nguyn<br>OFFICE OF THE U.S. TRUSTEE<br>515 Rusk Ave, Suite 3516<br>Houston, TX 77002<br>Ha.Nguyen@usdoj.gov | Melissa Haselden<br>SUBCHAPTER V TRUSTEE<br>700 Milam, Suite 1300<br>Houston, TX<br>mhaselden@haseldenfarrow.com |
| Randy W. Williams<br>BYMAN & ASSOCIATES PLLC<br>7924 Broadway, Suite 104<br>Pearland, Texas 77581<br>rww@bymanlaw.com | Elizabeth Freeman<br>JACKSON WALKER LLP<br>1401 McKinney St., Suite 1900<br>Houston, TX 77010<br>efreeman@jw.com |
| Ryan Chapple<br>CAIN & SKARNULIS PLLC<br>303 Colorado Street, Suite 2850<br>Austin, Texas 78701<br>rchapple@cstrial.com | Avi Moshenberg<br>MCDOWELL HETHERINGTON LLP<br>1001 Fannin Street, Suite 2700<br>Houston, TX 77002<br>avi.moshenberg@mhllp.com |
| | Jarrod B. Martin<br>CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS, & AUGHTRY, PC<br>1200 Smith Street, Suite 1400<br>Houston, Texas 77002<br>jarrod.martin@chamberalinlaw.com |

                                                                  */s/Kyung S. Lee*
                                                                  Kyung S. Lee