

712 Main Street, Suite 1830, Houston, TX 77002

May    ,2022  KSL REDLINE 6.5.22

**VIA EMAIL**

Free Speech Systems, LLC

VIA EMAIL: rbattaglialaw@outlook.com

**Re: Engagement of Chief Restructuring Officer**

Gentlemen:

This letter confirms that Alex E. Jones has delegated to ~~Free Speech Systems, LLC ("FSS") has engaged~~ W. Marc Schwartz ~~("Consultant")~~ of Schwartz Associates, LLC ("SALLC") those managerial duties under ¶ 8.01 of the Free Speech System, LLC's ("FSS") Company Agreement to act as its Chief Restructuring Officer (the "CRO"), as defined in this letter to advise and lead its restructuring efforts involving the scope described herein, potentially including a filing under the United States Bankruptcy Code (the "Bankrutpcy Code"). This letter also confirms that FSS shall retain SALLC as its financial advisor ("FA") in connection with the restructuring efforts. ~~Chapter 7 or Chapter 11 proceeding.~~

SALLC understands that the purpose of the engagement is to continue stable operations while maximizing the values of FSS' assets, including negotiations with creditors of FSS and affiliates of FSS to assure that creditors of FSS have the best chance of recoveries on their claims. ~~Consultant~~CRO will work to maximize return~~s~~ and to assure a fair pro rata distribution to all unsecured creditors.

I.   **Scope of Engagement**

~~Consultant~~CRO will lead FSS' management and personnel through the restructuring process. It is agreed that ~~Consultant~~CRO's authority may include, but not be limited to, the following:

1. Provide business and debt restructuring advice, including as it relates to business strategy and other key elements of the business;
2. Assist FSS with managing due diligence requests and other items that may be requested by its various constituents as part of the restructuring process;
3. Prepare cash flow forecasts and related financial and business models;
4. Identify and implement short and long-term liquidity initiatives;
5. Prepare Statements of Financial Affairs and Schedules, Monthly Operating Reports, and other similar regular Chapter 11 administrative, financial, and

1



712 Main Street, Suite 1830, Houston, TX 77002

  accounting reports required by the United States Bankruptcy Court ("Bankruptcy Court") as well as providing necessary testimony before the Bankruptcy Court on matters within ~~Consultant~~CRO's areas of expertise;
6. Review inventory marketability and provide monetization alternatives as deemed appropriate;
7. Make operational decisions, with advice of current ownership, directed to maximizing the value of FSS;
8. Implement cost containment measures;
9. Negotiate with creditors, prospective purchasers, equity holders, equity committees, official committee of unsecured creditors, and all other parties-in-interest;
10. Be in charge of all business decisions on behalf of FSS as necessary or required, utilizing ~~Consultant~~CRO's business judgment in aid of the restructuring.
11. Execute all documents and take all other actions necessary to effectuate restructuring of FSS, including in any case before the Bankruptcy Court, subject to review and oversight by current ownership.

  II.  **Indemnification**

  FSS agrees to indemnify, defend, and hold harmless ~~Consultant~~CRO, individually, and SALLC, its subsidiaries or affiliates, the respective partners, directors, officers, agents, contractors, and employees of SALLC and each other person, if any, controlling SALLC or its affiliates (individually or collectively) from and against any and all losses, claims, damages, liabilities, or costs, as and when incurred, to which such party may become subject to or which are asserted against any party, directly or indirectly, in any way related to party while acting for FSS under this agreement including, without limitation, in connection with i) any act or omission by party related to engagement as FA or CRO under the Agreement or ii) Party's acceptance, performance or non-performance of obligations under said Agreement.

  FSS will advance to the party amounts paid by the party for reasonable and documented legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages, or liabilities or any action in respect thereof, whether or not in connection with existing, pending or threatened litigation against the party; provided, however, that FSS shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found to have resulted from party's gross negligence, bad faith, willful misconduct, or a breach of this agreement and party shall no later than ten days after a determination of gross negligence, bad faith, willful misconduct, or breach of this agreement refund such amounts previously advanced by FSS. If, in the opinion of counsel, representing both parties in this matter covered by this indemnification creates a



potential conflict of interest, the party may engage separate counsel to represent them at FSS' expense.

### III.    Materials Provided

FSS agrees to provide SALLC with such financial and other available information as is reasonably required for SALLC to render the services performed or to be performed hereunder. SALLC agrees to review the information and identify any inaccuracies or omissions that are reasonably apparent on the face of the information provided.

### IV.    Work Product

SALLC shall not disclose any confidential or privileged information to any third party, subject to the following exceptions: (a) to SALLC's affiliates, vendors, or agents who provide services in connection with this engagement; (b) with Client's written consent; (c) when legally required to do so; or (d) if such information is available from public sources.

Any and all records of FSS obtained by SALLC will be promptly returned to FSS at the end of this Engagement.

### V.    Disclosures

FSS shall not disclose any work or analyses of SALLC or ~~Consultant~~CRO to any third party (other than any direct or indirect equity holder of FSS) without prior written consent of ~~Consultant~~CRO, which shall not be unreasonably withheld. Neither SALLC nor ~~Consultant~~CRO shall disclose any information respecting the business, properties, books, and records of FSS except to professionals hired by FSS for purposes of this Engagement, unless subpoenaed by a court of c~~C~~ompetent j~~J~~urisdiction.

SALLC cannot assure that, following the completion of our internal conflict search, an engagement for or involving your creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by SALLS, its subsidiaries or affiliates. Should any potential conflict come to the attention of SALLC, we will endeavor to resolve such potential conflict and will determine what action needs to be taken. You agree that you will comprehensively inform us of the parties-in-interest to this matter of or additions to, or name changes for, those parties-in-interest whose names you provided.

SALLC may have provided, currently provide, or provided in the future, services to FSS' creditors, other parties-in-interest, and their respective attorneys and accountants in matters or engagements unrelated to this Engagement. You agree that party shall not have responsibility to FSS relating to such professional services, nor any responsibility to use or disclose information SALLC~~S~~ possess by reason of such services, whether such information might, by itself or others, be considered material to FSS.



712 Main Street, Suite 1830, Houston, TX 77002

SALLC has performed an internal search for any such conflict of interest with respect to FSS, its officers, directors, creditors, and other parties and has found no conflicts of interest.

## VI. Term & Termination

This agreement shall remain in effect until the earlier of i. T~~t~~he completion of the winddown of FSS, ii. Execution of a comprehensive debt restructuring agreement, iii. Confirmation and completion of a liquidating Chapter 11 plan of reorganization, iv. SALLC or ~~Consultant~~CRO's resignation, or vi. Termination of the agreement by either party upon seven (7) calendar days' written notice.

SALLC may terminate this agreement without notice if FSS fails to make payments when due hereunder.

## VII. Compensation

For ~~provided~~ services provided described herein, SALLC shall be compensated for the services of ~~Consultant~~CRO on an hourly fee basis of $690.00 per hour.

If, in ~~consultant~~CRO's sole judgment, it is determined that additional services are required to assist with the scope of this ~~e~~Engagements as outlined by this Agreement, ~~consultant~~CRO may employ SALLC, which shall be compensated at the following hourly rates

| | |
|---|---|
| M. Christian Schwartz: | $470 per hour |
| Managers: | $350 per hour |
| Associates: | $280 per hour |
| Analysts: | $210 per hour |
| Administrative Staff | $95 per hour |

FSS shall be responsible for ~~Consultant~~CRO's and SALLC's reasonable and necessary documented out-of-pocket costs and expenses incurred in connection with this engagement. SALLC will provide to FSS detailed documentation of all expenses incurred.

SALLC acknowledges that, should FSS seek relief under ~~Title 11 of the United States Code~~the Bankruptcy Code, and FSS apply for authorization to retain and employ ~~Consultant~~CRO and SALLC, FSS' payment of ~~consultant~~CRO's and SALLC's fees and expenses shall be subject to Bankruptcy Court approval. The provisions of this paragraph shall not limit nor restrict the indemnification and contribution provisions set forth in this Agreement.

**A. Retainer**



712 Main Street, Suite 1830, Houston, TX 77002

In order to commence the engagement, SALLC requires a retainer payment in the amount of $75,000.00 for the representation of FSS.  SALLC must receive the retainer payment as well as the signed copy of this letter before the firm will take any action or be deemed to represent you. In the event that this agreement is terminated prior to incurring fees and expenses in excess of retainer amount, the balance shall be refunded to FSS within thirty days.

B.  Invoicing

Prior to filing bankruptcy, invoices reflecting the services of SALLC, including the services of ~~Consultant~~CRO, shall be prepared and submitted monthly and paid no later than seven (7) business days thereafter. In the event that any portion of the retainer is used prior to the filing of bankruptcy, FSS shall replenish the retainer prior to filing bankruptcy. In case of a disputed invoice, Client agrees to pay undisputed portion of f~~F~~ees. Expense charges shall be submitted to FSS no later than 30 days after expense was incurred or immediately upon approval of Bankruptcy Court. For any recurring monthly charges, payment is to be made on the first day of each month.  Upon filing bankruptcy, invoices shall be submitted and paid in accordance with the orders of the Bankruptcy Court.

VIII.  CRO's Counsel

Prior to commencing this engagement, FSS will fund a $20,000 retainer to be paid to SALLC so that SALLC can engage Michael Ridulfo of Kane, Russell Coleman Logan PC to serve as legal counsel to the CRO.

IX.  Authorization

FSS represents that this Agreement outlines the engagement and has been approved by its Board of Directors or managers (as appropriate) and that the individual that signs this Agreement on behalf of FSS has been duly authorized to do so, including express consent of the Board of Directors or Managers.

Further, it is acknowledged that future economic, operational performance or the confirmation success of a Chapter 11 plan of reorganization or Chapter 7 liquidation plan cannot be guaranteed. The monthly fees and related expenses to be paid by FSS to ~~Consultant~~CRO and SALLC are not contingent upon the results of this engagement and neither ~~consultant~~CRO nor SALLC warrant or predict results or developments during the term of this engagement.

SALLC's maximum liability relating to services rendered under this letter (regardless of form of action, whether in contract, negligence, or otherwise) will be limited to the charges paid to SALLC for the portion of its services or work products giving rise to liability. In no event shall SALLC be liable for consequential, special,



712 Main Street, Suite 1830, Houston, TX 77002

incidental, or punitive loss, damage or expense (including, without limitation, lost profits, opportunity costs, etc.) even if it has been advised of their possible existence.

Please acknowledge your agreement with the terms of this engagement letter and ~~have your client do the same~~ by signing and dating below. Once executed and the retainer is funded, a copy will be delivered to you via email. If you have any questions regarding this engagements letter, please call me at (832) 583-7021.

Very truly yours,

W. Marc Schwartz

**CONFIRMED AND AGREED**

Free Speech Systems, LLC

By: _____

Date: _____

Invoices should be sent to:

Name: _____

Email: _____