**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22 - 60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**SHANNON & LEE LLP'S MOTION PURSUANT TO RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR REHEARING ON THE ISSUE OF DISINTERESTEDNESS WITH RESPECT TO THE DEBTOR'S APPLICATION TO EMPLOY SHANNON & LEE LLP**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Shannon & Lee LLP ("S&L") hereby moves pursuant to Rule 59 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for rehearing to present additional evidence on the issue of disinterestedness with respect to the Debtor's Application to Employ S&L. In support of this motion (the "Motion"), S&L respectfully states as follows:

**BACKGROUND AND PRELIMINARY STATEMENT**

1.      On August 20, 2022, Free Speech Systems, LLC ("FSS"), the debtor and debtor-in-possession in the above captioned case, filed its *Application of Debtor for an Order (A)*

*Authorizing Employment of Shannon & Lee LLP as Bankruptcy Co-Counsel for the Debtor, and (B) Granting Related Relief* [ECF No. 85] (the "<u>S&L Employment Application</u>"). FSS sought to employ S&L to "be primarily responsible for the day-to-day management of the case, issues involving the Sandy Hook Litigation, and all routine activities typical to the Chapter 11 Case." S&L Employment Application ¶ 22. FSS sought to retain The Law Offices of Ray Battaglia (the "<u>Battaglia Firm</u>") to "provide legal advice regarding strategy for the Chapter 11 Case and implementation of that strategy." *Id.*

2.      The U.S. Trustee objected to the S&L Employment Application on September 12, 2022, and filed an amended objection on September 14, 2022 [ECF No. 154] (the "<u>UST Objection</u>"). The Sandy Hook Plaintiffs joined the amended UST Objection on September 15, 2022 [ECF No. 159]. FSS replied to the UST Objection on September 16, 2022 [ECF No. 166].

3.      The UST Objection argued that the Court should deny the S&L Employment Application because of the failure of S&L partner Kyung Lee to supplement his disclosures required under Bankruptcy Rule 2014 in the cases of (the "<u>IW Cases</u>") of InfoW, LLC, IWHealth, LLC, and Prison Planet, LLC (the "<u>IW Debtors</u>") to reflect that he had begun working for FSS prior to the dismissal of those cases. The UST Objection did not dispute that S&L was disinterested in FSS's chapter 11 case, but rather argued that it was "appropriate for the Court to exercise its broad discretion under Section 327(a) to address Attorney Lee's prior acts in the related cases— which this case is essentially a continuation of—and deny the S & L Application." UST Objection ¶ 51. FSS's reply addressed this argument.

4.      The Court held a hearing on the S&L Employment Application on September 20, 2022 (the "<u>September 20 Hearing</u>"). No party-in-interest contended that S&L held an interest adverse to the FSS bankruptcy estate and the issue was not raised before the close of evidence.

The UST Objection did not assert that S&L was disinterested or assert that the firm held an interest adverse to the FSS bankruptcy estate. As FSS asserted in its opening statement, there was no dispute as to disinterestedness at that time. The Court also stated that the focus of the hearing and the evidence should be on the non-disclosures in the IW Cases. According to the Court:

> And I'm going to tell you something because I want you to engage in a dialogue with me. The concern, when you really boil it down, I think you're looking at this too -- you know, looking at this kind of through a check the box perspective, right? If the behavior, the non-disclosures began in one case and [if] there are potential conflicts through acts that Mr. Schwartz and Mr. Lee have taken that continue into this case, then the history is important.

> For example, if, for example, you know, Mr. Lee or Mr. Schwartz's relationship with Mr. Jones or PQPR is concerning, it raises an issue as to whether either one of them can provide sound legal advice to the estate or sound financial advice to the estate, then the history is important, right?

> So you can't just -- I understand your point that if there's a lack of disclosure in one case, you should look at it as that case and it shouldn't essentially carry forward as a penalty into the new case. The question is, is there a throughline essentially; that's the question that you've got to answer today, at least that's where I'm focused on.

> If you're asking me, you know, how I . . . think about it, that's the way I think about it. So, for example, so when Mr. Lee is working -- I think you described in May, and Mr. Schwartz are working in late May and have decided that there's no hope for InfoW, what do I do with the fact that there's a pleading filed with me in this case that says on June 2nd, the Debtor is still considering all options, right?

> ***

> How then do I view that, right? That's the real question, right, and whether that, the changing of the jersey in essence, you know, whether that had already occurred, but no one told me, right. And so, that's the, hey, we're still considering all options, hey, as a fiduciary, we're thinking about everything, and five days later, you're in a meeting in Austin, you know, with the two plan funding sources in the current case.

> ***

> The question is does that carry, right, into FSS and into this case and it should be judged into FSS. And I know that that's where the evidence is; I'm just telling you the way I'm thinking about this now. So as arguments get made, that's the way I -- that's what I'm thinking about.

Hrg. Tr. 27:12-29:12. And despite the Court's invitation, the U.S. Trustee did not argue at the September 20 Hearing that S&L was not disinterested with respect to the FSS bankruptcy estate or that any relationship Mr. Lee or S&L had with Alex Jones ("AEJ") or PQPR created a bias against the interests of the FSS bankruptcy estate.[1] Nor did the U.S. Trustee adduce evidence that S&L or Mr. Lee had any bias with respect to the FSS bankruptcy estate.

5.      After considering the evidence and the arguments presented, the Court denied the S&L Employment Application. The core of the Court's ruling was that pre- and post-petition actions related to FSS caused S&L to hold an adverse interest to FSS's bankruptcy estate with respect to decisions against AEJ or PQPR under the "catch-all" provision of Bankruptcy Code § 101(14)(C). *See* Hrg. Tr. 236:1-2, 236:13-14, 247:4-5. In addition to the non-disclosure of the connection to FSS in the IW Cases, the Court found problematic (a) Mr. Lee's attendance at the focus group regarding the jury perception of AEJ, Hrg. Tr. 243:18-19; (b) the proposed cash collateral budget providing for payment AEJ's travel expenses and security during the Connecticut Sandy Hook trial, Hrg. Tr. 244:5-12; (c) FSS's initial proposed payment of all legal fees for Connecticut state court counsel, Hrg. Tr. 244:21-25; and (d) AEJ's asserted indemnity, Hrg. Tr.

---

[1] As indicated in the U.S. Trustee's opening statement, the only issue raised by the U.S. Trustee was the sanction for Mr. Lee's failure to supplement his disclosure in the IW Cases:

> [A]ll we're saying here is there was a serious non-disclosure that occurred with this very connection. I think under Rule 2014, there is a proverbial fox that guards the henhouse. What we're asking is harsh, but, you know, disclosure violations when they occur, you know, sometimes the consequences are harsh. A lot of cases, you might get disqualified. A lot of cases, you lose all your fees. But sometimes, that's what it takes to uphold the integrity of the bankruptcy system and that's why we're asking for Your Honor to deny the two applications that are before you.

Hrg. Tr. 44:7-15.

247:14-16. The Court entered the order denying the S&L Application to Employ [ECF No. 182] (the "Order Denying Employment") that evening.

6.      Through this Motion, S&L requests a rehearing to allow S&L to present evidence regarding these additional issues on disinterestedness raised by the Court. Under Rule 59(a) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to the S&L Employment Application by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may grant a new hearing "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court" is authorized to "take additional testimony" and "amend findings of fact and conclusions of law or make new ones . . . ." Where a completely new issue is suddenly raised, a new trial or hearing is required. *See Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 111-12 (5th Cir. 1982) ("This Court has limited reversible error from unfair surprise to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify.").

7.      The additional evidence, summarized below, will demonstrate that S&L is disinterested and has no bias adverse to the FSS estate with respect to issues involving AEJ or PQPR. S&L has no predisposition hindering its ability to recommend or pursue positions contrary to AEJ and PQPR. The evidence will address the items Court found problematic, but which S&L did not address because they were not raised prior to the close of evidence or in the UST Objection. S&L submits that the additional evidence will show S&L is a "disinterested person" and the S&L Employment Application should be granted.

8.      In the alternative, S&L submits that the additional evidence will demonstrate that S&L neither holds nor represents any adverse interest with respect to the enumerated matters to be S&L's primary responsibility as set out in the S&L Employment Application. This consists of (a)

administrative matters such as preparing and filing of notices, serving pleadings, complying with the Bankruptcy Local Rules, (b) matters related to enabling the Sandy Hook Litigation to continue to judgment, and (c) specific matters requested by FSS or lead bankruptcy counsel. S&L submits that employment on these limited matters is appropriate under Bankruptcy Code § 327(e).

9.    Bankruptcy Code  § 327(e) authorizes the employment of an attorney for a specified special purpose other than to represent the trustee or debtor-in-possession in conducting the case, where the attorney previously represented the debtor, the retention is in the best interest of the estate, and the attorney does not represent or hold an any interest adverse to the to the debtor or to the estate with respect to the matter on which such attorney is to be employed. Courts have held that counsel may be employed under section 327(e) to handle discrete bankruptcy issues where another counsel has been retained to "conduct the case" by formulating the plan of reorganization, addressing claims, and conducting required investigations.

10.    As set out below, the additional evidence will demonstrate that S&L is disinterested with respect to these limited matters. S&L submits that the existing evidence already demonstrates that S&L represented FSS prior to the petition date, and that S&L's familiarity with the Sandy Hook Litigation was essential to enable the Heslin/Lewis Suit and Connecticut Litigation to continue to judgment. Employment of S&L under section 327(e) is therefore appropriate.

11.    FSS may not need further services from S&L if it obtains replacement co-counsel or the contemplated mediation is successful. Even so, however, the Court should consider and grant the Motion allow S&L to present evidence that would have been presented at the September 20 Hearing if the issue of S&L's disinterestedness was raised prior to the close of evidence.

## ARGUMENT

**A. Rehearing to Allow Additional Evidence on the Issue of S&L's Disinterestedness is Appropriate Here.**

12.     Bankruptcy Rule 9023 makes Federal Rule 59 applicable to proceedings under the Bankruptcy Code.[2] Federal Rule 59(a)(1)(B) provides that courts may grant a new trial on some or all issues after a non-jury trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."  Federal Rule 59(a)(2) provides that the court may "open the judgement if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."

13.     Among the reasons for granting a new trial or rehearing is surprise that is inconsistent with substantial justice. *Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 111-12 (5th Cir. 1982). The Fifth Circuit Court of Appeals has held that it is reversible error to deny a Rule 59(a) motion—i.e., a retrial or rehearing is required—where a new issue is suddenly raised. *Id.* at 12 (citing *F & S Offshore, Inc. v. K.O. Steel Castings, Inc.*, 662 F.2d 1104, 1108 (5th Cir. 1981); *Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978)).

14.     The U.S. Trustee was the only party to file an objection to the S&L Employment Application, which was joined by the Sandy Hook Plaintiffs. The UST Objection raised only a single issue—whether the Court should deny the S&L Employment Application under Bankruptcy Code § 327(a) because attorney Kyung Lee failed to supplement his Bankruptcy Rule 2014 disclosure in the IW Cases to reflect that he had begun providing services to FSS prior to the dismissal of those cases. The U.S. Trustee did not dispute in the UST Objection or at the September 20 Hearing that S&L is a "disinterested person" in the FSS bankruptcy case or that S&L neither holds nor represents any interest adverse to the FSS bankruptcy estate.

---

[2] Under Bankruptcy Rule 9023, a motion under Federal Rule 59 must be brought within 14 days in bankruptcy matters.

15.     Bankruptcy Local Rule 9013-1(g) requires parties opposing the entry of relief requested from the Court to file a response to such motion and provides that Bankruptcy Rule 7008—which, in turn, incorporates Federal Rule 8—applies to such responses.[3] Federal Rule 8(b)(6) provides that allegations are deemed admitted if a responsive pleading is required and the allegation is not denied in a response.

16.     Based on that, FSS and S&L were not aware that S&L's disinterestedness was a disputed issue at the September 20 Hearing. The U.S. Trustee had evaluated the disclosures in the S&L Application and determined that S&L was a disinterested person. The Plaintiffs—after obtaining discovery regarding the prepetition negotiations between the FSS and PQPR—did not dispute that S&L was disinterested. As announced at the September 13, 2022, hearing before the Court, the Debtor, S&L, and the U.S. Trustee believed that the issues surrounding the S&L Employment Application centered on the events in May and June of 2022. The only issue raised or argued by the U.S. Trustee or the Plaintiffs was whether the Court should exercise its discretion to deny the S&L Employment Application because of Mr. Lee's failure to supplement his disclosures in the IW Cases.

17.     As the Court noted during closing arguments, "nobody's actually talked about the fifth circuit standards for retention . . . which was the problem with the pleadings and no one ever talked about, right, what it means to hold an adverse interest to the debtor or to the estate." Hrg. Tr. 211:13-18. While it is appropriate for the Court to raise that issue *sua sponte*, evidence had closed. FSS pointed to the relevant evidence in the record—that FSS had refused AEJ's urgings to seek extension of the automatic stay to AEJ and instead reached an agreement with the Connecticut

---

[3] Bankruptcy Local Rule 9013-1(g)(1) does not apply to motions for relief from the automatic stay. However, Bankruptcy Local Rule 4001-1(a)(10) requires an itemization of issues in dispute or compliance with Federal Rule 8 in responses to motions for relief from stay.

Plaintiffs to lift the automatic stay to allow their litigation to go forward. Hrg. Tr. 213:19-214:3. The reason that this was the only evidence in the record was that the issue had not been raised previously.[4]

**B.  The Additional Evidence Presented at Rehearing Will Demonstrate that S&L Has No Material Adverse Interest to the Estate.**

18.     The surprise regarding the issue of disinterestedness and whether S&L has an interest materially adverse to the interest of the estate at the September 20 Hearing prejudiced the S&L Employment Application. But for the surprise, S&L would have been able to present evidence establishing that S&L does not have any material adverse interest to the estate and is a disinterested person.[5]

19.     A professional is not a "disinterested person" if it (a) possesses or asserts any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant, or (b) possesses a predisposition under circumstances that render such a bias against the estate. *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005) (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985)). The inquiry "speaks in the present tense and only examines present interests." *In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016).

---

[4] S&L's ability to provide this information at the September 20 Hearing without it being previously was limited. In the absence of *allegations* in a proceeding concerning the lawyer's representation of the client, Rule 1.05(d)(2)(iii) does not expressly authorize the disclosure of unprivileged client information. While such information could arguably be revealed under some other provision of 1.05(d)—e.g., implicit authorization or to carry out the representation effectively—that is open to interpretation. Now that the issue has been raised by the Court's ruling, however, non-privileged information can be presented.

[5] The Court indicated in its ruling that Mr. Lee satisfied subsections (A) and (B) of Bankruptcy Code § 101(14). Hrg. Tr. 236:1-2. The Court ruled, however, that Mr. Lee had a material adverse interest for "any other reason" as set out in subsection (C) that was imputed on S&L. *See* Hrg. Tr. 236:13-14.

20.     The catchall provision "for any other reason" does not allow for disqualification of a professional for the mere appearance of conflicts. *In re Marvel Entm't Grp.*, 140 F.3d 463, 477 (3d Cir. 1998); *accord In re Contractor Tech., Ltd.*, Nos. H-05-3212, 05-37623-H1-7, 2006 U.S. Dist. LEXIS 34466, at *29 (S.D. Tex. May 30, 2006). The question is not whether the connection or predisposition could be imagined to create bias—it is whether that bias actually exists or would exist under certain circumstances that could occur. *See In re Marvel Entm't Grp.*, 140 F.3d at 477.

21.     In its ruling at the September 20 Hearing, the Court noted several issues other than Mr. Lee's nondisclosure in the IW Cases that appear to have factored into its determination that S&L has a material adverse interest to FSS's bankruptcy estate. S&L requests that the Court grant a rehearing to allow S&L to present evidence addressing these issues that were not raised prior to close of the evidence at the September 20 Hearing.

22.     The additional evidence that S&L seeks admitted into the record at a hearing is set out below. Based on this additional evidence, S&L submits that the Court should find that S&L is disinterested and grant the S&L Employment Application, at least for services provided prior to September 20 Hearing.

      i.     *Ability to Provide Impartial Advice with Respect to PQPR's Asserted Secured Claim*

23.     In its ruling, the Court questioned the ability of S&L to be unbiased with respect to PQPR under the record before it. The additional evidence that S&L seeks to admit at a rehearing would demonstrate that S&L does not have any predisposition that limits or interferes with the ability of S&L to provide unbiased advice with respect to PQPR.

      a)     Evidence Regarding Prepetition Analysis of PQPR's Asserted Secured Claim and Related Negotiations

24.     The very first work product S&L produced for the Debtor, prior to the Petition Date, was an analysis of PQPR's asserted lien and note (the "PQPR Memo"). Subject to obtaining

permission from FSS to present this privileged document, S&L will seek admission of this document into evidence at a rehearing.[6] After S&L prepared and circulated the PQPR Memo internally among FSS's professionals, FSS began negotiations with PQPR. During those negotiations, S&L emphasized to counsel for PQPR that the alternative to a superior negotiated solution was an immediate challenge to PQPR's asserted claim and lien through an avoidance action in the contemplated bankruptcy case. FSS ultimately negotiated deals with PQPR that were superior to what FSS could have accomplished by immediately challenging PQPR's secured claim.

25.    First, FSS negotiated the Forbearance Agreement attached hereto as <u>Exhibit A</u>. Under the Forbearance Agreement, the Debtor modified the business relationship set out in the Memorandum of Understanding attached as <u>Exhibit B</u>. The Forbearance Agreement provided that (a) PQPR received $2,500 per business day on account of its asserted secured claim and (b) that FSS would acquire product directly—including $750,000 of product previously paid for by PQPR—and receive a 90% of the proceeds of the sales (with PQPR receiving 10%). Under the Memorandum of Understanding that previously governed the relationship between PQPR and FSS, PQPR received $11,000 per day and 80% of the proceeds (with the Debtor only receiving 20%). FSS believed that PQPR was necessary for its business and the Forbearance Agreement reflected an outcome that could not have been achieved by challenging PQPR's claim.

26.    Second, FSS negotiated with PQPR a consensual cash collateral order which did not contain any of the traditional and usual protections for a secured lender [ECF No. 6-1]. The proposed cash collateral order provided that FSS waived no claims against PQPR, did not find that

---

[6] S&L discussed with Mr. Battaglia, who is serving as the sole counsel for FSS, obtaining authority to disclose this privileged document as an attachment to this Motion. However, FSS did not have a person in place who could authorize waiving attorney-client privilege. FSS filed an application to retain Patrick Magill as a replacement chief restructuring officer on October 3, 2022 [ECF No. 205]. S&L will seek authority from Mr. Magill to disclose the potentially privileged evidence. The documents attached to this Motion are not privileged because they have been provided to other parties or presented in this chapter 11 case. Non-privileged information may be disclosed pursuant to Rule 1.05(d)(2) of the Texas Disciplinary Rules of Professional Conduct.

PQPR's lien or debt was valid, and did not place limitations on FSS or any other party with respect to challenging PQPR's asserted secured claim. As PQPR's attorney represented at the August 3, 2022, hearing, PQPR gave up all of the things that it would normally negotiate for. August 3, 2022, Hrg. Tr. 45:15-16. The proposed cash collateral order was ultimately modified, but there were no protections to PQPR that were removed.

27.     Third, there were preliminary discussions among FSS and PQPR about the possibility of subordinating any unsecured claim of PQPR or otherwise reaching a consensual resolution on the disputed claim and lien. Avoiding PQPR's lien but not the entirety of PQPR's notes would leave PQPR with a large unsecured claim. Depending on the outcome of the Sandy Hook Litigation, that amount could exceed the other unsecured claims in the FSS chapter 11 case.[7] Under Bankruptcy Code § 726(a)(4)—relevant because of section 1129(a)(7)(ii)—punitive damages are lower priority than compensatory damages. Working toward agreed subordination of PQPR's entire claim or other resolution would result in a better outcome for the FSS bankruptcy estate and creditors than avoiding PQPR's lien and leaving PQPR with an unsecured claim.

28.     Although FSS ultimately reached a better result through negotiations than could have been accomplished by immediately filing an avoidance action against PQPR, the evidence S&L seeks to present at a rehearing would demonstrate that S&L has no predisposition that that limits or interferes with the ability of S&L to provide unbiased advice with respect to PQPR.

   b)   Analysis Regarding PQPR's Requested Destruction of Information.

29.     In connection with the negotiations regarding the Forbearance Agreement, PQPR provided FSS information that PQPR later requested that FSS destroy. S&L analyzed this request

---

[7] Although not determined at the time of the negotiations with PQPR, compensatory damages for the plaintiffs in the Heslin/Lewis Suit totaled $4.1 million. Carrying that through to all 19 plaintiffs would result in liability for compensatory damages totaling $38,950,000.

and advised the Debtor that the information (a) was not required to be destroyed and (b) should not be destroyed. The email chain reflecting this analysis is attached hereto as Exhibit C (the "PQPR P&L Email").[8]

30.     The PQPR P&L Email again demonstrates that S&L has no predisposition that limits or interferes with the ability of S&L to provide unbiased advice with respect to PQPR. S&L's conclusion was that FSS was not required to and should not destroy the information provided by PQPR provided despite PQPR's demand. Further, S&L advised maintaining any privilege with respect to the information if asserted by PQPR, demonstrating that S&L was not biased *against* PQPR.

### c)     Scheduling PQPR's Asserted Secured Claim as Disputed

31.     FSS indicated on its schedules of assets and liabilities filed in this case [ECF No. 121] (the "Schedules") that PQPR's asserted secured claim was disputed. S&L advised FSS—through its then-proposed CRO March Schwartz—with respect to this matter. Subject to obtaining permission from FSS to disclose the confidential advice provided, S&L will seek to admit evidence with respect to S&L's advice.

32.     S&L contends that the contents of the advice provided with respect to the characterization of PQPR's claim as disputed on the Schedules would demonstrate that S&L has no predisposition that limits or interferes with the ability of S&L to provide unbiased advice with respect to PQPR, including matters related to the allegations of the Plaintiffs. Further, the outcome of listing the claim as disputed indicates that together, S&L and Schwartz had no conflict preventing them from taking positions contrary to PQPR.

---

[8] This communication was not privileged because the conclusion was provided to AEJ's bankruptcy attorney.

ii.   *Ability to Provide Impartial Advice with Respect to Alex Jones*

33.     The Court also indicated that it had concerns about S&L's disinterestedness with respect to issues adverse to AEJ based on the record. S&L seeks through this Motion to present evidence demonstrating that S&L does not have any predisposition that limits or interferes with the ability of S&L to provide unbiased advice with respect to AEJ.

a)   S&L's Analysis of Requested Extension of the Stay by Alex Jones Regarding Connecticut Litigation

34.     On August 2, 2022, the Connecticut Superior Court ruled that jury selection in the Connecticut Litigation could continue. In essence, the Connecticut Superior Court bifurcated the trial and was continuing only with respect to AEJ, despite not formally severing the actions against FSS. A copy of the transcript is attached hereto as Exhibit D (the "August 2 Connecticut Transcript").

35.     That got lost in translation from state court counsel. What FSS's proposed bankruptcy professionals were told was that the Connecticut state court was continuing with jury selection despite not severing FSS from the case.[9] While technically true, it missed the crux of the Connecticut Superior Court's action. The Connecticut counsel filed a notice of removal of the Connecticut litigation to prevent what appeared to be a violation of the automatic stay and to enable a single trial.[10]

36.     On August 15, 2022, the U.S. Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court") remanded the removed Connecticut Litigation. S&L represented FSS in the remand hearing. Despite remanding the case, the Connecticut Bankruptcy Court did not

---

[9] Mr. Battaglia referenced this confusion at the September 20 Hearing. Hrg. Tr. 220:14-18 ("Even the removal that was done of the Connecticut litigation was done with great hesitance and reluctance on our part but only because it was unclear what the Connecticut court had done, vis-à-vis FSS. Not Alex Jones -- FSS.").

[10] As reflected in the August 2 Connecticut Transcript (Ex. D), FSS had determined *not* to remove the Connecticut Litigation prior to its misunderstanding of the Connecticut Superior Court's ruling. August 2, 2022 Hrg. Tr 13:14-16.

award fees against FSS. The Connecticut Bankruptcy Court's order of remand is attached hereto as Exhibit E (the "Remand Order").

37.     After the Remand Order was entered, counsel for AEJ requested that FSS seek a stay of the Remand Order and take other action with respect to the Connecticut Litigation, including extending the automatic stay to AEJ. Mr. Shannon initially responded to this request as indicated in the email dated August 16, 2022—a copy of which is attached hereto as Exhibit F— informing AEJ's counsel that:

   a) FSS would not have removed if it was aware that the Connecticut Superior Court was in effect bifurcating the trial;

   b) There were reasons against extending the automatic stay, including that (i) separating claims against AEJ and FSS may be possible in Connecticut where it was not in Texas, (ii) the standard for extension of the stay to under applicable law did not appear to be met, (iii) it would harm FSS's position with respect to a then-yet-to-be-filed motion to appoint a tort committee and result in additional costs to the FSS bankruptcy estate, and (iv) estate funds might be better used litigating in Connecticut rather than the costs of seeking to extend the stay and the distraction from important restructuring matters was not worth it; and

   c) FSS needed to focus on things that would preserve and increase the value of the estate rather than incurring expenses fighting the Plaintiffs.

Mr. Shannon informed AEJ's attorney that he could not advise FSS's proposed CRO that seeking a stay would accomplishing anything other than incurring expenses for the estate.

38.     AEJ's attorney vigorously pursued his client's interests against FSS in response. As reflected in the August 16, 2022, email attached hereto as Exhibit G, AEJ's attorney stressed that he would "leave it to the Debtor[] to decide how to keep Alex supporting the efforts."[11] But notwithstanding AEJ's threats to walk off the job and cease supporting FSS's sales efforts, FSS did not cave, adopted S&L's recommendation, and decided that it would *not* (a) seek a stay of the

---

[11] These negotiations with AEJ and his counsel were among those referenced by Mr. Battaglia at the September 20 Hearing. Hrg. Tr. 220:19-221:3.

Remand Order, (b) move to extend the automatic stay to AEJ with respect to the Connecticut Litigation, or (c) seek a Bankruptcy Code § 105 stay.[12]

39.     S&L's preliminary response to the request of AEJ's attorney to seek a stay of the Remand Order and extension of the automatic stay—and FSS's ultimate decision to adopt S&L's recommendation despite pressure from AEJ—demonstrates that S&L has no predisposition limiting or interfering with S&L's ability to provide unbiased advice on behalf of FSS with respect to AEJ. S&L took contrary positions to AEJ because doing so was in the best interests of FSS's bankruptcy estate.

b)  S&L's Analysis of Indemnity Asserted by Alex Jones

40.     Another example of S&L's lack of any predisposition preventing unbiased advice with respect to AEJ is S&L's evaluation of AEJ's asserted indemnity claim.[13] Although the asserted indemnity had not been challenged by any other party-in-interest, S&L analyzed the issue and advised Mr. Battaglia and Mr. Schwartz of its conclusions in an email dated August 6, 2022. Subject to obtaining permission from FSS to disclose the privileged advice provided, S&L will seek to admit the August 6, 2022, email regarding that advice.

41.     Separate from the analysis provided on August 6, 2022, issues with AEJ's asserted indemnity claim were referenced in S&L's August 16, 2022, email (Ex. F) in response to AEJ's requested stay of the remand order and extension of the automatic stay. Mr. Shannon informed AEJ's counsel that: "I know that you have asserted an indemnity claim for Alex Jones, but it's not in any of the documents prior to April 2022 . . . ."

---

[12] The final decision was reached after additional research into the issue and discussion among all of FSS's legal and financial advisory team. There was some support to take the actions demanded by AEJ, but FSS determined that seeking that relief was not in the best interests of its bankruptcy estate.

[13] Prior to the petition date, AEJ asserted the indemnity claim as a cross claim in the Connecticut Litigation. AEJ further filed Proof of Claim No. 1 in the FSS chapter 11 case asserting the indemnity claim.

42.     S&L contends that the August 16 email (Ex. F) and the contents of the August 6 email, if the privilege is waived, will demonstrate that S&L has no predisposition limiting or interfering with S&L's ability to provide unbiased advice with respect to AEJ. S&L is not and was not biased to assume that AEJ's asserted indemnity was valid.

     *iii.*   <u>*Mr. Lee's Participation in Focus Group on Jurors' Perception of Alex Jones*</u>

43.     The Court noted in its ruling that Mr. Lee participated in a focus group and jury perception of AEJ and that he did not separate his time for work performed for FSS or any other party. Tr. 243:15-24. This referenced work provided on July 1, 2022, and reflected in FSS's Exhibit 8 [ECF No. 163-8]. S&L seeks to present evidence that these services were provided solely for FSS.

44.     Mr. Lee was not providing these services—related to the Heslin/Lewis Suit—for any party other than FSS. As reflected in the order of the U.S. Bankruptcy Court for the Western District of Texas attached hereto as <u>Exhibit H</u>, InfoW, LLC was no longer a defendant in the Texas case to which the focus group was related.[14] Further, the order of the Travis County District Court attached hereto as <u>Exhibit I</u> shows that the Travis County court had found that the Alex Jones and FSS were alter egos with respect to the claims therein.[15] Jurors' perception of AEJ was directly relevant to the ultimate damages award against FSS.

---

[14] The other IW Debtors were never defendants in the Heslin/Lewis Suit.

[15] The Travis County District Court's order stated:

> The Court finds that pursuant to the default judgment, Alex Jones and Free Speech Systems, LLC are admitted to be alter egos. Even absent the default judgment, the Court notes that the record supports a finding that Alex Jones and Free Speech Systems, LLC are alter egos. The Court further finds that both Mr. Jones and Free Speech Systems, LLC are both "a party ... whose conduct necessitated the motion" under Rule 215.l(d).

Based on this finding, the jury's perception of AEJ in the Texas Litigation directly impacts FSS.

45.     S&L submits that this additional evidence would demonstrate that Mr. Lee's participation in the focus group does not indicate any predisposition interfering with or limiting S&L's ability to provide unbiased advice to the FSS estate. Critical issues in the first month of the chapter 11 case involved whether FSS should obtain on its own motion or consent to relief from the automatic stay for actions against FSS in which AEJ is a co-defendant. The effect of AEJ's presence in the case against FSS was critical to that evaluation. Further, the IW Debtors were no longer parties to the lawsuits and neither S&L or any of its attorneys have ever represented AEJ.

     iv.    *__$80,000 for AEJ Travel and Security Proposed in Interim Cash Collateral Budget__*

46.     The Court noted in its ruling that the approximately $80,000 in travel expenses for AEJ provided for in the FSS proposed cash collateral budget was concerning. Hrg. Tr. 244:5-13. The Court was referring to the proposed order filed on September 13, 2022 [ECF No. 148] (the "September 13 Proposed Cash Collateral Order"). The Court questioned who was negotiating on behalf of the estate with respect to this amount. Hrg. Tr. 244:14-18. S&L seeks to present additional evidence showing that (a) S&L neither prepared, filed, nor presented the September 13 Proposed Cash Collateral Order to the Court and (b) the approximately $80,000 for travel expenses was significantly less than the first estimate of costs that FSS would incur to continue to trial in Connecticut and the reduction was the result of significant negotiations in which S&L participated.

47.     S&L was not directly involved in preparing, submitting, or presenting to the Court the September 13 Proposed Cash Collateral Order. The Battaglia Firm advised FSS with respect to the September 13 Proposed Cash Collateral Order, filed the proposed order with the Court, and presented the proposed order to the Court at the September 13, 2022, hearing before the Court.[16]

---

[16] At the September 13 hearing, S&L updated the Court with respect to the status report required by Bankruptcy Code § 1188(c) and the issues raised with respect to the U.S. Trustee's objections to the applications for employment of S&L and Schwartz & Associates.

48.     S&L was, however, involved in reducing the total costs and lost revenue of continuing the Connecticut Litigation for the benefit of FSS's bankruptcy estate. To determine FSS's position with respect to the Connecticut Plaintiffs' motion for relief from stay [ECF No. 15] (the "Connecticut Lift Stay Motion"), Schwartz & Associates prepared a framework (the "Connecticut Trial Cost Framework") of the costs that FSS would incur to simultaneously (a) allow AEJ to attend the entire trial as demanded by AEJ and (b) not interfere with the business of FSS. Schwartz & Associates LLC prepared this document based on FSS's typical practice regarding travel. It was immediately clear that this was not practicable. Subject to obtaining permission from FSS to disclose the Connecticut Trial Cost Framework, S&L will seek to admit the document as evidence.

49.     To reduce the costs to FSS's bankruptcy estate of allowing the Connecticut Litigation to continue to judgment, FSS's proposed professionals focused their efforts on reducing the amount of time that AEJ would spend at the Connecticut trial rather than conducting his show and generating revenue for FSS. The trial in Connecticut was going to proceed at a minimum against AEJ because FSS had decided that it was not going to seek to extend the automatic stay to AEJ on that matter. As reflected in the August 17, 2022, email from AEJ's bankruptcy attorney attached hereto as Exhibit J, however, AEJ desired to attend the entire Connecticut trial and would not be available to host his show for FSS in that event. This required negotiations with both AEJ and the Connecticut Plaintiffs. In exchange for AEJ giving up his right to be present at the entire trial, FSS decided that it was willing to pay AEJ's travel expenses.

50.     These negotiations were conducted largely in connection with the Connecticut Lift Stay Motion. In the agreed order lifting the stay [ECF No. 117] (the "Connecticut Lift Stay Order"), AEJ was required to attend for "three trial days (not counting Mondays, which are not

evidence days)." This avoided many of the issues raised by FSS in its response to the Lift Stay

Motion and the possibility of having two jury trials in Connecticut that would require additional

absences of AEJ from conducting his show for FSS and earning revenue for the FSS bankruptcy

estate.[17]

51.    S&L submits that this additional evidence would demonstrate that the

approximately $80,000 in the September 13 Proposed Cash Collateral Order does not indicate that

S&L has any predisposition limiting or interfering with its ability to provide unbiased advice with

respect to FSS's estate. S&L was not involved directly in preparing the September 13 Proposed

Cash Collateral Order but *was* involved with substantially reducing the estimated cost of the

Connecticut Litigation for the benefit of the FSS bankruptcy estate.

> ### v. *Initial Proposed Employment of Special Litigation Counsel with FSS Paying 100% of the Legal Fees.*

52.    The Court also referenced in its ruling that FSS initially sought to pay 100% of the

legal fees of special litigation counsel representing both FSS and AEJ in the Connecticut

Litigation. Hrg. Tr. 244:19-245:4. S&L seeks to present additional evidence that this issue was

negotiated with AEJ and that FSS—through S&L—first took the position that FSS should only be

responsible for a portion of the legal fees.

53.    As set out above, AEJ wanted FSS to extend the automatic stay to the Connecticut

Plaintiffs claim against AEJ. Mr. Shannon responded that this did not appear to be a good use of

estate resources. In that initial response to AEJ's attorney rejecting the demand to prevent the

Connecticut Litigation from continuing against AEJ, Mr. Shannon noted that: "From your client's

---

[17] The Connecticut Plaintiffs has taken the position that their claims against FSS are 28 U.S.C. § 157(b)(5) personal injury tort claims requiring a jury trial. If there were two trials, FSS would lose revenue from AEJ needing to attend as a witness twice. As reflected in the Connecticut Trial Cost Framework, FSS estimated that each day AEJ was off the air cost FSS more than $40,000.

perspective, the better course of action might be better for the Debtor to also litigate in Connecticut and bear ***some*** of the cost." Ex. F (emphasis added). AEJ's attorney vigorously represented his client's interest, stating that he would "leave it to the Debtor[] to decide how to keep Alex supporting the efforts[,]" Ex. G, and pointedly asking about the "Debtor['s] [p]lan when Alex sales go dark because he is in trial Connecticut[,]" Ex. J.

54.     Employment of Connecticut state court counsel was a major issue that needed to be addressed for the Connecticut Litigation to continue against both FSS and AEJ. Mr. Lee suggested that AEJ should pay some portion of the legal fees as reflected in the August 19-22, 2022, emails attached as Exhibit K.

55.     Through his bankruptcy counsel, AEJ asserted that FSS was required to pay for the representation if it had the funds to do so under FSS's indemnity of AEJ, as reflected in the August 19-22, 2022, emails.[18] While AEJ's asserted indemnity may ultimately be disputed, AEJ had significant leverage in these negotiations because (a) the compressed timeline to reach an agreement with the Connecticut Plaintiffs, (b) AEJ had the ability to prevent employment of the state court counsel by withholding his consent to the dual representation, (c) AEJ had the individual right to attend the entire trial in the Connecticut Litigation and cease conducting his show for FSS, and (d) Connecticut Plaintiffs required AEJ's agreement to certain aspects of the Connecticut Lift Stay Order. AEJ had the ability to block FSS from agreeing to lift the automatic stay on terms it

---

[18] AEJ's employment contract, a copy of which is attached hereto as Exhibit L, indicates that:

> Employer agrees to indemnify and holder harmless, and furnish and pay counsel of Employees choice, in the event that claims or suit are brought against Alex Jones arising out of his performance of this Employment Agreement, unless such claims are established by clear and convincing evidence to have arising from Alex Jones['s] actual fraud.

As indicated in the August 16, 2022, email from Mr. Shannon (Ex. F), S&L raised questions about the scope of this indemnity in negotiations with AEJ. AEJ asserted that the indemnity and/or common law indemnity covers the legal costs for the Connecticut Litigation.

could agree to with the Connecticut Plaintiffs and force a contested hearing on the Connecticut Lift Stay Motion.

56.     Under these circumstances, FSS decided to file the applications to employ special counsel with FSS bearing 100% of the legal costs to enable FSS to agree to the Connecticut Lift Stay Motion. The evaluation was that, even paying the full legal costs, the deal reflected in the Connecticut Lift Stay Order was better for FSS's bankruptcy estate than litigating to conclusion (a) the Connecticut Lift Stay Motion, (b) a proceeding determining whether the Connecticut Plaintiffs claims were section 157(b)(5) personal injury tort claims, and (c) a subsequent estimation motion. When the Court and U.S. Trustee brought up the issue of FSS paying the full amount of the legal fees, FSS—through S&L—used this additional negotiating leverage to reopen negotiations with AEJ and obtain an agreed sharing of the legal costs. FSS did *not* adopt AEJ's assertion that FSS was required to pay these amounts.

57.     S&L submits that this additional evidence would demonstrate that FSS's initial proposed retention terms of the special litigation counsel does not indicate that S&L has any predisposition limiting or interfering with its ability to provide unbiased advice with respect to FSS's estate. The evidence indicates that that the predisposition of S&L attorneys was that AEJ should pay a portion of the legal costs related to the Connecticut Litigation. The evidence would also show that when FSS had additional leverage, S&L used that leverage to obtain a division of the legal fees for the benefit of FSS's estate despite AEJ's asserted indemnity.

**C. In the Alternative, Additional Evidence will Demonstrate that S&L Has No Material Adverse Interest to the Estate Regarding the Limited Matters to Be S&L's Primary Responsibility in the S&L Employment Application.**

58.     S&L submits that the additional evidence will establish that S&L has no predisposition that renders a bias against FSS's estate. If, however, the Court is not convinced by the additional evidence that S&L is disinterested on all matters that might arise in the case, the

additional evidence will nonetheless demonstrate that S&L had no predisposition that renders a bias against the estate with respect to the limited matters set out as S&L's primary responsibility in the S&L Employment Application. FSS sought to retain S&L for routine activities in the case and issues involving the Sandy Hook Litigation. S&L Employment Application ¶ 22. The Battaglia Firm was to have primary responsibility regarding strategy and implementation of that strategy. *Id.*

59.     If not approved under Bankruptcy Code § 327(a), the employment of S&L is appropriate under Bankruptcy Code § 327(e) for the limited purposes set out in the S&L Employment Application related to (a) administrative matters such as the preparing and filing of notices, serving pleadings, and complying with local rules requirements, (b) matters related to enabling the Sandy Hook Litigation to continue to judgment, and (c) specific matters requested by FSS or lead bankruptcy counsel. Section 327(e) authorizes the employment of an attorney for a specified special purpose other than to represent the trustee or debtor-in-possession in conducting the case, where the attorney previously represented the debtor, the retention is in the best interest of the estate, and the attorney does not represent or hold an any interest adverse to the to the debtor or to the estate with respect to the matter on which such attorney is to be employed.[19]

60.     Courts have interpreted "conducting the case" to focus on the preparation of the chapter 11 plan, liquidating the estate, and assisting in the claims objection process. *In re Hart Oil & Gas, Inc.*, No. 11-12-13558 TA, 2013 Bankr. LEXIS 3128, at *8 (Bankr. D.N.M. Aug. 2, 2013) (collecting cases); *see also* 3 Collier on Bankruptcy ¶ 327.04[9][c] (16th 2022) ("The reference to 'conducting the case' in section 327(e) includes those matters that form a part of the administration

---

[19] Although the S&L Employment Application asserted that employment was appropriate under Bankruptcy Code § 327(a), it did not specify the subsection of section 327 under which the employment was sought. A professional that meets the requirements for employment under section 372(a) necessarily also meets the requirements under section 327(e).

of the case under the Code. In a reorganization case, these matters include assisting in formulating a plan and assisting the trustee in carrying out required investigations . . . .).” Where there is another attorney serving as general bankruptcy counsel, special counsel may be retained for limited bankruptcy matters including obtaining court approval for the use of cash collateral, including obtaining approval for the use of cash collateral, selling assets and disposing of related executory contracts, and preparing and negotiating a key employee retention program and providing payment to critical personnel of the Debtor. *Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.)*, 323 B.R. 403, 408 (D. Del. 2005).

61.     The additional evidence would establish that S&L does not hold any predisposition that renders a bias against FSS's estate with respect to its efforts and work on administrative matters unrelated to preparing a plan of reorganization or carrying out the required investigations or S&L's actions that allowed the Sandy Hook Litigation to continue in the respective state courts. The Court should allow S&L to present this additional evidence at a rehearing and, upon such evidence, authorize S&L's employment by the Debtor for such limited purpose prior to the September 20 Hearing.

62.     S&L submits that the existing evidence already establishes that other elements required for S&L's employment under Bankruptcy Code § 327(e). The existing evidence establishes that S&L was first retained by FSS prior to the petition date. Further, the evidence already submitted establishes that the employment of S&L to represent the estate on the limited matters set out above was in the best interests of the FSS bankruptcy estate. Mr. Battaglia represented to the Court that S&L's services were necessary to allow Mr. Battaglia to handle the case. S&L's familiarity with the Sandy Hook Litigation also enabled the Debtor to move for or

24

agree to lifting of the with respect to sixteen of the nineteen Sandy Hook Litigation claims within the first month of this chapter 11 case.

## CONCLUSION

63.    For the reasons set out above, S&L requests that the Court grant the Motion and set a rehearing on the S&L Employment Application to allow additional evidence on the issue of S&L's disinterestedness. Even if FSS determines that it should go with alternative co-counsel to assist the Battaglia Firm, S&L should be allowed an opportunity to present evidence regarding disinterestedness with respect to the services it provided prior to September 20, 2022.

 Dated: October 4, 2022.                    **SHANNON & LEE LLP**

                                            /s/*R. J. Shannon*
                                            Kyung S. Lee
                                            State Bar No. 12128400
                                            klee@shannonleellp.com
                                            R. J. Shannon
                                            State Bar No. 24108062
                                            rshannon@shannonleellp.com
                                            700 Milam Street, STE 1300
                                            Houston, Texas 77002
                                            Tel. (713) 714-5770

## CERTIFICATE OF SERVICE

        I hereby certify that a true and correct copy of the foregoing document was served (a) at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and (b) within 24 hours of the filing, on the parties on the attached service list by U.S.P.S. first class mail.

                                            /s/*R. J. Shannon*
                                            R. J. Shannon

## SERVICE LIST

### Debtor and Counsel

Free Speech Systems, LLC
3019 Alvin Devane Blvd., STE 300
Austin, TX 78741

Attn: Ray Battalia
Law Offices of Raymond W. Battaglia
66 Granburg Cir.
San Antonio, TX 78218

### Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

Joel Skousen
PO Box 565
Spring City, UT 84662

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

## Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway. Suite 320
Austin, TX 78746

## Parties Filing Notice of Appearance

Ryan E. Chapple Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 7870

Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581

Attn: Shelby Jordan Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

John D Malone Attorney at Law
5400 Bosque Blvd., Ste. 650
Waco, TX 76710

Jason Starks
Travis County Attorney's Office
P.O. Box 1748
Austin, TX 78767

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite
1400 Houston, TX 77002

Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548 Austin, TX 78711-254

Richard A. Cochrane
Akin Gump Strauss Hauer & Feld
2300 N. Field Street Suite 1800
Dallas, TX 7520

Stephen A Roberts
Stephen A Roberts, P.C.
1400 Marshall Ln Austin, TX 7870

## Subchapter V Trustee

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

Attn: Elizabeth C. Freeman
Jackson Walker LLP
1401 McKinney St., STE 1900
Houston, TX 77010

## U.S. Trustee

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

## Additional Notice Parties

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604