# EXHIBIT L

# FREE SPEECH SYSTEMS, LLC
# EMPLOYMENT AGREEMENT
## and accompanying
### EMPLOYEE ANNUITY AND LIFE INSURANCE PLAN

This Employment Agreement and accompanying Employee Annuity and Life Insurance Plan is entered into by and between Employer **Free Speech Systems, LLC**, (herein the "Company" or the "Employer") and Alex Jones, Employee on April /4/, 2022, as follows:

Whereas, it is the intention of the Employer to employ Alex Jones to render his personal services to Employer in exchange for compensation for his personal services ("Current Wages" or "Wage") upon and subject to the terms and conditions hereinafter set out; and

Whereas, it is the intention of the Employer to provide an employer plan and program (herein the Company" and its Annuity and Life Insurance Program" or the "Plan") whereby an Employee Alexander Jones (as described herein) of the Company may, through this Company's Plan, make designations of dedication of Wages and salaries, compensation, bonus or other compensation for Employees personal services rendered ("Compensation" or "Current Wages") to and at the direction of Employer are to be used for the purchase in the name of the Employee by Employer as and if earned, and from time to time, Annuity Contracts as described and defined in of Article § 1108.001 *et seq* of the Texas Insurance Code and other applicable laws of the State of Texas and the United States of America, whereby the Employee's Current Wages for services rendered to or for the benefit of the Company are administered so as to be paid directly by the Company, pursuant to this Employer Annuity and Life Insurance Plan provided in the statute, to an insurance company issuing the Plan administered annuity and life insurance.

NOW, THEREFORE Alex Jones and the Employer agree as follows:

## I.
## EMPLOYMENT AGREEMENT

1. The Employer employs Alex Jones and Alex Jones hereby accepts employment with the Company, upon and subject to the terms and conditions hereinafter set forth.

2. Alex Jones shall be employed by Employer to continue to broadcast his public programing and Employer shall continue to furnish all assistance necessary to allow Alex Jones to continue his public broadcast.

3. Alex Jones shall further to continue to promote products and services agreed to by Employer and Employer shall continue to furnish all assistance necessary, including processing of credit card charges for the products and services.

4. Alex Jones shall have the unrestricted right to use the Employer's trademarks, tradenames, intellectual property and web cites maintained, including the Inforwar web site and

web domain for all purposes in furtherance of his public broadcast.

5   Alex Jones agrees to devote all of the time necessary to continue his public broadcasts and allow his brand to be used in advertising and promotions as he has done in the past and Employer agrees to furnish all support staff and facilities to continue such support as it has done in the past and to maintain Employer's trademarks, tradenames, intellectual property and websites maintained, including the Inforwar web site and web domain for all purposes in furtherance of his public broadcast.

6.   Alex Jones agrees to devote such time as necessary to accomplish his continued public broadcast but shall not be restricted in other projects or programs from time to time in the sole discretion of Alex Jones.

7.   As Wages for his personal services under this Employment Agreement Alex Jones will be paid the annual sum of $1,300,000.00 in bi-monthly payments and shall reimburse Alex Jones for all expenses incurred in this employment and in any efforts to promote the broadcast, including travel, meals, lodging, cell phone, and other expenses. All Wages for personal services by Alex Jones will be subject to the EMPLOYEE ANNUITY AND LIFE INSURANCE PLAN attached hereto as Exhibit "1" which terms are incorporated herein by reference for all purposes as if set out herein verbatim.

8.   The Employment of Alex Jones is on an "at will" basis which may be terminated by either party without cause. Upon termination Alex Jones shall have (i). all wages accrued to him under this Employment Agreement subject to the Annuity election as set out in Exhibit "1"; and (ii) an irrevocable assignment of the exclusive use (but not the ownership) for a period of four years after termination, of all of Employer's trademarks, tradenames, intellectual property and websites maintained, including the Inforwar web site and web domain.

9.   The Parties agree that other than claims of Alex Jones arising under the Annuity and Life Insurance Program, or the Indemnity portion herein below, in no event will any dispute between the Parties result in a claim or the aggregate of all claims, of more than $5,000.00 and such claims made not paid within 30 days of the demand shall be subject to a ½ day arbitration that must be started and commenced not more than 60 days from the written demand.

10.   Employer agrees to indemnify and hold harmless, and furnish and pay counsel of Employees choice, in the event that claims or suit are brought against Alex Jones arising out of his performance of this Employment Agreement, unless such claims are established by clear and convincing evidence to have arisen from Alex Jones actual fraud.

11.   This Employment Agreement may be amended or modified from time to time by written agreement of the Parties.

12.   There are no third-party beneficiaries intended to be entitled to any rights or remedies under or pursuant to the terms of this Employment Agreement.

13.   This Agreement shall be interpreted in accordance with and governed by the laws

of Texas without regard to any conflict of laws principles. All disputes arising out of or in connection with this Agreement shall be subject to the sole and exclusive jurisdiction of the state or federal courts of, and located in, Harris County, Texas.

14. No portion of this Employment Agreement is severable and no waiver of any of the provisions of this Agreement shall be effective unless made in writing and signed both Parties.

15. Because of the nature of the relationship of Employee to Employer, the Employer waives any and all fiduciary duties or fiduciary obligations that otherwise may arise from this relationship, and the parties agree that Alex Jones has no liability to Employer except for acts of actual fraud, established by final order under clear and convincing evidence.

16. This Employment Agreement may be executed in multiple counterparts each of which shall be deemed an original.

REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK

EMPLOYER:
FREE SPEECH SYSTEMS, LLC

*[signature: Melinda Flores]*
Melinda Flores, authorized agent
Internal Accounting and Records

*[signature: Alex Jones]*
EMPLOYEE: ALEX JONES

**Attachment:** Exhibit "1" **EMPLOYEE ANNUITY AND LIFE INSURANCE PLAN**

# EXHIBIT "1".
## EMPLOYEE ANNUITY AND LIFE INSURANCE PLAN

This Plan shall be implemented effective April 1, 2022, and shall apply, at the election of the Employee, to all Current Wages due to the Employee as salary, wages, and bonuses for personal services rendered to the Company earned after the "Effective Date." The Plan shall include the following provisions, as may be amended from time to time:

## ARTICLE I
## DEFINITIONS

1.01　EXECUTIVE COMMITTEE.  Executing and administering this Company Annuity and Life Insurance Program is: Free Speech Systems L.L.C., (herein the "Executive Committee") as named from time to time by the member or manager of Employer. This Plan is effective and in full force notwithstanding a vacancy in the position an executive or Committee Member.

1.02　PLAN.  The name of the Plan as adopted by the Company is:  FREE SPEECH SYSTEMS, LLC EMPLOYEE ANNUITY AND LIFE INSURANCE PLAN.

1.03　EMPLOYEE.  The following Employees are eligible to participate in the Plan:
  (a)　No exclusions, except as provided in Article II.
  (b)　An Employee having prior service with the Company (or its predecessor) on a full time basis for longer than two (2) consecutive years shall be entitled to designate a portion of that Employee's Current Wages for personal services the Employee has rendered to the Company (and for which the Company is otherwise obligated to compensate the Employee) for payment by the Company directly to the designated insurance company issuing the annuity and life insurance for the purchase of an annuity and life insurance qualified under Article § 1108.001 *et seq* of the Texas Insurance Code, as amended, in the name of and for the sole benefit of the Employee or his/her designated beneficiaries.

1.04　DISTRIBUTIONS.
**Treatment of Elective Distributions**.

  (a)　"Contribution" as used herein is the elective contributions of the Employee, of that portion of the Current Wages for personal services rendered to Company, to be paid over by the Company on the Employee's behalf to the insurance company issuing the Employee designated annuity and life insurance exclusively in the name of the Employee and for the exclusive benefit of the Employee. Wages shall include a set salary together with any bonus or earn-out payments based upon an agreed percentage of product sales gross earnings by the Employer, as reported by Employer (collectively "Wage" or "Wages").
  (b)　The annuity and life insurance to be purchased shall be as designated by the

Page 5 of 10

Employment Agreement and
Annuit Plan

Employee, and the Company shall have no responsibility to make such designation or to ensure that such designation is in any manner a safe, proper or adequate investment; provided however, so long as the Employee elects to remain in the Plan, the Employee may not make any payments on the designated purchased annuity and life insurance except through this Plan.

(c)     In addition, each Employee shall be required to sign a written designation naming each insurance company issuing any annuity and life insurance elected by the Employee which such designation shall include a complete release of Company for any liability with respect to the Company's dealings with such insurance company. In particular, the release shall also caution the Employee that their designation of the insurance company and the purchase by the Company of the annuity and life insurance on behalf of the Employee will not be investigated at any time by the Company for the purpose of determining the soundness of the insurance company, the appropriateness of the investment, or the future likelihood of return on the investment, the protection afforded by law of the investment, or otherwise.

(d)     In every case the Company shall have no liability to the Employee or the particular insurance company except to turn over exclusively for the Employee's benefit all such designated Wages, including all Annuities purchased from time to time.

(e)     Upon such proper written designation, and upon the qualification of the Employee under the requirements of any such insurance company's requirements to issue an annuity and life insurance to or for the benefit of such Employee, the Company shall withhold from the Employee the gross amount of Current Wages (after deduction of all tax obligations imposed upon the Company and the Employee by law, if any, including the FICA and withholding tax obligations of the Employee) necessary to equal the amount of "Net Wages" designated to be paid to the insurance company to purchase the annuity and life insurance.

(f)     Upon proper designation by the Employee, only the Company shall directly distribute to such insurance company issuing the Employee designated annuity and life insurance, all such Net Wages designated by the Employee in writing from time to time.

(g)     Once the proper payment has been made by the Company to the insurance company issuing the annuity and life insurance, the Company shall have no further responsibility or liability for the payment of such Net Wage and the Employee agrees to, and shall specifically be deemed to have, released the Company for all claims arising out of the payment by Company to the insurance company issuing the annuity and life insurance.

(h)     In the event that the Employer is joined in, or named in, any attachment, garnishment, collection proceeding at law or in equity, the Employer may at its election withhold such wages and deposit same into the registry of the Court having or asserting jurisdiction over such funds so as to determine the respective rights to the wages being withheld from the Employee, in which event the Employer shall be entitled to recover its reasonable attorneys fees and costs either from the creditor or party seeking attachment, garnishment, or the like, or from the wages as the Court may order.

(i)     Once the life insurance or annuity payment has been made by the Company, the treatment of such payments by the insurance company, by the Internal Revenue Service, any third parties claiming an interest or by the Employee shall be subject to all existing tax laws; that is, the Employee shall own the policy or annuity and shall remain liable for all taxes accrued, if any, upon such Net Wages paid to the insurance company over and above the amounts required to be withheld by law by the Company, and the Company shall withhold any Employee portion as may be required by applicable tax law in the same amount as if such payment had been made

directly to the Employees. Such withheld portion shall be held in trust by the Employer and timely turned over to the appropriate taxing unit as required by such law, directly by the Company.

(j)     At any time after the annuity and life insurance has been issued and taken out, except as otherwise herein provided, the Company shall own no interest in the annuity and life insurance and its sole responsibility shall be to timely turn over the Current Wages designated by the Employee to the insurance company for the purpose of application of such funds to the purchase of the qualified annuity and/or life insurance.

(k)     The Company shall keep an accurate record of, and shall administer only, the payments made to the insurance company issuing the annuity and life insurance, and all of the requests for such payment made by the Employee to the Company. Additionally, the Employee shall only be permitted to make twelve (12) Payment Designations per year, which would include, however, twelve (12) pay periods and/or twelve (12) bonus pay periods.

1.05    PLAN YEAR/LIMITATION YEAR.
**Plan Year**. Plan Year means: The 12 consecutive month period ending every December 31st of each year (the first Plan year consisting, beginning on the Effective Date and ending on December 31 of that year).

1.06    EFFECTIVE DATE.
**New Plan**. The "Effective Date" of the Plan is: December 31, 2021, after which Current Wages earned may become subject to this Plan.

1.07    HOUR OF SERVICE. The crediting method for Wages Earned is: The actual method set out in any employment agreement between Employer and Employee providing for salary and salary earn-outs for sales performance, and such other compensation based on a minimum number of Platform shows or interviews per quarter
.

## ARTICLE II
## EMPLOYEE PARTICIPANTS

2.01    ELIGIBILITY
**Eligibility conditions**. To become a Participant in the Plan, an Employee must satisfy the following eligibility conditions:
(a)     Attainment of age 21
(b)     Service requirement. ONE year of full-time service without an intervening Break in Service (including service of the Company's predecessor businesses).
**Time of Participation**. An Employee may become a Participant immediately following the date the Employee completes the eligibility conditions and deliver a Payment Designation Form to the Executive Committee.
2.02    YEAR OF SERVICE - PARTICIPATION.
**Hours of Service**. An Hourly Employee must complete 1,500 Hours per year to be considered in Service. A non-hourly employee must earn and be eligible for payment of commission wages before becoming eligible as set out herein.

## ARTICLE III
## EMPLOYER CONTRIBUTIONS AND FORFEITURES

3.01   AMOUNT.  The amount of the Employer's annual contribution to the Annuity and Life Insurance will be as follows:

(a)   The Company will not contribute to the Plan with respect to any period unless provided by special designation in writing of the Company and provided that such contributions are deemed wages for personal services rendered or bonus designated to a particular Employee.

(b)   The Company shall not be entitled to any part or portion of the Annuity and Life Insurance benefit, and no forfeiture rights inure to the Company in any Contributions made by the Employee.

(c)   The Company shall administer the payment of funds to the insurance company, shall account to the Employee for all record keeping concerning any annuities purchased, and shall, from time to time in the sole discretion of the Company, report to the Employee concerning the annuity and life insurance transactions, values, and other information furnished to the Company by the insurance company or other sources.

3.02   INTERFERENCE WITH PLAN.  Consistent with Section 5.02 hereinbelow, The Company shall not honor nor in any circumstance pay or turn over to any third party, whether individual, private entity, or governmental entity on any claim made against the subject of this Plan, it being the express intention of the parties to this Plan that every Employee right earned under his or her participation in this Plan shall be exempt from any such claim, seizure, garnishment, attachment, or other action or proceeding and shall be treated for all purposes as if a spendthrift trust as to any unpaid Current Wages, and as fully exempt property as to any earned Annuity Contract or Life Insurance purchased by the Company, as well as all proceeds thereof paid at any time to or for the benefit of Employee.

3.03.   Defense and Indemnity:   Employer shall defend this Plan and the protection provided under this plan for the Annuities and Life Insurance purchased which if purchased pursuant to the Texas statutory provisions shall be exempt as to the contracts or policies and proceeds thereof.  Employer will defend against any claim made by any third party and only if such defense is successful, all costs of defense may be assessed against any future purchase of any Annuity or Life Insurance under this Plan.

## ARTICLE IV
## TERMINATION OF SERVICE - PARTICIPANT VESTING

4.01   NORMAL RETIREMENT. Normal Retirement Age under the Plan is the later of the date the Participant attains sixty-five (65) years of age or the fifth (5th) anniversary of the first day of the Plan Year in which the Participant commenced participation in the Plan. However, the Employee may terminate participation in the Plan at any time without forfeiture of any earned Income

4.02 VESTING SCHEDULE. The Company elects the following vesting schedule: Immediate vesting, 100% nonforfeitable at all times. Employee may not assign nor encumber his or her interest in or rights under this Plan prior the issuance, from time to time, of the Annuities provided herein. This Plan, to the extent that assets are held from wages of the Employee, is in the nature of a spendthrift trust that cannot be attached, levied, garnished, or otherwise encumbered by any third party.

### ARTICLE V
### TIME AND METHOD OF PAYMENTS OF BENEFITS

5.01 TIME OF PAYMENT OF ACCRUED BENEFIT.

**Distribution date**.
(a) The Employee elects any distribution dates through dealings directly with the annuity and life insurance issuer subject to the provisions of this Plan. Any penalty for early distribution shall be the sole responsibility of the Employee.

(b) The Employee may terminate participation under this Plan at any time and be entitled to a distribution as the particular annuity and life insurance contract selected by the Employee and may deal with such insurance or annuity at the Employee's sole discretion. This right, however, is non-alienable, and shall not terminate any exemption rights pursuant to Texas law (including the Texas Insurance Code) and is further subject to Section 5.02 hereof.

5.02 ALIENATION
(a) Subject to the exceptions provided below, and while the Employer is a participant in this Plan or is the owner of any annuity and life insurance acquired as a participant of this Plan, no benefit which shall be payable out of the Annuity and Life Insurance Fund to any person (including a Participant Employee or his Beneficiary) nor shall any benefit be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements or torts of any such person nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized by the Trustee, except to such extent as may be required by law. It is the intention of Employer to protect the insurance benefits and annuity benefits provided in this program as set forth in the Texas Insurance Code and any other Texas exemption law protecting individual's assets from garnishment, attachment, sequestration, alienation, involuntary sale, transfer, or assignment, or voluntary pledge, encumbrance, or charge which would defeat any exemption right of the Employee.
(b) This provision shall not apply to the extent a Participant or Beneficiary withdraws from participation in the Plan in whole or in part, and:
(i) has canceled or terminated the annuity and life insurance acquired while a Plan participant, in whole or in part (and if not in whole, then as applicable to the partial termination); or
(ii) has the annuity and life insurance or any particular annuity and life

insurance previously acquired as a participant of this Plan administered by the individual participant Employee, with respect, however, only to premiums paid after the Employee has completely withdrawn from the Plan.

## ARTICLE VI
## EXECUTIVE COMMITTEE - DUTIES WITH RESPECT TO PARTICIPANT'S ACCOUNTS

6.01 The Executive Committee duties herein shall be only to
    a.    determine from time to time the eligibility of any Employee request to participate in the Plan; and
    b.    to insure that the Company is keeping accurate books and records of this Plan distribution and administration of the Employee's designated wages; and
    c.    institute such procedures or Plan rules as necessary to accomplish the Plan purpose, including, but not limited to, Employee relations regarding Plan participation or administration, and to selection (only at the request of an Employee) of an annuity and life insurance contract.

6.02    The Company shall fully indemnify and hold harmless each and every Executive Committee member from any and all claims by any third party arising out of this Plan.

## ARTICLE VII
## AMENDMENT, MODIFICATION OR TERMINATION

7.01    Upon recommendation of the Executive Committee, the Board of Directors of the Company may amend, modify, or terminate this Plan provided, however, no amendment shall in any manner reduce or impair the Employee's rights in acquired Annuities or Insurance Policies, no impair the entitlement and exemption afforded by law in favor of the Employee.

A full copy of this Plan and any modifications or changes may be obtained from the offices of the Executive Committee at the Employer's office.