IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | |
| FREE SPEECH SYSTEMS, LLC, | § § | Case No. 22 - 60043 |
| DEBTOR. | § § § | Chapter 11 (Subchapter V) |

**MOTION OF W. MARC SCHWARTZ AND SCHWARTZ ASSOCIATES, LLC PURSUANT TO RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR REHEARING ON THE ISSUE OF DISINTERESTEDNESS WITH RESPECT TO THE DEBTOR'S APPLICATION TO EMPLOY W. MARC SCHWARTZ AND SCHWARTZ ASSOCIATES, LLC**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

W. Marc Schwartz and Schwartz Associates, LLC ("collectively "Schwartz") hereby move pursuant to Rule 59 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for rehearing to present additional evidence on the issue of disinterestedness with respect to the Debtor's Application to Employ Schwartz.[1] In support of this motion (the "Motion"), Schwartz respectfully states as follows:

---

[1] Schwartz also joins in the Motion for Reconsideration filed by Shannon & Lee LLP ("S&L") at ECF No. 206.

9618600 v1 (99999.00099.000)

## BACKGROUND AND PRELIMINARY STATEMENT

1. On August 20, 2022, Free Speech Systems, LLC ("FSS"), the debtor and debtor-in-possession in the above captioned case, filed its *Application of Debtor for an Order (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Grating Related Relief* [ECF No. 83] (the "Schwartz Employment Application").

2. The U.S. Trustee objected to the Schwartz Employment Application on September 12, 2022 [ECF No. 145] (the "UST Objection"). The Sandy Hook Plaintiffs joined the amended UST Objection on September 15, 2022 [ECF No. 159]. FSS replied to the UST Objection on September 16, 2022 [ECF No. 166].

3. The UST Objection argued that the Court should deny the Schwartz Employment Application because of the failure of Schwartz to supplement his disclosures required under Bankruptcy Rule 2014 in the cases of (the "IW Cases") of InfoW, LLC, IWHealth, LLC, and Prison Planet, LLC (the "IW Debtors") to reflect that he had begun working for FSS prior to the dismissal of those cases. The UST Objection did not dispute that Schwartz was disinterested in FSS's chapter 11 case, but rather argued that the Court should exercise broad discretion under Section 327(a) to address Schwartz's prior acts in the related cases—with this case alleged to be a continuation of the related cases -- and deny the Schwartz Application. UST Objection ¶ 2.

4. The Court held a hearing on the Schwartz Employment Application on September 20, 2022 (the "September 20 Hearing"). Like S&L, FSS indicated in its opening statement that there was no dispute as to disinterestedness of Schwartz. The UST Objection did not contest that

Schwartz was disinterested or assert that Schwartz held an interest adverse to the FSS bankruptcy estate during the opening arguments.

5.  At the beginning of the hearing, the Court also stated that the focus of the hearing and the evidence should be on the non-disclosures in the IW Cases. According to the Court:

> And I'm going to tell you something because I want you to engage in a dialogue with me. The concern, when you really boil it down, I think you're looking at this too -- you know, looking at this kind of through a check the box perspective, right? If the behavior, the non-disclosures began in one case and [if] there are potential conflicts through acts that Mr. Schwartz and Mr. Lee have taken that continue into this case, then the history is important.
>
> For example, if, for example, you know, Mr. Lee or Mr. Schwartz's relationship with Mr. Jones or PQPR is concerning, it raises an issue as to whether either one of them can provide sound legal advice to the estate or sound financial advice to the estate, then the history is important, right?
>
> So you can't just -- I understand your point that if there's a lack of disclosure in one case, you should look at it as that case and it shouldn't essentially carry forward as a penalty into the new case. The question is, is there a throughline essentially; that's the question that you've got to answer today, at least that's where I'm focused on.
>
> If you're asking me, you know, how I . . . think about it, that's the way I think about it. So, for example, so when Mr. Lee is working -- I think you described in May, and Mr. Schwartz are working in late May and have decided that there's no hope for InfoW, what do I do with the fact that there's a pleading filed with me in this case that says on June 2nd, the Debtor is still considering all options, right?
>
> \*\*\*
>
> How then do I view that, right? That's the real question, right, and whether that, the changing of the jersey in essence, you know, whether that had already occurred, but no one told me, right. And so, that's the, hey, we're still considering all options, hey, as a fiduciary, we're thinking about everything, and five days later, you're in a meeting in Austin, you know, with the two plan funding sources in the current case.
>
> \*\*\*

> The question is does that carry, right, into FSS and into this case and it should be judged into FSS. And I know that that's where the evidence is; I'm just telling you the way I'm thinking about this now. So as arguments get made, that's the way I -- that's what I'm thinking about.

Hrg. Tr. 27:12-29:12.

6. Despite the Court's invitation, the U.S. Trustee did not argue during the September 20 Hearing that Schwartz was not disinterested with respect to the FSS bankruptcy estate or that any relationship Schwartz had with Alex Jones ("AEJ") or PQPR created a bias against the interests of the FSS bankruptcy estate.[2] Nor did the U.S. Trustee adduce evidence that Schwartz had any bias with respect to the FSS bankruptcy estate.

7. After considering the evidence and the arguments presented, the Court denied the Schwartz Employment Application. The core of the Court's ruling was that pre- and post-petition actions related to FSS caused Schwartz to hold an adverse interest to FSS's bankruptcy estate with respect to decisions against AEJ or PQPR under the "catch-all" provision of Bankruptcy Code § 101(14)(C). *See* Hrg. Tr. 236:13-17. The Court entered the order denying the Schwartz Employment Application [ECF No. 181] (the "Order Denying Employment") that evening.

8. Through this Motion, Schwartz requests a rehearing to allow Schwartz to present evidence regarding these additional issues on disinterestedness raised by the Court. Under Rule 59(a) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to the

---

[2] As indicated in the U.S. Trustee's opening statement, the only issue raised by the U.S. Trustee was the sanction for the failure to supplement his disclosure in the IW Cases:

> [A]ll we're saying here is there was a serious non-disclosure that occurred with this very connection. I think under Rule 2014, there is a proverbial fox that guards the henhouse. What we're asking is harsh, but, you know, disclosure violations when they occur, you know, sometimes the consequences are harsh. A lot of cases, you might get disqualified. A lot of cases, you lose all your fees. But sometimes, that's what it takes to uphold the integrity of the bankruptcy system and that's why we're asking for Your Honor to deny the two applications that are before you.

Hrg. Tr. 44:7-15.

Schwartz Employment Application by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may grant a new hearing "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court" is authorized to "take additional testimony" and "amend findings of fact and conclusions of law or make new ones . . . ." Where a completely new issue is suddenly raised, a new trial or hearing is required. *See Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 111-12 (5th Cir. 1982) ("This Court has limited reversible error from unfair surprise to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify.").

9. The additional evidence, summarized below, will demonstrate that Schwartz is disinterested and has no bias adverse to the FSS estate with respect to issues involving AEJ or PQPR. Schwartz has no predisposition hindering its ability to recommend or pursue positions contrary to AEJ and PQPR when doing so benefits the FSS estate and its creditors. The evidence will address the items Court found problematic, but which Schwartz could not address because they were not raised prior to the close of evidence or in the UST Objection.

10. FSS may not need further services from Schwartz if it obtains a replacement CRO or the contemplated mediation is successful.[3] Even so, Schwartz respectfully submits that the Court should consider and grant the Motion and allow Schwartz to present evidence that would have been presented at the September 20 Hearing if the issue of Schwartz's disinterestedness was raised prior to the close of evidence.

---

[3] An Application to Employ Patrick Magill as CRO was filed on October 14, 20022 at ECF No. 205.

## ARGUMENT

### A. Rehearing to Allow Additional Evidence on the Issue of Schwartz's Disinterestedness is Appropriate Here.

11. Bankruptcy Rule 9023 makes Federal Rule 59 applicable to proceedings under the Bankruptcy Code.[4] Federal Rule 59(a)(1)(B) provides that courts may grant a new trial on some or all issues after a non-jury trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Federal Rule 59(a)(2) provides that the court may "open the judgement if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."

12. Among the reasons for granting a new trial or rehearing is surprise that is inconsistent with substantial justice. *Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 111-12 (5th Cir. 1982). The Fifth Circuit Court of Appeals has held that it is reversible error to deny a Rule 59(a) motion—i.e., a retrial or rehearing is required—where a new issue is suddenly raised. *Id.* at 12 (citing *F & S Offshore, Inc. v. K.O. Steel Castings, Inc.*, 662 F.2d 1104, 1108 (5th Cir. 1981); *Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978)).

13. The U.S. Trustee was the only party to file an objection to the Schwartz Employment Application, which was joined by the Sandy Hook Plaintiffs. The UST Objection raised only a single issue—whether the Court should deny the Schwartz Employment Application under Bankruptcy Code § 327(a) because Schwartz failed to supplement his Bankruptcy Rule 2014 disclosure to reflect that he had begun providing services to FSS prior to the dismissal of the IW Cases. The U.S. Trustee did not dispute in the UST Objection or at the September 20 Hearing that Schwartz was a "disinterested person" or that Schwartz neither holds nor represents any adverse interest to the FSS bankruptcy estate.

---

[4] Under Bankruptcy Rule 9023, a motion under Federal Rule 59 must be brought within 14 days in bankruptcy matters.

14. Bankruptcy Local Rule 9013-1(g) requires parties opposing the entry of relief requested by the Court to file a response to such motion and provides that Bankruptcy Rule 7008—which, in turn, incorporates Federal Rule 8—applies to such responses.[5] Federal Rule 8(b)(6) provides that allegations are deemed admitted if a responsive pleading is required and the allegation is not denied in a response.

15. Based on that, FSS and Schwartz were not aware that Schwartz's disinterestedness was a disputed issue at the September 20 Hearing. The U.S. Trustee had evaluated the disclosures in the Schwartz Employment Application and determined that Schwartz was a disinterested person. The Plaintiffs—after obtaining discovery regarding the prepetition negotiations between the Debtor and PQPR—did not dispute that Schwartz was disinterested.

16. As announced at the September 13, 2022, hearing before the Court, the Debtor, Schwartz, and the U.S. Trustee believed that the issues surrounding the Schwartz Employment Application centered on the events in May and June of 2022. The only issue raised or argued by the U.S. Trustee or the Plaintiffs was whether the Court should exercise its discretion to deny the Schwartz Employment Application because of Schwartz's failure to supplement his disclosures in the IW Cases.

17. As the Court noted during closing arguments, "nobody's actually talked about the fifth circuit standards for retention . . . which was the problem with the pleadings and no one ever talked about, right, what it means to hold an adverse interest to the debtor or to the estate." *See* Hrg. Tr. 211:13-18. While it is appropriate for the Court to raise that issue *sua sponte*, evidence had closed. FSS pointed to the relevant evidence that had been presented in the record—that FSS

---

[5] Bankruptcy Local Rule 9013-1(g)(1) does not apply to motions for relief from the automatic stay. However, Bankruptcy Local Rule 4001-1(a)(10) requires an itemization of issues in dispute or compliance with Federal Rule 8 in responses to motions for relief from stay.

9618600 v1 (99999.00099.000)

had refused AEJ's urgings to seek extension of the automatic stay to AEJ and instead reached an agreement with the Connecticut Plaintiffs to lift the automatic stay to allow their litigation to go forward. *See* Hrg. Tr. 213:19-214:3. The reason that this was the only evidence in the record was that the issue had not been raised previously.

### B. The Additional Evidence Presented at Rehearing Will Demonstrate that Schwartz Has No Material Adverse Interest to the Estate.

18. The surprise regarding the issue of disinterestedness and whether Schwartz has an interest materially adverse to the interest of the estate at the September 20 Hearing prejudiced the Schwartz Employment Application. But for the surprise, Schwartz would have been able to present evidence establishing that Schwartz does not have any material adverse interest to the estate and is a disinterested person.[6]

19. A professional is not a "disinterested person" if it (a) possesses or asserts any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant, or (b) possesses a predisposition under circumstances that render such a bias against the estate. *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005) (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985)). The inquiry "speaks in the present tense and only examines present interests." *In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016).

20. The catchall provision "for any other reason" does not allow for disqualification of a professional for the mere appearance of conflicts. *In re Marvel Entm't Grp.*, 140 F.3d 463, 477 (3d Cir. 1998); *accord In re Contractor Tech., Ltd.*, Nos. H-05-3212, 05-37623-H1-7, 2006 U.S.

---

[6] The Court indicated in its ruling that Schwartz satisfied subsections (A) and (B) of Bankruptcy Code § 101(14). Hrg. Tr. 236:1-2. The Court ruled, however, that Schwartz had a material adverse interest for "any other reason" as set out in subsection (C) that was imputed on Schwartz. *See* Hrg. Tr. 236:13-14.

Dist. LEXIS 34466, at *29 (S.D. Tex. May 30, 2006). The question is not whether the connection or predisposition could be imagined to create bias—it is whether that bias actually exists or would exist in certain circumstances. *See In re Marvel Entm't Grp.*, 140 F.3d at 477.

21. In its ruling at the September 20 Hearing, the Court noted several issues other than Schwartz's nondisclosure in the IW Cases that appear to have factored into its determination that Schwartz has a material adverse interest to FSS's bankruptcy estate. Schwartz requests that the Court grant a rehearing to allow Schwartz to present evidence addressing these issues that were not raised prior to close of the evidence at the September 20 Hearing.

22. The additional evidence that Schwartz seeks admitted into the record at a hearing is set out below. Based on this additional evidence, Schwartz submits that the Court should find that Schwartz is disinterested and grant the Schwartz Employment Application, at least for services provided prior to September 20 Hearing.

  i. *Ability to Provide Impartial Advice with Respect to PQPR's Asserted Secured Claim*

23. In its ruling, the Court questioned the ability of Schwartz to be unbiased with respect to PQPR under the record before it. The additional evidence that Schwartz seeks to admit at a rehearing would demonstrate that Schwartz does not have any predisposition that limits or interferes with the ability of Schwartz to provide unbiased advice with respect to PQPR.

    a) *Evidence Regarding Prepetition Analysis of PQPR's Asserted Secured Claim and Related Negotiations*

24. One of the very first legal work product Schwartz reviewed from S&L, prior to the Petition Date, was an analysis of PQPR's asserted lien and note (the "PQPR Memo"). Subject to obtaining permission from FSS to present this privileged document, Schwartz will seek admission of this document into evidence at a rehearing.

25. After S&L prepared and circulated the PQPR Memo internally among FSS's professionals (including Schwartz), FSS began negotiations with PQPR. During those negotiations, S&L (with Schwartz's authorization) emphasized to counsel for PQPR that the alternative to a superior negotiated solution was an immediate challenge to PQPR's asserted claim and lien through an avoidance action in the contemplated bankruptcy case. FSS (with Schwartz's participation) ultimately negotiated deals with PQPR that were superior to what FSS could have accomplished by immediately challenging PQPR's secured claim.

26. First, FSS (through Schwartz) negotiated the Forbearance Agreement attached hereto as Exhibit A. Under the Forbearance Agreement, the Debtor modified the business relationship set out in the Memorandum of Understanding attached as Exhibit B. The Forbearance Agreement provided that (a) PQPR received $2,500 per business day on account of its asserted secured claim and (b) that FSS would acquire product directly—including $750,000 of product previously paid for by PQPR—and receive a 90% of the proceeds of the sales (with PQPR receiving 10%). Under the Memorandum of Understanding that previously governed the relationship between PQPR and FSS, PQPR received $11,000 per day and 80% of the proceeds (with the Debtor only receiving 20%). FSS (with Schwartz's participation) believed that PQPR was necessary for its business and the Forbearance Agreement reflected an outcome that could not have been achieved by challenging PQPR's claim.

27. Second, FSS (with the advice and consent of Schwartz) negotiated with PQPR a consensual cash collateral order which did not contain any of the traditional and usual protections for a secured lender [ECF No. 6-1]. The proposed cash collateral order provided that FSS waived no claims against PQPR, did not find that PQPR's lien or debt was valid, and did not place limitations on FSS or any other party with respect to challenging PQPR's asserted secured claim.

As PQPR's attorney represented at the August 3, 2022, hearing, PQPR gave up all of the things that it would normally negotiate for. *See*, Hrg. Tr. 45:15-16. The proposed cash collateral order was ultimately modified, but there were no protections to PQPR that were removed. Schwartz was involved in these discussions and agreed with the ultimate outcome.

28.     Third, there were preliminary discussions among FSS (including Schwartz) and PQPR about the possibility of subordinating any unsecured claim of PQPR or otherwise reaching a consensual resolution on the disputed claim and lien. Avoiding PQPR's lien but not the entirety of PQPR's notes would leave PQPR with a large unsecured claim. Depending on the outcome of the Sandy Hook litigation, that amount could exceed the other unsecured claims in the FSS chapter 11 case.[7] Under Bankruptcy Code § 726(a)(4)—relevant because of section 1129(a)(7)(ii)—punitive damages are lower priority than compensatory damages. Working toward agreed subordination of PQPR's entire claim or other resolution would result in a superior outcome avoiding PQPR's lien through litigation and PQPR asserting an unsecured claim. Schwartz supervised these discussions as the CRO for FSS and agreed with the ultimate outcome.

29.     Although FSS ultimately reached a better result through negotiations than could have been accomplished by immediately filing an avoidance action against PQPR, the evidence Schwartz seeks to present at a rehearing would demonstrate that Schwartz has no predisposition that limits the ability of Schwartz to make unbiased decisions with respect to PQPR. Schwartz used the analysis and knowledge contained in the PQPR Memo to negotiate, rather than litigate, a business agreement for the FSS estate that has been beneficial for the chapter 11 estate of FSS during the entire course of the FSS bankruptcy case. Schwartz's conduct and behavior towards

---

[7] Although not determined at the time of the negotiations with PQPR, compensatory damages for the plaintiffs in the Heslin/Lewis Suit totaled $4.1 million. Carrying that through to all 19 plaintiffs would result in liability for compensatory damages totaling $38,950,000.

9618600 v1 (99999.00099.000)

PQPR, Schwartz submits, does not demonstrate a bias against the FSS chapter 11 estate. FSS saved significant estate funds by being able to achieve a negotiated cash collateral agreement, as even the negotiated agreement took over 6 hours of court time to have it approved the first time.

        b) <u>Scheduling PQPR's Asserted Secured Claim as Disputed</u>

30.    FSS indicated on its schedules of assets and liabilities filed in this case [ECF No. 121] (the "<u>Schedules</u>") that PQPR's asserted secured claim was disputed. S&L advised FSS—through Schwartz—with respect to this matter. Subject to obtaining permission from FSS to disclose the confidential advice provided, S&L and Schwartz will seek to admit evidence with respect to this advice.

31.    This example again demonstrates that Schwartz has no predisposition that limits or interferes with the ability of Schwartz to make unbiased decisions with respect to PQPR, including matters related to the allegations of the Plaintiffs. Further, the outcome of listing the claim as disputed indicates that together, Schwartz, acted on advice of FSS counsel, and had no conflict preventing him from taking positions contrary to PQPR.

       ii.  <u>Ability to Provide Impartial Advice with Respect to Alex Jones</u>

32.    The Court also indicated that it had concerns about Schwartz's disinterestedness with respect to issues adverse to AEJ based on the record. Schwartz seeks through this Motion to present evidence demonstrating that Schwartz does not have any predisposition that limits or interferes with the ability of Schwartz to make unbiased decisions with respect to AEJ.

        a) <u>Analysis of Requested Extension of the Stay by Alex Jones Regarding Connecticut Litigation</u>

33.    On August 2, 2022, the Connecticut Superior Court ruled that jury selection in the Connecticut Litigation could continue. In essence, the Connecticut Superior Court bifurcated the trial and was continuing only with respect to AEJ, despite not formally severing the actions against

FSS. A copy of the transcript is attached hereto as Exhibit C (the "August 2 Connecticut Transcript").

34. That got lost in translation from state court counsel. What FSS's proposed bankruptcy professionals were told was that the Connecticut state court was continuing with jury selection despite not severing FSS from the case.[8] While technically true, it missed the crux of the Connecticut Superior Court's action. The Connecticut counsel filed a notice of removal of the Connecticut litigation to prevent what appeared to be a violation of the automatic stay and to enable a single trial.[9]

35. On August 15, 2022, the U.S. Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court") remanded the removed Connecticut Litigation. S&L represented FSS in the remand hearing. Despite remanding the case, the Connecticut Bankruptcy Court did not award fees against FSS. The Connecticut Bankruptcy Court's order of remand is attached hereto as Exhibit D (the "Remand Order").

36. After the Remand Order was entered, counsel for AEJ requested that FSS seek a stay of the Remand Order and take other action with respect to the Connecticut Litigation, including extending the automatic stay to AEJ. Mr. Shannon initially responded to this request as indicated in the email dated August 16, 2022—a copy of which is attached hereto as Exhibit E— informing AEJ's counsel that:

    a) FSS would not have removed if it was aware that the Connecticut Superior Court was in effect bifurcating the trial;

    b) There were reasons against extending the automatic stay, including that (i) separating claims against AEJ and FSS may be possible in Connecticut where

---

[8] Mr. Battaglia referenced this confusion at the September 20 Hearing. Hrg. Tr. 220:14-18 ("Even the removal that was done of the Connecticut litigation was done with great hesitance and reluctance on our part but only because it was unclear what the Connecticut court had done, vis-à-vis FSS. Not Alex Jones -- FSS.").

[9] As reflected in the August 2 Connecticut Transcript (Ex. D), FSS had determined *not* to remove the Connecticut Litigation prior to its misunderstanding of the Connecticut Superior Court's ruling. August 2, 2022 Hrg. Tr 13:14-16.

it was not in Texas, (ii) AEJ did not appear to meet the standard for extension of the stay under applicable law, (iii) it would harm FSS's position the then-yet-to-be-filed motion to appoint a tort committee and result in additional costs to the FSS bankruptcy estate, and (iv) estate funds might be better used litigating in Connecticut rather than the costs of seeking to extend the stay and distraction from important restructuring matters was not worth it; and

c) FSS needed to focus on things that would preserve and increase the value of the estate rather than incurring expenses fighting the Plaintiffs.

Mr. Shannon informed AEJ's attorney that he could not advise FSS's proposed CRO that seeking a stay would accomplishing anything other than incurring expenses for the estate.

37. AEJ's attorney vigorously pursued his client's interests against FSS in response. As reflected in the August 16, 2022, email attached hereto as Exhibit F, AEJ's attorney stressed that he would "leave it to the Debtor[] to decide how to keep Alex supporting the efforts."[10] But notwithstanding AEJ's threats to walk off the job and cease supporting the FSS's sales efforts, FSS did not cave, adopted S&L's recommendation, and decided that it would *not* (a) seek a stay of the Remand Order, (b) move to extend the automatic stay to AEJ with respect to the Connecticut Litigation, or (c) seek a Bankruptcy Code § 105 stay.[11]

38. Schwartz adopted S&L's preliminary response to the request of AEJ's attorney to seek a stay of the Remand Order and extension of the automatic stay—and FSS's ultimate decision to adopt S&L's recommendation despite pressure from AEJ. This is another action demonstrating that Schwartz has no predisposition limiting or interfering with his ability to provide unbiased business decision making on behalf of FSS with respect to AEJ. Schwartz took contrary positions

---

[10] These negotiations with AEJ and his counsel were among those referenced by Mr. Battaglia at the September 20 Hearing. Hrg. Tr. 220:19-221:3.
[11] The final decision was reached after additional research into the issue and discussion among all of FSS's legal and financial advisory team. There was some support to take the actions demanded by AEJ, but FSS determined that seeking that relief was not in the best interests of its bankruptcy estate.

to AEJ, after being advised by his counsel, because doing so was in the best interests of FSS's bankruptcy estate.

39. Schwartz has no predisposition limiting or interfering with Schwartz's ability to make unbiased decisions for FSS on issues where AEJ is adverse, including not assuming that AEJ's asserted indemnity was valid just because that was AEJ's asserted position.

### iii. $80,000 for AEJ Travel and Security Proposed in Interim Cash Collateral Budget

40. The Court noted in its ruling that cash collateral budget providing for approximately $80,000 in travel expenses for AEJ concerned him. *See* Hrg. Tr. 244:5-13. The Court was referring to the proposed order filed on September 13, 2022 [ECF No. 148] (the "September 13 Proposed Cash Collateral Order"). The Court questioned who was negotiating on behalf of the estate with respect to this amount. *See* Hrg. Tr. 244:14-18. Schwartz seeks to present additional evidence showing (a) Schwartz's involvement in the Cash Collateral Budget on behalf of the FSS estate, and (b) that the approximately $80,000 for travel expenses was significantly less than the first estimate of costs that FSS would incur to continue to trial in Connecticut and the reduction was the result of significant negotiations in which Schwartz directed.

41. To determine FSS's economic or business position with respect to the Connecticut Plaintiffs' Motion for Relief from Stay [ECF No. 15] (the "Connecticut Lift Stay Motion"), Schwartz prepared a framework (the "Connecticut Trial Cost Framework") of the costs that FSS would incur to simultaneously (a) allow AEJ to attend the entire trial and (b) not interfere with the business of FSS. Schwartz prepared this document based on FSS's typical practice regarding travel. Under either scenario, it was immediately clear that this was not practicable. Subject to obtaining permission from FSS to disclose the Connecticut Trial Cost Framework, Schwartz will seek to admit the document as evidence.

42. To reduce the costs to FSS's bankruptcy estate of allowing the Connecticut Litigation to continue to judgment, FSS's proposed professionals focused their efforts on reducing the amount of time that AEJ would spend at the Connecticut trial rather than conducting his show and generating revenue for FSS. The trial in Connecticut was going to proceed at a minimum against AEJ because FSS had decided that it was not going to seek to extend the automatic stay to AEJ on that matter. As reflected in the August 17, 2022, email from AEJ's bankruptcy attorney attached hereto as Exhibit G, however, AEJ desired to attend the entire Connecticut trial and would not be available to host his show for FSS in that event. This required negotiations with both AEJ and the Connecticut Plaintiffs. In exchange for AEJ giving up his right to be present at the entire trial, FSS decided it was willing to pay AEJ's travel expenses.

43. These negotiations were conducted largely in connection with the Connecticut Lift Stay Motion. In the agreed order lifting the stay [ECF No. 117] (the "Connecticut Lift Stay Order"), AEJ was required to attend for "three trial days (not counting Mondays, which are not evidence days)." This avoided many of the issues raised by FSS in its response to the Lift Stay Motion and the possibility of having two jury trials in Connecticut that would require additional absences of AEJ from conducting his show for FSS and earning revenue for the bankruptcy estate.[12]

44. Schwartz submits that this additional evidence would demonstrate that the approximately $80,000 in the September 13 Proposed Cash Collateral Order does not indicate that Schwartz has any predisposition in favor of AEJ or was biased against the FSS estate. Instead, the additional evidence will demonstrate that Schwartz, from the first instance the matter came up,

---

[12] The Connecticut Plaintiffs has taken the position that their claims against FSS are 28 U.S.C. § 157(b)(5) personal injury tort claims requiring a jury trial. If there were two trials, FSS would lose revenue from AEJ needing to attend as a witness twice. As reflected in the Connecticut Trial Cost Framework, FSS estimated that each day AEJ was off the air cost FSS more than $40,000.

carefully navigated a thorny topic, with absolutely no predisposition in favor of AEJ or bias against FSS, with a key employee\co-defendant, keenly focused on protecting the FSS estate economically, and, yet making sure the Connecticut counsel had the necessary resources in order to defend FSS properly in the Connecticut Sandy Hook trial.

## CONCLUSION

45. For the reasons set out above, Schwartz requests that the Court grant the Motion and set a rehearing on the Schwartz Employment Application to allow additional evidence on the issue of Schwartz's disinterestedness. Even if FSS determines that it should go with alternative CRO and financial advisors to assist the new CRO, Schwartz should be allowed an opportunity to present evidence regarding disinterestedness with respect to the services it provided prior to September 20, 2022.

Dated: October 4, 2022.

**KANE RUSSELL COLEMAN LOGAN**

/s/ *Michael P. Ridulfo*
Michael P. Ridulfo
State Bar no. 1690202000
Federal Bar No. 27086
mridulfo@krcl.com
5151 San Felipe, Suite 800
Houston, Texas 77056
Telephone: (713) 425-7442
Facsimile: (713) 425-7700
Counsel for W. Marc Schwartz and Schwartz Associates, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served (a) at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and (b) within 24 hours of the filing, on the parties on the attached service list by U.S.P.S. first class mail.

/s/Michael P. Ridulfo
Michael P. Ridulfo

9618600 v1 (99999.00099.000)

## SERVICE LIST

### Debtor and Counsel

Free Speech Systems, LLC
3019 Alvin Devane Blvd., STE 300
Austin, TX 78741

Attn: Ray Battalia
Law Offices of Raymond W. Battaglia
66 Granburg Cir.
San Antonio, TX 78218

### Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

26

## Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway. Suite 320
Austin, TX 78746

## Parties Filing Notice of Appearance

Ryan E. Chapple Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 7870

Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581

Attn: Shelby Jordan Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

John D Malone Attorney at Law
5400 Bosque Blvd., Ste. 650
Waco, TX 76710

Jason Starks
Travis County Attorney's Office
P.O. Box 1748
Austin, TX 78767

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite
1400 Houston, TX 77002

Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548 Austin, TX 78711-254

Richard A. Cochrane
Akin Gump Strauss Hauer & Feld
2300 N. Field Street Suite 1800
Dallas, TX 7520

Stephen A Roberts
Stephen A Roberts, P.C.
1400 Marshall Ln Austin, TX 7870

## Subchapter V Trustee

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

Attn: Elizabeth C. Freeman
Jackson Walker LLP
1401 McKinney St., STE 1900
Houston, TX 77010

## U.S. Trustee

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

## Additional Notice Parties

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei, Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604