# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

## SHANNON & LEE LLP'S MOTION FOR ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM AND GRANTING RELATED RELIEF

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

**SUMMARY**

| Name of applicant: | | Shannon & Lee LLP |
|---|---|---|
| Applicant's professional role in case: | | Attorney for Debtor |
| Indicate whether this is an interim or final application: | | Final |
| Date order of employment was signed: | | N/A (Requested via this Motion) |
| | Beginning of Period | Ending of Period |
| Total period covered in application | July 29, 2022 | September 20, 2022 |
| Time periods covered by any prior applications | N/A | N/A |
| Total amounts awarded in all prior applications | $0.00 | |
| Amount of retainer received in the case | $0.00 | |
| Total fees applied for in this application and in all prior applications (include any retainer amounts applied or to be applied) | $320,196.25 | |
| Total professional fees requested in this application | $320,196.25 | |
| Total professional hours covered by this application | 523.1 | |
| Average hourly rate for professionals | $612.11 | |
| Total paraprofessional hours covered by this application | 0.0 | |
| Average hourly rate for paraprofessionals | N/A | |
| Reimbursable expenses sought in this application | $5,019.60 | |
| Total amount to be paid to Priority Unsecured Creditors | TBD | |
| Anticipated % Dividend to Priority Unsecured Creditors | TBD | |
| Total to be paid to General Unsecured Creditors | TBD | |
| Anticipated % Dividend to General Unsecured Creditors | TBD | |
| Date of confirmation hearing | TBD | |
| Indicate whether the plan has been confirmed | No | |

Shannon & Lee LLP (the "S&L") hereby moves for entry of an order substantially in the form attached hereto (the "Proposed Order") pursuant to sections 105(a), 327, 330, 363, and 503 of title 11 of the United States Code (the "Bankruptcy Code") as follows.

2

**RELIEF REQUESTED**

1.       S&L requests that the Court enter an order, substantially in the Proposed Order (a) allowing S&L an administrative expense claim in the amount of $325,215.85 (the "Requested Administrative Expense Claim") or other amount as agreed to by the parties and announced at or prior to any hearing on this Motion or determined by the Court and (b) authorizing S&L to draw the allowed amount of the administrative expense claim allowed against S&L's prepetition retainer of $50,822.68 (the "Retainer").

**JURISDICTION**

2.       The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

3.       The bases for the relief requested herein are sections 105(a), 327, 363(c), and/or 503(b)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014, 2016, and/or 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

**A.  Bankruptcy Case and Procedural Posture**

4.       On July 29, 2022 (the "Petition Date"), the Free Speech Systems, LLC (the "Debtor") commenced a case by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code (the "Chapter 11 Case") with the Court.

5.       The Debtor filed an application to employ S&L on August 20, 2022 [ECF No. 83] (the "S&L Employment Application"). The Debtor sought to employ S&L to "be primarily responsible for the day-to-day management of the case, issues involving the Sandy Hook Litigation, and all routine activities typical to the Chapter 11 Case" under the terms set out in the

engagement letter attached to the S&L Employment Application.[1] S&L Employment Application at ¶ 22.

6.      The U.S. Trustee objected to the employment of S&L on September 12, 2022, and amended his objection on September 14, 2022 [ECF No. 154] (the "UST Objection"). The Sandy Hook Plaintiffs joined the UST Employment Application Objection on September 15, 2022 [ECF No. 166].

7.      The UST Objection argued that the Court should deny the S&L Employment Application because of the failure of S&L partner Kyung Lee to supplement his disclosures required under Bankruptcy Rule 2014 in the cases of (the "IW Cases") of InfoW, LLC, IWHealth, LLC, and Prison Planet, LLC  to indicate that he had begun working for the Debtor here prior to the dismissal of the IW Cases. The U.S. Trustee argued that it was "appropriate for the Court to exercise its broad discretion under Section 327(a) to address Attorney Lee's prior acts in the related cases—which this case is essentially a continuation of—and deny the S & L Application." UST Objection ¶ 51.

8.      The Court denied the S&L Employment Application at the September 20, 2022, hearing on the S&L Employment Application (the "September 20 Hearing"). The Court left open, however, the issue of whether S&L was entitled to compensation for the work performed:

> I understand that that's going to require some questions as to where that leaves Shannon and Lee and Mr. Schwartz in terms of you know, retention and the work that they've done. And I'll be looking to the Subchapter 5 trustee for guidance here, but there was good work done here. And I think Schwartz and Associates, right, helped the process. We've got cash collateral budgets in place and there was folks who would answer phone calls. From what I hear, what Mr. Schwartz encountered -- and I don't want anyone to leave thinking

---

[1] The Debtor sought to retain The Law Offices of Raymond Battaglia (the "Battaglia Firm") to "provide legal advice regarding strategy for the Chapter 11 Case and implementation of that strategy." S&L Employment Application at ¶ 22.

that I don't think they should be compensated for -- for good work
in this case.

Hrg. Tr. 256:14-24. The Court ruled that all rights were reserved with respect to that issue. *Id.* at

257:3-4.

9.        On October 4, 2022, S&L filed a motion under Rule 59 of the Federal Rules of

Civil Procedure seeking a rehearing on the issue of disinterestedness and employment under

Bankruptcy Code § 327(e) [ECF No. 206] (the "Rule 59 Motion"). Alex Jones [ECF No. 217] and

the U.S. Trustee [ECF No. 223] filed objections to the Rule 59 Motion.[2] Both Jones and the U.S.

Trustee disputed the standing/authority of S&L to seek the relief requested in the Rule 59 Motion.

The U.S. Trustee also opposed the Rule 59 Motion on the grounds that employment under Section

327(e) was a new legal theory that was not raised in the S&L Employment Application.

10.         The Court set the Rule 59 Motion for hearing on October 12, 2022. So that

negotiations could continue with the U.S. Trustee and other parties and interest, and to prevent

potential conflicting outcomes, S&L requested that the hearing on the Rule 59 Motion be continued

to November 16, 2022. In the absence of opposition from the that objected to the Rule 59 Motion,

the Court continued the hearing.

**B.  Services Provided by S&L Prior to the Denial of the S&L Employment Application**

   *i.   Professional Services Provided by S&L to the Debtor as Debtor-in-Possession*

11.       S&L maintained detailed written records of the time expended by its professionals

rendering professional services to the Debtor during the period from July 29, 2022, through

September 20, 2022 (the "Engagement Period"). These time records are reflected in the fee

statement attached as **Exhibit A** hereto.

---

[2] The Sandy Hook Plaintiffs joined in the U.S. Trustee's objection [ECF No. 226].

12.     As reflected in the time records, S&L professionals provided 523.1 hours of services to the Debtor, as debtor-in-possession, in connection with this chapter 11 case during the Engagement Period, representing $523.1 in fees at S&L's standard hourly rates (prior to reductions), as summarized in the following chart:

| Timekeeper | Year of First Bar Admission | Rate | Hours | Fees |
|---|---|---|---|---|
| Kyung S. Lee | 1984 | $850.00 | 263.4 | $223,890.00 |
| R. J. Shannon | 2014 | $625.00 | 248.4 | $155,250.00 |
| | | $312.50 | 11.3 | $3,531.25 |
| TOTAL: | | | 523.1 | $382,671.25 |

13.     S&L professionals provided services to the Debtor on several categories of matters necessary in this chapter 11 case. A summary of the time spent by S&L professionals on the various aspects of the chapter 11 case are reflected in the following chart:

| Category | Total Hours | Total Fees |
|---|---|---|
| Business Operations | 14.4 | $12,172.50 |
| Case Administration | 87.7 | $62,777.50 |
| Claims Administration and Objections | 2.70 | $1,687.50 |
| Fee/Employment Applications | 71.9 | $55,535.00 |
| Fee/Employment Objections[3] | 86.1 | $62,475.00 |
| Financing & Cash Collateral | 38.9 | $28,880.00 |
| Litigation | 116.4 | $80,536.25 |
| Meetings of Creditors | 6.6 | $5,137.50 |
| Plan and Disclosure Statement | 15.5 | $12,837.50 |
| Relief from Stay Proceedings | 82.9 | $60,632.50 |
| TOTAL: | 523.1 | $382,671.25 |

---

[3] The "Fee/Employment Objections" category reflects services provided related to responding and litigating the U.S. Trustee's objections to the Debtor's applications to employ S&L and Schwartz Associates, LLC.

14.     The largest portion of the services provided by S&L to the Debtor was related to the Sandy Hook Litigation and reflected in the Litigation (116.4 hours), Relief from Stay Proceedings (82.9 hours), and Fee/Employment Applications (71.9 hours) categories.[4] As the result of these services, (a) the Debtor was able to obtain or agree to modification of the automatic stay to allow certain of the Sandy Hook Litigation to continue without the expense of a contested hearing on the matters, (b) defend and try the Connecticut Litigation through the ongoing trial, thereby minimizing the interruption with the Debtor's operations and revenue generation, and (c) obtain the employment of its prepetition state-court counsel at a significantly reduced cost than obtaining new trial counsel.

15.     S&L professionals provided 87.7 hours of professional services related to Case Administration. Of this, at least 32.6 hours was related to responding to the Connecticut Plaintiffs' motion to appoint an official committee of tort claimants and remove the Debtor as debtor-in-possession [ECF No. 102] (the "Tort Committee Motion") and the motion to expedite the Tort Committee Motion [ECF No. 106]. Also falling under this category were services related to the preparation of and conferences with parties required under the Bankruptcy Code about the initial debtor interview (the "IDI") and related report, Debtor's schedules of assets and liabilities (the "Schedules"), Statement of Financial Affairs (the "SOFA"), and status report required under subchapter v. These services enabled the Debtor to avoid expensive litigation with respect to the Tort Committee Motion and instead direct the case to mediation with the goal of a consensual plan

---

[4] The "Fee/Employment Applications" category also represents services related to the Debtor's application to employ S&L, Schwartz Associates, and the Battaglia Firm. The "Litigation" category also represents services related to hearings on the Debtor's first day motions, preparing and responding to discovery requests on contested matters in the chapter 11 case, and analysis of potential avoidance actions.

of reorganization.[5] The services also enabled the Debtor to timely attend and provide the information required at the IDI, file its Schedules and SOFA, and file the status report.

16.    S&L professionals provided 86.1 hours of professional services falling under the Fee/Employment Objections category. These services are related to responding and litigating the U.S. Trustee's objections to the Debtor's applications to employ S&L and Schwartz Associates, LLC. Although these services were reasonably likely to benefit the estate by avoiding disruption to administration of this chapter 11 case, the Requested Administrative Expense Claim does *not* include amounts for these services. S&L has reduced the total amount reflected in the fee statement attached as Exhibit A—$387,690.85—by the $62,475.00 reflected in the Fee/Employment Claims Objection category to arrive at the Requested Administrative Expense Claim.

17.    S&L professionals provided 38.9 hours of professional services related to Financing and Cash Collateral. These services primarily relate to the Debtor's requests for use of cash collateral, with a significant portion of these services related to addressing issues in the Debtor's fulfillment of orders.[6] S&L also provided services in this category related to producing documents related to formal and informal discovery requests by the Sandy Hook Plaintiffs. As the result of these services, the Debtor was able to obtain use of cash collateral on an interim basis and obtain amendment of the first interim cash collateral order to allow the Debtor to fulfill orders and clear the backlog of orders to be shipped to its customers.

18.    S&L professionals provided 15.5 hours of services under the Plan and Disclosure Statement category. These services include (i) legal research and analysis related to the "disposable

---

[5] The Sandy Hook Plaintiffs filed a motion to continue the hearing on the Tort Committee Motion [ECF No. 216], which was granted by the Court on October 12, 2022 [ECF No. 234].

[6] At the beginning of the case, the Debtor had a significant backlog in shipping orders that had been paid for by its customers. Addressing these issues required amendments to the Debtor's first amended cash collateral order. Additionally, the Debtor called upon S&L to assist with procuring a new source of inventory purchasing and related financing so that it would be less reliant on PQPR.

income" definition to enable the Debtor to prepare financial projections related to a forthcoming plan of reorganization, issues of confidentiality of plan negotiations, and potential subordination of PQPR's asserted claim through a plan, (ii) drafting an outline of a plan concept, and (iii) a meeting in Austin, Texas on September 13, 2022, to discuss plan concepts with the Debtor. As the result of these services, the Debtor was able to begin a framework to use in discussions and negotiations with creditors on a plan of reorganization, which will likely be carried on by the new CRO in the mediation ordered by the Court at the October 12, 2022, hearing.

19.     S&L professionals provided 14.4 hours of services related to Business Operations. These relate to addressing inventory issues faced by the Debtor, issues related to lost revenue from unavailability of Alex Jones related to the trial in Connecticut, the Debtor's ongoing business relationship with PQPR, negotiation of a new agreement with an unrelated third party for ordering goods on consignment and processing order fulfilment, and issues regarding bitcoin donations. As the result of these services, the Debtor made improvements to its financial performance, improved its margins, was able to satisfy its obligations to its customers, and evaluated its ability to proceeding with the Connecticut Litigation to judgment. These services benefitted the Debtor's business operations and without the services the Debtor's estate would not have been able to achieve the results it did from the Petition Date through September 20, 2022.

20.     S&L professionals provided 6.6 hours of services falling under the Meetings of Creditors category. These services were related to discussions with creditors and attending and representing Marc Schwartz as the Debtor's representative at the section 341 meeting of creditors. As the result of these services, the Debtor attended the section 341 meeting of creditors, which was concluded on September 7, 2022. These services enabled the Debtor to meet is requirements under the Bankruptcy Code and Bankruptcy Rules.

21.     S&L professionals provided 2.7 hours of services related to Claims Administration and Objections. These services entailed (a) reviewing and analyzing Alex Jones's asserted proof of claim and analysis of relevant corporate documents, (b) analysis of the punitive damages verdict in the Heslin/Lewis Suit and research into the Texas caps on the same, and (c) analysis into claims against FSS that were also potential claims against the IW Debtors. As the result of these services, the Debtor was able to make an informed business decision with respect to Alex Jones's request for extension of the automatic stay and evaluate certain of the potential claims against the Debtor's bankruptcy estate. The work done by S&L provided the Debtor the necessary legal analysis and data points for the Debtor, through its CRO, to exercise its business judgment.

      *ii.     Out-of-Pocket Expenses Incurred by S&L for the Benefit of the Debtor as Debtor-in-Possession*

22.     In connection with providing the services set out above for the Debtor as debtor-in-possession, S&L incurred out-of-pocket expenses totaling $5,019.60. These expenses are reflected in the following chart:

| Date | Description | Amount |
|------|-------------|--------|
| 7/29/2022 | Service of Filings: Printing and mailing of Utility Motion (printing and service through vendor). | $87.26 |
| 7/29/2022 | Service of Filings: Printing and mailing of Heslin/Lewis Stay Motion, Cash Collateral Motion, Critical Vendor Motion, and Motion to Extend time for Schedules and Statements (printing and service through vendor). | $176.88 |
| 7/29/2022 | Filing Fees: Chapter 11 Filing Fee (paid by S&L though filed through R. Battaglia ECF at his direction). | $1,738.00 |
| 7/31/2022 | Copy Costs: Copy two original sets of proposed Exhibits to share with Marc Schwartz at La Madeleine meeting on Sunday in Preparation for Hearing on Motion to Lift Stay. | $50.23 |
| 7/31/2022 | Copy Costs: Rush order binding of 6 Exhibit books for Hearing on Motion to Lift Stay in Favor of Heslin/Lewis on 8.1.22. | $221.90 |
| 8/8/2022 | RJS flight to Connecticut for hearing on motion to remand for Connecticut Litigation and return to Houston, TX, on United Airlines (Economy Plus). | $861.20 |
| 8/9/2022 | RJS charge for internet access on 8/9/22 flight from Houston, TX to Hartford, CT | $10.00 |

| Date | Description | Amount |
|---|---|---|
| 8/10/2022 | Rental Car: RJS car rental to travel from Windsor Locks, CT/Bradley Int'l Airport to Bridgeport, CT for hearing on Connecticut Plaintiffs' motion to remand. | $167.25 |
| 8/11/2022 | Hotel: RJS hotel, taxes, and 1 day internet charge for scheduled in-person hearing before Connecticut Bankruptcy Court related to removed Connecticut Litigation (Stay 8/9/22 to 8/11/22). | $394.70 |
| 8/11/2022 | RJS charge for Internet access on return flight on 8/ 11/22. | $10.00 |
| 8/24/2022 | Service of Filings: Service of Pleadings (printing and postage through vendor). | $259.00 |
| 9/3/2022 | Form of Consignment Agreement to use with ▮▮▮ Group. | $29.99 |
| 9/6/2022 | Printing copies of Exhibits to Motion to Appoint Tort Committee. | $54.65 |
| 9/8/2022 | Service of Filings: Service of pleadings on retaining special counsel (printing and postage through vendor). | $124.20 |
| 9/13/2022 | Milage: KSL travel to and from Austin after meetings with company and professionals re plan of reorganization. | $202.10 |
| 9/15/2022 | Service of Filings: Service of Pleadings (printing and postage through vendor). | $98.19 |
| 9/18/2022 | Printing copies of exhibits for hearings on Application | $49.08 |
| 9/19/2022 | Binders and dividers for Exhibit Binders for Trial | $109.02 |
| 9/19/2022 | Copy costs of exhibits 3X for hearing on Application | $375.95 |
|  | TOTAL: | $5,019.60 |

23.     These expenses were necessary expenses for the Debtor to incur to administer its chapter 11 case and, except for the travel cost of Mr. Lee from Houston to Austin to discuss the Plan, necessary to preserve the value of the Debtor's estate. The categories of expenses are described below:

    a.   <u>Chapter 11 Filing Fee ($1,738.00)</u>—S&L paid the chapter 11 filing fee on behalf of the Debtor through the Court's CM/ECF system. This was the largest category of expenses.

    b.   <u>RJS Travel to Connecticut for Remand Hearing ($1,443.15)</u>—The Connecticut Plaintiffs sought fees and expenses against the Debtor in their motion for remand in the removed Connecticut Litigation. The hearing was set on an expedited basis

as an in-person hearing.[7] Mr. Shannon traveled to Connecticut to represent the Debtor as debtor-in-possession at the hearing and incurred these expenses. The U.S. Bankruptcy Court for Connecticut did not assess fees or expenses against the Debtor.

    c.   Printing of Exhibits for Hearings ($860.83)—S&L printed and prepared the exhibit binders for the hearings at which the Debtor presented evidence using a third-party vendor.

    d.   Service of Filings ($745.53)—S&L served most of the filings by the Debtor in this case that required service. This was accomplished by a third-party service provider that is also used by the Battaglia Firm.

    e.   KSL Travel to Austin re Plan Discussions ($202.10)—On September 13, 2022, Mr. Lee traveled to Austin, Texas, to attend discussions with the Debtor and its professionals regarding a proposed plan of reorganization. Mr. Lee returned that same day to Houston, Texas.

    f.   Cost for Form Consignment Agreement ($29.99)—S&L provided services to the Debtor with respect to a potential agreement with an unrelated third-party for consignment/financing of inventory for the Debtor and an alternative fulfilment provider. Rather than creating a draft consignment agreement from scratch, S&L paid for a form consignment agreement from which to work.

## **BASIS FOR RELIEF**

### A. **Compensation and Reimbursement of Expenses under Bankruptcy Code § 330 for Services Provided Prior to September 20, 2022**

    *i.   Ability to Seek Compensation Despite Denial of S&L Employment Application*

24.    While the Court questioned S&L's ability to impartially represent the Debtor regarding difficult decisions that may become necessary related to Alex Jones and PQPR (Hrg. Tr. 247:6-11), it also stated that its decision left open questions about where that left S&L in terms of retention and the work it performed prior to the ruling (Hrg. Tr. 256:14-17). Further, the Court stated that all parties' rights were reserved with respect to compensation for the services provided in the case. (Hrg. Tr. 257:3-4).

---

[7] The hearing was continued and changed to a remote hearing because of a positive COVID-19 test from counsel for the Connecticut Plaintiffs. The request for the continuance occurred the morning before the hearing. Mr. Shannon returned to Houston for the continued hearing rather than remaining in Connecticut.

25.     The Debtor has elected to leave this issue for the relevant professionals to pursue.[8] On October 3, 2022, the Debtor filed an emergency application to employ Patrick Magill as replacement CRO and the Court entered an order approving the employment of Mr. Magill on October 13, 2022. The Court entered an order compelling mediation on October 12, 2022 [ECF No. 233]. On information and belief, the Debtor does not anticipate retaining co-counsel pending the outcome of the mediation.

26.     Courts have held that a professional may seek approval of its employment in connection with an application for compensation. In *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474 (B.A.P. 9th Cir. 1996), *aff'd* 139 F.3d 1303 (9th Cir. 1998), the debtor-in-possession entered an agreement to retain a broker and filed an application to employ the broker with the bankruptcy court. *Id.* at 477. After the broker began marketing the debtor's real property, the debtor later withdrew the application upon learning that the broker was a business partner for the successful purchaser and loaned the successful purchaser the escrow deposit to participate in an auction. *Id.* The broker later filed an application to employ on its own behalf. The Court denied the broker's application to employ because it was not filed by the debtor but that it should seek compensation under Bankruptcy Code § 503(b). *Id.* The bankruptcy court subsequently granted the broker's motion for administrative expense under section 503(b). *Id.* In ruling on the debtor's appeal, the Ninth Circuit B.A.P. reasoned that the broker *did* have standing to seek its employment and treated the request for administrative expense as an application to employ. *See Id.* at 479-80 ("The bankruptcy court's award of fees was de facto approval of [the broker's] employment."). Other courts have also considered and approved retroactive employment of the in the context of

---

[8] S&L has and will continue to seek the new CRO's views and has requested his input directly and through counsel for FSS. Through this Motion, S&L seeks only allowance of an administrative expense and related relief. S&L does not seek to require the Debtor to continue to engage S&L going forward.

applications for compensation. *E.g.*, *In re McKenzie*, No. 08-16378, 2013 Bankr. LEXIS 2672 (Bankr. E.D. Tenn. July 2, 2013); *In re Little Greek Rest.*, 205 B.R. 484 (Bankr. E.D. La. 1996); *In re Saybrook Mfg. Co.*, 108 B.R. 366 (Bankr. M.D. Ga. 1989); *see also In re Triangle Chems.*, 697 F.2d 1280, 1289 (5th Cir. 1983) (reversing a bankruptcy court's decision on the basis that the court had discretion to approve such employment).

27.    While the Court denied the relief requested S&L Employment Application— employment of S&L as bankruptcy co-counsel going forward—S&L submits that it was a disinterested person with respect to the services provided from the Petition Date through September 20, 2022, and is therefore eligible to be employed and compensated for such services. As set out in the declaration of Kyung Lee accompanying the S&L Employment Application and presented in evidence at the September 20 Hearing, neither S&L nor its attorneys (a) were a creditor, equity security holder, or insider of the Debtor during that period or (b) are or were within two years before the Petition Date a director, officer, or employee of the debtor.[9] Neither S&L nor its attorneys have any economic interest that would tend to lessen the value of the estate or create an actual or potential dispute in which the estate is a rival claimant. And, as set out in detail in the Rule 59 Motion, neither S&L nor its attorneys have a predisposition that renders bias against the estate under the circumstances with respect to the services provided during the Engagement Period.[10]

28.    The Court has the authority to allow compensation for S&L for the services provided to the Debtor through September 20, 2022, that are not related to any potential conflict, without disturbing the order entered on September 20, 2022.  As described in *In re Mehdipour*—

---

[9] S&L submits that it is entitled to an administrative expense claim for the services provided and expenses incurred.

[10] As set out in detail in the Rule 59 Motion, S&L identified and advocated for positions directly contrary to the positions asserted by Alex Jones and PQPR during and prior to the Engagement Period.

summarized above—while compensation must be denied while a professional has a conflict, the "bankruptcy court has discretion to award or deny compensation for services performed outside of a conflict" and "[t]he court is not required to deny fees for work actually performed." 202 B.R. at 478. Other courts have similarly held that professionals may be retained and compensated for work performed unrelated to an adverse interest that they hold or represent. *See, e.g.*, *In re Relativity Media, LLC*, No. 18-11358 (MEW), 2018 Bankr. LEXIS 2037, at *20 (Bankr. S.D.N.Y. July 6, 2018) (authorizing employment of attorney for debtor-in-possession on the condition of obtaining separate counsel to address disputes against a party with respect to which the attorney had a conflict); *Exco Res. v. Milbank*, 2003 U.S. Dist. LEXIS 1442, at *26 (S.D.N.Y. Jan. 28, 2003) (affirming employment of counsel where attorney would not be handling any matter with respect to the matter in which the attorney had an adverse interest); *In re Granite Partners, L.P.*, 219 B.R. 22, 41 (Bankr. S.D.N.Y. 1998) ("[A] conflict does not necessarily taint every aspect of the representation. Where the professional has performed some service of unquestioned value, total denial of fees might result in an inequitable windfall to the estate.") (allowing fees for services not related to any conflict); *In re Leslie Fay Cos.*, 175 B.R. 525, 539 (Bankr. S.D.N.Y. 1994) (authorizing attorney to continue to provide services on matters that it had already started but not take on new matters and allowing fees for unconflicted matters).

29.     In the alternative, S&L submits that it is eligible for employment under Bankruptcy Code § 327(e) for the limited purposes set out as S&L's primary responsibility in the S&L Employment Application.[11] These include (a) administrative matters such as the preparing and

---

[11] The U.S. Trustee's objection to the Rule 59 Motion argues that the Debtor did not request relief under Bankruptcy Code § 327(e) and therefore the Rule 59 Motion is the incorrect procedure to introduce this legal theory. If so, then the Court has not considered employment under section 327(e) previously and S&L submits that this Motion is an appropriate procedure to present this legal theory. Similarly, if the U.S. Trustee's position is correct, the reasoning would also apply to the employment of S&L for the limited time of the Engagement Period and matters unrelated to pursuing claims against Alex Jones or PQPR.

filing of notices, serving pleadings, and complying with local rules requirements, (b) matters related to enabling the Sandy Hook Litigation to continue to judgment, and (c) specific matters requested by the Debtor or lead bankruptcy counsel.[12] S&L was first retained by the Debtor prior to the Petition Date, the employment of S&L to represent the estate on these limited matters was in the best interests of the Debtor's bankruptcy estate, and these matters do not involve asserting claims against Alex Jones or PQPR.

30.     Courts have authorized limited employment of a professional under Bankruptcy Code § 327(e) where employment was denied under section 327(a). In *Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.)*, 323 B.R. 403 (D. Del. 2005), the debtor-in-possession sought to employ an attorney under section 327(a), but the application was denied because the attorney had a conflict of interest. *Id.* at 404. The debtor then filed an application to employ the attorney under section 327(e) to perform certain bankruptcy functions related to the attorney's prepetition work for the debtor. *Id.* The application under section 327(e) was approved by the bankruptcy court and the U.S. Trustee for Region 3 appealed. *Id.* The U.S. District Court for the District of Delaware affirmed the bankruptcy court's ruling.[13] *Id.* at 407. Other courts have also approved the retention of an attorney for a limited purpose where retention as general bankruptcy counsel would not be appropriate. *See, e.g., In re Star Ready Mix, Inc.*, Nos. 07-13753-B-7, TGM-4, 2008 Bankr. LEXIS 3400, at *5 (Bankr. E.D. Cal. Dec. 18, 2008) ("This court has

---

[12] These services would not include any services falling under the Claims Administration and Objections or Plan & Disclosure Statement Categories.

[13] The debtor in *In re Woodworkers Warehouse, Inc*. sought to retain the attorney to perform functions including to perform functions including (1) obtaining court approval for the use of cash collateral, (2) liquidating the Debtor's assets through a "going out of business sale" and disposing of related executory contracts, and (3) preparing and negotiating a key employee retention program and providing payment to critical personnel of the Debtor. 323 B.R. at 404. The general bankruptcy counsel's role was to conduct the basics of the chapter 11 case "including advising the Debtor with respect to its duties and powers; formulating, negotiating, finalizing and seeking confirmation of a plan of reorganization; reviewing and objecting to claims; and if appropriate, pursuing recovery of preferences and fraudulent conveyances, and providing for asset distribution to creditors." *Id.*

already denied the Trustee's application to employ Klein as general counsel based on Klein's prior and concurrent representation of a creditor with interests adverse to the bankruptcy estate and that ruling is now final. That ruling, however, did not foreclose the possibility of Klein's employment under § 327(e).").

> ii. *The Requested Administrative Expense Claim Meets the Standards for Compensation and Reimbursement of Expenses under Bankruptcy Code § 330*

31.     Subject to employment for the services S&L provided through September 20, 2022, the Requested Administrative Expense Claim is compensable under Bankruptcy Code § 330.  The compensation awarded must be reasonable for services that were actually provided and necessary for administration of the bankruptcy estate or to achieve a reasonably likely benefit to the estate. *See* 11 U.S.C. § 330(a); *In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015). Reimbursement must be for actual and necessary expenses. *See* 11 U.S.C. § 330(a)(1)(B). Section 330(a)(3) indicates that courts should take into account all relevant factors in determining the amount of reasonable compensation and lists six (6) non-exclusive factors.

32.     The Fifth Circuit has instructed that additional factors apply with respect to attorneys. In *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977), cert. denied, 431 U.S. 904 (1977), the Fifth Circuit adopted twelve factors to apply to the determination of awards of attorneys' fees in bankruptcy cases: (i) time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the professional due to acceptance of the case; (v) the customary fee; (vi) whether the fee is contingent or fixed; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *In re First*

*Colonial*, 544 F.2d at 1298-99.  These factors were borrowed from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), a non-bankruptcy case, and are commonly referred to as the "*Johnson* factors."

33.     The original *Johnson* factors, as embraced by *First Colonial*, remain applicable to the determination of reasonableness of fees awarded under the Bankruptcy Code.  *In re ASARCO LLC*, No. 05-21207, 2011 WL 2975691, at *14 (Bankr. S.D. Tex. July 20, 2011). The principal change enacted through Bankruptcy Code § 330 is that compensation for estate professionals should be commensurate with fees awarded for comparable services in non-bankruptcy cases rather than strictly limited. *See In re Woerner*, 783 F.3d at 274.

34.     As reflected in Exhibit A hereto, the compensation S&L seeks in the Requested Administrative Expense Claim is on account of the actual and necessary services rendered and the reimbursement sought is on account of actual expenses incurred. Analysis of the factors in *First Colonial* and *Johnson* supports the reasonableness of the fees and expenses requested:

    a.    Time and labor required. The professional services rendered by S&L on behalf of the Debtor required a high degree of professional competence and expertise. Exhibit A to this Motion contains copies of S&L's time entries for services provided to the Debtor, as debtor in possession, in this chapter 11 case through September 20, 2022, and sets forth in detail all the time for which compensation is sought, as well as the specific actions or matters addressed by each of the professionals.

    b.    Novelty and difficulty of legal problems involved. This *Johnson* factor examines the degree of novelty and difficulty of the issues encountered by S&L in representing the Debtor.  S&L faced several difficult and complex legal issues, including:

- Devising mechanisms and strategy to enable the Sandy Hook Litigation to continue without interrupting the Debtor's operations in order to prevent diminution of the Debtor's bankruptcy estate or expensive litigation while presenting credible opposition to allow negotiations with the Connecticut Plaintiffs;

18

- Advising the Debtor on complex issues regarding the Sandy Hook Litigation, including whether the claims are personal injury tort claims under 28 U.S.C. § 157(d);

- Advising the Debtor with respect to the Tort Committee Motion and the uncertainty of issues surrounding subchapter v of chapter 11;

- Coordinating with the CRO data from the Debtor based on incomplete books and records to distill information necessary to complete the IDI, Schedules and SOFA; and

- Addressing the numerous emergencies arising related to the Debtor's daily business operations, fulfillment of orders, procurement of new products, management of inventory, and analyzing with the CRO financial records and projections to determine viable business plans in the context of the chapter 11 case.

c.  <u>The skill requisite to perform the legal services properly</u>.  The services provided by S&L required a high level of skill, particularly because of the compressed time periods often involved.

d.  <u>Preclusion of other employment due to the acceptance of this case</u>. S&L was largely precluded from seeking other employment while representing the Debtor in this chapter 11 case. There were thirty-six business days between the Petition Date and September 20, 2022. S&L provided 523.1 hours of billable services to the Debtor.[14] This amounts to 14.5 hours a day or 7.25 hours per business day per attorney at S&L. Additionally, because of the frequent emergencies, S&L had to maintain capacity.

e.  <u>Customary fee</u>.  S&L's hourly billing rates charged in this matter are the rates that S&L regularly charges its hourly non-bankruptcy clients. In its prepetition practice with the Debtor, S&L applied a 10% discount for its role as co-counsel. The reduction reflected in the Requested Administrative Expense Claim reflects a 16.1% discount ($62,475.00) related to services falling under the Fee/Employment Objections category.

---

[14] The 523.1 hours of services includes time spent on the Fee/Employment Objections category. S&L has voluntarily reduced the amount of the Requested Administrative Expense Claim by $62,475.00—the amount reflected by the services under that category—based on discussions with the U.S. Trustee. However, these services were reasonably likely to benefit the estate by avoiding disruption to administration of this chapter 11 case when performed.

f.  Whether the fee is fixed or contingent. S&L charges customary hourly rates, as adjusted annually, for the time expended by its attorneys and paraprofessionals in representing the Trustee.  S&L's fee is not outcome dependent.

g.  The amount of time involved and the results obtained. S&L provided 523.1 hours of billable services to the Debtor. S&L's actions in this case have allowed the Debtor, among other things, to (a) litigate to verdict 16 of the 19 claims of the Sandy Hook Litigation under negotiated terms that minimized interruptions to the Debtor's operations and revenue generation and avoided the expense to the estate of retaining new state court counsel, (b) continue fulfilling orders and generating revenue, (c) continue in the case so that a mediation could be set to resolve the numerous disputes; (d) avoid having to pay fees related to the removal of the Connecticut Litigation based on the misunderstanding of the Connecticut Superior Court with its bifurcation; and (e) provide discovery documents to the Plaintiffs, including documents that the Connecticut Plaintiffs assert were not provided in the Connecticut Litigation.

h.  The experience, reputation, and ability of the professionals who performed virtually all of the services in the case.  Mr. Lee has approximately 38 years of experience as an attorney focusing his practice on bankruptcy matters and Mr. Shannon has approximately 9 years of experience as judicial law clerk and attorney focusing his practice on bankruptcy matters. Both are experienced in all aspects of bankruptcy matters, possesses a high level of expertise, and an excellent reputation in the business and legal communities.

i.  At all times during the Engagement Period, S&L diligently fulfilled its duty as attorney for the Debtor as debtor-in-possession. All services rendered by S&L were necessary, proper, and beneficial to the chapter 11 case. Services performed by S&L were done in a professional, skilled, and expeditious manner, requiring substantially less time than would have been required by counsel with less experience in bankruptcy matters.

j.  The undesirability of the case. Representation of the Debtor in this chapter 11 case was undesirable. The Debtor's principal is a controversial figure and the subject of public ire. Further, given the contentious nature of the Sandy Hook Litigation and the underlying claims, even matters that should be easily agreed are fiercely contested.  On information and belief, the Debtor initially attempted to secure replacement co-counsel without success.

k.  Awards in similar cases. The compensation requested in this case is comparable to, if not less than, the compensation allowed in other cases similar in size and complexity to this case.

l.      Disbursements.  S&L disbursed at least the sum of $5,019.60 for necessary expenses incurred in the rendition of professional services or on behalf of the Debtor.[15]  S&L's policy regarding charging of expenses is set forth in the retention agreement attached to its application to employ. This does not include additional amounts related to PACER searches, legal research, and similar matters, for which S&L is not seeking an administrative expense claim.

35.      S&L submits that the compensation and reimbursement sought in this Motion is for services provided and expenses incurred that were clearly necessary for the administration of the bankruptcy estate, in fact benefited the estate, or were reasonably likely to benefit the estate at the time they were performed. The compensation and reimbursement should therefore be allowed under the standard described by the Fifth Circuit described in *In re Woerner*, 783 F.3d 266 (5th Cir. 2015).

## B.  Administrative Expense under Bankruptcy Code Bankruptcy Code § 503(b)(1)(A) for Costs and Expenses Necessary to Preserve the Estate

### i.  *Ability of Professional to Seek Costs and Expenses under Bankruptcy Code § 503(b)(1)(A)*

36.      *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474 (B.A.P. 9th Cir. 1996), *aff'd* 139 F.3d 1303 (9th Cir. 1998)—summarized above—additionally provides support for a professional seeking limited compensation under Bankruptcy Code § 503(b)(1)(A). According to the 9th Circuit B.A.P., "[c]ourts may allow compensation for professional services under § 503(b)(1)(A) as administrative expenses if the services provided by a disinterested professional were necessary to preserve the estate." *Id.* at 478. The standard for an administrative expense for such services is higher than for compensation under Bankruptcy Code § 330. *See id.* at 479 ("[I]n order for the court to grant compensation under § 503, the services 'must benefit all

---

[15] S&L incurred certain additional out-of-pocket expenses that were not recorded contemporaneously. Rather than attempting to recreate these expenses, S&L has not included such expenses in the Requested Administrative Expense Claim.

the creditors, be necessary for a successful reorganization, and generally arise from operating the estate in the overall interests of the creditors.'").

37.     This is consistent with the Fifth Circuit Court of Appeals' decision in *McBride v. Riley (In re Riley)*, 923 F.3d 433 (5th Cir. 2019). Although *In re Riley* involved a chapter 13 case, the Court of Appeals reasoned that there were two ways that payments owed to a debtor's attorney could be classified as an administrative expense claim: "(1) if the payments are necessary expenses to preserve the estate under § 503(b)(1); or (2) if the payments are compensation or reimbursement under § 503(b)(2) (which links to 11 U.S.C. § 330(a), which, in turn, under § 330(a)(4)(B), permits 'reasonable compensation' for attorneys based on services rendered)."[16] *Id.* at 436.

38.     In analyzing whether particular expenses advanced by the attorney in *In re Riley* fell under the rubric, the Fifth Circuit applied the standard two-prong test of whether an obligation was an "administrative expense." *Id.* at 439. The first prong is that the obligation must arise from a post-petition transaction with the estate, rather than the debtor personally. *Id.* The second prong is that the goods or services received in exchange for the obligation must directly benefit the estate. *Id.* As indicated in the Court of Appeals' ultimate ruling that the relevant expenses could be considered and allowed as part of the attorney's compensation and reimbursement under section 330—but not as section 503(b)(1)(A) administrative expenses—the standard under section 503(b)(1)(A) is stricter. *See id.* at 441. The costs and expenses must maintain or add value to the estate to fall under Bankruptcy Code § 503(b)(1)(A). *Id.* at 440.

---

[16] In a chapter 11 case, section 330(a)(1)—rather than section 330(a)(4)(B)—applies with respect to professional compensation.

ii.     *Certain Amounts of the Requested Administrative Expense Claim Reflect Costs and Expenses Necessary to Preserve the Estate*

39.     A significant portion of the Requested Administrative Expense Claim is for services provided to and expenses incurred on behalf of the Debtor, as debtor-in-possession, that directly preserved the Debtor's bankruptcy estate rather than simply benefit administration of the bankruptcy case. Among other things, these include:

a.  Representing the Debtor at the August 1 Lift Stay Hearing—S&L attorneys provided services to the Debtor in connection with the Debtor's emergency motion to modify the automatic stay to allow the Heslin/Lewis Suit to go forward [ECF No. 2]. This motion was necessary on an emergency basis to prevent plaintiffs Heslin and Lewis from filing a similar motion and the required response to the factual allegations under the relevant Bankruptcy Local Rules. The result was a substantial savings to the Debtor's bankruptcy estate.

b.  Addressing the Debtor's Fulfillment Issues—S&L attorneys provided services to the Debtor related to addressing issues with fulfilment of orders that had already been paid for by the Debtor's customers but not yet shipped by the Debtor. If the Debtor was unable to fulfill the backlogged orders, the Debtor's estate would be subject to credit card "charge-backs" that would either need to be paid by the Debtor post-petition or the Debtor would lose access to credit card processing altogether. These services were necessary to avoid a substantial diminution in the Debtor's estate.

c.  Representing the Debtor in Connection with the Motion to Remand—As described in the Rule 59 Motion and by Mr. Battaglia's statements at the September 20 Hearing, the Debtor removed the Connecticut Litigation based on incorrect information about the actions of the Connecticut Superior Court when it was continuing with the proceedings without severing the Debtor. In the Connecticut Plaintiff's motion to remand, they sought not only remand of the litigation but also fees and expenses, requiring the Debtor to respond to avoid resulting diminution of the Debtor's estate. S&L represented the Debtor in the response, which required travel to Connecticut for a scheduled in-person hearing set on an expedited basis. Although the U.S. Bankruptcy Court for the District of Connecticut ultimately remanded the Connecticut Litigation, it did not award fees and expenses to the Connecticut Plaintiffs as the result of the S&L's services.

d.  Opposing the Emergency Setting of the Tort Committee Motion—S&L provided services to the Debtor in connection with opposing the emergency setting of the Tort Committee Motion. This was necessary to prevent interruption to the Debtor's reorganization efforts and significant expense for a contested matter that ultimately did not need to occur at that time and, if the scheduled mediation is successful, may be avoided altogether. This prevented substantial administrative expense to the

Debtor's bankruptcy estate and benefited the estate by allowing the Debtor to focus on operations matters from which the Debtor generates revenue.

e.  <u>Addressing Motion to Compel in the Connecticut Litigation</u>—S&L attorneys provided services related to providing documents requested in the Connecticut Litigation and that were subject to a motion to compel filed after the Petition Date. These documents were related to "Google Analytics" and a "management agreement" testified to by the Debtor's employees pre-petition but that the Connecticut Plaintiffs asserted had not been produced in the litigation. The services provided by S&L were necessary for the Debtor to comply with its post-petition discovery obligations and to prevent additional sanctions—including potential monetary sanctions—that would have diminished the Debtor's bankruptcy estate. The Connecticut Plaintiffs asserted that certain of the documents ultimately provided through affidavits of the Debtor's employee Blake Roddy and Marc Schwartz as the result of S&L's services had been requested previously but were not been provided by the Debtor prior to the Petition Date.

f.  <u>Enabling the Connecticut Litigation to Continue with Minimal Interruption to the Debtor's Operations or Revenue Generation</u>—S&L provided services to the Debtor that enabled the Connecticut Litigation to continue in a manner that (a) minimized the disruption to the Debtor's operations and ability to generate revenue and (b) avoided expensive litigation on the Connecticut Plaintiff's motion for relief from stay. The services S&L provided were necessary to achieve this outcome that preserved the Debtor's estate by avoiding the interruption and the expense of the litigation.

g.  <u>Various Out-of-Pocket Expenses in Addition to the Above</u>—S&L incurred out-of-pocket expenses related to the service of pleadings filed by the Debtor in this chapter 11 case. These pleadings were filed in the Debtor's role as debtor-in-possession and the service of such pleadings was required by the Debtor in such role. Additionally, S&L incurred out-of-pocket expenses related to the preparation of exhibit binders for the hearings in the Debtor's chapter 11 case. These expenses were necessary to allow the Debtor to proceed in its chapter 11 case and obtain approval of matters critical to preserving the value of the Debtor's bankruptcy estate.

40.  The services provided by S&L professionals directly related to preserving the assets of the Debtor's bankruptcy estate described above that reflect costs of at least $120,547.50. **Exhibit B** hereto details the services provided that meet the higher standard required by Bankruptcy Code § 503(b)(1)(A).

41.  The out-of-pocket expenses incurred by S&L on behalf of the Debtor directly related to preserving the assets of the Debtor's bankruptcy estate reflect expenses of at least

24

$3,049.51. **<u>Exhibit C</u>** hereto details these out-of-pocket expenses incurred that meet the higher stated required by Bankruptcy Code § 503(b)(1)(A).

**C. Application of Retainer for Payment of Filing Fee and Service Costs.**

42.     S&L holds the Retainer in the amount of $50,822.68 in its IOLTA trust account. Under the Debtor's engagement agreement with the Debtor, the Debtor agreed to advance court filing fees. Additionally, the engagement agreement provided that the Debtor would be responsible for all printing, shipping, postage, and related services.

43.     S&L paid the filing fee of $1,738.00 in this chapter 11 case, $860.83 in printing and other costs related to the preparation of exhibits for hearings, and $745.53 in costs related to the service of filings with the Bankruptcy Court. S&L asserts that these are ordinary course expenses of the Debtor. To the extent not otherwise authorized pursuant to this Motion, S&L requests authority to draw on the Retainer that was provided for these expenses pursuant to Bankruptcy Code § 363(c).

<u>CONCLUSION</u>

WHEREFORE, S&L respectfully requests that this Court enter an order substantially in the form of the Proposed Order (a) in the amount of the Requested Administrative Expense Claim or other amount as agreed to by the parties and announced at or prior to any hearing on this Motion or determined by the Court and (b) authorizing S&L to draw the allowed amount of the administrative expense claim allowed against the Retainer. This relief is consistent with the Court's ruling at the September 20 Hearing and does not require disturbing the related order.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 24, 2022

**SHANNON & LEE LLP**

/s/*R. J. Shannon*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served (a) at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and (b) within 24 hours of the filing, on the parties on the attached service list by U.S.P.S. first class mail.

/s/*R. J. Shannon*
R. J. Shannon

## SERVICE LIST

Patrick Magill
Chief Restructuring Officer
Free Speech Systems, LLC
3019 Alvin Devane Blvd., STE 300
Austin, TX 78741

Attn: Ray Battalia
Law Offices of Raymond W. Battaglia
66 Granburg Cir.
San Antonio, TX 78218

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway. Suite 320
Austin, TX 78746

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 7870

Attn: Shelby Jordan Jordan & Ortiz,
P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

John D Malone Attorney at Law
5400 Bosque Blvd., Ste. 650
Waco, TX 76710

Jason Starks
Travis County Attorney's Office
P.O. Box 1748
Austin, TX 78767

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite
1400 Houston, TX 77002

Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548 Austin, TX 78711-254

Richard A. Cochrane
Akin Gump Strauss Hauer & Feld
2300 N. Field Street Suite 1800
Dallas, TX 7520

Stephen A Roberts
Stephen A Roberts, P.C.
1400 Marshall Ln Austin, TX 7870

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

Attn: Elizabeth C. Freeman
Jackson Walker LLP
1401 McKinney St., STE 1900
Houston, TX 77010

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

Attn: Mark Bankson
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterling, Christopher
Mattei
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604