IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | CHAPTER 11 (Subchapter V) |
| | § | |
| DEBTOR. | § | |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO THE MOTIONS OF SHANNON & LEE LLP AND W. MARC SCHWARTZ FOR ORDERS ALLOWING ADMINISTRATIVE EXPENSE CLAIMS [DKT. NOS. 251 AND 252]**

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), hereby submits his omnibus objection (the "Omnibus Objection") to Shannon & Lee LLP's ("S & L"), and W. Marc Schwartz and Schwartz Associates LLC's (collectively referred to as "Schwartz") motions (referred to individually as "S & L Motion" or "Schwartz Motion" and collectively as the "Admin Expense Motions") for orders allowing administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(A) for professional services provided during the period of July 29, 2022, to September 20, 2022. In support of the Omnibus Objection, the U.S. Trustee states the following:

**INTRODUCTION**

1.     By the Admin Expense Motions, S & L and Schwartz (collectively referred to as the "Professionals") are seeking a total of $667,348.75[1] from the Debtor's bankruptcy estate in administrative expenses despite an extensive evidentiary hearing where the Court denied their employment applications based on the Professionals' holding a material adverse interest to that

---

[1] S&L seeks allowance of $320,196.25 and Schwartz seeks allowance of $347,152.50.

1

very estate.[2] The Professionals advance several theories to offer a mechanism for payment of their fees and expenses without an approved employment application, including seeking: (1) an allowance for fees under Section 330; (2) a priority payment under Section 503(b)(1)(A); (3) only as to S&L, a retroactive approval of its employment application under Section 327(e); (4) an approval of ordinary course payments for fees and expenses under Section 363(c); and (5) consent to the payments from all interested parties. But the Professionals' suggested theories for payment of their fees run afoul of Supreme Court precedent in *Lamie v. United States Trustee*, 540 U.S. 526 (2004), violate fundamental principles of statutory construction, and ignore the Bankruptcy Code's plain language and underlying purposes.

- First, an estate professional's employment under Section 327 is a prerequisite to a compensation award under Section 330. The Supreme Court in *Lamie* held that approval of an employment application under Section 327 is *sine qua non* to the professional receiving any compensation under Section 330. 540 U.S. 526, 534 (2004) (stating that a "debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation").

- Second, the Professionals' fees and expenses, in the amount of $667,348.75, do not qualify as administrative expenses under Section 503(b)(1)(A), and may only be awarded, if at all, under Sections 503(b)(2) and 330. But because their employment has been denied, the Professionals do not fall within the statutory scheme set forth in Sections 327 and 330 and therefore, are not entitled to the compensation they seek in the Admin Expense Motions.

- Third, S&L cannot be retroactively retained under Section 327(e) both because the *Debtor* is not seeking to retain it under that section, but also because the services it provided to the Debtor do not fall within that section's limited purview.

---

[2] At the evidentiary hearing on September 20, 2022, the Court stated:

> So [I'm considering] the Fifth Circuit guidance and an eye to the specific facts here and with attention to circumstances, there is evidence showing circumstances and instances that have and may in fact impact future ability to offer impartial and disinterested advice to FSS. And I understand that that has consequences, and I hope everyone hears it in my voice. This is not easy for me to do, but I'm required to make these decisions under [the] law and [the] Bankruptcy Code affords me the discretion to do so. And I'm not even sure this is a discretion issue. I think there's a material adverse interest to the estate.

Tr. September 20, 2022, at 248, 4–14.

- Fourth, only the Debtor may request authority to use property of the estate under Section 363(c), and, in any event, the types of payments requested are not ordinary course.

- Finally, parties' consent cannot override statutory requirements nor a directive from the Supreme Court such as that in *Lamie*.

2. The Court should not bless the Professionals' attempted subversion of the Bankruptcy Code's carefully considered statutory scheme for retention and payment of professionals in their endeavor to recover fees and expenses. Accordingly, the Admin Expense Motions should be denied.

## PROCEDURAL BACKGROUND

3. On July 29, 2022, Free Speech Systems, LLC (the "Debtor") filed a chapter 11 voluntary petition and elected to proceed under Subchapter V of chapter 11.

4. On August 20, 2022, the Debtor filed applications to employ Schwartz as the Debtor's Chief Restructuring Officer and S & L as the Debtor's bankruptcy co-counsel. *See* Dkt. Nos. 83 and 85. The U.S. Trustee filed objections to the applications, and the Sandy Hook Families filed joinders to those objections. *See* Dkt. Nos. 145, 147, 154, and 159.

5. On September 20, 2022, the Court conducted an evidentiary hearing to consider S & L and Schwartz's employment applications. After considering the evidence and arguments presented over the course of about seven hours, the Court denied the applications for the reasons stated on the record. *See* Dkt. Nos. 181 and 182.

6. On October 4, 2022, S & L and Schwartz filed motions for rehearing on the denial of their applications. *See* Dkt. Nos. 206 and 207. On October 11, 2022, the U.S. Trustee filed an omnibus objection to the motions for rehearing. *See* Dkt. No. 223.

7. On October 24, 2022, S & L and Schwartz filed the Admin Expense Motions. *See* Dkt. Nos. 251 and 252. S & L and Schwartz requested combined fees in the total amount of

$667,348.75 for approximately seven weeks of work in the Debtor's Subchapter V bankruptcy case.

8. On October 26, 2022, the Court entered the Fifth Interim Order Authorizing the Debtor's Use of Cash Collateral. *See* Dkt. No. 258. Based on the Debtor's budget attached to the Fifth Interim Cash Collateral Order, the Debtor's average weekly cash flow is $268,320.25 while expenses are $184,679.55. The Debtor's Schedules reported assets and liabilities in the amount of $14,663,434.46 and $54,642,512,48[3], respectively. *See* Dkt. No. 121.

9. Both the motions for rehearing and the Admin Expense Motions were scheduled for hearing on November 16, 2022, but have been continued to a later date.

## ARGUMENT

A. **The Supreme Court's Holding in *Lamie v. United States Trustee* Bars the Professionals from Seeking Fees Under Section 330 Because They Were Not Retained Under Section 327.**

10. By the Admin Expense Motions, the Professionals seek "compensation and reimbursement of expenses under Bankruptcy Code § 330 for services provided prior to September 20, 2022." *See* Schwartz Mot. at 11 and S & L Mot. at 12. Section 330(a)(1)(A) provides in relevant part that the court may award to a trustee, a consumer privacy ombudsman, an examiner, an ombudsman, or a professional person employed under Section 327 – reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney. 11 U.S.C. § 330(a)(1)(A). As the Supreme Court in *Lamie* explained, "the statute authorizes an award of compensation to one of three types of persons: trustees, examiners, and § 327 professional persons," but "a debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation." 540 U.S. 526, 534 (2004).

---

[3] After the filing of this case, jury verdicts in Texas and Connecticut determined additional liabilities in the amount of $49,000,000 and $965,000,000.

4

11. In the present case, although the Professionals filed employment applications pursuant to Section 327, the Court denied the applications because of the Professionals' inability to meet the disinterestedness requirement of Section 327. *See* Dkt. Nos. 181 and 182. The Professionals are thus not within Section 330's "class of persons eligible for compensation." *See Lamie,* 540 U.S. at 534. Any requested compensation pursuant to Section 330 must therefore be denied. As the Supreme Court directed in *Lamie,* "[a]dhering to conventional doctrines of statutory interpretation, we hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327." *Id.* at 538.

### B. The Professionals Do Not Have a Right to Fees and Expenses under Section 503(b)(1)(A) of the Bankruptcy Code.

12. Because the Professionals do not meet the prerequisites for compensation under Section 330, they attempt to circumvent the Bankruptcy Code's statutory framework for retention and payment of fees by requesting orders instead allowing their fees and expenses as administrative claims in the total amount of $667,348.75 pursuant to Section 503(b)(1)(A). *See* Schwartz Mot. ¶¶ 1, 25-28, and S & L Mot. ¶¶ 1, 36-41. But the Professionals cannot meet the standard for an award under that section.

#### a. Section 503(b)(1)(A) Does Not Apply to Professional Fees.

13. Section 503(b) provides a non-exhaustive list of the type of expenses that are entitled to priority status. Section 503(b)(1)(A) is the catchall payment provision of Section 503, permitting payment of "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). As the Fifth Circuit has observed, the purpose of the "administrative priority" in Section 503(b)(1)(A) is to encourage "third parties" to provide the debtor with goods and services necessary for a successful reorganization and to conduct business as usual. *See Nabors*

*Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.*, 931 F.3d 432, 442 (5th Cir. 2019); *see also In re Jartran, Inc.*, 732 F.2d 584, 590 (7th Cir. 1984) (explaining that Section 503 creates a "practical incentive to achieving reorganization for the benefit of all creditors"). Expenses entitled to administrative priority generally include repairs, freight, custodial services, insurance, storage, and rent. *See In re Frazier*, 569 B.R. 361, 367 (Bankr. S.D. Ga. 2017) (citing *Collier on Bankruptcy* 503.06[1] (16th ed. 2015)); *In re Montemayor Trucking Inc.*, 2006 WL 3545459, at *1-2 (Bankr. S.D. Tex. Dec. 8, 2006). By helping to ensure that the debtor can carry on business as usual with third parties during the bankruptcy case, the administrative priority of Section 503(b) enhances the odds of a successful reorganization.

14.  The Bankruptcy Code's approach to retention and compensation of professionals is distinct from the "business as usual" purpose of Section 503(b)(1)(A). Sections 327, 328, and 330 impose requirements that are designed to protect the interests of both the creditors and the debtor. For example, an attorney or other professional person must first apply to the court for approval to represent the bankruptcy estate, a process that includes submission of sworn disclosures enabling the court to satisfy itself that the attorney is a "disinterested person," who is both free from any of the disqualifying factors identified in Section 101(14) and "do[es] not hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a). Further, after the court approves the application and the professional completes his work, the attorney must then apply to the court for compensation under Section 330, which compensation may be denied if, at any time during the employment, the professional was not "disinterested" or held an interest adverse to the bankruptcy estate. *See* 11 U.S.C. § 328(c). An attorney or other professional person that clears these hurdles may be compensated, but only in an amount that the court finds "reasonable" in light of the professional's "actual, necessary services." *See* 11 U.S.C. § 330(a)(1). In determining whether the fees are

6

reasonable, the court will consider several factors, including the time spent on the services, the rates charged, the necessity of the services, whether the services were completed within a reasonable time considering the difficulty, and the compensation charged by comparably skilled practitioners. 11 U.S.C. § 330(a)(3).

15. Section 503(b)(1)(A) and the retention and compensation framework in Sections 327 to 330 are distinct, serve different purposes, and should not be used interchangeably. Multiple Circuit Courts and Bankruptcy Appellate Panels have held that Section 503(b)(1)(A) cannot serve as a basis for awarding fees to professionals where employment was denied under Section 327(a). *See In re Milwaukee Engraving Co.,* 219 F.3d 635, 639 (7th Cir. 2000); *In re Albrecht,* 245 B.R. 666, 671 (B.A.P. 10th Cir. 2000); *Cushman & Wakefield of Conn., Inc. v. Keren Ltd. Partnership (In re Keren Ltd. Partnership)*, 189 F.3d 86, 88 (2d Cir.1999); *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 108-09 (3d Cir. 1988); *Shapiro Buchman L.L.P. v. Gore Bros. (In re Monument Auto Detail, Inc.)*, 226 B.R. 219, 227 (B.A.P. 9th Cir. 1998); *McCutchen, Doyle, Brown & Enersen v. Off. Comm. of Unsecured Creditors (In re Weibel, Inc.)*, 176 B.R. 209, 213 (B.A.P. 9th Cir. 1994).

16. The statutory construction used by these courts recognizes the plain language and structure of the operative Bankruptcy Code provisions. The Bankruptcy Code's plain language specifies that professional's fees are "awarded" by the court, pursuant to a strict set of guidelines and constraints, *see* 11 U.S.C. §§ 327-30. Section 503(b)(1)(A) is not a separate basis for courts to "award" a professional's fees. This omission cannot be characterized as mere oversight because the very next subsection in Section 503(b) specifically authorizes the "allowance" of professional's fees that have been "awarded" pursuant to Section 330(a). *See* 11 U.S.C. §§ 330(a) and 503(b)(2). Applying the cardinal rule of statutory interpretation that "language must be read in context,"

several courts have correctly concluded "the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements." *Howard Hughes Co., L.L.C. v. Comm'r*, 805 F.3d 175, 181 (5th Cir. 2015); *In re Milwaukee Engraving Co.,* 219 F.3d at 636. Thus, Section 503(b)(1)(A) cannot be used as another avenue for professionals that do not otherwise meet the requirements of Section 327, 330, and 503(b)(2) to seek payments from a bankruptcy estate. *See In re HSD Venture*, 178 B.R. 831, 835 (Bankr. S.D. Cal.1995) (court observed that allowing a creditor who could not be employed by the estate to nevertheless provide post-petition services to the estate and have a claim allowed as an administrative expense "would eviscerate §§ 327, 101(14) and the policies of control of employment of professionals and the requirement of their disinterestedness").

17. For example, in *In re Milwaukee Engraving Co.*, the Seventh Circuit considered an almost identical fact pattern to the present case and its holding is instructive. 219 F.3d 635 (7th Cir. 2000). A law firm sought retention as debtor's counsel under Section 327, but the retention was ultimately denied because the firm did not meet the requirement of being disinterested. Nonetheless, the bankruptcy court approved the payment of $15,000 of professional services that the law firm rendered to the debtor under Section 503(b)(1)(A), concluding that "it would be inequitable to deny [the firm's] compensation." *Id*. at 636. The Seventh Circuit reversed the bankruptcy court and held that "it would vitiate the limitations of § 327 if a bankruptcy court could deny an application under that section and order the estate to pay for the legal services anyways." *Id.* at 637. The Seventh Circuit rejected the law firm's argument that it could recover fees under § 503(b)(1)(A), writing, "One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2)." *Id*.

18. In this district, the Court in *In re 1002 Gemini Interests, LLC* applied the holding in *In re Milwaukee Engraving Co.*, and denied an examiner's request for compensation for services that exceeded the investigatory scope of his duties under the Bankruptcy Code and the additional duties assigned to him in the appointment order.[4] 2015 WL 913542, at *15 (Bankr. S.D. Tex. 2015). That examiner[5] requested "compensation based on a substantial contribution theory under Section 503 of the Bankruptcy Code" instead of Section 330, but the Court rejected this argument and concluded that professionals cannot circumvent Section 327 by arguing that they should be paid under Section 503, to wit: "However, the examiner and his professionals were not approved to perform the services related to the disallowed fees. The disallowed fees were for services that were outside the scope of the Order approving their employment." *Id.* at *14, 15.

   b. **The Professionals' Reliance on *Mehdipour* and *Riley* is Misplaced and Unavailing.**

19. The Professionals in the Admin Expense Motions do not attempt to distinguish either *Milwaukee Engraving* or *1002 Gemini Interests*. Instead, they point this Court to other cases that do not stand for the proposition that Section 503(b)(1)(A) can be used to sidestep the specific limitations on retention and compensation of professionals under Sections 327 and 330.

---

[4] By permitting professionals a less restrictive standard to obtain compensation (allowing professionals to be compensated under Section 503(b)(1)(A)), would vitiate the need for compliance with Sections 327 and 330. In the case *In re Sanchez Energy Corp.*, 2021 WL 174364, at *4 (Bankr. S.D. Tex. 2021), the Court denied a request by an indenture trustee for an allowed administrative expense claim for fees under Section 503(b)(1)(A). Citing to the well-settled rule of statutory construction that the specific provisions govern general ones, the Court held that "it is the substantial contribution standard, not the benefit to the estate standard, that determines whether an indenture trustee can be paid on an administrative basis." *Id.* at *4. As noted by the Court, "if compensation is available under the lower standard of § 503(b)(1)(A), no indenture trustee would seek an administrative expense under § 503(b)(3) or (b)(5). Yet those provisions explicitly pertain to indenture trustees." *Id*. Similarly here, if the Court allows the Professionals to obtain an administrative claim for their fees under the more general Section 503(b)(1)(A), other estate professionals will be encouraged to pursue this less restrictive avenue than obtaining approval of their employment under Section 327 and fees under Section 330. *See In re Cutler Mfg. Corp.*, 95 B.R. 230, 231–32 (Bankr. M.D. Fla. 1989) ("Nor does this Court believe that Congress contemplated that individuals who would be ineligible to be employed as professionals under the facts in this case could come back later and seek compensation under § 503 for the same activities which they would be denied compensation under § 327").

[5] Mr. Schwartz was the examiner in the *1002 Gemini Interests* case.

20. The Professionals rely on *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474 (B.A.P. 9th Cir. 1996) and *McBride v. Riley (In re Riley)*, 923 F.3d 433 (5th Cir. 2019) as support for their argument that the Court can allow payment of their professional fees under Section 503(b)(1)(A). *See* Schwartz Mot. ¶¶ 25 and 26, and S & L Mot. ¶¶ 36 and 37. For example, the Professionals state that *Mehdipour* "provides support for a professional seeking limited compensation under Bankruptcy Code § 503(b)(1)(A)." *Id*. at ¶ 36. In support, the Professionals cite that, "[a]ccording to the 9th Circuit B.A.P. '[c]ourts may allow compensation for professional services under § 503(b)(1)(A) as administrative expenses if the services provided by a ***disinterested professional*** were necessary to preserve the estate." *Id*. (emphasis added). But the decision in *Mehdipour* was not intended to allow professionals who do not meet the retention requirements under Section 327 other means to obtain payment of their fees. The Ninth Circuit BAP made that clear in stating: "[c]ompensation under § 503 does not allow the professional to sidestep the requirements of § 327 and 330—the professional must still be disinterested and not hold any adverse interest." *Mehdipour*, 202 B.R. at 479. The Professionals' reliance on *Mehdipour* is misplaced. Their employment applications were denied precisely because the Court found the Professionals had a material adverse interest to the Debtor's estate.[6]

---

[6] Additionally, the Professionals' arguments rely on cases where professionals with conflict of interest issues were nonetheless employed by the estate, and conflict counsel would be used to address the conflict issues. *See* S & L Motion at ¶28 (citing to *In re Relativity Media, LLC*, No. 18-11358 (MEW), 2018 Bankr. LEXIS 2037, (Bankr. S.D.N.Y. July 6, 2018); *Exco Res. v. Milbank*, 2003 U.S. Dist. LEXIS 1442, at *26 (S.D.N.Y. Jan. 28, 2003). This is inapposite to the present case because the Professionals' employment applications have been wholly denied, and they are not authorized to work on anything related to this case. Thus, they are not entitled to any compensation related to the case. Further, the Professionals' reliance on cases allowing some professional fees and disallowing other fees under section 328(c) is misplaced because those professionals were previously retained by the estate under section 327. *See* S & L Motion at ¶28 (citing *In re Granite Partners, L.P.*, 219 B.R. 22, 40-42 (Bankr. S.D.N.Y. 1998); *In re Leslie Fay Cos.*, 175 B.R. 525, 539 (Bankr. S.D.N.Y. 1994)). Once again, the Professionals here have never been retained, and thus Section 328(c) is inapplicable to them.

21. Similarly, the Professionals argue that the Fifth Circuit in *Riley* "reasoned that there were two ways that payments owed to a debtor's attorney could be classified as an administrative expense claim: '(1) if the payments are necessary expenses to preserve the estate under § 503(b)(1), or (2) if the payments are compensation or reimbursement under § 503(b)(2)…'" *See* Schwartz Mot. ¶ 26, and S & L Mot. ¶ 37. Again, the Professionals' reliance on *Riley* is misguided, because the Fifth Circuit in that case did not authorize the payment of professional fees that would otherwise be awarded under Section 330 to be allowed under Section 503(b)(1)(A). Instead, in *Riley*, the Fifth Circuit examined a situation involving a debtor's attorney in a chapter 13 case with a "no-look" fee, which does not require a fee application and is presumptively reasonable under Section 330 and considered whether that attorney can seek reimbursement for expenses such as "advancing the costs of the filing fee, credit counsel fee, and a credit report fee." *In re Riley*, 923 F.3d at 436. The Fifth Circuit held that these expense payments did not meet the criteria of Section 503(b)(1)(A) but concluded that the payment for the expenses could be awarded under Section 330(a)(4)(B) if the bankruptcy court found that the expenses were reasonable. *Id*. at 443. The Fifth Circuit wrote "[t]herefore, we hold that 11 U.S.C. §§ 503(b) and 330 provide bankruptcy courts with the discretion to compensate debtor's counsel for advancing the costs of filing fees, credit counseling fees, and credit report fees if they choose to do so…" *Id*. The Fifth Circuit did not authorize professionals to seek attorney's fees under Section 503(b)(1)(A), rather, it provided limited reimbursements of documented costs to debtor's counsel in a chapter 13 case under Section 330(a)(4)(B). And the holding in *Riley* is not applicable to the present case as neither of the Professionals fall within the scope of Section 330(a)(4)(B) because the Debtor's case is not a chapter 12 or 13 case.

11

## C. The Debtor is Not Seeking Retention of S&L Under Section 327(e) and S&L's Services Do Not Fall Within its Parameters.

22. S&L also seeks retroactive retention under Section 327(e), incorrectly arguing that "it is eligible for employment under Bankruptcy Code § 327(e) for the limited purposes set out as S & L's primary responsibility in the S & L Employment Application." S & L Mot. ¶ 29. But S&L is not the appropriate party to seek retention under Section 327(e) and the Debtor has not sought to retain S&L under that or any section since denial of S&L's employment application. Moreover, S&L's services, which were central to the conduct of the bankruptcy case, would not comply with Section 327(e)'s limited purview.

23. The Bankruptcy Code states that "[t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). Section 1107 places the debtor-in-possession in the position of an estate fiduciary, with the rights and powers of a trustee, and it requires the debtor to perform all duties of a trustee. Thus, the plain language of Section 327(e) provides that the authority to employ a professional is within the sole purview of the debtor, as debtor-in-possession. Under this statutory framework, only the Debtor may seek authority from the Court to employ S & L as special counsel under Section 327(e). The Debtor has not done so here.

24. Moreover, S&L does not fall under the category of professionals that may be employed under Section 327(e).[7] Section 327(e) applies narrowly to attorneys who will provide a

---

[7] While Schwartz has not requested retention under Section 327(e), for the avoidance of doubt, because he is not an attorney, that section is wholly inapplicable to him. In any event, his services for the Debtor were similarly focused on helping the Debtor conduct its bankruptcy case.

12

limited scope of service, specifically "other than to represent the trustee in conducting the case." 11 U.S.C. § 327(e). S & L sought retention as bankruptcy co-counsel for the Debtor, which requires retention under section 327(a), not Section 327(e). Notably, the tasks that S & L describe in the S & L Motion clearly show that the firm was tasked with representing the trustee in conducting the bankruptcy case. *See* S & L Motion, ¶ 34. S & L cannot reframe its retention to one under Section 327(e) now that its employment under Section 327(a) has been denied.

### D. Section 363(c) Can Only be Invoked by a Debtor, and Payment of Professional Fees and Expenses is Not Ordinary Course.

25. The Professionals also improperly invoke Section 363(c) as a basis for payment of their professional fees and/or expenses, stating "To the extent not otherwise authorized pursuant to this Motion, [the Professionals] request[] authority to draw on the Retainer that was provided for these expenses pursuant to Bankruptcy Code § 363(c)." *See* Schwartz Mot. ¶ 29 and S & L Mot. ¶ 43. But only the Debtor may make the determination to use estate property in the ordinary course of business under Section 363(c) without notice and hearing, and in any event, drawing down on a professional retainer is not in the ordinary course of business.

26. The Bankruptcy Code states that "[t]he *trustee* may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c) (emphasis added). As with Section 327(e), this language places the authority to use estate property within the sole purview of the trustee, or, under Section 1107, the debtor, as debtor-in-possession. Thus, only the Debtor may seek authority from the Court to request authority to use property of the estate under Section 363(b) or make the determination that a payment is in its ordinary course of business under Section 363(c), and again, the Debtor has not done so here.

13

27. Section 363(c) generally permits the debtor-in-possession to use estate properties that third parties may have an interest in if the requirements of Section 363(c)(1)-(4) are satisfied. *See Wolters Vill., Ltd. v. Vill. Properties, Ltd. (In re Vill. Properties, Ltd.)*, 723 F.2d 441, 444 (5th Cir. 1984). But such use may only occur if it is in the *ordinary course of business*. A professional's draw on a retainer because its employment application has been denied cannot be in the ordinary course of a Debtor's business, particularly when the professional was primarily tasked with conducting a bankruptcy case rather than a debtor's ordinary course operations.

28. Moreover, Sections 327, 330, and 503(b)(2) of the Bankruptcy Code are the only statutory provisions that specifically govern the payment of professional fees and reimbursement of expenses and are the sole avenue for seeking these payments. Adopting the Professionals' theory as a pathway for payment of professional fees under Section 363(c) would violate statutory construction by rendering the statutory language in those sections meaningless. As the Fifth Circuit has ruled in a different context, "[c]ourts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless…." *Whitaker Constr. Co. v. Benton & Brown, Inc. (In re Whitaker Constr. Co.)*, 411 F.3d 197, 205 (5th Cir. 2005).

### E. The Parties Cannot "Consent" to Unauthorized Compensation.

29. The Professionals state that they are requesting a total amount of $667,348.75 "or other amount as agreed to by the parties and announced at or prior to any hearing on this Motion." *See* Schwartz Mot. ¶ 1 and S & L Mot. ¶ 1. The improper payment of fees to the Professionals under Section 503(b)(1)(A), even if the U.S. Trustee, Subchapter V Trustee, the Debtor, and the Sandy Hook Families agree to it, cannot override the statutory requirements nor the directive from the Supreme Court in *Lamie* discussed herein. As set forth above, the Bankruptcy Code, through

sections 326-331 and 503, regulates both professional compensation and administrative expense payment from the estate in a comprehensive way that parties are not free to rewrite. *See* 11 U.S.C. §§ 326-331, 503; *see also Davis v. Elliot Mgmt. Corp . (In re Lehman Bros. Holdings, Inc.)*, 508 B.R. 283, 294 (S.D.N.Y. 2014) ("The Bankruptcy Code is meant to be a "comprehensive federal scheme . . . to govern" the bankruptcy process. Although flexibility is necessary[,] the federal scheme cannot remain comprehensive if interested parties and bankruptcy courts in each case are free to tweak the law to fit their preferences . . .") (citations omitted).

30.     The Bankruptcy Code's numerous limitations on professional retention and compensation—including a limitation concerning who can be an estate professional—would be undermined if bypassed through consent of parties. A professional could evade its burden to make the detailed showings required under Sections 330 and 503 if payment depended on nothing more than consent from interested parties. *See id.* at 293 (noting that the comprehensive nature of section 503(b) is inconsistent with allowing "backdoor" payments through plan provision). And if restrictions on compensation for unretained or non-disinterested professionals is circumvented by consent, other Bankruptcy Code provisions relating to compensation could similarly be evaded—including prohibitions on compensation for unnecessary or duplicative services, *see* 11 U.S.C. § 330(a)(4); and on fee-splitting, *see* 11 U.S.C. § 504. Even if the U.S. Trustee, all creditors, and other interested parties were to affirmatively consent to the relief sought in the Admin Expense Motions, there would be no basis for this Court to create a consent exception for Professionals that contravenes the Bankruptcy Code.

**CONCLUSION**

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court deny the Admin Expense Motions and grant such other relief as is just and proper.

|  |  |
|---|---|
|  | RESPECTFULLY SUBMITTED:<br>KEVIN M. EPSTEIN<br>UNITED STATES TRUSTEE |
| DATED: 11/14/2022 | */s/ HA M NGUYEN*<br>Ha Nguyen, Trial Attorney<br>CA Bar #305411<br>FED ID NO. 3623593<br>United States Department of Justice<br>Office of the United States Trustee<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>E-mail: Ha.Nguyen@usdoj.gov<br>Cell: 202-590-7962 |