UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| FREE SPEECH SYSTEMS, LLC, | § § | Case No. 22 - 60043 |
| DEBTOR. | § § § | Chapter 11 (Subchapter V) |

**REPLY OF W. MARC SCHWARTZ AND SCHWARTZ ASSOCIATES, LLC TO THE UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO THE MOTIONS OF SHANNON & LEE LLP AND W. MARC SCHWARTZ FOR REHEARING ON THE ISSUE OF DISINTERESTEDNESS**

W. Marc Schwartz and Schwartz Associates, LLC (collectively "Schwartz"") reply to the United States Trustee's Omnibus Objection to the Motions of Shannon & Lee LLP and W. Marc Schwartz for Rehearing on the Issue of Disinterestedness [ECF No. 223] (the "UST Response") as follows:

**PRELIMINARY STATEMENT**

1. The U.S. Trustee objects to Schwartz's Motion Pursuant to Rule 59 of the Federal Rules of Civil Procedure for Rehearing on the Issue of Disinterestedness with Respect to the Debtor's Application to Employ Schwartz [ECF No. 206] (the "Rule 59 Motion") on the grounds that (a) the Rule 59 Motion was not filed by Free Speech Systems, LLC as debtor in possession (the "Debtor"), (b) the Rule 59 Motion does not meet the applicable standard for relief, and (c) the additional evidence that Schwartz seeks to present at the rehearing is cumulative of the evidence presented at the hearing. Schwartz responds to these points below.

2. Giving credit to the UST Response, Schwartz filed a Motion for Order Allowing Administrative Expense Claim and Granting Related Relief [ECF No. 252] (the "Administrative Expense Motion") on October 24, 2022. To the extent that the Administrative Expense Motion is

not prejudiced by the Court's ruling on the Schwartz Employment Application, the Rule 59 Motion will be either moot or so nearly so that it will be voluntarily withdrawn.[1] Schwartz does not seek to require the Debtor to engage Schwartz going forward or to continue to represent the Debtor in this chapter 11 case. Rather, the Rule 59 Motion seeks to establish Schwartz's disinterestedness to resolve any uncertainty about Schwartz's ability to receive compensation for services provided to the Debtor through September 20, 2022.

3. The U.S. Trustee's objection to the Schwartz Employment Application requested that the Court exercise its discretion to fashion an equitable remedy because Schwartz did not supplement the Bankruptcy Rule 2014 disclosures for employment of Schwartz in the IW Cases. The Court indicated at the September 20 Hearing that its ruling should not be interpreted as deciding that Schwartz were prevented from receiving compensation for work done prior to the ruling. (Sept. 20, 2022 Hrg. Tr. 256:14-257:8). The Court's ruling and comments can be understood as granting the requested equitable remedy of denying Schwartz's employment because of the non-disclosure, while leaving open Schwartz's ability to seek compensation through a separate pleading. Absent a ruling to that effect, however, the Court should grant the Rule 59 Motion and allow Schwartz a fair opportunity to present evidence and arguments with respect to Schwartz's predisposition and the circumstances raised by the Court.

## ARGUMENT

**A. Schwartz Has Standing and Statutory Authority to File and Pursue the Rule 59 Motion.**

4. Through the Rule 59 Motion, Schwartz seeks a rehearing on the issue of disinterestedness—and in particular, whether Schwartz had a predisposition under circumstances

---

[1] Reputational harm and loss of fees earned in the future may be sufficient to provide standing. *See KLG Gates LLP v. Brown*, 506 B.R. 177, 190-91 (E.D.N.Y. 2014). However, Schwartz would not pursue a remedy under the Rule 59 Motion if there was no pecuniary interest.

that render such a bias against the estate—in connection with the Debtor's application to employ Schwartz as CRO and Financial Advisor [ECF No. 83] (the "Schwartz Employment Application"). Schwartz has statutory and constitutional standing to seek the relief requested in the Rule 59 Motion.

5. Rule 59(a)(1)(B) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to the above-captioned chapter 11 case by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), provides in relevant part, that "[t]he court may grant a new trial on all or some of the issues—*and to any party*— . . . after a non-jury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." (emphasis added). Neither Federal Rule 59 nor Bankruptcy Rule 9023 limit relief to the original moving party.

6. Title 11 of the United States Code (the "Bankruptcy Code") provides expansive rights to be heard in chapter 11 cases. Bankruptcy Code § 1109(b) provides that any "party in interest . . . may raise and may appear and be heard on any issue in a case under [chapter 11]." A "party in interest" is an entity that has a personal stake in the outcome that can be addressed by a favorable decision. *See In re Cypresswood Land Partners, I*, 409 B.R. 396, 417 (Bankr. S.D. Tex. 2009); *see also In re Am. Appliance*, 272 B.R. 587, 595 (Bankr. D.N.J. 2002) (holding that the test for whether an entity is a "party in interest" is whether it has a sufficient stake in the outcome of the proceeding to require representation).

7. Further, as the Bankruptcy Appellate Panel for the Sixth Circuit held in *Bingham Greenebaum Doll, LLP v. Glenview Health Care Facility, Inc. (In re Glenview Health Care Facility, Inc.)*, 620 B.R. 582 (B.A.P. 6th Cir. 2020), the pecuniary interest of a professional in its fees is sufficient for Article III and appellate standing with respect to a denied application to

employ. *Id.* at 585; *see also KLG Gates LLP v. Brown*, 506 B.R. 177, 190 (E.D.N.Y. 2014) (holding that a disqualified attorney had standing to appeal the disqualification order). Unless the denial of the Schwartz Employment Application does not prejudice Schwartz's ability to seek compensation through the Administrative Expense Motion for the period from the petition date through September 20, 2022, Schwartz has a pecuniary interest sufficient for standing and to be a party in interest that can bring the Rule 59 Motion.[2]

8.  The U.S. Trustee argues that the plain language of Bankruptcy Code § 327 provides that the Debtor is the only party that can seek employment of Schwartz and seek a rehearing of the Schwartz Employment Application. UST Response ¶ 9. But section 327(a) is silent on which party must seek approval of the employment.[3] The real question is the effect of Bankruptcy Rule 2014(a), which provides that "[a]n order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to §327, §1103, or §1114 of the Code shall be made only on application of the trustee or committee."

9.  Applicable authority confirms that professionals may raise and be heard on issues involving their own employment in bankruptcy cases. Addressing a similar argument as that raised in the UST Response, the Sixth Circuit BAP in *In re Glenview Health Care Facility, Inc.* noted that, as a procedural rule, Bankruptcy Rule 2014(a) does not limit or extend jurisdiction. 620 B.R. at 585, n.2. The Bankruptcy Appellate Panel for the Ninth Circuit similarly reasoned in *Mehdipour*

---

[2] Schwartz submits that there is authority supporting the proposition that Schwartz is not precluded or prejudiced in seeking compensation through the Administrative Expense Motion. *See* Administrative Expense Motion ¶¶ 17-21. This is also consistent with the Court's ruling at the September 20 Hearing. (Sept. 20, 2022, Hrg. Tr. 256:14-257:4). If the Administrative Expense Motion is not prejudiced by the Court's ruling at the September 20 Hearing, then Schwartz arguably would not have a pecuniary interest in seeking a rehearing on the Schwartz Employment Application.

[3] Bankruptcy Code § 327(a) provides that the trustee—and debtors in possession pursuant to Bankruptcy Code §§ 1107—"with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons . . . .". However, "[s]ection 327 does not, by its terms, limit standing of a professional to seek employment." *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 479 (B.A.P. 9th Cir. 1996), *aff'd* 139 F.3d 1303 (9th Cir. 1998).

*v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474 (B.A.P. 9th Cir. 1996), *aff'd* 139 F.3d 1303 (9th Cir. 1998), that allowing a professional to seek court approval of its retention was *not* inconsistent with Bankruptcy Code § 327 or Bankruptcy Rule 2014. *Id.* at 479. And various courts have authorized the retroactive employment of professionals in connection with requests for compensation. *E.g.*, *In re McKenzie*, No. 08-16378, 2013 Bankr. LEXIS 2672 (Bankr. E.D. Tenn. July 2, 2013); *In re Little Greek Rest.*, 205 B.R. 484 (Bankr. E.D. La. 1996); *In re Saybrook Mfg. Co.*, 108 B.R. 366 (Bankr. M.D. Ga. 1989); *see also In re Triangle Chems.*, 697 F.2d 1280, 1289 (5th Cir. 1983) (reversing a bankruptcy court's decision denying an application for compensation on the basis that the court had discretion to approve such employment in connection with the application).

10. While the U.S. Trustee might be correct if Schwartz was seeking to require the Debtor to continue to engage Schwartz after the September 20 Hearing, that is not the relief requested through the Rule 59 Motion. Rather, Schwartz seeks to resolve the dispute regarding its ability to receive compensation for the services it provided to the Debtor through September 20, 2022. If the Court's ruling at the September 20 Hearing does not prevent Schwartz from applying for and receiving allowed compensation, then the Rule 59 Motion would be unnecessary.[4]

**B. The Rule 59 Motion Meets the Standard for a Rehearing under Rule 59(a).**

   *i. Surprise from a new theory arising at trial is a valid basis for a rehearing.*

11. The U.S. Trustee argues that the Rule 59 Motion does not meet the relevant standard. Quoting *Trevino v. Caliber Home Loans, Inc. (In re Trevino)*, 564 B.R. 890 (Bankr. S.D. Tex. 2017), the U.S. Trustee contends that "'[t]o be entitled to a new trial or hearing a party must show a manifest error of law, manifest error of fact, or newly discovered evidence." UST Response

---

[4] Schwartz continues to negotiate with the parties to this chapter 11 case to obtain a consensual resolution of both the Rule 59 Motion and the Administrative Expense Motion.

¶ 10. But that is not what *Trevino* says. According to *Trevino*—a decision about newly discovered evidence— "[t]he plain language of Rule 59(a)(2) indicates that a motion under that rule may be brought for many purposes, including seeking a new trial based on newly discovered evidence." *Id.* at 908. The case does not address the other "many purposes" for which a rehearing is appropriate.

12. The language quoted in the U.S. Trustee's objection comes from a parenthetical to a "see also" citation to *Simon v. United States*, 891 F.2d 1154 (5th Cir. 1990). But *Simon* was an appeal of a decision denying a motion under *Rule 59(e)* to alter or amend the judgement—rather than a rule 59(a) motion for rehearing—where the defendant did not raise an affirmative defense at or before trial. *Id.* at 1159. Courts have frequently held that amendment of a judgment under Rule 59(e) requires manifest error. *E.g.*, *Wease v. Ocwen Loan Servicing, L.L.C.*, 852 F. App'x 807, 809 (5th Cir. 2021); *In re Cyr*, 2020 U.S. Dist. LEXIS 255998, at *2 (W.D. Tex. July 16, 2020) (2020 WL 10056295); *Culpepper v. United States Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 76555, at *5 (N.D. Tex. May 31, 2013) (2013 WL 2370550). But Rule 59(e) seeks different relief than a Rule 59(a) motion based on surprise—Rule 59(e) calls into question the correctness of a judgment, rather than whether the movant was on notice of the factual and legal issues that would be the focus of the trial and had a fair opportunity to present its best case. *See Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (Reasoning that "Rule 59(e) 'serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'").

13. Schwartz submits that the Court should apply the standard with respect to surprise under Rule 59(a) described in *Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108 (5th Cir. 1982). According to *Conway*:

> It is well settled that Rule 59 provides a means of relief in cases in which a party has been unfairly made the victim of surprise. . . . The surprise, however, must be "inconsistent with substantial justice" in order to justify a grant of a new trial. . . . The district court is therefore entitled to grant a new trial only if the admission of the surprise testimony actually prejudiced the plaintiffs' case. . . . This Court has limited reversible error from unfair surprise to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify.

*Id.* at 112 (citations omitted). "'[S]urprise during trial, by major variance in theory of recovery or defense, undisclosed until after the trial is underway, is a long-established ground for granting a [Rule 59(a)] motion.'" *Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 410 (M.D. Pa. 2019) (quoting *Sanford v. Crittenden Memorial Hosp.*, 141 F.3d 882, 886 (8th Cir. 1998)).

14. In a contested matter in a bankruptcy proceeding, the relevant question for a rehearing under Rule 59(a) due to surprise is whether the focus of the hearing was evident to the parties prior to the hearing. *See Kingsley Const., Inc. v. DDS Materials, Inc. (In re DDS Materials, Inc.)*, No. 92-2922, 1993 U.S. App. LEXIS 39036, at *7 (5th Cir. Sep. 9, 1993) (holding that that the bankruptcy court did not abuse its discretion because "[t]he bankruptcy court further found that any surprise which may have occurred was not inconsistent with substantial justice, since it was evident that to the parties that the focus of the full hearing would be upon which party breached the contracts.") (citing *Conway*, 687 F.2d at 111). The inquiry is on the factual and legal theories that the moving party should have anticipated would be litigated at the hearing.

15. There was no indication that the September 20 Hearing would be about any predisposition of Schwartz or circumstances that might render such predisposition a bias against the Debtor's bankruptcy estate. All signs were that the focus of the hearing on the Schwartz Employment Application was going to be on the circumstances surrounding Mr. Schwartz not supplementing his Rule 2014 disclosures in the InfoW Cases. The Debtor and the U.S. Trustee

communicated this to the Court at the September 13, 2022, hearing at which the September 20 Hearing was scheduled.[5] (Sept. 13, 2022, Hrg. Tr. 36:1-9). This was the only issue addressed in the parties' briefing to the Court and it was the focus of their presentation to the Court. (Sept. 20, 2022, Hrg. Tr. 210:13-18; ECF Nos. 154 & 166). Schwartz submits that fairness and substantial justice require that Schwartz have the opportunity to prepare and present evidence and argument regarding the issue of its predisposition, irrespective of whether there are manifest errors based on the record at the September 20 Hearing.[6]

---

[5] At the September 13 hearing, Mr. Shannon for the Debtor and Mr. Nguyen for the U.S. Trustee represented to the Court as follows:

> MR. SHANNON: And again, Your Honor, I do believe that the U.S. Trustee's primary objection is about the disclosures in the InfoW case. That's really the crux of the objection and what will need to be investigated, so it's not -- I don't think it goes beyond that.
>
> MR. NGUYEN: That's correct. There was a prior nondisclosure that occurred before you. There's going to be some legal arguments on how you should address that, but that's where we are with the objection.

(Sept. 13, 2022, Hrg. Tr. 36:1-9). The U.S. Trustee also indicated that the discovery would be "very limited in terms of the scope of the employment – the scope of the engagement that occurred between May 24th through May 31st, and Mr. Lee in his declaration, there was about $21,000 of services." (Sept. 13, 2022, Hrg. Tr. 35:8-11).

[6] To the extent that manifest error *is* required for a rehearing based on surprise under Rule 59(a)—rather than applying only to Rule 59(e)—Schwartz submits that there *were* manifest errors of fact in the Court's ruling. A manifest error is one that is plain, indisputable, and disregards the credible evidence and controlling law. *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10-cv-4295, 2012 U.S. Dist. LEXIS 74709, at *7-8 (S.D. Tex. May 27, 2012) (2012 WL 1952265). Among the factual findings appearing to underlie the Court's ruling amounting to manifest error are:

   a) Mr. Lee's Statements at the May 19, 2022, Hearing—The Court referenced in its ruling that Mr. Lee stated that he had to renegotiate the Plan Support Agreement in the IW Cases. (Sept. 20, 2022, Hrg. Tr. 239:14-16). As reflected in the May 19, 2022, hearing transcript, however, Mr. Lee stated that the IW Debtors were going to evaluate "whether these debtors need to proceed with trying to confirm a plan with an amended plan support agreement or whether we are able to handle these creditors, the remaining creditors, outside of bankruptcy." (Debtor's Ex. 22, May 19, 2022, Hrg. Tr. 8:16-21). Mr. Lee also represented that he "hope[d] to do that very quickly." (May 19, 2022, Hrg. Tr. 8:23-24). The evidence at the September 20 Hearing was that the evaluation occurred and the decision to agree to dismiss the IW Cases in light of the costs of continuing those cases was made by May 23, 2022. (Debtor's Exs. 24 & 25).

   b) Omnibus Response to MTDs in IW Cases—The Court referenced the Debtors' Omnibus Response to Motions to Dismiss (U.S. Trustee Ex. 7) (the "IW MTD Response") in its ruling and indicated that the statements in the IW MTD Response that there remained a bankruptcy purpose were inconsistent with the representations that only ministerial work remained in the IW Cases on May 24, 2022. (Sept. 20, 2022, Hrg. Tr. 243:3-9). This disregards the evidence that the reason for IW Debtors decision to agree to the dismissal was the cost of litigating with the U.S. Trustee's motion to dismiss the IW Cases, as indicated in the IW MTD Response (IW MTD Response ¶ 6) and confirmed by the testimony of Mr. Lee (Sept. 20, 2022, Hrg. Tr. 80:10-25, 88:12-23, 89:2-18, 90:15-25, & 91:2-3) and Mr. Schwartz (Sept. 20, 2022, Hrg. Tr. 163:7-25). The evidence was that the IW MTD Response required discovery and that the U.S. Trustee argued that estate

> ii. *Issues of control, independence, and loyalty were not raised in connection with the Debtor's application to employ Schwartz prior to the September 20 Hearing.*

16. The U.S. Trustee also argues that "questions of control, independence, and loyalty were raised at prior hearings, in pleadings filed by creditors, and even acknowledged by Mr. Schwartz in his declaration, stating: 'Concerns were expressed at the inception of the InfoW Debtors' bankruptcy cases whether I would be serving Alex Jones or the creditors of InfoW Debtors.'" UST Response ¶ 15 (footnotes omitted). The U.S. Trustee referenced the Court's questions about when Mr. Schwartz was retained by the Debtor and comments after the Plaintiff's

---

    funds could be better used to address claims outside of bankruptcy. (Debtor's Ex. 18). The IW Debtors, through Mr. Lee and Mr. Schwartz, ultimately agreed to dismiss the IW Cases to avoid this cost.

c) <u>AmEx Charges</u>—The Court referenced in its ruling including the payment of AmEx charges in the Debtor's first proposed cash collateral budget, indicating that such charges "consisted primarily of personal charges not related to the business." (Sept. 20, 2022, Hrg. Tr. 247:21-24). The transcript of the August 3, 2022, hearing at which such charges were discussed was introduced into evidence by the U.S. Trustee. (U.S. Trustee's Ex. 15). Mr. Schwartz's testimony was that business expenses of the Debtor were paid through the AmEx card and that the amounts averaged approximately $300,000 per month. (Aug. 3, 2022, Hrg. Tr. 168:1-15). Although Mr. Schwartz testified that Alex Jones had in the past paid certain personal expenses that were recorded as owner draws and that the largest number of line items posted to the draw account was for Alex Jones's housekeeper (Aug. 3, 2022, Hrg. Tr. 168:20-25), there was *no evidence* that the AmEx obligation the Debtor proposed to pay in the first interim cash collateral order reflected primarily personal charges of Alex Jones. Further, the evidence was that the AmEx charges going forward would only be for business expenses. (Aug. 3, 2022, Hrg. Tr. 169:1-8, 187:19-22). Mr. Schwartz also indicated in his August 3, 2022, testimony that the Debtor would "probably going to have to just let American Express shave the wind and see what we can do." (Aug. 3, 2022, Hrg. Tr. 168:1-3). This does not indicate any predisposition of Schwartz.

d) <u>Proposed Third Cash Collateral Order</u>—The Court referenced the Debtor's proposed Third Cash Collateral Order [ECF No. 148] that provided $80,000 in travel expenses related to Alex Jones attending the trial in the Connecticut Litigation and that the Court's attention was not directed to that proposed expense. (Sept. 20, 2022, Hrg. Tr. 244:2-12). If relevant to the Court's decision with respect to the Schwartz Employment Application, this disregarded the evidence. Mr. Battaglia filed and presented the proposed Third Cash Collateral Order to the Court. (Sept. 13, 2022, Hrg. Tr. 7:7-14:8; Sept. 20, 2022, Hrg. Tr. 13:4-14). Further, the evidence was that the proposed budget was communicated, negotiated, and agreed among the parties. (Sept. 13, 2022, Hrg. Tr. 5:24-6:2, 7:16-22). There was no failure of disclosure by Schwartz or indication of a predisposition.

e) <u>Relationship with PQPR</u>—The Court indicated that it had issues with the relationship with the Debtor and PQPR with their professionals having engaged extensively pre-petition. (Sept. 20, 2022, Hrg. Tr. 246:12-14). But the evidence at the September 20 Hearing was that matters with PQPR were hardly negotiated and at times contentious. (Sept. 20, 2022, Hrg. Tr. 65:7-16).

f) <u>Post-Petition Analysis of PQPR's Asserted Claim</u>—The Court stated in its ruling that there was no evidence that the Debtor or its professionals analyzed the PQPR claim extensively post-petition and that the estate had not brought claims against PQPR. (Sept. 20, 2022, Hrg. Tr. 246:14-15). This disregarded the evidence that the Debtor scheduled PQPR's asserted claim as disputed (U.S. Trustee's Ex. 1 at p.15) and took the position that there was a basis for the avoidance of PQPR's asserted claim. [ECF No. 113 at n.4].

oral motion for appointment of a tort claimant's committee, allegations about the IW Cases in the Plaintiff's motion to appoint a tort claimant's committee and remove the Debtor as debtor-in-possession about the IW Cases, and Mr. Schwartz's declaration regarding the IW Cases.

17. None of these issues were raised by the U.S. Trustee or the Plaintiffs in opposition to the Schwartz Employment Application. That made sense perfect sense—Bankruptcy Code § 327(a) is concerned with whether the professional has a *present* interest adverse to the estate or *concurrently* represents a party with such adverse interest. *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999); *In re Muma Servs., Inc.*, 286 B.R. 583, 590 (Bankr. D. Del. 2002); *Greene v. InforMD, LLC*, No. 17-1779-SDD-EWD, 2018 U.S. Dist. LEXIS 124062, at *8 (M.D. La. July 25, 2018) (2018 WL 3579470). The inquiry under section 327(a) is whether Schwartz had a "meaningful incentive" to act contrary to the best interests of the estate. *In re Quality Bev. Co.*, 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995). Schwartz did not have reason to believe that the September 20 Hearing was on the allegations raised in the tort claimants committee motion or questions about Mr. Schwartz's independence in the IW Cases instead of the issues presented in the U.S. Trustee's objection to the Schwartz Employment Application.[7]

18. The U.S. Trustee also asserts the Court clearly signaled its concerns during the Debtor's opening statement at the September 20, 2022, hearing. However, the crux of the Court's question was whether there was a "throughline" between the non-disclosure in the InfoW Cases and the Debtor's chapter 11 case. The evidence and argument at the September 20 Hearing was focused on the issue of why Mr. Schwartz did not supplement his disclosures in the IW Cases after the May 24 meeting with the Debtor. The evidence prepared and introduced at the September 20

---

[7] The U.S. Trustee's objection to the Schwartz Employment Application raised only a single issue—what action should the court take as the result of Mr. Schwartz not supplementing the Rule 2014 verified statement for the employment of Schwartz in the IW Cases. This was confirmed by the U.S. Trustee at the September 13, 2022, hearing.

Hearing was that the reason Mr. Schwartz did not supplement his disclosures was because the IW Debtors had decided to agree with the U.S. Trustee's demanded dismissal of their cases and were no longer seeking to employ Schwartz under section 327(a).[8]

19. Further, the Court identified the issue being Mr. Schwartz's relationship with Alex Jones and PQPR. (Sept. 20, 2022, Hrg. Tr. 27:21-28:1). That Schwartz may have had a material adverse interest arising from some predisposition was *not* raised prior to the close of evidence. The issue came up the first time in the Court's questions after the Debtor had finished its closing presentation. (Sept. 20, 2022, Hrg. Tr. 210:13-211:18). The evidence in the record pointed to was that the Debtor refused Alex Jones's request to seek an extension of the automatic stay (Sept. 20, 2022, Hrg. Tr. 63:3-9), that the IW Debtors represented had considered the appropriate factors in agreeing to dismiss their cases (Sept. 20, 2022, Hrg. Tr. 87:16-91:3; Debtor's Ex. 24), and that the IW Debtors focused on the benefit to their estates when obtaining dismissal with prejudice of the Sandy Hook Litigation claims against them rather than the effect of any related party.[9] (Sept. 20, 2022, Hrg. Tr. 83:10-84:3). The reason other evidence on this point was not introduced—including the evidence that Schwartz seeks to submit at a rehearing—was because the issue of a potential predisposition causing bias to the Debtor's estate was not raised prior to the September 20 Hearing so that it could be prepared and introduced.

---

[8] As the U.S. Trustee argued in the objection to the Schwartz Employment Application, "Rule 2014 has one primary purpose—to facilitate strict compliance with section 327." [ECF No. 154 at ¶ 154]. Evidence of whether Mr. Schwartz's supplemental disclosure was necessary, his reasoning for believing supplemental disclosure was not necessary, and the appropriate action of the Court in the Debtor's chapter 11 case appeared to be the only factual issues for the September 20 Hearing beforehand.

[9] Schwartz submits that there was no competent evidence that Schwartz had a predisposition that created a bias against the estate. *See supra* note 7. However, at a rehearing, the U.S. Trustee, the Sandy Hook Plaintiffs, and the Subchapter V Trustee would also be able to present evidence on the issue.

   *iii. Schwartz did not have the ability to address the issues on which the Court's ruling appears to rely.*

  20. Schwartz did not have a fair opportunity to address the issues identified by the Court in its ruling that went beyond the limited basis of the U.S. Trustee's objection or any relationship Schwartz has with Alex Jones or PQPR. These included (a) the proposed Third Amended Cash Collateral Order providing for payment Alex Jones's travel expenses and security during the Connecticut Sandy Hook trial (Sept. 20, 2022, Hrg. Tr. 244:5-12); (b) the Debtor's initial proposed payment of all legal fees for Connecticut state court counsel (Sept. 20, 2022, Hrg. Tr. 244:21-25); (c) Alex Jones's asserted indemnity (Sept. 20, 2022, Hrg. Tr. 247:14-16), (d) the requested authority to pay the AmEx obligation in the first proposed Cash Collateral Order (Sept. 20, 2022, Hrg. Tr. 247:21-24); and (e) post-petition analysis of PQPR's asserted secured claim and the estate's assertion of a claim against PQPR (Sept. 20, 2022, Hrg. Tr. 246:14-16). The issues referenced by the Court go beyond the limited basis of U.S. Trustee's objection to the Schwartz Employment Application or any relationship Schwartz has with Alex Jones or PQPR.

  21. Even if those issues had been raised prior to the close of evidence, Schwartz did not have the opportunity to gather and present evidence on the issues. The documentary evidence reflected and referenced in the Rule 59 Motion had to be gathered, prepared, and submitted to the Court prior to the hearing. But these issues were not brought up until after the September 20 Hearing had begun and there was no reason for Schwartz to believe that the evidence would be relevant to the matters litigated at the September 20 Hearing.[10] There was no practicable way for

---

[10] Schwartz contends that there was no basis prior to the September 20 Hearing to suspect that evidence of the following—that Schwartz anticipates that it would submit at a rehearing—would be relevant to the issues litigated: (a) the prepetition negotiations with PQPR, representations by the Debtor through Schwartz that it would need to pursue an immediate avoidance action against PQPR absent a superior negotiated solution, or the reasoning that solution that was negotiated was superior; (b) Schwartz's representation of the Debtor in connection with scheduling PQPR's claim as disputed; (c) Schwartz's initial response to Alex Jones' request that the Debtor seek to stay enforcement of the Remand Order and extend the automatic stay to Alex Jones; (d) Schwartz's questioning of Alex

Schwartz to provide this evidence of Schwartz's predisposition at the September 20 Hearing without the issues being raised beforehand.

**C. The Evidence that Schwartz Seeks to Present at the Rehearing Is Appropriate for a Rule 59(a) Motion Based on Surprise.**

22. The U.S. Trustee argues that the additional evidence that Schwartz seeks to introduce at a rehearing is cumulative of the evidence already introduced at the September 20 Hearing. UST Response ¶ 18. The UST Response points to evidence presented at the September 20 Hearing that the Debtor, represented by Schwartz, took contrary positions to Alex Jones and PQPR and engaged in arm's-length negotiations with such parties that were at times contentious. UST Response ¶ 19.

23. The additional evidence that Schwartz seeks to present is not merely cumulative. "Cumulative evidence" is evidence that only corroborates, strengthens, or confirms other evidence. *See Chang v. City of Albany*, 150 F.R.D. 456, 461 (N.D.N.Y. 1993). The thrust of the additional evidence Schwartz seeks to present at a rehearing addresses a different issue than what was introduced at the September 20 Hearing. It seeks to show that Schwartz did not have a predisposition that created a bias adverse to the Debtor's estate, whereas the evidence submitted at the September 20 Hearing addressed the existence of a relationship between Mr. Schwartz and Alex Jones or PQPR preventing Schwartz from representing the Debtor in taking opposing positions to those parties. The additional evidence described in the Rule 59 Motion focuses on the initial reactions of Schwartz, which is directly relevant to whether Schwartz had a predisposition adverse to the Debtor's bankruptcy estate.

---

Jones' asserted indemnity claim; (e) the negotiations and analysis behind the Debtor's agreement to the Connecticut Lift Stay Motion and division of costs for Connecticut state court counsel, including the material risk that Alex Jones would cease supporting the Debtor. While this evidence would have addressed the issues raised on the Court's ruling, it was not relevant to any objection to, or issue raised with, the Schwartz Employment Application prior to the September 20 Hearing.

24. Moreover, while newly discovered evidence that *is* merely cumulative does not provide a basis for altering or amending judgment under Rule 59(e), it is not clear that presenting cumulative evidence is inappropriate in a rehearing based on surprise. The rationale behind allowing rehearing under Rule 59(a) on the basis of surprise is that a major variance in theory that is not disclosed until after the trial is underway deprives litigants of a fair hearing that is consistent with substantial justice. *See Twigg v. Norton Co.*, 894 F.2d 672, 675 (4th Cir. 1990) ("[S]urprise does not warrant a new trial unless it deprives the party of a fair hearing."); *Knowles v. Mut. Life Ins. Co.*, 788 F.2d 1038, 1040 (4th Cir. 1986) (affirming trial court decision to grant new trial based on surprise where new defense asserted at trial and plaintiff did not have a reasonable opportunity to prepare to address that defense prior to the hearing). Where there is a prejudicial surprise, the litigant is not able to prepare the evidence and arguments that would otherwise be available for the litigant to present its best case.

## **CONCLUSION**

25. The Rule 59 Motion should be granted unless the Court's ruling on the Schwartz Employment Application does not prejudice the Administrative Expense Motion. Schwartz has the requisite authority to bring the Rule 59 Motion and the relevant facts meet the standard for a rehearing based under Rule 59(a) for surprise. Through the Rule 59 Motion, Schwartz seeks to present evidence and arguments that Schwartz is disinterested and does not have any predisposition limiting or interfering with its ability to advise or represent the Debtor on positions adverse to Alex Jones or PQPR. The Debtor and Schwartz did not have a fair and full opportunity to present evidence and arguments on this point at the September 20 Hearing because the issue was not raised until after the hearing had begun.

26.     Schwartz does not seek to require the Debtor to engage Schwartz or for authority to continue representing the Debtor in this chapter 11 case. The point of the Rule 59 Motion is to provide Schwartz with a fair opportunity to establish Schwartz's disinterestedness and remove the uncertainty surrounding Schwartz's ability to recover compensation for valuable services provided to the Debtor through the September 20, 2022 Hearing.

Dated: November 15, 2022

Respectfully submitted,

KANE RUSSELL COLEMAN & LOGAN PC

By:   */s/ Michael P. Ridulfo*
      Michael P. Ridulfo
      State Bar No. 16902020
      Federal Bar No. 27086
      5151 San Felipe, Suite 800
      Houston, Texas 77056
      (713) 425-7400
      (713) 425-7700 (fax)
      E-mail: mridulfo@krcl.com
      Attorney for W. Marc Schwartz and Schwartz Associates, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2022, a true and correct copy of the foregoing document was served by the Court's CM/ECF system on all parties registered to receive such service on the date of filing.

*/s/ Michael P. Ridulfo*
Michael P. Ridulfo

9709124 v1 (72053.00005.000)