**Financial Services Agreement**

This Financial Services Agreement ("The Agreement") as of October 19, 2022, is between _____ ("Servicer or Us") of Houston, Texas, and Free Speech Systems LLC ("Client or You") of Austin, Texas. Individually, Servicer and Client shall be referred to as a "Party'' and collectively as the "Parties".  For good and valuable consideration. The receipt and sufficiency of which are hereby acknowledged. Servicer will provide Credit Card Processing and other Financial Services to Client as prescribed by this Agreement

**Client Representation, Warranties, & Authorizations**

By executing this Agreement, Client and individuals signing on behalf of Client hereby affirmatively state that they; (i) have the requisite power and authority to complete, execute, and submit this Agreement and to make and provide the acknowledgements, authorizations, and agreements set forth herein (ii) authorize Servicer to investigate the credit of the Client and each person signing on behalf of Client, (iii) agree to the fee schedule set forth herein.

**Merchant & Processing Fees**

For Credit Card Processing and other Financial Services, Client will pay to Servicer the following: (1.) All normal Credit Card Processing fees incurred by Servicer related to the processing of Client's credit card charges which is currently 4.5%. 2. All other fees charged by Credit Card Processor. 3. A fixed fee of 1.5 percent of the total dollar amount of Credit Card charges processed by Servicer on behalf of Client. 4. Additional services may be billed as agreed by both Parties. Servicer shall manage all credit card transactions on behalf of Client, and on a daily basis Servicer shall pay from settlements by deducting from daily credit card collections the merchant account fees as charged by the credit card processor (4.5% currently) and Servicer's service fee of 1.5%, and the remainder of the daily collections will be remitted to Client one day in arrears. As long as this Agreement remains in place, BankCard USA shall continue as the credit card processor unless and until the Parties agree otherwise in writing.

**Term**

This Agreement will be in effect for one year (the "Initial Term") commencing on the date of execution of this Agreement.  At the expiration of the Initial Term, this Agreement shall continue from year to year under its then existing conditions unless and until a party hereto gives the other no less than 120 days written notice of termination prior to expiration of the Initial Term or of the one year extension then in effect.

**Early Termination**

In the event that Client wishes to terminate this Agreement prior to termination:( 1.) Client must first provide 60 advanced written notice of intent to terminate and then (2.) Pay all charges that have been charged through the date this Agreement terminates.

**Mutual Non-Disparagement**

Both parties and their affiliates shall use their best efforts to cause their respective executive officers, directors, and employees lo refrain from making or publishing any statement critical of either Party, or its respective officers, directors, and employees.

**Mutual Confidentiality**

Each Party acknowledges that a material term of this Agreement is to keep all confidential information belonging to the other Party absolutely confidential and protect its release from the public. Each Party agrees not to divulge, reveal, report or use, for any purpose, any confidential information which the other Party has obtained or which was disclosed to the Party receiving the information by the other Party, except as  information is required by public disclosure rules of the United States of America, as required to be disclosed in a Court proceeding, including, but not limited to, in bankruptcy case no 22-60043 filed by Free Speech Systems, LLC pending In the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or in providing information to relevant financial or banking institutions as may be necessary for Servicer to provide such as in Processing and other financial information necessary for Merchant services. The obligation to protect the confidentiality of the other Party's confidential information will survive the termination of this Agreement and will continue for a period of 4 years from the date of such termination.

**Successors & Assigned**

This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, legal representatives, successors, and assigns. This Agreement may not be assigned without the consent of all Parties hereto.

**Choice of Law and Venue**

This agreement shall be governed by and construed with the laws of the state of Texas.

**Complete Understanding of the Parties and Shall Not Be Modified**

This agreement contains the entire understanding between the Parties relating to the subject matter hereof and all prior agreements relative hereto which are not contained herein are terminated.

**Amendments**

This agreement may only be amended in a written document signed by all Parties hereto.

Executed in Austin, Texas effective the day first written above.

**Services Understanding**

Servicer and Client agree that Servicer will provide the following services: 1. Process Credit Card charges for merchandise sales and other income. 2. We may debit your bank account from time to time for amounts owed to us under the Agreement. 3. If you dispute any charge or funding, you must notify us within 60 days of the date of the statement where the charge or funding appears for Card Processing. 4. We have assumed certain risks by agreeing to provide you with Card processing or check services. Accordingly, we may take certain additional actions to mitigate our risk including but not limited to termination of the Agreement, and/or hold monies otherwise payable to you. 5. By executing this Agreement You authorize us and our Affiliates to obtain financial and credit information regarding your business and the signers and guarantors of the Agreement until all your obligations to us and our Affiliates are satisfied. 6. Such other services that we may from time to time agree.

**Indemnification & Hold Harmless**

Client hereby indemnifies and holds Servicer harmless for any and all claims arising from any content, business ongoings, public statements, product sales or claims, regulatory actions, or any other actions or claims arising out of Client's activities. Client agrees that Servicer has no liability for any and all ongoings of Client and makes no representations for any ongoings of Client. Further, Client acknowledges that it is wholly responsible for its own practices and operations.

for the term of this Agreement.

_____
                              , Inc.
By: _____
It's: _____

_____
Free Speech Systems, LLC.
By: Patrick Magill
It's: Chief Restructuring Officer