UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| **FREE SPEECH SYSTEMS, LLC,** § | Case No. 22-60043 |
| § | |
| DEBTOR. § | Chapter 11 (Subchapter V) |
| § | |

> **Emergency relief has been requested. Relief is requested not later than November 21, 2022, at 2:00 p.m.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on November 21, 2022, at 2:00 p.m.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "judgelopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "electronic appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "submit" to complete your appearance.**

### DEBTOR'S EMERGENCY MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO ENTER INTO PRODUCT FULFILLMENT AGREEMENT

FREE SPEECH SYSTEMS, LLC. ("Debtor" of "FSS") debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case") and files this Motion (the "Motion") seeking entry of an order, pursuant to sections 105(a), 363, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to enter into a Fulfillment Agreement (the

"Agreement") with _____ ("SAI"), and granting such other and further relief as necessary or appropriate. In further support of this Motion, the Debtor would show the Court as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105, 363, 1107, and 1108 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 6003 and 6004.

## BACKGROUND

4. On July 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued to operate its businesses and manage its affairs as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Debtor is engaged in the business of producing and syndicating Alex Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, which airs via the Genesis Communications Network on over 100 radio stations across the United States and via the internet through websites including Infowars.com.

6. On its Infowars.com[1] website today, FSS makes available for sale to customers assorted dietary supplements. The website also has available books, t-shirts and other products Jones advertises during his radio talk show. The vast majority of FSS revenues comes from sales of dietary supplements.

7. FSS purchases to sell on its website two categories of products: (a) dietary supplements ("Supplements"), and (b) books, DVDs, t-shirts, and other merchandise ("Non-Supplements"). FSS relied

---

[1] FSS licenses the Inforwars.com domain and trademark for InfoWars from InfoW, LLC.

on PQPR to source Supplements as no other vendor would supply the Supplements for Jones to advertise on his shows. PQPR ordered and paid for Supplements, which it marked up, and then sold to FSS. Jones would publicize the Supplements on his show and FSS and/or PQPR fulfilled the orders to ship to its customers.

8.  As to Non-Supplements, FSS purchased the products, sold them, and fulfilled the sale through its own employees from its warehouse in Austin. Depending on whether a Supplement or Non-Supplement was sold, FSS and PQPR split the cost of the sale on an agreed formula.

9.  Pursuant to a forbearance agreement executed between PQPR and FSS on July 12, 2022 the formula for allocation of product sales proceeds was modified to provide that FSS would receive 20% of the proceeds of all sales of products purchased by PQPR (with PQPR receiving 80%) of such proceeds.  In turn, PQPR receives 10% of the proceeds of all sales of products purchased by FSS (with FSS receiving 90%).  This split was negotiated to reimburse the respective parties for setting up supply chains, obtaining required governmental certifications, negotiating with vendors, procuring and paying for product, and overhead.

10.  Since 2018 FSS has had difficulty finding third parties willing and able to fulfill product sales.  In the past, both FSS and PQPR attempted to provide fulfillment services for product sales.  Recently, FSS employed Blue Ascension, LLC ("Blue Ascension ") to take over this function. Blue Ascension charges FSS a flat fee per order regardless of the size of each order.  Under the Blue Ascension agreement, FSS pays $14 per order for shipping and an additional $6 per order for ancillary fulfillment services.

11.  The modified terms with PQPR were intended to allow the Debtor to purchase more product directly and receive a larger share of the profit margin from product sales and the transition to Blue Ascension was intended to extricate the Debtor from the fulfillment business.

12.  The transaction proposed in this Motion is intended to complete the transition of the Debtor's business model to fully outsource its product supply chain and third party logistics through a single provider.

13. The Fulfillment Agreement with SAI (attached as Exhibit "A") provides that SAI will source diet, nutritional, health and wellness products at the direction of FSS from a product list at specified prices set forth therein. Products not identified in the product list may be sourced at prices negotiated between SAI and FSS. Products will be private labeled by SAI as instructed by FSS.

14. SAI will also provide fulfillment services (shipping and handling) of product sales in accordance with FSS' instructions. SAI will also manage all product returns. Fulfillment pricing varies depending upon the size and weight of each order. A copy of the packaging and shipping rates is attached to the Agreement.

15. SAI is not charging the Debtor for its services. SAI is serving as a "white label reseller" White label resellers act as intermediaries having contracted directly with a product supplier and 3PL[2]. The use of a white label reseller is necessary because parties are reluctant to enter into a relationship directly with the Debtor.

16. SAI has no prior relationship with the Debtor and is not an insider or affiliate of the Debtor as defined at 11 USC §§101(2) and (31). The sole shareholder of SAI,            or an entity related to Mr.        has sold product through the Debtor's sales channel in the past but has no current business relationship with the Debtor. The Debtor has identified the following additional relationships between Mr.        and entities currently engaged or to be engaged in business with the Debtor:

   a. Mr.        is the sole shareholder of                                    .
      (            ") which the Debtor seeks to engage as credit card processor in a contemporaneously filed motion. If approved,        will be entitled to a service fee of 1.5% of all credit card transactions on behalf of FSS.

   b. Mr.        is an employee of                             is an electronic payment processor and processes the Debtor's credit card payments.        earns of fee of 4.5% of all credit card transactions on behalf of FSS.        is

---

[2] 3PL's are third party logistics providers that provide outsourcing supply chain management including product distribution, warehousing, inventory management, product assembly, packing shipping and record keeping.

aware of Mr. Cicack's relationship with           and has advised in writing that it approves of the arrangement between FSS and

c. Mr.           is the sole owner of SAI. Under the terms of the Agreement with SAI Mr.           will receive no compensation or remuneration from FSS or the entities he contracts with to provide product sourcing and fulfillment services.

17. Neither Alex Jones or any member of his family or any employee (current or former) of FSS (or any affiliate) or PQPR Holdings Limited, LLC (or any of its owners, officers, employees, or affiliates), (i) own any interest in SAI or           (ii) have any contractual relationships with Mr.           SAI or           or (iii) receive (currently or in the future) any form of remuneration from Mr.          , SAI or          . Conversely neither SAI,           nor Mr.           (i) own any interest in FSS, PQPR Holdings Limited, LLC (or any of their affiliates), (ii) have any contractual relationships with Alex Jones or any member of his family, FSS (other than contracts approved by Order of this Court), or PQPR Holdings Limited, LLC (or any of their affiliates, owners or employees), or (iii) receive any remuneration from Alex Jones or any member of his family, FSS, PQPR Holdings Limited, LLC (or any of their affiliates, owners or employees) that has or will not be approved by Order of this Court.

## RELIEF REQUESTED

18. By this Motion, the Debtor seeks entry of an Order authorizing the Debtor to operate under the Agreement with the SAI which is consistent with the Debtor's historical and customary practices but under significantly improved terms.

## BASIS FOR RELIEF

**A. Debtor Requests Authority Enter into the Agreement in The Ordinary Course of Business.**

19. Debtor requests that it be authorized to operate under the Agreement in the ordinary and customary course of business.

20. The financial terms of the Agreement with SAI will improve the Debtor's profitability while at the same time simplifying and streamlining its operations. Currently the Debtor bears the risk of

financial loss with respect to products its purchases if they are purchased in quantities or at prices that exceed customer demand. Under the SAI Agreement, other than low minimum purchase requirements, SAI bears the risk regarding unsold product.

21. Further, while SAI product pricing may be higher than product pricing under FSS' existing product sourcing with PQPR, the existing agreement with PQPR allocates ten percent (10%) of net sale receipts to PQPR. Some of the product pricing from SAI is lower than FSS currently pays suppliers. On average, SAI's prices are within ten percent (10%) of FSS' current product pricing.

22. FSS currently pays $20 per shipment to FSS for fulfillment services. SAI's fulfillment charges will be significantly lower than Blue Ascension. SAI fulfillment charges vary by weight and package size. Based on the weight and size of the average FSS order, FSS anticipates that the average shipping cost per package will be less than $10 per shipment. FSS expects that SAI's terms will be accretive to the Debtor's income and cash flow.

23. Section 363(b) Bankruptcy Code addresses a debtor's use of property of the estate outside the ordinary course of the debtor's business and applies a business judgment test in evaluating such transactions. In order to satisfy its fiduciary duty a debtor in possession must show an "articulated business justification, good business judgment, or sound business reasons." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011).

24. While FSS has sourced and sold product through a variety of transactions which are similar to the SAI Agreement, in an abundance of caution the Debtor seeks approval of the Agreement under section 363(b) of the Bankruptcy Code. The Agreement with SAI will simplify the Debtor's operations, avoid the need to finance product purchases, provide "just in time" product sourcing, making new products more readily available to customers, significantly reduce fulfillment costs and increase profitability. The Debtor believes that the requirements of the business judgment test are met.

**B.     Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

25. To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

WHEREFORE, for the reasons set forth above the Debtor respectfully requests that the Court enter an order in the form attached as Exhibit B (i) authorizing the Debtor to enter into the Agreement as described above, consistent with Debtor's historical and customary practices and (ii) granting any and all such other relief as the Court deems just and proper.

Respectfully submitted this November 15, 2022.

> THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
> 66 Granburg Circle
> San Antonio, Texas 78218
> Telephone (210) 601-9405
> Email: rbattaglialaw@outlook.com
>
> By: /s/ Raymond W. Battaglia
> Raymond W. Battaglia
> Texas Bar No. 01918055
>
> **ATTORNEYS FOR THE DEBTOR IN POSSESSION**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, as set forth below. I further certify that it has been transmitted by first class mail to the parties on the attached service list.

> /s/ Raymond W. Battaglia
> Raymond W. Battaglia