

EXHIBIT

A

This Fulfillment Agreement (this "Agreement") is entered on [_____] (the "Effective Date"), by and between ▮▮▮▮ ▮▮▮▮▮▮▮ Inc having offices at 4548 Valley Spring Dr. Westlake Village, CA 91362, U.S.A. ("▮▮▮▮▮▮▮▮▮▮ Inc") and [_____], a [_____], having offices at [_____], ("Client"). ▮▮▮▮▮ ▮▮▮▮▮▮ Inc and Client may be individuals referred to herein as a "Party" and collectively referred to herein as "Parties".

WHEREAS, ▮▮▮▮▮▮▮▮▮ Inc provides product sourcing and fulfillment services for direct response marketers that market diet, nutritional, health and wellness products through various distribution channels;

WHEREAS, Client desires to retain ▮▮▮▮ ▮▮▮▮▮▮ Inc to provide product sourcing and fulfillment services and ▮▮▮▮▮▮▮▮▮ Inc desires to provide the same pursuant to the terms hereof,

NOW, THEREFORE, in consideration of the promises and mutual covenants described herein, the parties agree as follows:

ARTICLE I

ENGAGEMENT OF ▮▮▮▮▮▮▮▮ Inc; FEES

1.1 Engagement. As of the Effective Date, Client hereby retains ▮▮▮▮▮▮▮ Inc to perform the Services (as defined below) including such activities as may be related, ancillary, or necessary to perform the Services.

3.2 Manner of Payment; Late Payments. Payments by Client to ▮▮▮▮▮▮▮ Inc under this Agreement shall be made by electronic fund transfers, check, or, other mutually accepted means. Late payments under this Article III shall bear interest at the prime rate plus ten percent (10%) per annum or the maximum amount permitted by applicable law, whichever is less.

3.3 Taxes. All amounts payable for Services hereunder are exclusive of any taxes. All taxes and other charges imposed by any taxing authority on any Service or Product shall be added to the appropriate invoice and shall be payable by Client in accordance with Section 3.1.
ARTICLE IV

TERMINATION; OBLIGATIONS UPON TERMINATION

4.1 Termination by Either Party. This Agreement may be terminated by either Party upon providing the other Party ninety (90) days written notice of such Party's desire to terminate this Agreement.

4.2 Termination by ▮▮▮▮▮▮▮▮▮ Inc. In the event that (i) ▮▮▮▮▮▮▮▮▮▮ Inc believes that Client's conduct or its Products or violate Applicable Law or pose a threat to ▮▮▮▮ ▮▮▮▮▮▮ Inc' business or reputation; (ii) Client fails to satisfy the Minimum Threshold; or (iii) Client fails to remit to all outstanding amounts on or before the Due Date, then ▮▮▮▮▮▮▮▮ Inc shall have the option to suspend the provision of Services or terminate this Agreement.

4.3 Obligations upon Termination. Client shall be obligated to remit all amounts owing to ▮▮▮▮ ▮▮▮▮▮▮ Inc

████████████████

1.2 Services. ████████████ Inc shall provide product sourcing and fulfillment services for Client for such Products as set forth on Appendix A (the "Services"). The Parties hereby agree and acknowledge that the Services provided by ████████████ Inc may be modified upon the mutual consent of the Parties.

1.3  Fees. For ████████████ Inc' performance of the Services, Client shall pay ████████████ Inc such amounts as provided on Appendix A (the "Fees"). The amount of the Fees may be modified by the mutual consent of the Parties.

1.4 Return Instructions. ████████████ Inc will sort any returns to the best of its ability to inspect safety seals and determine which bottles can be resold.  To do this, ████████████ Inc may charge Client a flat fee per return. ████████████ Inc accepts no liability for its performance of these services.

1.5 Compliance with Laws; Non-Infringement.  Client shall be solely responsible for compliance with any applicable federal and state laws and regulations relating to the Product and Services, which includes, but shall not be limited to, any labeling, information or sales methods related to the Product and Services.  Additionally, Client hereby covenants that the Product and any sales efforts and labeling related thereto shall comply with all federal and state laws and regulations, and, that such laws and regulations include, but, shall not be limited to (i) any Federal Trade Commission rules and regulations, including, but not limited to the "Mail Order Rule", "Telemarketing Sales Rule," and any other rules and regulations, relating to advertising, solicitation or otherwise; (ii) any Food and Drug Administration rules and regulations, including, but not limited to any labeling guidelines which may

upon the termination of this Agreement.

4.4 Survival. The terms and conditions of the following provisions shall survive the termination or expiration of this Agreement: Sections 1.3, 1.4, 1.5, 1.7, 1.9, 1.10, 1.11, 1.12, 2.2, 4.3, 4.4 and Article III, Article V, Article VI and Article VII.

ARTICLE V

LIMITATION OF LIABILITY

5.1 Limitation of Liability.  IT IS UNDERSTOOD AND AGREED THAT ████████████ Inc' LIABILITY WHETHER IN CONTRACT, IN TORT, UNDER ANY WARRANTY, IN NEGLIGENCE OR OTHERWISE SHALL NOT EXCEED THE RETURN OF THE AMOUNT OF THE PURCHASE PRICE PAID BY CUSTOMER FOR SUCH SPECIFIC SERVICE OR PRODUCT AND UNDER NO CIRCUMSTANCES SHALL ████ ████████ Inc BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES. THE PRICE STATED FOR THE SERVICES IS A CONSIDERATION IN LIMITING ████ ████████ Inc' LIABILITY.  NO ACTION, REGARDLESS OF FORM, ARISING OUT OF THE TRANSACTIONS UNDER THIS AGREEMENT MAY BE BROUGHT BY CUSTOMER MORE THAN ONE YEAR AFTER THE CAUSE OF ACTION HAS ACCRUED.

5.2 Disclaimer of Warranties. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, ████████████ Inc MAKES NO, AND DISCLAIMS ALL, WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON INFRINGEMENT, WITH RESPECT TO THE SERVICES AND THE PRODUCTS.



relate to point size, type, label format and product claims; and (iii) all other federal and state rules and regulations which relate to the Product and Services (collectively, "Applicable Law") . Client hereby agrees and acknowledges that ▮▮▮ ▮▮▮▮▮▮▮ Inc shall not have any obligations with respect to any Products or Services being in compliance with Applicable Law.

1.6 ▮▮▮▮▮▮▮▮▮▮ Inc Obligations. ▮▮▮▮ ▮▮▮ Inc hereby covenants and agrees that it shall, during the term of this Agreement, perform the Services in a commercially reasonable manner. ▮▮▮▮▮▮▮▮▮ Inc further covenants and agrees that it shall maintain reasonably accurate records and accounts of all transactions relating to the Services performed pursuant to this Agreement.

1.7  Client Obligations. Client hereby covenants and agrees that (i) it shall pay ▮▮▮▮▮▮▮ Inc for Services in accordance with Article III of this Agreement; (ii) it shall provide ▮▮▮▮ ▮▮▮▮▮▮ Inc with all documents and information necessary for ▮▮▮▮▮▮▮▮ Inc to perform the Services pursuant to this Agreement; and (iii) it shall comply with Applicable Law.

1.8  Right to Subcontract. In the performance of its obligations hereunder, ▮▮▮▮▮▮▮ Inc shall have the right, in its sole discretion, to subcontract its rights and responsibilities to any third party, provided that ▮▮▮▮▮▮ Inc shall remain responsible for the performance of any such third party.

1.  **Independent Contractors.  The Parties to this Agreement are independent contractors. Neither Party is an agent, representative or employee of the other Party.  Neither Party will have any right, power or authority to enter into any agreement for or on behalf of, or incur**

▮▮▮▮▮ Inc MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE QUALITY, SUITABILITY OR ADEQUACY OF THE SERVICES OR THE PRODUCTS FOR ANY PURPOSE OR USE.5.3

Force Majeure.

Any delay in or failure of performance by ▮▮▮▮ ▮▮▮▮▮▮▮ Inc under this Agreement will not be considered a breach of this Agreement and will be excused to the extent caused by any occurrence beyond the reasonable control of ▮▮▮▮▮▮▮▮ Inc, including, but not limited to, acts of God, any deficiencies or failures of third-party providers to provide the Product(s), strikes, lockouts, slowdown, power outages or war.

**5.4.  Client Indemnity.  Client agrees to indemnify and hold ▮▮▮▮▮▮▮▮▮ Inc, its affiliates, employees, officers, directors and shareholders harmless from and against any claims, suits, actions or proceedings (a "Claim") brought and damages, costs (including attorney's fees) or judgments awarded against ▮▮▮▮▮▮▮▮ Inc that arise from or in connection with: (i) claims by any person or entity to the extent that such Claims are based upon or arise out of the Client's acts or omissions; (ii) breach by the Client of this Agreement, (iii) the Client's failure to comply with Applicable Law; and (iv) Client's failure to be the exclusive owner of any intellectual property, trademarks, designs and all goodwill associated with the Services, the Product, and any labeling or design services applied to such Product by ▮▮▮▮ ▮▮▮▮▮ Inc or otherwise.**

ARTICLE VI

CONFIDENTIALITY



any obligation or liability of, or to otherwise bind, the other Party. This Agreement will not be interpreted or construed to create an association, agency, joint venture or partnership between the Parties or to impose any liability attributable to such a relationship upon either Party.

1.10 Cooperation. The Parties will use good faith efforts to cooperate with each other in all matters relating to the provision and receipt of the Services, including, without limitation, cooperating in connection with obtaining all consents, approvals licenses or sublicenses reasonably necessary in order for ████████████ Inc to perform the Services. Client shall be solely responsible for any costs incurred by ██████ ██████████ Inc in connection with obtaining such consents or approvals or procuring such licenses or sublicenses. In the event that ██████ ██████████ Inc reasonably believes that it is unable to provide any Service because of a failure to obtain any consent, approval, license or sublicense, the parties shall in good faith discuss and agree to an alternative approach; provided that, in no event shall ████████████ Inc be required to provide such Service until such time that the Parties have agreed to an alternative approach or the relevant consent, approval, license or sublicense has been obtained. Client shall be solely responsible for any increased cost in providing a Service resulting from any agreed alternative approach.

1.11 Sourcing of Product. Client hereby agrees and acknowledges that (i) ████████████ Inc does not manufacture the Product and rather purchases the Product from a third-party on behalf of Client; and (ii) ████████████ Inc shall not be liable for any deficiencies, recalls, inconsistencies or any other issue relating to the manufacture of the Product.

6.1 Confidentiality. Each Party shall hold, and shall cause its employees, accountants, attorneys and other authorized representatives to hold, in confidence, and shall otherwise not disclose to anyone other than each of their respective accountants, attorneys and other authorized representatives, together with such other individuals or organizations as may from time to time be authorized in writing by the other Party or as may otherwise be required by any administrative body or required by law, all documents, records, data and information of each Party ("Confidential Information") disclosed by such Party to the other Party in connection with the performance of this Agreement. Confidential Information shall not include information that (1) is already or otherwise becomes publicly available through no act of receiving Party; (2) is lawfully received by receiving Party from third parties subject to no restriction of disclosure; or (3) can be shown by receiving Party to have been independently developed by such Party. Each Party shall promptly notify the other Party of any subpoena or other request or demand made to such Party seeking documents, records, data or information concerning the other Party or the Services provided hereunder, and shall resist production of any such materials consistent with its obligations pursuant to this Article. Neither Party shall use the Confidential Information of the other Party except to exercise its rights and perform its obligations hereunder.

ARTICLE VI

MISCELLANEOUS

7.1 Further Assurances. ████████████ Inc and Client agree, upon the reasonable request of the other, to execute, acknowledge and deliver any and all

1.12  Content and Trademark Ownership and License.  Each party (the "Granting Party") hereby grants the other party (the "Receiving Party") a royalty free, non-exclusive, worldwide limited license to use, reproduce, publish, display, perform and distribute the Granting Party's applicable trademarks and service marks in connection with all marketing and distribution to carry out the express purpose of this Agreement.  The Receiving Party agrees that such marks are the exclusive property of the Granting Party and that all usage of such marks and any goodwill established by the use of such marks shall inure to the benefit of the Granting Party and that this Agreement does not confer any goodwill or other interests in such marks on the Receiving Party.  Neither party shall adopt or attempt to register any trademark, trade name, or service mark, which is confusingly similar to the other party's marks.  Termination of this Agreement shall immediately terminate the license(s) granted. Client represents and warrants that Client is the exclusive owner of any intellectual property, trademarks, designs and all goodwill associated with the Services, the Product(s), and any labeling or design services applied to such Product by ███████████ Inc or otherwise, and, that Client entering into and performing this Agreement will not violate any contract to which it is a party or any court order to which it is subject.

ARTICLE II

PERFORMANCE OF SERVICES

2.1  Minimum Purchase Amount.  In recognition of ████████████ Inc' fixed expenses associated with being available to provide Services to Client, Client agrees and acknowledges that it shall be required to cause ████████████ Inc to fulfill, at a minimum, one thousand dollars worth of products and/or services per month. (the "Minimum Threshold")

uch further in  trument , and to do and perform any and all such other acts as may be necessary or appropriate in order to carry out the intent and purposes of this Agreement.

7.2 Waivers or Modifications. No waiver, modification or cancellation of any term or condition of this Agreement shall be effective unless executed in writing by the Party to be charged therewith. No written waiver shall excuse the performance of any act( ) other than tho e specifically referred to therein. A waiver of any breach by any Party hereunder shall not constitute a waiver of any subsequent breach(es) by such Party hereunder

7 3 Governing Law  Thi  Agreement  hall be governed by the laws of the State of Colorado (regardless of the laws that might otherwise govern under applicable principles of conflicts of law) a  to all matter , including, but not limited to, matters of validity, construction, effect, performance and remedies.

7.4 Notices. Except as expressly otherwise provided herein, all notices, requests, demands, waiver  and other communication  under thi  Agreement shall be in writing and shall be deemed to have been duly given if delivered personally or by facsimile transmission or mailed (certified or regi  tered mail, po  tage prepaid, return receipt requested) to the address provided for such Party in the preamble to this Agreement.

7.5 Severability. If any provision of this Agreement is held to be illegal, invalid or unenforceable, such provi ion will be fully  evered and thi  Agreement will be construed and enforced as if such illegal, invalid or unenforceable provision never comprised a part hereof; and the remaining provi ion  hereof will remain in full force and

2.2.  Shipments. ███████████ Inc shall not be responsible for (i) any errors in shipping caused by improper addresses or mistakes provided
by Client; and (ii) any late or undelivered shipments caused by customs or any shipping provider.   Any errors in shipping caused by mistakes of ███████████ Inc will be reshipped at no additional charge to Client.  Client agrees that it shall be solely responsible for all customer service relating to ███████████ Inc' performance of the Services and Client shall promptly notify ███████████ Inc of any shipping changes or errors prior to shipment.  Client acknowledges and agrees that once any Product has been shipped by ███████████ Inc shall no longer have any authority to modify any shipping instructions for such Product.


ARTICLE III

INVOICES; PAYMENT TERMS

3.1  Fees for Services; Invoices. ███████ ███████ Inc shall invoice Client on a weekly basis. Invoices shall specify the weekly Fees for, and provide reasonable detail regarding, the Services rendered during the previous month. The Fees shall be in accordance with such Appendix or as otherwise agreed to by the Parties. Invoices shall also include any adjustments required for credits or Product returns that were given or occurred during the previous month, in accordance with Article I of this Agreement. ███████████ Inc' invoices shall be due and payable not later than seven (7) days after the date of the invoice (the "Due Date").  In the event Client fails to remit to all outstanding amounts on or before the Due Date, then ███████ ███████ Inc shall have the option to suspend the provision of Services or terminate this Agreement.

effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as part of this Agreement a provision as similar in its terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

7.6 Entire Agreement. This Agreement and any Appendix referenced or attached hereto and thereto constitute the entire agreement between the Parties hereto.7.7 Assignment. ███████ ███████ Inc shall have the right to assign this Agreement.

7.8 Binding Agreement. This Agreement is binding upon, and inures to the benefit of, the Parties and their respective successors. Nothing in this Agreement, expressed or implied, is intended to confer on any person, other than the Parties or their respective successors, any rights, remedies or liabilities under this Agreement.

7.9 Counterparts. This Agreement may be executed in one or more counterparts, each of which when so executed shall be deemed an original, and such counterparts together shall constitute one and the same instrument.

7.10 No Impairment of Rights. No delay or omission by either Party hereto in exercising any right, power or privilege hereunder will impair such right, power or privilege, nor will any single or partial exercise of any such right, power or privilege preclude any further exercise thereof or the exercise of any other right, power or privilege.

IN WITNESS WHEREOF, the parties have caused this Fulfillment Agreement to be executed by their duly authorized representatives as of the day and year first above written.



| ██████████ Inc | [Company.Name] |
|---|---|
| ██████████<br>President | Signer:<br>Company name: |

Appendix A

1. Product. The "Product" shall be various dietary supplements and health and beauty products as agreed to by Client and ██████████ Inc.

2. Services. The "Services" shall consist of the following:
   - A. ██████████ Inc shall purchase the Product from a third-party provider on behalf of Client.
   - B. ██████████ Inc shall place labeling on the Product as instructed by Client.
   - C. Upon ██████████ Inc' receipt of proper instructions for fulfillment from Client for any particular customer order, ██████████ Inc shall perform all packing, shipping and tracking functions necessary to fulfill the order and ship Product.

3. Pricing. Client shall be obligated to compensate ██████████ Inc the amounts set forth on any invoice provided to Client by ██████████ Inc.

4. Deposit. A one-time non-refundable ($1,000) deposit will be required to open a fulfillment account. This fee is for set up and integration into our system. However, this deposit will be applied to any fulfillment invoice you receive in the first 60 days.

5. Minimum. All fulfillment accounts will have a minimum spend of $1000 per month.

- The Parties hereby agree and acknowledge that Client and ShipOffers may modify the terms of this Appendix A verbally and that such modifications shall be integrated into this Fulfillment Agreement.