# **Exhibit 1**



October 19, 2022

Melissa Haselden
Sub Chapter V Trustee Free Speech System LLC
Haselden Farrow PLLC
Pennzoil Place
700 Milam, Suite 1300
Houston, TX 77002

Attention:   Retention of Financial Advisor

<u>Engagement Letter</u>

Dear Ms. Haselden:

This letter agreement (this "**Agreement**") sets forth the terms and conditions of the engagement (the "**Engagement**") of M3 Advisory Partners, LP ("**M3**") to provide the Services (as defined below) to you as the subchapter V trustee (the "**Client**") for Free Speech Systems, LLC (the "**Debtor**").  M3 and the Client are collectively referred to in this Agreement as the "**Parties**."

    1.  <u>Services</u>:  The Client hereby retains M3 to provide, and M3 hereby agrees to provide, the following services (the "**Services**") upon the terms and subject to the conditions set forth in this Agreement:

        (a)  provide support to the Client in its evaluation of the expenditures of the Debtor;

        (b)  review transfers made by the Debtor; including payments, distributions or withdrawals to insiders;

        (c)  provide support to the Client in its evaluation of the PQPR claim;

        (d)  assist the Client in its investigation of potential claims and causes of action ordered by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") on September 20, 2022;

        (e)  provide support to the Client, as requested by it, in evaluating the business operations and financial prospects of the Debtor;

        (f)  advise and assist the Client and its counsel with on-going assessment of the Debtor's financial performance and its ability to repay its outstanding obligations; and

        (g)  provide such other services as M3 and the Client shall otherwise agree in writing.

2. <u>Engagement Term</u>. The Engagement shall commence on the date of acceptance of this Agreement and may be terminated by either Party at any time upon ten business days' written notice. Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.

3. <u>Staffing</u>. M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement. The individual members of the team are subject to change by M3 from time to time in its sole discretion. M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees.

4. <u>Compensation for Services</u>. (a) M3's compensation for services rendered under this Agreement shall be paid by the Debtor by wire transfer of immediately available funds in accordance with instructions provided from time to time by M3 to the Client and will consist of the following:

(i) Service Fees: As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable professional fees based on the actual hours incurred by M3 personnel on matters pertinent to the Engagement (the "***Service Fees***"). The Service Fees shall be based upon M3's standard hourly rates as follows:

| Professional | Standard Rate |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Director | $1,155 |
| Managing Director | $970 - $1,100 |
| Director | $790 - $895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

In an effort to be sensitive to the equities of this case and in recognition of the Trustee's efforts to negotiate a compensation agreement designed to fit the particular needs and possibilities of this case, M3 is willing to provide a 30% discount to the standard rates shown above. M3 shall deliver to the Client an invoice for the Service Fees (as reduced by such discount) on a monthly basis and the Debtor shall pay to M3 the amount invoiced for the relevant period in accordance with the provisions of Section 4(b) below. From time to time in the normal course of business M-3 may adjust its billing rates upon notice to the Client and subject to approval of the Court.



(ii) <u>Expenses</u>: In addition to any compensation for providing the Services, the Debtor shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs). Any request for reimbursement of an out-of-pocket expense in excess of $100 shall be accompanied by reasonable back-up for each expense and as otherwise required by applicable law.

(b) All amounts owing hereunder shall, subject to approval of the Court, be due and payable by wire transfer of immediately available funds in accordance with instructions from time to time provided by M3 within 15 days following receipt of the invoice therefor, except that the Deferred Fees shall be payable from available funds without any requirement of further invoice promptly upon approval of the Court following the successful conclusion of the Debtor's bankruptcy proceeding. In the event that M3 does not receive payment of amounts payable hereunder within 15 days following receipt of such invoice, M3 shall have the right (subject to approval of the Court) to suspend further Services until payment is received on past due invoices and/or the Retainer is restored. In the event that M3 so suspends the Services, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.

(c) Unless expressly stated otherwise in the relevant invoice, none of the amounts invoiced by M3 from time to time with respect to the Engagement shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters. All fees payable to M3 are exclusive of taxes or similar charges, which shall be the sole obligation of the Debtor (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3).

(d) The provisions of this Section shall survive the termination or expiration of this Agreement.

5. <u>Cooperation from Client</u>. In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client and, where applicable, the Debtor and their respective professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying M3 of any issues or concerns that the Client may have relating to the Services. The Client understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and access to all relevant materials. M3 shall have no responsibility or liability for any delays, additional costs or other deficiencies caused by the Client failing to properly fulfill its responsibilities under this Agreement.

6. <u>Deliverables</u>. (a) In connection with the Engagement, M3 may furnish the Client with information, advice, reports, analyses, presentations or other materials (the "***Deliverables***"). The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available. The Client acknowledges



that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

      (b) Any materials prepared by M3 are solely for the confidential use of the Client and will not be distributed, reproduced, summarized, referred to, disclosed publicly or given to any other person without the prior written consent of M3, *provided* that such permission shall not be required if the materials are required to be disclosed by applicable law or by order or act of any court or governmental or regulatory authority or body.

      (c) The provisions of this Section shall survive the termination or expiration of this Agreement.

7. <u>Limitations on Services</u>. (a) The Services are limited to those specifically noted in this Agreement.

      (b) M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client shall be deemed to be accounting or tax-related assistance. The Client shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3. M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement. The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts. M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client.

      (c) The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Client's financial projections, and the Client has not engaged M3 for that purpose. The Services are provided based upon the understanding that the Client has sole responsibility for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto. To the extent that, during the performance of Services hereunder, M3 is required to consider the Client's financial projections, the Client understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures. There will usually be differences between projected and actual



results, and those differences may be material.  The Client understands and agrees that M3 will have no responsibility or liability relating to any such differences.

(d)  M3 does not provide investment advice and the Services shall not include the provision of investment advice.  The Client shall have sole responsibility for all investment decisions made by it.  Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client.  Although M3 may from time to time suggest or recommend options that may be available to the Client, the ultimate decision with respect to such options rests with the Client and the Client shall be solely responsible for such decision and its outcome.  M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client.

(e)  To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Client is or may become a party.

(f)  The Client shall be solely responsible for the work and fees of any third parties engaged by the Client to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client by M3 or M3 is involved with the services provided by it.  M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

(g)  The provisions of this Section shall survive the termination or expiration of this Agreement.

8. Confidentiality.  (a) Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other Party in the scope of the Engagement (the "***Confidential Information***"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity.  For the avoidance of doubt, the term "Confidential Information" shall include (i) the terms of this Agreement, (ii) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, and models and (iii) any work product relating to the business of either Party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.  Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (a) is or becomes publicly available other than as a result of disclosure by the receiving Party in violation of this Agreement, (b) was already known to the receiving Party or (c) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information.  In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.



(b)  The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts.  M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors, agents and advisors who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement.  M3 may make reasonable disclosures of Confidential Information to third parties to the extent that M3 reasonably believes that such disclosure is consistent with its performance of the Services.  In addition, M3 will have the right to disclose to any person that it provided services to the Client or its affiliates and a general description of such services, but such disclosure shall not provide any other Confidential Information about M3's involvement with the Client.

(c) The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

9.  Intellectual Property.  Upon payment in full of all amounts owing to M3 hereunder (but subject to the provisions of Section 7 and 8 of this Agreement), the Client will own all Deliverables furnished by M3 to the Client in connection with the Services, *provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "**M3 Tools**"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information contained in the M3 Tools.  To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement.  The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose. The provisions of this Section shall survive the termination or expiration of this Agreement.

10. Limitation on Damages.  In no event shall M3 or any of its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "**M3 Representatives**") be liable to the Client or its affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which M3 and the M3 Representatives are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Client in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (collectively, the "**Liability Cap**").  This



paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 or any M3 Representative was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined by final and non-appealable judgment of a court of competent jurisdiction to be prohibited by applicable law. For the avoidance of doubt, the Parties hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other M3 Representatives in the aggregate for any and all claims or demands by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement. Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap. Under no circumstances shall the collective liability of M3 and the other M3 Representatives in connection with this Agreement exceed the Liability Cap. The provisions of this Section shall survive the termination or expiration of this Agreement.

11. <u>Client Acknowledgement</u>. The Client hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Client. Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client. Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement. M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client. The provisions of this Section shall survive the termination or expiration of this Agreement.

12. <u>Miscellaneous</u>. (a) This Agreement (i) constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of the Parties.

(b) The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction. If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.



(c)  M3's services hereunder are personal in nature and may not be assigned without the written consent of the Client.  The obligations of M3 hereunder are owing only to the Client and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)  This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state.  The Parties hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in the State of New York and waive any right to trial by jury in connection with any dispute related to this Agreement; provided that the exclusive jurisdiction and venue shall be the Court for so long as it maintains jurisdiction over the Debtor's bankruptcy proceeding.  The provisions of this paragraph shall survive the termination or expiration of this Agreement.

*[Remainder of Page Intentionally Left Blank]*



This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

        Very truly yours,

        M3 ADVISORY PARTNERS, LP

        By _____
           Name: Mohsin Y. Meghji
           Title: Managing Member

ACCEPTED AND AGREED
as of the date first set forth above:

Melissa Haselden, in her capacity as subchapter V trustee

By: /s/ Melissa Haselden
    Name: Melissa Haselden
    Title: Subchapter V Trustee

