## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| FREE SPEECH SYSTEMS, LLC | ) | Case No. 22-60043 |
| | ) | |
| Debtor. | ) | |

### SUBCHAPTER TRUSTEE'S MOTION FOR ENTRY OF AN ORDER
### AUTHORIZING RETENTION OF M3 ADVISORY PARTNERS, LP
### AS FINANCIAL ADVISOR TO THE SUBCHAPTER V TRUSTEE

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

Melissa Haselden, ("Trustee") respectfully states the following in support of this motion (the "Motion"):

### Summary of Relief Requested

1. The Trustee seeks entry of an order (the "Order"), authorizing the Trustee to retain and employ M3 Advisory Partners, LP ("M3") as her financial advisor effective as of October 20, 2022 in accordance to the terms and conditions of the engagement letter between the Trustee and M3, dated October 19, 2022, attached as **Exhibit B** (the "Engagement Letter"). In support of this Motion, the Trustee submits the declaration of Brian Griffith (the "Griffith Declaration"), a Managing Director of M3, attached as **Exhibit A**.

**PQPR-11**
**Sub V Trustee's Mtn to Retain**

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Subchapter V Trustee confirms her consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are §§ 105 and 363 of the Bankruptcy Code, Bankruptcy Rule 2002(a)(2), and Rules 2002-1(a)(2) and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

### APPLICATION

5.      The Trustee is the duly qualified and acting Subchapter V Trustee for the estate of the Free Speech Systems, LLC ("Debtor"). The Debtor initiated the bankruptcy case on July 29, 2022 (the "Petition Date") via the filing of a voluntary chapter 11 petition.

6.      On September 20, 2022, the Court entered the *Order Expanding the Subchapter V Trustee's Duties Pursuant to 11 U.S.C. § 1183(b)(2) of the Bankruptcy Code* [Docket No. 183].

7.      In recognition of the unique complexities involved in this matter, the Trustee seeks approval to retain M3 as her financial advisor. The Trustee identified the need for M3 as her advisor to assist with general matters related to the investigation mandated by the Court as well as the fulfillment of her duties in this unique case.

8.      To accomplish these goals, the Trustee hereby files this Application pursuant to §§ 327(a), 328, and 704 of the Bankruptcy Code. The Trustee requests authority to retain M3, as counsel pursuant to the terms of the attached proposed engagement agreement (the "Engagement

Letter"), attached as Exhibit B.  The Trustee requests that the employment be effective as of October 20, 2022.

9.      The Trustee selected M3 to render professional services to her in her role as subchapter V Trustee, which include, but are not limited to, the following responsibilities:

    a) Assisting in the investigation required by the Court;

    b) Assisting the Trustee in analyzing claims owned by the estate against third parties arising under chapter 5 of the Bankruptcy Code and other applicable law;

    c) Supporting the Trustee in the bankruptcy case, any adversary proceedings, and other proceedings before the Bankruptcy Court, and in any other judicial or administrative proceeding;

    d) Performing any other financial advisory services that may be appropriate in connection with the foregoing.

10.      The Trustee selected M3 because its professionals have extensive experience in matters relating to the retail and other relevant industries, bankruptcy matters, investigations, and efforts to maximize value.  This case presents unique issues.  M3 has the expertise and capacity to address the needs of the estate.  The Trustee believes that M3 can provide the estate with the required financial advisory expertise to allow the Trustee to administer the estate and discharge her fiduciary duties under the circumstances effectively and prudently.  Because of the anticipated complexity investigating the matters ordered by the Court and facilitating development of a confirmable plan in this complicated case, the Trustee believes retention of M3 is necessary due to its array of expertise.

## M3's Qualifications

11.     M3 is an independent corporate turnaround and advisory firm providing operational, strategic, and financial advice for clients.  On a combined basis, M3's principals have worked on more than 200 restructurings throughout their careers, including on numerous retail industry engagements and other industries relevant to the business of the Debtor. *See In re Tailored Brands, Inc.*, 20-33900 (MI) (Bankr.S.D.TX. October 6, 2020) [Docket No. 799], *In re Neiman Marcus Group LTD LLC*, (DRJ) (Bankr.S.DTX. July 16, 2020) [Docket No. 1225], *In re Barneys New York, Inc*., No. 19-36300 (CMG) (Bankr. S.D.N.Y. Sept. 20, 2019) [Docket No. 274], and *In re Sears Holdings Corp*., No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 19, 2018) [Docket No. 814].

12.     Brian Griffith has more than 20 years of experience as a restructuring professional, and has developed an expertise in providing restructuring advisory and consulting services across a wide range of industries throughout his career.  Brian Griffith will be responsible for the overall design and delivery of the services to be provided by M3 pursuant to this engagement as set forth in the Engagement Letter and the Motion.  Brian Griffith's prior experience encompasses a broad range of restructuring related services including: (i) investigations; (ii) stabilizing business operations; (iii) negotiations with creditors, and (iv) improving and managing liquidity.

## Scope of Services

13.     Consistent with the terms of the Engagement Letter, M3 will, among other things, provide the following services to the Trustee:

    (a)   provide support to the Client in its evaluation of the expenditures of the Debtor;

    (b)   review transfers made by the Debtor; including payments, distributions or withdrawals to insiders;

    (c)   provide support to the Client in its evaluation of the PQPR claim;

(d)  assist the Client in its investigation of potential claims and causes of action ordered by the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on September 20, 2022;

(e)  provide support to the Client, as requested by it, in evaluating the business operations and financial prospects of the Debtor;

(f)  advise and assist the Client and its counsel with on-going assessment of the Debtor's financial performance and its ability to repay its outstanding obligations; and

(g)  provide such other services as M3 and the Client shall otherwise agree in writing.

## **Professional Compensation**

14.     M3 was not engaged prior to the bankruptcy filing.  It is not owed any amounts with respect to prepetition fees and expenses. M3 intends to apply to the Court for allowance of compensation and reimbursement of expenses for advisory support services in accordance with the terms and conditions set forth in the Engagement Letter (the "Fee and Expense Structure") as well as the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and orders of the Court.

15.     The Trustee negotiated a compensation agreement designed to fit the particular needs and possibilities of this case.  M3 is sensitive to the equities and unusual circumstances of this case and therefore agreed to a reduction in compensation below its standard rates.  M3's standard hourly rates as of October 2022, with a 30% discount, will apply.  M3 agrees to not raise its rates with regards to the matters for which it is being retained without seeking further order of this Court.

16.     The standard hourly rates charged by M3 professionals anticipated to be assigned to this case are as follows:

| Title | Per Hour (USD) |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Directors | $1,155 |
| Managing Directors | $970-1,100 |
| Directors | $790-$895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

17.     The compensation terms in the Engagement Letter are more favorable than M3's normal and customary compensation for comparable cases, both in- and out-of-court, involving the services to be provided.  In addition, these terms are reasonable and at the low end of the range of fees typically charged by firms of similar caliber for comparable services.

18.     In addition to the fees outlined above, M3 will bill for reasonable direct expenses incurred on the Trustee's behalf during its engagement.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations, and other expenses specifically related to the engagement.

### No Duplication of Services

19.     M3 will use reasonable best efforts to ensure that the services provided will complement, and not duplicate, the activities of the Debtor's workforce or the services to be rendered by other professionals for the Trustee retained in this chapter 11 case.

### M3's Disinterestedness

20.     To the best of the Trustee's knowledge, and except to the extent disclosed herein and in the Griffith Declaration: M3 (a) has no connection with the Debtor, its creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee and (b) does not hold or represent any interest

adverse to the Debtor's estate. The Griffith Declaration shows that M3 is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

21.     To the extent that any new relevant facts or relationships bearing on the connections described herein during the period of M3's retention are discovered or arise, M3 will use reasonable efforts to file promptly a supplemental declaration.

## CONCLUSION

22.     Section 327(a) authorizes the retention of M3 as financial advisor for the Trustee to be compensated in accordance with § 328 as set forth herein and in the Engagement Agreement. The Trustee has not given any compensation or promised any compensation to M3, except as set forth in the Engagement Agreement. In addition, the Trustee has not sought or obtained leave to employ any other professional to represent the Trustee on the same matters as she proposes M3 represent her.

23.     In reaching her decision, the Trustee has evaluated the estate's available resources, the complexity of the case, the investigation and associated risks. Under the circumstances, the Trustee believes that the terms of the proposed compensation arrangement are both reasonable and prudent and provide her the necessary assistance for the case.

WHEREFORE, the Trustee respectfully requests that an order be entered (a) approving this Application and authorizing the Trustee to employ and retain M3 to represent the Trustee as her financial advisor consistent with the terms set forth herein and in the Engagement Agreement; and (b) granting the Trustee any other relief that is just and proper.

Dated: November 19, 2022

_/s/ Elizabeth C. Freeman_

**JACKSON WALKER LLP**
Elizabeth C. Freeman (TX Bar No. 24009222)
Sean Gallagher (TX Bar No. 24101781)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:   (713) 752-4200
Facsimile:   (713) 752-4221
Email: efreeman@jw.com
Email: sgallagher@jw.com

_Counsel to for Melissa Haselden Subchapter V Trustee_

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2022, a copy of the foregoing was served via the Court's ECF system upon all parties receiving notice through same.

*/s/ Elizabeth C. Freeman*
Elizabeth C. Freeman

PQPR-11
Sub V Trustee's Mtn to Retain

EXHIBIT A

PQPR-11
Sub V Trustee's Mtn to Retain

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FREE SPEECH SYSTEMS LLC, | ) Case No. 22-60043 |
| | ) |
| Debtor. | ) |
| | ) |

## DECLARATION OF BRIAN GRIFFITH IN SUPPORT OF
## THE APPLICATION TO RETAIN JACKSON WALKER LLP
## AS COUNSEL FOR THE SUBCHAPTER V TRUSTEE

The undersigned proposed attorney for the above-captioned debtor and debtor-in-possession submits this verified statement of disinterestedness pursuant to Bankruptcy Rule 2014(a).

1.      My name is Brian Griffith.  I am over the age of 18 years, I am competent to make this declaration, and I have personal knowledge of the facts stated herein.  Each and every statement contained herein is true and correct.

2.      I am a Managing Director at M3 Advisory Partners, LP ("M3").  M3 maintains its offices at 1700 Broadway, 19th Floor, New York, NY, 10019.  M3's main telephone number is 212-202-2200.

3.      In conjunction with the Trustee's retention of M3, I directed a search of M3's conflict system for each of the Debtor, the Debtor's creditors, affiliates, and insiders, and the principal of the Debtor (the "Potential Parties in Interest").

4.      M-III may represent other affiliates whose identities and affiliation did not show up on the conflicts system.  It is possible that there are creditors whom the Debtor did not identify in their records that are clients of M3.  The following summarizes the findings gleaned from my

PQPR-11
Sub V Trustee's Mtn to Retain

review of the information available on the M3's conflicts system divided into current clients of M3 that are also creditors of the Debtor, former clients, and affiliates of current clients of M3 that are also creditors of the Debtor, and my and M3's connections with the Debtor and its current and former officers, directors, and professionals.

**A.**     **M3's Relationship to the Debtor**

1.     M3 is not a creditor of the Debtor (including by reason of unpaid fees for prepetition services) or an equity security holder of the Debtor; is not and has not been, within two (2) years before the date of the filing of the petition, a director, officer or an employee of the Debtor; and does not have any interest materially adverse to the interests of the Debtor's estate, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

**B.**     **M3's Relationship to the Trustee**

6.     M3 and the Trustee entered into the engagement on October 19, 2022.  M3 has had no other representation of or relationship with the Trustee.

**C.**     **No Clients of M3 are Creditors of the Debtor**

7.     No creditors of the Debtor are or have been clients of M-III.

**D.**     **M3's Connections with the Trustee's Professionals**

8.     M3 has been employed in matters in which Jackson Walker LLP is employed by the Debtor.  More often than not, M3 has been retained by an official committee of unsecured creditors appointed in the case or a creditor in those cases in which Jackson Walker LLP represents or represented the Debtor.  M-III is not currently employed in any matter by the same estate or party in which Jackson Walker LLP is employed.

9.     Except as set forth herein, neither I nor M3 have had any connection with the Debtor, insiders or affiliates of the Debtor, the Debtor's creditors, the Trustee, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any other person

PQPR-11
Sub V Trustee's Mtn to Retain

employed in the Office of the United States Trustee, and are disinterested persons within the meaning of 11 U.S.C. § 101(14), to the best of my knowledge.

**E.**     **Statement Regarding United States Trustee Guidelines**

10.     M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's chapter 11 case in compliance with sections 330 and 331 of the Bankruptcy Code, and applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any other applicable procedures and orders of the Court.  M3 also intends to make a reasonable effort to comply with the United States Trustee's requests for information and additional disclosures as set forth in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 (the "U.S. Trustee Fee Guidelines"), both in connection with this Application as well as any interim and final fee applications that may be filed by M3 in connection with this case.

11.     M3 will periodically review both the changes in identifiable parties in interest of the Debtor and clients of M3 as such information becomes available or relevant, and will update this disclosure as appropriate.

12.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed November 18, 2022

                                        /s/ *Brian Griffith*
                                        Brian Griffith

**PQPR-11**
**Sub V Trustee's Mtn to Retain**

# **Exhibit B**

PQPR-11
Sub V Trustee's Mtn to Retain



October 19, 2022

Melissa Haselden
Sub Chapter V Trustee Free Speech System LLC
Haselden Farrow PLLC
Pennzoil Place
700 Milam, Suite 1300
Houston, TX 77002


Attention:    Retention of Financial Advisor

<u>Engagement Letter</u>

Dear Ms. Haselden:

This letter agreement (this "***Agreement***") sets forth the terms and conditions of the engagement (the "***Engagement***") of M3 Advisory Partners, LP ("***M3***") to provide the Services (as defined below) to you as the subchapter V trustee (the "**Client**") for Free Speech Systems, LLC (the "***Debtor***").  M3 and the Client are collectively referred to in this Agreement as the "***Parties***."

    1.   <u>Services</u>:  The Client hereby retains M3 to provide, and M3 hereby agrees to provide, the following services (the "***Services***") upon the terms and subject to the conditions set forth in this Agreement:

        (a)   provide support to the Client in its evaluation of the expenditures of the Debtor;

        (b)   review transfers made by the Debtor; including payments, distributions or withdrawals to insiders;

        (c)   provide support to the Client in its evaluation of the PQPR claim;

        (d)   assist the Client in its investigation of potential claims and causes of action ordered by the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on September 20, 2022;

        (e)   provide support to the Client, as requested by it, in evaluating the business operations and financial prospects of the Debtor;

        (f)   advise and assist the Client and its counsel with on-going assessment of the Debtor's financial performance and its ability to repay its outstanding obligations; and

        (g)   provide such other services as M3 and the Client shall otherwise agree in writing.

PQPR-11
Sub V Trustee's Mtn to Retain

2.  <u>Engagement Term</u>.  The Engagement shall commence on the date of acceptance of this Agreement and may be terminated by either Party at any time upon ten business days' written notice.  Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.

3.  <u>Staffing</u>.  M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement.  The individual members of the team are subject to change by M3 from time to time in its sole discretion.  M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees.

4.  <u>Compensation for Services</u>.  (a)  M3's compensation for services rendered under this Agreement shall be paid by the Debtor by wire transfer of immediately available funds in accordance with instructions provided from time to time by M3 to the Client and will consist of the following:

      (i)    <u>Service Fees</u>:  As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable professional fees based on the actual hours incurred by M3 personnel on matters pertinent to the Engagement (the "**Service Fees**").  The Service Fees shall be based upon M3's standard hourly rates as follows:

| Professional | Standard Rate |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Director | $1,155 |
| Managing Director | $970 - $1,100 |
| Director | $790 - $895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

In an effort to be sensitive to the equities of this case and in recognition of the Trustee's efforts to negotiate a compensation agreement designed to fit the particular needs and possibilities of this case, M3 is willing to provide a 30% discount to the standard rates shown above.  M3 shall deliver to the Client an invoice for the Service Fees (as reduced by such discount) on a monthly basis and the Debtor shall pay to M3 the amount invoiced for the relevant period in accordance with the provisions of Section 4(b) below.  From time to time in the normal course of business M-3 may adjust its billing rates upon notice to the Client and subject to approval of the Court.



PQPR-11
Sub V Trustee's Mtn to Retain

(ii) <u>Expenses</u>: In addition to any compensation for providing the Services, the Debtor shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs). Any request for reimbursement of an out-of-pocket expense in excess of $100 shall be accompanied by reasonable back-up for each expense and as otherwise required by applicable law.

(b) All amounts owing hereunder shall, subject to approval of the Court, be due and payable by wire transfer of immediately available funds in accordance with instructions from time to time provided by M3 within 15 days following receipt of the invoice therefor, except that the Deferred Fees shall be payable from available funds without any requirement of further invoice promptly upon approval of the Court following the successful conclusion of the Debtor's bankruptcy proceeding. In the event that M3 does not receive payment of amounts payable hereunder within 15 days following receipt of such invoice, M3 shall have the right (subject to approval of the Court) to suspend further Services until payment is received on past due invoices and/or the Retainer is restored. In the event that M3 so suspends the Services, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.

(c) Unless expressly stated otherwise in the relevant invoice, none of the amounts invoiced by M3 from time to time with respect to the Engagement shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters. All fees payable to M3 are exclusive of taxes or similar charges, which shall be the sole obligation of the Debtor (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3).

(d) The provisions of this Section shall survive the termination or expiration of this Agreement.

5. <u>Cooperation from Client</u>. In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client and, where applicable, the Debtor and their respective professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying M3 of any issues or concerns that the Client may have relating to the Services. The Client understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and access to all relevant materials. M3 shall have no responsibility or liability for any delays, additional costs or other deficiencies caused by the Client failing to properly fulfill its responsibilities under this Agreement.

6. <u>Deliverables</u>. (a) In connection with the Engagement, M3 may furnish the Client with information, advice, reports, analyses, presentations or other materials (the "***Deliverables***"). The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available. The Client acknowledges



PQPR-11
Sub V Trustee's Mtn to Retain

that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

(b)  Any materials prepared by M3 are solely for the confidential use of the Client and will not be distributed, reproduced, summarized, referred to, disclosed publicly or given to any other person without the prior written consent of M3, *provided* that such permission shall not be required if the materials are required to be disclosed by applicable law or by order or act of any court or governmental or regulatory authority or body.

(c)  The provisions of this Section shall survive the termination or expiration of this Agreement.

7.  <u>Limitations on Services</u>.  (a)  The Services are limited to those specifically noted in this Agreement.

(b) M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client shall be deemed to be accounting or tax-related assistance.  The Client shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3.  M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement.  The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts.  M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client.

(c)  The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Client's financial projections, and the Client has not engaged M3 for that purpose.  The Services are provided based upon the understanding that the Client has sole responsibility for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto.  To the extent that, during the performance of Services hereunder, M3 is required to consider the Client's financial projections, the Client understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures.  There will usually be differences between projected and actual



PQPR-11
Sub V Trustee's Mtn to Retain

results, and those differences may be material. The Client understands and agrees that M3 will have no responsibility or liability relating to any such differences.

(d) M3 does not provide investment advice and the Services shall not include the provision of investment advice. The Client shall have sole responsibility for all investment decisions made by it. Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client. Although M3 may from time to time suggest or recommend options that may be available to the Client, the ultimate decision with respect to such options rests with the Client and the Client shall be solely responsible for such decision and its outcome. M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client.

(e) To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Client is or may become a party.

(f) The Client shall be solely responsible for the work and fees of any third parties engaged by the Client to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client by M3 or M3 is involved with the services provided by it. M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

(g) The provisions of this Section shall survive the termination or expiration of this Agreement.

8. <u>Confidentiality</u>. (a) Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other Party in the scope of the Engagement (the "***Confidential Information***"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity. For the avoidance of doubt, the term "Confidential Information" shall include (i) the terms of this Agreement, (ii) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, and models and (iii) any work product relating to the business of either Party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants. Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (a) is or becomes publicly available other than as a result of disclosure by the receiving Party in violation of this Agreement, (b) was already known to the receiving Party or (c) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information. In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.



PQPR-11
Sub V Trustee's Mtn to Retain

(b)  The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts.  M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors, agents and advisors who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement.  M3 may make reasonable disclosures of Confidential Information to third parties to the extent that M3 reasonably believes that such disclosure is consistent with its performance of the Services.  In addition, M3 will have the right to disclose to any person that it provided services to the Client or its affiliates and a general description of such services, but such disclosure shall not provide any other Confidential Information about M3's involvement with the Client.

(c) The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

9.  <u>Intellectual Property</u>.  Upon payment in full of all amounts owing to M3 hereunder (but subject to the provisions of Section 7 and 8 of this Agreement), the Client will own all Deliverables furnished by M3 to the Client in connection with the Services, *provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "***M3 Tools***"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information contained in the M3 Tools.  To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement.  The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose. The provisions of this Section shall survive the termination or expiration of this Agreement.

10. <u>Limitation on Damages</u>.  In no event shall M3 or any of its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "***M3 Representatives***") be liable to the Client or its affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which M3 and the M3 Representatives are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Client in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (collectively, the "***Liability Cap***").  This



**PQPR-11**
**Sub V Trustee's Mtn to Retain**

paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 or any M3 Representative was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined by final and non-appealable judgment of a court of competent jurisdiction to be prohibited by applicable law.  For the avoidance of doubt, the Parties hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other M3 Representatives in the aggregate for any and all claims or demands by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement.  Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap.  Under no circumstances shall the collective liability of M3 and the other M3 Representatives in connection with this Agreement exceed the Liability Cap.  The provisions of this Section shall survive the termination or expiration of this Agreement.

11. <u>Client Acknowledgement</u>.  The Client hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Client.  Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client.  Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement. M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client.  The provisions of this Section shall survive the termination or expiration of this Agreement.

12. <u>Miscellaneous</u>.  (a)  This Agreement (i) constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of the Parties.

(b)  The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction.  If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.



PQPR-11
Sub V Trustee's Mtn to Retain

(c)  M3's services hereunder are personal in nature and may not be assigned without the written consent of the Client.  The obligations of M3 hereunder are owing only to the Client and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)  This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state.  The Parties hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in the State of New York and waive any right to trial by jury in connection with any dispute related to this Agreement; provided that the exclusive jurisdiction and venue shall be the Court for so long as it maintains jurisdiction over the Debtor's bankruptcy proceeding.  The provisions of this paragraph shall survive the termination or expiration of this Agreement.

*[Remainder of Page Intentionally Left Blank]*



PQPR-11
Sub V Trustee's Mtn to Retain

This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By _____
    Name: Mohsin Y. Meghji
    Title: Managing Member

ACCEPTED AND AGREED
as of the date first set forth above:

Melissa Haselden, in her capacity as
subchapter V trustee

By: /s/ Melissa Haselden
    Name: Melissa Haselden
    Title: Subchapter V Trustee



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
|  | ) |  |
| FREE SPEECH SYSTEMS, LLC | ) | Case No. 22-60043 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**ORDER GRANTING SUBCHAPTER TRUSTEE'S MOTION
FOR ENTRY OF AN ORDER AUTHORIZING RETENTION OF M3 ADVISORY PARTNERS,
LP AS FINANCIAL ADVISOR TO THE SUBCHAPTER V TRUSTEE**

CAME ON FOR CONSIDERATION the Motion of the Subchapter V Trustee for Entry of an Order Authorizing Retention of M3 Advisory Partners, LP as Financial Advisor ("Motion"). The Court, having considered same, and any response(s) thereto, and found that notice of the Motion was proper is of the opinion that the Motion should be GRANTED; it is therefore ORDERED

1. The Trustee is authorized to employ and retain M3 Advisory Partners, LP as Financial Advisors effective as of the October 20, 2022 on the terms set forth in the Motion and Engagement Letter.

2. M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this chapter 11 case\ in compliance with §§ 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, applicable provisions of the Bankruptcy Local Rules, and any other applicable orders of the Court.

3. M3 is entitled to reimbursement of actual and necessary expenses related to the Motion.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

5.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.      The Trustee is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

PQPR-11
Sub V Trustee's Mtn to Retain