```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3                                    )  CASE NO: 22-60043
                                      )
 4    FREE SPEECH SYSTEMS LLC,        )  Houston, Texas
                                      )
 5         Debtor.                    )  Monday, December 19, 2022
                                      )
 6                                    )  3:01 p.m. to 4:24 p.m.
                                      )
 7    -----------------------------)
                                      )  CASE NO: 22-33553
 8                                    )
      ALEXANDER E. JONES,             )
 9                                    )
           Debtor.                    )
10                                    )
                                      )
11    -----------------------------)

12
                                   HEARING
13
              BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
14                 UNITED STATES BANKRUPTCY JUDGE

15
      APPEARANCES:
16
      For Debtor FSS:          RAYMOND WILLIAM BATTAGLIA
17                             Law Offices of Ray Battaglia PLLC
                               66 Granburg Circle
18                             San Antonio, TX 78218

19                             RJ SHANNON
                               Shannon & Lee LLP
20                             700 Milam Street, Suite 1300
                               Houston, TX 77002
21
      For US Trustee:          JAYSON B. RUFF
22                             HA MINH NGUYEN
                               Office of the US Trustee
23                             515 Rusk Avenue, Suite 316
                               Houston, TX 77002
24

25
```

```
 1   For Texas Plaintiffs:     AVI MOSHENBERG
                               NICK R. LAWSON
 2                             McDowell Hetherington LLP
                               1001 Fannin Street, Suite 2400
 3                             Houston, TX 77002

 4   For PQPR Holdings
     Limited, LLC:             STEPHEN WAYNE LEMMON
 5                             Streusand Landon Ozburn Lemmon LLP
                               1801 S. Mopac Expressway, Suite 320
 6                             Austin, TX 78746

 7   For Texas and
     Connecticut Plaintiffs:   MARTY L. BRIMMAGE
 8                             SARA LYNNE BRAUNER
                               DAVID M. ZENSKY
 9                             Akin Gump Strauss Hauer & Feld LLP
                               2300 N. Field Street, Suite 1800
10                             Dallas, TX 75201

11   For Subchapter 5
     Trustee:                  ELIZABETH CAROL FREEMAN
12                             The Law Office of Liz Freeman
                               PO Box 61209
13                             Houston, TX 77208-1209

14   For Debtor Alex Jones:    VICKIE L. DRIVER
                               Crowe & Dunlevy, PC
15                             2525 McKinnon Street, Suite 425
                               Dallas, TX 75201
16
                               SHELBY A. JORDAN
17                             Jordan & Ortiz, PC
                               500 N. Shoreline, Suite 900 N
18                             Corpus Christi, TX 78401

19   For Connecticut
     Plaintiffs:               RYAN E. CHAPPLE
20                             Cain & Skarnulis PLLC
                               303 Colorado Street, Suite 2850
21                             Austin, TX 78701

22   For Schwartz Associates:  MICHAEL P. RIDULFO
                               Kane Russell Coleman Logan
23                             5151 San Felipe, Suite 800
                               Houston, TX 77056
24

25
```

```
1    Court Reporter:          A. BANDA

2    Courtroom Deputy:        ZILDE MARTINEZ

3    Transcribed by:          Veritext Legal Solutions
                              330 Old Country Road, Suite 300
4                             Mineola, NY 11501
                              Tel: 800-727-6396
5

6

7    Proceedings recorded by electronic sound recording;
     Transcript produced by transcription service.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      HOUSTON, TEXAS; MONDAY, DECEMBER 19, 2022; 3:01 PM

2                          (Call to Order)

3           CLERK:  All rise.

4           THE COURT:  Be seated.  Okay.  Good afternoon,

5      everyone.  This is Judge Lopez.  Today is December 19th.

6      I'm going to call the 3 p.m. cases.  I'm going to call the

7      Free Speech Systems case, 22-60043, and I'm going to also

8      call at the same time 22-33553, the Alexander Jones case.

9           I'm going to just tell everyone, I typically do

10     this, just remind anyone.  There's a number of folks on the

11     cameras here appearing virtually.  I'm just going to ask

12     everyone to please be mindful of your background.  I still

13     consider video appearances as an extension of appearance in

14     the courtroom.  So the line is completely muted at this

15     time.  I'm going to take appearances in the courtroom first,

16     and then I'm going to open up the line.

17          For the folks who wish to remain on the line, I

18     see Mr. Jordan and Mr. Chapple and Mr. Brimmage and Ms.

19     Haselden.  I'm going to just keep your line open.  I just

20     ask that you please keep your phone on mute.  But that way

21     you don't have to keep hitting 5*.  So why don't I just

22     begin by taking appearances.  And if you wouldn't mind just

23     telling me in which case you're making an appearance.

24     Sometimes I guess that could be both.

25          Mr. Battaglia, I see you there.  Why don't you go

1   first, start the party.

2          MR. BATTAGLIA:  Good afternoon, Your Honor.  Ray

3   Battaglia, for Free Speech Systems.  I'm appearing in both

4   cases.  I have with me today Patrick McGill, the chief

5   restructuring officer for Free Speech Systems.

6          THE COURT:  Okay.  Good to see you, Mr. McGill.

7   Okay.

8          MR. RUFF:  Good afternoon, Your Honor.  Jayson

9   Ruff and Ha Nguyen, for the U.S. trustee's office, appearing

10  in both cases.

11         THE COURT:  Okay.  Good afternoon.

12         MR. MOSHENBERG:  Good afternoon, Your Honor.  Avi

13  Moshenberg and Nick Lawson here on behalf of the Texas

14  plaintiffs in both cases, and we'll have Marty Brimmage and

15  David Zensky speaking on our behalf today.

16         THE COURT:  Okay.  Good afternoon.

17         MR. LEMMON:  Your Honor, Steve Lemmon, on behalf

18  of PQPR.  We are a party only in the FSS case.

19         THE COURT:  Okay.  Good afternoon.

20         MR. SHANNON:  Good afternoon, Your Honor.  RJ

21  Shannon, on behalf of Shannon & Lee LLP.  I'm just in the

22  Free Speech Systems case.

23         THE COURT:  Okay.  Good afternoon.  Mr. Brimmage

24  and Mr. Zensky, if you can, just hit 5*.  I know that you're

25  there and you'll be making an appearance.  Maybe we can just

1    -- I can see you now.  There are a number of people on the

2    line, and it's just easier.  Got you.  All righty.

3           Mr. Brimmage, did I get you?

4           MR. BRIMMAGE:  You did, Your Honor.  Good

5    afternoon.  Marty Brimmage, with Akin Gump Strauss Hauer &

6    Feld --

7           THE COURT:  Okay.

8           MR. BRIMMAGE:  -- here on behalf in the FSS -- in

9    the FSS case on behalf of the Texas and Connecticut

10   plaintiffs.  And I'm joined today, Your Honor, by my

11   partners, Sara Brauner and David Zensky, who will both take

12   speaking roles in this hearing today.

13          Also, Your Honor, I just want to give the Court

14   the heads up that last week the formation of a committee was

15   announced and appointed by the U.S. trustee in the Alex

16   Jones bankruptcy case before Your Honor, the Chapter 11.

17   That is at Docket 42.

18          At Docket 56, just before the hearing today, we

19   filed a notice of appearance, Your Honor.  Akin Gump has

20   just earlier today been retained to represent that

21   committee.  So we will be appearing in the Alex Jones

22   Chapter 11 case on behalf of the committee.  And if I could,

23   Your Honor, when the Court has one second, I would just like

24   to announce who the committee members are.  We don't have to

25   do it now.  But I'm happy to do it whenever the Court would

1    like.

2            THE COURT:  Okay, and I did see the notice.  So I

3    do know who the committee members are.  Let me go ahead and

4    continue taking appearances at this point.

5            Mr. Zensky, did I unmute your line?  I just want

6    to make sure that you've been unmuted?  Ah, I did not.  I

7    think I've got you now though.

8            MR. ZENSKY:  There we go.  Can you hear me now,

9    Your Honor?

10           THE COURT:  Just fine.  Good afternoon, sir.

11           MR. ZENSKY:  Good afternoon, Your Honor.  David

12   Zensky, Akin Gump Strauss Hauer & Feld, and with me is my

13   colleague, Sara Brauner, appearing for the Sandy Hook

14   families in both the FSS case and the Jones case.

15           THE COURT:  Okay.  Good afternoon.

16           MS. FREEMAN:  Good afternoon, Your Honor.

17   Elizabeth Freeman, on behalf of Melissa Haselden, the

18   Subchapter 5 trustee for FSS.  We're appearing in the FSS

19   case.

20           THE COURT:  Okay.

21           MS. FREEMAN:  Additionally, Your Honor, appearing

22   remotely on behalf of M3 is Brian Griffith.

23           THE COURT:  Okay.  I see you there, Mr. Griffith.

24   Good afternoon.  Ms. Haselden, Mr. Griffith, if any of you

25   want to speak today, go ahead and hit 5* and let me just be

1    able to recognize you and at least unmute your line.

2           Ms. Driver, I see you there.  Do you want to make

3    an appearance at this time?  And if you hit 5*, I will -- I

4    think I see you there.  Did I get you, Ms. Driver?

5           MS. DRIVER:  Yes.  I think so.  Thank you, Your

6    Honor.  Vickie Driver, on behalf of Alex Jones, appearing in

7    the Alex Jones case as well as appearing in the FSS case on

8    behalf of Mr. Jones.  Also remote with me is Mr. Jordan.

9           THE COURT:  Okay.  Mr. Jordan --

10          MS. DRIVER:  And Mr. Jones -- and Mr. Jones is

11   here and we are actually in the same conference room.  But I

12   just had our own camera set up.  So if there's any issue or

13   concern with that, please let me know.

14          THE COURT:  Okay.  No.  Thank you, and good

15   afternoon, Mr. Jones.

16          Mr. Jordan, can you unmute your line?  I just --

17   if you want to hit 5* just in case --

18          MR. JORDAN:  Yes.

19          THE COURT:  Did I unmute you already?

20          MR. JORDAN:  I hit 5* but I'm not sure if --

21          THE COURT:  I can hear you.  So that's victory

22   I'll claim.  Anyone else wish to make an appearance?  Let me

23   go ahead and hit 5* at this time.  Okay.  There is a 713,

24   last four digits 2814.

25          MR. CHAPPLE:  Good afternoon, Your Honor.  This is

1   Ryan Chapple.  Can you hear me okay?

2            THE COURT:  Just fine.  Good afternoon, sir.

3   Okay.

4            MR. CHAPPLE:  And I'm appearing for the

5   Connecticut plaintiffs in both matters.  Thank you, Your

6   Honor.

7            THE COURT:  All righty.  There's an 832 number.

8   I'm about to unmute.

9            MR. RIDULFO:  Your Honor, I believe that's me.

10  Good afternoon.  It's Mike Ridulfo, for Schwartz Associates.

11           THE COURT:  Okay.  Good afternoon.  Anyone else

12  wish to make an appearance?  You certainly can reserve your

13  opportunity to do so.

14           Okay.  It sounds like that's it for now.  For the

15  folks who I've unmuted, please just keep your line on mute.

16  But feel free to speak when appropriate.  So Mr. Battaglia,

17  why don't I start with -- well yeah, why don't I start with

18  you.  Maybe you and Ms. Driver can kind of tell me where

19  things stand and where we're going.  I appreciate everyone

20  coming today.  It sounds like a lot of things have gotten

21  worked out potentially, which is great.

22           Mr. Jones, I appreciate your participating today.

23  I thought there were going to be some contested issues

24  today, and I think it's important sometimes to just have a

25  client -- obviously the client here just in case someone

1   needed to hear from you and get your thoughts on stuff.  But

2   we'll see where things go.  I don't have any particular

3   questions for you.  just there were a number of matters that

4   were contested and I just thought it made sense to just have

5   -- sometimes it's good to just have the client there, just

6   turning it.  So let me, Mr. Battaglia, turn to you.

7            MR. BATTAGLIA:  Ray Battaglia, for Free Speech

8   Systems.  I'm pleased to report that I think substantially

9   everything on both cases is resolved, and I'll let Ms.

10  Driver speak, as to the Alex Jones matters.  There's some

11  dialogue that I know that needs to be had, and I think the

12  M3 application has some opposition to it.  But let me go

13  through the Free Speech matters on the Court's docket, and

14  then I'll let Ms. Driver address hers.

15           There's a continued cash collateral hearing.  This

16  would be the seventh interim cash collateral.  The budget

17  was circulated to the parties last week.  The proposed order

18  was circulated Sunday.  I've not received any comments, save

19  one, to the budget or the form of order.  There are some

20  changes or tweaks in the order based on the change in the

21  way that the debtor is operating.  So, for example, it used

22  to provide that we would pay fulfillment cost to Blue

23  Ascension.  We're not using Blue Ascension, so that had to

24  be modified.  I've also simplified it, so I'm not referring

25  to the first interim, second interim, third interim.  It's

1    just first and subsequent.  But other than that, the order

2    is substantially in the same format as all of the preceding

3    interim orders.

4            We still have not concluded payment to PQPR of the

5    half a million dollars.  I expect that will happen during

6    this period, and when it does, we'll send the notice that's

7    required to be sent.  There is a limited objection of Alex

8    Jones to the cash collateral motion.  I'll let Ms. Driver

9    address that, and we can talk about what needs to be done in

10   that context at that time.

11           THE COURT:  Okay.

12           MR. BATTAGLIA:  There is an application

13   authorizing the appointment of Texas -- appellate counsel

14   for the Texas matter.  That's the Martin Desire firm, and

15   I'm sure I'm mispronouncing the second name, but there are

16   no objections to that.  The Court has noted, and it's not

17   been lost on me or my client, as has the U.S. trustee's

18   office that the 60/40 split proposed on fees, and there is

19   not what the Court is likely to approve.  So with the caveat

20   that Mr. Jones has the right at some point to come back and

21   ask for a reallocation, we'll upload a new order authorizing

22   their employment on a 50/50 fee splitting basis.

23           THE COURT:  I think that's fair.

24           MR. BATTAGLIA:  There is at Docket 282, the

25   application to employ M3.  That has opposition from PQPR.

1    I'll let Mr. Lemmon address that, and Ms. Freeman.

2           There is at Docket 299, the second emergency

3    motion to extend the time to file a plan of reorganization.

4    Let me just make this one comment.  Obviously, we are

5    proceeding in mediation, and we are proceeding.  I think

6    both parties have met with at least telephonically or video

7    with judges recently.  And so there needs to be an exchange

8    of information before we really get going on that.  But

9    they're interrelated, obviously, the timing of a plan and

10   should we file something that's a template that may be a

11   distraction as opposed to an advantage.

12          So we've asked for an extension through a date of

13   your choice through February, but obviously Your Honor can

14   extend it to whatever time period you think is appropriate.

15          THE COURT:  Okay.

16          MR. BATTAGLIA:  Then there is, in the Free Speech

17   case a motion filed by Alex Jones, an emergency motion to

18   modify the stay orders.  I think that has been resolved.

19   But, again, I'll let Ms. Driver address that matter.  It's

20   her motion, when she addresses the matters pending in the

21   Alex Jones case.  And I'm happy to proceed however you wish

22   to at this point.

23          THE COURT:  Okay.  Let me -- so actually, you know

24   what, it's probably best for me to hear from Ms. Driver and

25   kind of just set the table for what we're dealing with in

1     the Jones case.

2            Ms. Driver, I'm going to turn things over to you,

3     and you can kind of tell me, and then I'm going to turn to

4     Mr. Brimmage and just hear from the committee in the Jones

5     case.  But just in terms of what's set for today and what we

6     have to kind of take up.

7            MS. DRIVER:  Certainly, Your Honor.  We have the

8     stay motions, which sort of were the opposite side of one

9     coin --

10           THE COURT:  Yeah.

11           MS. DRIVER:  -- filed by the plaintiffs in the

12    Jones case and then by us in the Free Speech case.  We've

13    come to a resolution that if it is the plaintiffs' desire to

14    spend the money on appellate counsel, that we are not going

15    to stand in the way of that.  It was our hope at the

16    beginning that we would want to preserve those amounts.  But

17    if that is not the wish of the plaintiffs, then it is what

18    it is, and we will allow that to move forward.

19           So we have compromised and with the plaintiffs.

20    Ms. Brauner was very helpful in getting us terms of the

21    order so that we could agree that essentially, as long as

22    our appellate counsel is approved by this Court and their

23    fee structure is approved by this Court, that we could again

24    pay those professionals and there wouldn't be an argument

25    overpaying our counsel.

1          THE COURT:  Yeah.

2          MS. DRIVER:  So I believe that there's an order

3    that's been uploaded to Your Honor that's been approved by

4    the parties.  The only other issue with that is a caveat to

5    Mr. Jones's salary from FSS, and I'll get to that in a

6    minute.  So that resolves both of those motions, I believe,

7    and there's a companion order for FSS that essentially

8    mirrors that order that will resolve their motion in our

9    case, and then once the order is entered, we will withdraw

10   the motion in the FSS case.

11         THE COURT:  Okay.  What else are we taking up?  I

12   know there was a joint admin.  Are you still going forward

13   with that, Ms. Driver?

14         MS. DRIVER:  Your Honor, we were trying to do that

15   for administrative convenience.  Unfortunately, the U.S.

16   trustee's office and the Sub 5 trustee did not agree with us

17   that joint administration was the right thing to do here.  I

18   think it just was a bit of an administrative non sequitur

19   related to having a Chapter 11 case and a Sub B case that's

20   jointly administered.

21         The good news is the first thing I wanted was to

22   end up in front of the same judge, which happened

23   automatically.  And then the second thing is that we could

24   have joint hearings, which appears to be happening

25   automatically, and that we could jointly employ

1    professionals and have them file the applications jointly.

2    I think we can take care of this with just a really simple

3    limited order on joint administration that just says we will

4    have joint hearings without any special permission between

5    the cases and that employment applications can be filed in

6    both cases, that while they need to deal with the conference

7    in both cases, don't necessarily need to be different.  And

8    then the fee apps, of course, can be filed in both cases

9    identically.  And then, of course, the fee sharing will be

10   according to the deal between FSS and Mr. Jones.

11              THE COURT:  So let me just tell you, Ms. Driver,

12   my thoughts on joint admin.  It's such a routine motion, I

13   normally don't even -- I normally just sign them without

14   even -- in this case, it is complicated because now you've

15   got a CRO and then you've got an individual.  The Sub 5, 11

16   part doesn't really bother me that much.

17              What is going to get confusing is if kind of what

18   happened today where Mr. Jones files a limited objection in

19   a Free Speech case with a Free Speech heading.  It's just

20   going to start to get a little bit unruly.  And you have the

21   Texas plaintiffs in one case who may also be a member of the

22   committee in another case, and it's just going to start to

23   get a little confusing.  And I want to make sure that they

24   understand what their roles are in one case versus the

25   other.

1        But I assure you, Ms. Driver, I'm going to call

2    every case.  Every time I call a Free Speech case, I'm going

3    to jointly call the Jones case.  And if there's a hearing

4    set in the Free Speech case or the Jones case, anybody can

5    self-calendar a motion on those dates.  So they will

6    effectively be jointly administered, whatever is most

7    efficient in terms of filing motions.  And as long as

8    everyone's getting fair due process in each case, I can

9    assure you -- I'd like to keep these cases separate because

10    I think I want to make sure that the parties understand

11    their roles, their separate roles in these cases, including

12    creditors, right, including the Texas plaintiffs.

13        But I also think it's going to get a little

14    confusing if, for example,    Free Speech objects to a

15    motion with their own heading.  And I think that's going to

16    get a little confusing.  But effectively, I will always call

17    these cases together because they should be called together,

18    in my opinion.  Maybe we'll have a one-off every now and

19    then, but you will effectively have joint administration.

20    Fee applications will be taken up in the most efficient

21    manner, so you don't have to worry about any of those issues

22    with me.  Whatever makes the most sense, as long as parties

23    are getting due process, you're not going to have a problem

24    with me on those things.

25        So you can upload an order if you want, or you can

```
 1   just take my word on it.  Whatever makes the most sense,
 2   we'll take care of.  I just want to make sure that everyone
 3   kind of knows if Jones is going to file the schedules, then
 4   they can look to the schedules in that case and things of
 5   that nature.  It just makes things easier.  But you won't
 6   have to worry about dates and calendaring and separate
 7   hearings going on.  I'm not doing that.  So you'll
 8   effectively have joint administration.  Okay?
 9              MS. DRIVER:  Your Honor, with that, I don't see
10   any reason for us to do anything other than just withdraw
11   this joint administration motion.
12              THE COURT:  Okay.
13              MS. DRIVER:  And I think that will just resolve
14   the objections.  And we are just not here to try to spend
15   political capital to get into semantic arguments.  So we're
16   just trying to work with everyone as best --
17              THE COURT:  I got it.  And I think the way that
18   you all did it today, like, for example, with the lift stay
19   motions, it creates a little bit of extra paperwork, but it
20   keeps things clean in a way that everyone can understand.
21   And I'm fine with it.  I have no issues with that.  So I
22   think you also have a schedules extension motion, right?
23              MS. DRIVER:  We do.  I believe it was on a
24   negative notice, but we have come to an agreement with the
25   U.S. trustee on the amount, and we've received no other
```

1    opposition.  So if Your Honor would like, we're just happy

2    to submit a certificate of no objection.  It would just be a

3    30-day --

4            THE COURT:  So yeah --

5            MS. DRIVER:  -- extension.  So it would be the 14

6    days we normally get under the code plus 30.  So it would be

7    a total of 45.  I think that puts us out just slightly past

8    the 341 hearing.

9            THE COURT:  Can we just -- why don't we just pick

10   a date?  Why don't we just pick -- so there's no confusion

11   and no foot faults or any of that stuff.  Why don't we just

12   pick a date?  Where does that roughly put you?

13           MS. DRIVER:  January 15th, Your Honor.  And I'm

14   just looking at that to make sure it's not a weekend.

15           THE COURT:  Yeah, let's take a look.

16           MS. DRIVER:  That is a Monday.

17           THE COURT:  It's a Sunday --

18           MS. DRIVER:  Oh, it's Sunday.  How about this?

19           THE COURT:  And then the 16th is MLK Day.  Why

20   don't I just give you the 17th?

21           MS. DRIVER:  That would be wonderful.  Thank you,

22   Your Honor.

23           THE COURT:  All right, January 17th.  Schedules

24   extension.  What's the docket number on that?  I'll just

25   enter that.  This one, I'm going to -- I know everybody's

1   been talking, and I appreciate it.  But it's important to

2   get accurate schedules, and if the professionals are telling

3   me that they need time to get this done, then it is what it

4   is.  And if you need the time, doesn't it -- it seems

5   reasonable to me.  What's the docket number on that?

6          MS. DRIVER:  Your Honor, I really apologize.  I

7   can get the docket number right now.

8          THE COURT:  No, no.  It's okay.  I just want to

9   sign the order right now.  And what I'll do on the order is

10  I'll just say January 17th, and that means January 17th.

11  That way you kind of know what it is.

12         MS. DRIVER:  That's perfect.

13         THE COURT:  Right.  That means 11:59.  Right.

14  Just whenever it gets signed.  Okay.  What else?

15         MS. DRIVER:  I also told Mr. Jones (indiscernible)

16  until midnight, so thank you, Your Honor.

17         THE COURT:  Yeah.  Yeah.

18         Mr. Brimmage, let me hear from you.  And now I

19  think it's probably appropriate for me to hear from the

20  committee, and you can tell me about the committee members.

21  The one -- I'm glad to hear that you've hired counsel, and I

22  know that you're thinking about these things.  I'm just

23  saying it so that it said, and I'm sure that you've already

24  started thinking about all of these things.  And I want to

25  make sure that the committee members kind of -- right,

1    they're kind of involved in two separate cases in individual

2    capacities, and then also probably mediating.  And that's a

3    lot.  And I want to make sure that they just hear it from

4    me.  And all the -- I'm sure the advice that you're telling

5    them about fiduciary duties and all that, they are

6    incredibly important.  And I know that you're talking to

7    them, you and Mr. Chapple.

8         So I've got no -- they don't need to hear the

9    speech from me.  I'm saying it so that it's on the record

10   said.  That they're going to be wearing multiple hats.  And

11   it's really important that they listen to the advice of

12   counsel and listen to you and Mr. Chapple as you advise them

13   on their particular roles because it's really important that

14   they kind of understand the way it is.  Sometimes there's

15   overlap, sometimes there's not.  No one needed me to say

16   that.  I'm just saying it so that it's said on the record.

17        So Mr. Brimmage, with that -- and Mr. Zensky, I'll

18   turn it over to you, if you have anything on behalf of the

19   committee.  I just appreciate that they've got good counsel.

20        MR. BRIMMAGE:  Absolutely, Your Honor.  I'll say a

21   couple of things and then I'll let Ms. Brauner and Mr.

22   Zensky chime in.  So you're absolutely right.  There's a lot

23   going on in these two cases all at the same time.  And just

24   to level set, Your Honor, you have the Texas group of

25   plaintiffs and you have the Connecticut group of plaintiffs

1  who both have counsel and have appeared in the FSS case.

2  Just as a reminder, Mr. Chapple represents the Connecticut

3  plaintiffs and Mr. Moshenberg and Mr. Martin represent the

4  Texas plaintiffs.  So you do have that going on.

5          And just also to level set, Your Honor, the

6  committee is comprised of only members from the Texas and

7  the Connecticut plaintiffs group.  Just to let the Court

8  know, there's Robert Parker from the Connecticut plaintiffs

9  Group, Nicole Hockley from the Connecticut plaintiffs group,

10 Jennifer Hensel from the Connecticut plaintiffs group, David

11 Weaver from the Connecticut plaintiffs group, Leonard Pozner

12 from the Texas plaintiffs group and Scarlett Lewis from the

13 Texas plaintiffs group.

14         And so we understand what you said, Your Honor.

15 We actually completely agree there's a lot of things going

16 on.  There are fiduciary duties on behalf of the committee

17 that must be adhered to and we will be working with not only

18 the committee members but also their separate counsel in the

19 cases to make sure that we're all doing the things that

20 we're supposed to do.  And of course if we have any

21 questions about it or need any guidance, Your Honor, we'll

22 come to you and lay that out.  But we appreciate you letting

23 us know and reminding us because we do take those

24 obligations very seriously.

25         THE COURT:  Yeah, and --

1          MR. BRIMMAGE:  Let me just say one other thing

2     about -- go ahead, Your Honor.

3          THE COURT:  No, no.  You didn't interrupt.  I'm

4     just saying it so that it's on the record.  Not that anyone

5     needed to hear from the judge on that point, but I just

6     think it's important that it's said from the Court, that

7     these things were on my mind.  And I was thinking about the

8     multiple hats that everybody has, and it can get confusing.

9     And I just wanted to make sure that everybody was listening

10    to their counsel and individual counsel.  That's really it.

11    Go ahead.

12         MR. BRIMMAGE:  Thank you, Your Honor.  One

13    suggestion before I turn it over to Mr. Zensky and Ms.

14    Brauner, we're totally fine in how the Court wants to handle

15    the joint hearings and joint notices and all that good

16    stuff.  What might be helpful going forward to all of us,

17    and maybe this is just a me thing, but if Mr. Battaglia, on

18    behalf of FSS, Ms. Driver on behalf of the Jones bankruptcy

19    proceedings, get together and file an agenda before the

20    hearing so we can all be kept straight on what's happening,

21    in which estate and what's going on.

22         That's not a complaint.  It's just a suggestion,

23    because, like the representation issues, there's just a

24    whole lot going on all at the same time.  And I think that

25    might just help us keep all on the same page.  Just a

1    suggestion, Your Honor.

2         THE COURT:  Well, what I was thinking too, Mr.

3    Brimmage, is look, I think an agenda is going to be

4    necessary if we're going to call them together and it may

5    make sense and someone just reaching out to my case manager.

6    And if you know things are coming up, just get a couple of

7    dates, right, that, you know, may be important, and we can

8    have an omnibus estate, and I'll pick it.  I'm happy to do

9    it.  Whatever is the most efficient there, Mr. Battaglia and

10   Ms. Driver.

11        You all can get together, and you can pick -- if

12   something's coming up and you need a hearing on something,

13   just pick it.  Just get my case manager, and you can both

14   self-calendar, and there can be an agenda filed,  a joint

15   agenda for that stuff.  Essentially that's the way it would

16   operate if it was jointly administered.  So since we're kind

17   of de facto doing that, let's just continue doing that.  So

18   it makes sense to me.

19        MR. BRIMMAGE:  And with that, Your Honor, given

20   that Ms. Brauner and Mr. Zensky have dealt with all the

21   other issues that the Court has heard about today, let me

22   turn it over to them for their thoughts.

23        THE COURT:  Mr. Zensky?

24        MR. ZENSKY:  Thank you.

25        THE COURT:  Ms. Brauner?

 1          MR. ZENSKY:  Yeah.  Good afternoon, Your Honor.

 2    David Zensky.  Can you hear me?

 3          THE COURT:  Just fine.  Good afternoon.

 4          MR. ZENSKY:  Great.  Good afternoon, Your Honor.

 5    As you've heard and discussed with Ms. Driver and Mr.

 6    Battaglia, I think that all of the issues that the families

 7    had before today's hearing have been worked out.  As you

 8    know, we filed a motion, an emergency motion in the Jones

 9    case to modify the stay, which was the flip side of the coin

10    of Mr. Jones's motion in the FSS case, as Mr. Driver

11    described it.

12          Those have been resolved, and you have before you

13    two proposed orders on consent.  In the Jones case, it's

14    Docket 55, and in the FSS case, it's Docket 329.  And

15    they're basically mirror images of each other.  There are

16    little tweaks in the FSS order because there had previously

17    been a form of relief in the Connecticut cases that was a

18    little different from the Texas cases.  So that's addressed,

19    and that's not superseded by that -- this order, this

20    proposed order.

21          In any event, subject to Your Honor having any

22    questions, those issues have all been worked out.  Mr.

23    Battaglia referred to his motion at Docket 299 to extend the

24    deadline for the filing of a plan.  The families have not

25    filed an objection to that.  And Mr. Battaglia has agreed

1    that whatever extension the Court may grant for the plan,

2    for the filing of a plan will also apply to the deadline for

3    filing challenges to dischargeability in the FSS case.  So

4    right now, I think those dates were staggered by about three

5    weeks.  But the current deadline for non-dischargeability

6    actions is January 5th.

7          So we would ask the Court at the same time as

8    determining what to do on the plan deadline, treat that

9    deadline the same, and extend it the same amount of time.

10   And, of course, that's for the reservation of rights of all

11   parties as to legal and factual issues regarding those

12   motions.

13         THE COURT:  Okay.  Let me just see if we can kind

14   of clear the deck a little bit.  As I understand those

15   motions, one is essentially agreeing to lift the stay in

16   each of those cases or to confirm that the stay is lifted in

17   one and then agreeing to lift a stay on the other to allow

18   final judgment to be entered into Connecticut cases and

19   subject to -- I'd also have to approve then appellate

20   counsel at that time.

21         I want to make sure it's clear in my mind that

22   that's the deal.  I want to make sure that whatever I sign,

23   a court in Connecticut looks at what I've done, that we all

24   have agreement what it is that I signed and what the

25   parties' expectations are.

1          MR. BATTAGLIA:  Your Honor, Ray Battaglia, for

2     Free Speech Systems.  And Ms. Driver can elaborate further.

3     But generally speaking, obviously we need to retain

4     appellate counsel.  We're doing that in Texas with the

5     matter before the Court today.  And I probably need a new

6     order for you with the 50/50 split, and I'll do that.

7          On Connecticut counsel, Norm Pattis, who has

8     represented the debtor, both debtors in the litigation, is

9     the almost certain candidate to be the appellate counsel.  I

10    will need a new application to expand the scope and the

11    terms of his employment.  And essentially, the orders that

12    are before you today say there's no objection to the joint

13    representation by appellate counsel of FSS and Alex Jones,

14    and it has some additional language about their fee

15    applications and how that process goes forward.

16         But generally speaking, that's correct.  We're

17    saying the cases can go forward to final judgment, which

18    means also post-trial motions and appellate proceedings and

19    that the parties, the debtors will retain their counsel and

20    the plaintiffs won't object to retention of joint counsel

21    and some standards, in essence, regarding compensation.

22    That's my appreciation of that order.

23         THE COURT:  Okay.  So let me -- since you're

24    standing up there, Mr. Battaglia, I'm going to give you --

25    on your extension of the time to file and I want to hear

1    thoughts on two things.  I want to hear if anyone has any

2    comments on me just signing the orders.  It sounds like

3    there's an agreed order in both cases.  There's consent.

4    I've got no issues with those proposed orders as filed.  I'm

5    willing to sign them right now and get those on the docket.

6            Ms. Driver, subject to your confirmation, Ms.

7    Driver, to your understanding on that, I can sign both of

8    those orders right now, and I think February 7th, it's like

9    a Friday, Friday, February 17th on the extension of the time

10   to file the plan and extension of the time to file an

11   objection to dischargeability.

12           MR. BATTAGLIA:  If Mr. Brauner will send me a

13   paragraph to add to the order, I'll upload a revised order

14   with February 17th as the date.  Obviously, we're preserving

15   the right to --

16           THE COURT:  Oh, I can add that in.  I can do that.

17           MR. BATTAGLIA:  I don't like making you my

18   secretary, Your Honor.

19           THE COURT:  No, no, no.  I mean, it's just easier.

20   If I can just -- If folks want I can just copy it.  We can

21   just use the same language that we did before and keep it.

22           MR. BATTAGLIA:  I think we did a separate

23   stipulation with Mr. Chapple on the extension

24   dischargeability deadline.

25           THE COURT:  I'd like to then -- well, why don't

1   you upload that?

2          MR. BATTAGLIA:  I'll do that, Judge.

3          THE COURT:  Okay.

4          MR. BATTAGLIA:  And I'll send it to Ms. Brauner.

5          THE COURT:  But that's my understanding, by

6   signing this order today, Mr. Zensky, whatever the deal was

7   last time, and extension, Ms. Brauner, the extension to

8   dischargeability, it's the same deal.  They'll just run the

9   same way to February 17th, and I want to make sure that

10  February 17th is actually a real date.  I got to make sure.

11  Yes.  February 17th is a Friday.  Okay.  Does that work for

12  you all?  Ms. Brauner, Mr. Zensky, does that work for you?

13         MR. ZENSKY:  Your Honor, David Zensky.  Just to be

14  clear, February 17th is the new date, the new plan deadline,

15  and then the dischargeability will be like three weeks after

16  that?

17         THE COURT:  That's correct.  Whatever the deal

18  was.

19         MR. ZENSKY:  The same deal was --

20         THE COURT:  Yeah.  That's exactly right.

21         MR. ZENSKY:  Yes.  That's fine, Your Honor.  Thank

22  you.

23         THE COURT:  Okay.  All righty.  I'm going to sign

24  these orders lifting the stay right now.  So that then tells

25  me --

1           I just --

2           THE COURT:  Go ahead.  Unless somebody tells me

3   otherwise.  Ms. Driver --

4           MS. DRIVER:  I'm sorry, Honor.

5           THE COURT:  Go ahead.

6           MS. DRIVER:  I'm sorry, Your Honor.  I think it's

7   clear in the order that the only thing that we're really not

8   allowing to afford at this point is collection.  Obviously,

9   that would come back to the court.

10          THE COURT:  No, I got that part.

11          MS. DRIVER:  Thank you, Your Honor.  I appreciate

12  that.

13          THE COURT:  Okay.

14          MR. ZENSKY:  And Your Honor --

15          THE COURT:  Go ahead.

16          MR. ZENSKY:  Your Honor, just to be clear, in your

17  comments, I think you referenced just the Connecticut

18  plaintiffs, but the orders before you apply to the Texas

19  plaintiffs whose cases have gone to verdict and are ready

20  for judgment, and whatever follows the orders apply to both.

21          THE COURT:  That's correct.  That's right.

22  Because that's the definition of the Sandy Hook post-trial

23  families, right?

24          MR. ZENSKY:  Right.

25          THE COURT:  Yes.

1              MR. ZENSKY:  Exactly, Your Honor.

2              THE COURT:  That's exactly right.  No, no.  I

3    appreciate the clarification on the record.  That's

4    important.  Thank you.  Okay.

5              MR. ZENSKY:  You're welcome.

6              THE COURT:  I'm signing that order right now.  And

7    let me sign -- I'm sorry.  I want to make sure I got this

8    right.  I just signed the lift stay order in the Free Speech

9    case and in the Jones case, so we should be -- now, and I'm

10   going to sign an order extending -- does anyone have any

11   objection to the extension of the time through February

12   17th?  Any objection to that?  And I am going to sign that

13   order.

14             Folks, give me a second.  I just want to clear the

15   deck, because I'm going to enter these orders right now as

16   we speak.  I'll send them off the docketing so that we can

17   at least clear the deck and figure out what's really left.

18   Okay.  That's a 299.  I appreciate everyone's patience here.

19   Okay.  I have now signed that order.  So that -- let me just

20   take up the Texas appellate counsel.  Is there any objection

21   to the Texas appellate counsel?

22             MR. BATTAGLIA:  None were received other than the

23   verbal concerns about the split on the allocation of fees --

24             THE COURT:  Subject to a 50/50 split, which you'll

25   upload.  That's approved.

1          MR. BATTAGLIA:  Yes.

2          THE COURT:  Okay.  What are we on --

3          MS. DRIVER:  Your Honor -- and I'm sorry.  I'm

4     bootstrapping a little here, so I apologize.

5          THE COURT:  No.  You're fine --

6          MS. DRIVER:  -- is it possible for me to just file

7     the same application to be employed in Mr. Jones's case?  I

8     think we have maybe three additional creditors, making sure

9     those are served by mail, if not via ECF.

10          THE COURT:  Yeah.

11          MS. DRIVER:  Could we just have a negative time

12     period on that so we can get that running?

13          THE COURT:  Yeah, I think that makes sense.

14          MS. DRIVER:  Okay.  And I think that most of the

15     claimants are truly represented in this matter, in both

16     matters.  So we'll make sure that any additional creditors

17     that we have on his side get that notice.

18          THE COURT:  Okay.  That sounds perfect.  Okay.  So

19     now we're getting closer, I think, to actual contested

20     issues.  All righty.  It sounds like, according to judge

21     notes, don't trust them, I think in the Free Speech case,

22     we're left with M3 and cash collateral.

23          MR. ZENSKY:  That's correct, Your Honor.  Cash

24     collateral, as I said, the only comment is Alex Jones's

25     limited objection regarding his salary, and I'll let Ms.

1    Driver speak to that.

2        THE COURT:  What's your position on that?

3        MR. BATTAGLIA:  Well, Your Honor, it is clear to

4    Mr. McGill and to me as debtors' counsel, that in the

5    absence of Mr. Jones being on the air broadcasting and

6    promoting products, that the FSS case is not tenable.  And

7    so he's a vital cog.  Compensation for people in his

8    position is considerably more than what we're paying.  We're

9    paying $20,000 per pay period.  There's an advisory about

10   some additional value that's basically that I submitted the

11   last hearing.  But his salary under his employment contract

12   pre-petition was set at a million three.  We're not in a

13   position to pay a million three as it stands right now.

14       What's he worth to the debtor?  He's worth a lot,

15   and he's worth more than he's getting paid.  From Mr.

16   McGill's perspective, it's a question of what are we

17   currently able to pay.  The budget that has been submitted

18   to you in the cash collateral order shows a pretty flat line

19   period of time during this 30 days.  So our cash is not

20   inconsequential, but it's not growing, and it's not likely

21   to grow during this period.  We have some product purchases

22   we have to do that won't turn into revenue until an out

23   period.

24       So it's with concerns about administrative

25   insolvency of the kinds of things that are liable to come

1    before you in terms of professionals being employed.  We

2    think he's worth more than that.  Whether we could pay it

3    and what that number is, is a question I leave up to the

4    Court and the parties.  It was set where it was set because

5    --

6                THE COURT:  Leave it up to me, huh?

7                MR. BATTAGLIA:  It is.  All things are, Judge.  At

8    the end of the day, it was set where it was set based on an

9    objection to the original cash collateral order.  It was set

10   at $10,000 a pay period.  It was increased subsequently to

11   $20,000 a pay period.  That's where we stand right now.

12   Obviously, now that he's in bankruptcy, in particular, he

13   has certain expenses that he's going to be obligated to meet

14   that -- his most significant source of revenue -- I won't

15   speak for his only source, will be whatever compensation he

16   receives from Free Speech Systems.  So --

17               THE COURT:  Okay.  Let me ask who wishes -- anyone

18   have any thoughts on or any comments with respect to cash

19   collateral?  Ms. Driver --

20               MS. DRIVER:  Your Honor --

21               THE COURT:  Ms. Driver, I'll turn to you last

22   because I know -- let me just kind of hear from everyone

23   else first.

24               Ms. DRIVER:  Absolutely, Your Honor.  Thank you.

25               MR. BRIMMAGE:  Your Honor, Marty Brimmage.

1          THE COURT:  Yes, sir.

2          MR. BRIMMAGE:  Whenever is fine, you let me know.

3          THE COURT:  Now is a good time.

4          MR. BRIMMAGE:  Okay.  Your Honor, Marty Brimmage

5     again.  A couple of thoughts, Your Honor.  We are definitely

6     in no position right now to agree to increase salary or

7     compensation for Mr. Jones as part of the cash collateral

8     order or anything else at this point.  This issue just very

9     recently came up.  We've talked to Ms. Driver about it, and

10    we've let her know that we do not support that.  In fact, we

11    object to that at this point in time.  We have said that we

12    will work with her in the coming weeks to see if there is

13    something that we can work out in due course, but we're not

14    there yet.

15          And so we don't have authority to agree to it and

16    we don't think it's the appropriate decision at this point

17    in time, given where we are in the case and just the

18    committee has just now been informed of what else is going

19    on.  But again, Your Honor, in good faith, we're happy to

20    work with Ms. Driver and Mr. Battaglia and work through

21    those issues.  And I think we told her that this morning.

22    So this doesn't come as a surprise to her.  But we believe,

23    Your Honor, at this point, there should be no changes to the

24    budget.  I think what you just heard from Mr. Battaglia is

25    the money is not there.

1          So it seems like in addition to us not being in

2     agreement at this point in time, money just doesn't grow on

3     trees.  So at this point in time, we would respectfully

4     request one of two things.  Either the Court deny the cash

5     collateral request as it relates to increasing salary for

6     Mr. Jones at this point in time, or that Ms. Driver just

7     withdraw it for now and let's revisit it in the coming

8     weeks.

9          THE COURT:  Anyone else?  Mr. Battaglia?

10         MR. BATTAGLIA:  Your Honor, I do just want to be

11    clear that I think the November MOR shows a cash balance of

12    a million eight.  And obviously this is a very fluid number

13    in terms of when there are purchases of inventory that have

14    to be made and when cash comes in.  So I don't want to

15    suggest we're on our last nickel.

16         But we are headed into, as any retail operation

17    is, a quarter that will likely be softer.  And we have

18    changed the process that we're working under in terms of a

19    fulfillment group that's new.  And so our experience and

20    really gauging what that's going to mean,  we think we have

21    cut expenses significantly by doing that and by changing the

22    credit card processing.  But what that means to the bottom

23    line is kind of a we don't know until we see it in this

24    period.  So I want to clarify that.

25         THE COURT:  Okay.  Let me --

1          MR. BRIMMAGE:  Your Honor, one other point that I

2     forgot to mention, and I apologize.

3          THE COURT:  Okay.

4          MR. BRIMMAGE:  The contract upon which Ms. Driver,

5     I think, is basing this has not been assumed or even been

6     moved to be assumed.  That is a process that we all are

7     familiar with, that we can undergo and see where that all

8     plays out.  But that we think from a standpoint, that is the

9     process that should be undertaken if that is the amount of

10    money that they want Mr. Jones to make pursuant to that

11    employment agreement.

12         THE COURT:  Anyone else wish to be heard before I

13    turn?  Let me hear from --

14         MS. FREEMAN:  Just very briefly, Your Honor, from

15    the Subchapter 5 trustee's viewpoint, it's an issue of

16    process.  And whatever the correct answer is, we believe is

17    something that should be determined after a motion is filed

18    and all parties have an opportunity to participate.

19         THE COURT:  Thank you.  Mr. Nguyen?

20         MR. NGUYEN:  Thank you, Honor.  I will be brief.

21    The U.S. trustee, we do oppose the salary increase.  This is

22    the seventh interim cash collateral order.  We think it's

23    important to maintain the status quo, given the posture of

24    the case, parties in the middle of mediation and the

25    contract that Ms. Driver alluded to, it's a contract that

1    was signed back in April between Melinda Flores and Mr.

2    Jones.  I have serious concerns about who negotiated that

3    contract.  And just a last reminder for everyone, we are in

4    a Subchapter 5 case.  You have debtors that come before you

5    that don't nearly get about $40,000 every month.  Debtors

6    come to you, and they file bankruptcy.  Everyone needs to

7    tighten their financial belt, and they need to make things

8    work.

9         If Mr. Jones wants to bring this case through

10   bankruptcy, he's going to have to work with what had been

11   negotiated.  Again, this is the seventh interim cash

12   collateral.  It's been like this since the beginning of the

13   case.  So I don't see any reason to change it now, given

14   that the parties are in mediation, and for both reasons, we

15   oppose the increase in salary.

16        THE COURT:  Okay.  I will say, though, you're

17   right, Mr. Nguyen.  Debtors appear.  But there aren't many

18   debtors who appear that can generate the amount of revenue

19   that Mr. Jones does.  Right?  And that's the lifeblood of

20   this company.  So it's not the same.  Revenue is generated

21   through the sale of product, and he's the guy that can sell

22   it.  And so it's not the same.

23        I'm not saying you're wrong.  I've just got to

24   balance that with the reality of where we are.  That's all.

25   Anyway, just a thought.  It's true, Subchapter 5, and it's

1    all that, but it's a unique situation here.

2              So Mr. Driver, let me hear from you.

3              MS. DRIVER:  (indiscernible) I'd like to offer

4    some -- well, first of all, I want to just talk about

5    factors in seven cash collateral orders.  Mr. Jones told me,

6    as his counsel, that he did agree to a smaller salary at the

7    very beginning and it was increased slightly, but it was

8    never to the -- he never thought it was prejudicial to him

9    seeking his full salary.  So I hope the passage of time is

10   not an issue here.

11             THE COURT:  It's not an issue.

12             MS. DRIVER:  This is the first time that the --

13   yeah.  This is the first time that the plaintiffs have  seen

14   his employment contract, and so I definitely understand the

15   idea that we would do it forever.  Without Mr. Jones, I

16   think it is pretty clear that Free Speech systems would be

17   administratively insolvent and go to Chapter 7.  And right

18   now, Mr. Jones can and may be forced to take third party

19   employment if he cannot make what he needs to make to

20   survive.

21             And quite frankly, the same creditors that are

22   objecting to this really need us to maintain the assets and

23   the value of the homes, et cetera, so that value doesn't

24   decrease.  That said, we can't put a budget in front of Your

25   Honor yet.  We're just not there.  Mr. Schweizer and his

1   team at Black friar are digging and we're trying to get that

2   together.  But the good news is any money that's coming in

3   now is going to be fully transparent as to how it is spent

4   and what it is spent for, and we obviously are going to be

5   sharing that information and bank accounts with everyone

6   that really needs them.

7        But what I might suggest in this situation is

8   during the high months, he was making substantially less

9   because he had been asked to take a step down.  He

10  personally put $900,000 on the table into the Free Speech

11  Systems since the petition date for the purposes of paying

12  for shipping and some other things that the debtor couldn't

13  pay for to keep the FFS debtor alive.  So there has been a

14  much larger influx than efflux of money from FSS to Mr.

15  Jones.  However, I think having a full hearing and looking

16  at whether FFS wants to (indiscernible) this contract is

17  there.

18       What I would request is that he get his full

19  salary for the month of December or January only, and then

20  it is without any prejudice to the budget going right back

21  where it was, and we can have that full and final hearing at

22  the next hearing.

23       THE COURT:  The issue I think you're going to run

24  into, Ms. Driver, with that is that, right, I don't have a

25  contract in front of me and we don't have any evidence.  And

1    unless that's going to get taken up today, then I don't know

2    how I can approve a salary based on a contract that won't be

3    admitted into evidence.

4            MS. DRIVER:  Your Honor, I do think that I did

5    designate it as an exhibit, and I'm happy to offer it into

6    evidence if you'd like.

7            THE COURT:  It's not filed on the docket, right?

8            MS. DRIVER:  There is no --

9            THE COURT:  If it's not filed on the docket, then

10   there's no way you're going to be able --

11           MS. DRIVER:  Oh, I did serve it out on the

12   parties, Your Honor.  I did not put it on the docket.  Most

13   of the things that are put on the docket here are just

14   published in the press.  So I did just send it out on

15   notice.

16           THE COURT:  No, I know.  I got it.

17           MS. DRIVER:  Understood, Your Honor.  I'm happy to

18   carry this.  But I just didn't want another day to go by

19   without people understanding that he's got bills to pay.

20   And some of these plaintiffs have claims jointly and

21   severally against both entities.  And so when you pull away

22   from one, you are by definition pulling against the other.

23   And so by keeping money in FSS and not having Alex make his

24   salary, then it is necessarily going to beg the question,

25   can he continue financially to work for FSS?

```
1              THE COURT:  So here's my -- here's the
2     consideration, Ms. Driver.  As I look at the proposed budget
3     over the next couple of weeks, it shows cash negative.  I
4     understand that there's a cash balance, but it goes negative
5     for a couple of weeks, and I'm concerned about that.  Does
6     it make sense to hold something, let's just say in 30 days
7     and take this up, take up a number?
8              I do understand, and I was here, obviously, and I
9     agree with you, when I signed the original -- in the
10    original cases for the -- or I should say, when I signed in
11    this case the cash collateral budget, it was certainly
12    without prejudice to Mr. Jones coming in and saying he
13    wanted more.  Right?  That was just an agreement to allow
14    the process to continue.  And I signed that order.  And I do
15    think he's filed a case.  He's here.  I think a committee
16    just got formed, and I think normally what would happen is
17    debtors' counsel would speak to the committee, and maybe
18    there is a number.
19             But remember, we're still talking FFS, which
20    again, which is what confuses things.  I think there's a
21    number.  Maybe it's 50.  Maybe it's something less than
22    that.  I don't know.  But maybe there's a number.  But maybe
23    we can take it up at the beginning early, and maybe we don't
24    have to wait.  Maybe we can just take that up early in the
25    beginning of the new year and come up with the number.  I am
```

```
 1   open to increasing that number.  There's a bankruptcy case.
 2   There's professionals involved.  He's got to file schedules
 3   and he's got to get the schedules right and mediation.
 4   There's a lot going on.  And so I'm open to that.  And I'm
 5   also recognizing the fact that I know primarily who's
 6   responsible for generating the revenue for FSS.  And that's
 7   not lost upon me either.
 8           So there's a number.  If we need to have an
 9   evidentiary hearing, then let's have it.  Let's have it
10   early next year in a couple of weeks.  And I'm willing to
11   take that up.  But I'm asking the parties to really kind of
12   talk about this, because we'll have a hearing if we need to.
13   But I'm confident that professionals who are thinking about
14   this recognize that there's something there to agree upon.
15   We'll just see.  But the case is new, but I got it.  FSS
16   needs use of cash collateral.
17           So, Ms. Driver, I'm not technically overruling it.
18   I'm just saying let's kick it to a date where it makes
19   sense.  And I think you can hear me saying that I am open to
20   an increase.
21           MS. DRIVER:  Thank you, Honor.  We appreciate
22   that.  We're happy to kick it to the next cash collateral
23   hearing.  And Mr. Jones just wanted everyone to know that
24   he's just out of money.  And so we really are kind of down
25   to brass tacks.
```

```
1              THE COURT:  I don't want to go down that road
2    because I know then that invites people to then come back
3    and say other stuff, and let's just continue to another
4    hearing and then allow -- let the process play out, tee
5    everything up.  I think there is a way, Ms. Driver, if you
6    wanted to file something or maybe just making sure that
7    something got admitted into the record.  I got it.  Let's
8    just see if this can get resolved.  Mr. Battaglia?
9              MR. BATTAGLIA:  Your Honor, if there is some
10   resolution on an adjustment to his salary between now and
11   whenever, because this cash collateral will require another
12   hearing at the end of January.  But if sometime prior to
13   that there is, may I just file a notice of amended budget?
14             THE COURT:  That would make me really happy.
15   Yeah.
16             MR. BATTAGLIA:  I'll need to --
17             THE COURT:  Okay.  So I'll sign the cash
18   collateral budget and then we'll take everything at an
19   appropriate time.
20             MR. BATTAGLIA:  Do you have a date, Your Honor,
21   you want to reset that at?
22             THE COURT:  Yeah.  I knew you were going to ask me
23   that.
24             MR. BATTAGLIA:  I'm funny that way.
25             THE COURT:  When does the budget expire?
```

1           MR. BATTAGLIA:  January 20th, Your Honor.

2           THE COURT:  January 20th.  We can do -- I don't

3    know.  You tell me.  We can do the 20th, that Thursday looks

4    good.  Or we can do January 18th in the afternoon.  It's the

5    day after MLK Day.  So the courts will be closed on Monday,

6    but obviously we'll be open on Tuesday.  That's why I'm

7    thinking that may make sense.

8           MR. BATTAGLIA:  The 18th, Your Honor.

9           THE COURT:  The 18th or the 20th?  What's best?

10   Ms. Driver, what's best for you?

11          MR. BATTAGLIA:  Either one.  The 20th --

12          MS. DRIVER:  Either one is fine, Your Honor.

13          THE COURT:  All right.  Let's do the 20th, since

14   that's the day.  Let's keep the pressure on the parties.

15          MR. BATTAGLIA:  What time, Your Honor?

16          THE COURT:  Why don't we do 10:00 a.m. for cash

17   collateral.

18          MS. FREEMAN:  Your Honor, is there time on that

19   day?  If I wanted to schedule a related motion regarding the

20   employment contract assumption or projection, et cetera?

21          THE COURT:  That's where we're going.  Yeah.

22          MS. FREEMAN:  Thank you.

23          THE COURT:  And so, Ms. Driver, now that's going

24   to kind of kick in the agenda at some point.  If other

25   people want to file motions on those days, they can

1   certainly do it.  Wait, wait, wait.  I'm looking at 2022.

2   That's why my staff -- that's why they're turning around and

3   they're looking at me without making a face.  They just

4   don't want to tell the judge publicly he's wrong.  It's

5   okay.  How about the -- they're kind.  You said cash runs

6   out on the 20th?

7           MR. BATTAGLIA:  20th.

8           THE COURT:  That's a Friday.  That's a Friday.

9   Friday, the 20th.  Can we keep the same day and time?

10          MR. BATTAGLIA:  I think the parties have worked

11  well together.

12          THE COURT:  Oh, there's a 10:00 already, so 11:00

13  a.m.  It's okay.  You can tell me publicly.  It's okay.

14  They were shuffling in front of me here.  Like, how do I

15  communicate to him he has no -- we'll go January 20th at

16  11:00 a.m., 2023.

17          MS. DRIVER:  Okay.

18          THE COURT:  I got it.  Right.  All righty.  I

19  think that leaves us with M3.

20          MR. BATTAGLIA:  The trustee's application to

21  employ M3, which has an objection filed by PQPR.

22          THE COURT:  Okay.

23          MR. BATTAGLIA:  The debtor obviously just has

24  concerns about administrative solvency in this case and the

25  flow of expenses.  That's the CRO's position in this case.

1    We obviously came before you and suggested that someone

2    needs to do the evaluation and investigation, and it

3    shouldn't be us because we're, quote, "tainted."  And so

4    we're happy to have it be done.  We understand the need for

5    a financial advisor.  They've selected someone who's clearly

6    capable.  Nobody has any issue with that.  They're not the

7    cheapest shop.  Well, they're not in town either, but I'll

8    leave it up to the Court on dealing with Mr. Lemmon's

9    objection and with the trustee's.  But that's our position,

10   Your Honor.  They need somebody.  They're capable, they're

11   qualified.  We're just concerned about cost.

12          THE COURT:  Got it.  Okay.  Ms. Freeman, let me

13   just hear from you just briefly about kind of what you think

14   the outstanding issues are.

15          MS. FREEMAN:  I would ask Mr. Lemmon to confirm,

16   but I believe after the revised order was filed on the

17   docket at 330, that the sole remaining issue is a question

18   of whether or not there should be some sort of a cap or

19   budget on the fees that M3 is seeking.

20          MR. LEMMON:  That's correct, Your Honor.

21          THE COURT:  Got it.  Okay.  What's your position

22   on that, Ms. Freeman?

23          MS. FREEMAN:  Judge, it would be incorrect to say

24   that the trustee is not concerned about the economics in

25   this case.  I think she is as much, if not more aware and

1    concerned about the economics of the FSS case and also the

2    Alex Jones case, which is tied directly to this.  The issue

3    that we have in agreeing to some sort of a cap is, in part,

4    policy and optics.  Ms. Haselden is a fiduciary, and she has

5    been charged by the code and by this Court with undertaking

6    an investigation.  That investigation includes an

7    investigation of the PQPR debt, which is an insider of the

8    debtor.

9              She's not a commercial actor who has the ability

10   to cut a commercial deal.  Instead, she's a fiduciary that

11   is undertaking this investigation that all parties will be

12   looking at and relying on.  It is not appropriate for her

13   financial advisor to be the sole professional in this case

14   that is subject to some sort of a cap.  It could potentially

15   be chilling to their endeavors.  It could throw the results

16   of the investigation into question.  PQPR is a subject of

17   that investigation.

18             The optics are just not good for there to be a cap

19   placed at the front end at the time of their engagement.

20   All professionals who appear in cases are trusted to be

21   responsible with their expenditures in cases.  And if there

22   is somehow an abuse or an imbalance of that trust, that is

23   something that shakes out when compensation is sought.

24             THE COURT:  Ms. Freeman, let me just ask you a

25   question since I've got you here.  What can you tell me

1    about the status of kind of where things stand with the

2    investigation?

3            MS. FREEMAN:  We've looked -- we, being the

4    trustee and her counsel, have looked at a large number of

5    things.  We have a lot of pieces of data.  There is still a

6    lot of information that is financial in nature that has not

7    yet been produced or actually was produced just now during

8    this hearing.

9            M3 has looked at a lot of pieces of a lot of

10   things, but has not yet undertaken a tremendous amount of

11   work just because of large gaps in the data that exist and

12   because we don't yet have all of the supporting data or the

13   raw data that is behind the summaries that it has been

14   provided.  So it has some work to do, and I don't want M3 to

15   find themselves in a position where they feel like they do

16   not have available resources to undertake the endeavor.

17           THE COURT:  Okay.  Mr. Lemmon, what can you tell

18   me?

19           MR. LEMMON:  Thank you, Honor.  Steve Lemmon, for

20   PQPR.  The Court may recall that, in fact, it was us that

21   proposed that the Sub 5 trustee conduct the investigation.

22   We're in favor of the investigation.  We're in favor of the

23   Sub 5 trustee retaining whatever advisors they think they

24   need in order to conduct the investigation.  At the outset,

25   we proposed that up to $100,000 be spent on this.  The Court

1    will recall that it said that it wanted a full investigation

2    and asked us to cooperate.  And we have.  We agree, and we

3    want them to do a full investigation.  Since that time, it's

4    become obvious that there is some question as to whether or

5    not this case is going to be administratively insolvent.

6    And I'm not sure that all the parties were aware of that at

7    the time.

8             If the Court were to look at the most recent

9    operating reports, which were filed late Friday, and in

10   particular at Docket Number 324, the Court would note that

11   in November, the debtor lost $208,000.  The debtor is

12   projected to lose $360,000 in December.  The debtor does

13   have cash on hand of a million eight, receivables of 269.

14   But against that, it has unpaid bills incurred since the

15   time of the filing of the bankruptcy of a million 359.  So

16   net cash, very rough numbers, a little less than $500,000.

17   The debtor has professional fees that it paid last month of

18   $182,500.

19            Other than that, Your Honor, the debtor has in the

20   past only paid the professionals that were the state court

21   lawyers.  You can tell those because they're getting round

22   numbers, $150,000 or so.  M3 has been on the job for about

23   60 days.  We've asked, but we haven't been able to find out

24   what M3's costs are so far that they've incurred.  And I

25   understand what the trustee's lawyer is saying about the

1    optics, and we don't want to put a governor just to put a

2    governor on the thing.  But we do think that it is not

3    unreasonable to ask for some sort of budget, some sort of

4    cap.

5           And Judge, if they say we need more, we're happy

6    to come back.  But we don't know what we're dealing with

7    here.  I'm not going to say it's irresponsible to write them

8    a blank check, but I'm saying that it is reasonable to ask

9    for some sort of budget, some sort of cap, some sort of

10   estimate, so that everybody can know what they're dealing

11   with here.

12          And in my mind, some of the worst optics are

13   walking in with open eyes into an administrative insolvency

14   situation which is good for nobody, Judge.  And so for that

15   reason, we're asking that there be something.  Look, if they

16   say, we found out this -- I'm just making this up.  We found

17   out this whole other avenue that we need to pursue, Judge,

18   it's going to be very difficult for us to stand here and say

19   we're totally against that, right?  We just want to know

20   what we're dealing with here, and that's it.

21          THE COURT:  Thank you.  Anyone else wish to be

22   heard on this matter?  Let me just note that in the Free

23   Speech case, the Subchapter 5 trustee has requested the

24   appointment of M3 as financial advisor.  Mr. Griffith, I see

25   you there.  There's no one questioning whether M3 is

1    qualified to do the work or whether they're disinterested.

2    So those issues, and based on my review, my independent

3    review of their application, and I find that they are

4    obviously qualified and that they are disinterested and

5    therefore able to be retained in this case.  I'm going to

6    approve their application and I'm going to overrule the

7    objection.

8           I'm not going to put a cap on it, but I'm going to

9    say this.  The work has to get done.  I ordered the work.  I

10   want the work to get done, and I want the work to get done

11   right.  And I don't want there to be any shortcuts or anyone

12   to feel the pressure that they have to do any shortcuts.

13          That being said, the applications, as every other

14   professional is who's retained in this case, subject to, has

15   to file a fee application.  And M3 knows that, and everyone

16   will have an opportunity to review their applications.

17   That's bankruptcy.  There's a level of transparency here in

18   bankruptcy cases that gives everyone an opportunity to see

19   that and file an objection when necessary to do so.  And

20   that's the way it will proceed.

21          I am concerned about the cost.  I am concerned

22   about the solvency of this debtor and where things are

23   going.  But I don't want to sacrifice the work, quite

24   frankly, that I ordered.  I hear the arguments about the

25   optics, but I'm more focused on the process and the work

1    that needs to get done and the fact that there will be

2    transparency in the application.

3            So I'm going to approve M3's application.  They

4    can get to work.  This case is kind of -- I should say the

5    Free Speech case has been on a lot of levels kind of paused

6    because the parties are in mediation, and I appreciate that.

7    And I think it -- so I don't want to push, and I don't want

8    to rush anything either.  I have no idea what's going on in

9    the mediation.  I just know that the parties are in it, and

10   I want to give mediation every opportunity to work, if

11   that's what the parties want to continue to do.  I will let

12   you know, I think there was a question about whether you

13   need it in order for me in the Jones case to continue the

14   mediation.

15           If Judge Isgur is comfortable wrapping all that

16   in, I'm fine.  I don't think you need one for me.  But if

17   you feel like you do, kind of adding the Jones case, then

18   upload an order and let my case manager know, and I'll sign

19   it.  But I want to make this as efficient as possible.  I

20   think Mr. Jones was already a part of it, and certainly

21   including you in that mediation, I don't see the need for me

22   to sign an order.

23           But if you feel like you need one and the parties

24   feel like they want the extra comfort, then just upload

25   something and I'll sign it.  Or if Judge Isgur feels like he

1    wants one, obviously let me know.  But if he's comfortable

2    proceeding, then someone let me know.  I'm also going to use

3    the January date.  I want to get it right.  The January date

4    that we set, the 20th at 11:00.

5         CLERK:  Yeah.

6         THE COURT:  I want to use that as a status

7    conference as well, and maybe we can kind of keep checking

8    in and seeing what's going on with mediation and seeing how

9    that's going.  Just generally, if it's continuing, if

10   anything has changed, we'll continue to use that.  Mr.

11   Brimmage, I'm just using you because you're on the screen

12   there, but Mr. Chapple and Mr. Zensky and Ms. Brauner.

13        I don't know exactly who's going to seek to be

14   retained as committee counsel, but I want to make that as

15   efficient as possible as well, and get an application on

16   file.  And if there are no objections to it, then let's use

17   certificate of no objection or if there's a tweak to it,

18   then file a redline.  I want to make that as efficient as

19   possible.

20        If we need to have a hearing on it, obviously

21   we'll have one, and let's just maybe we can use that date if

22   we need to.  If not, then someone file something and let my

23   case manager know and maybe I'll sign that without the need

24   for a hearing on that.  But obviously everybody has the

25   right to object and take a look at stuff as well.  If

1   anything comes up between now and then, just let us know.

2   If an emergency comes up, I'm just an email away from my

3   case manager or a call away from my case manager, if someone

4   needs to hear me in a 24-hour period.  I think we've covered

5   everything, but if I have -- if I've missed something, let

6   me know.

7           MR. BATTAGLIA:  No.  You've got them all, Judge.

8   Ray Battaglia, for Free Speech Systems.  There are a few

9   things that aren't on the docket that if I just take a

10  moment and ask where we stand on some things.

11          THE COURT:  Okay.  There is one thing I have to

12  address at the very end.

13          MR. BATTAGLIA:  I'm happy to let you --

14          THE COURT:  No, no, no, no.  But Ms. Driver, did I

15  cover all the matters that were set for today?

16          MS. DRIVER:  I believe you did, Your Honor.  I was

17  just going to mention that Judge Isgur did ask Mr. Brimmage

18  and I to offer an order for mediation.  So you can expect

19  that.  I'm going to press Mr. Brimmage and I to get that to

20  you this week --

21          THE COURT:  Okay.

22          MS. DRIVER:  -- before the holiday and then just

23  to the administrative insolvency of FSS, I just wanted to

24  let Your Honor know that Mr. Battaglia and I have been

25  talking and Mr. Jones has a lot of business plans and

1    strategies that we really want to sit down and share with

2    Mr. McGill.  And I know that Mr. Battaglia is going to work

3    really hard to get us to sit down and really start to

4    implement some of that.  This company really went from a $6

5    or $7 million revenue company to, like, a $1.9 million

6    revenue company per month.  And we've really got to get back

7    to those levels of production to make this a profitable

8    company that can try to pay back its creditors.

9              THE COURT:  Okay.  Thank you.  And obviously, I

10   want the committee involved in those issues as well.  And

11   that's a committee issue.  And so folks who are going to

12   represent the committee, anything, obviously, you all know

13   what you're doing, but if you need anything from the Court,

14   you know how to file motions and get things in front of me

15   if you need to.  So is there anything in the Alex Jones case

16   from the committee that I need to address today?

17             MR. BRIMMAGE:  Your Honor, just one clarification

18   on a comment you just mentioned about our retention

19   application.  We will get that going just as soon as

20   possible, but I think there's a notice period, and if the

21   hearing's on the 20th, I also just want to raise we've got a

22   lot of people who are trying to be out this week and next

23   week.  So we will get it done as soon as we can.  But I just

24   wanted to raise that --

25             THE COURT:  Yeah.  I'm not holding your feet --

```
 1              MR. BRIMMAGE:  We're not going to drag our feet,

 2    but --

 3              THE COURT:  No.  No, no, no.

 4              MR. BRIMMAGE:  Okay.

 5              THE COURT:  Do it in the ordinary course.

 6    Whatever time it needs, it is what it is.  And if you need a

 7    hearing, then we'll set a hearing, an appropriate hearing

 8    time.  I'm not jamming anyone, no one on that.

 9              MR. BRIMMAGE:  I just wanted to clarify.

10              THE COURT:  No, no.  I appreciate you doing that.

11    I didn't --

12              MR. BRIMMAGE:  I got a couple of quick emails from

13    some folks like, wait a second --

14              THE COURT:  I want to make sure some poor

15    associate didn't think I was going to jam them on the

16    holiday.

17              MR. BRIMMAGE:  You just clarified that.  Thank

18    you.

19              THE COURT:  No, no.  That was --

20              MR. BRIMMAGE:  All right.

21              THE COURT:  No, no.  I appreciate the

22    clarification.  And then let me ask Mr. Zensky or Ms.

23    Brauner if they have anything else they want to add on

24    behalf of the committee.

25              MR. ZENSKY:  Nothing right now, Your Honor.
```

1          THE COURT:  Okay.  Thank you.  And please tell the

2     associates to relax.  I promise I'm not jamming them on any

3     kind of review stuff there.

4          MR. BRIMMAGE:  Thank you.  Thank you.

5          THE COURT:  Thank you.  Mr. Battaglia?

6          MR. BATTAGLIA:  Yes.  Just a few things, Your

7     Honor.  First of all, I would note, and it's been mentioned,

8     all of the monthly operating reports have been filed.  We're

9     actually a day ahead right now.  We're not only not behind,

10    we're a day ahead.  Through November have been filed.  The

11    expectation with Mr. McGill is that we will have P&Ls and

12    balance sheets within the next 20 to 30 days.  Obviously,

13    the MORs for a small sub-d debtor are a little different, a

14    little shorter.  But I think they're informative.

15         So we're catching up on financial records and

16    expect to have weekly sales reports, MORs on time and

17    distributed as appropriate.  And so that's an advisory to

18    the Court.  The debtor filed at Docket Number 264 a motion

19    to reject the lease with REM.  That was the executory

20    contract, the REM Financial Services contract.  I filed a

21    CNO on that, ECF 294.  I haven't seen an order.  So the

22    proposed order was attached as an exhibit to the CNO.

23         THE COURT:  264?

24         MR. BATTAGLIA:  Was the motion and the CNO is 294.

25         THE COURT:  Okay.

1          MR. BATTAGLIA:  So whenever the Court gets an

2   opportunity.  It's not urgent, but it's pending.

3          THE COURT:  No, no.  I appreciate you letting me

4   know.

5          MR. BATTAGLIA:  -- check the box.  Secondarily,

6   there was a TUFTA lawsuit filed in state court that was

7   removed by the debtor.  And Judge Parker in the Western

8   District transferred it to the home court, IEU.  There is an

9   agreement among the parties reflected in the stipulation in

10  that.  There's no reason this would have been called your

11  attention, but to abate matters pending, there were four or

12  five different triggers that would remove it from suspense

13  basically based on the mediation.  And although it's in

14  Western District format for entry as an order, which means

15  four inches at the top --

16         THE COURT:  Which means that half the page is

17  empty at the top?

18         MR. BATTAGLIA:  Yes, sir.  And we're happy to

19  reformat it, but I think we do need to get it entered

20  because otherwise I have a remand.

21         THE COURT:  Where do I find that?  Is that the --

22         MR. BATTAGLIA:  It's the sole associated case.  I

23  think there's only one adversary.  And let me see.  I may

24  have it.

25         THE COURT:  Is that the 20 -- let's see.

1        MR. BATTAGLIA:  It was 22-06017.  But I'm not sure

2    what it became when it moved.

3        THE COURT:  What's the --

4        MR. BATTAGLIA:  It's Neil Heslin and Scarlett

5    Lewis.

6        THE COURT:  Oh, I see it.  I see it here.

7        MR. BATTAGLIA:  -- et al., v. Alex Jones, et al.

8        THE COURT:  Where's the stip?  Oh, the Jones stip.

9    I see it.

10        MR. BATTAGLIA:  Yes, sir.  So nobody misses a

11    deadline and because we --

12        THE COURT:  That's Docket 11.  Let me just take a

13    quick look at this.

14        MR. BATTAGLIA:  Mr. Moshenberg was involved in

15    that, so he can address it as well.

16        THE COURT:  Okay.  Oh, wait.  I've read this

17    before.  Yeah.  Yeah.  You want me to -- Mr. Chapple is

18    involved.  Is this the one Mr. Martin, Mr. Chapple and Mr.

19    Battaglia?  You all have signed that?

20        MR. BATTAGLIA:  Yes.

21        THE COURT:  All right.  I am not signing it at the

22    top.  You just won't get me to do it.  I will sign this stip

23    and order.  Let's see, it says in the case -- oh, I see it.

24    That works for me.  I'm just giving them some hell, the

25    Western District.  Okay.  I will sign both of those orders

1    right now.  I've just moved them over.  I'll get that done.

2             MR. BATTAGLIA:  Thank you, Honor.  So I owe you an

3    order on the Texas appellate counsel.  And I'll upload that

4    tomorrow at the latest.

5             THE COURT:  Okay.  Can you let my case manager

6    know when it's up?  Just so we know?

7             MR. BATTAGLIA:  I'll copy her when I upload it.

8             THE COURT:  Okay.

9             MR. BATTAGLIA:  And with that, I think we're done,

10   unless -- oh, I think Mr. Shannon wants to --

11            THE COURT:  Oh, no.  That was going to be -- so

12   that was going to be my question is, I know that there's

13   been a motion for reconsideration filed by Schwartz and Mr.

14   Shannon.  The question was, do you all want a hearing on

15   that?  And if so, when do you want a hearing?  I'm happy to

16   do it.  I'd rather do that one as a one-off.  It's probably

17   a little different than on an omnibus matter.  But I can

18   take that up or I can do it on the papers.  You tell me.

19            MR. SHANNON:  Your Honor, I do think we would like

20   a hearing.

21            THE COURT:  Okay.

22            MR. SHANNON:  I believe sometime within the middle

23   of next month.  I understand if you don't want to do it with

24   everything else going on, right?

25            THE COURT:  No, no.  I just think it's easier.  I

1    want to give you all a full and fair opportunity, and I

2    don't want ten motions at the same time.

3         MR. SHANNON:  Understood, Your Honor.  I'm happy

4    to hear dates when the Court is available.  I can do this

5    offline with your case manager or however you'd like.  I

6    believe Mr. Ridulfo is on the line for Mr. Schwartz.

7         THE COURT:  Yeah.  So what I'm going to ask you

8    all to do is to just get with my case manager.  We'll pick a

9    time in -- but can you just let -- well, let's just see.

10   Rosario, I'm sorry in advance.  Let me just see what I'm

11   getting ready to do here.

12        MR. BRIMMAGE:  Your Honor, Marty Brimmage.  If I

13   just maybe heard briefly?

14        THE COURT:  Yeah.

15        MR. BRIMMAGE:  Are the parties envisioning an all-

16   out evidentiary hearing on these motions or are these more

17   legal arguments?  And I just ask that from a time standpoint

18   and a preparation standpoint for the upcoming hearings.

19        THE COURT:  No.  No, no.  You're right on.

20   Because that's what I'm trying to understand.  One, do you

21   need a hearing?  And two, what's the hearing going to look

22   like?

23        MR. SHANNON:  Sure.  So, Your Honor, I do think

24   that -- so there are two motions that are pending.  One is a

25   Rule 59 motion for a rehearing, Rule 59(a).  The other is an

1   administrative expense motion which the crux of seeks

2   retroactive approval of limited employment for a limited

3   period and potentially for a limited scope.

4         I think there are three issues that come up under

5   that and the first is, can the professionals actually

6   present the evidence and arguments about whether it meets

7   the standards for employment?  Two, does it actually meet

8   those standards?  And then three, are the actual evidentiary

9   matters right about -- if so, what is the appropriate amount

10   of the administrative expense claim?  So I could see doing

11   that in two stages, possibly.  If that's the way the Court

12   wants to do it, I think that's fine.  On the other hand, I

13   could see doing it all as one.  So I mean, if --

14         THE COURT:  I want to do it all as one.  I want

15   you to just take it up and tee it up and we'll deal with

16   evidentiary issues right there on the spot.  And I'll rule

17   on them and take up the motion for reconsideration in both

18   cases.  The answer is it sounds like I need to just give you

19   all a little bit of time, maybe block off an hour or two.

20   I'm going to mess this up.

21         So why don't you get with my case manager.  But

22   just make sure that -- I know some folks have filed

23   objections.  I know the Subchapter 5 trustee has filed an

24   objection.  Mr. Jones has filed an objection.  Just make

25   sure that whatever date we pick, let's do it in January.

1    Pick a date where there's an afternoon.  We can block off an

2    afternoon.

3              MR. SHANNON:  Your Honor, I'll --

4              THE COURT:  -- my case manager will be looking at

5    2023 as opposed to me.

6              MR. SHANNON:  I'll get some options and then I'll

7    touch base with the Court.

8              THE COURT:  Okay.  Yeah.  Why don't you pick --

9    but right now, quite frankly, the afternoons -- and again,

10   that can change.  So if you really want to nail this down

11   now, right now, the afternoons, the second and third week,

12   except for the 20th obviously, those days look okay if we

13   did an afternoon at that time.

14             But again, I want to make sure that everyone who

15   needs to be there can be there.  We're not going to jam

16   anyone on some dates.  So let's just -- and if the parties

17   can't work it out and we need a status conference, then

18   obviously I'll jump on early next week and we'll pick a date

19   and we'll go forward.  I think the issues are fairly teed up

20   already.  Nothing more to do than just kind of see where we

21   go.

22             MR. SHANNON:  All right.

23             THE COURT:  All righty.  Thank you.  And Mr.

24   Ridulfo, that would apply for Mr. Schwartz if he wants to go

25   forward on his as well.  We'll just pick a date and we'll do

1    them both at the same time.  I think the issues are fairly

2    overlapping.

3              MR. SHANNON:  They are, Judge.  They are.

4              MR. RIDULFO:  Yes, sir.  I agree.  I agree.

5              THE COURT:  Okay.  And Mr. Brimmage, in terms of

6    time, I'm going to let them put on their case and if there's

7    evidentiary objections, I'm going to let you make them and

8    we'll take them up at that time.  I don't know enough about

9    how they're going to present their issues and I don't want

10   to kind of pre-judge it.

11             The motion for reconsideration, those are pretty

12   standard.  The motion for an admin expense I think is kind

13   of a little different.  I'm going to let them try to put on

14   their case and I'm going to let everyone who wants to oppose

15   whatever it is, oppose it and we'll take it up at that time.

16   Is there anything else we need to talk about?

17             MR. BRIMMAGE:  Your Honor, that sounds totally

18   fair.  That sounds totally fair.  I just wanted to highlight

19   that we'll have to get some discovery from them about how

20   they envision their case because I can envision there could

21   be some discovery and depositions in advance of the

22   evidentiary hearing.  But we'll work through that and work

23   through that quickly.

24             THE COURT:  I figured that.  And that's why I

25   didn't pick a date, because myself, if I pick a date, I'm

1    going to do the exact same thing and you're going to start

2    getting emails about, well, what does that mean?  And I

3    wanted to just pick a date where it all makes sense.  Maybe

4    the parties can kind of figure it out.  I'll be open.  My

5    case manager will know.  She'll get you a date.

6              But I think off docket makes a lot more sense than

7    kind of doing it on a joint basis.  Whatever date you all

8    pick.  And it doesn't have to be January.  It can be

9    whatever date makes sense.  And if the parties need a status

10   conference on it, just let me know, okay?

11             MR. BATTAGLIA:  Your Honor, for Free Speech

12   Systems, we have nothing further.  Thank you for the Court's

13   time today.

14             THE COURT:  Okay.  And for the Alex Jones case,

15   Ms. Driver, anything else?

16             MS. DRIVER:  No, Your Honor.  Thank you so much

17   for your time.

18             THE COURT:  All righty, folks.  Anything else we

19   need to talk about?  Anyone else in the courtroom or on

20   video?  All righty, everyone.  Thank you for your --

21             MR. BRIMMAGE:  Your Honor, assuming we don't see

22   you again -- assuming we don't see you again until 2023,

23   happy holidays to all.

24             THE COURT:  No, no.  And I appreciate you

25   reminding me.  Thank you, and happy holidays to everyone.

```
1    You all take care.

2              MR. BATTAGLIA:  Thank you, Judge.

3              THE COURT:  Have a good day.

4              MR. BRIMMAGE:  Thank you.

5              CLERK:  All rise.

6

7        (Proceedings adjourned at 4:24 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        CERTIFICATION

 2

 3    I certify that the foregoing is a correct transcript from

 4    the electronic sound recording of the proceedings in the

 5    above-entitled matter.

 6

 7

 8

 9

10    Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 23, 2022
```