## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 22 - 60043** |
| **FREE SPEECH SYSTEMS, LLC,** | § | |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

## SHANNON & LEE LLP'S OMNIBUS REPLY TO OBJECTIONS TO ADMINISTRATIVE EXPENSE MOTION

Shannon & Lee LLP ("S&L") replies to the objections by the United States Trustee [ECF No. 267] (the "UST Objection"), Alex Jones [ECF No. 268] (the "AEJ Limited Objection"), and the Debtor and Subchapter V Trustee [ECF No. 269] (the "Debtor/Trustee Objection") to Shannon & Lee LLP's Motion for Order Allowing Administrative Expense Claim and Granting Related Relief [ECF No. 251] (the "Administrative Expense Motion") as follows:

## INTRODUCTION

### A. Background

1.      The Debtor filed its application to employ S&L [ECF No. 85] (the "S&L Employment Application") on August 20, 2022. The Debtor sought to employ S&L as co-counsel along with the Law Firm of Ray W. Battaglia PLLC (the "Battaglia Firm"). The primary responsibility of the Battaglia Firm was to provide legal advice regarding strategy for the Debtor's chapter 11 case and implementation of that strategy. The Debtor contemplated that S&L's focus would be issues involving the Sandy Hook Litigation and routine, day-to-day matters.

2.      The U.S. Trustee filed an objection to the S&L Employment Application on September 12, 2022, and amended the objection on September 14, 2022 [ECF No. 154] (the "S&L Employment Application Objection"). Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique

De La Rosa, and Marcel Fontaine (collectively, the "Texas Plaintiffs") and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Connecticut Plaintiffs, and together with the Texas Plaintiffs, the "Sandy Hook Plaintiffs") joined the S&L Employment Application Objection. [ECF No. 159].

3.    The U.S. Trustee did not dispute the factual allegations made in the S&L Employment Application. Instead, the U.S. Trustee asked the Court to deny the S&L Employment Application because S&L attorney Kyung Lee did not supplement the Rule 2014 disclosures for Kyung S. Lee PLLC ("KSLPLLC") in the chapter 11 cases previously jointly administered under Case No. 22-60020 (the "IW Cases") for InfoW, LLC, Prison Planet TV, LLC, and IW Health, LLC (the "IW Debtors"). The U.S. Trustee argued that Lee was required to supplement his disclosures to reflect that he had agreed to meet and met with the Debtor on May 24, 2022, where potential restructuring options for the Debtor were discussed. At the September 13, 2022, hearing before this Court, the U.S. Trustee confirmed that this was the only basis for the S&L Employment Application Objection (Sept. 13, 2022, Hrg. Tr. 36:1-9). The Sandy Hook Plaintiffs did not expand upon the U.S. Trustee's objection in their joinder filed on September 15, 2022.

4.    The Debtor, through S&L, filed a reply to the UST Employment Application Objection [ECF No. 166] (the "S&L Employment Application Reply") on September 16, 2022. In the S&L Employment Application Reply, the Debtor argued that (a) Lee's disclosures in the IW Cases complied with Bankruptcy Rule 2014 because the IW Debtors were no longer seeking to obtain court approval of their professionals' employment, (b) the S&L Employment Application should be granted notwithstanding any failure of Lee and KSLPLLC to supplement their

2

disclosures in the IW Cases, and (c) if the Court believed that a penalty should be imposed on S&L in the Debtor's case for Lee's failure to supplement his disclosures in the IW Cases, the Court should reduce S&L's allowable compensation.

5.      The Court held a hearing on the S&L Employment Application on September 20, 2022 (the "September 20 Hearing"). The Debtor recited in its opening statement that no party in interest disputed that S&L was disinterested. (Sept. 20, 2022, Hrg. Tr. 19:24-20:20:7). In the U.S. Trustee's opening statement, counsel for the U.S. Trustee confirmed that the non-disclosure was the only basis for the S&L Employment Application Objection. (Sept. 20, 2022, Hrg. Tr. 44:5-15). The Sandy Hook Plaintiffs also indicated that candor and disclosure was the only basis for their joinder. (Sept. 20, 2022, Hrg. Tr. 47:17-21). As the Court stated after the close of evidence, neither party had talked about what it means to hold an adverse interest to the estate. (Sept. 20, 2022, Hrg. Tr. 210:13-18). The Court ultimately denied the S&L Employment Application, seemingly at least in part on the grounds that S&L had a predisposition under circumstances that actually or potentially rendered such predisposition a bias against the estate and amounted to an interest materially adverse to the estate. (*See* Sept. 20, 2022, Hrg. Tr. 234:15-24, 248:13-14).

6.      On October 4, 2022, S&L filed Shannon & Lee LLP's Motion Pursuant to Rule 59 of the Federal Rules of Civil Procedure for Rehearing on the Issue of Disinterestedness with Respect to the Debtor's Application to Employ Shannon & Lee LLP [ECF No. 206] (the "Rule 59 Motion"). The Rule 59 Motion requests a rehearing on the issue of disinterestedness on the grounds of unfair surprise. S&L seeks to present additional evidence and arguments at a rehearing pursuant to Rule 59(a) because the issue of disinterestedness was not raised or disputed prior to the September 20 Hearing. S&L contends that under the circumstances it did not have a full and fair opportunity to litigate the issue and seeks to present additional evidence that it would have

marshalled had it known that disinterestedness was an issue in controversy at the September 20 Hearing.

7.      The U.S. Trustee and Alex Jones filed objections to the Rule 59 Motion [ECF Nos. 217 & 223]. The Sandy Hook Plaintiffs joined the U.S. Trustee's objection. [ECF No. 226]. Central to the U.S. Trustee and Alex Jones's objections to the Rule 59 Motion is their assertion that S&L did not have standing or statutory authority to bring the Rule 59 Motion.[1] S&L filed replies to the objections to the Rule 59 Motion [ECF Nos. 218 & 270].

8.      While S&L contends that Rule 59(a) relief is appropriate under the circumstances, S&L continued to evaluate the Court's ruling at the September 20 Hearing in light of the position taken by the U.S. Trustee and Jones. The Court's ruling does not foreclose other avenues for S&L to address its primary motivation for filing the Rule 59 Motion and expressly left open questions about S&L's retention and work done prior to its ruling. (Sept. 20, 2022, Hrg. Tr. 256:14-17). The Court also indicated that all parties' rights were reserved on these questions and with respect to compensation. (Sept. 20, 2022, Hrg. Tr. 256:25-257:8). Considering the Court's statements and the positions of the U.S. Trustee and Jones, S&L filed the Administrative Expense Motion on October 24, 2022, as an alternative to the Rule 59 Motion.

9.      In the Administrative Expense Motion, S&L seeks the allowance of an administrative expense in the amount of $320,196.25 under various theories. First, S&L seeks retroactive approval of its employment for the limited period from the Petition Date through the September 20 Hearing under Bankruptcy Code § 327(a) or 327(e), award of compensation under Bankruptcy Code § 330, and allowance of an administrative expense under Bankruptcy Code § 503(b)(2). Second, S&L seeks de facto retroactive approval of its employment for the limited

---

[1] Based on the statements of Jones' counsel at the October 12, 2022, hearing, it is not clear whether Jones continues to oppose the Rule 59 Motion on this basis.

period from the Petition Date through the September 20 Hearing and allowance of an administrative expense under Bankruptcy Code § 503(b)(1) for services and expenses necessary to preserve the estate. <u>Third</u>, even absent actual or *de facto* approval of its employment, S&L seeks allowance of an administrative expense for the out-of-pocket expenses S&L incurred that would have otherwise been borne by the estate. <u>Fourth</u>, even absent actual or *de facto* approval of its employment, S&L seeks authority to apply its prepetition Retainer to reimburse S&L for the Debtor's chapter 11 filing fee consistent with the prepetition engagement letter between the Debtor and S&L. S&L also seeks authority to apply its prepetition Retainer to the amount of any otherwise allowed administrative expense claim.[2]

10.    There were three (3) objections filed to the Administrative Expense Motion. In broad terms, the U.S. Trustee, the Debtor, and the Subchapter V Trustee oppose the allowance of an administrative expense absent the Court's approval of S&L's limited employment. Alex Jones filed a limited objection indicating that he does not oppose the amount of the administrative expense requested—reflecting a discount of $62,475—but disputes that immediate payment beyond S&L's prepetition Retainer is appropriate because of the Debtor's financial condition.

**B.  Summary of Objections to the Administrative Expense Motion and Replies**

11.    The underlying dispute appears limited. The Plaintiffs and Alex Jones oppose the Rule 59 Motion but not the Administrative Expense Motion (subject to the reductions therein).[3] The Debtor and the Subchapter V Trustee did not object to the Rule 59 Motion but oppose the Administrative Expense Motion. Only the U.S. Trustee objected to both. But neither the Debtor,

---

[2] The proposed order attached to the Administrative Expense Motion contemplates that any allowed administrative expense exceeding the Retainer would be paid pursuant to a plan of reorganization or as otherwise agreed by the Debtor and subject to restrictions on the use of cash collateral.

[3] At the October 12, 2022, hearing, Jones's counsel indicated that his opposition to the Rule 59 Motion was that it might prevent the Debtor from moving forward with a new chief restructuring officer and that Jones sought to prevent any waiver of his common interest privilege. It is not clear whether Jones continues to oppose the Rule 59 Motion after clarification of the relief that S&L seeks therein.

the Subchapter V Trustee, nor the U.S. Trustee (a) dispute that the Court can and should consider retroactive approval of S&L's limited employment through the Administrative Expense Motion, (b) assert that S&L holds or represents an interest adverse to the estate, or (c) argue that the compensation and expenses sought by S&L would not be reasonable under section 330 if that provision applies. Their unstated position appears to be simply that the Administrative Expense Motion cannot be granted unless the Court *does* retroactively approve S&L's limited employment. While S&L contends that there are also other available mechanisms available, that is one of the alternatives presented. *See* Administrative Expense Motion ¶¶ 26-30.

12.     Notwithstanding the apparent limited scope of the dispute, S&L responds in detail to the arguments set out in the objections in this Reply. The arguments raised in the objections to the Administrative Expense Motion and S&L's replies thereto are summarized below.

         i.     *UST Objection*

13.     The U.S. Trustee filed the UST Objection on November 14, 2022. The U.S. Trustee objects (a) to compensation under Bankruptcy Code § 330 because S&L has not been employed under Bankruptcy Code § 327; (b) to an administrative expense claim for fees and expenses under Bankruptcy Code § 503(b)(1)(A) because the section does not apply to professional fees, at least where the professional does not meet the requirements of Bankruptcy Code § 327; (c) to retroactive employment under Bankruptcy Code § 327(e) because the Debtor did not specifically seek to employ S&L under that provision and S&L provided some services related to "conducting the case" as that term is used Bankruptcy Code § 327(e); (d) to the use of the S&L's prepetition retainer for the Debtor's filing fee for this chapter 11 case because Bankruptcy Code § 363(c) can only be invoked by the Debtor and such payment is not ordinary course; and (e) to the consensual resolution of the disputes in the Administrative Expense Motion and the Rule 59 Motion.

14.     Although expressly raised in paragraphs 26-28 of the Administrative Expense Motion, the UST Objection does not address the Court's ability to retroactively authorize S&L's employment through the September 20 Hearing pursuant to Bankruptcy Code § 327(a) in connection with an application for compensation, as indicated by *In re Triangle Chems.*, 697 F.2d 1280 (5th Cir. 1983). The Fifth Circuit's decision was not called into question by *Lamie v. United States Tr.*, 540 U.S. 526 (2004), which dealt with compensation under Bankruptcy Code § 330 for the attorney of a chapter 7 debtor that *could not* have been employed under Bankruptcy Code § 327. Retroactive approval of S&L's employment through the September 20 Hearing is consistent with the Court's ruling and appropriate in light of the existence of lead counsel, the expansion of the Subchapter V Trustee's duties, the limited scope of the duties of a subchapter v debtor. Neither collateral estoppel nor law of the case doctrines prevent retroactive approval of S&L's employment on the limited basis requested in the Administrative Expense Motion and the UST Objection presents no arguments why retroactive approval of the limited employment cannot or should not be approved. S&L submits that it meets the relevant standards and the Court can and should retroactively approve the limited employment requested.

15.     The U.S. Trustee's argument with respect to Bankruptcy Code § 327(e) also fails to address the ability of a professional to seek approval of its own employment in connection with a request for compensation and further disregards the relevant caselaw about what constitutes "conducting the case" under the statute. S&L can seek approval of its employment through a request for compensation. And while certain of the services provided by S&L would not fall under the scope of employment under section 327(e) and therefore would not be compensable, the majority of the services S&L provided were related to the matters designated as S&L's primary

responsibility in the S&L Employment Application and for which S&L seeks approval of its employment under section 327(e) in the alternative.

16.     S&L disagrees with the U.S. Trustee's blanket assertion that Bankruptcy Code § 503(b)(1)(A) cannot provide a mechanism for the payment of professional fees or expenses. Even if a professional cannot look to the higher standards applied to administrative expenses under section 503(b)(1)(A) where it does not meet the requirements of section 327, *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474 (B.A.P. 9th Cir. 1996), indicates that fees can be allowed as an administrative expense under section 503(b)(1)(A) where the professional *does* meet the standards of section 327 but is unable to seek approval of its own employment for some reason. In responding to this point, the U.S. Trustee does not and cannot articulate any adverse interest or assert that the adverse interest is present under the limited scope of employment sought. The U.S. Trustee asserts only that the S&L Employment Application was denied because the Court found the professionals had a material adverse interest to the Debtor's estate. Further, even if Bankruptcy Code § 503(b)(1)(A) is entirely unavailable for a professional's fees, S&L contends that the provision applies to out-of-pocket expenses that would have otherwise been borne by the estate. The U.S. Trustee presents no argument why these expenses (e.g., the cost of serving pleadings and notices) would not be necessary costs of preserving the estate.

17.     The U.S. Trustee's argument with respect to Bankruptcy Code § 363(c) does not respond to the limited relief sought by S&L. The Administrative Expense Motion seeks only authority for S&L to apply the Retainer to the Debtor's filing fee consistent with the terms of S&L's engagement letter with the Debtor. This meets the horizontal and vertical standards usually applied to determine whether a transaction is in the ordinary course. And there must be some mechanism to allow payments of a filing fee—which is in practice only payable after the filing of

a petition—from amounts held in an attorney's trust account when that is what is contemplated in the relevant engagement agreement.

18.     The U.S. Trustee's assertion that the parties cannot consensually resolve the Administrative Expense Motion and Rule 59 Motion is also misplaced. The authority cited by the U.S. Trustee—*Davis v. Elliot Mgmt. Corp. (In re Lehman Bros. Holdings Inc.)*, 508 B.R. 283 (S.D.N.Y. 2014)—indicates only that the parties cannot consent around the relevant standard that will apply. That case involved a plan of reorganization providing that the individual committee members' reasonable professional fees would be treated as administrative expenses without requiring any showing of substantial contribution. *Id.* at 287. That is not the situation presented here. S&L contends that (a) a rehearing under Rule 59(a) is appropriate; (b) S&L meets the standards for retroactive approval of its employment or *de facto* retroactive approval of its employment in connection with the Administrative Expense Motion; (c) S&L's services and expenses meet the standards for the award of compensation and reimbursement under section 330 in the amount of $320,196.25; (d) S&L's services and expenses meet the standard under section 503(b)(1)(A) in the amount of $123,597.01; and (e) even absent actual or *de facto* approval of its employment, S&L has a valid administrative expense claim for expenses that would have otherwise been borne by the estate and should be able to apply the Retainer to the Debtor's filing fee. And no party in interest has articulated any interest held or represented by S&L that is adverse to the Debtor's estate. A compromise here would not seek to alter the provisions of the Bankruptcy Code, but rather resolve (ostensibly) disputed application of the Bankruptcy Code to the particular facts.

      ii.     *Debtor/Trustee Objection*

19.     The Debtor and the Subchapter V Trustee filed their Debtor/Trustee Objection on November 14, 2022. The Debtor and Subchapter V Trustee argue that as an unretained

professional, S&L is not able to seek compensation pursuant to Bankruptcy Code §§ 330 or 503. The Debtor/Trustee Objection does not assert that (a) retroactive employment under Bankruptcy Code § 327(a) or (e) would be inappropriate, (b) S&L is not entitled to reimbursement of out of pocket expenses under Bankruptcy Code § 503(b)(1), or (c) S&L is not entitled to apply the prepetition Retainer for reimbursement of the Debtor's filing fee to initiate the chapter 11 case.

20.     The arguments advanced in the Debtor/Trustee Objection overlap those of the UST Objection. The Debtor and Subchapter V Trustee present a few additional authorities, while the U.S. Trustee makes additional arguments. S&L responds to and addresses together the Debtor/Trustee Objection and UST Objection in more detail below.

      *iii.*    *AEJ Limited Objection*

21.     Alex Jones filed a limited objection to the Administrative Expense Motion on grounds different from the U.S. Trustee, the Debtor, or the Subchapter V Trustee. Jones does not oppose the allowance of the Requested Administrative Expense Claim—subject to the discount described in the Administrative Expense Motion—or the application of the Retainer to the allowed amounts but "does not agree that the payment schedule is reasonable for the current status of this FSS Chapter 11 Case." AEJ Limited Objection ¶ 10. Jones asserts, in essence, that the $62,475.00 reduction in fees reflected in the Administrative Expense Motion should be *required* even absent S&L's voluntary reduction.

22.     Alex Jones makes two arguments in the AEJ Limited Objection. <u>First</u>, Jones takes issue with the services S&L provided the Debtor in connection with addressing the Court's concerns about the disclosures of Lee and Schwartz in the IW Cases and that Jones should be shouldering his share of the expenses for the Connecticut state court trial. Jones asserts that S&L should have made particular arguments that would have been beneficial to Jones, including that Jones (a) was entitled to indemnity from the Debtor, (b) paid 100% of the Debtor's legal fees

before the bankruptcy filing, and (c) purchased $400,000 in consignment products to cover the Debtor's inability to obtain product due to purported failures of the Debtor's CRO. <u>Second</u>, Jones asserts that S&L's compensation should be considered in light of the compensation paid in the IW Cases.

23.     As specifically detailed below, Alex Jones' arguments are misplaced. S&L *did* present arguments and evidence about the reasons the Rule 2014 disclosures were not supplemented in the IW Cases. And although not raised prior the September 20 Hearing or the close of evidence—preventing the Debtor and S&L from fully addressing the issue—S&L also told the Court the reasons for the Debtor's decision to pay Jones's travel expenses for the Connecticut trial and 100% of the state court counsel costs. Moreover, S&L could not have presented the arguments that Jones asserts it should have because they did not reflect the Debtor's position as of the September 20 Hearing, involved matters of which S&L was not aware, or are not true. And while S&L does not oppose disclosure of the compensation paid for services to the IW Debtors—none was paid in the IW Cases—that compensation is not relevant to the appropriate compensation for services provided to the Debtor in this chapter 11 case.

## <u>REPLY TO ARGUMENTS THAT S&L IS NOT ENTITLED TO COMPENSATION BECAUSE S&L'S EMPLOYMENT HAS NOT BEEN APPROVED</u>

24.     The U.S. Trustee, Debtor, and Subchapter V Trustee take the position that S&L cannot be allowed an administrative expense for compensation under Bankruptcy Code §§ 330 and 503(b)(1)(2) because S&L has not yet had its employment approved under Bankruptcy Code § 327(a). But none of the objections present any argument that the Court cannot or should not consider retroactive approval of S&L's employment for services provided through the September 20 Hearing. Nor does any party in interest object to the retroactive approval of S&L's employment under Bankruptcy Code § 327(a) on the limited basis set out in the Administrative Expense Motion.

This was an express basis for the relief requested by S&L. *See* Administrative Expense Motion ¶¶ 26-28.

25.     Retroactive approval of S&L's employment in connection with the Administrative Expense Motion is within the Court's authority and appropriate here. Such approval is consistent with the Court's ruling at the September 20 Hearing, it is not prevented by the doctrines of collateral estoppel or law of the case, and S&L meets the requirements for retroactive approval of the limited scope of employment requested in the Administrative Expense Motion.

**A. The Court Has Authority to Retroactively Approve S&L's Employment in Connection with the Administrative Expense Motion.**

26.     The Fifth Circuit Court of Appeals held in *In re Triangle Chemicals*, 697 F.2d 1280 (5th Cir. 1983), that bankruptcy courts have the discretion to retroactively approve the employment of professionals in connection with a fee application. In *Triangle Chemicals*, the bankruptcy court denied an attorney's application for compensation because no order approving the attorney's employment had been entered. *Id.* at 1281-82. The bankruptcy court held that it did not have discretion to consider retroactive approval of the employment. *Id.* The Fifth Circuit panel vacated the order and remanded the matter to the bankruptcy court, holding that the employment could be retroactively approved where exceptional circumstances exist. *Id.* at 1282. Other courts have also concluded that retroactive approval of a professional's employment may be considered in connection with an application for compensation. *E.g.*, *In re McKenzie*, 2013 Bankr. LEXIS 2672, at *2-*3 (Bankr. E.D. Tenn. July 2, 2013) (2013 WL 3335168); *In re Little Greek Rest.*, 205 B.R. 484, 486 (Bankr. E.D. La. 1996); *In re Saybrook Mfg. Co.*, 108 B.R. 366, 369-70 (Bankr. M.D. Ga. 1989); *see also In re Mohiuddin*, 627 B.R. 875, 884 (Bankr. S.D. Tex. 2021) (retroactively expanding the scope of attorney's employment under Bankruptcy Code § 327(e) in connection with an application for compensation).

12

27.     *Lamie v. United States Trustee*, 540 U.S. 526 (2004), does not abrogate or call into question *Triangle Chemicals*.[4] In *Lamie*, the attorney for a debtor sought compensation under Bankruptcy Code § 330 for services provided to the debtor after the case was converted to chapter 7. *Id.* at 532. The bankruptcy court denied the compensation based on the plain language of the statute and the district court and court of appeals affirmed the ruling. *Id.* The U.S. Supreme Court also affirmed, reasoning that the plain language of section 330(a)(1) did not authorize compensation for the attorney for a chapter 7 debtor—as opposed to the attorney for a debtor in possession with the powers of a trustee pursuant to Bankruptcy Code §§ 1107 or 1184—that was not employed by the trustee pursuant to section 327. *Id.* at 538-39. Retroactive approval of the employment was not an issue in *Lamie* and *could not* have been an issue because Bankruptcy Code § 327 does not provide for the employment of professionals by a chapter 7 debtor *qua* debtor.[5]

28.     *Decloutte v. Austin (In re Decloutte)*, 2018 Bankr. LEXIS 1869 (Bankr. S.D. Tex. June 20, 2018)—the only other case cited in the objections in opposition to S&L's request for compensation under section 330 and administrative expense under section 503(b)(2)—indicates that the court *should* consider retroactive approval of employment. In *Decloutte*, the attorney to a chapter 13 debtor used her position as counsel to take advantage of the debtor by misappropriating

---

[4] Although neither the U.S. Trustee, the Debtor, nor the Subchapter V Trustee claim that *Lamie* abrogates or calls into question *Triangle Chemicals*, these parties cite *Lamie* in their objections to the Administrative Expense Motion. *See* UST Objection ¶¶ 10-11; Debtor/Trustee Objection ¶¶ 11-12.

[5] The Supreme Court expressly stated that the statutory scheme did not prevent a debtor's attorney from representing the estate and therefore being entitled to receive compensation under Bankruptcy Code § 330, subject to employment by the trustee:

> Compensation for debtors' attorneys working on chapter 7 bankruptcies, moreover, is not altogether prohibited. Sections 327 and 330, taken together, allow chapter 7 trustees to engage attorneys, including debtors' counsel, and allow courts to award them fees. *See* §§ 327(a) and (e). Section 327's limitation on debtors' incurring debts for professional services without the chapter 7 trustee's approval is not absurd. In the context of a chapter 7 liquidation it advances the trustee's responsibility for preserving the estate.

*Lamie*, 540 U.S. at 537.

estate property, filed false statements before the court, and facilitated criminal charges against the debtor based on knowingly false representations to silence the debtor. *Id.* at \*38. Among the issues considered and decided by the Court was whether to grant retroactive employment of the attorney to represent the debtor and her estate as divorce counsel made contemporaneously with an application for compensation. *Id.* at \*39-\*40. The bankruptcy court denied the retroactive approval of the employment because the attorney "offer[ed] no legitimate explanation that would support *nunc pro tunc* approval."[6] *Id.* at \*41. The point relevant here is that the court ***considered*** retroactive approval of the professional's employment on the merits—*Decloutte* is not a case where the "plain wording of the statute" ended the inquiry.

**B. Neither Collateral Estoppel nor Law of the Case Prevent Retroactive Approval of S&L's Employment on the Limited Basis Sought in the Administrative Expense Motion.**

29.     No party in interest asserts that collateral estoppel nor the law of the case doctrine prevent the Court from considering and retroactively approving S&L's employment, as requested in the Administrative Expense Motion. These are affirmative defenses that generally must be raised by a party or otherwise waived. *See Ngomi Kariuki v. Tarango*, 709 F.3d 495, 508 (5th Cir. 2013). But even if the issues had been raised, neither collateral estoppel nor the law of the case doctrine prevent the Court from considering and retroactively approving S&L's employment.

*i.    Consideration of retroactive employment is consistent with the Court's ruling at the September 20 Hearing.*

30.     At the core of the collateral estoppel and law of the case doctrines is the idea that matters finally decided by courts should usually remain decided. Collateral estoppel provides that once a court has decided an issue of fact or law necessary to a final ruling, that decision may

---

[6] The facts in *Delcoutte* were extreme. The bankruptcy court indicated that it would have denied the attorney's request for compensation even if it had approved retroactive employment. *In re Decloutte*, 2018 Bankr. LEXIS 1869, at \*43.

preclude relitigation of the issue in a different proceeding if certain elements are present. *In re Reddy Ice Holdings, Inc.*, 611 B.R. 802, 808 (Bankr. N.D. Tex. 2020). The law of the case doctrine—when applied to a court's own prior decision—is a discretionary practice whereby courts generally refuse to reopen issues that have been decided in the proceeding. *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). The doctrines are aimed at conserving judicial resources and preventing inconsistent decisions.

31.     The goals of the collateral estoppel and law of the case doctrines are not implicated here. In its ruling at the September 20 Hearing, the Court left open questions about S&L's retention for the work performed prior to that date. (Sept. 20, 2022, Hrg. Tr. 256:14-17 ("I understand that that's going to require some questions as to where that leaves Shannon and Lee and Mr. Schwartz in terms of you know, retention and the work that they've done.")). The Court also stated all rights were reserved with the respect to the issue of compensation for the work performed prior to the ruling. (Sept. 20, 2022, Hrg. Tr. 257:3-4). While the Court denied the specific relief requested in the S&L Employment Application—to approve the Debtor's employment of S&L going forward—it expressly left open other issues, including retention and compensation related to the work previously performed. Retroactive approval of S&L's employment in connection with the Administrative Expense Motion would therefore not be inconsistent with the Court's ruling.

32.     It makes sense under the circumstances that the Court would rule solely on the issue before it at the September 20 Hearing. While the Court had concerns about whether S&L could impartially represent the Debtor in making difficult decisions about Alex Jones and PQPR (Sept. 20, 2022, Hrg. Tr. 247:4-11), these concerns were not raised by any party in interest or actually litigated by the parties at the September 20 Hearing (Sept. 20, 2022, Hrg. Tr. 210:13-18). And they

were about *potential conflicts* relevant to issues that were not clearly within the scope of the Debtor's duties as a subchapter v debtor.[7] Denying the Debtor's request for ongoing employment of S&L while leaving open issues of approval of limited employment and compensation for work already performed allowed the case to move forward and is in line with the doctrines of collateral estoppel and law of the case.[8] Leaving these other issues open for a further hearing is also consistent with other decisions in this district where the court has raised issues in connection with employment that were not the focus of a hearing or briefing by the parties. *See In re LTHM Houston-Operations, LLC*, 2014 Bankr. LEXIS 4495, at *9-10 (Bankr. S.D. Tex. Oct. 24, 2014) (2014 WL 5449737) (setting an additional hearing on an issue identified by the Court in connection with an application to employ but that was not the focus of the original hearing or the briefing).

      ii.    *The necessary elements for collateral estoppel are not present.*

33.    Collateral estoppel would not apply to prevent retroactive employment of S&L for services provided prior to the Court's ruling even if it had been raised by a party and the Court did not expressly leave the issue open. Collateral estoppel applies to final orders when: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; ***and*** (3) the determination of the issue in the prior proceeding was a critical and necessary part of the ruling in the prior proceeding.[9] *In re Reddy Ice Holdings, Inc.*, 611 B.R.

---

[7] Employment under Bankruptcy Code § 327(a) governs employment of professionals to represent or assist the trustee or debtor in possession in carrying out its duties under the Bankruptcy Code. The Debtor's duties as debtor in possession do not include investigating the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of the Debtor's business, or the desirability of the continuance of such business. *See* 11 U.S.C. §§ 1184(b) & 1106; (Sept. 20, 2022, Hrg. Tr. 251:1-3). To the extent that the speculative conflicts concerning the Court were to arise, it would be in the decision of whether to pursue claims against Jones and PQPR or assert defenses to the claims asserted by these parties.

[8] For the avoidance of doubt, S&L asserts the Court's ruling at the September 20 Hearing was erroneous and that the S&L Employment Application should have been granted.

[9] There is uncertainty as to whether an order denying an application to employ a professional is a final order. Some courts have held that orders that grant or deny applications to employ professionals are interlocutory. *E.g., Simon v. Amir (In re Amir)*, 436 B.R. 1, 12 (B.A.P. 6th Cir. 2010); *Green v. Gray*, 2013 U.S. Dist. LEXIS 38640, at *16-*17

802, 809-10 (Bankr. N.D. Tex. 2020) (quoting *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009)). None of the required elements are present here.

34.     The issues at stake between the S&L Employment Application and the Administrative Expense Motion are not identical. In the S&L Employment Application, the Debtor sought to employ S&L on an ongoing basis. In the Administrative Expense Motion, S&L seeks retroactive approval of its employment only through the September 20 Hearing. Even if, for the sake of argument, S&L has a predisposition interfering with its ability to impartially advise the Debtor as debtor in possession with respect to the difficult decisions that may arise related to Jones and PQPR, that is not implicated in S&L's ability to provide the services to the Debtor through the September 20 Hearing. And under the "catchall provision" of Bankruptcy Code § 101(14)(C)— referenced by the Court in its ruling—the relevant inquiry is whether S&L possesses a predisposition under circumstances that render the predisposition a bias against the estate. *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005).  The scope of S&L's employment requested in the Administrative Expense Motion are among the circumstances that the Court should consider in determining whether S&L has an adverse interest for "any other reason."

35.     S&L's disinterestedness was also not actually litigated at the September 20 Hearing. "'The requirement that an issue be "actually litigated" for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by

---

(D. Mass. Mar. 18, 2013) (2013 WL 1124731); *cf. Rozelle v. Lowe*, 2016 U.S. Dist. LEXIS 194416, at *7 (W.D. Tex. Mar. 29, 2016) ("The Court agrees with Appellee that Appellants do not have an automatic right to appeal under Section 158(a)(1) because the order being appealed is not 'final.'"). However, this line of reasoning was called into serious question by *Ritzen Group., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020), in which the Supreme Court held that an order denying a motion for relief from stay was a final order. *See In re Glenview Health Care Facility, Inc.*, 2020 Bankr. LEXIS 329 (B.A.P. 6th Cir. Feb. 5, 2020) (indicating that the previous precedent in the Sixth Circuit may need to be reconsidered in light of *Ritzen Group*). If the order denying the S&L Employment Application is *not* a final order, that only makes it even more clear that collateral estoppel does not apply.

the court, and determined.'" *In re Reddy Ice Holdings, Inc.*, 611 B.R. at 810 (quoting *In re Keaty*,

397 F.3d 264, 272 (5th Cir. 2005)). No party in interest asserted that S&L was not a disinterested

person at or prior to the September 20 Hearing. The U.S. Trustee opposed the S&L Employment

Application because Lee did not supplement the Rule 2014 disclosures for KSLPLLC in the IW

Cases. S&L Employment Application Objection ¶ 1. At the September 13, 2022, hearing before

the Court, counsel for the U.S. Trustee confirmed that this was the sole basis for the objection.

(Sept. 13, 2022, Hrg. Tr. 36:1-9). Counsel for the U.S. Trustee indicated in his opening statement

at the September 20 Hearing that Lee's failure to supplement was the only reason the U.S. Trustee

sought the denial of the S&L Employment Application. (Sept. 20, 2022, Hrg. Tr. 44:5-7). And

after the close of evidence, the Court noted that "no one ever talked about . . . what it means to

hold an adverse interest to the debtor or to the estate." (Sept. 20, 2022, Hrg. Tr. 210:16-18). The

issue simply was not raised or contested by the parties in a way that would give rise to collateral

estoppel.

   36. Further, any ruling that S&L had an actual conflict was not a critical and necessary

part of the Court's ruling at the September 20 Hearing. An apparent conflict that may give rise to

an adverse interest falls into one of three categories: (a) actual conflicts of interest; (b) potential

conflicts of interest, and (c) appearances of conflict.[10] *E.g.*, *In re Boy Scouts of Am.*, 35 F.4th 149,

157 (3d Cir. 2022).  Courts have discretion to approve employment of a professional where there

---

[10] "An actual conflict of interest is 'an active competition between two interests, in which one interest can only be
served at the expense of the other.'" *In re Ampal-Am. Israel Corp.*, 534 B.R. 569, 581 (Bankr. S.D.N.Y. 2015), *aff'd*,
554 B.R. 604 (S.D.N.Y. 2016), *aff'd*, 691 F. App'x 12 (2d Cir. 2017) (quoting *In re Diva Jewelry Design, Inc.*, 367
B.R. 463, 472 (Bankr. S.D.N.Y.2007)) (citing also *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr.
S.D.N.Y.1998). A potential conflict is where the parties are currently aligned but may turn out to be adverse on an
issue in the future. *See, e.g.*, *id.*; *In re Schwindt*, 2013 Bankr. LEXIS 342, at *17 (Bankr. D. Colo. Jan. 28, 2013) (2013
WL 321297) (finding only a potential dispute where there were common interests; *In re Contractor Tech., Ltd.*, 2006
U.S. Dist. LEXIS 34466, at *24 (S.D. Tex. May 30, 2006) (affirming decision to authorize employment of attorney
where "[a]ny conflict of interest of [attorney] is merely a potential conflict because there have been no avoidance or
other claims identified so far against any of [attorney's] eight creditor-clients").

exists a potential conflict but must deny employment—at least absent the presence of separate counsel to address conflicts—if there exists an actual conflict.[11] *See, e.g.*, *id.* at 158 ("Attorneys with actual conflicts face *per se* disqualification, but disqualification is at the court's discretion for attorneys with potential conflicts."); *In re Contractor Tech., Ltd.*, 2006 U.S. Dist. LEXIS 34466, at *27 (S.D. Tex. May 30, 2006) (affirming bankruptcy court approval of employment where "there is at best only a potential conflict of interest between [attorney] and the Trustee"); *In re 2000 St. James Place, L.P*, 2010 Bankr. LEXIS 1246, at *4 (Bankr. S.D. Tex. Apr. 19, 2010) ("In the instant case, although there is a strong potential for conflict, there is no evidence as of yet of an actual conflict. Thus, the court will approve Debtor's employment of [attorney]."). The Court's ruling with respect to the S&L Employment Application is equally consistent with a finding of only a potential conflict, in which case the Court would have at least the discretion to approve the limited employment of S&L through the September 20 Hearing.[12] And the S&L Employment Application Objection sought denial on separate, entirely discretionary grounds.

      iii.    *Application of the law of the case doctrine is discretionary and exceptions apply under the facts here.*

37.      Nor does the law of the case doctrine prevent retroactive approval of S&L's employment in connection with the Administrative Expense Motion. "'When the law of the case doctrine is applied by a court to its own prior decisions, it is properly characterized as discretionary in nature.'" *Greener v. Cadle Co.*, 298 B.R. 82, 94 (N.D. Tex. 2003) (quoting *United States v. O'Keefe*, 169 F.3d 281, 283 (5th Cir. 1999)). A court can *always* revisit its prior decisions or the

---

[11] The involvement of the Battaglia Firm as lead counsel advising the Debtor on strategy fills effectively the same role as conflicts counsel in this case. Where conflict's counsel is present, courts may approve employment of separate counsel notwithstanding an asserted conflict. *See, e.g.*, *In re Relativity Media, LLC*, 2018 Bankr. LEXIS 2037, at *19 (Bankr. S.D.N.Y. July 6, 2018); *Exco Res. v. Milbank*, 2003 U.S. Dist. LEXIS 1442, at *26 (S.D.N.Y. Jan. 28, 2003).

[12] The Court indicated that its concern was that representation of the Debtor as debtor in possession "may include making difficult decisions about other parties, if necessary" (Sept. 20, 2022, Hrg. Tr. 247:9-11), referencing claims against PQPR and Alex Jones. At most, this would be a potential conflict.

decisions of a coordinate court. *Id.* The doctrine "is not a barrier to correction of judicial error and is in no way sacrosanct." *Id.* at 95 (citing *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983)).

38.     Courts have frequently declined to apply the law of the case doctrine in three situations: (1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *See United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). The first and third exceptions apply here.

39.     As set out in the Rule 59 Motion, S&L seeks to present evidence directly relevant to the issue of whether S&L had a predisposition in favor of Alex Jones or PQPR that created bias against the estate.[13] This evidence includes, among other things, (a) S&L's prepetition analysis of PQPR's asserted secured claim and representations on behalf of the Debtor in related negotiations; (b) S&L's response to PQPR's requested destruction of information; (c) the scheduling of PQPR's asserted secured claim as disputed; (d) S&L's initial response to Alex Jones's requested extension of the automatic stay regarding the Connecticut Litigation; (e) S&L's independent questioning of Alex Jones's asserted indemnity; (f) the alter ego finding regarding the Texas Litigation; (g) the preparation, submission, and presenting of the proposed cash collateral order submitted to the Court on September 13, 2022; and (h) the negotiations surrounding the Debtor's agreement to lift the stay regarding the Connecticut Litigation, including Alex Jones's negotiation posture that he may cease his involvement with the Debtor. Although S&L submits that it did not have a full and fair opportunity to present such evidence at the September 20 Hearing, which justifies the Court granting a rehearing, S&L should also be able to present such evidence in connection with its

---

[13] S&L filed the Administrative Expense Motion based on the arguments made by the U.S. Trustee and Alex Jones in their objections to the Rule 59 Motion. To the extent that the Court considers retroactive employment of S&L on the merits of whether S&L meets the requirements of Bankruptcy Code § 327 in connection the Administrative Expense motion, the Rule 59 Motion is irrelevant, if not technically moot.

request for retroactive approval of its limited employment through the Administrative Expense Motion, even if the Court denies the Rule 59 Motion. S&L intends to submit further evidence that did not exist at the September 20 Hearing.[14]

40.     Additional evidence of which the Court can take judicial notice is *already* before the Court. For example, the Court referenced in its ruling that the Debtor's estate had not made any claims against PQPR in the fifty-three (53) days between the Petition Date and the September 20 Hearing. (Sept. 20, 2022, Hrg. Tr. 246:16). Despite the removal of S&L as co-counsel and the replacement of Schwartz as CRO, the Debtor still has not brought an action against PQPR and continues to seek entry interim cash collateral orders rather than attempting to partially address the issue at a final cash collateral hearing. *See* Fourth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [ECF No. 238]; Fifth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [ECF No. 258]; Sixth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [ECF No. 287]; Seventh Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [ECF No. 333]. And despite the Court's expansion of the Subchapter V Trustee's duties to include investigation of PQPR's claim and file a statement detailing her findings as soon as practicable (Sept. 20, 2022, Hrg. Tr. 254:3-7, 254:22-24), this has not yet occurred. At the time of the filing of this Reply, one-hundred (100) days have elapsed since the September 20 Hearing.

---

[14] For example, S&L provided services to the Debtor that ultimately resulted in the deal struck by the Debtor's replacement CRO Patrick Magill reflected in the Debtor's Emergency Motion for Entry of Order Authorizing Debtor to Enter into Financial Services Agreement [ECF No. 273] and Debtor's Emergency Motion for Entry of Order Authorizing Debtor to Enter into Product Fulfilment Agreement [ECF No. 276] filed by the Debtor on November 15, 2022. S&L's services provided prior to the September 20 Hearing enabled the Debtor to substantially uncouple its business from PQPR and obtain better economic terms through the arrangement with the third-party. Assisting the Debtor in pursuing this change to its business model tends to demonstrate that S&L did not have any predisposition that interfered with its ability to represent the Debtor in matters that benefited the Debtor's estate to the potential detriment of PQPR or Alex Jones.

41.     All of that makes perfect sense. Some of the potential causes of action and defenses with respect to PQPR and its asserted claim are complicated and may be more efficiently and effectively addressed in the mediation or other consensual resolution.[15] But the Debtor was in discussions about potential mediation prior to the September 20 Hearing. (Sept. 20, 2022, Hrg. Tr. 9:11-16). The interim cash collateral orders do not release any rights to contest the validity or seek avoidance of PQPR's claim. And, as asserted by the Subchapter V Trustee in connection with the application to employ of M3 Advisory Partners, the issue requires expert financial analysis.[16]

42.     The Court also questioned the Debtor's request for authority to hire an appellate attorney and pay 60% of the fees for such attorney, with Alex Jones paying 40%. (Sept. 20, 2022, Hrg. 215:19-20). But the Debtor continued to seek authority to retain appellate counsel under the 60/40 split prior to Jones's agreement with the Sandy Hook Plaintiffs [ECF No. 329]. The

---

[15] The Subchapter V Trustee indicated in the Subchapter V Trustee's First Interim Status Report [ECF No. 227] (the "First Trustee Report") and Subchapter V Trustee's Second Interim Status Report [ECF No. 285] (the "Second Trustee Report") that she has interviewed and received certain financial information from various parties. By November 21, 2022—sixty-two (62) days after the expansion of her duties—the Subchapter V Trustee had "identified a number of potential claims and causes of action[]." Second Trustee Report ¶ 4.l. The Subchapter V Trustee noted, however, that she expected certain of these claims to be the subject of the mediation. *Id.* And despite that there is every reason to believe that the Subchapter V Trustee has been diligent in performing her duties, she had not completed her investigation by December 19, 2022. (Dec. 19, 2022, Hrg. Tr. 47:24-48:16). The issue is simply complicated, requires careful analysis, and is not something that could be accomplished in fifty-three (53) days of the case considering the other matters requiring attention in the case.

[16] In the Subchapter V Trustee's application to employ M3 [ECF No. 282] (the "M3 Employment Application"), the Subchapter V Trustee indicated that the employment was necessary "[b]ecause of the anticipated complexity investigating the matters ordered by the Court and facilitating development of a confirmable plan in this complicated case . . . ." M3 Employment Application ¶ 10. Further, in the Subchapter V Trustee's response to PQPR's objections to the M3 Employment Application [ECF No. 327] (the "M3 Employment Application Reply"), the Subchapter V Trustee represented to the Court:

> As further described in the M3 Application, the Subchapter V Trustee seeks retention of M3 Advisory Partners, LP ("M3") as financial advisor to assist in executing her duties as Subchapter V Trustee. Pursuant to this Court's order, the Subchapter V Trustee's duties were expanded and she was tasked with undertaking an investigation. The Investigation includes reviewing many years worth of transfers and transactions with numerous parties. The records maintained by the parties are incomplete and generally not in good order. The scattered information complicates the process. The Subchapter V Trustee requires the assistance of a financial advisor in fulfilling her duties.

M3 Employment Application Reply ¶ 2 (footnotes omitted). S&L believes that the Subchapter V Trustee is absolutely correct. But that was just as true in the first fifty-three (53) days of the case.

Court approved the Debtor's request to employ appellate counsel on December 19, 2022.[17] (Dec. 19, 2022, Hrg. Tr. 30:22-25). And for good reason. The Sandy Hook Plaintiffs have indicated that they may seek to oppose the dischargeablity of their claims. And the Sandy Hook Plaintiffs actively *desire* the appeals to go through absent a settlement to finally conclude the litigation and opposed Alex Jones's attempts to reimpose the stay. None of that was unforeseeable on September 14, 2022, when the Debtor filed its application to employ appellate counsel [ECF No. 155]. And the credible ability to go forward with an appeal was important to settlement negotiations.

43.     The Court further questioned the Debtor's proposed repayment of $750,000 to PQPR for the purchase of inventory that would be subject to a 90/10 split of proceeds in favor of the Debtor, instead of the 20/80 split of proceeds in favor of PQPR. (Sept. 20, 2022, Hrg. Tr. 215:21-23). Again, the Debtor has continued to pursue this after the September 20 Hearing. (Dec. 19, 2022, Hrg. Tr. 11:4-7); [ECF No. 333]. This decision also makes sense. The benefit to the Debtor's estate of receiving 90% of the proceeds from the related product instead of 20%, pursuant to prepetition Forbearance Agreement between PQPR and the Debtor, exceeds the cost to the Debtor's estate of the payments to PQPR. While other parties have negotiated for clawback rights, no one has opposed the payments from purported cash collateral being made initially.

---

[17] The court granted authority to employ appellate counsel on a 50/50 division of fees instead of the originally proposed 60/40 basis. [ECF No. 348]. But the Debtor sought a hearing on the retention at the 60/40 division, despite the lack of objection to a 50/50 division, because Alex Jones would not agree to that division prior to his deal with the Sandy Hook Plaintiffs [ECF No. 329]. And according to the representations of Jones's counsel at the December 19, 2022, the caveat to his agreement to the 50/50 division was that Jones would seek his full annualized salary of $1.3 million from the Debtor. (Dec. 19, 2022, Hrg. Tr. 14:2-6, 32:11-13). This would be an increase of approximately $60,000 per month. Jones has also represented that he may be required to seek alternative employment absent receiving his full salary. (Dec. 19, 2022, Hrg. Tr. 38:17-20, 40:23-25). Further, Jones filed a motion seeking to set a date by which the Debtor must assume or reject his employment contract [ECF No. 349]. This is the situation that S&L's negotiations with Jones for the 60/40 split (Sept. 20, 2022, Hrg. Tr. 64:17-65:4) were trying to avoid. Absent a negotiated agreement, assumption could require not just the $60,000 per month going forward but also cure for past salary and assumption of other terms of the Employment Agreement.

23

44.     Other additional evidence of which the Court can take judicial notice comes from the positions and statements of Alex Jones in this case. In the AEJ Limited Objection, Jones asserts that S&L should have represented reasons favorable to Jones regarding the Debtor's proposed payment of Jones's travel expenses to attend the Connecticut Litigation and 100% of state court counsel fees.[18] AEJ Limited Objection ¶ 10. That S&L did not argue those points demonstrates that S&L was not taking direction from Jones or asserting positions to benefit Jones. Further, the *actual* reason behind the Debtor's decision—that it was demanded by Jones to continue employment with the Debtor (Sept. 20, 2022, Hrg. Tr. 216:10-13) and necessary to reach a deal with the Connecticut Plaintiffs regarding relief from the stay (Sept. 20, 2022, Hrg. Tr. 10:20-25)—was reflected at the the December 19, 2022, hearing. Jones's counsel asserted that he may be required to seek employment other than with the Debtor absent receiving adequate consideration from the Debtor. (Dec. 19, 2022, Hrg. Tr. 38:17-20, 40:23-25). And both Jones and the Debtor represented that this would leave the Debtor unable to operate. (Dec. 19, 2022, Hrg. Tr. 32:3-6, 38:15-16).

45.     S&L also submits that the Court's prior ruling contained clear error. As set out in S&L's reply to the U.S. Trustee's objection to the Rule 59 Motion [ECF No. 270] (the "<u>Rule 59 Reply</u>"), several factual predicates to the Court's ruling fall under the *higher* standard of manifest error. Rule 59 Reply ¶ 15 n.7. Among the other issues amounting to clear error are the following:

a.    <u>*There was No Evidence at the September 20 Hearing that S&L Presently Held or Represented Any Interest Adverse to the Debtor's Estate*</u>—The inquiry under Bankruptcy Code § 327(a) is whether the professional *presently* holds an adverse interest or *concurrently* represents a party with such adverse interest. *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999); *In re Muma Servs., Inc.*, 286 B.R. 583, 590 (Bankr. D. Del. 2002); *Greene v. InforMD, LLC*, 2018 U.S. Dist. LEXIS 124062, at *8 (M.D. La. July 25, 2018) (2018 WL 3579470). The issue was whether S&L had a "meaningful incentive" to act contrary to the best interests of the Debtor's

---

[18] Jones asserts that S&L's voluntary reduction in the Administrative Expense Motion would be required because of this purported failure.

bankruptcy estate, *In re Quality Bev. Co.*, 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995), or a "personal interest" contrary to the interests of the bankruptcy estate, *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005). Further, such meaningful incentive or personal interest must be supported by evidence. *See In re McDermott Int'l, Inc.*, 614 B.R. 244, 255 (Bankr. S.D. Tex. 2020) (approving retention of a professional because there was no evidence of an adverse interest). There was no evidence of an adverse interest at the September 20 Hearing.[19] And while PQPR and Alex Jones have interests adverse to the Debtor's estate, there is no evidence indicating that S&L represented these parties. Indeed, the evidence introduced at the September 20 Hearing indicated that S&L *did not* represent these parties (Sept. 20, 2022, Hrg. Tr. 61:23-62:1, 62:16-20; 131:15-132:5, 149:23-150:4); Debtor's Ex. 3 [ECF No. 163-3]; Debtor's Ex. 5 [ECF No. 163-5]; Debtor's Ex. 6 [ECF No. 163-6]) and that S&L advised and represented the Debtor in taking positions directly adverse to these parties (Sept. 20, 2022, Hrg. Tr. 62:21-65:16).

b.  *The Court Had Discretion to Grant the S&L Employment Application Despite any Potential Conflict in Pursuing Actions or Defenses against PQPR or Jones*—The Court indicated in its ruling that it was not sure that its decision was discretionary because the Court thought there was a material adverse interest against the estate (Sept. 20, 2022, Hrg. Tr. 248:13-14). The Court indicated that it was concerned about whether S&L could impartially represent the Debtor in making difficult decisions about Alex Jones and PQPR (Sept. 20, 2022, Hrg. Tr. 247:8-11). But even if S&L might have a predisposition affecting its ability to pursuing claims or defenses against PQPR or Jones if that later became necessary, this was only a potential conflict. *See In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (reasoning that a potential conflict is a dispute that may become active if certain contingencies arise). Bankruptcy courts have discretion to approve the employment of a professional where there is only a potential conflict. *In re Boy Scouts of Am.*, 35 F.4th 149, 158 (3d Cir. 2022) ("Attorneys with actual conflicts face *per se* disqualification, but disqualification is at the court's discretion for attorneys with potential conflicts."); *In re Contractor Tech., Ltd.*, 2006 U.S. Dist. LEXIS 34466, at *27 (S.D. Tex. May 30, 2006) (affirming bankruptcy court approval of employment where "there is at best only a potential conflict of interest between [attorney] and the Trustee"); *In re 2000 St. James Place, L.P.*, 2010 Bankr. LEXIS 1246, at *5 (Bankr. S.D. Tex. Apr. 19, 2010) ("In the instant case, although there is a strong potential for conflict, there is no evidence as of yet of an actual conflict. Thus, the court will approve Debtor's employment of [attorney]."). And the actualization of any potential conflict with respect to pursuing claims or defenses against Jones or PQPR was remote. First, as recognized in the Court's

_____

[19] With respect to S&L, the counsel for the U.S. Trustee speculated about the Debtor's proposed 60/40 division of state court counsel fees between Jones and the Debtor and discussions between the counsel and Lee, concluding that "I don't understand why 40/60." (Sept. 20, 2022, Hrg. Tr. 225:8-23). But that is not evidence. The actual evidence was that (a) the Debtor told Jones that he would have to pay a proportionate share and the agreement for a 60/40 split was negotiated with Jones arguing that he had already cut back his regular salary (Sept. 20, 2022, Hrg. Tr. 64:23-65:4) and (b) Schwartz made the decisions for the Debtor. (Sept. 20, 2022, Hrg. Tr. 196:7-9). Further, even if the U.S. Trustee's statements *were* evidence, the appearance of conflict is legally insufficient to warrant denial of an application to employ. *In re Contractor Tech., Ltd.*, 2006 U.S. Dist. LEXIS 34466, at *29 (S.D. Tex. May 30, 2006); *see also In re Marvel Entm't Grp.*, 140 F.3d 463, 477 (3d Cir. 1998) (reasoning that the "appearance of impropriety" or "horrible imaginings alone" do not amount to an adverse interest).

ruling at the September 20 Hearing, a subchapter v debtor is not mandated to investigate its own actions, conduct, assets, or liabilities. (Sept. 20, 2022, Hrg. Tr. 251:1-8). The Debtor's employment of S&L to assist the Debtor in fulfilling its duties as a subchapter v debtor in possession would not involve claims or defenses against Jones or PQPR except in an avoidance action or objection to claim. Second, the Debtor engaged the Battaglia Firm to provide legal advice regarding strategy and implementation of that strategy in the case, with S&L's primary responsibility being "the day-to-day management of the case, issues involving the Sandy Hook Litigation, and all routine activities typical to the Chapter 11 Case." S&L Employment Application ¶ 22. The Battaglia Law Firm had primary responsibility to advise the Debtor whether to bring an action against PQPR or Jones and the timing of any objection to claim. Third, the Court expanded the Subchapter V Trustee's duties to include the investigation contemplated by Bankruptcy Code § 1183 and particularly directed the Trustee to the secured claim asserted by PQPR and prepetition draws by Alex Jones. (Sept. 20, 2022, Hrg. Tr. 254:3-21). The likelihood of S&L advising the Debtor to ignore the Subchapter V Trustee's recommendation with respect to such causes of action or defenses is vanishingly remote.[20] *See In re Contractor Tech., Ltd.*, 2006 U.S. Dist. LEXIS 34466, at *27 (S.D. Tex. May 30, 2006) ("[A]s a practical matter, because St. Paul raised this issue, the Trustee and his employed professionals are likely to give more careful review to the payments to these eight creditors than to any others."). At a minimum, the Court had discretion under the circumstances.

c. *Lee's Failure to Supplement His Disclosures for KSLPLLC after the IW Debtors Decided to Dismiss their Cases Does Not Suggest an Adverse Interest*—As the U.S. Trustee argued to this Court, Bankruptcy Rule 2014 "has one primary purpose—to facilitate strict compliance with section 327." S&L Employment Application Objection ¶ 45. And as the relevant caselaw indicates, the duty to make continuing disclosures is not contained in the text of Bankruptcy Rule 2014 but rather implied with respect to parties employed pursuant to section 327 or seeking court approval of their employment. *See, e.g.*, *In re C & C Demo, Inc.*, 273 B.R. 502, 506-07 (Bankr. E.D. Tex. 2001) (holding that although Rule 2014(a) does not expressly require supplemental or continuing disclosure, this duty is implied by § 327); *In re Keller Fin. Serv. of Florida*, 243 B.R. 806, 813 (Bankr. M.D. Fla. 1999) (finding duty of continuing disclosure under Rule 2014(a) that is implied by requirements of Bankruptcy Code § 327); *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) ("Rule 2014(a) does not expressly require supplemental or continuing disclosure. . . . Nevertheless, section 327(a) implies a duty of continuing disclosure, and requires professionals to reveal connections that arise after their retention."). Supplemental disclosure in the IW Cases would have been irrelevant to compliance with section 327 in those cases. The U.S. Trustee argued that the applications to employ professionals should be decided only after the Court's decision on the U.S. Trustee's

[20] S&L already represented the Debtor in making statements to the Court that PQPR's asserted claim and lien were subject to probable avoidance actions. *See* Debtor's Response to the Sandy Hook Families' Corrected Motion to Expedite Motion to (I) Appoint Tort Claimants Committee and (II) Remove the Debtor in Possession ¶ 8 n.4 [ECF No. 113] (indicating that the Debtor recognized that PQPR's claim and lien may be avoidable and for this reason the Debtor did not agree to limitations on challenging such claim and lien). It is difficult to even *imagine* that S&L would make such a representation to the Court and then advise the Debtor to dispute the existence of such potential actions against PQPR when recommended by the Subchapter V Trustee. And horrible imaginings do not amount to an adverse interest. *In re Marvel Entm't Grp.*, 140 F.3d 463, 477 (3d Cir. 1998).

motion to dismiss and the Court agreed with this position. (May 19, 2022, Hrg. Tr. 14:9-15:9, 23:2-8, Debtor's Ex. 22 [ECF No. 163-22], U.S. Trustee's Ex. 14 [ECF No. 165-14]). When Lee met with the Debtor on May 24, 2022, the IW Debtor's had already decided to dismiss their cases rather than incurring the expense of litigating with the U.S. Trustee. On May 21, 2022, Lee recommended to Schwartz that the IW Debtors agree to dismiss their cases (Debtor's Ex. 24 [ECF No. 163-24]) and by May 23, 2022, Lee was working on obtaining dismissal of the IW Debtor's chapter 11 cases (Debtor's Ex. 25 [ECF No. 163-25]). On May 25, 2022, Lee informed counsel for the U.S. Trustee that the IW Debtor's would agree to dismiss their cases and counsel for the U.S. Trustee suggested a stipulation dismissing the cases instead of an independent motion, which Lee worked on with counsel to the U.S. Trustee's counsel until the stipulation of dismissal was filed on June 1, 2022. (Debtor's Ex. 26, [ECF No.163-26]). Even if Lee was required to supplement his Bankruptcy Rule 2014 disclosures under these circumstances, his failure to do so does not suggest an interest adverse to the Debtor's estate. Lee's evaluation was consistent with the text of Bankruptcy Rule 2014, the purpose of the rule, and the cases interpreting it.

d. _There was no Failure of Disclosure by S&L in the Debtor's Case_—The Court indicated in its ruling at the September 20 Hearing that there was a lack of candor in the Debtor's bankruptcy case. (Sept. 20, 2022, Hrg. Tr. 253:6-7). If the Court's finding was that there was a lack of candor by S&L, this is completely contrary to the evidence. The Court indicated that the $80,000 travel expense in the proposed Third Amended Cash Collateral Order [ECF No. 148] was not called to the Court's attention.[21] (Sept. 20, 2022, Hrg. Tr. 244:10-11). But this was negotiated among the parties and was filed and presented by the Court by the Battaglia Firm. (Sept. 13, 2022, Hrg. Tr. 5:24-7:22; Sept. 20, 2022, Hrg. Tr. 13:4-7). Any finding that a matter set out in public filings with the Court and presented by another attorney was a failure to disclose by S&L is clear error.

---

[21] The U.S. Trustee alleged in connection with other matters that Schwartz did not disclose that the Debtor overhauled its in-house fulfilment process prior to bankruptcy. At the August 12, 2022, hearing in the Debtor's chapter 11 case, counsel for the U.S. Trustee represented to the Court that "[w]e heard nothing about the chang[e] in fulfilment" at the August 3 hearing despite Schwartz being on the witness stand for nearly six hours. (Aug. 12, 2022, Hrg. Tr. 13:10-19). But this allegation was about _Schwartz_ and is simply not true. As indicated in the August 3, 2022, hearing transcript—which was admitted into evidence at the September 20 Hearing as the U.S. Trustee's Exhibit 15 [ECF No. 165-15]—the change to fulfilment _was_ disclosed:

- In the Debtor's opening statement, Mr. Battaglia informed the Court that prior to the Petition Date the Debtor, took efforts to improve its business operations including "changing the cost structure in the way that fulfilment is handled of product sales to reduce the overall overhead to the estate, [reducing] the headcount to the estate." (Aug. 3, 2022, Hrg. Tr. 47:6-9).

- Further, Schwartz testified about the Debtor's fulfilment process and the prepetition changes to the process. (Aug. 3, 2022, Hrg. Tr. 67:8-68:4, 71:3-72:5).

The U.S. Trustee also raised at the September 20 Hearing, that the Debtor's prepetition payment to KSLPLLC for services provided by that firm from May 24 to May 31, 2022, was not reflected in the Debtor's Statement of Financial Affairs. (U.S. Trustee's Ex. 2 [ECF No. 165-2]), which was signed by Schwartz. But as indicated in the Court's ruling (Sept. 20, 2022, Hrg. Tr. 232:15-17) payment to KSLPLLC _was_ referenced in the S&L Employment Application. (Debtor's Ex. 1 [ECF No. 163-1], at p.5 n.1). There is no evidence to suggest that the omission from the SOFA was the result of S&L's failure to disclose.

**C. Retroactive Approval of S&L's Employment for Services Provided Through the September 20 Hearing is Appropriate.**

46.     Retroactive approval of the Debtor's limited employment of S&L for the period from the Petition Date through the September 20 Hearing is appropriate. There are exceptional circumstances justifying consideration of such retroactive approval through the Administrative Expense Motion and S&L meets the requirements for employment on the limited basis requested in the Administrative Expense Motion.

      i.     *Exceptional circumstances justify consideration of retroactive employment of S&L in connection with the Administrative Expense Motion.*

47.     Retroactive employment of a professional through an application for compensation is appropriate where there are "rare or exceptional circumstances[.]" *In re Triangle Chems.*, 697 F.2d 1280, 1289 (5th Cir. 1983); *accord In re Mohiuddin*, 627 B.R. 875, 884 (Bankr. S.D. Tex. 2021) (retroactively expanding scope of employment under Bankruptcy Code § 327 in connection with a fee application). Exceptional circumstances exist here.

48.     This is not a case where S&L is seeking untimely approval of its employment.[22] Pursuant to Bankruptcy Local Rule 2014-1(b)(1), the S&L Employment Application was deemed filed contemporaneous with S&L's commencement of provision of services to the Debtor as debtor in possession in this chapter 11 case. S&L filed the Rule 59 Motion prior to expiration of the period for such motion set out in Bankruptcy Rule 9023, and therefore the order denying the S&L

---

[22] Even if S&L was untimely in seeking approval of its employment, however, the circumstances would support retroactive consideration. S&L was under considerable time pressure to begin providing services for the Debtor. Immediately after the filing of the Debtor's chapter 11 case, S&L had to obtain a setting on the Debtor's motion to modify the automatic stay with respect to the Heslin/Lewis Suits [ECF No. 2]. The Debtor filed its chapter 11 case on a Friday, and a hearing on the motion to modify the automatic stay was held the following Monday morning. Several other emergency matters required S&L's services prior to consideration of the S&L Employment Application. Among other things, S&L (a) had to prepare a response to an emergency motion to remand in the removed Connecticut Litigation where the Connecticut Plaintiffs sought fees on three (3) days' notice of the deadline [*see* Adv. No. 22-05019 (Bankr. D. Conn.), Dkt. Nos. 5, 10 &14]; (b) address issues regarding fulfillment of orders [*see* ECF No. 55]; (c) respond to the Connecticut Plaintiff's motion for relief from stay [ECF No. 15]; and (d) provide information and discovery to the Sandy Hook Plaintiffs.

Employment Application is not yet a final order. S&L filed the Administrative Expense Motion in light of the arguments made in the objections of the U.S. Trustee and Jones to the Rule 59 Motion as an alternative consistent with those parties' position and the Court's ruling at the September 20 Hearing.

49.     Further, in its ruling at the September 20 Hearing, the Court expressly left open questions regarding S&L's retention. (Sept. 20, 2022, Hrg. Tr. 256:14-17). At that time, however, the Debtor was left without management due to the denial of the Debtor's application to employ Schwartz as CRO. The Debtor was also put in a position where it had to decide whether to incur substantial expense on the issue and distract the Battaglia Firm from other matters necessary for the case prior to finding a replacement CRO. As a practical matter, the Debtor was unable to seek approval of limited retention of S&L.

50.     Where a debtor in possession does not endeavor to obtain approval of the employment of a professional that has provided services to the debtor or ceases seeking approval of such employment, the professional has standing to pursue its own employment. *See Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 479-80 (B.A.P. 9th Cir. 1996); *Blocksom v. Brown (In re Brown)*, 555 B.R. 854, 859 (Bankr. S.D. Ga. 2016) ("A trustee should not be allowed to leverage an exclusive ability to file employment applications against a professional seeking to be employed and compensated for services already performed."). This is an exceptional circumstance justifying consideration of retroactive approval of S&L's employment through the Administrative Expense Motion.

51.     Finally, the amount of the Requested Administrative Expense Claim is consistent with the amount contemplated by the interim cash collateral orders that were agreed to by the parties and approved by the Court. In the Third Amended Cash Collateral Order [ECF No. 151],

the Debtor received authority to use PQPR's asserted cash collateral to pay $207,348.36 to S&L during the relevant time period, subject to interim compensation procedures. The then-pending motion for interim compensation procedures [ECF No. 135], contemplated a procedure for allowing on an interim basis 80% of requested fees. Including the prepetition Retainer of $50,822.68, the total amount of compensation contemplated in the Third Amended Cash Collateral Order was $310,008.13.[23] The Requested Administrative Expense Claim of $325,215.85 is consistent with the expectations of the parties in interest.

> ii. *S&L is disinterested under at least the circumstances of limited employment for services provided by S&L through the September 20 Hearing.*

52.     S&L does not have or represent any interest adverse to the Debtor's estate. Neither S&L nor the attorneys associated with the firm: (a) are a creditor, equity security holder, or insider of the Debtor; (b) is or was ever a director, officer, or employee of the debtor; (c) possess or assert any economic interest lessening the value of the Debtor's bankruptcy estate or creating a potential dispute in which the estate is a rival claimant; or (d) represent or have ever represented Alex Jones, PQPR, or any other creditor in this chapter 11 case. Nor does S&L or the attorneys associated with the firm have any predisposition that limits or interferes with the ability of S&L to provide unbiased advice to the Debtor as debtor in possession.

53.     The concerns identified in the Court's ruling at the September 20 Hearing surrounded S&L's ability to provide unbiased advice with on matters involving claims and defenses against PQPR and Alex Jones. (Sept. 20, 2022, Hrg. Tr. 247:8-11). The evidence in connection with the Administrative Expense Motion will address these concerns.[24]

---

[23] ($207,348.36 / 0.8) + $50,822.68 = $310,008.13

[24] Much of the evidence that S&L will submit is summarized in the Rule 59 Motion; however, S&L will also seek to introduce additional evidence. For example, S&L attorney R. J. Shannon sent the email attached as Exhibit A to counsel for the Texas Plaintiffs on August 8, 2022. In that email, Shannon informed the Texas Plaintiffs of the Debtor's

54.     But even if, for the sake of argument, S&L had some predisposition limiting its ability to pursue actions or defenses to Alex Jones or PQPR under certain circumstances, that predisposition would **_not_** hinder S&L's ability to provide unbiased advice with respect to the limited scope of services relevant prior to the September 20 Hearing. As the Court recognized in its ruling at the September 20 Hearing, whether a proposed professional is disinterested requires attention to the circumstances that may impair a professional's ability to offer impartial advice to its client. (Sept. 20, 2022, Hrg. Tr. 235:1-4). The scope of the proposed employment and limitations to that employment are among the circumstances that the Court should consider.

55.     The Court's concerns were not issues that arose in the first fifty-three (53) days of the Debtor's chapter 11 case that comprise the period for which S&L seeks retroactive approval of its employment through the Administrative Expense Motion. During that time, the Debtor was focused on administrative matters and how to address the Sandy Hook Litigation without untenable interruption to its business or administrative expense incurred in drawn out litigation with the Sandy Hook Plaintiffs. Under the circumstances of employment limited to services provided through the September 20 Hearing, the potential of a conflict actualizing at some later time would not amount to an interest adverse to the Debtor's estate.

### REPLY TO ARGUMENT THAT RETROACTIVE EMPLOYMENT UNDER BANKRUPTCY CODE § 327(e) IS NOT AVAILABLE

56.     The U.S. Trustee argues that retroactive employment under Bankruptcy Code § 327(e) is not available because (a) S&L is not the appropriate party to seek its employment under

---

basis for designating PQPR as an insider and cautioned about positions that could harm the chances of successfully prosecuting an action against PQPR. In particular, Shannon warned that if the Texas Plaintiffs obtained a finding establishing that "PQPR is not an insider, we lose the extended preference lookback period w/r/t PQPR and make getting its lien avoided more of an up-hill battle" and that "[a]n unavoidable PQPR lien also opens up paths for Alex Jones to terminate his employment with the Debtor, force it into liquidation, credit bid for the assets, and continue on at a different entity to the detriment of the bankruptcy estate and your clients." Shannon also indicated that while he did not think that avoidability of the lien obviated the need for permission to use cash collateral prior to the actual avoidance, it would be a good outcome if the Sandy Hook Plaintiffs were successful in that endeavor.

section 327(e) and (b) the scope of services reflected in the S&L Employment Application do not fall within the ambit of section 327(e). These arguments are inconsistent with applicable caselaw and the circumstances of this chapter 11 case.

### A. S&L Can Seek Approval of its Employment in Connection with the Administrative Expense Motion.

57.     The U.S. Trustee asserts that the plain language of Bankruptcy Code § 327(e) provides that only the Debtor—as debtor in possession—can seek approval of its employment of S&L under that provision. UST Objection ¶ 23. This is contrary to the statutory language and relevant authority.

58.     The language of Bankruptcy Code § 327(e) does not limit the party that can seek the approval of the employment of a professional. The statute provides:

> The trustee, with the court's approval, may employ, for a specified purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

While the statute requires that the trustee—or debtor in possession pursuant to Bankruptcy Code §§ 1107 or 1184—be the party to employ the professional, it is silent about which parties may seek court approval of the employment. Moreover, Bankruptcy Code § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The statutory framework does not prevent S&L from seeking the relief requested in the Administrative Expense Motion.

59.     Relevant authority supports S&L's position. A professional may seek approval of its own employment for services rendered to a debtor in possession pursuant to an engagement agreement with the debtor in possession where the Debtor ceases pursuing the approval of such employment. *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 480 (B.A.P. 9th

Cir. 1996); *Blocksom v. Brown (In re Brown)*, 555 B.R. 854, 859 (Bankr. S.D. Ga. 2016) ("A trustee should not be allowed to leverage an exclusive ability to file employment applications against a professional seeking to be employed and compensated for services already performed."); *cf.* Bankruptcy Local Rule 2014-1(a) (requiring that an application for employment "by an attorney for the debtor" include certain information). An application for compensation and attendant administrative expense claim is an appropriate mechanism to seek such approval. *See In re Triangle Chems.*, 697 F.2d 1280, 1282 (5th Cir. 1983); *In re McKenzie*, 2013 Bankr. LEXIS 2672, at *2-*3 (Bankr. E.D. Tenn. July 2, 2013) (2013 WL 3335168); *In re Little Greek Rest.*, 205 B.R. 484, 486 (Bankr. E.D. La. 1996); *In re Saybrook Mfg. Co.*, 108 B.R. 366, 369-70 (Bankr. M.D. Ga. 1989); *see also In re Mohiuddin*, 627 B.R. 875, 884 (Bankr. S.D. Tex. 2021) (retroactively expanding the scope of attorney's employment under Bankruptcy Code § 327(e) in connection with an application for compensation).

60.     The U.S. Trustee presents no argument as to why S&L cannot seek retroactive approval of its employment on a limited basis under Bankruptcy Code § 327(e). In its ruling at the September 20 Hearing, the Court left open the issue of where its decision left S&L in terms of retention for work previously done and compensation (Sept. 20, 2022, Hrg. Tr. 256:14-257:4). Courts have considered applications to employ under Bankruptcy Code § 327(e) after denial of an application under section 327(a). *Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.)*, 323 B.R. 403, 405 (D. Del. 2005); *In re Star Ready Mix, Inc.*, 2008 Bankr. LEXIS 3400, at *5-*6 (Bankr. E.D. Cal. Dec. 18, 2008) (2008 WL 5338746) ("This court has already denied the Trustee's application to employ Klein as general counsel based on Klein's prior and concurrent representation of a creditor with interests adverse to the bankruptcy estate and that ruling is now final. That ruling, however, did not foreclose the possibility of Klein's employment

under § 327(e).”); *see also* 3 COLLIER ON BANKRUPTCY ¶ 327.04[9] (“Although an attorney's lack of disinterestedness may preclude employment by the trustee for general purposes in conducting a bankruptcy case, the attorney may still be retained by the estate for a 'special purpose.'”). The S&L Employment Application did not limit the subsection of Bankruptcy Code § 327 under which the Debtor sought to employ S&L.[25] *See* S&L Employment Application ¶ 2. And, as set out further below, the S&L Employment Application indicated that the Debtor sought to employ S&L for clearly limited purposes while the Battaglia Firm was responsible for the strategy of the Debtor's chapter 11 case and the implementation of that strategy. *Id.* at ¶ 22.

**B.   Retroactive Approval of S&L's Employment under Bankruptcy Code § 327(e) is Appropriate.**

61.     S&L meets the standards for employment under Bankruptcy Code § 327(e) for the limited matters contemplated to be S&L's primary responsibilities set out in the S&L Employment Application. These matters include those related to (a) administrative matters such as the preparing and filing of notices, serving pleadings, and complying with local rules requirements, (b) matters related to enabling the Sandy Hook Litigation to continue to judgment, and (c) specific matters requested by the Debtor or lead bankruptcy counsel.

62.     Employment under Bankruptcy Code § 327(e) is appropriate where five (5) elements are present: (1) employment by the trustee or debtor in possession for a specified special purpose; (2) the specified purpose is not to represent the trustee or debtor in possession in conducting the case; (3) the professional is an attorney that represented the debtor; (4) the employment is in the best interest of the bankruptcy estate, and (5) the attorney does not represent

---

[25] While the S&L Employment Application argued that S&L met the standard for employment under section 327(a), the higher standard for disinterestedness under that provision subsumes entirely the similar standard for employment under section 327(e).

or hold any interest adverse to the debtor or the estate with respect to the matter on which the attorney is to be employed. 11 U.S.C. § 327(e). S&L satisfies each of these requirements.

>    i.   *The Debtor engaged S&L for specified limited purposes and S&L seeks, in the alternative, retroactive approval of its employment on such specified limited purposes.*

63.     The S&L Employment Application indicated that the Debtor sought to employ S&L for specified limited purposes. The Debtor contemplated that S&L would "be primarily responsible for the day-to-day management of the case, issues involving the Sandy Hook Litigation, and all routine activities typical to the Chapter 11 Case." S&L Employment Application ¶ 22. The Battaglia Firm's primary responsibility was to "provide legal advice regarding strategy for the Chapter 11 Case and implementation of that strategy." *Id.* The Debtor engaged S&L to provide a limited scope of services to the Debtor while the Battaglia Firm was responsible for advising the Debtor with respect to the direction of the chapter 11 case and the actions necessary to effectuate the Debtor's restructuring.

64.     Similarly, S&L seeks in the alternative through the Administrative Expense Motion retroactive approval of its employment from the Petition Date through the September 20 Hearing for a specified limited purpose. The limited purposes for which S&L seeks retroactive approval of its employment through the Administrative Expense Motion are (a) administrative matters such as the preparing and filing of notices, serving pleadings, and complying with local rules requirements, (b) matters related to enabling the Sandy Hook Litigation to continue to judgment, and (c) specific matters requested by the Debtor or lead bankruptcy counsel. Administrative Expense Motion ¶ 29.

>    ii.  *The limited purposes for which the Debtor engaged S&L and for which S&L seeks retroactive approval of its employment are not "conducting the case" under Bankruptcy Code § 327(e).*

65.     The statutory of framework of Bankruptcy Code § 327(e) excludes "conducting the case" from the specified purposes for which employment may be approved under that provision.

Courts may approve employment under section 327(e) for a specified purpose as long as that specified purpose is not "conducting the case."

66.     Courts have interpreted "conducting the case" to involve the preparation of the chapter 11 plan, liquidating the estate, and assisting in the claims objection process. *In re Hart Oil & Gas, Inc.*, 2013 Bankr. LEXIS 3128, at *8 (Bankr. D.N.M. Aug. 2, 2013) (2013 WL 3992252) (collecting cases); *see also* 3 COLLIER ON BANKRUPTCY ¶ 327.04[9][c] ("The reference to 'conducting the case' in section 327(e) includes those matters that form a part of the administration of the case under the Code. In a reorganization case, these matters include assisting in formulating a plan and assisting the trustee in carrying out required investigations . . . ."). Where there is another attorney serving as general bankruptcy counsel, special counsel may be retained for limited bankruptcy matters including obtaining court approval for the use of cash collateral, selling assets and disposing of related executory contracts, and preparing and negotiating a key employee retention program and providing payment to critical personnel of the debtor. *Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.)*, 323 B.R. 403, 408 (D. Del. 2005). Matters other than "conducting the case" fall within the scope of Bankruptcy Code § 327(e).

67.     The limited purposes for which S&L seeks retroactive approval of its employment by the Debtor—(a) administrative matters such as the preparing and filing of notices, serving pleadings, and complying with local rules requirements, (b) matters related to enabling the Sandy Hook Litigation to continue to judgment, and (c) specific matters requested by the Debtor or lead bankruptcy counsel—are not the kind of core restructuring matters that courts have held to be "conducting the case" as that term is used in Bankruptcy Code § 327(e). Under the division of responsibilities contemplated in the S&L Employment Application and for which S&L seeks

36

approval of in the Administrative Expense Motion, the Battaglia Firm would be responsible for advising the Debtor with respect to the strategy and matters amounting to "conducting the case."

   iii. *The Debtor engaged S&L as an attorney and S&L seeks retroactive approval of its employment as an attorney.*

  68. There can be no reasonable dispute that the Debtor engaged S&L as an attorney or that S&L seeks retroactive approval of its employment as an attorney. As set out in the S&L Employment Application, the Debtor engaged S&L as an attorney. And S&L seeks compensation and retroactive authorization of its employment as an attorney.

   iv. *S&L Represented the Debtor prior to the Petition Date.*

  69. It should similarly be undisputed that S&L represented the Debtor prior to the Petition Date. The Debtor executed an engagement letter retaining S&L on June 6, 2022, effective retroactively to May 24, 2022.[26] S&L began providing services to the Debtor on June 1, 2022 [ECF No. 163-3 at p.2].

   v. *Employment of S&L for the limited purposes for which S&L seeks retroactive approval of its employment was in the best interests of the Debtor's bankruptcy estate.*

  70. The Debtor's engagement of S&L for the limited purposes for which S&L seeks retroactive approval of its employment was in the best interests of the Debtor's bankruptcy estate. S&L attorneys had deep knowledge of the Sandy Hook Litigation and their involvement allowed the Battaglia Firm to focus on strategy and the implementation of that strategy to conduct the Debtor's chapter 11 case. The Debtor needed additional counsel and S&L was particularly qualified to assist on the litigation issues.

---

[26] As indicated in the engagement letter, S&L was formed on June 1, 2022. However, Kyung Lee through KSLPLLC familiarized himself with background on the Debtor, conferenced with counsel for PQPR, and began working on a first-day declaration prior to that date. [ECF No. 163-9]. S&L began providing services to the Debtor on June 1, 2022 [ECF No. 163-3 at p.1].

71.     S&L attorneys had extensive knowledge of the Sandy Hook Litigation as the result of their involvement in the IW Cases and work for the Debtor prior to the Petition Date. S&L attorneys were familiar with factual and legal issues of the litigation as well as the intersection of those issues with applicable bankruptcy law.[27] Issues surrounding the Sandy Hook Litigation and the automatic stay with respect to those actions were significant aspects of the early part of the Debtor's chapter 11 case and required substantial attention. Any new attorney would require substantial time to become familiar with the issues—for which the Debtor would incur substantial expense—and cause delay in resolving these issues in the Debtor's chapter 11 case.

72.     Further, the Debtor's engagement of S&L to address the issues surrounding the Sandy Hook Litigation and automatic stay provided the Debtor's lead counsel bandwidth to focus on strategy and implementation of that strategy to conduct the Debtor's chapter 11 case. The Battaglia Firm is a single attorney law firm, and as Mr. Battaglia represented to the Court at the September 20 Hearing, co-counsel was necessary to address the numerous issues in the early part of this case.[28] (Sept. 20, 2022, Hrg. Tr. 222:6-16). S&L provided at least 523.1 hours of services for the Debtor from the Petition Date through the September 20 Hearing on issues that would have otherwise required Mr. Battaglia's attention.

73.     The Debtor's engagement of S&L enabled the Debtor to move its chapter 11 case forward enough by the September 20 Hearing that it had a draft plan of reorganization prepared and was able to begin discussions about mediation with the Sandy Hook Plaintiffs. (*See* Sept. 20,

---

[27] For example, S&L had previously researched extensively whether the Sandy Hook Plaintiffs' claims fell under 28 U.S.C. § 157(b)(5) under caselaw in both the Southern District of Texas and the District of Connecticut. This allowed the Debtor to prepare its response to the Connecticut Plaintiffs' motion for relief from stay and respond to Alex Jones's request for stay of remand more efficiently than could have been handled by another firm.

[28] For example, S&L represented the Debtor in an emergency hearing in the U.S. Bankruptcy Court for the District of Connecticut on the same day that an emergency hearing with respect to amending the interim cash collateral order was held in this Court. It is unlikely that Mr. Battaglia could have prepared and argued both without co-counsel.

Hrg. Tr. 7:25-8:19, 9:11-16). Getting to this point required the Debtor to address numerous initial matters and reach a solution that would enable the Connecticut Litigation to continue without destroying the Debtor's ability to reorganize. This outcome required the retention of counsel in addition to the Battaglia Firm that was familiar with the details of the Sandy Hook Litigation.

> vi.  *S&L does not and did not during the engagement period represent or hold any interest adverse to the debtor or the estate with respect to the limited purposes for which S&L seeks retroactive approval of its employment under Bankruptcy Code § 327(e).*

74.     Even if S&L was not entirely disinterested for purposes of approval of employment under Bankruptcy Code § 327(a), S&L does not and did not during the engagement period represent or hold any interest adverse to the Debtor or the estate with respect to (a) administrative matters such as the preparing and filing of notices, serving pleadings, and complying with local rules requirements, (b) matters related to enabling the Sandy Hook Litigation to continue to judgment, and (c) specific matters requested by the Debtor or lead bankruptcy counsel. S&L therefore meets this element for approval of its employment under Bankruptcy Code § 327(e).

75.     An entity has an adverse interest to the estate where (a) it possesses or asserts any economic interest that would tend to lessen the value of the bankruptcy estate or would create either an actual or potential dispute in which the estate is a rival claimant or (b) possesses a predisposition under circumstances that renders the predisposition a bias against the estate. *See I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005). The "definition must be employed with an eye to the specific facts of each case, and with attention to circumstances that may impair a professional's ability to offer impartial, disinterested advice to his or her client." *Id.* The question is whether S&L has a "meaningful incentive" to act contrary to the best interests of the Debtor's bankruptcy estate, *In re Quality Bev. Co.*, 216 B.R. 592, 595

(Bankr. S.D. Tex. 1995), or "personal interest" contrary to the interests of the bankruptcy estate, *In re W. Delta Oil Co.*, 432 F.3d at 355.

76.     S&L does not and did not during the engagement period represent any other party in connection with the Debtor's chapter 11 case or the Sandy Hook Litigation. Although S&L attorneys previously represented the IW Debtors in the litigation, (a) the Texas Plaintiffs released their claims against the IW Debtors by May 19, 2022; (b) the Connecticut Plaintiffs dismissed their claims against the IW Debtors with prejudice between May 13 and May 26, 2022;[29] and (c) the IW Debtors are not creditors in the Debtor's chapter 11 case. S&L does not and never has represented Alex Jones, PQPR, or any other party in interest in this chapter 11 case. [ECF Nos. 163-5 & 163-6]; (Sept. 20, 2022, Hrg. Tr. 61:23-62:1, 62:19-20, 131:15-132:5, 149:23-150:4). The S&L engagement agreement expressly provides that the representation of the Debtor did not include any "parents, subsidiaries, employees, officers, owners, or affiliates (including commonly owned companies) . . . ." [ECF No. 163-3, at p. 6 of 12]. Further, S&L took affirmative steps prepetition to ensure that Jones would not have control over the Debtor's restructuring. [ECF No. 178-1, 178-2, 178-3]; (Sept. 20, 2022, Hrg. Tr. 95:14-96:1).

77.     Similarly, S&L does not and did not during the engagement period possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or create either an actual or potential dispute with the Debtor with respect to the limited purposes for which S&L seeks retroactive approval of its employment under Bankruptcy Code § 327(e). The only economic interest S&L has in the Debtor's chapter 11 case is with respect to any administrative expense

[29] The Connecticut Plaintiffs filed a notice of dismissal of their claims with prejudice against the IW Debtors with the U.S. Bankruptcy Court for the District of Connecticut on May 13, 2022, along with an unopposed motion for dismissal of the claims with prejudice. [ECF No. 163-20]. The Connecticut Bankruptcy Court held a hearing on May 24, 2022, at which it granted the unopposed motion to dismiss and requested a proposed order. The Connecticut Bankruptcy Court entered the proposed order submitted by the Connecticut Plaintiffs on May 26, 2022. [Adv. No. 22-05006 (Bankr. D. Conn.), Dkt. No. 28].

40

claim allowed by the Court for the services provided and expenses incurred on behalf of the Debtor as debtor in possession.

78.     Nor does S&L possess any predisposition under circumstances that would render such predisposition a bias against the Debtor or the bankruptcy estate with respect to the limited purposes for which S&L seeks retroactive approval of its employment under Bankruptcy Code§ 327(e). *West Delta Oil* illustrates the kind of situation that might give rise to a predisposition amounting to an adverse interest. In that case, the attorney for the debtor in possession simultaneously represented the debtor and sought to acquire a financial interest in the debtor along with a group of other investors. *In re W. Delta Oil Co.*, 432 F.3d at 356-57. In reaching its holding that the attorney possessed an adverse interest, the Fifth Circuit Court of Appeals reasoned that:

> A lawyer who simultaneously represents a debtor in a bankruptcy proceeding and seeks to acquire a financial interest in the debtor faces myriad quandaries, particularly in the liquidation context. In essence, the lawyer is representing a seller (the debtor) and a buyer (himself). Efforts to preserve and enhance the value of the seller's assets will work inevitably against the buyer's interest in purchasing at the lowest price possible. In addition, efforts to market the seller to other potential bidders may drive up the price, forcing buyers to increase their bids. Moreover, opting to reorganize rather than liquidate may reduce or eliminate possible avenues for anyone wishing to acquire specific economic interests. In short, by operating as a potential buyer, a lawyer for a bankruptcy estate possesses a predisposition to reduce the price of the estate's assets which works to the detriment of the estate, its creditors, and its equity stakeholders.

*Id.* at 356. A predisposition creates an adverse interest where the circumstances give rise to a *personal interest* that the professional has in the bankruptcy case. *See id.* at 355 ("[A]ttorneys engaged in the conduct of a bankruptcy case should be free of the slightest personal interest . . . ." (internal quotation marks omitted)). S&L does not have any personal interest predisposing it to take actions contrary to the Debtor or the estate with respect to (a) administrative matters such as the preparing and filing of notices, serving pleadings, and complying with local rules requirements,

(b) matters related to enabling the Sandy Hook Litigation to continue to judgment, or (c) specific matters requested by the Debtor or lead bankruptcy counsel.

79.     With respect to administrative matters and matters requested by the Debtor and lead bankruptcy counsel, S&L submits that it is unreasonable that any personal interest even *could* exist. There is no room for personal interest on matters like obtaining service of pleadings and notices of hearings, preparing the status report required by Bankruptcy Code § 1188(c), or representing the Debtor at the section 341 meeting. And matters requested by the Debtor or lead bankruptcy counsel outside of S&L's primary responsibility necessarily involve the evaluation by another counsel.

80.     Further, the positions represented in this chapter 11 case and the IW Cases indicate that S&L and its professionals has no predisposition with respect to the Sandy Hook Litigation. In this chapter 11 case, S&L represented the Debtor in seeking to maintain the automatic stay to the extent necessary to preserve the Debtor's estate and in agreeing to and affirmatively seeking modification of the automatic stay where beneficial to the estate. *See* Debtor's Response to Emergency Motion for Relief from the Automatic Stay [ECF No. 78]; Agreed Order Modifying the Automatic Stay to Allow the Connecticut Litigation to Continue to Final Judgement [ECF No. 117]; Debtor's Emergency Motion for an Order Modifying the Automatic Stay to Allow the Heslin[]/Lewis State Court Suit to Continue to Judgement [ECF No. 2]. S&L also represented the Debtor in rejecting Alex Jones's request to extend the automatic stay as to him individually. In the IW Cases, S&L professionals removed and opposed remand of the Sandy Hook Litigation absent dismissal of the claims against the IW Debtors with prejudice, [Adv. No. 22-01023-hcm (Bankr. W.D. Tex.), Dkt. No. 9]; [Adv. No. 22-05004 (Bankr. D. Conn.), Dkt. No. 22], but sought to *expedite* dismissal of the claims against the IW Debtor with prejudice and attendant remand of the

removed litigation when offered by the Plaintiffs, [Case No. 22-60020 (Bankr. S.D. Tex.), Dkt. Nos. 91-15 & 91-16]. S&L was agnostic about whether the Sandy Hook Litigation claims were determined in state court or bankruptcy court, except to the extent it affected the relevant bankruptcy estates.

### C. The Majority of Services S&L Provided to the Debtor During the Engagement Period Do Not Constitute Representing the Debtor in "Conducting the Case."

81.     The U.S. Trustee argues that the Court cannot retroactively approve S&L's employment under Bankruptcy Code § 327(e) because the services provided by S&L include representation on matters that are "conducting the case." UST Objection ¶ 24. But this does not present a serious obstacle. A professional is not entitled to compensation for services that exceed the scope of its employment. *See, e.g.*, *In re Mohiuddin*, 627 B.R. 875, 880 (Bankr. S.D. Tex. 2021) ("Estate professionals are not entitled to compensation for work exceeding the scope of the order authorizing the professional's employment."). If the Court retroactively approved S&L's employment under Bankruptcy Code § 327(e), only the services falling under the relevant scope of the employment would be compensable.

82.     Most of the services provided by S&L would be appropriate under Bankruptcy Code § 327(e).  As set out in the Administrative Expense Motion, the largest portion of the services provided by S&L to the Debtor were related to the Sandy Hook Litigation and reflected in the Litigation (116.4 hours; $80,536.25), Relief from Stay Proceedings (82.9 hours; $60,632.50), and Fee/Employment Applications (71.9 hours; $44,535.00) categories. The services in these categories that were not related to the Sandy Hook Litigation were largely either administrative matters or matters the Debtor designated for S&L to handle. The services provided in other categories also largely reflect matters that S&L was asked to handle. For example, S&L was tasked

with responding to the Tort Committee Motion [ECF no. 102] and the attendant the motion to expedite [ECF No. 107], and S&L recorded such services under the Case Administration category.

83.     Certain services provided by S&L, however, do not fall within the scope of § 327(e). For example, S&L professionals provided 15.5 hours of services under the Plan and Disclosure Statement Category and 2.7 hours of services in the Claims Administration and Objections category. While these services benefited the estate and were related to matters involving the Sandy Hook Litigation—e.g., the analysis of Jones's asserted indemnity claim was relevant in the Debtor's rejection of Jones's request for the Debtor to seek extension of the automatic stay—they likely amount to providing services related to "conducting the case" as that term is used in Bankruptcy Code § 327(e).

84.     The law is clear on what the effect would be if the Court retroactively approves S&L's employment under section 327(e). Only the matters within the scope of employment would be compensable. But the thrust of the services provided by S&L were for the particular purpose identified in the S&L Employment Application to be S&L's primary responsibility and for which S&L seeks retroactive approval of its employment under Bankruptcy Code § 327(e) in the alternative.

## REPLY TO ARGUMENTS THAT S&L IS NOT ENTITLED TO COMPENSATION OR EXPENSES UNDER BANKRUPTCY CODE § 503(b)(1)(A)

85.     The UST Objection and Debtor/Trustee Objection oppose allowance of an administrative expense under Bankruptcy Code § 503(b)(1)(A) for S&L's fees. But their arguments do not undercut the position that S&L actually asserts.

86.     S&L submits that even if the Court adopts the U.S. Trustee's mistaken assertion that S&L cannot seek retroactive approval of its limited employment under section 327, the Court can still grant *de facto* approval of S&L's employment and allow an administrative expense under

section 503(b)(1)(A) because S&L meets the substantive requirements of section 327. Further, expenses incurred by S&L that would otherwise have been borne by the estate—e.g., the cost of serving pleadings—are properly administrative expenses of the estate even absent S&L's ability to meet the substantive requirements of section 327.

### A. Bankruptcy Code § 503(b)(1)(A) Provides a Mechanism to Allow an Administrative Expense Claim for S&L's Fees if the Court Determines that S&L Does Not Have the Ability to Seek Approval of its Employment.

87.     The UST Objection and the Debtor/Trustee Objection cite numerous cases supporting the proposition that Bankruptcy Code § 503(b)(1)(A) cannot be used to circumvent the substantive requirements of Bankruptcy Code § 327. S&L agrees that this is consistent with the weight of authority.[30]

88.     However, this either misunderstands or ignores S&L's actual argument with respect to section 503(b)(1)(A). S&L's contention that section 503(b)(1)(A) can form a basis to allow fees where the professional's employment could have been approved under section 327 but for the professional's inability to seek approval of its own employment for some reason. *Mehdipour v.*

---

[30] S&L contends that this authority is no longer persuasive in light of subsequent developments of the law on the standards applied to professional compensation under Bankruptcy Code § 330. The premise underlying these decisions is that allowing professional compensation under section 503(b)(1)(A) would render nugatory sections 327, 330, and/or 503(b)(2). *See, e.g.*, *F/S Airlease II v. Simon*, 844 F.2d 99, 109 (3d Cir. 1988). While this would be sound if the same standard applied to allowance of compensation under section 330 (and thus allowance as an administrative expense under 503(b)(2)) and an administrative expense under section 503(b)(1)(A), the standards are no longer the same. An administrative expense under section 503(b)(1)(A) requires showing that the goods or services received by the bankruptcy estate in exchange for the obligation directly benefit the estate. *McBride v. Riley (In re Riley)*, 923 F.3d 433, 439 (5th Cir. 2019). While binding Fifth Circuit precedent *previously* required a professional's services to have resulted an identifiable, tangible, and material benefit to the estate for an award of compensation under section 330 viewed retrospectively, this was abrogated by the Fifth Circuit Court of Appeals sitting *en banc* in *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266 (5th Cir. 2015), in which the Fifth Circuit adopted a prospective standard focused on whether the services were reasonably likely to benefit the estate at the time the services were provided. *Id.* at 268. Therefore, there are amounts allowable under sections 330 and 503(b)(2) that would *not* be allowable under 503(b)(1), even where both provisions are available. *Cf. In re Riley*, 923 F.3d at 440-41 (so holding with respect to expenses). Sections 327, 330, and 503(b)(2) would not be rendered nugatory by the existence of an alternative mechanism that requires a higher showing, covers less, and does not provide the same certainty.

*Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474 (B.A.P. 9th Cir. 1996), *aff'd* 139 F.3d 1303 (9th Cir. 1998), supports S&L's position.

89.     It is not clear that any objecting party disagrees with this application of section 503(b)(1) and *Mehdipour*. Neither the Debtor nor the Subchapter V Trustee oppose the Rule 59 Motion or S&L's ability to seek retroactive approval of its limited employment under Bankruptcy Code § 327(a) or (e). The Plaintiffs oppose the Rule 59 Motion but not the Administrative Expense Motion. Alex Jones possibly still opposes the Rule 59 Motion but not the Administrative Expense Motion to the extent that the Requested Administrative Expense Claim includes S&L's voluntary reduction. The U.S. Trustee does not directly argue against retroactive approval of S&L's limited employment under Bankruptcy Code § 327(a) and asserts that S&L's reliance on *Mehdipour* is misplaced because the S&L Employment Application was denied due to the Court's finding that S&L had a material adverse interest, not because *Mehdipour* does not apply or was wrongly decided. Nevertheless, to the extent that a dispute could be inferred from the UST Objection or the Debtor/Trustee Objection, S&L addresses the issue below.

> i.   *Mehdipour is applicable if the Court adopts the position urged by the U.S. Trustee that S&L lacks authority to seek approval of its limited employment.*

90.     In *Mehdipour*, a debtor in possession engaged a broker to market and sell real property owned by the bankruptcy estate. 202 B.R. at 477. The debtor filed an application to employ the broker but later withdrew the application.[31] *Id.* The bankruptcy court ruled that the broker lacked standing to file its own application seeking approval of its employment. *Id.* The bankruptcy court granted, however, the broker's application for an administrative expense under

---

[31] The debtor in *Mehdipour* withdrew the application after it learned that the real estate agent providing services to the debtor through the broker (a) assisted the purchaser of the property (who was also a client of the agent) in finding partners for the acquisition of the property, (b) contacted his business partner in other transactions about the potential deal, and (c) loaned money to the purchaser for an escrow deposit for the property. 202 B.R. at 477. The bankruptcy court held that notwithstanding these connections the broker was disinterested and did not hold a participatory interest in the purchaser. *Id.* at 480.

Bankruptcy Code § 503(b)(1)(A), which the debtor appealed. *Id.* at 477-78. The Bankruptcy Appellate Panel for the Ninth Circuit affirmed the ruling of the bankruptcy court. *Id.* at 481. The 9th Circuit also affirmed. *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 139 F.3d 1303, 1303 (9th Cir. 1998) (per curiam).

91.     In reaching its decision to affirm, the BAP reasoned that section 503(b)(1) was available to allow professional fees where the professional meets the requirements of section 327. *In re Mehdipour*, 202 B.R. at 478-79. Relevant to the Court's decision was that there was no practical method for the professional to obtain approval of its employment under the circumstances. *See id.* at 479 ("[The broker] availed itself of every potential method for obtaining court approval of its employment. After its application was denied, [the broker]'s only recourse was to apply for fees pursuant to § 503."). The bankruptcy court's allowance of the administrative expense under Bankruptcy Code § 503(b)(1)(A) was *de facto* retroactive approval of the professional's employment. *Id.* at 480.

92.     While *Mehdipour* addresses a particular and uncommon situation, the position advanced by the U.S. Trustee would create an analogous situation here. The U.S. Trustee argues that S&L does not have the ability to (a) pursue the Rule 59 Motion or (b) seek retroactive approval of its employment under Bankruptcy Code § 327(e).[32] The Court should reject those arguments.[33] But if it does not, the reasoning of *Mehdipour* applies and the Court should consider the same relevant factors under Bankruptcy Code § 503(b)(1)(A). The point of the Ninth Circuit BAP's

---

[32] The UST Objection does not, however, argue that S&L is not able to seek retroactive approval of its employment under Bankruptcy Code § 327(a).

[33] *Mehdipour* notes that the bankruptcy court's ruling that the broker did not have standing was in error. 202 B.R. at 479. According to the BAP, "[s]ection 327 does not, by its terms, limit standing of a professional to seek employment." *Id.*

decision is that what matters is whether the professional meets the standard for employment under Bankruptcy Code § 327.

>   ii.   *Mehdipour is consistent with Gemini Interests and other decisions holding that Bankruptcy Code § 503(b) does not provide a way to avoid the substantive requirements of Bankruptcy Code § 327.*

93.     The UST Objection arguably implies that S&L's reading of *Mehdipour* is inconsistent with *In re 1002 Gemini Interests LLC*, 2015 Bankr. LEXIS 612 (Bankr. S.D. Tex. Feb. 27, 2015) (2015 WL 913542). But there is no inconsistency. *Gemini Interests* and related authority did not address the situation at issue in *Mehdipour* or that the U.S. Trustee's position would create here. Indeed, *Gemini Interests* expressly considered retroactive employment on the merits. *Id.* at 41-42. While *Gemini Interests* and other cases indicate that section 503(b) cannot be used to get around the substantive requirements of section 327, those authorities do not prohibit allowing a claim under that section where that is the only recourse for consideration of a professional's employment on the merits.

94.     In *Gemini Interests*, the bankruptcy court denied allowance of certain requested compensation by an examiner (9.3 hours) and his counsel (30.5 hours) for services that exceeded the scope of the examiner's duties under the relevant appointment order. *See id.* at *15-*22, *24-*33. The examiner and his professionals sought in the alternative that the fees be allowed as substantial contribution claims under Bankruptcy Code § 503(b)(3). *Id.* at 38-39. The court denied the request for allowance of the fees under section 503(b)(3), adopting the reasoning of several circuit court decisions holding that professionals could not circumvent the requirements of section 327 through section 503(b).[34] *Id.* at 39.

---

[34] *Gemini Interests* was decided prior to the Fifth Circuit's abrogation in *Woerner* of the retrospective "material benefit to the estate" standard for professional compensation under Bankruptcy Code § 330. The bankruptcy court's opinion in *Gemini Interests* was published on February 27, 2015. The Fifth Circuit's *en banc* opinion in *Woerner* was published on April 9, 2015. It is questionable whether the reasoning in *Gemini Interest* still stands.

95.     However, the court in *Gemini Interests* expressly evaluated whether to retroactively expand the powers of the examiner and his counsel. *Id.* at 41-42. The examiner failed to establish excusable neglect for the delay in seeking the expansion of the appointment and employment orders and so was not entitled to such retroactive expansion.[35] *Id.* The court did not need to address the issue that the U.S. Trustee seeks to create here and the 9th Circuit BAP addressed in *Mehdipour*—where the professional meets the requirements of one or more provisions of section 327 but lacks standing to seek approval of its employment.

96.     Similarly, the other authorities cited in the UST Objection and the Debtor/Trustee Objection for the proposition that Bankruptcy Code § 503(b) does not provide an alternative to the substantive requirements of Bankruptcy Code § 327 did not address a situation where the professional was unable to seek consideration of retroactive employment on the merits. In many of these cases, retroactive approval of employment was expressly considered. *See, e.g.*, *F/S Airlease II v. Simon*, 844 F.2d 99, 105-108 (3d Cir. 1988) (evaluating whether retroactive approval of employment of professional appropriate); *Cushman & Wakefield v. Keren P'ship (in Re Keren P'shp.)*, 189 F.3d 86, 87-88 (2d Cir. 1999) (affirming bankruptcy court's decision to deny retroactive approval of professional's employment); *In re Cutler Mfg. Corp.*, 95 B.R. 230, 231 (Bankr. M.D. Fla. 1989) ("This Court has found [the professional] was not eligible to be employed as a professional. If these individual persons had sought to be employed as a professional, they, too, would have been denied because they are not disinterested persons. They cannot now come to this Court *upon the same facts and evidence* and seek to establish under § 503 rights they could

---

[35] The court also questioned without deciding whether it had "the authority to retroactively expand the scope of a professional's powers in order to approve that professional's compensation for work that was performed outside the scope of the original retention order." *In re 1002 Gemini Interests LLC*, 2015 Bankr. LEXIS 612, at *41-*42. But in the subsequent case of *In re Mohiuddin*, 627 B.R. 875(Bankr. S.D. Tex. 2021), the same judge—Judge Marvin Isgur— held that the court *did* have the authority to retroactively expand the scope of professionals. *Id.* at 884.

not acquire under § 327." (emphasis supplied)). In others, the ability of the professional to seek retroactive approval of its employment was referenced in the decision. *See, e.g.*, *In re S. Diversified Props., Inc.*, 110 B.R. 992, 996 (Bankr. N.D. Ga. 1990) (noting that the professional neither requested retroactive approval of employment nor showed exceptional circumstances); *Shapiro Buchman LLP v. Gore Bros. (In re Monument Auto Detail)*, 226 B.R. 219, 226 (B.A.P. 9th Cir. 1998) (evaluating the professional's assertion regarding retroactive employment that it failed to seek from the bankruptcy court); *McCutchen, Doyle, Brown & Enersen v. Official Comm. of Unsecured Creditors (In re Weibel, Inc.)*, 176 B.R. 209, 213 (B.A.P. 9th Cir. 1994) (holding that the professional failed to establish that it met the requirements for employment of Bankruptcy Code § 327); *cf. In re Albrecht*, 245 B.R. 666, 668 (B.A.P. 10th Cir. 2000) (noting that the professional's employment had been approved as special counsel after previously being denied under section 327(a)). In the remaining authorities, the facts at issue did not involve a situation where the professional met the requirements for retroactive approval of its employment but lacked standing to seek such approval. *See In re Milwaukee Engraving Co.*, 219 F.3d 635 (7th Cir. 2000); *In re Garden Ridge Corp.*, 326 B.R. 278, 281 (Bankr. D. Del. 2005) (referencing also the ability to seek retroactive approval of employment). By and large, these cases reject the limitations on standing that the U.S. Trustee asserts here and would make *Mehdipour* applicable.

97.     That *Mehdipour* is not inconsistent with these decisions is reflected in the argument presented in the UST Objection. According to the U.S. Trustee:

> the decision in *Mehdipour* was not intended to allow professionals who do not meet the retention requirements under Section 327 other means to obtain payment of their fees. The Ninth Circuit BAP made that clear in stating: "[c]ompensation under § 503 does not allow the professional to sidestep the requirements of § 327 and 330—the professional must still be disinterested and not hold any adverse interest." *Mehdipour*, 202 B.R. at 479.

UST Objection ¶ 20. S&L does not disagree with the U.S. Trustee's reading of *Mehdipour*. But the decision does mean something—that courts can consider a professional's compensation under the relevant standards of Bankruptcy Code § 327 and retroactive approval employment notwithstanding unusual circumstances preventing formal approval of that employment.

       iii.    *The denial of the S&L Employment Application does not prevent evaluation of whether S&L meets the requirements of §327 in connection with the Administrative Expense Motion.*

98.     Directly addressing S&L's position, the UST Objection states that S&L's reliance on *Mehdipour* is misplaced because the S&L Employment Application was denied as the result of the Court's finding that S&L had an adverse interest. UST Objection ¶ 20. This argument is flawed.

99.     As addressed above, neither collateral estoppel nor the law of the case doctrine applies with respect to the Administrative Expense Motion. *Supra* ¶¶ 29-45. The Court stated in its ruling at the September 20 Hearing that its decision would require further questions about S&L's retention and work performed and that all parties' rights were reserved regarding compensation for work performed for the Debtor prior to the ruling. (Sept. 20, 2022, Hrg. Tr. 256:14-257:4). Collateral estoppel does not apply because (a) the issues at stake are not identical S&L seeks a more limited scope of employment in the administrative expense motion, (b) the issue of S&L's disinterestedness was not "actually litigated" because it was not raised or contested by the parties, and (c) the issue of S&L's disinterestedness was not a critical and necessary part of the Court's decision because the decision is consistent with a potential conflict that is not an issue in light of the limited employment and the U.S. Trustee argued for an independent, entirely discretionary basis to deny the S&L Employment Application. The law of the case doctrine is discretionary and exceptions to the general doctrine are present because (x) S&L seeks to present substantial additional evidence on the issue of its disinterestedness and (y) the Court's ruling at the September 20 Hearing was clear error.

51

100.    The real question is whether S&L *actually has* an adverse interest and what any adverse interest entails. The U.S. Trustee does not directly assert that S&L has an adverse interest, but rather that the Court previously found that S&L had one. UST Objection ¶ 20. Neither the U.S. Trustee, any other party in interest, nor the Court has articulated *what* that adverse interest is. Neither the U.S. Trustee nor any party in interest has argued for the existence of this adverse interest in connection with the S&L Employment Application or the Administrative Expense Motion. S&L contends that this is because no such adverse interest exists.

101.    S&L seeks to establish that it does not hold or represent any adverse interest in connection with either (a) the Rule 59 Motion; (b) retroactive approval of S&L's employment in connection with a request for administrative expense under section 330 and 503(b)(2); or (c) *de facto* retroactive approval of S&L's employment in connection with a request for administrative expense under section 503(b)(1). To the extent that the U.S. Trustee does not oppose consideration of this issue by the Court, but rather just consideration in connection with the request under Bankruptcy Code § 503(b)(1), the dispute is not material. S&L raised *Mehdipour* because of the position taken by the U.S. Trustee.

**B. Bankruptcy Code § 503(b)(1)(A) Provides a Mechanism for Reimbursement of S&L's Out-of-Pocket Expenses that Would Have Been Borne by the Debtor.**

102.    Neither the UST Objection, the Debtor/Trustee Objection, nor the AEJ Limited Objection directly oppose S&L's request for reimbursement of expenses under Bankruptcy Code § 503(b)(1)(A). However, the U.S. Trustee's arguments could possibly apply to reimbursement of these expenses.

103.    S&L contends that at least expenses that would otherwise be payable by the Debtor as administrative expenses under Bankruptcy Code § 503(b)(1) are reimbursable to S&L under that provision. These include, among other things, the costs of noticing pleadings and hearings that

would have otherwise been borne by the Debtor and payable by the Debtor's estate. *Cf. In re Sanchez Energy Corp.*, 2021 Bankr. LEXIS 1175, at \*32 (Bankr. S.D. Tex. May 3, 2021) (2021 WL 1747364) (reasoning that the debtor in possession would have been obligated to provide notice if the applicant had not provided such notice for the debtor).

104.    The Fifth Circuit's reasoning in *McBride v. Riley (In re Riley)*, 923 F.3d 433 (5th Cir. 2019), supports S&L's position. The U.S. Trustee argues that *Riley* does not apply because the issue was related to a chapter 13 case. But this overlooks *how* the Fifth Circuit analyzed the issue before it and the statutory scheme of Bankruptcy Code § 503.

105.    The relevant issue in *Riley* was whether the bankruptcy court committed legal error by concluding that certain expenses incurred by the attorney for a chapter 13 debtor were "not reimbursable as necessary expenses to preserve the estate under 11 U.S.C. § 503(b)(1)." *Id.* at 437. The Fifth Circuit panel did not reject the reimbursement out of hand—for example, by holding that such reimbursement could only occur pursuant to sections 330(a) and 503(b)(2)—but instead analyzed the expenses under the standard two prong test applicable to all other asserted section 503(b)(1) claims. According to *Riley*, the standard is: "First, the debt must arise from a post-petition transaction with the estate, rather than a transaction with the debtor personally; second, the goods or services received in exchange for the debt must directly benefit the estate." *Id.* at 439. While *Riley* ultimately held that the expenses at issue did not qualify as expenses necessary to preserve the estate, *id.*, what is relevant here is the way that the Fifth Circuit analyzed the issue.

106.    Section 503 does not make a distinction between attorneys for chapter 13 debtors and attorneys for chapter 11 debtors in possession. Rather, Bankruptcy Code § 503(b)(2) provides that administrative expenses include "compensation and reimbursement awarded under section 330(a) of [the Bankruptcy Code.]" The difference lies in what is required for an award under

53

section 330(a) for an attorney to a chapter 13 debtor and an attorney for a chapter 11 debtor. If Bankruptcy Code § 503(b)(1) provides an alternative mechanism for allowance of expenses incurred by an attorney for a chapter 13 debtor that could also potentially be allowed under section 330(a)—as the Fifth Circuit's reasoning in *Riley* indicates it does—it would also provide an alternative for the allowance of expenses for attorneys for chapter 11 debtors.

107.    *Riley* also demonstrates why this reading of section 503 does not render any provision of the Bankruptcy Code meaningless. Some expenses *may be* reimbursable under Bankruptcy Code §§ 330(a) and 503(b)(2) that *are not as a matter of law* reimbursable under Bankruptcy Code § 503(b)(1). *Id.* at 440,443. This applies for an attorney for a chapter 11 debtor in possession just as much as it does for an attorney for a chapter 13 debtor. Bankruptcy Code § 330(a)(1)(B) provides for reimbursement for actual and necessary expenses related to providing services reasonably likely to benefit the debtor's estate viewed prospectively. *See Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 276 (5th Cir. 2015). Under Bankruptcy Code § 503(b)(1)(A), the costs and expenses must *actually be* necessary for preserving the estate. *See In re Riley*, 923 F.3d at 439.

## REPLY TO ARGUMENT THAT S&L IS NOT ENTITLED TO APPLY ITS RETAINER TO PAY THE FILING FEE FOR THE DEBTOR'S CHAPTER 11 CASE

108.    The U.S. Trustee argues that S&L improperly seeks to invoke Bankruptcy Code § 363(c) as a basis for payment of its professional fees and expenses. But that is not the relief sought in the Administrative Expense Motion.

109.    S&L seeks to apply its Retainer to the $1,738.00 filing fee incurred by the Debtor in this chapter 11 case. Administrative Expense Motion ¶ 43. Under the engagement agreement between the Debtor and S&L (the "Engagement Agreement"), the Debtor was required to reimburse S&L for filing fees, which would be included in S&L's invoices to the Debtor if paid

by S&L. (Debtor's Ex. 3 at p.12 [ECF No. 163-3]). The use of the Retainer to pay the filing fee according to the Engagement Agreement is in the ordinary course of business for the Debtor.

110.    Courts have utilized a "horizontal" test and a "vertical" test to determine whether a transaction falls within a debtor in possession's ordinary course of business. *In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013). The horizontal test "requires the court to look to similar businesses and determines whether the transaction at issue is one that would normally be entered into by a similar business." 3 COLLIER ON BANKRUPTCY ¶ 363.03[1]. The vertical test asks "whether the transaction is one that creditors would reasonable expect the debtor to enter into." *Id.*

111.    Both the horizontal and vertical tests support approving application of the Retainer to the filing fee as an ordinary course expense here. Section 1930 of title 28 of the United States Code required the Debtor to pay the filing fee upon commencing its chapter 11 case. The use of retainer funds held in trust by an attorney for a debtor in possession to pay this required filing fee pursuant to an engagement agreement is a common practice. The transaction is therefore one that would normally be entered into by a business filing a chapter 11 case and could be reasonably anticipated by creditors.

112.    Further, the Debtor does not oppose the use of the Retainer to cover the filing fee as requested in the Administrative Expense Motion. The Debtor and the Subchapter V Trustee oppose only the allowance of an administrative expense for S&L's fees, absent court approval of S&L's employment.[36]

---

[36] Further, as set out above, neither the Debtor nor the Subchapter V Trustee oppose the Rule 59 Motion nor present any argument in the Debtor/Trustee Objection against retroactive employment of S&L.

**REPLY TO ARGUMENT THAT THE PARTIES CANNOT CONSENSUALLY RESOLVE THE DISPUTES IN THE ADMINISTRATIVE EXPENSE MOTION, THE RULE 59 MOTION, AND OTHER OSTENSIBLE DISPUTES**

113.     The U.S. Trustee argues in essence that the parties cannot consensually resolve the Administrative Expense Motion, the Rule 59 Motion, and S&L's right to appeal the denial of the S&L Employment Application. *See* UST Objection ¶¶ 29-30. Under the U.S. Trustee's view, the parties would be required to litigate the matters to conclusion, including any appeals.

114.     The U.S. Trustee cites *Davis v. Elliot Mgmt. Corp. (In re Lehman Bros. Holdings Inc.)*, 508 B.R. 283 (S.D.N.Y. 2014), in support of this position. In *Lehman*, members of the official committee of unsecured creditors sought an administrative expense for the fees of professionals retained by the individual committee members. *Id.* at 287. The proposed plan of reorganization provided that the individual committee members' reasonable professional fees would be treated as administrative expenses, and the bankruptcy court confirmed the plan. *Id.* at 287-88. In accordance with the plan, the individual committee members filed applications for the payment of their individual professional fees, which the bankruptcy court granted over the Region 2 U.S. Trustee's objection. *Id.* at 288. The U.S. District Court for the Southern District of New York reversed the bankruptcy court's ruling, reasoning that "because § 503(b)—the sole source of administrative expense—excludes paying professional fee expenses on the basis of committee membership, the Individual Members cannot have their professional fee expenses paid as administrative expenses solely on the basis of their committee membership." *Id.* at 290-92, 296. The district court remanded the proceeding to the bankruptcy court to determine whether the individual committee members made substantial contributions that would entitle them to have their professional fee expenses paid as administrative expense claims under Bankruptcy Code § 503(b)(4). *Id.* at 296.

115.     As cases interpreting *Lehman* have explained, however, the decision does not prevent settlement of asserted professional fees where there exists a mechanism for the payment of the professional fees at issue. *See City of Rockford v. Mallinckrodt PLC (In re Mallinckrodt PLC)*, 2022 U.S. Dist. LEXIS 54785, at *39 (D. Del. Mar. 28, 2022) (2022 WL 906458); *In re Mallinckrodt PLC*, 639 B.R. 837, 906 n. 229 (Bankr. D. Del. 2022); *In re Purdue Pharma L.P.*, 633 B.R. 53, 66 (Bankr. S.D.N.Y. 2021), overruled on other grounds by 635 B.R. 26 (S.D.N.Y. 2021); *In re Stearns Holdings*, LLC, 607 B.R. 781, 793 (Bankr. S.D.N.Y. 2019). The issue in *Lehman* was that the plan provided for the payment of the individual committee members' legal fees without requiring them to show any substantial contribution. It did not involve the settlement of asserted but disputed substantial contribution claims, but rather sought to avoid entirely the need to demonstrate substantial contribution.

116.     Here, any settlement of the Administrative Expense Motion would also result in a settlement of (a) the Rule 59 Motion; (b) potential appeal of the denial of the S&L Employment Application; (c) retroactive approval of S&L's employment for the limited period under Bankruptcy Code § 327(a); (d) retroactive approval of S&L's employment for the limited period and under limited scope under Bankruptcy Code § 327(e); (e) *de facto* retroactive approval of S&L's employment for matters outside of any conflict as in *Mehdipour*; (f) S&L's right to an administrative expense for out-of-pocket expenses that would otherwise have been borne by the Debtor; (g) S&L's right to apply the Retainer to the Debtor's filing fee; and (h) S&L's appellate rights. Further, no party has asserted that S&L actually has or represents any interest adverse to the Debtor's estate, and the Court's ruling left open questions about S&L's retention and the work performed prior to the September 20 Hearing. There is a basis for the relief S&L requests. Rather

than rewriting the Bankruptcy Code as in *Lehman*, a settlement here would resolve the (ostensible) dispute regarding the application of the Bankruptcy Code to the facts present here.

## REPLY TO ARGUMENTS OF ALEX JONES

117.    The arguments in the AEJ Limited Objection are substantially different from those of the U.S. Trustee, the Debtor, or the Subchapter V Trustee. Jones does not oppose the allowance of S&L's requested administrative expense claim—subject to the discount set out in the Administrative Expense Motion—or the application of the Retainer to such amount, but "does not agree the payment schedule is reasonable for the current status of this FSS Chapter 11 case." AEJ Limited Objection ¶ 10. Jones asserts, however, that the amount of the voluntary discount would be *required* absent the voluntary discount because S&L did not make certain arguments that would have been beneficial to Jones's positions in the Debtor's chapter 11 case. Further, Jones contends that the Court should consider the professional fees paid in the IW Cases in determining appropriate compensation.

118.    Although there is no apparent dispute—S&L did not seek any specific payment schedule for its Requested Administrative Expense Claim other than application of the Retainer— S&L replies to Jones's arguments below.

**A.  Alex Jones's Arguments that S&L Did Not Address the Issues Set out in the Objection to the S&L Employment Application and Should Have Raised Other Points at the September 20 Hearing Are Misplaced.**

119.    Jones argues that S&L's fees should be reduced to the amount indicated in the Administrative Expense Motion even absent S&L's voluntary reduction of $62,475.00. Jones asserts that S&L did not adequately respond to the concerns relating to (a) Lee and Schwartz not supplementing their disclosures in the IW Cases or (b) the Debtor's initial proposal to pay Alex Jones's travel expenses and the fees for state court counsel related to the Connecticut Litigation.

Jones submits that S&L should have presented certain arguments that coincidentally would benefit Jones vis-à-vis the Debtor's estate in other matters.

120.    Jones's arguments are misplaced. <u>First</u>, the Debtor and S&L *did* present arguments and evidence surrounding the reasons Lee did not supplement the Rule 2014 disclosures in the IW Cases. <u>Second</u>, the Debtor—through S&L and the Battaglia Firm—also informed the Court of the actual reasons behind the Debtor's proposed payment of Jones's travel expenses and 100% of the costs of the state court litigators related to the Connecticut Litigation. The issue was not raised until after the close of evidence, however, preventing more substantive argument and evidence from being presented at the September 20 Hearing. And <u>third</u>, even if the issues were raised prior to the hearing, S&L could not have made the arguments and representations that Jones asserts it should have.

       *i.*   *The reasons that Lee and Schwartz did not supplement their Rule 2014 disclosures in the IW Cases were addressed at the September 20 Hearing.*

121.    The Debtor and S&L did in fact address at the September 20 Hearing the reasons that Lee and Schwartz did not supplement their Rule 2014 disclosures in the IW Cases. This was briefed and the focus of the September 20 Hearing. Lee and Schwartz did not believe that supplemental disclosure was required under the circumstances because the IW Debtors had agreed with the U.S. Trustee's demand to dismiss their cases and were no longer seeking to have their employment approved by the Court (Sept. 20, 2022, Hrg. Tr. 89:2-18, 92:11-94:22, 132:24-133:5, 169:16-170:11). They may have been mistaken, but the reasons were presented to the Court at the September 20 Hearing.

     *ii.    The Debtor presented arguments regarding the proposed payment by the Debtor of Alex Jones's travel expenses and fees for state court counsel related to the Connecticut Litigation.*

122.    As set out in detail in the Rule 59 Motion and the reply to the U.S. Trustee's objection thereto, issues surrounding the Debtor's proposed payment for Alex Jones's travel expenses or 100% of the cost for state court counsel were not raised in the U.S. Trustee's objection to the S&L Employment Application or at the September 20 Hearing until after the close of evidence. The U.S. Trustee's objection to the to the S&L employment application raised a single issue—the action the Court should take as the result of Lee not supplementing the Rule 2014 verified statement for the employment of KSLPLLC in the IW Cases. The objection did not dispute S&L's disinterestedness. Counsel for the U.S. Trustee confirmed that this was the sole issue at the September 13 Hearing. (Sept. 13, 2022, Hrg. Tr. 36:6-9). And the Debtor's proposed payment for Alex Jones's travel expenses or 100% of the state court counsel expenses was not raised in connection with the S&L Employment Application until after the close of evidence. (Sept. 20, 2022, Hrg. Tr. 215:8-23).

123.    After the close of evidence, the Court questioned *who* was making the decisions for the Debtor's estate to propose to pay the travel expense for Alex Jones to testify in the Connecticut Litigation, the fees for state-court counsel for the Connecticut Litigation, and other matters.[37] (Sept. 20, 2022, Hrg. Tr. 215:8-23). The Court focused the inquiry to the person making the decision for the Debtor.[38] (Sept. 20, 2022, Hrg. Tr. 216:4-9).

---

[37] After the Debtor's opening statement, the Court indicated that the question it was focused on is whether there was a "throughline" from the IW Cases to the Debtor's chapter 11 case. (Sept. 20, 2022, Hrg. Tr. 28:5-8). The evidence introduced was that the decisions in the IW Cases were based on the benefit to the IW Debtors and their estates. (Sept. 20, 2022, Hearing 83:10-84:3, 88:12-91:3, 142:17-144:8, 162:1-24, 163:7-11, 170:4-11, 175:20-176:10, 177:11-15, 206:11-207:9).

[38] The Court returned to the inquiry of who was making the decisions multiple times. (Sept. 20, 2022, Hrg. Tr. 216:4-9, 217:1-2).

124.     The Debtor, through S&L, responded to the Court's question indicating that the decision was made by Schwartz after a demand by Alex Jones and arm's-length negotiations. (Sept. 20, 2022, Hrg. Tr. 215:24-216:13, 217:1-3). Further, S&L represented to the Court that the give and take between the Debtor and Jones was because Jones was the most important person to the financial viability of the company and its restructuring efforts, and the proposed payments were necessary to maintain Jones's support of the Debtor and continuing his involvement with the company. (Sept. 20, 2022, Hrg. Tr. 216:10-13, 217:19-21).

125.     Mr. Battaglia for the Debtor added additional considerations that went into the decision. Mr. Battaglia pointed out that other factors informing the Debtor's decision were (a) Jones's ability to pay, (b) the risk of the state court attorneys not willing to go forward, and (c) the necessity that the Debtor produce Jones as a witness in the Connecticut Litigation. (Sept. 20, 2022, Hrg. Tr. 221:4-18).

126.     The proposed payment of travel expenses and 100% of state court counsel expenses was not raised prior to the September 20 Hearing so that the Debtor and S&L could prepare more substantive argument and evidence. But even if it was, the S&L would not have made the particular arguments preferred by Alex Jones. While Jones put forward reasons for his demands—including his asserted indemnity, that he provided services to the Debtor despite not receiving his contractual salary, and his efforts to support the Debtor's bankruptcy cases—the motivation for the Debtor was that Jones indicated that an agreement was necessary for Jones's continued support of the Debtor, the Debtor's need to ensure that it had representation in the Connecticut Litigation to reach

agreement with the Connecticut Plaintiffs regarding their motion for relief from stay, and the Debtor's need to produce Jones as a witness in the Connecticut Litigation.[39]

127.    The reasons Jones believed that his demands had merit was, at most, ancillary to the Debtor's decision. That Jones had at least some colorable basis for his demands and had acted to support the Debtor's reorganization efforts would have certainly been appropriate factors for Schwartz, as the Debtor's CRO, to consider.[40] But it was not central to the decision-making process. And without the opportunity to delve into these potential secondary considerations, S&L was not able to make representations about them to the Court at the September 20 Hearing.

iii.    *The Debtor had not adopted the position that Alex Jones was entitled to his asserted an indemnity and S&L had reason to doubt the asserted indemnity.*

128.    As communicated to Jones's counsel prior to the September 20 Hearing, the Debtor had not adopted Alex Jones's position on his asserted indemnity. Further, S&L was aware of facts and law suggesting that Jones was *not* entitled to the indemnity. S&L simply could not have made the arguments that Jones asserts it should have presented to the Court.

129.    Under Texas law, a member or manager of a limited liability company is not automatically entitled to indemnity. Section 101.402 of the Texas Business Organizations Code provides that "[a] limited liability company may: (1) indemnify a person; (2) pay in advance or reimburse expenses incurred by a persona; and (3) purchase or precure or establish and maintain insurance or other arrangement to indemnify or hold harmless a person."[41] For purposes of the

---

[39] The issue of Jones's continued support of the Debtor came up at the December 19, 2022, hearing before this Court. After previously only agreeing to a 60/40 split of attorney fees with respect to Texas appellate counsel, Jones ultimately assented to a 50/50 division of fees. But his counsel at the hearing indicated that the caveat was that Jones would seek his full salary of $1.3 million annualized. (Dec. 19, 2022, Hrg. Tr. 14:2-6). And Jones's counsel indicated that absent Jones receiving his full contractual salary or some other negotiated amount, he may have to seek third-party employment. (Dec. 19, 2022, Hrg. Tr. 38:17-20, 40:23-25). The issue for the Debtor and its estate is that Jones's continued involvement is necessary to the Debtor. (Dec. 19, 2022, Hrg. Tr. 32:3-13, 37:17-22, 38:15-17).

[40] If Jones had been entirely unreasonable in his demands or uniformly antagonistic to the Debtor's restructuring efforts, assent to Jones' demands may have been less likely.

[41] The Debtor is a Texas limited liability company and Alex Jones is the sole member of the Debtor.

statute, a "'person' includes a member, manager, or officer of a limited liability company or an assignee of a membership interest in the company." The use of "may" in the statute indicates that the indemnification is permissive rather than mandatory. *Pedernal Energy, LLC v. Bruington Eng'g, LTD.*, 536 S.W.3d 487, 492 (Tex. 2017) (citing Tex. Gov't Code § 311.016(1)).

130.    Section 26.01 of the Texas Business and Commercial Code requires "a promise of one person to answer for the debt, default, or miscarriage of another person" to be reflected in a signed writing in order for such promise to be enforceable. The statute applies to indemnification, subject to ordinary exceptions to statute of frauds defenses. *See ALCOA v. Hydrochem Indus. Servs.*, 2005 Tex. App. LEXIS 2010, at *12 (Tex. App. Mar. 17, 2005).

131.    The Debtor's governing documents do not provide for indemnification of members or managers. Attached as Exhibit B hereto is a copy of the Debtor's company agreement (the "Company Agreement").[42] The only reference to any indemnification or reimbursement rights is reflected in paragraph 11.02 of the Company Agreement and provides only for indemnification of a "Liquidator" and references "the indemnification rights set forth in the Certification of Formation." According to the paragraph 1.01 of the Company Agreement, the Certificate of Formation was filed with the Texas Secretary of State on November 16, 2007.

132.    A copy of the Certificate of Formation dated November 16, 2007, for Free Speech Systems, LLC, on file with the Texas Secretary of State is attached hereto as Exhibit C (the "Debtor Certificate of Formation"). The Debtor Certificate of Formation contains no mention of any indemnification or reimbursement rights.[43]

---

[42] The Debtor's company agreement was previously admitted into evidence as Debtor's Exhibit 32 at the September 20 Hearing. [ECF No. 163-32].

[43] A certificate of correction was filed with the Secretary of State on January 3, 2008 (the "Debtor Certificate of Correction"), a copy of which is attached as Exhibit D hereto. The Certificate of Correction also does not mention any indemnification or reimbursement rights.

133.    Attached as <u>Exhibit E</u> hereto is a copy of the employment agreement between the Debtor and Alex Jones dated April 14, 2022 (the "<u>AEJ Employment Agreement</u>"). Paragraph 10 of the AEJ Employment Agreement provides that "Employer agrees to indemnify and hold harmless, and furnish and pay counsel of Employee['s] choice, in the event that claims or suit are brought against Alex Jones arising out if his performance of this Employment Agreement, unless such claims are established by clear and convincing evidence to have arisen from Alex Jones['s] actual fraud." However, the first paragraph of the AEJ Employment Agreement indicates that "[t]his Employment Agreement and accompanying Employee Annuity and Life Insurance Plan is entered into by and between Employer Free Speech Systems, LLC . . . and Alex Jones, Employee ***on April 14, 2022*** . . . ." (emphasis added). Each of the lawsuits comprising the Sandy Hook Litigation was commenced and related to acts occurring prior to April 14, 2022.

134.    S&L attorneys analyzed the indemnity issue in connection with other matters prior to the September 20 Hearing. On August 5, 2022, S&L attorney R. J. Shannon spent 1.1 hours analyzing Jones's proof of claim filed in the Debtor's chapter 11 case, reviewing relevant documents for contractual indemnity, and drafting an email to the Debtor's CRO and counsel regarding the same. [ECF No. 251-2, at p.3]. On August 16, 2022, Shannon informed Jones's attorney by email that although Jones asserted an indemnity claim "it's not in any of the documents prior to April 2022." [ECF No. 206-7, at p.1]. On August 18, 2022, S&L attorney Kyung Lee spent 1.5 hours analyzing issues regarding whether the Debtor Company Agreement provided for indemnification of a member or manager and whether a member or manager was entitled to indemnification as a matter of law. [ECF No. 251-2, at p.9]. The issue was relevant to providing

documents to the Connecticut Plaintiffs and Jones's request that the Debtor seek to extend the automatic stay to him with respect to the Connecticut Litigation.[44]

135.    Jones's desire that the Debtor have accepted his asserted indemnity claim and made that argument at the September 20 Hearing is understandable, but that was just not the case. And it would not have been an appropriate for S&L to reference Jones's asserted indemnity to the Court when there were significant reasons to doubt its validity. Even if Jones *is* entitled to indemnification from the Debtor, that was not so obvious that failing to raise that point at the September 20 Hearing justifies reducing S&L's compensation.

   iv.    *Alex Jones did not pay 100% of the Debtor's Legal Fees Prior to the filing of the Debtor's Chapter 11 Case.*

136.    S&L's fees were paid from funds belonging to the Debtor. The initial retainer S&L received originated directly from the Debtor. The payment S&L received on July 28, 2022, was paid from Schwartz Associates LLC's client trust account. On information and belief based on representations from Schwartz, these funds belonged to the Debtor and were paid to Schwartz Associates' client trust account directly from the Debtor. Schwartz testified about this at the September 20 Hearing. (*See* Sept. 20, 2022, Hrg. Tr. 174:3-13). S&L has no reason to believe Schwartz's testimony or his prior representations to S&L were inaccurate.

   v.    *S&L was not aware that Alex Jones purchased $400,000 in consignment products and, assuming that he did, it would not have been directly relevant.*

137.    If Alex Jones purchased $400,000 in consignment products to cover the Debtor's inability to obtain product prior to the September 20 Hearing, S&L was not aware of this

---

[44] If Jones was unambiguously entitled to an indemnity, this would support extending the automatic stay to Jones with respect to the Connecticut Litigation. There were other reasons to decline Jones's request—e.g., it might make it more likely that the Court would modify the stay to allow the litigation to also continue against the Debtor—but the issue was important to the Debtor's evaluation.

transaction or involved in its execution. S&L could not have raised it to the Court at the September 20 Hearing.

138.     Further, if S&L had been aware of Jones's alleged purchase of the consignment products, it would not have changed the position asserted at the September 20 Hearing. As represented at the September 20 Hearing, the reason for the proposed payments was that Jones demanded this to continue his involvement with the Debtor and to agree to the Debtor's deal with the Connecticut Plaintiffs regarding their lift stay motion.[45]

**B.  S&L Does Not Oppose Disclosure of Payment of Professional Fees Paid Relating to the IW Debtors' Restructuring, But Such Fees Are Not Relevant to the Appropriate Compensation in this Chapter 11 Case.**

139.     Alex Jones argues that the Court should consider the fees paid for services provided to the IW Debtors in determining the appropriate compensation in the Debtor's chapter 11 case. AEJ Limited Objection at p.5. S&L does not oppose the disclosure, but the fees paid relating to the IW Debtors' restructuring are not relevant to compensation for services provided to the Debtor.

*i.    Fees paid for services provided to the IW Debtors.*

140.     Employment of the IW Debtors' proposed professionals was never taken up by the Court. The U.S. Trustee argued that employment of any professionals in the IW Cases should not be considered until after the decision on its motion to dismiss because approval of employment would be unnecessary in the event of dismissal allowing the IW Debtors to address compensation

---

[45] Jones's agreement to the resolution of the Connecticut Plaintiffs' lift stay motion was necessary for at least three (3) reasons. First, the Connecticut Plaintiffs required Jones to agree to certain parts of the agreed lift stay order as a condition of their agreement with the Debtor. Second, Jones's consent was required as a practical matter for the Debtor's prepetition state court counsel to continue representing the Debtor and engaging separate counsel would cost the Debtor's estate significantly more and make agreeing to lift the stay with respect to the Connecticut Litigation unfeasible. Third, the principal problem to the Debtor's estate presented by allowing the Connecticut Litigation to continue was that it would require Jones to be off the air for a significant period of time, but Jones had the right to attend the entire trial. The deal that the Debtor cut with the Connecticut Plaintiffs to minimize the disruption of the Connecticut Litigation would have been meaningless if Jones decided to attend the entire trial notwithstanding that deal.

of their professionals outside of bankruptcy.[46] (May 19, 2022, Hrg. Tr. 14:9-15:9). The Court agreed that the Schwartz employment application should not be considered until after its decision on the dismissal of the IW Debtor's cases. (May 19, 2022, Hrg. Tr. 23:2-8) (the Court stating that it did not want to address the application to employ the CRO and other matters until "after we know on the motion to dismiss"). The KSLPLLC employment application was never set for hearing.

141.    The IW Debtors agreed to the dismissal of their cases and finalized a stipulation of dismissal with the U.S. Trustee that was filed on June 1, 2022 [ECF No. 163-27] (the "IW Dismissal Stipulation"). Consistent with the U.S. Trustee's position, the IW Dismissal Stipulation provided a mechanism for the payment for the Subchapter V Trustee, but left compensation of the IW Debtors' proposed professionals to applicable nonbankruptcy law. The Court entered the IW Dismissal Stipulation on June 10, 2022. [ECF No. 163-22].

142.    The fees paid and expenses reimbursed to the law firms with which S&L attorneys were involved for services to the IW Debtors were made prior to the filing of the IW Cases or after their dismissal. Parkins Lee & Rubio LLP/Parkins & Rubio LLP received fees totaling

---

[46] As represented by attorney Jayson Ruff, the U.S. Trustee's position was that:

> The only other comment I would say is to the extent that the Court does push that out, assuming these cases are dismissed, then we don't think that any of the other pending motions applications should be heard until that same date after that time. . . .
>
> If these cases aren't to continue, then none of that is really necessary. The cases can get dismissed. You know, the debtors can go ahead and pay their creditors, including their professionals however they want to. The only thing we probably would want to have some treatment for in the dismissal order, again, assuming that's the route that we end up toing, is to allow for Ms. [Haselden] to apply for her fees and make sure that this Court retains jurisdiction for the payment of her fees.

(May 19, 2022, Hrg. Tr. 14:9-13, 15:1-9). This was in line with discussions among counsel for the U.S. Trustee and the IW Debtors. [ECF No. 163-18].

67

$321,670.93 and expenses totaling $7,976.50. KSPLLC/S&L received fees totaling $68,307.50 and no expenses.

143.    On information and belief, all or nearly all of the funds paid to the IW Debtors' professionals came from the "Initial Trust Funding" under the Declaration of Trust for the 2022 Litigation Settlement Trust (the "Declaration of Trust"), a copy of which is attached hereto as Exhibit F. These funds were to be paid to the trust by Alex Jones to pay the costs of administration of the IW Cases and professional fees. Declaration of Trust, at p.45. The source of the funds were to be from the proceeds of Jones's exempt property. *Id.* Jones was represented by counsel in the negotiation of the Declaration of Trust.

ii.    *The compensation paid for services provided to the IW Debtors is not relevant to the Requested Administrative Expense Claim.*

144.    The standard relevant to evaluating requested compensation under Bankruptcy Code § 330 is whether it is reasonable for the services that were actually provided and necessary to achieve a reasonably likely benefit to the estate. *See* 11 U.S.C. § 330(a); *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 276 (5th Cir. 2015). Among the relevant factors are: (i) time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the professional due to acceptance of the case; (v) the customary fee; (vi) whether the fee is contingent or fixed; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977). The fees earned for services provided to the IW Debtors do not factor into the appropriate compensation under this framework.

145.     Arguably, the fees paid by the IW Debtors for services provided by S&L attorneys would be relevant if S&L was seeking a fee enhancement. S&L *does* contend that the familiarity of its attorneys with the Sandy Hook Litigation made the firm especially qualified to perform the services set out as S&L's primary responsibility in the S&L Employment Application. And without this familiarity and knowledge, S&L would not have been able to achieve the results described in the Administrative Expense Motion without expending substantially more time. This could be a factor supporting a fee enhancement if S&L's attorneys—or the firms employing them—had already been compensated for developing that relevant knowledge. But S&L does not seek any fee enhancement in the Administrative Expense Motion.

146.     There is no basis for reducing otherwise allowable compensation in this case because of fees paid by the IW Debtors for services related to their restructuring. The IW debtors received substantial benefits from the services provided to them. As the result of the services provided, the IW Debtors resolved liabilities that total approximately $1.5 billion while continuing to own their assets and incurring no obligation to make ongoing payments

147.     The IW Debtors remained subject to the Sandy Hook Litigation when they filed their petitions for chapter 11 relief. The IW Debtors had unsuccessfully sought dismissal of the claims against them—including because they did not participate in the alleged tortious conduct[47]—

---

[47] In the Heslin and Fontaine suits, InfoW, LLC argued that it was not a proper defendant because there was no evidence that it actively participated in the publication of the defamatory statements. *See Infowars, LLC v. Fontaine*, 2019 Tex. App. LEXIS 9303, at *4 (Tex. App. Oct. 24, 2019) (2019 WL 5444400); *Jones v. Heslin*, 2020 Tex. App. LEXIS 2441, at *15 (Tex. App. Mar. 25, 2020) (2020 WL 1452025). In affirming the trial court's denial of the motions to dismiss the actions under the Texas Citizens Participation Act, the Texas Court of Appeals held that there was clear and specific evidence supporting a rational inference that InfoW, LLC was involved in the operation of the Infowars.com website. *Heslin*, 2020 Tex. App. LEXIS 2441, at *16 ("We conclude, as we did in *Fontaine*, that the Terms of Use show that users of Infowars.com initiated a relationship with Infowars, LLC, and that Infowars, LLC, was involved in the website's operation."). While the Texas Plaintiffs took the position in the IW Cases that InfoW was not a proper subchapter v debtor because it did not engage in sufficient business activities, this was contrary to their assertions in the state court litigation and the decisions of both the state trial court and the state court of appeals ruling in their favor.

and were subject to default judgements for discovery abuses. By May 13, 2022, the Connecticut Plaintiffs had filed with the U.S. Bankruptcy Court for the District of Connecticut (a) a notice of dismissal with prejudice of their claims against the IW Debtors and (b) an unopposed motion to dismiss their claims against the IW Debtors.[48] (ECF No. 163-20). By May 19, 2022, the IW Debtors and the Texas Plaintiffs had reached an agreement releasing the claims against the IW Debtors. (ECF No. 163-21). In exchange, the IW Debtors agreed to not oppose remand of the removed Sandy Hook Litigation. The IW Debtors received more than they could have reasonably hoped for as the result of the services provided by their professionals.

## **CONCLUSION**

148.    For the reasons set out above, the Court should overrule the UST Objection, Debtor/Trustee Objection, and AEJ Limited Objection and grant the Administrative Expense Motion. Even if the Court accepts all of the arguments and positions set out in the objections, they do not undercut that the Court has the discretion to consider retroactive approval of S&L's limited employment from the Petition Date through the September 20 Hearing, or present any reason to deny S&L's request for such approval requested in the Administrative Expense Motion. No party in interest has ever asserted that S&L holds or represents an interest adverse to the estate. And no party in interest has disputed that the amount of the Requested Administrative Expense Claim— as already reduced—reflects reasonable compensation for the services S&L provided to the Debtor.

149.    The dispute appears to revolve around the appropriate mechanism and characterization. The Debtor and Subchapter V Trustee do not oppose the Rule 59 Motion. The

---

[48] The U.S. Bankruptcy Court for the District of Connecticut granted the motion to dismiss with prejudice the claims against the IW Debtors on May 24, 2022, and requested a proposed order. The proposed order was submitted on May 25, 2022, and the order was entered by the court on May 26, 2022.

Sandy Hook Plaintiffs and Alex Jones do not oppose the Administrative Expense Motion, subject to S&L's voluntary reduction. And while the U.S. Trustee opposes both, he does not dispute that the Court has the authority to retroactively approve S&L's employment for the period from the Petition Date through the September 20 Hearing in connection with the Administrative Expense Motion or argue that such retroactive approval would be inappropriate here. S&L contends that any of the bases submitted would be appropriate and drafted the proposed order accompanying the Administrative Expense Motion to be agnostic about the basis. The Court should not let disagreement over technicalities distract it from reaching the correct result.

Dated: December 29, 2022          **SHANNON & LEE LLP**

                                  /s/*R. J. Shannon*
                                  Kyung S. Lee
                                  State Bar No. 12128400
                                  klee@shannonleellp.com
                                  R. J. Shannon
                                  State Bar No. 24108062
                                  rshannon@shannonleellp.com
                                  700 Milam Street, STE 1300
                                  Houston, Texas 77002
                                  Tel. (713) 714-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by the Court's CM/ECF system on all parties registered to receive such service on the date of filing.

                                  /s/*R. J. Shannon*