# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | |
| | § | **Chapter 11 (Subchapter V)** |

### APPLICATION OF DEBTOR FOR AN ORDER (A) AUHTHORIZING EMPLOYMENT OF SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTOR, AND (B) GRANTING RELATED RELIEF

THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Free Speech Systems, LLC (the "Debtor" or "FSS"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby moves for entry of an order, substantially in the form attached hereto (the "Proposed Order") pursuant to sections 105(a) and 327 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the retention of Shannon & Lee LLP ("S&L" or the "Firm") as bankruptcy co-counsel for FSS (the "Application") pursuant to that certain engagement letter agreement by and between the Debtor and S&L, a copy of which is attached hereto as Exhibit A (the "Engagement Agreement"), as modified by the Proposed

Order. In support of the Application, the Debtor submits the Declaration of Kyung S. Lee attached hereto as Exhibit B (the "Lee Declaration") and respectfully represents as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

2.      The bases for the relief requested herein are sections 105, 327, and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1of the Local Rules for the Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## BACKGROUND

### A.  Case Background

3.      On July 29, 2022 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code (the "Chapter 11 Case") with the Court.

4.      The Debtor continues to operate its businesses and manage its properties as a Debtor and a Debtor-in-Possession pursuant to Bankruptcy Code § 1182(2).

5.      As of the filing of this Application, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for Region 7 (the "U.S. Trustee").

### B.      Proposed Employment of S&L

     *i.*        *Scope of Employment*

6.      Subject to the Court's approval, S&L will serve as bankruptcy co-counsel in connection with the Debtor's Chapter 11 Case, commencing on July 29, 2022.

2

ii.     *Necessity of Employment*

7.     The Debtor believes that the assistance of counsel specializing in bankruptcy was and is necessary and appropriate to administer this Chapter 11 Case with the goal of ultimately confirming a plan of reorganization. The Debtor cannot proceed in chapter 11 without counsel and would face extreme difficulty complying with the provisions of the Bankruptcy Code and successfully reorganizing its financial affairs for the benefit of its creditors without attorneys who focus their practice on corporate bankruptcy.

iii.     *Reasons for Selection*

8.     The Debtor seeks to retain S&L because of the extensive experience of its attorneys. Mr. Shannon and Mr. Lee have extensive experience in all aspects of corporate bankruptcy and in representing chapter 11 debtors in this district. Further, due to their involvement in the bankruptcy cases of the InfoWDebtors (defined below), S&L attorneys have familiarity with the Debtor's corporate structure, the litigation brought against the Debtor related to statements after the Sandy Hook mass shooting (the "Sandy Hook Litigation"), and many of the relevant creditors and parties in interest.  Familiarity with the Sandy Hook Litigation has been particularly important in the early stages of the Chapter 11 Case.

9.     S&L is familiar with the Debtor's financial condition in connection with the preparation of the Debtor's petition, schedules, and statement prior to the Petition Date. Substantial effort was also expended by the CRO to bringing the books and records of FSS up to speed prior to the Petition Date. The CRO also spent significant time to understanding the commercial and vendor relationship forming the core basis of FSS's business.  S&L was intimately involved in that entire learning process.

10. Any other firm would need to expend significant time and effort to become familiar with the Debtor's business and business model that would delay making progress in administering the Chapter 11 Case.

11. The Debtor therefore believes that S&L is well-qualified and uniquely able to represent the Debtor in the Chapter 11 Case in an efficient and timely manner as bankruptcy co-counsel for FSS.

*iv. Proposed Compensation & Reimbursement*

12. S&L intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the guidelines (the "Guidelines") established by the U.S. Trustee, and any orders of this Court in this Chapter 11 Case (the "Orders"), for all services performed and expenses incurred during its representation of the Debtor.

13. Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and the Orders, the Debtor proposes to pay S&L as set out in the Engagement Agreement attached hereto as Exhibit B and as summarized in the following chart:

| BILLER | RATE |
|---|---|
| Kyung S. Lee | $850 |
| RJ Shannon | $650 |
| Associate Attorneys | $300 - $650 |
| Paralegals | $150 - $250 |
| Legal Assistants | $50-$100 |

14. The Debtor believes that S&L's agreed terms of reimbursement, compensation, and hourly rates are reasonable. S&L will notify the Debtor and the U.S. Trustee of any change in the hourly rates charged for services rendered while the Chapter 11 Case is pending.

*v.* *Retainer*

15.     Effective as of June 1, 2022, Kyung Lee and R. J. Shannon formed the law firm of Shannon & Lee LLP to practice corporate bankruptcy law. Mr. Shannon and Lee are the only two attorneys of S&L. On June 6, 2022, FSS executed the Engagement Letter and retaining S&L.[1] FSS paid S&L a retainer of $100,000 on or about June 7, 2022, that was held in trust in S&L's IOLTA account.

16.     On July 28, 2022, (a) FSS paid S&L $84,034.12 for work performed by S&L during the month of June 2022 and (b) S&L took into income $99,177.32 from the $100,000 retainer for work performed by S&L from July 1 to July 29, 2022.[2] $822.68 remained in the S&L IOLTA account.

17.     On July 29, 2022, prior to the filing of its petition for chapter 11 relief, FSS replenished S&L's IOLTA account with a wire transfer of $50,000. The total amount of retainer S&L held in its IOLTA account on behalf of FSS on the Petition Date was $50,822.68 (the "Retainer"). S&L continues to hold the Retainer in trust in its IOLTA Account.

18.     The Proposed Order provides that S&L shall continue to hold the Retainer in trust for satisfaction of its final fees and expenses as authorized by the Court, or as otherwise directed by the Court.

*vi.* *Connections*

19.     The Lee Declaration sets out S&L's connections with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, and

---

[1] The Engagement Letter was effective May 24, 2022, on which date Kyung Lee began providing services to FSS, practicing through Kyung S. Lee PLLC ("KSLPLLC"). KSLPLLC received payment from the Debtor of $21,986.59 for services provided to FSS from May 24, 2022, through May 31, 2022.

[2] This amount included an estimate of six hours of services for each of Mr. Shannon and Mr. Lee on July 28 and July 29, 2022. The actual time expended exceeded the estimate.

any person employed in the office of the United States Trustee. To the best of the Debtor's knowledge, S&L does not hold any connections other than those disclosed in the Lee Declaration.

20. Mr. Shannon and Mr. Lee previously represented InfoW, LLC, IWHealth, LLC, and Prison Planet TV, LLC (the "InfoWDebtors"), in the cases jointly administered as Case No. 22-60020 before this Court.[3] One or more of the InfoWDebtors were defendants in the Sandy Hook Litigation. On May 13, 2022, the Connecticut Sandy Hook plaintiffs filed notices of dismissal with prejudice as to their claims against the InfoWDebtors.[4] *See* Dkt. No. 98, Case No. 22-60020 (Bankr. S.D. Tex.). On May 18, 2022, the Texas Sandy Hook plaintiffs and the InfoWDebtors entered a stipulation to resolve their claims against the InfoWDebtors, which was approved and ordered by the Court on May 19, 2022. *See* Dkt. Nos. 96 and 98, Case No. 22-60020 (Bankr. S.D. Tex.). The InfoWDebtors and the U.S. Trustee agreed to the dismissal of the InfoWDebtors' chapter 11 cases on June 1, 2022, which dismissal was ordered by the Court on June 10, 2022. Dkt. Nos. 110 and 114, Case No. 22-60020 (Bankr. S.D. Tex.). The Debtor does not have any claims against the InfoWDebtors and does not believe that the InfoWDebtors have any claims against the Debtor.

21. The Debtor believes that S&L neither holds nor represents a disqualifying interest that is adverse to the estate and is a "disinterested person." If any new relevant facts or relationships are discovered, S&L will supplement its disclosure to the Court.

---

[3] The InfoWDebtors' applications to employ of Parkins & Rubio LLP and KSLPLLC were never approved in the InfoWDebtors' chapter 11 cases.

[4] Upon the dismissal with prejudice of the Connecticut Sandy Hook plaintiffs' claims against the InfoWDebtors—and the then forthcoming dismissal of claims with prejudice of the Texas Sandy Hook plaintiffs—the restructuring contemplated by the Plan Support Agreement at in the InfoWDebtors' bankruptcy case was no longer possible.

### vii. Co-Counsel Relationship

22.     S&L is being retained to serve as co-counsel for FSS along with The Law Offices of Ray W. Battaglia, PLLC (the "Battaglia Firm").  The two law firms have agreed to a division of labor substantially like the manner which multiple attorneys within the same law firm would handle a similar case.  Each firm is aware of the need to avoid duplication of effort and have taken steps to minimize the degree to which their services will overlap.  S&L will be primarily responsible for the day-to-day management of the case, issues involving the Sandy Hook Litigation, and all routine activities typical to the Chapter 11 Case.  The Battaglia Firm will provide legal advice regarding strategy for the Chapter 11 Case and implementation of that strategy.  The firms will allocate primary responsibility as appropriate for drafting pleadings and handling contested matters and meetings with the Debtor and opposing counsel.  For certain matters it will be necessary to involve more than one lawyer and the firms will jointly handle such matters, mindful of the need to avoid duplication whenever possible.

### **RELIEF REQUESTED**

23.     The Debtor requests that the Court enter an order substantially in the form of the Proposed Order authorizing the Debtor to retain S&L as bankruptcy co-counsel, pursuant to the terms of the Engagement Agreement, as modified by the Proposed Order, effective as of July 29, 2022.

### **BASIS FOR RELIEF**

24.     Subject to bankruptcy court approval, Bankruptcy Code § 327(a) authorizes trustees—and Debtor-in-Possession—to "employ one or more attorney's accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the

trustee's duties . . . ." Bankruptcy Code § 327(c) provides that "[i]n a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."

25.     Bankruptcy Rule 2014 requires certain disclosures prior to the entry of an order approving the employment of a professional. According to Bankruptcy Rule 2014, the application must:

> (a)     Be filed by the trustee or committee and served on the United States Trustee (except in case under chapter 9 of the Bankruptcy Code);
>
> (b)     State the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; and
>
> (c)     Be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

## A.     S&L Meets the Requirements of Bankruptcy Code § 327(a)

26.     Based on the Lee Declaration, the Debtor submits that S&L neither holds nor represents a disqualifying adverse interest and is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code.

27.     The term "disinterested person" is defined by the Bankruptcy Code. According to Bankruptcy Code § 101(14):

> The term "disinterested person" means a person that— (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have

8

an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

28. The Lee Declaration discloses no connections with the Debtor that would disqualify S&L as a "disinterested person" and the Debtor is aware of no connections in addition to those disclosed in the Lee Declaration.

**B. This Application and the Lee Declaration Meet the Requirements of Bankruptcy Rule 2014**

29. This Application and the Lee Declaration meet the requirements as set out in Bankruptcy Rule 2014. This Application is made by the Debtor and sets out the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, the proposed arrangement for compensation. The Lee Declaration is a verified statement pursuant to 28 U.S.C § 1746 that sets out all connections that S&L has with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee. The Debtor is not aware of any other connections in addition to those disclosed in the Lee Declaration.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an order substantially in the form of the Proposed Order approving the employment of S&L commencing on July 29, 2022, and grant any other relief that is just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  August 20, 2022

Respectfully submitted,

W. Marc Schwartz
Chief Restructuring Officer and Authorized
Representative of Free Speech Systems,
LLC, Debtor and Debtor-in-Possession

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list within 1 business day of the filing, and (c) the following parties by email on the date of filing:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Hetherhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Attn: Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlinlaw.com

Attn: Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548
christopher.dylla@oag.texas.gov

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarro.com

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

*/s/R. J. Shannon*

**USPS Service List**

**Twenty Largest Unsecured Creditors**

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

Commerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

## Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

## Parties Filing Notice of Appearance

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002

Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581

Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

## Subchapter V Trustee

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

## U.S. Trustee

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

## Additional Notice Parties

14

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterling, Christopher
Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 0660

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22—60043** |
| | § | |
| **DEBTOR.** | § | |
| | § | **Chapter 11 (Subchapter V)** |

### ORDER APPROVING DEBTOR'S APPLICATION
### TO EMPLOY SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL

Upon the application (the "Application")[1] filed by the Debtor to retain and employ Shannon

& Lee LLP ("S&L") pursuant to Bankruptcy Code §§ 327(a) and 330 and Bankruptcy Local Rule

2014-1, as more fully set forth in the Application and all exhibits and attachments to the

Application; and upon the Court's finding that (i) the Court has jurisdiction over this matter

pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii)

venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the Application and the

Lee Declaration are in full compliance with all applicable provisions of the Bankruptcy Code,

Bankruptcy Rules, Bankruptcy Local Rules, and Orders and procedures of this Court; (v) S&L

does not represent an interest adverse to the Debtor's estate with respect to the matters upon which

it is to be engaged and is a "disinterested person" within the meaning of that term under § 101(14)

of the Bankruptcy Code; (vi) S&L is qualified to represent the Debtor's estate under § 327 of the

Bankruptcy Code; (vii) the terms of S&L's employment have been disclosed and are reasonable

under the circumstances; (viii) proper and adequate notice of the Application, the deadline to file

any objections to the Application, and the hearing thereon was given, and no other or further notice

---

[1] Capitalized terms not defined herein have the meaning set forth in the Application.

is necessary; (ix) the legal and factual bases set forth in the Application establish just cause for the relief granted herein; (x) the relief sought in the Application is in the best interest of the Debtor's estate; (xi) any timely objection to the Application having been withdrawn or overruled for the reasons stated on the record at the hearing on the Application; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      In accordance with Bankruptcy Code §§ 327(a) and 330 and Bankruptcy Local Rule 2014-1, the Debtor is authorized to employ and retain S&L commencing on the Petition Date, as bankruptcy co-counsel, under the terms and conditions set forth in the Application and the Engagement Letter attached to the Application as <u>Exhibit B</u>.

2.      S&L is authorized to perform any and all legal services for the Debtor that are necessary or appropriate in connection with the Chapter 11 Case.

3.      S&L shall be compensated for its services and reimbursed for related expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to the procedures Bankruptcy Code §§ 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Rules, and any orders of this Court.

4.      S&L shall continue to hold the Retainer (as defined in the Application) in trust on behalf of the Debtor, until further order of the Court.

5.      All compensation for services rendered and reimbursement for expenses incurred in connection with the above-captioned Chapter 11 Case shall be paid after further application to and order of this Court, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and any orders of this Court.

6.      This order shall be immediately effective and enforceable upon entry.

7.      This order, and all acts taken in furtherance or reliance thereon, shall be effective notwithstanding any objection until further order of this Court.

8.      Notwithstanding anything to the contrary in the Application, the Engagement Agreement, or the Declaration attached to the Application, S&L shall not be entitled to reimbursement of expenses or fees from the Debtor in connection with any objection to its fees, without further order of the Court.

9.      S&L shall not charge a markup to the Debtor with respect to any fees billed by contract attorneys who are hired by S&L to provide services to the Debtor and shall ensure that any such contract attorneys are subject to conflicts checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

10.     S&L shall provide ten-business-days' notice to the Debtor and the U.S. Trustee before any increases in the rates set forth in the Application or the Engagement Agreement are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in § 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to § 330 of the Bankruptcy Code.

11.     S&L shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals.

12.     S&L will review its files periodically during the pendency of this Chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, S&L will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by FED. R. BANKR. P. 2014(a).

13.     To the extent that any of the Application, the Lee Declaration, or the Engagement Agreement are inconsistent with this Order, the terms of the Order shall govern.

14.     The Debtor and S&L are authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this order.

Dated: _____, 2022

_____
**UNITED STATES BANKRUPTCY JUDGE**

## **Exhibit A**

Engagement Agreement



Kyung S. Lee
Attorney at Law

Pennzoil Place
700 Milam St.
Suite 1300
Houston, TX 77002

# SHANNON & LEE LLP

klee@kslpllc.com| Direct: 713-301-4751

June 6, 2022

## PRIVILEGED AND CONFIDENTIAL

Alex E. Jones
Managing Member
Free Speech Systems, LLC
910 West Mary Street
Austin, Texas 78704

Re: <u>Attorney Engagement Letter of Shannon & Lee LLP by Free Speech Systems, LLC</u>

Dear Mr. Jones:

Thank you for selecting Shannon & Lee LLP ("S&L" or the "Firm") as legal counsel for Free Speech Systems, LLC ("FSS", "you" or "Client"). We appreciate the trust and confidence that your decision places in us and we look forward to building a close and mutually rewarding relationship.

The purpose of this letter and the attached Terms of Retention (together, the "Engagement Letter") is to set forth the terms of legal representation of the above referenced Client.

*Scope of Engagement.* S&L shall serve as attorney and legal counsel for the Client in connection with the following (the "Matter"): Serve as co-restructuring counsel for the Client, effective as of May 24, 2022.[1]

*Legal Fees and Expenses.* For the work performed by S&L for the Client, S&L shall be entitled to a fee in the amount equal to the time expended by each attorney, paralegal and other staff member multiplied by the hourly rates set forth in the attached Hourly Billing Rate Schedule. The Client is responsible for reimbursing the Firm for expenses incurred on behalf of the Client pursuant to the attached Client Expense Policy.

---

[1] As S&L was formed on June 1, 2022, fees earned prior to June 1, 2022 shall be allocated to the respective professional liability company between the two partners. For work performed and fees earned after June 1, 2022, such fees shall be deemed to be earned by S&L. This notice is being provided due to recent departure of the two partners from their previous law firms and practice of law with their respective limited liability companies during the stub period of May 15, 2022 through June 1, 2022.

Alex E. Jones
June 6, 2022
Page 2 of 11

*Retainer.* As a condition to S&L accepting this engagement on your behalf, you have agreed to provide a retainer of $1000,000.00 (the "Retainer") in connection with this Matter. The instructions for remitting the retainer funds to the Firm will be provided in a separate electronic correspondence. The Retainer will serve as a security deposit and will be applied towards your final invoice for this Matter. Any balance will be returned to you. If you do not pay your invoices timely, the Firm may apply the Retainer to an unpaid invoice. The Firm reserves the right to have the Retainer replenished by the Client if the Firm anticipates that there is a risk in collecting future attorney's fees and/or reimbursement of costs. Prior to filing for bankruptcy, the Firm shall take into income any fees and costs incurred and invoiced such that the Firm and the Client do not have a debtor-creditor relationship as of the filing date.

*Invoices/Fee Statements.* The Firm's invoices will be issued to you during the month, if not more often, following the month that services are provided. The invoice will include a fee statement providing the details of the legal services performed, and the expenses incurred, for the Client. The invoices shall be informational only and shall be paid upon allowance by a Bankruptcy Court order.

*Conflicts.* The Firm has conducted an initial conflicts search based on information you provided. The Firm did not identify any connection that would prevent the Firm from representing you in this Matter. S&L may conduct additional conflicts searches following the commencement of this engagement. If the Firm identifies any conflict, then the Firm shall immediately notify the Client and the Firm and the Client shall take further actions as may reasonably be required to satisfy the Firm's ethical obligations and duties to the Client, all as more particularly described in the Terms of Retention.

The two partners of S&L have acted as general bankruptcy counsel for InfoW, LLC, IWHealth, LLC and Prison Private tv Ltd. These three companies were affiliates of FSS, have license agreements with FSS and are in the process of having their Subchapter v bankruptcy cases dismissed. If any issues arise in connection with the license agreement between the FSS and InfoW, S&L intends to have co-counsel or conflict counsel matters related to such dispute. Otherwise, the Firm does not believe that such connection precludes it from representing FSS on the matters to which it is being asked to be engaged.

*General Prospective Waiver and Informed Consent.* The Firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future Clients will have disputes or transactions with you. You agree that we may continue to represent or may undertake in the future to represent existing or new Client in any business or transactional matter that is not substantially related to our work for you, even if the interests of such Client in those other matters are directly adverse to you. We are not aware of any such matters at the present time. We agree, however, that your prospective consent to conflicting representations contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage. *You are not giving the Firm a prospective waiver as to conflicting representation related to a litigation matter against you.* We encourage you to seek independent counsel regarding the import of the potential conflicts and prospective waiver discussed and this acknowledgment, waiver and informed consent. We

Alex E. Jones
June 6, 2022
Page 3 of 11

emphasize that you remain completely free to seek independent counsel at any time even if you decide to sign this Engagement Letter agreeing to its terms and the Terms of Retention.

Please call me with any questions you have after you complete your review of this Engagement Letter including the Terms of Retention. If the Engagement Letter is acceptable to you in this form, please indicate so by signing, dating, and returning it to me and funding the Retainer.

Very truly yours,

*Kyung S. Lee*

Kyung S. Lee
Kyung S. Lee PLLC
Shannon & Lee LLP

ACCEPTED AND AGREED:

Free Speech Systems, LLC

Authorized Officer of Free Speech Systems, LLC

Dated

Alex E. Jones
June 6, 2022
Page 4 of 11

## ADDENDUM TO ENGAGEMENT LETTER

The appropriate Client point of contact to address payment status:

Name:
Title:
Phone:
Work Email:

Invoices are to be delivered as follows:

☐ By email: _____

    Email: _____

☐ By regular mail:

Address: _____

           _____

           _____

Alex E. Jones
June 6, 2022
Page 5 of 11

## TERMS OF RETENTION

These Terms of Retention are part of the S&L Engagement Letter. Because they are an integral part of our agreement to provide legal services, we ask that you review this document carefully. If you have any questions after reading it, please contact us promptly.

*Who Will Provide Legal Services?* In most cases, one attorney will be your principal contact. From time to time, that attorney may delegate parts of your work to other attorneys or to legal assistants or non-legal professionals in the Firm. We do this to involve those with special knowledge or experience in an area and to provide services to you in a timely, efficient, and cost-effective manner. I will be the primary attorney from our Firm who will be representing the Client.

*Scope of the Representation.* As a Firm, we undertake to provide representation and advice on the legal matters for which we are engaged, and it is important that we both have a clear understanding of the legal services that the Firm has agreed to provide. In our Engagement Letter with you, we specify the matter in which we will provide representation and the scope of the services we will provide. Please note that we do not provide legal advice regarding any tax issues or effects nor are we responsible for notifying any insurance carrier of any lawsuit. If there are any questions about the terms of engagement, including the scope of the representation that we are to provide in the matter, please raise those questions promptly with your principal contact at the Firm.

*Identity of Client.* It is our policy to represent only the person or entity identified in our Engagement Letter and not any affiliates. For example, unless otherwise specifically stated in our Engagement Letter, if you are a business organization (corporation, partnership, LLC, etc.), our representation does not include any parents, subsidiaries, employees, officers, owners, or affiliates (including commonly owned companies); if you are an individual, our representation does not include your employer, partners, spouse, siblings, or other family members.

*Your Cooperation.* To enable us to provide effective representation, you agree to: (1) disclose to us, fully and accurately and on a timely basis, all facts and documents that are or might be material or that we may request, (2) keep us apprised on a timely basis of all developments relating to the representation that are or might be material, (3) attend meetings, conferences, and other proceedings when it is reasonable to do so, and (4) otherwise cooperate fully with us.

*Outcomes.* We cannot and do not guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is, of course, limited by our knowledge of the facts and based on the law at the time of expression. It is also subject to any unknown or uncertain factors or conditions beyond our control. Any expressions on our part concerning the outcome of the representation, or any other legal matters, are based on our professional judgment and are not guarantees.

*Conflicts of Interest.* We attempt to identify actual and potential conflicts at the outset of any engagement. In some instances, the applicable rules of professional conduct may limit our ability to represent Client with conflicting or potentially conflicting interests. Those rules of conduct often allow us to exercise our independent judgment in determining whether our relationship with one client prevents us from representing another. In other situations, we may be permitted to represent a client only if both or all

Alex E. Jones
June 6, 2022
Page 6 of 11

Client consent to that representation. If a controversy unrelated to the subject matter of the representation develops between you and any other client of the Firm, we will follow the applicable rules of professional responsibility to determine whether we may represent either you or the other client in the unrelated matter. Unfortunately, sometimes conflicts arise or become apparent after work begins on an engagement. If this happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all of our affected Client. Rules concerning conflicts of interest vary with the jurisdiction. In order to avoid any uncertainty, the Texas Disciplinary Rules of Professional Conduct will be applicable to the representation.

Texas law requires that we inform the Client of the existence of a grievance process. The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar's Office of Chief Disciplinary Counsel will provide you with information about how to file a complaint. Please call 1-800-932-1900 for more information. Also, the Supreme Court of Texas has promulgated The Texas Lawyer's Creed - A Mandate for Professionalism, which states that an attorney should inform a client of the creed's contents when undertaking a representation. We will send you a copy of the creed upon request. It is also available online at https://www.texasbar.com.

*Fees.* The basis for determining our fee for legal services is set forth in the Engagement Letter itself. If you are unclear about the basis for determining your fee, please contact the attorney responsible for your representation. Clients frequently ask us to estimate the fees and other charges they are likely to incur in connection with a particular matter. We are pleased to respond to such requests, whenever possible, with an estimate based upon our professional judgment. This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.

*Expenses.* Our Firm may incur and pay a variety of charges on your behalf in connection with the engagement. Whenever we incur such charges on your behalf, we will bill them to you as part of your invoice in accordance with the attached Client Expense Policy.

*Delinquent Account and Withdrawal of Engagement.* We will bill you on a periodic basis, for fees and other charges, as described in the Engagement Letter. Should your account become delinquent and satisfactory payment terms are not arranged, as permitted under the rules regulating our profession, we will be required to withdraw from the representation. In most cases, and except as prohibited by ethical considerations, if your account becomes more than 30 days delinquent, we will cease representation until we can arrive at a mutually satisfactory arrangement for payment of the delinquent account and the resumption of services. At such time we may charge interest on the outstanding amount due of one and a half percent per month or the maximum amount allowed under applicable law, whichever is less.

*Additional Retainer.* If the representation will require a concentrated period of activity, such as a trial, arbitration, or hearing, we reserve the right to require the payment of all amounts then owing to us and the payment to us of an additional retainer for the fees and expenses we estimate will be incurred in preparing for and completing the trial, arbitration, or hearing, as well as arbitration fees likely to be assessed. If you fail to timely pay any    retainer deposit requested, we will have the right to cease performing further work for you and withdraw from the representation.

*Obligation to Pay Fees and Expenses.* Unless your Engagement Letter expressly provides that a third-party is agreeing to pay your attorney's fees and such third-party has agreed in writing, regardless of whether you are insured to cover the particular risk or you are pursuing parties for recovery of attorneys' fees and other charges, it remains your obligation to pay all amounts due to us within the time periods reflected in the Engagement Letter.

*Retention of Complementary Counsel.* From time to time in the course of our engagement it may become prudent to engage additional counsel to work with and complement our representation of you. That complementary representation will only be done with your prior written consent and on terms and conditions which you approve. The engagement of complementary counsel may be done directly with you or through our firm, depending on the nature and extent of the representation involved.

*Conclusion of Engagement.* Because our Firm has been engaged to provide legal services in connection with the representation in the matter as specifically defined in our Engagement Letter, the attorney-client relationship terminates upon our completion of our services related to the representation in the matter. After completion of the representation, upon written notification by the Firm that the matter is terminated, changes may occur in the applicable laws or regulations that could affect your future rights and liabilities in regard to the matter. Unless we are actually engaged after the completion of the representation to provide additional legal services, the Firm has no continuing obligation to give advice with respect to any future legal developments that may relate to the matter. If you later retain us to perform further or additional services, our attorney-client relationship will be subject to the terms of engagement agreed to at that time; in the absence of any specific agreement, these Additional Terms of Engagement shall apply to the further or additional representation.

*Termination.* We look forward to the opportunity to complete our representation of you on the specified matter. You may, however, terminate our representation at any time, with or without cause, by notifying us in writing. We will return your papers and other property to you promptly upon receipt of your request for those materials unless they are appropriately subject to a lien. You agree that we will own and retain our own files pertaining to the matter or case, including, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal attorney's work product such as drafts, notes, internal memoranda, and legal and factual research including investigative reports, prepared by or for the internal use of attorneys. Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

*Document Retention.* You acknowledge and agree that the Firm may maintain all documents related to your matter digitally. The Firm is not required to maintain physical copies of any documents. At the conclusion of our representation of you, it is our firm's policy to return to you any physical documents to you. We will provide you with copies of any other documents you specifically request (such as copies of depositions, court documents, etc.), and you agree to pay for the associated copying costs and any professional time incurred in identifying any such documents you request. You agree that our Firm may elect to keep at its own expense, copies of any documents related to this matter or otherwise returned to you. Anytime following seven (7) years after the conclusion of our representation of you, the Firm may destroy or delete any files related to your engagement.

*Dispute Resolution.* The Engagement Letter is being entered and is to be performed within the State of Texas. The Engagement Letter shall be interpreted in accordance with Texas law (without application of choice of law principles). All parties to the Engagement Letter agree that Houston, Harris County, Texas is the only permitted location (the venue) for the resolution of all disputes that arise under or relate in any way to the Engagement Letter or to any of the services provided by our Firm.

*Binding Arbitration.* Any dispute arising out of or relating to this agreement, our interactions leading to it, or our performance of the agreement or of the representation of you shall be resolved through binding arbitration in Harris County, Texas. First, sixty (60) days before filing any arbitration proceeding, the party requesting relief must demand and attend mandatory mediation before a mutually acceptable mediator to attempt to resolve any dispute. In the event the parties are unable to resolve such dispute, the affected party shall initiate an arbitration proceeding utilizing the rules of (but not employing) the American Arbitration Association ("AAA") for the arbitration of complex commercial cases. In any dispute of less than $250,000, the parties shall jointly appoint a single arbitrator. In any dispute of a greater amount, each party shall appoint his/her or its own party arbitrator, and these two-party arbitrators shall in turn appoint a third, neutral arbitrator. All party arbitrators' conduct and tests for eligibility shall be governed by AAA rules of disinterest. The time limits hereunder shall not apply in the event emergency injunctive relief is required, but only to the extent of such emergency injunctive relief itself. The decision by the arbitration panel will be final and binding.

You should know that for your agreement to arbitrate to be effective under Texas law, you as the client must receive sufficient information about the differences between litigation and arbitration to permit you to make an informed decision about whether to agree to binding arbitration. Under the Texas Rules of Disciplinary Procedure, we can explain the significant advantages and disadvantages of binding arbitration to the extent we reasonably believe is necessary for an informed decision by you. The scope of the explanation will depend on the sophistication, education and experience of the client.

In the case of a highly sophisticated client such as a large business entity that frequently employs outside lawyers, no explanation at all may be necessary. In situations involving Clients who are individuals or small businesses, we normally advise the client of the following possible advantages and disadvantages of arbitration as compared to a judicial resolution of disputes: (1) the cost and time savings frequently found in arbitration, (2) the waiver of significant rights, such as the right to a jury trial, (3) the possible reduced level of discovery, (4) the relaxed application of the rules of evidence, and (5) the loss of the right to a judicial appeal because arbitration decisions can be challenged only on very limited grounds.

Additional factors you as the client should consider are: (1) the privacy of the arbitration process compared to a public trial; (2) the method for selecting arbitrators; and (3) the obligation, if any, of the client to pay some or all of the fees and costs of arbitration, if those expenses could be substantial. Although the disclosure can vary from client to client, depending on the circumstances, the overriding concern is that we should provide information necessary for the client to make an informed decision.

Alex E. Jones
June 6, 2022
Page 9 of 11

*By returning the executed Engagement Letter, you acknowledge that you have been provided ample opportunity to have counsel explain to you the advantages and disadvantages of binding arbitration to make an informed decision about agreeing to the provision.*

*Modifications.* The Engagement Letter and these Additional Terms of Engagement reflect our entire agreement on the terms of this engagement. These written terms of engagement are not subject to any oral agreements or understandings, and any change in those terms can only be made in writing signed by you and the Firm.

Alex E. Jones
June 6, 2022
Page 10 of 11

## Hourly Billing Rate Schedule

| BILLER | RATE |
|---|---|
| Kyung S. Lee | $850 |
| R.J. Shannon | $650 |
| Associate Attorneys | $300 - $600 |
| Paralegals | $150 - $250 |
| Legal Assistants | $50 - $100 |

Alex E. Jones
June 6, 2022
Page 11 of 11

### Client Expense Policy

In connection with the representation of a client, the Firm may incur expenses. Unless the Engagement Letter expressly provides to the contrary, the Firm's and the Client's rights and responsibilities related to such expenses are as follows:

*Legal Research and Related Services.* The Firm subscribes to certain online research services. These subscription-based services are part of the Firm's overhead and not charged to the Client. Certain services are charged on a per-transaction including, without limitation, the following examples: UCC searches, lien searches, title searches and other record searches. The Client is responsible for these pre-transaction charges. The Firm will advance the costs for all such services and submit bills to you for reimbursement. The Firm may seek prior approval from you if the anticipated aggregate monthly expense for such services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Document Management and eDiscovery Services.* The Firm subscribes to advanced document management software systems. These subscription-based systems are part of the Firm's overhead and not charged to the Client. The Client is responsible for eDiscovery services. eDiscovery service providers typically charge per gigabyte of information stored. Additional services from the outside vendor may be required other than storage of the information and typically these are separately charged. If the Firm uses an eDiscovery service during the representation, then the Firm will seek the Client's prior approval before incurring expenses for such services. Rather than billing these expenses through the Firm, the Firm reserves the right to have the Client contract directly with the outside vendor to pay for these expenses. For the avoidance of doubt, the Client is responsible to the Firm for the payment of all fees and expenses incident to the firm's review and processing of discovery materials that are not handled by an outside vendor.

*Printing, Shipping, Postage and Related Expenses.* For all printing, shipping, postage, and related services the Firm may handle them in house or use an outside vendor. The Client is responsible for all such printing, shipping, postage, and related services at costs or the prevailing market rate if handled in house. The Firm may seek prior approval from the Client if the anticipated aggregate monthly expense for printing, shipping, postage, and related services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Travel Expenses.* The Client will reimburse the Firm for expenses incurred in connection with out-of-town travel, but only for coach class travel and, where appropriate, the cost of a rental car. All related travel expenses, i.e., lodging and meals, must be reasonable under the circumstances. The Firm will advance all such travel expenses and submit bills to you for reimbursement which will be included in the regular invoices to the Client. The attorney handling your matter will confer with you prior to traveling for your matter. Consistent with local bankruptcy rules, the Firm bills travel at ½ billable hourly rate when the lawyer is not working on the Client matter while travelling. The Firm will endeavor to locate a substitute service agent.

*Court Costs.* If requested by the Firm, the Client will advance court filing fees and all similar expenses prior to the Firm incurring such expenses. Any such expenses incurred by the Firm, will be included in the Firm's invoices to the Client for payment.

**Exhibit B**

Lee Declaration

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22—60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**DECLARATION OF KYUNG S. LEE IN SUPPORT OF**
**THE DEBTOR' APPLICATION TO EMPLOY**
**SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL**

I, Kyung S. Lee, declare under penalty of perjury as follows:

1.      I am an attorney at law duly admitted and in good standing to practice in the State of Texas and United States District Court for the Southern District of Texas.  As of June 1, 2022, I am a partner in the Houston office of the law firm Shannon & Lee LLP ("S&L"), located at 700 Milam Street, Suite 1300, Houston, Texas 77002.

2.      I am making this declaration in support of the Debtor's Application to Employ Shannon & Lee LLP as Bankruptcy Co-Counsel, effective as of July 29, 2022 (the "Application"). Unless otherwise indicated, capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application.

3.      Except as otherwise noted, all facts set forth in this declaration are based upon my personal knowledge, upon the client and matter records of S&L reviewed by me or derived from information available to me that I believe to be true and correct or opinion based upon experience, knowledge and information concerning the restructuring of debtor-creditor relationships, workouts, chapter 11 process and the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## A.      Scope of Services

4.      Pursuant to the Engagement Agreement, the Application, and the Proposed Order attached thereto, S&L will serve as bankruptcy co-counsel to the Debtor in connection with the Chapter 11 Case for the period commencing on July 29, 2022.   In connection with this representation, S&L will take all necessary and appropriate actions to administer the Debtor's Chapter 11 Case.

## B.      Proposed Compensation

5.      S&L will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, Guidelines, and Orders for all services performed and expenses incurred during its representation of the Debtor.

6.      Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and the Orders, S&L intends to request the allowance of its compensation as set out in the Engagement Agreement and as summarized in the following chart:

| BILLER | RATE |
|---|---|
| Kyung S. Lee | $850 |
| R.J. Shannon | $650 |
| Other Associate Attorneys | $300 - $600 |
| Paralegals | $150 - $250 |
| Legal Assistants | $50-$100 |

7.      These rates reflect the rates that S&L ordinarily charges clients in bankruptcy and non-bankruptcy matters and are less than or equal to the rates of similarly skilled and experienced attorneys in this district.   S&L submits that these agreed terms of reimbursement, compensation,

and hourly rates are reasonable. S&L will notify the Debtor of any change in the hourly rates charged for services rendered.

**C.     Retainer & Prepetition Payments**

8.      Pursuant to the Engagement Agreement, FSS retained S&L to represent it in connection with its restructuring, effective as of May 24, 2022. Pursuant to the Engagement Agreement, FSS paid S&L a $100,000 retainer.

9.      S&L invoiced FSS for work it did during the month of June 2022 in the total amount of $84,034.12. Prior to the Petition Date, FSS paid the June invoice.

10.     S&L then invoiced FSS for work it did during the period July 1-July 29, 2022 in the total amount of $99,177.32. Prior to the Petition Date, the Firm took into income $99,177.32 from the Retainer, leaving a balance of $822.68 in S&L's IOLTA account.

11.     Prior to the Petition Date, FSS wired $50,000 to S&L's IOLTA account to replenish the Retainer. As of the Petition Date, S&L's IOLTA account balance was $50,822.68 (the "Retainer").

12.     Under the proposed employment with the Debtor, S&L will continue to hold the Retainer in trust for satisfaction of its final fees and expenses as authorized by the Court, or as otherwise directed by the Court.

**D.     Disclosure of Connections**

*i.     Search and General Descriptions of Connections*

13.     S&L performed the following actions to determine whether it or any of its attorneys has any disclosable connections, to the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas.

3

14.     I conducted a search of S&L files to determine using the list of parties in interest listed in <u>Schedule 1</u> hereto whether the Firm had any connections to or represented any of the parties listed on Schedule 1. The search revealed that the Firm had and did not represent any of the parties listed on Schedule 1. S&L may have provided services to creditors or other parties in interest inadvertently omitted from Schedule 1 or the description above. If such connections exist, they would be on matters wholly unrelated to the service for which FSS seeks to engage S&L.

15.     The email and computerized search uncovered no connections other than the following:

    a. S&L represented the Debtor prior to the Petition Date.

    b. Mr. Shannon and I previously represented the InfoWDebtors in their chapter 11 cases jointly administered under Case No. 22-60020. Certain creditors of the InfoWDebtors are also creditors of FSS. Additionally, Mr. Shannon and I represented the InfoWDebtors in the negotiations of the Plan Support Agreement under which FSS and Alex Jones committed to provide funding for the InfoWDebtors' contemplated reorganization, prior to the dismissal of the Sandy Hook plaintiffs' decision to dismiss their claims against the InfoWDebtors with prejudice.

    c. Mr. Schwartz was the CRO of the InfoWDebtors while S&L attorneys represented the InfoWDebtors.

    d. Mr. Shannon was previously employed by Akin Gump Strauss Hauer & Feld LLP.

    *ii. Further Description of Connections to the InfoWDebtors*

16.     Beginning on or about March 23, 2022, I, as a partner of Parkins Lee & Rubio LLP, and R.J. Shannon, as an associate, represented the InfoWDebtors in connection with their chapter 11 cases that were filed on April 17 and 18, 2022. On May 15, 2022, I began representing the InfoWDebtors, practicing under Kyung S. Lee PLLC. On June 1, 2022, S&L began business and provided services to the InfoWDebtors in connection with the hearing on the stipulation and order dismissing the InfoWDebtors cases and final administrative matters after the dismissal of the cases.

4

17.     After extensive negotiations prior to filing their petitions, Alex Jones assigned his interests in the InfoWDebtors to a litigation Settlement Trust (the "LST") and Mr. Jones and FSS entered into a Plan Support Agreement (the "PSA"). Mr. Shannon and I represented the InfoWDebtors in connection with those negotiations.

18.     Section 8 of the PSA contained various provisions under which the PSA and the obligations of the parties thereto would terminate. The provisions under which the PSA would terminate under its terms included, among other things: (i) dismissal of the InfoWDebtors' chapter 11 cases; (ii)  failure to obtain appointment of the trustees for LST; (iii) failure to file a plan pursuant to the terms of the PSA; (iv) failure to obtain confirmation of a plan pursuant to the terms of the PSA; and (v) the remand of the Sandy Hook Actions and continuation of the state court proceedings.

19.     On April 17 and April 18, 2022, the InfoWDebtors filed petitions for relief under chapter 11, subchapter v, of the Bankruptcy Code.

20.     The Texas Sandy Hook plaintiffs, the Connecticut Sandy Hook plaintiffs, and the U.S. Trustee immediately filed emergency motions to dismiss the bankruptcy cases of the InfoWDebtors.

21.     Although the InfoWDebtors filed emergency motions to appoint trustees for the LST and retain W. Marc Schwartz to serve as the CRO for InfoWDebtors, the Texas Sandy Hook plaintiffs, Connecticut Sandy Hook plaintiffs, and the U.S. Trustee each opposed hearings on those emergency motions prior to their motions to dismiss.

22.     By May 6, 2022, counsel for both the Texas and Connecticut plaintiffs announced that they were dismissing their claims against the InfoWDebtors from their respective lawsuits. CRO Schwartz directed me to work with plaintiffs' counsel to make sure that their claims were

withdrawn with prejudice against the InfoWDebtors. The InfoWDebtors finalized, submitted and had the Bankruptcy Court approve the Stipulations of Dismissal of the Texas plaintiffs Claims with prejudice by May 19, 2022. The Connecticut plaintiffs filed pleadings to dismiss their claims against the InfoWDebtors with prejudice in the removed actions on or about May 13, 2022.

23.     After dismissal of the Sandy Hook plaintiffs' claims against the InfoWDebtors, the PSA could no longer serve its intended purpose and had terminated by its own terms. While counsel for Alex Jones and FSS advised the Court that the parties would extend the PSA deadlines beyond April 30, 2022, the Amended PSA was negotiated but never executed because the LST trustees were never appointed.

24.     The CRO of the InfoWDebtors and I then analyzed the best way to go forward with the remaining claims against the InfoWDebtors and concluded that, in light of the U.S. Trustee's continued opposition to the bankruptcy cases, dismissal of the InfoWDebtors' bankruptcy cases was in the best interest of the estate. First, the InfoWDebtors still had to litigate with the U.S. Trustee regarding dismissal. Second, the *raison d'etre* for the bankruptcy (to have the plaintiffs participate as claimants under the plan of reorganization) no longer existed. Third, the estate had limited access to funds to administer the estate, in light of the termination of the PSA. Fourth, dismissals of both Texas and Connecticut plaintiffs' claims with prejudice left the estate with only four remaining creditors.

25.     The CRO then directed me to work with the U.S. Trustee's office to have the InfoWDebtors' bankruptcy cases dismissed. On June 1, 2022, the U.S. Trustee and the Debtors filed a Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases. On June 10, 2022, the Bankruptcy Court approved the Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases.

26.     The first services any attorney of Shannon & Lee LLP provided to FSS occurred on May 24, 2022, were provided by me through Kyung S. Lee PLLC when I traveled to Austin, Texas to discuss the potential restructuring relating to FSS. The InfoWDebtors were negotiating the terms of the stipulation with the U.S. Trustee to dismiss the case that was filed on June 1, 2022, at this time.

27.     As of May 19, 2022, and continuing through today, the InfoWDebtors and FSS are not adverse. No default exists under the license agreement between InfoW and FSS. To the best of my knowledge, there are no claims between FSS and the InfoWDebtors.

28.     Out of an abundance of caution and to assure the Court and the FSS creditors that S&L does not have a bias or an adverse interest against FSS or its estate, Kyung S. Lee PLLC submitted a written resignation of its engagement to serve as restructuring counsel to InfoWDebtors prior to submission of the Application.

29.     The results of the foregoing connections search process confirm that neither I, S&L, nor any of its employees or partners, to the best of my knowledge, have any disqualifying connections. Neither I, S&L, or any partner of S&L (a) have any debt or equity securities in the Debtor, (b) are an insider of the Debtor, or (c) was a creditor of the Debtor on the Petition Date.

## E. Affirmative Statement of Disinterestedness

30.     Based on the connections review conducted to date and described herein, to the best of my knowledge and insofar as I can ascertain, I and S&L are "disinterested persons" within the meaning of Bankruptcy Code § 101(14), as modified by Bankruptcy Code § 1107(b), as required by Bankruptcy Code § 327(a).

31.     I am not a creditor, an equity security holder, or an insider of the Debtor; I am not and was not within 2 years before the Petition Date a director of the Debtor; and I do not have any

interest materially adverse to the interests of the Debtor's bankruptcy estate or any class of creditors or equity security holders.

32.     S&L is not a creditor, an equity security holder, or an insider of the Debtor; S&L is not and was not within 2 years before the Petition Date an employee, officer, or director of the Debtor; and S&L does not have any interest materially adverse to the interests of the Debtor's bankruptcy estate or any class of creditors or equity security holders.

33.     S&L does not possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate. S&L also does not possess or assert any economic interest that would create either an actual or potential dispute in which the estate is a rival claimant. S&L does not have any incentive to act contrary to the best interests of the estate and its creditors.

**F.      Bankruptcy Rule 2016(b) Disclosures**

34.     Pursuant to Bankruptcy Code § 504 and Bankruptcy Rule 2016, S&L has not shared or agreed to share (a) any of its compensation from the representation of the Debtor with any other persons, or (b) any compensation any other persons have received, may have received, or will receive.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August  20, 2022,

By: /s/*Kyung S. Lee*
Kyung S. Lee

**SCHEDULE 1**

**TO LEE DECLARATION**

**SEARCHED PARTIES**

<u>Debtor & Professionals</u>

    Law Office of Ray Battaglia                Schwartz Associates


<u>Debtor's Equity</u>

    Alexander E. Jones

<u>Largest 20 Unsecured Creditors & Litigation Claimants</u>

| | |
|---|---|
| Elevated Solutions Group | Dona Soto |
| Atomial LLC | Erica Lafferty |
| Cloudfare, Inc. | Francine Wheeler |
| Jacquelyn Blott | Ian Hockley |
| Joel Skousen | Jacqueline Barden |
| eCommerce CDN LLC | Jennifer Hensel |
| Paul Watson | Jeremy Richman |
| Greenair, Inc. | Jillian Soto |
| Edgecast, Inc. | Leonard Pozner |
| Ready Alliance Group, Inc. | Marcel Fontaine |
| Getty Images, Inc. | Mark Barden |
| RatsMedical.com | Neil Heslin |
| David Icke Books Limited | Nicole Hockley |
| WWCR | PQPR Holdings Limited, LLC |
| CustomTattoNow.com | Robert Parker |
| AT&T | Scarlett Lewis |
| Justin Lair | Veronique De La Rosa |
| Brennan Gilmore | William Sherlach |
| Carlee Soto-Parisi | William Aledenberg |
| Carlos Soto | Larry Klayman |
| Christopher Sadowski | Randazza Legal Group |

<u>Attorneys for Creditors and Parties in Interest</u>

| | |
|---|---|
| Kaster Lynch Farrar & Ball LLP | Jordan & Ortiz, P.C. |
| Koskoff Koskoff & Bieder | McDowell Heterhington LLP |
| Fertitta & Reynal LLP | The Akers Law Firm PLLC |
| Pattis & Smith, LLC | Copycat Legal PLLC |
| Zeisler & Zeisler P.C. | |

Waller Lansden Dortch & Davis, LLP

Akin Gump Strauss Hauer & Feld LLP

U.S. Bankruptcy Judges and Staff

Chief Judge David R. Jones
Judge Marvin Isgur
Judge Christopher M. Lopez
Judge Jeffrey P. Norman
Judge Eduardo V. Rodriguez
Albert Alonzo
Ana Castro

Tracey Conrad
Jeannie Chavez
LinhThu Do
Tyler Laws
Kimberly Picota
Vriana Portillo
Mario Rios

U.S. Trustee Personnel

Alicia Barcomb
Jacqueline Boykin
Luci Johnson-Davis
Hector Duran
Barbra Griffin
Brian Henault
Linda Motton
Ha Nguyen
Glenn Otto
Yasmin Rivera

Jayson B. Ruff
Millie Sall
Patricia Schmidt
Christy Simmons
Gwen Smith
Stephen Statham
Christopher R. Travis
Clarissa Waxton
Jana Whitworth