**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR** | § | |

**UNITED STATES TRUSTEE'S AMENDED OBJECTION TO THE APPLICATION OF
DEBTOR FOR AN ORDER (A) AUTHORIZING THE EMPLOYMENT OF SHANNON
& LEE LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTOR AND (B)
GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S.

Trustee"), by and through his undersigned counsel, hereby submits his objection (the "Objection")

to the Debtor's Application for an Order (A) Authorizing Employment of Shannon & Lee LLP as

Bankruptcy Co-Counsel for the Debtor and (B) Granting Related Relief (the "S & L Application").

In support of his Objection to the S & L Application, the U.S. Trustee states to the Court as follows:

**INTRODUCTION**

1. The U.S. Trustee objects to the S & L Application because attorney Kyung Lee ("Attorney

Lee"), a partner at Shannon & Lee LLP ("S & L"), failed to disclose his connections to Free Speech

Systems, LLC ("FSS" or the "Debtor") in the bankruptcy cases of InfoW, LLC, IWHealth, LLC

and Prison Planet TV, LLC (collectively referred to as the "InfoW Debtors" or the "InfoW

Cases").[1] In the InfoW Cases, the InfoW Debtors represented to the Court and parties that they

would negotiate at arm's length with FSS and Alex Jones ("Jones"), the proposed third-party

funders and counterparties to the negotiations. On May 19, 2022, Attorney Lee, through the law

---

[1] References to the InfoW Cases refer to Case Nos. 22-60020, 22-60021, and 22-60022 filed in the Southern District of Texas. The cite to "InfoW Docket" refers to Case No. 22-60020.

firm Kyung S. Lee PLLC ("KSLPLLC"), filed an application in the InfoW Cases whereby KSLPLLC sought to be employed as bankruptcy counsel for the InfoW Debtors. Attached to the application was a declaration by Attorney Lee, affirmatively stating that he had no connections to FSS and Jones (the "InfoW Lee Declaration"). Shortly after filing the application, however, Attorney Lee began providing legal services to FSS, while contemporaneously representing the InfoW Debtors.

2.  Attorney Lee never amended or supplemented the InfoW Lee Declaration after he was retained by FSS and did not otherwise inform the Court, creditors, and U.S. Trustee of his connections during the InfoW Cases as required by Bankruptcy Rule 2014. Attorney Lee's connections to FSS and Jones were only recently discovered in this case, after the Court conducted its own inquiry and questioned the professionals at the hearing on August 3, 2022. In addition to the violations under Bankruptcy Rule 2014, the lack of full disclosure in the InfoW Lee Declaration also violated the Southern District of Texas' Guidelines for Professional Conduct. All practicing attorneys in this district "[owe] to the judiciary, candor, diligence, and the utmost respect." *See* S.D. Tex. Local R., Appendix D. Guidelines for Professional Conduct.

3.  The defective disclosures in the InfoW Lee Declaration, while filed in a previous case, are not minor matters to ignore. The Court should address the issue in this case, which is, in many ways, a continuation of the previous cases. Section 327(a) of the Bankruptcy Code provides the Court with broad discretion to consider prior acts of the applicant to determine whether to approve an employment application. The Court should consider the nondisclosure in order to effectuate the disclosure obligations required by Bankruptcy Rule 2014.  The conduct in the InfoW Cases involved related debtors and almost the identical parties in interest. Moreover, Attorney Lee was employed by FSS while he filed pleadings and made statements to the Court in the InfoW Cases

2

that indicated that all InfoW estate professionals including Attorney Lee were independent and without outside influences. S & L, through the conduct of its named partner, should not be exempt from the consequences of the omissions because the InfoW Cases were dismissed; especially when S & L, with Attorney Lee, is now seeking approval from this Court to be employed by FSS—the very connection that was previously concealed from the Court. The disclosure procedures in Bankruptcy Rule 2014 are clear—the proposed professional must disclose all connections and may not unilaterally determine which connections impact his disinterestedness. S & L's attorney did not comply with his disclosure obligations, and through his noncompliance violated the ethical duties of candor, diligence, and the utmost respect owed to the Court.

4.   This is an unusual scenario. The Court never had the opportunity to rule on the employment application in the InfoW Cases. Because the InfoW Cases are now closed, it is appropriate for the Court in the present case to exercise its broad discretion under Section 327(a) to consider the nondisclosure in the related InfoW Cases to determine whether to approve the S & L Application. To protect the integrity of the bankruptcy system, the Court should refuse to overlook the disclosure failures in the InfoW Cases and as a result, should deny the S & L Application in the present case.

<b>FACTUAL BACKGROUND</b>

**A.  General Information.**

5.   On July 29, 2022, FSS filed a chapter 11 voluntary petition and elected to proceed under Subchapter V of chapter 11 on its petition.

6.   On August 2, 2022, the U.S. Trustee appointed Melissa Haselden as the FSS' Subchapter V Trustee in the present case.

7.   No committee has been appointed. Unless the Court determines there is cause for the

appointment of a creditors' committee and orders the appointment of one, the U.S. Trustee is prohibited from soliciting and appointing a committee in a subchapter V case. 11 U.S.C. § 1102(a)(3).

**B. The InfoW Debtors create a structure to negotiate opposite FSS and Jones after filing their bankruptcy cases.**

8. On April 17, 2022, and April 18, 2022, the InfoW Debtors filed chapter 11 voluntary petitions and elected to proceed under Subchapter V of chapter 11 on their respective petitions.[2] The InfoW Debtors, like FSS, were all 100% owned by Jones prior to the filing of the cases. InfoW Docket No. 6 at ¶ 6.

9. On April 18, 2022, the U.S. Trustee appointed Melissa Haselden as the InfoW Debtors' Subchapter V Trustee.

10. Before the filing of the InfoW Cases, in 2018, certain plaintiffs brought actions in Texas and Connecticut against Jones, FSS, and the InfoW Debtors relating to statements made by Jones and other employees of FSS stating, among other things, that the Sandy Hook school shootings were a hoax (such plaintiffs are referred to herein as the "Sandy Hook Plaintiffs" and individually as the "Connecticut Plaintiffs" and "Texas Plaintiffs").

11. In 2022, Jones, FSS, and the InfoW Debtors sought to limit their liability to the Sandy Hook Plaintiffs' defamation claims through the creation of the Litigation Settlement Trust (the "LST") and the Plan Support Agreement (the "PSA). Three days prior to the filing of the InfoW Cases, the InfoW Debtors, Jones, and FSS entered into the LST, with Jones and FSS agreeing to fund $725,000 into the LST to pay the administrative expenses of the InfoW Cases. The LST was designed to remove control of the equity of the InfoW Debtors from Jones and give it to a trust

---

[2] InfoW, LLC filed just shortly before midnight on April 17, 2022, while IWHealth, LLC and Prison Planet TV, LLC's petitions were docketed shortly after midnight on April 18, 2022.

held by trustees.  According to the InfoW Debtors, "[t]his provides a clean break between the [InfoW]Debtors' former management and allows the funding of a proposed plan to be negotiated at arm's length between the Debtors, FSS, and Jones." InfoW Docket No. 6 at ¶ 18.

12. Simultaneously with the creation of the LST, the InfoW Debtors entered into the PSA with Jones and FSS that dictated a roadmap for the InfoW Cases. FSS and Jones would be the funders of the plan because the InfoW Debtors had little or no assets. InfoW Docket No. 6 at 7. As part of the roadmap, the InfoW Debtors sought to retain W. Marc Schwartz as the chief restructuring officer ("CRO Schwartz") for the InfoW Debtors. InfoW Docket No. 6-2.

13. On April 27, 2022, the Connecticut Plaintiffs filed a motion to dismiss the InfoW Cases. InfoW Docket No. 36. On that same day, the Texas Plaintiffs joined the motion to dismiss and filed their supplemental motion to dismiss. InfoW Docket No. 42.

14. On April 29, 2022, the U.S. Trustee filed his motion to dismiss. InfoW Docket No. 50. The U.S. Trustee alleged, among other reasons, that the InfoW Cases were filed in bad faith and were engineered for the purpose of shielding Jones and FSS from liability. *Id*. at ¶ 36.

15. A status conference was held on April 29, 2022. At the status conference, the Court scheduled an evidentiary hearing for all three motions to dismiss for May 27, 2022.

16. On May 13, 2022, the Connecticut Plaintiffs filed a notice of dismissal with prejudice of claims against the InfoW Debtors in the United States Bankruptcy Court for the District of Connecticut. A status conference was scheduled for May 24, 2022, for the Connecticut Court to consider the Connecticut Plaintiffs' dismissal of the InfoW Debtors from the defamation lawsuits. InfoW Docket No. 98.

17. On May 18, 2022, the Texas Plaintiffs agreed to dismiss their claims against the InfoW Debtors in the defamation lawsuits filed in state court. On May 19, 2022, the Court entered the

"Stipulation and Order" which memorialized this agreement between the Texas Plaintiffs and the

InfoW Debtors. InfoW Docket No. 99.

**C. Lee and Schwartz begin to represent FSS in addition to the InfoW Debtors but do not inform the Court.**

18. On May 18, 2022, the InfoW Debtors filed an Emergency Motion to Continue Hearing

Date on Motion to Dismiss (the "Emergency Continuance Motion"). In the continuance request,

the InfoW Debtors represented that:

> Continuing the Original Hearing Date until June will also permit the CRO who
> has been engulfed in evaluating the dismissals with prejudice issues to now focus
> on the remaining creditors of the Debtors. The CRO will be able to evaluate either
> before or by the June hearing date whether he should proceed with trying to
> confirm a subchapter v plan of reorganization or handle these claims outside of
> bankruptcy. Again, such effort will be [sic] wise use of limited financial
> resources. Such an approach will also save valuable judicial resources.

InfoW Docket No. 95, at ¶ 21.

19. On the morning of May 19, 2022, Attorney Lee filed an Application to Employ KSLPLLC

as Attorneys for the Debtors (the "KSLPLLC Application"). InfoW Docket No. 97. The KSLPLLC

Application was accompanied by the InfoW Lee Declaration. InfoW Docket No. 97-1.

20. In the InfoW Lee Declaration, Attorney Lee affirmatively stated that he had no connections

with FSS and Jones. The InfoW Lee Declaration provided the following:

> KSLPLLC performed the following actions to determine whether it or any of its
> attorneys has any disclosable connections, to the Debtors, creditors, any other
> party in interest, their respect[sic] attorneys and accountants, the U.S. Trustee,
> any person employed in the office of the U.S. Trustee, or any of the judges for
> the Southern District of Texas. I conducted a search of KSLPLLC files to
> determine using the list of parties listed in Schedule I hereto whether the firm had
> any connections to or represented any of the parties listed on Schedule 1. The
> search revealed that the firm had not and did not presently represent any of the
> parties listed on Schedule 1.
>
> The results of the forging connections search process confirm that neither I,
> KSLPLLC, nor any of its employees or shareholders, to the best of my
> knowledge, have any disqualifying connections…the only connection to any of

6

the parties on Schedule 1 is by virtue of having represented the three Debtors
while a partner at PLR.

InfoW Docket No. 97-1, at ¶¶ 10-12.

21. Schedule I attached to the InfoW Lee Declaration included "Free Speech Systems LLC"
and "Alex Jones" as "Searched Parties." InfoW Docket No. 97-1. Attorney Lee signed and
executed the InfoW Lee Declaration on May 19, 2022. *Id*.

22. In the afternoon of May 19, 2022, the Court conducted a hearing on the Emergency
Continuance Motion. At the hearing, the Connecticut Plaintiffs and Texas Plaintiffs announced
that they were proceeding with their dismissal with prejudice of the InfoW Debtors as defendants
in both the Texas and Connecticut defamation lawsuits.

23. In consideration of parties working to finalize the state court dismissals with prejudice,
Attorney Lee requested additional time to respond to the U.S. Trustee's motion to dismiss the
InfoW Cases. Among the bases for the continuance was that the CRO needed additional time to
fulfill his fiduciary duties to the other creditors and Attorney Lee stated that "the other part that I
have to do is renegotiate the plan support agreement if the debtors intended to move forward with
respect to a small subchapter v plan." Tr. May 19, 2022, at 16, 21-24.

24. Based on the representations made by Attorney Lee, the Court reset the evidentiary hearing
for June 10, 2022. Towards the conclusion of the status hearing, Attorney Lee assured the Court
of the chief restructuring officer's commitment to the InfoW Debtors and stated the following:

> MR. LEE: I do want you to know that Mr. Schwartz in his fiduciary capacity is
> evaluating all alternatives.
>
> THE COURT: Oh, I'm sure he is.
>
> MR. LEE: I just want you to know that.

Tr. May 19, 2022, at 23, 13-16.

25. Despite those representations, according to CRO Schwartz, sometime on that same day, May 19, 2022, Attorney Lee asked CRO Schwartz to send an engagement letter to FSS outlining his retention as the CRO for FSS. CRO Schwartz prepared an engagement letter that day and it was sent via e-mail to Ray Battaglia, counsel for FSS. FSS Docket No. 14-4.

26. On May 26, 2022, Attorney Lee appeared on behalf of the InfoW Debtors at the Section 341 Meeting. The U.S. Trustee continued the creditors' meeting for one week, to June 2, 2022. As of May 26, 2022, there was no agreement between the U.S. Trustee and the InfoW Debtors to dismiss the InfoW Cases.

27. On June 1, 2022, the U.S. Trustee and the InfoW Debtors finalized a stipulated dismissal order. The stipulated dismissal order was submitted later that day.

28. On June 2, 2022, the InfoW Debtors, through Attorney Lee, filed a response to the U.S. Trustee's motion to dismiss. The InfoW Debtors asserted that, as of June 2, 2022, the InfoW Cases still served valid bankruptcy purposes, despite their agreement with the U.S. Trustee to dismissal just a day before. At the time of the response, both Attorney Lee and CRO Schwartz were providing services to FSS, but the InfoW Debtors stated that the CRO was "independent" and "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." InfoW Docket No. 112 at ¶¶ 6-7. The response did not mention any relationship between FSS and Schwartz or between Lee and FSS.

29. On June 10, 2022, the Court held a hearing on the motion to dismiss and allowed all parties to provide any comments. Neither Schwartz nor counsel for the InfoW Debtors, who both addressed the Court that day, informed the Court of any connections to FSS. The Court then entered the stipulated order dismissing the InfoW cases. InfoW Docket No. 114.

**D. During the FSS case, the Court and parties learn about Schwartz's and Lee's representation of FSS during the InfoW cases.**

30. On July 26, 2022, the damages phase of the defamation lawsuit against FSS and Jones began in Austin, Texas. On July 29, 2022, at the conclusion of the first week of trial in Austin, FSS filed for bankruptcy protection.

31. On that same day, CRO Schwartz filed a Declaration with the Court in support of the first day motions. Docket No. 10. In that Declaration, Schwartz informed the Court for the first time that "[o]n June 7, 2022, the Debtor confirmed my retention as the Debtor's Chief Restructuring Officer (the "CRO") and SALLC as its financial advisors as of May 19, 2022. *Id.* at ¶ 9. Schwartz also declared, "Since May 19, 2022, FSS has retained Schwartz as its Chief Restructuring Officer ("CRO"), with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized." *Id.* at ¶ 40. SALLC was retained to perform various accounting and forensic work associated with his mandate.

32.  On August 1, 2022, at the consent of FSS and the Texas Plaintiffs, the Court entered an order lifting the automatic stay and allowing the trial in Austin to proceed to judgment. Further, at this hearing, the Court expressed concerns about transparency in the bankruptcy process, specifically the May 19th engagement between CRO Schwartz and FSS while the InfoW Cases were pending. The Court asked the following:

> I need to understand as well, on May 19th, you were representing three debtors who are on the opposite side of a proposed plan support agreement. We never took action but you were also seeking retention from Free Speech at the same time? I don't think I ever knew about that.

33. On August 3, 2022, the Court conducted a cash collateral hearing (the "August 3rd hearing"). At the hearing, CRO Schwartz, who was now acting as the CRO for FSS, testified for several hours. Again, a point of concern raised by the Court was the nondisclosure of connections

between the estate professionals[3] in the InfoW Cases and FSS and Jones. The Court asked the

following:

> Let me get the question – I might as well ask it now because it's a good spot...I
> just need to understand it. On May 19th, there was a hearing before me where on
> May 18th, there was a request for a continuation on a motion to dismiss…and in
> this case, there is a letter dated by you to Free Speech dated the same day. I may
> be reading much into this, but it seems to me that you – either you wrote the letter
> that day or you had been in conversation with Free Speech before you wrote that
> – before that day you sent the letter. And I just need to understand – none of this
> was ever disclosed to me in connection with the case and the cases were dismissed
> on June the 10th officially, which tells me that Mr. Jones signed a retention letter.
> So, you were actively retained before these cases were dismissed – the last cases
> were dismissed – and I just need to understand, one, why that was never disclosed
> to me, and two, when did you begin to start soliciting or having conversations
> about representing Free Speech Systems…

Tr. August 3, 2022 at 147-148, 21:19.

In response to the Court's questions, CRO Schwartz stated that he could not recall the date but

assured the Court that conversations concerning the FSS engagement only occurred "after we had

been substantially convinced that we were going to be terminating the InfoWars bankruptcy." Tr.

August 3, 2022 at 149, 4-8.

34. After listening to several hours of testimony at the August 3rd Hearing and upon the Sandy

Hook Families' oral request for the formation of a tort claimant committee, the Court stated the

following:

> [T]here's been oral request for the appointment of a committee, and that can be
> done by the Court for cause. I'm not going to grant that today, but I am going to
> express some real concerns about what I heard, and I'll express what they are.
> You know, whether you realize it or not, Mr. Schwartz was negotiating on both
> sides of a deal.

Tr. August 3, 2022 at 239, 9:17.

---

[3] During CRO Schwartz's testimony, the Court indicated that it had concerns regarding Attorney Lee's retention by
FSS as well: "I [ask] Mr. Lee a few questions as well at some point, but I'll need to understand that as well, but today's
not that day. Today's cash collateral, and so I do want – and I know I took this off on a tangent." Tr. August 3, 2022,
at 150, 9-11.

35. Based on the testimony at the August 3rd Hearing, the Court further questioned the independence of S & L and CRO Schwartz at the outset of the present case as it relates to potential claims against Jones and other insiders:

> [T]he Debtor is going to have to make some tough decisions at some point. And it's going to have to really analyze those claims and see whether those claims have any merit…[and] I'm not sure that parties who were introduced in the last case could fill that role either. But the Debtor needs to hear that from me, and I think debtors are entitled, especially early on in a case, to think about what the judge may have to say. And these are certainly rare comments, but these are certainly uncommon cases.

Tr. August 3, 2022, at 241, 5-19.

36. On August 20, 2022, FSS filed applications to employ CRO Schwartz (the "Schwartz Application") as the Debtor's Chief Restructuring Officer and S & L as co-counsel. The S & L Application was accompanied by a declaration by Attorney Lee (the "FSS Lee Declaration"). The FSS Lee Declaration disclosed for the first time that "the first services any attorney of Shannon & Lee LLP provided to FSS occurred on May 24, 2022, were provided by me through Kyung S. Lee PLLC…" FSS Docket No. 85-3, ¶ 26.  Further, the S & L Application disclosed that "KSLPLLC received payment from the Debtor of $21,986.59 for services provided to FSS from May 24, 2022, through May 31, 2022." *Id*. at FN. 1.[4] Lastly, the FSS Lee Declaration provided that attorneys of S & L "represented the InfoW Debtors in the negotiations of the Plan Support Agreement under which FSS and Alex Jones committed to provide funding for the InfoW Debtors." *Id.* at 85-3, ¶ 15(b).

---

[4] FSS filed a Statement of Financial Affairs (the "SOFA") on August 29, 2022. FSS Docket No. 122. Question 11 on the SOFA requires disclosure of payments related to bankruptcy – "List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case." Payments to Shannon & Lee were identified, as of June 6, 2022, however, no payments in the amount of $21, 986.59 were recorded on FSS's SOFA.

37. In the Schwartz Application, FSS asserted that "the CRO and SALLC's mandate to 'lead InfoW's management and personnel through the restructuring process' had for all practical purposes concluded by May 19, and for sure by June 6." FSS Docket No. 83, ¶ 44.

38. On August 25, 2022, the Sandy Hook Plaintiffs filed a motion to request the appointment of a tort claimants committee and to remove the debtor-in-possession. The Sandy Hook Plaintiffs alleged, among other reasons, that CRO Schwartz mismanaged the estate resources for Jones' benefit and failed to disclose his connections to FSS while acting as the CRO for the InfoW Debtors. FSS Docket No. 102.

## OBJECTION

39. The S & L Application should be denied due to Attorney Lee's deficient disclosure of his connections to FSS and Jones in the related InfoW Cases. The disclosure process is self-policed by the professionals that appear before the Court, and when a disclosure violation occurs, it should be met with a strong rebuke. While this is an unusual scenario in that the KSLPLLC Application in the InfoW Cases was never heard and the InfoW Cases are now closed, the current case is related to the prior cases and includes substantially all the same players. To effectuate the disclosure mandates in Bankruptcy Rule 2014 and to address the prior nondisclosure, the Court should exercise its broad discretion under Section 327(a) to consider the prior acts of an S & L attorney in violation of the disclosure obligations and to deny the S & L Application in this related case.

**A. The Court has Broad Discretion under 11 U.S.C. § 327(a) in Deciding Whether to Approve an Application to Employ an Estate Professional.**

40. The Bankruptcy Code provides a uniform scheme for retaining and compensating court-authorized attorneys under 11 U.S.C. §§ 327-331, 503, and 507. Section 327 provides that the debtor-in-possession may employ, with the Court's approval, professionals who are disinterested and who do not hold or represent interest adverse to the estate. 11 U.S.C. §§ 327. In addition, the

12

applicants must also comply with Bankruptcy Rule 2014(a). *See In re Bechuck*, 472 B.R. 371, 375 (Bankr. S.D. Tex. 2012).

41. Section 327(a) of the Bankruptcy Code provides the Court with a wide latitude of discretion when professionals are seeking to work on behalf the bankruptcy estates. The statutory language of section 327(a) shows that Congress intended the bankruptcy court to have broad discretion in making its determination, as it provides that "the trustee [or debtor in possession, under 11 U.S.C. § 1107], with the court's approval *may* employ one or more [professionals]." [emphasis added]. Congress could not have more clearly stated that (i) no professionals, on any terms, can be employed without prior court authorization, and (ii) the court has broad discretion in deciding whether to approve or disapprove an employment application, and is not required to accept the proposed professional's application. The court may – or may not, in its sound discretion – approve a proposed employment application. *Cf. United States v. Rodgers,* 461 U.S. 677, 706 (1983) ("the word 'may,' when used in a statute, usually implies some degree of discretion").

42. Many decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a). *See, e.g.*, *In re Jackson*, 484 B.R. 141, 154 (Bankr. S.D. Tex. 2012) *citing Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995); *In re Bigler, LP*, 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010) ("This Court has substantial discretion to grant an application to employ a professional for the estate."); *Miller v. United States Trustee*, 197 F.3d 13, 17 (1st Cir. 1999) ("Bankruptcy courts historically have been accorded wide discretion to oversee the terms and conditions of a debtor's engagement of professionals[.]"); *Interwest Bus. Equip. v. United States Trustee*, 23 F.3d 311, 315 (10th Cir. 1994) ("[W]e will not second guess a decision not to approve professionals under § 327 unless it exhibits a clear abuse of discretion[.]"); *Harold & Williams Dev. Co.*, 977 F.2d 906, 909

(4th Cir. 1992) (the Bankruptcy Code "gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the . . . estate"); *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987) ("Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals."); *Elias v. Lisowski Law Firm (In re Elias)*, 215 B.R. 600, 603 (B.A.P. 9th 1997) ("A bankruptcy court's decision regarding an application for the employment of a professional is reviewed for abuse of discretion.").

43. The Court is not required to approve an application that satisfies the requirements of Section 327(a). "Even if the technical requirements of disinterestedness and not holding or representing an interest adverse to the estate are met, the Court has the discretion to deny the application." *In re LTHM Houston-Operations*, LLC, 2014 WL 5449737, at *5 (Bankr. S.D. Tex. 2014). Additionally, "while disinterestedness and the absence of conflicts may be central to the inquiry, they are by no means exclusive. Indeed, section 327(a) vests the authority for 'approval' within the sound discretion of the court. That authority would be eviscerated were the Court required to approve counsel who met the technical test for disinterest but was ill-suited for other reasons…" *In re Kurtzman,* 220 B.R. 538, 542 (S.D.N.Y. 1998).

44. In the exercise of its discretion under Section 327, the Court is instructed "into taking account the facts of a particular bankruptcy case and the overall objectives of the bankruptcy system." *LTHM Houston-Operations, at *5; see also Official Comm. of Unsecured Creditors v. Harris (In re Southwest Food Distribs., LLC)*, 561 F.3d 1106, 1112-13 (10th Cir. 2009) (bankruptcy court does not err in considering proposed compensation terms when ruling on employment application); *Harold & Williams Dev. Co.*, 977 F.2d at 910 (bankruptcy court must not "abdicate the equitable discretion granted to it," but must "take into account the facts of a

14

particular case and the overall objectives of the bankruptcy system")*; In re Kurtzman*, 220 B.R. 538, 540 (S.D.N.Y. 1998) (finding that the bankruptcy court did not abuse its discretion when it denied the retention of counsel based on "prior problems involving time records, billing errors, professional conduct, and overall costs of legal services that had led to its conclusion of loss of confidence in the firm"). Here, the requirements that professionals lay bare their connections play an integral part of the Court's function to determine a proposed professional's fitness to represent the bankruptcy estate. "Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *In re Downs*, 103 F.3d. 472, 480 (6th Cir. 1996). Bankruptcy courts must be able to expect the proposed professional appointed under 327 to disclose all connections and follow the applicable rules concerning disclosure. "Plainly, the Court will not approve the employment of counsel that does not comport with the applicable ethical and disciplinary regulations." *In re Doors & More Inc.*, 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991).[5]

## B. As Part of Their Duty to the Court and the Estate, Professionals Have a Continuing Duty to Disclose All Connections with Creditors and Parties in Interest.

45. Bankruptcy Rule 2014 imposes a complementary duty of disclosure on the applicant so that the Court and parties in interest can determine whether the professional satisfies disinterestedness requirements. Rule 2014 has one primary purpose—to facilitate strict

---

[5] In exercising discretion to deny an application to employ, "the bankruptcy court should interfere with the trustee's choice of counsel only in the rarest cases, such as when the proposed attorney has a conflict of interest, or when it is clear that the best interest of the estate would not be served by the trustee's choice." *In re Smith*, 507 F.3d 64, 71 (2d Cir. 2007)(internal quotations omitted). In the present case, the Court is not depriving the Debtor of its choice in counsel, notably because S & L is proposed co-counsel. If the Court denies the S & L Application, the Debtor continues to be represented by another counsel. While the Bankruptcy Code provides deference to a debtor's choice of counsel, that deference is not absolute. "In a Chapter 11 case, it is fundamental that a debtor in possession or a trustee is obligated to act not in his or her own best interest, but rather in the best interest of the entire estate, including the creditors and owners of the debtor estate." *In re Doors & More Inc.*, 126 B.R. 43 at 45. Here, the prior acts of an S&L attorney, namely the omissions of his connections to FSS and Jones, require the Court to take actions to preserve the integrity of the bankruptcy system and effectuate the disclosure mandates. The seriousness of the omissions and need to preserve the integrity of the system outweigh the Debtor's choice of counsel, especially when the Debtor is represented by co-counsel.

compliance with section 327. "[T]he requirements of Fed. R. Bankr. P. 2014 are more encompassing than those governing disinterestedness inquiry under section 327. For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed." *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994).

46. The applicant has the duty to disclose all relevant information to the court and "may not exercise any discretion to withhold information." *In re Woodcraft Studios, Inc.*, 464 B.R. 1, 8 (N.D. Cal. 2011). Thus, "professionals 'cannot pick or choose which connections are irrelevant or trivial.'" *U.S. v. Gallene*, 182 F.3d 578, 588 (7th Cir. 1999) (concluding that a misstatement in a Rule 2014 statement constitutes a material misstatement for purposes of 18 U.S.C. § 152). The duty to disclose under Bankruptcy Rule 2014 is ongoing, continues throughout the case, and "requires 'spontaneous, timely, and complete disclosure.'" *In re The Harris Agency*, 462 B.R. 514, 524 (E.D. Pa. 2011); *see also In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998)* (court should not have to "rummage through files or conduct independent fact-finding investigations" to determine whether the professional should be disqualified).

47. The disclosure requirements in Rule 2014 are "rooted in the fiduciary relationship between courts and attorneys." *In re Griffin*, 313 B.R. 757, 763 (Bankr. N.D. Ill. 2004). "Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *In re Downs*, 103 F.3d. 472, 480 (6th Cir. 1996). Applicants "who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012) (citations omitted). "[L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in

the end there was no prejudice." *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 664 (Bankr. N.D. Ill. 2001); *see also In re Rabex Amuru of N.C., Inc.*, 198 B.R. 892, 897 (Bankr. M.D.N.C. 1996) (attorneys for debtor removed because of appearance of impropriety, even though no harm done to debtor). Professionals must "be meticulous in disclosing 'all connections' with the debtor and other parties in interest, the failure to do so justifying a court's taking significant punitive or corrective action." *In re Byington*, 454 B.R. 648, 657 (Bankr. W.D. Va. 2011); *see also In re EBW Laser Inc.*, 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005) ("The Bankruptcy Court may, in its discretion, disqualify counsel, or deny compensation, as a sanction for failure to make the disclosure required.").

### C. In Exercising Its Broad Discretion, the Bankruptcy Court Should Deny the S & L Application Because of Attorney Lee's Failure to Affirmatively and Timely Disclose His Connections with FSS.

48. The defective disclosure in the InfoW Lee Declaration, which was a statement under penalty of perjury before the Court, is not a minor matter. It "goes to the heart of the integrity of the bankruptcy system." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005). "[T]he duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate." *Id.* As noted, Rule 2014 "is not intended to condone a game of cat and mouse where the professional seeking appointment provides only enough disclosure to whet the appetite of the UST, the court, and other parties in interest, and the burden shifts to those entities to make inquiry in an effort to expand the disclosure." *In re Matco Elec. Group, Inc.*, 383 B.R. 848, 853-54 (Bankr. N.D.N.Y. 2008).

49. Under the PSA and LST in the InfoW Cases, Jones and FSS were designated as the "Third Party Funders." The question regarding the validity of the PSA and LST, and the negotiations

surrounding the origination of these documents were contested issues at the center of the InfoW Cases. Unlike other plan support agreements in other chapter 11 cases, no creditors, including the Sandy Hook Plaintiffs, participated in the drafting or negotiations of the PSA and LST. The primary parties to those negotiations were the InfoW Debtors, FSS, and Jones. FSS was on the other side of the transaction from the InfoW Debtors. Even after the InfoW Debtors reached agreements with the Sandy Hook Plaintiffs, the InfoW Debtors did not agree to dismiss the case until June 1, 2022. Attorney Lee informed the Court on May 19, 2022, that he might have to renegotiate the PSA with FSS and Jones to pay the remaining creditors should the InfoW Debtors remain in bankruptcy.

50. Moreover, Attorney Lee had multiple opportunities to disclose to the Court his connections to FSS and Jones. After Attorney Lee was retained by FSS as counsel, the InfoW Debtors filed a response to the U.S. Trustee's motion to dismiss, maintaining that "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." FSS Docket No. 112, ¶ 7. The response is silent concerning the fact that just days before, Attorney Lee provided legal services for FSS and was employed as its bankruptcy counsel. Following the response on June 2, the Court conducted a hearing on the stipulation to dismiss in the InfoW Cases on June 10, 2022. Neither the CRO nor counsel for the InfoW Debtors, who both addressed the Court that day, informed the Court of any connections to FSS. By remaining silent, whether in pleadings, at hearings, or by failing to amend the InfoW Lee Declaration, Attorney Lee misrepresented his connections to the Court and violated the ethical duties of candor and diligence. *See* S.D. Tex. Local R., Appendix D. Guidelines for Professional Conduct; *see also In re Bradley*, 495 B.R. 747, 786 (Bankr. S.D. Tex. 2013)(Attorney's failure to correct misstatements demonstrated lack of candor and respect to the Court).

51. While noncompliance with Bankruptcy Rule 2014 may result in disqualification and/or total disgorgement of fees in the InfoW Cases, the transgressions in the InfoW Cases eclipsed the confines of Bankruptcy Rule 2014 because those cases are now dismissed. Bankruptcy Rule 2014 alone is not sufficient to address Attorney Lee's nondisclosure of his connections to FSS and Jones in the InfoW Cases. However, the integrity of the bankruptcy system requires that the Court address Attorney Lee's omissions of his connections to FSS and Jones in the InfoW Lee Declaration. Here, it is appropriate for the Court to exercise its broad discretion under Section 327(a) to address Attorney Lee's prior acts in the related cases—which this case is essentially a continuation of—and deny the S & L Application. Put simply, Attorney Lee did not inform the Court of his connections in a related case, involving the identical parties in interest. Attorney Lee was employed by FSS while he filed pleadings and made statements to the Court that indicated that all estate professionals including CRO Schwartz and Attorney Lee were independent and without outside influences. S & L should not be exempt from the consequences of the prior acts of its named partner attorney because the InfoW Cases were dismissed; especially when S & L, through the same attorney, is now seeking approval from this Court to be employed by FSS— thereby asking the Court to bless the very connection that Attorney Lee previously failed to disclose to the Court. To maintain the integrity of the bankruptcy system and to fully effectuate the mandatory disclosure requirements in Rule 2014, the Court should deny the S & L Application.

## CONCLUSION

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court deny the S & L

Application and grant such other relief as is just and proper.

RESPECTFULLY SUBMITTED:
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

DATED: 9/14/2022

*/s/ HA M NGUYEN*
Ha Nguyen, Trial Attorney
CA Bar #305411
FED ID NO. 3623593
United States Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
E-mail: Ha.Nguyen@usdoj.gov
Cell: 202-590-7962

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases, on the 14th day of September, 2022.

/s/ Ha M. Nguyen
Ha M. Nguyen