# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22 - 60043** |
| | § | |
| **DEBTOR.** | § | |
| | § | **Chapter 11 (Subchapter V)** |

## DEBTOR'S REPLY TO UNITED STATES TRUSTEE'S AMENDED OBJECTION TO THE APPLICATION OF DEBTOR FOR AN ORDER (A) AUHTORIZING EMPLOYMENT OF SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTOR, AND (B) GRANTING RELATED RELIEF

Free Speech Systems, LLC (the "Debtor" or "FSS"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, replies to the U.S. Trustee's amended objection [ECF. No. 154] (the "Objection") to the Application of Debtor for an Order (A) Authorizing Employment of Shannon & Lee LLP as Bankruptcy Co-Counsel for the Debtor and (B) Granting Related Relief [ECF No. 85] (the "S&L Application") as follows:

## PRELIMINARY STATEMENT

1. The U.S. Trustee does not dispute any of the allegations in the S&L Application or contend that S&L does not meet the requirement to be employed under Bankruptcy Code § 327(a). There is no disagreement that (a) S&L does not hold or represent any disqualifying adverse interest and is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14) (Application ¶¶ 21 & 26); (b) the FSS Lee Declaration disclosed all relevant connections in this case (Application ¶ 29); (c) S&L is well qualified and uniquely able to represent FSS in its chapter 11 case in an efficient and timely manner (Application ¶ 11); (d) the familiarity of S&L professionals with the Sandy Hook Litigation was particularly important to the Debtor as debtor in possession in the early parts of the case (Application ¶ 8); or (e) S&L's agreed terms of reimbursement,

compensation, and hourly rates are reasonable (Application ¶ 14). Nor does the U.S. Trustee assert that denial of the S&L Application would benefit the Debtor's estate or aid administration of the case.

2.      Instead, the basis for the Objection is that Kyung Lee did not supplement his declaration (the "IW Lee Declaration") in support of the IW Debtors' application to employ Kyung S. Lee PLLC ("KSLPLLC") in Case No. 22-60022 (the "IW Cases") in the four (4) business days between May 24, 2022, when Mr. Lee met with FSS regarding its potential restructuring, and June 1, 2022, when the U.S. Trustee and the IW Debtors agreed to the dismissal of the IW Cases.[1] The U.S. Trustee wants this Court to not only find that Mr. Lee's disclosure violated Bankruptcy Rule 2014, but also that the violation was so severe that it warrants what is in effect imposing a sanction in a *different* case by denying the application of a *different* Debtor to employ a *different* law firm. The U.S. Trustee's position is not supported by the law or facts.

3.      Bankruptcy Rule 2014 requires a verified statement disclosing connections to accompany an application to employ, and courts have held that Bankruptcy Code 327(a) implies that the obligation continues for professionals that are employed by or are seeking employment by the estate. But Mr. Lee and KSLPLLC were no longer seeking to be employed in the IW Debtors' cases when he began providing services to FSS on May 24, 2022.[2] After reaching agreements resolving the claims of the Connecticut Plaintiffs (on May 13, 2022) and the Texas Plaintiffs (on May 18, 2022), the IW Debtors decided to agree to dismiss their cases as demanded by the U.S.

---

[1] Of the seven (7) total days the trustee takes issue with, May 28-30, 2022, comprised the Memorial Day weekend. On May 25, Mr. Lee informed the U.S. Trustee and the Subchapter V Trustee by email that the IW Debtors intended to dismiss their case. A copy of this email is attached as Exhibit A hereto. On May 26, Mr. Lee attended the section 341 meeting of creditors for the IW Debtors, at which he informed the parties in attendance that the IW Debtors had decided to agree to the dismissal of their cases, as requested by the U.S. Trustee, and would work to effectuating such dismissal. On May 27, 2022, Mr. Lee was negotiating the stipulation of dismissal with the U.S. Trustee that was ultimately filed with the Court on June 1.

[2] Mr. Lee was not formally retained by FSS until June 6, 2022. The services provided by Mr. Lee in May 2022 were related to becoming familiar with FSS and its financial condition.

Trustee. By May 23, 2022, Mr. Lee had drafted a motion to dismiss the IW Cases. Mr. Lee was not at that time seeking to be retained as an estate professional in any meaningful way. IW Debtors had already decided not to employ Mr. Lee or any other professionals.

4.      Further, even if Mr. Lee was required by Bankruptcy Rule 2014 and Bankruptcy Code 327(a) to supplement his disclosure of connections despite the IW Debtors' decision to dismiss, that oversight would not justify denying *this* Debtor's application to employ Shannon & Lee LLP in *this* chapter 11 case. None of the authorities cited in the Objection support that position and the relief would be entirely unprecedented.[3] While the Court has discretion to consider factors beyond just compliance with Bankruptcy Code 327(a), that discretion should be reasonably applied. What matters is whether employing S&L benefits the Debtor's estate and furthers administration of its chapter 11 case. The U.S. Trustee does not dispute these issues favor approving the employment of S&L.

5.      Whether Mr. Lee's disclosures in the IW Cases were sufficient should be addressed separately from the Application. The procedurally proper way for the U.S. Trustee to raise the issue would be to reopen the IW Cases and seek sanctions against Mr. Lee. Inflicting collateral damage on the Debtor, its estate, and the administration of this chapter 11 case by denying the Application is entirely unjustified.

## ARGUMENT

### A.  Mr. Lee's Disclosures in the IW Cases Complied with Bankruptcy Rule 2014.

6.      Bankruptcy Rule 2014 requires applications to employ professionals to "be accompanied by a verified statement of the person to be employed setting forth the person's

---

[3] While this might seem like hyperbole, it is not. Attached as Exhibit B hereto is a summary and analysis of each of the twenty-seven cases cited in the Objection. Not a *single* case cited in the Objection supports what the U.S. Trustee asks the Court to do here.

connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." As the U.S. Trustee states in the Objection, the "one primary purpose" of these disclosures is "to facilitate strict compliance with section 327." Objection ¶ 45.

7. Although the text of Bankruptcy Rule 2014 does not require continuing disclosures, courts have held that Bankruptcy Code § 327 implies this obligation. *See, e.g.*, *In re C & C Demo, Inc.*, 273 B.R. 502, 507 (Bankr. E.D. Tex 2001) (holding that although Rule 2014(a) does not expressly require supplemental or continuing disclosure, duty is implied pursuant to § 327); *In re Keller Fin. Serv. of Florida*, 243 B.R. 806, 813 (Bankr. M.D.Fla. 1999) (duty of continuing disclosure under Rule 2014(a) is implied by requirements of § 327); *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) (Section 327(a) implies a duty of continuing disclosure and requires professionals to reveal connections that arise after their retention.). The reasoning is that ongoing disclosures are necessary to ensure that the professionals that have been retained remain conflict free. The Fifth Circuit Court of Appeals has adopted this reasoning and held that professionals employed or seeking employment as estate professionals must "to promptly notify the court if any potential for conflict arises." *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005).

8. No court has held that Bankruptcy Rule 2014 requires ongoing disclosure by persons that are *not* seeking to be employed as an estate professional, such as when a case has been That makes sense—the "one primary purpose" of the disclosures required under Bankruptcy Rule 2014 no longer exists when the professional will not be employed under Bankruptcy Code § 327. The U.S. Trustee is asking for the Court to create law, not apply it.

9.     When Mr. Lee met with FSS on May 24, 2022, the IW Debtors had already determined to dismiss their chapter 11 cases when Mr. Lee first provided services to FSS. At that time the IW Debtors were no longer seeking to employ KSPLLC or any other party in interest as an estate professional. By May 18, 2022, the IW Debtors had effectively resolved all the claims of the Texas Plaintiffs [*see* Case No. 22-60020, Dkt No. 96] and the Connecticut Plaintiffs [*see* Case No. 22-60020, Dkt. No. 98]. Soon after the IW Debtors determined that continuing their cases in the face of the U.S. Trustee's continued opposition did not benefit the IW Debtors or their remaining creditors. By Monday, May 23, 2022, Mr. Lee had drafted a motion to dismiss the IW Debtors' bankruptcy cases.[4] And Mr. Lee promptly informed the U.S. Trustee by email on May 25, 2022, and other parties in interest at the 341 meeting on Thursday, May 26, 2022, that the IW Debtors intended to seek dismissal of their cases. Mr. Lee then promptly negotiated a stipulation of dismissal with the U.S. Trustee that was finalized and filed with the Court on June 1, 2022.

10.     Under these circumstances, Mr. Lee did not have an obligation to supplement his disclosures related to the IW Debtors' application to employ KSLPLLC. On May 24, the IW Debtors were no longer seeking to employ KSLPPC or Mr. Lee under Bankruptcy Code § 327(a). The statute therefore did not imply a duty to provide further disclosures at that time. The Objection presents cites no authority to the contrary.

11.     If the U.S. Trustee believed that ongoing disclosure of connections in the IW Cases was necessary to maintain the integrity of the bankruptcy process, the motion to dismiss those cases should have been withdrawn. The thrust of the U.S. Trustee's motion to dismiss—that the IW Cases were a litigation tactic—no longer applied because the Texas Plaintiffs and the Connecticut Plaintiffs no longer asserted claims against the IW Debtors. Supplemental disclosures

---

[4] A copy of an email from Mr. Lee to Marc Schwartz, Christian Schwartz, and Harold Lee of Schwartz & Associates LLC reflecting that Mr. Lee had drafted a motion to dismiss the IW Cases is attached as <u>Exhibit C</u> hereto.

would have of course been necessary if the IW Cases had continued and the IW Debtors sought to employ KSLPLLC. But the U.S. Trustee opposed the IW Debtors remaining in bankruptcy the cases and the IW Debtors believed that the expense of that fight would outweigh any benefit. Ultimately, the U.S. Trustee's demands are the reason that a supplemental disclosure by Mr. Lee was not necessary.[5]

**B. Even *if* Mr. Lee Should Have Supplemented His Disclosures in the IW Cases, the Debtor's Application to Employ Shannon & Lee LLP in this Case Should Be Approved.**

12.     Of course, the sufficiency of Mr. Lee's disclosure of KSLPLLC's connections related to the IW Debtors' application to employ KSLPLLC in their cases is not the issue that the Court has to decide in the Application. The issue before the Court is whether it should authorize FSS to employ Shannon & Lee LLP as bankruptcy co-counsel in this chapter 11 case. The Court should reject the U.S. Trustee's improper request to indirectly punish Mr. Lee through this contested matter and grant the Application.

13.     The U.S. Trustee does not dispute that the Application and S&L meet all the requirements of Bankruptcy Code 327(a) and Bankruptcy Rule 2014 for employment in the Debtor's chapter 11 case. Nor does the U.S. Trustee dispute the allegations in the Application that (a) S&L does not hold or represent any disqualifying adverse interest and is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14) (Application ¶¶ 21 & 26); (b) Mr. Lee's declaration in this chapter 11 case disclosed all relevant connections in this case (Application ¶ 29); (c) S&L is well qualified and uniquely able to represent FSS in its chapter 11 case in an

---

[5] As indicated in the May 17, 2022, email from Jayson Ruff to Mr. Lee, attached hereto as <u>Exhibit D</u>, the U.S. Trustee's took the position in the IW Cases was that the remaining creditors—including holders of administrative claims—should be paid outside of the bankruptcy process from FSS and/or Alex Jones. That the U.S. Trustee now complains that "the Court never had the opportunity to rule on [KSLPLLC's] employment application in the InfoW Cases" is nothing but hypocrisy.

efficient and timely manner (Application ¶ 11); (d) the familiarity of S&L professionals with the Sandy Hook Litigation was particularly important to the Debtor as debtor in possession in the early parts of the case (Application ¶ 8); or (e) S&L's agreed terms of reimbursement, compensation, and hourly rates are reasonable (Application ¶ 14). Most importantly, the U.S. Trustee does not contend that Debtor's employment of S&L is not the best interests of the Debtor's bankruptcy estate or useful to administration of the chapter 11 case.

14. *Every* decision that the U.S. Trustee cites in the objection that is relevant to the topic indicates that the effect on the bankruptcy estate and administration of the case are the proper considerations that should guide the Court's discretion. The most clearly relevant include:

a. *In re LTHM Houston-Operations, LLC*, 2014 WL 5449737 (Bankr. S.D. Tex. 2014)—In *LTHM*, the U.S. Bankruptcy Court for the Southern District of Texas held that it "is instructed to exercise its discretion by taking into account the facts of a particular bankruptcy case and the overall objectives of the bankruptcy system. Section 327(a) acknowledges that the purpose of the professional's employment is to represent or assist the trustee in carrying out the trustee's duties under this title. Accordingly, the Court must consider whether the benefits of employing [the professional] exceed the potential impact it may have on the trustee's ability to fulfill his duties to the estate." *Id.* at *5 (internal citations and quotation marks omitted).

b. *In re Bigler, LP*, 422 B.R. 638 (Bankr. S.D. Tex. 2010)—In *Bigler*, the U.S. Bankruptcy Court for the Southern District of Texas considered an application to employ an investment bankruptcy firm that included a "tail period" provision under which the proposed professional would receive compensation even if the debtors consummated a transaction after terminating the employment agreement. The court held that in exercising its broad discretion, the court "focuses on whether the proposed terms are reasonable." *Id.* at 643.

c. *In re Smith*, 507 F.3d 64 (2d Cir. 2007)— As directly quoted in the Objection, the Second Circuit Court of Appeals reasoned in *Smith* that "[i]n exercising its approval function, however, the bankruptcy court should interfere with the trustee's choice of counsel only in the rarest cases, such as when the proposed attorney has a conflict of interest, or when it is clear that the best interest of the estate would not be served by the trustee's choice." *Id.* at 71.

d. *Harold & Williams Dev. Co.*, 977 F.2d 906 (4th Cir. 1992)—The Fourth Circuit Court of Appeals was even more clear in *Harold & Williams*, instructing that "once the trustee meets the burden of demonstrating that an applicant for professional employment is qualified under § 327 . . . the discretion of the bankruptcy court must be exercised in a

way that it believes best serves the objectives of the bankruptcy system. Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding." *Id.* at 910 (internal citations omitted).

The U.S. Trustee does not present a single case that even *suggests* that the Court should exercise its discretion to deny an application to employ a professional that meets the requirements of Bankruptcy Code § 327 because the circumstances created by the U.S. Trustee's demand for immediate dismissal in a previous case is contrary to his new-found appreciation and desire for the disclosures that would have been required absent such dismissal.[6]

15.     Denying the Debtor's Application to employ Shannon & Lee LLP would harm the Debtor's bankruptcy estate and hinder administration of this chapter 11 case. Although Mr. Battaglia is an excellent bankruptcy attorney—as he has demonstrated several times in this case—this matter is not a one-man job. And retaining any other attorney would not possess the significant knowledge and experience of the Debtor and the relevant litigation for which the Debtor retained S&L in this case. Again, the U.S. Trustee does not assert otherwise in the Objection.

**C. If the Court Determines that Some Action Should Be Taken in this Chapter 11 Case to Address Mr. Lee's Disclosures in the IW Cases, the Debtor Submits that the Court Should Limit Shannon & Lee LLP's Compensation in this Case by an Appropriate Amount Considering the Novelty of the Issue.**

16.     The U.S. Trustee is in effect seeking a sanction against Mr. Lee for actions related to a different case, for a different client, and for a different law firm with the Debtor as collateral damage. *See, e.g.*, *In re EBW Laser, Inc.*, 333 B.R. 351, 359-60 (Bankr. M.D.N.C. 2005) ("The Bankruptcy Court may, in its discretion, disqualify counsel, or deny compensation, as a sanction for failure to make the disclosure required by Rule 2014.") (quoted by the U.S. Trustee); *In re*

---

[6] The U.S. Trustee has not filed any motion to enforce Bankruptcy Rule 2019 in these cases, so disclosure and transparency appear to be important to the U.S. Trustee only sometimes.

*Granite Partners, L.P.*, 219 B.R. 22, 41 (Bankr. S.D.N.Y. 1998) (analyzing disqualification for failure to disclose connections as a sanction). That request is inappropriate, is not supported by applicable law, and should be denied.

17.     However, if the Court concludes that Mr. Lee's disclosure in the IW Cases was deficient and that some action should be taken in *this* chapter 11 case, the Debtor submits that a reasonable action would be that the compensation for S&L allowed in this case should be reduced by the compensation received by KSLPLLC received from FSS prior to June 1, 2022. These amounts total $24,409.09.[7]

18.     In the alternative, *In re Byington*, 454 B.R. 648 (Bankr. W.D. Va. 2011), may present a framework for an appropriate way to address any failure by Mr. Lee to disclose connections in the IW Cases. In *Byington*, the attorney for two individual chapter 11 debtors did not disclose payments from the debtors' son—against whom the estate had potential avoidance action claims—that were used to pay the debtors' filing fee. *Id.* at 660. Although the court determined that the attorney's disclosures were insufficient, it declined to deny the debtors' application to employ the attorney because of the apparent novelty of the issue and instead ruled that compensation would not be approved for the attorney's services relating to correcting the deficiency or in asserting that the disclosure was not required. *Id.* Here, the U.S. Trustee's assertions are entirely unprecedented.

19.     While not justified, either of these options would better proportioned to the conduct that the U.S. Trustee asserts violated Bankruptcy Rule 2014—Mr. Lee not disclosing his meeting with FSS in the four (4) business days that elapsed before the filing of the stipulation of dismissal

---

[7] A copy of KSLPLLC's invoice for the period from May 24, 2022, to May 31, 2022, is attached hereto as <u>Exhibit E</u>.

in the IW Cases—than denying the Application and derailing the Debtor's chapter 11 case. If the Court takes any action, it should be a measured one.

## **CONCLUSION**

20.     If the U.S. Trustee believes that Bankruptcy Rule 2014 required Mr. Lee to disclose his meeting with FSS in the IW Cases, even though the IW Debtors had at that time agreed to the U.S. Trustee's own motion to dismiss, there is a way to raise that issue. But it is not in objecting to the employment of a different law firm, by a different debtor, in a different case.  There is no dispute that S&L meets the requirements for employment or that its employment will benefit the estate and administration of this chapter 11 case. The Application should therefore be granted.

*[Remainder of Page Intentionally Left Blank]*

Dated: September 16, 2022

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/ *Raymond W. Battaglia*

Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Co-Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/ *R. J. Shannon*

Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor-in-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served (a) at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and (b) within one hour of filing, by email on the following parties:

Ha Nguyn
OFFICE OF THE U.S. TRUSTEE
515 Rusk Ave, STE 3516
Houston, TX 77002
Ha.Nguyen@usdoj.gov

Melissa Haselden
SUBCHAPTER V TRUSTEE
700 Milam, Suite 1300
Houston, TX
mhaselden@haseldenfarrow.com

Randy W. Williams
BYMAN & ASSOCIATES PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

Elizabeth Freeman
JACKSON WALKER LLP
1401 McKinney St., Suite 1900
Houston, TX 77010
efeeman@jw.com

Ryan Chapple
CAIN & SKARNULIS PLLC
303 Colorado Street, Suite 2850
Austin, TX 78701
rchapple@cstrial.com

Avi Moshenberg
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Jarrod B. Martin
CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS, & AUGHTRY, PC
1200 Smith Street, Suite 1400
Houston, Texas 77002
jarrod.martin@chamberalinlaw.com

*/s/R. J. Shannon*
R. J. Shannon

# EXHIBIT A

**Subject:** InfoW\Update

**Date:** Wednesday, May 25, 2022 at 12:29:13 PM Central Daylight Time

**From:** Kyung S. Lee <klee@kslpllc.com>

**To:** Ruff, Jayson B. (USTP) <Jayson.B.Ruff@usdoj.gov>, Nguyen, Ha (USTP) <Ha.Nguyen@usdoj.gov>, Melissa Haselden <mhaselden@haseldenfarrow.com>

**CC:** Marc Schwartz <mschwartz@schwartzassociates.us>, Christian Schwartz <cschwartz@schwartzassociates.us>, Harold Lee <hlee@schwartzassociates.us>, Cameron Atkinson <catkinson@pattisandsmith.com>


Marc Schwartz and I wanted to report to the group as follows:

1. The Texas Plaintiffs and Debtors agreed on Stipulations of Dismissals last week. Judge Lopez approved them last Thursday. Judge Mott signed orders remanding cases earlier this week. The Texas Plaintiffs are no longer creditors or hold claims against the Debtors.
2. The removal Connecticut Bankruptcy Court held a status conference yesterday. Connecticut Plaintiffs are to submit orders of dismissal by Thursday 5.26.22. Judge Manning said she would sign them Friday 5.27.22. Debtors are to submit dismissals of motions to remove by Monday 5.30.22.
3. Marc has instructed me to file Motions to Dismiss the Chapter 11 Cases on Tuesday 5.31.22 and eliminate any continuing administrative expenses.
4. We have a conflict as to the 341 Meeting of Creditors for tomorrow and the Debtors will not have a representative attend.

Thanks.

**Kyung S. Lee**
Kyung S. Lee PLLC
Cell: 713-301-4751
klee@kslpllc.com

# **EXHIBIT B**

**Summary and Analysis of Cases Cited by the U.S. Trustee in the Objection**

| No. | Cases Cited in the Objection | Summary and Analysis |
|---|---|---|
| 1 | *United States v. Rodgers*, 461 U.S. 677, 706 (1983). | Overview:<br><br>*Rodgers* involved an appeal of a decision holding that government could seek a sale, under the Internal Revenue Code of 1954, 26 U.S.C.S. § 7403, of only the respondent delinquent taxpayers' interests in their property and not the entire property.<br><br>Analysis:<br><br>The U.S. Trustee cites this case for the proposition that courts have entirely unbound discretion to approve or decline to approve an application of a chapter 11 debtor in possession to employ a professional that meets the statutory requirements and quotes in a parenthetical that " 'the word 'may,' when used in a statute, usually implies some degree of discretion[.]" (Objection ¶ 41).<br><br>The Court should ignore the U.S. Trustee's spin on the Supreme Court's language. As the immediately following sentence in Rodgers indicates, "[t]his common-sense principle of statutory construction is by no means invariable, however,  . . . and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute. . . ." While bankruptcy courts do have *some* discretion to consider factors beyond technical compliance with Bankruptcy Code § 327 that are germane to the purposes of Bankruptcy Code § 327, the discretion is not unlimited and should be guided by precedent. Precedent indicates that it is the interests of the estate and administration of the bankruptcy case that are relevant to that discretion. |
| 2 | *In re Jackson*, 484 B.R. 141, 154 (Bankr. S.D. Tex. 2012). | Overview:<br><br>*Jackson* involved the request by a chapter 7 trustee to employ his law firm under Bankruptcy Code § 327(a) to represent him in his role as trustee of the bankruptcy estate and, in particular prosecuting potential patent infringement actions. The court denied the application without prejudice because (a) the description of the need for retention of the particular attorney on this matter was insufficient, (b) the disclosure of connections did not describe any search of potential defendants in the patent matters, and (c) the application was not adequate for the Court to determine that the attorney selected was in the best interests of the estate as required for a trustee to retain his own firm.<br><br>Analysis:<br><br>The U.S. Trustee cites this case for the proposition that "[m]any decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a)." (Objection ¶ 42). However, *Jackson* held that the application at issue did not meet the requirements |

| | | under Bankruptcy Code § 327 or Bankruptcy Rule 2014. The Trustee does *not* assert that the Debtor's Application to employ S&L fails to meet this requirement. |
|---|---|---|
| 3 | *In re Bigler, LP*, 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010). | Overview:<br><br>*Bigler* involved an application to employ an investment banking firm that included a "tail period" provision under which the firm would receive compensation if the debtors consummated a transaction within 12 months after termination of the agreement. The court approved the application to employ the investment banker despite the because of the testimony of the debtors' CRO that the terms were negotiated and because compensation was subject to approval under section 330.<br><br>Analysis:<br><br>The U.S. Trustee cites this case for the proposition that "[m]any decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a)." (Objection ¶ 42). While this decision does support such discretion, the court specifically states that "[i]n exercising this discretion, this Court focuses on whether the proposed terms are reasonable." |
| 4 | *Miller v. United States Trustee*, 197 F.3d 13, 17 (1st Cir. 1999). | Overview:<br><br>*Miller* was an appeal of a bankruptcy court's order disqualifying debtor's counsel and disgorging retainers and fees after the debtor's counsel violated the retention order by drawing against the retainer and receiving post-petition payments in violation of the court's order. The attorney argued on appeal that drawing against the retainer was proper and that the bankruptcy court abused its discretion by ordering disgorgement of all fees. The First Circuit Court Appeals affirmed the bankruptcy court's ruling.<br><br>Analysis:<br><br>The U.S. Trustee cites this case for the proposition that "[m]any decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a)." (Objection ¶ 42). The First Circuit Court of Appeals did reason that "[b]ankruptcy courts historically been accorded wide discretion to oversee the terms and conditions of a debtor's engagement . . . ." However, the reasoning of the Court of Appeals was also based on the bankruptcy court's "continuing authority to revisit an order employing a particular attorney to represent a debtor." The facts are also entirely inapposite. |
| 5 | *Interwest Bus. Equip. v. United States Trustee*, 23 F.3d 311, 315 (10th Cir. 1994). | Overview:<br><br>*Interwest* involved an appeal of a bankruptcy court's denial of an application to employ debtor's counsel. The bankruptcy court denied the application to employ the attorney because of a conflict of interest arising from the attorney's representation multiple debtors who held claims against one another. The bankruptcy court had determined that there was an actual conflict of interest that required representation by separate counsel. The Tenth Circuit Court of Appeals affirmed the decision of the bankruptcy court.<br><br>Analysis: |

|   |   |   |
|---|---|---|
|   |   | The U.S. Trustee cites this case for the proposition that "[m]any decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a)." (Objection ¶ 42). The Tenth Circuit Court of Appeals did conclude that it would not "second guess" a decision not to approve professionals under section 327 "unless it exhibits a clear abuse of discretion, circumstances not present in the case at hand." However, the discretion that the bankruptcy court in *Interwest* exercised was regarding whether the representation of multiple debtors created an *actual* conflict. Further, the Tenth Circuit also reasoned that the discretion was "to ensure professionals are disinterested and do not represent interests adverse to the estate" rather than the unprincipled discretion the U.S. Trustee seeks in the Objection. |
| 6 | *Harold & Williams Dev. Co.*, 977 F.2d 906, 909 (4th Cir. 1992). | Overview:<br><br>*Harold* involved an appeal of a bankruptcy court's decision to deny the application of a single person to serve as both lawyer and accountant for the estate. The bankruptcy court ruled that there was a per se rule against the employment of a single person in both rules. The district court rejected the imposition of the per se rule but held that the bankruptcy court did not abuse its discretion. The Fourth Circuit Court of Appeals reversed the lower decisions, holding that there was no per se rule and that the bankruptcy court abused its discretion.<br><br>Analysis:<br><br>The U.S. Trustee cites this case for the proposition that "[m]any decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a)." (Objection ¶ 42). The Fourth Circuit Court of Appeals did conclude that bankruptcy courts had discretion but further stated that:<br><br>Thus, once the trustee meets the burden of demonstrating that an applicant for professional employment is qualified under § 327, *see* Bankr. Rule 2014(a), the discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system. Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding. *Cf. In re BH & P*, 949 F.2d at 1316.<br><br>*Harold* stands for the proposition that what matters is the interests of the bankruptcy estate and its creditors. The U.S. Trustee does not dispute that employment of S&L is in best interest of the debtor and its estate. That is directly contrary to the U.S. Trustee's position in the Objection. |

| 7 | *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987). | Overview: |
|---|---|---|
| | | *Martin* involved a novel factual situation. To pay for their legal services pre-petition, the debtors delivered a note secured by a second lien on the debtors real property. The note was outstanding when the debtors filed for chapter 11 relief. The case was converted to chapter 7 and there was an objection to the attorney's fees because it was not a disinterested party by way of the secured note. The bankruptcy court allowed the attorney's compensation (subject to non-allowable compensation) but invalidated the note and lien. The First Circuit Court of Appeals determined that there was no per se rule that applied and remanded the matter to the bankruptcy court to determine whether the attorney's security interest was allowable under the particular facts. |
| | | Analysis: |
| | | The U.S. Trustee cites this case for the proposition that "[m]any decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a)." *See* Objection ¶ 42.  The First Circuit Court of Appeals stated—as partially quoted by the U.S. Trustee—that "[h]istorically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals." The Court of Appeals also noted that "horrible imaginings alone cannot be allowed to carry the day." |
| | | *Martin* does not support the U.S. Trustee's overall position in the Objection. The discretion at issue in Martin was with respect to the factual determination of whether the attorney was a disinterested person. The U.S. Trustee does not dispute that S&L is disinterested. |
| 8 | *Elias v. Lisowski Law Firm (In re Elias)*, 215 B.R. 600, 603 (B.A.P. 9th 1997). | Overview: |
| | | *Elias* involved a post-bankruptcy fee dispute in which an attorney employed in a bankruptcy case sought to enforce its rights in state court after dismissal of the debtor's bankruptcy case. The Ninth Circuit BAP summarized the facts as follows: |
| | | After the debtor's chapter 11 case was dismissed, her bankruptcy attorney filed a state-court lawsuit against her for $ 10,000.00 of unpaid chapter 11 attorney's fees. The debtor filed a motion for summary judgment in the state-court action, arguing that her former attorney was not entitled to any fees because he had secured his employment in the bankruptcy case fraudulently by failing to disclose his prior connection with the debtor, the fee he received for the bankruptcy retainer, or his receipt of a potential $ 3,000.00 preference from the debtor on the eve of filing. |
| | | Prior to ruling on the motion for summary judgment, the state court requested that the bankruptcy court rule upon the viability of the attorney's lien, the status of the attorney's employment in the bankruptcy case, and whether a preference claim against the attorney could affect his ability to collect a fee. |

<table>
<tr>
<td></td>
<td></td>
<td>

Pursuant to the state court's request, the debtor filed a motion in the bankruptcy court seeking to vacate the order authorizing counsel's employment, cancel the attorney's lien, and determine that counsel was not entitled to any fees.

Exercising its discretion, the bankruptcy court denied the debtor's motion. The bankruptcy court also found that it had no jurisdiction to enter further orders concerning the disputed fees. The debtor appealed.

The Ninth Circuit BAP affirmed the decision of the bankruptcy court.

Analysis:

The U.S. Trustee cites this case for the proposition that "[m]any decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a)." *See* Objection ¶ 42.  While the Ninth Circuit Court of Appeals stated in dicta that the appellate standard of review for a bankruptcy court decision with respect to an application to employ, its holding was that the bankruptcy court lacked jurisdiction:

We are not satisfied either that the bankruptcy court had jurisdiction to grant the relief requested by the Debtor, or that there has been a showing that the bankruptcy court abused its discretion in refusing to reopen the dismissed case in order to review pending state-court issues concerning disputed attorneys' fees. We therefore AFFIRM the decision of the bankruptcy court.

*Elias* does not support the U.S. Trustee's overall position in the Objection.

</td>
</tr>
<tr>
<td>9</td>
<td>

*In re LTHM Houston-Operations, LLC*, 2014 WL 5449737, at *5 (Bankr. S.D. Tex. 2014).


2014 Bankr. LEXIS 4495, at *1 (Bankr. S.D. Tex. Oct. 24, 2014).

</td>
<td>

Overview:

The issue presented in *LTHM* was wither Bankruptcy Code § 327(a) & (d) necessarily precluded the employment of a consulting firm with which the chapter 7 trustee had a significant professional relationship. The chapter 7 trustee sought to hire his firm as his financial advisor and accountant. The court ultimately re-set the hearing on the application to focus on the benefits and risks created by the firm's employment.

Analysis:

The U.S. Trustee quotes the following language from *LTHM*:

- "Even if the technical requirements of disinterestedness and not holding or representing an interest adverse to the estate are met, the Court has the discretion to deny the application." (Objection ¶ 43).
- In the exercise of its discretion under Section 327, the Court is instructed "into taking account the facts of a particular bankruptcy case and the overall objectives of the bankruptcy system." (Objection ¶ 44).

However, the U.S. Trustee leaves out the following paragraph of the opinion that indicates the considerations that guide the exercise of that discretion:

</td>
</tr>
</table>

<table>
<tr>
<td></td>
<td></td>
<td>

The Court is instructed to exercise its discretion by taking into account "the facts of a particular bankruptcy case and the overall objectives of the bankruptcy system." *Id.* at 10. **Section 327(a) acknowledges that the purpose of the professional's employment is "to represent or assist the trustee in carrying out the trustee's duties under this title." 327(a). Accordingly, the Court must consider whether the benefits of employing Claro exceed the potential impact it may have on the trustee's ability to fulfill his duties to the estate.**

(emphasis added).

*LTHM* does not support the U.S. Trustee's position in the Objection. As that case indicates, the discretion of the court to consider issues beyond technical compliance with Bankruptcy Code § 327 are about the benefit to the estate. The U.S. Trustee does not dispute that employment of S&L is in the best interests of the Debtor's estate or administration of its chapter 11 case.

</td>
</tr>
<tr>
<td>10</td>
<td>*In re Kurtzman*, 220 B.R. 538, 542 (S.D.N.Y. 1998).</td>
<td>

Overview:

*Kurtzman* involved appeals related to a chapter 7 trustee's applications to (a) employ his law firm in several cases because the court determined that employment of the trustee's firm was not in the best interest of the estates based on the court's prior dealings with the firm and (b) an unrelated firm because the rates it charged were too high. The U.S. District Court for the Southern District of New York affirmed the decisions.

Analysis:

The U.S. Trustee quotes the following language from *Kurtzman:*

- Additionally, "while disinterestedness and the absence of conflicts may be central to the inquiry, they are by no means exclusive. Indeed, section 327(a) vests the authority for 'approval' within the sound discretion of the court. That authority would be eviscerated were the Court required to approve counsel who met the technical test for disinterest but was ill-suited for other reasons…" (Objection ¶ 43).
- . . . finding that the bankruptcy court did not abuse its discretion when it denied the retention of counsel based on "prior problems involving time records, billing errors, professional conduct, and overall costs of legal services that had led to its conclusion of loss of confidence in the firm") (Objection ¶ 44).

However, the U.S. Trustee conspicuously leaves out the example of the "other reasons" that *Kurtzman* identifies are proper to guide the bankruptcy court's discretion and breezes over the facts at issue in that case. The full sentence that the U.S. Trustee partially quotes in paragraph 43 of the Objection is: "That authority would be eviscerated were the Court required to approve counsel who met the technical test for disinterest but was ill-suited for other reasons **such as, for example, inexperience**." (emphasis added). Further, *Kurtzman*, like

</td>
</tr>
</table>

6

| | | every other case, makes clear that the other factors that courts should consider in exercising of discretion relate to what was in the best interests of the bankruptcy estate: |
|---|---|---|
| | | By its very nature, the "best interest of the estate" under § 327(d) is a concept that affords the court considerable discretion in making evaluations and comparisons regarding the performance of counsel. In light of this discretion, the Court below was entitled to rely on its own first-hand observations and, based on those observations, to draw its own conclusions regarding professional performance. Here, the presiding judge was in a unique position to observe the conduct of counsel over a significant period of time, and to compare counsel's performance with that of other attorneys performing similar work. The Court articulated and specified its concerns, which admittedly were of a conclusory nature, and afforded Appellant an opportunity to respond. Since the "right" that Appellant seeks to vindicate rests in the final analysis with the discretion of the Court, we cannot conclude that the hearing afforded Appellant failed to meet constitutional standards. |
| | | *Kurtzman* does not support the U.S. Trustee's position in the Objection. There is no dispute that it is in the best interests of the Debtor's bankruptcy estate to retain S&L and that doing so will further administration of the Debtor's chapter 11 case. |
| 11 | *Official Comm. of Unsecured Creditors v. Harris (In re Southwest Food Distribs., LLC)*, 561 F.3d 1106, 1112-13 (10th Cir. 2009). | <u>Overview:</u><br><br>*Harris* involved the denial of an official committee's application to employ counsel. The bankruptcy court denied the retention of counsel because the rates that were significantly higher than the prevailing local rates and there was no evidence that the case required national counsel. The committee appealed. The Tenth Circuit Court of Appeals affirmed the Bankruptcy Court's decision.<br><br><u>Analysis:</u><br><br>The U.S. Trustee cites *Harris* with a parenthetical that the case stands for the proposition that consideration of compensation terms was not reversible error. That is an accurate representation of the holding in *Harris* but it is inapposite to the Debtor's chapter 11 case here. The U.S. Trustee does not dispute that S&L's fees are reasonable. |

| | | |
|---|---|---|
| | *In re Downs*, 103 F.3d. 472, 480 (6th Cir. 1996). | Overview:<br><br>Among other issues, *Downs* involved an appeal of a bankruptcy court's order imposing sanctions on an attorney for failing to disclose his fee arrangement with the debtor, which was paid by a creditor, as required by Bankruptcy Code § 329 and Bankruptcy Rule 2016. The Sixth Circuit Court of Appeals affirmed the sanctions.<br><br>Analysis:<br><br>The U.S. Trustee quotes the following language from *Downs*: "Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." (Objection ¶¶ 44 & 47). But *Downs* does not deal with Bankruptcy Code § 327 or Bankruptcy Rule 2014. The case is inapplicable to the issue in the Application. |
| 12 | *In re Doors & More Inc.*, 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991). | Overview:<br><br>In *Doors & More*, the bankruptcy court denied an application to employ counsel. The application to employ the attorney contained numerous problems, including it was not signed by the Debtor, did not state the reasons for the attorney's section, and did not indicate whether the attorney had any present connections with any of the creditors. Based on those and other issues, the bankruptcy court determined that (a) the attorney could not provide competent representation to the estate, (b) it would not be in the best interest of the estate for the court to approve the attorney's appointment, and (c) the attorney's appointment would not aid in administration of the case.<br><br>Analysis:<br><br>The U.S. Trustee quotes the following language from *Doors & More*:<br>   &bull;  "Plainly, the Court will not approve the employment of counsel that does not comport with the applicable ethical and disciplinary regulations." (Objection ¶ 44).<br>   &bull;  "In a Chapter 11 case, it is fundamental that a debtor in possession or a trustee is obligated to act not in his or her own best interest, but rather in the best interest of the entire estate, including the creditors and owners of the debtor estate." (Objection ¶ 44, n.5).<br><br>The ethical issues presented in *Doors & More* was where the attorney could provide competent representation. According to the bankruptcy court:<br><br>    Both the Michigan Rules of Professional Conduct and the best interest of a bankruptcy estate require that the attorney selected to represent the estate must be able to provide competent representation. In a Chapter 11 case, an attorney can provide competent representation to the estate only if the attorney is thoroughly familiar with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Bankruptcy, and especially Chapter 11 bankruptcy, is a highly specialized area of law. An attorney for a debtor in possession must have expert knowledge of bankruptcy law in order to achieve a successful result. Experience indicates that a business that files a Chapter 11 case, by definition, is already in |

| | | trouble. Although competent counsel can by no means insure a successful reorganization, incompetent counsel will almost certainly insure failure. Only an attorney with expert knowledge of bankruptcy law can properly aid in the administration of the case.<br><br>The U.S. Trustee does not dispute that S&L is familiar with bankruptcy and competent to represent the Debtor in its chapter 11 case. |
|---|---|---|
| 13 | *In re Smith*, 507 F.3d 64, 71 (2d Cir. 2007). | <u>Overview:</u><br><br>In *Smith*, the chapter 7 trustee obtained an order to remove the debtor's preferred choice of special personal injury counsel and denied the debtor's motion to dismiss the chapter 7 case. The district court and the Second Circuit Court of Appeals affirmed the bankruptcy court's ruling.<br><br><u>Analysis:</u><br><br>The U.S. Trustee quotes the following language from *Smith*: "[T]he bankruptcy court should interfere with the trustee's choice of counsel only in the rarest cases, such as when the proposed attorney has a conflict of interest, or when it is clear that the best interest of the estate would not be served by the trustee's choice." (Objection ¶ 44, n.5). *Smith* is ***directly*** contrary to the U.S. Trustee's position in the Objection.<br><br>Indeed, *Smith* is also instructive on the considerations beyond simply compliance with Bankruptcy § Code 327 that are appropriate to guide the Court's discretion:<br><br>    Thus, section 327(a) does not give a bankruptcy court authority to reject a trustee's choice of counsel solely because of an objection by the debtor. Rather, the debtor's objection is relevant only to a bankruptcy court's consideration of the best interest of the estate, or of whether the chosen special counsel is conflicted.<br><br>    Applying these principles here, we find no error in the Bankruptcy Court's determination that there were "no circumstances" that would give it reason to interfere with Geltzer's decision to remove Schwartz as special personal injury counsel. There was no indication or allegation that the attorney with whom Geltzer chose to replace Schwartz was conflicted or unqualified to litigate the personal injury action, and ample evidence supported the Bankruptcy Court's conclusion that the best interest of the estate would not be served by requiring Geltzer to continue to be represented by Schwartz, including, inter alia, Schwartz's delay in amending the state court caption and his transferring the personal injury file to Ginsberg without court or trustee approval. Indeed, the only factor weighing in favor of rejecting Geltzer's motion was Smith's preference to have Schwartz and Ginsberg prosecute the personal injury action. But that preference alone is insufficient to turn this into one of the "rarest cases" in which interference with the trustee's choice could be justified. |

| | | |
|---|---|---|
| | | As *Smith* indicates, the relevant factors guiding courts' discretion are (a) the best interest of the estate, (b) the qualifications of the proposed attorney, and (c) and whether the chosen counsel has a conflict. The U.S. Trustee does object to S&L's employment on any of those grounds. |
| 14 | *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994). | Overview: <br><br> *Leslie Fay* involved the failure of the chapter 11 debtor's counsel to disclose connections with potential targets of litigation by the debtor and the debtor's seventh largest creditor. The bankruptcy court appointed an examiner and the examiner determined that the attorney was not disinterested in the matter. The United States trustee for the district sought to disqualify the attorney on the grounds of failure to disclose the connections under Bankruptcy Rule 2014 and because the attorney was not disinterested. The bankruptcy court found that the attorney represented interests that were materially adverse at the time of its retention and failed to properly disclose its connections under Bankruptcy Rule 2014. The bankruptcy court determined that the best interests of the estate warranted (a) allowing the attorney to complete the services it had begun and see the case through reorganization and finish the pending contested matters and adversary proceedings, while requiring replacement counsel to handle new matters and (b) imposing an economic sanction in the amount of the costs of the examiner's investigation and the failure to disclose. <br><br> Analysis: <br><br> The U.S. Trustee quotes the following language from *Leslie Fay:* "[T]he requirements of Fed. R. Bankr. P. 2014 are more encompassing than those governing disinterestedness inquiry under section 327. For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be de minimis must be disclosed." (Objection ¶ 46). As set out in the Reply, however, this disclosure is required of professionals who are employed by the bankruptcy estate or seeking to be employed by the bankruptcy estate. The attorney at issue in *Leslie Fay* was employed by the debtor pursuant to Bankruptcy Code § 327(a). The facts are not the same as those present here and the case does not support the U.S. Trustee's position. |
| 15 | *In re Woodcraft Studios, Inc.*, 464 B.R. 1, 8 (N.D. Cal. 2011). | Overview: <br><br> In *Woodcraft Studios*, the bankruptcy court denied a fee application filed by the attorney to a chapter 11 debtor after the case was converted to chapter 7 and ordered the disgorgement of the prepetition retainer. The attorney affirmatively stated in the application to employ and Bankruptcy Rule 2014 disclosure that the attorney did not represent the debtor prior to the petition date or have any connections to parties in interest in the case. After conversion, the bankruptcy court determined that the attorney represented and received fees from the debtor prior to the petition date. On appeal, the U.S. District Court for the Northern District of California affirmed the bankruptcy court's ruling |

| | | |
|---|---|---|
| | | **Analysis:**<br><br>The U.S. Trustee quotes the following language from *Woodcraft Studios*: The applicant has the duty to disclose all relevant information to the court and "may not exercise any discretion to withhold information." (Objection ¶ 46). However, the opinion goes on the state the following:<br><br>    "The purpose of such disclosure is to permit the Court and parties in interest to determine whether the connection disqualifies the applicant from the employment sought, or whether further inquiry should be made before deciding whether to approve the employment. This decision should not be left to counsel, whose judgment may be clouded by the benefits of the potential employment." *In re Lee*, 94 B.R. 172, 176 (Bankr. C.D. Cal.1988).<br><br>*Woodcraft Studios* does not stand for the proposition that Bankruptcy Rule 2014 imposes a duty to supplement disclosures of connections after the professional is no longer seeking to be retained in the bankruptcy case. It does not support the U.S. Trustee's position in the Objection that Mr. Lee's disclosures were deficient. |
| 16 | *U.S. v. Gallene*, 182 F.3d 578, 588 (7th Cir. 1999). | **Overview:**<br><br>*Gallene* involved a criminal case in which the district court entered convictions and sentences against a bankruptcy attorney for knowingly and fraudulently making a false material declaration in a bankruptcy case. A jury returned verdicts finding that attorney for a chapter 11 debtor failed to disclose connections of his firm to a debtor's senior secured creditor and related parties. The issue was raised among the attorney's firm two months before the debtor filed bankruptcy and the bankruptcy court held hearings about other connections that were disclosed in the attorney's 2014 declaration. When the court ordered the attorney to file a supplemental declaration, the connection with the senior secured creditor were still not disclosed.<br><br>**Analysis:**<br><br>The U.S. Trustee quotes the following language from *Gallene*: "Thus, 'professionals "cannot pick or choose which connections are irrelevant or trivial."'" (Objection ¶ 46). However, other portions of the same paragraph from which the U.S. Trustee draws its quotation indicates that the obligation to disclose connections is limited:<br><br>    The Bankruptcy Code requires that attorneys ***who seek to be employed as counsel for a debtor*** apply for the bankruptcy court's approval of that employment. See In re Crivello, 134 F.3d 831, 835-36 (7th Cir. 1998). ***Bankruptcy Rule 2014 requires the potential attorney for the debtor*** to set forth under oath any "connections with the debtor, creditors, [and] any other party in interest." Fed. R. Bankr. P. 2014(a).<br><br>*Gallene* does not support the U.S. Trustee's position in the Objection. |

| 17 | *In re The Harris Agency*, 462 B.R. 514, 524 (E.D. Pa. 2011). | Overview: |
|---|---|---|

Overview:

In *Harris Agency* the attorney for a chapter 11 debtor failed to disclose that a creditor had agreed to pay the attorney's fees for representing the debtor and that the debtor had agreed to repay the amounts advanced by that creditor. The bankruptcy court entered an order disqualifying the attorney from further representation of the debtor in the chapter 11 case but did not disqualify the attorney from the beginning of the case. In connection with a subsequent fee application, the court found that the attorney had also previously entered an appearance for a non-debtor affiliate of the debtor prior to disqualification. The bankruptcy court entered a second order disqualifying the attorney as of the date of the conflicting representation, partially disallowing fees and expenses, and mandating disgorgement of fees received in excess of the amount allowed. The U.S. District Court for the Eastern District of Pennsylvania affirmed the bankruptcy court's rulings.

Analysis:

The U.S. Trustee quotes the following language from *Harris Agency*: "The duty to disclose under Bankruptcy Rule 2014 is ongoing, continues throughout the case, and 'requires 'spontaneous, timely, and complete disclosure.'" (Objection ¶ 46). A more complete quote is as follows:

> ***Attorneys who seek approval by the court to represent a debtor, pursuant to § 327(a),*** must file an application for employment that complies with the disclosure requirements of Rule 2014. Rule 2014(a) requires that "[t]he application shall state . . . to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest," and "shall be accompanied by a verified statement . . . setting forth the person's connections with the debtor, creditors, [and] any other party in interest . . . ." The duty to disclose under Rule 2014 ***continues throughout an attorney's representation of the debtor***, and requires "spontaneous, timely, and complete disclosure . . . ." Rome v. Braunstein, 19 F.3d 54, 59 (1st Cir. 1994).

Again, the U.S. Trustee cherry-picks quotes to arrive at a misleading result. *Harris Agency* does not support the U.S. Trustee's position.

| 18 | *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998). | Overview: |
|---|---|---|

Overview:

In *Granite Partners*, the attorney retained by a chapter 11 trustee retained the attorney to represent the estate represented a larger creditor that was an investigation target in five open matters that were not disclosed in the attorney's Bankruptcy Rule 2014 disclosures. During the course of the attorney's representation of the chapter 11 trustee, the attorney opened approximately 400 additional matters for the creditor resulting in $9 million in fees that it did not disclose. The matter was not disclosed until the attorney filed its final fee application and the bankruptcy court appointed a fee examiner who determined that the attorney represented interests adverse to the estate. The bankruptcy court denied all of the attorney's fees related to investigative services and reduced the fee award by 15% for non-investigative disclosures.

| | | |
|---|---|---|
| | | Analysis: |
| | | The U.S. Trustee cites *Granite Partners* for the proposition that "[t]he duty to disclose under Bankruptcy Rule 2014 is ongoing, continues throughout the case, and requires spontaneous, timely, and complete disclosure" and the parenthetical that "court[s] should not have to 'rummage through files or conduct independent fact-finding investigations' to determine whether the professional should be disqualified." (Objection ¶ 46). |
| | | However, the *Granite Partners* makes clear that the purpose of Bankruptcy Rule 2014 disclosures is "***to determine qualification under section 327***." The attorney in *Granite Partners* was employed as an estate professional and further was sanctioned only to the extent necessary to prevent compensation for matters on which the attorney could not be retained under section 327. Nothing in *Granite Partners* supports sanctioning a *different* law firm in a *different* case for the actions of an attorney that was not, at the time of the asserted non-disclosure, seeking to be retained by the bankruptcy estate. The case does not support the U.S. Trustee's position in the Objection. |
| 19 | *In re Griffin*, 313 B.R. 757, 763 (Bankr. N.D. Ill. 2004). | Overview: |
| | | In *Griffin*, the attorney to a chapter 7 debtor sought payment from the estate for post-petition services provided to the debtor. The attorney was never retained by the chapter 7 trustee. Additionally, the debtors took a post-petition loan to pay the attorney's fees for work related to redeeming the debtor's vehicle (pursuant to a prepetition retainer agreement). The bankruptcy court held that the fees were not allowable, were not properly disclosed pursuant to Bankruptcy Code § 329 or Bankruptcy Rule 2016, and had to be disgorged if already paid. |
| | | Analysis: |
| | | The U.S. Trustee quotes the following language from *Griffin*: "The disclosure requirements in Rule 2014 are 'rooted in the fiduciary relationship between courts and attorneys.'" (Objection ¶ 47). The U.S. Trustee appears to misrepresent the following language from *Griffin* in the Objection: |
| | | Section 329 of the Code and Rule 2016(b) are rooted in the fiduciary relationship between courts and attorneys. |
| | | In any event, as important as Bankruptcy Rule 2014 may be, that is not a reason to use the important requirement as a club against this Debtor as requested by the U.S. Trustee. |
| 20 | *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012). | Overview: |
| | | In *American International Refinery*, the liquidating trustee in a chapter 11 case brought an adversary proceeding against the chapter 11 debtors' former attorneys seeking disgorgement of fees during the bankruptcy. The bankruptcy court ordered a sanction of $135,000 for the attorney's failure to adequately |

| | | disclose various connections it had to the debtors and creditors, but found that the attorney did not have a disqualifying adverse interest and did not disgorge the remaining $607,000 that the attorney received in the case. The liquidating trustee appealed. The Fifth Circuit Court of Appeals affirmed the decision of the bankruptcy court.<br><br>Analysis:<br><br>The U.S. Trustee quotes the following language from *American International Refinery*: "Applicants 'who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation.'" (Objection ¶ 47).<br><br>Again, considering the broader language from which the U.S. Trustee derived its quotation is necessary to understand what the case actually said:<br><br>    Courts may deny all compensation to professionals who fail to make adequate disclosure, and "counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *West Delta Oil*, 432 F.3d at 355 (quotation marks omitted); *see also Rome v. Braunstein*, 19 F.3d 54, 59-60 (1st Cir. 1994) ("Absent the spontaneous, timely and complete disclosure required by section 327(a) and [Rule] 2014(a), court-appointed counsel proceed at their own risk."). In determining an appropriate sanction, an important consideration is whether the failure was intentional. *Crivello*, 134 F.3d at 839 (stating that "a bankruptcy court should punish a willful failure to disclose the connections . . . as severely as an attempt to put forth a fraud on the court.").<br><br>*American International Refinery* supports the proposition that *if* Mr. Lee had failed to disclose his connections with FSS in the IW Cases, been employed by the IW Debtors' bankruptcy, and sought compensation, the Court would have discretion to deny such requested fees. Because of the U.S. Trustee's insistence on dismissing the IW Cases, that never happened. The Fifth Circuit's decision does not support for the U.S. Trustee's position in the Objection. |
| 21 | *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 664 (Bankr. N.D. Ill. 2001). | Overview:<br><br>In *Midway*, in connection with a final fee application after conversion of a case from chapter 11 to chapter 7, counsel for a chapter 11 debtor sought compensation that included amounts due under an undisclosed contingency fee arrangement, and attorney lien claim. The U.S. trustee and certain creditors objected to the fee application because of the failure to disclose the connections under Bankruptcy Rule 2014 and the waiver implied thereby. The bankruptcy court allowed only approximately 55% of the attorney's fees, considering, among other things, the period of time it took the attorney to make the disclosure and the certain prejudice to the estate caused by such non-disclosure. The bankruptcy court disallowed the attorney lien claim. |

<table>
<tr>
<td></td>
<td></td>
<td>

Analysis:

The U.S. Trustee quotes the following language from *Midway*: "'[L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end there was no prejudice.'" (Objection ¶ 47). The context of the quote is as follows:

> Trittipo argues that the lack of disclosure has not caused any prejudice to the estate in general. This argument ignores the objective of requiring disclosure. The objective of requiring disclosure is not so much to protect against prejudice to the estate, but to ensure undivided loyalty and untainted advice from professionals. *Crivello*, 134 F.3d at 836. That is why lack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end there was no prejudice. *Filene's Basement*, 239 B.R. at 849. Trittipo's lack of prejudice argument is relevant, however, in assessing the amount of disallowance, which is discussed below. *See Diamond Mortgage*, 135 B.R. at 96.

*Midway* does not support the U.S. Trustee's position in the Objection. There is no dispute that S&L has disclosed relevant connections in the Debtor's chapter 11 case. The decision does not indicate that a professional who is no longer seeking to be retained as an estate professional has an obligation to supplement disclosures. Nor does the decision indicate that a failure of an attorney in a previous case, for a different client, at a different law firm, should be disqualifying.

</td>
</tr>
<tr>
<td>22</td>
<td>

*In re Rabex Amuru of N.C., Inc.*, 198 B.R. 892, 897 (Bankr. M.D.N.C. 1996).

</td>
<td>

Overview:

*Rabex* involved an application by a chapter 11 debtor to employ an attorney. There was a dispute about the ownership of the equity interests in the debtor between to potential parent companies and the debtor was a named defendant in related state court litigation. One of these parent companies paid the retainer for the debtor's proposed attorney, was continuing to make the attorney's payment during the chapter 11 case, and authorized the bankruptcy filing. The bankruptcy court determined that these facts created the appearance of a conflict of interest sufficient that the attorney was not a disinterested person despite the lack of any wrongdoing by the attorney.

Analysis:

The U.S. Trustee cites *Rabex* for the proposition that "[l]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end there was no prejudice" and indicates in the parenthetical that "attorneys for debtor removed because of the appearance of impropriety, even though no harm done to the debtor[.]'" (Objection ¶ 47). That is not an accurate representation of what the case stands for—there was no issue with disclosure in Rabex and the bankruptcy court held that being paid by one of the disputed owners of the debtor amounted to attorney no longer being a disinterested person.

In any event, the facts of *Rabex* are not relevant to the Trustee's position in the Objection.

</td>
</tr>
</table>

15

| 23 | *In re Byington*, 454 B.R. 648, 657 (Bankr. W.D. Va. 2011). | Overview: |
|---|---|---|

The relevant issue in *Byington* was whether there was an obligation to disclose a pre-filing transfer by the debtors' son for the filing fee for the chapter 11 case. The bankruptcy court held that the pre-filing transfer from the debtors' son should have been disclosed. Because of the novelty of the issue, however, the bankruptcy court held that the failure to disclose the payment was not sufficient to deny the application to employ the attorney but that the attorney would not be entitled to compensation for correcting the deficiency or in asserting that the disclosure was not required.

Analysis:

The U.S. Trustee quotes the following language from *Byington*: "Professionals must 'be meticulous in disclosing 'all connections' with the debtor and other parties in interest, the failure to do so justifying a court's taking significant punitive or corrective action." (Objection ¶ 47)

Again, looking at the context of the language quoted by the U.S. Trustee makes clear that this obligation only applies to professionals who are actively seeking to be employed by the estate:

> Published bankruptcy court decisions are quite consistent in requiring that debtors-in-possession and their attorneys, ***whose employment is sought to be approved***, be meticulous in disclosing "all connections" with the debtor and other parties in interest, the failure to do so justifying a court's taking significant punitive or corrective action.

*Byington* does not support the U.S. Trustee's position that Mr. Lee was required to supplement his disclosure for KSLPLLC after the IW Debtors had decided to dismiss their cases, as demanded by the U.S. Trustee, and no longer intended to pursue Mr. Lee's employment as an estate professional. It certainly does not support the U.S. Trustee's position that this should be imputed on *this* Debtor seeking to employ S&L in *this* chapter 11 case.

Moreover, *Byington* suggests what would be an appropriate action for the Court to take here if it determines that Mr. Lee's disclosure of connections in the IW Cases was deficient: Like the bankruptcy court in *Byington* did, the Court should simply not allow Mr. Lee compensation for asserting the disclosure was not required. Denial of the Debtor's application to employ S&L and harm to the Debtor's estate and administration if its chapter 11 case is not called for here.

| 24 | *In re EBW Laser Inc.*, 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005). | Overview: |
|---|---|---|

In EBW Laser, an attorney was retained as special counsel to a chapter 11 debtor on a contingency fee basis to pursue litigation against a third-party. The chapter 11 case was converted to a case under chapter 7 and the chapter 7 trustee, acting as his own counsel, negotiated a settlement with the defendant in which the bankruptcy estate received a cash payment. The attorney submitted an application for compensation based on the

contingency fee agreement under which he was retained in the chapter 11 case. The bankruptcy court rejected the attorney's argument for contingency fees but held that the attorney was entitled to reasonable compensation for the post-petition, pre-conversion services provided as a chapter 11 administrative expense claim.

Among the issues raised by the chapter 7 trustee in his objection to the attorney's fee application was that the attorney inadequately disclosed the terms of the prepetition engagement of the attorney by the debtor. The attorney claimed that there was a side agreement that was essential to the chapter 7 trustee's ultimate settlement but that side agreement was not disclosed. Although the bankruptcy court held that the attorney's affidavit provided largely met the requirements of Bankruptcy Rule 2014, the court reduced the compensation awarded to the attorney by $3,000 (10%) because of the failure to disclose the side agreement.

<u>Analysis</u>:

The U.S. Trustee quotes the following language from *EBW Laser*: "The Bankruptcy Court may, in its discretion, disqualify counsel, or deny compensation, as a sanction for failure to make the disclosure required." (Objection ¶ 47). While the quoted language was contained in the opinion, that is not what the bankruptcy court did.

*EBW Laser* also demonstrates that what the U.S. Trustee is seeking through the Objection is in fact a sanction. The Application in *this* case by *this* Debtor is not the appropriate place for the U.S. Trustee to seek or the Court to impose that sanction.

| 25 | *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005). | <u>Overview</u>: <br><br> In *eToys*, a shareholder and administrative claimant of a chapter 11 debtor, and the U.S. trustee filed motions seeking various relief against attorneys and consultants for the debtor and committee, including disgorgement of fees. Certain of the motions were settled or addressed for procedural reasons while others were decided on the merits. Among other things, the bankruptcy court found that the debtor's attorney had a disqualifying conflict and failed to adequately disclose that connection. The bankruptcy court ordered the attorney's fees paid in the case for matters related to that conflict to be disgorged. <br><br> <u>Analysis</u>: <br><br> The U.S. Trustee quotes the following language from *eToys* in the Objection: <br><br> It "goes to the heart of the integrity of the bankruptcy system." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005). "[T]he duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure **by an attorney seeking employment** is indispensable to the court's discharge of its duty to **assure the attorney's eligibility for employment under section 327(a)** and to make an informed decision on whether the engagement is in the best interest of the estate." *Id.* |
| --- | --- | --- |

17

| | | |
|---|---|---|
| | | (Objection ¶ 48) (emphasis added). The very language quoted by the U.S. Trustee in the Objection indicates that the reasoning does not apply to Mr. Lee under the facts present here. *eToys* does not support the U.S. Trustee's position in the Objection. |
| 26 | *In re Matco Elec. Group, Inc.*, 383 B.R. 848, 853-54 (Bankr. N.D.N.Y. 2008). | <u>Overview:</u><br><br>In *Matco*, the U.S. trustee field a motion seeking to disallow and disgorge fees paid to former counsel to the an official committee in a chapter 11 case. In its Bankruptcy 2014 declaration accompanying the application to employ the attorney, it disclosed that one of the members of its firm was related to an officer and shareholder of one of the debtor's significant creditors. The U.S. trustee asserted that the disclosure was insufficient. The bankruptcy court agreed that the disclosure of the connection was purposely vague and reduced the attorney's final fees by one-half of the amount of holdback of interim fees awarded in the case.<br><br><u>Analysis:</u><br><br>The U.S. Trustee quotes the following language from *Matco*:<br><br>As noted, Rule 2014 "is not intended to condone a game of cat and mouse where the ***professional seeking appointment*** provides only enough disclosure to whet the appetite of the UST, the court, and other parties in interest, and the burden shifts to those entities to make inquiry in an effort to expand the disclosure."<br><br>(Objection ¶ 48). Again, the language that the U.S. Trustee decided to quote in the Objection indicates that the obligation to make disclosures only applies to professionals that are seeking to be employed as estate professionals. *Matco* does not support the U.S. Trustee's position that a professional is obligated to supplement disclosures under Bankruptcy Rule 2014 after the debtor has decided to agree with the U.S. trustee to dismiss its case and the professional is no longer seeking employment (or compensation) in the case. |
| 27 | *In re Bradley*, 495 B.R. 747, 786 (Bankr. S.D. Tex. 2013). | <u>Overview:</u><br><br>In *Bradley* the bankruptcy court imposed on an attorney, his firm, and the attorney's assistant because (a) the attorney allowing his non-lawyer assistant to prepare conversion schedules and statement of financial affairs and file such documents without requiring the debtors to review and sign them and (b) the attorney allowed an unprepared appearance attorney to represent the debtors at section 341 meetings without disclosing the amount paid to such attorney.<br><br><u>Analysis:</u><br><br>The U.S. Trustee cites *Bradly* for the proposition that "[b]y remaining whether in pleadings, at hearings, or by failing to amend the InfoW Lee Declaration, Attorney Lee misrepresented his connections to the Court and violated the ethical duties of candor and diligence" with the parenthetical explanation that an "[a]ttorney's failure to correct misstatements demonstrated a lock of candor and respect to the Court). (Objection ¶ 50). |

With such a bold statement one might think that the U.S. Trustee would have equally bold support. But the facts at issue in *Bradley* are just as inapposite as every other authority cited by the U.S. Trustee in the Objection. The conduct that the bankruptcy court found violated ethical duties in *Bradley* were as follows:

> [Attorney] breached Guideline D in at least the following respects: (1) he filed the Defective Pleadings without obtaining the Debtors' signatures, [Finding of Fact Nos. 25(a), 32(b), 35(b)]; (2) he allowed his legal assistant (i.e., Gutierrez) to forge the Debtors' original signatures on the Defective Pleadings, [Finding of Fact Nos. 25, 31, 32(b), 34]; (3) he instructed Gutierrez to file the Initial Conversion Schedules, the Initial Conversion SOFA, the Amended Conversion Schedules, and the Amended Conversion SOFA despite knowing that those documents contained inaccuracies or knowing that he had not checked to confirm that the information contained therein was entirely accurate, [Finding of Fact Nos. 32(c), 36]; (4) he failed to inform the Debtors that Carter would represent them at their meetings of creditors, [Finding of Fact No. 38(d)]; (5) he did not prepare Carter for either of the Debtors' meetings of creditors, [Finding of Fact Nos., 38, 53]; (6) he filed, or allowed to be filed, an incorrect Rule 2016 Disclosure, [Finding of Fact No. 37]; and (7) he failed to own up to these transgressions until after the Chapter 7 Trustee brought them to the attention of the Court. Each of these actions alone is cause for concern; taken together, they seriously undermine Aduwa's personal integrity and professional reputation.

In turn, Mr. Lee did not amend his Bankruptcy Rule 2014 disclosures in the three (3) business days after first meeting with FSS because the IW Debtors had decided to agree with the U.S. Trustee to dismiss their cases and were no longer seeking to retain Mr. Lee as an estate professional.

# **EXHIBIT C**

**Subject:** InfoW\Motion to Dismiss Chapter 11 Cases

**Date:** Monday, May 23, 2022 at 8:25:59 PM Central Daylight Time

**From:** Kyung S. Lee <klee@kslpllc.com>

**To:** Marc Schwartz <mschwartz@schwartzassociates.us>, Christian Schwartz <cschwartz@schwartzassociates.us>, Harold Lee <hlee@schwartzassociates.us>

**Attachments:** InfoW_MotiontoDismissChapter11Cases_5_23_22_8PM.docx

Everyone: Here is a first draft of the Motion to Dismiss the Chapter 11 Cases. Please review and provide me your comments. I would like to at least have in my mind know that we have done what we were supposed to have done as fiduciaries for the 3 debtors and have concluded with the CRO that dismissal is the route to go and is in the best interest of the Debtors, their estates and creditors.

I would like to file this Motion to Dismiss by Wednesday and skip the 341 Meeting of Creditors on Thursday, which will be more waste of fees and expenses of these 3 debtors for the CRO and his professionals.

**Kyung S. Lee**
Kyung S. Lee PLLC
**Pennzoil Place**
**700 Milam-Suite 1300**
**Houston, Texas 77002**
Email: klee@kslpllc.com
**Cell: (713) 301-4751**
Alternate Email: kslee50@gmail.com

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# **EXHIBIT D**

| | |
|---|---|
| **Subject:** | InfoW |
| **Date:** | Tuesday, May 17, 2022 at 8:34:29 AM Central Daylight Time |
| **From:** | Ruff, Jayson B. (USTP) |
| **To:** | kslee50@gmail.com |
| **Attachments:** | image001.png |

***Settlement Communication Subject to FRE 408***

Kyung,

Following on our conversation yesterday, please let me know when you have had a chance to discuss these matters with Marc. As I mentioned yesterday, the UST still believes that the best option is for these cases to be dismissed and we intend to push forward with our motion. That will include getting discovery from your client. I have been holding off on doing that at your request, but time is running very short so we will need to resolve these matters very soon or you will need to give me a date early next week for a deposition of Marc. As set forth in our pleadings, these cases have the badges of a bad faith filing. Even with all of the Sandy Hook Plaintiffs "leaving the party" so to speak, that does not change how these cases arrived. I understand that there are a few creditors that remain, but each of those can be paid following dismissal and payment agreements could be made outside of bankruptcy.

A few things to consider:

- I would note that according to the schedules filed by these Debtors, Mr. Jones and FSS (the "Jones Parties") are co-liable for all of the Debtors' remaining debts. Given that the Jones Parties are also the primary source of funding for these Debtors' cases, they can agree to fund payment of these claims outside of bankruptcy as well.
- Inside of bankruptcy, it would appear that because Mr. Jones was taking royalty payments that belonged to IWHealth prepetition, that Debtors' estates would have claims against Mr. Jones for the return of those funds anyway. Another reason for the Jones Parties to agree to pay the Debtors' remaining creditors outside of bankruptcy. I am sure the royalty payments he received exceeds the amount of the Debtors' remaining debts.
- The Jones Parties are the primary funding sources for Debtors inside of and outside of bankruptcy. They have already committed $725k toward resolving the claims of these Debtors. Is there any reason why those funds could not be used to pay the remaining creditors of the Debtor following dismissal? Seems like that amount may be more than enough. Continuing in the bankruptcy will likely require significantly more funding.
- Based on the declarations filed with the petitions and statements made in court, it appears these Debtors are simply holding companies with no operations to speak of. What is there to even reorganize? Seems that dismissal or possibly conversion even are the better options for these Debtors. Although, I understand that conversion would mean that the Jones Parties ability to use the IP held by the Debtors may then be at risk. Another reason for them to agree to pay those creditors outside of bankruptcy.
- Dismissal is the more efficient and cheaper option for these Debtors as it will save from administrative and litigation costs and will still allow Debtors options to resolve their claims.

More can be said, but I believe the foregoing is enough. I am hopeful that we can come to an agreement soon. Please let me know when you believe you will be in a position to discuss these matters further.

Kinds regards,

*Jayson B. Ruff*

Trial Attorney
Office of the United States Trustee
515 Rusk St., Suite 3516
Houston, Texas 77002
713-718-4650 Ext 252 (office)
202-573-6960 (mobile)
[jayson.b.ruff@usdoj.gov](mailto:jayson.b.ruff@usdoj.gov)



PLEASE DO NOT read, copy or disseminate this Internet E-mail if you are not the intended addressee. This E-mail may contain privileged information intended only for the addressee. If you have received this E-mail in error, please call us immediately at (713) 718-4650 and ask to speak to the sender of the communication. Also, please notify the sender immediately, by E-mail, that you have received this E-mail in error and have deleted it.

# **EXHIBIT E**

# Kyung S. Lee PLLC

700 Milam, Suite 1300
Houston, Texas 77002

# INVOICE

Invoice # 2
Date: 06/07/2022
Due On: 07/07/2022

W. Marc Schwartz
Free Speech Systems, LLC
712 Main Street-Suite 1830
HOUSTON, Texas 77002

## 00003-Free Speech Systems, LLC

## Represent FSS in connection with preparation of FSS for potential filing of bankruptcy as a Subchapter v Debtor.

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Service | 05/24/2022 | Research and email RJ Shannon on background research of FSS so as to be prepared for discussion in Austin (1.5); travel to and from Austin, Texas and not working (charged at 1/2 time of 6 hours)(3); extended conference with client, Schwartz Associates, B. Roe, S. Jordan, and RJ Shannon to discuss options and issues with FSS restructuring (5.0) | 9.50 | $850.00 | $8,075.00 |
| Service | 05/25/2022 | Follow-up with research on background facts relating to how FSS came about, operational history and litigation history of same for purposes of drafting First Day Declaration of Marc Schwartz (3.0) | 3.00 | $850.00 | $2,550.00 |
| Service | 05/25/2022 | Follow-up on data received at meeting, new data gathered and research for prose on historical operations of FSS (2.0) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/26/2022 | Review and analyze 2 Valuation Reports for PQPR and FSS, analyze same for background information on FSS for pleadings and determine status of case information in both (2.0) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/27/2022 | Coordinate with State Court counsel on sanctions issues and explain approach to handling same (.5); numerous conferences with S. Lemmon, counsel for PQPR (1.0); locate critical documents for S. Lemmon and forward (.5) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/28/2022 | Analyze State Court litigation production to determine data produced to opposing counsel in state court and collect key documents to share with parties (2.0) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/29/2022 | Continue to review financial data discovered during search of State Court litigation production and analyze same (2.0) | 2.00 | $850.00 | $1,700.00 |

| Service | 05/30/2022 | Review and analyze background corporate documents and additional documents discovered from reviewing State Court production in DropBox files (2.0) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/31/2022 | Work on Declaration for Marc Schwartz as CRO for FSS and incorporate facts learned through investigation (4.0) | 4.00 | $850.00 | $3,400.00 |

|  |  |  |  | **Total** | **$24,225.00** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 7 | 07/07/2022 | $184.09 | $0.00 | $184.09 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 2 | 07/07/2022 | $24,225.00 | $0.00 | $24,225.00 |
|  |  |  | **Outstanding Balance** | **$24,409.09** |
|  |  |  | **Total Amount Outstanding** | **$24,409.09** |

Please make all amounts payable to: Kyung S. Lee PLLC

Please pay within 30 days.