**R. J. Shannon**

| | |
|---|---|
| **From:** | Shelby Jordan <sjordan@jhwclaw.com> |
| **Sent:** | Tuesday, August 16, 2022 2:06 PM |
| **To:** | Ray Battaglia; Kyung S. Lee |
| **Cc:** | R. J. Shannon |
| **Subject:** | Re: Isn't this our case in Conn |

Ray and Kyung: Based on RJ's total rejection of all defenses and all matters filed in Conn I do not think a conference to discuss how to protect the ongoing business is a total waste of time.

> "The Debtor needs to focus on things that will preserve and increase the value of its estate and not fall into the trap that the Plaintiffs are in of just fighting everything for the sake of fighting. I can't tell Marc that I believe that seeking a stay will accomplish anything other than incur expense to the estate."

So, after 300 words of negative, I leave it to the Debtors to decide how to keep Alex supporting the efforts. I'm sure RJ has an answer since Alex will be left to fighting these battles on his own.

Shelby

**From:** RJ Shannon <rshannon@shannonleellp.com>
**Date:** Tuesday, August 16, 2022 at 9:56 AM
**To:** Shelby Jordan <sjordan@jhwclaw.com>, Ray Battaglia <rbattaglialaw@outlook.com>, "Kyung S. Lee" <klee@shannonleellp.com>
**Subject:** Re: Isn't this our case in Conn

Shelby,

The Connecticut bankruptcy court did not rule that the claims are personal injury tort claims under 157(b)(5)—the Debtor's position is that they are not—or that there was not at least "related to" jurisdiction. The Debtor's position is that they claims are *not* personal injury tort claims. Instead, the Connecticut bankruptcy court ruled that there was a reason to permissively abstain.

We can quibble with some of the Connecticut bankruptcy court's rulings on particular factors—I think comity is neutral under Breaknell and the litigation is definitely central to the bankruptcy case—but the fact that removal would require getting a whole new judge up to speed when the current state court judge has been involved for four years and is ready to go and already considering motions in limine is independently sufficient for remand. The Gen-On case is factually and procedurally way different.

But there are more fundamental issues I have:

1) I don't think the Debtor would have removed if we had an accurate view of the situation. Norm misunderstood when he reported to us that the state court was proceeding to jury selection on the claims against the Debtor. What the state court *actually* did is bifurcate the trial so that it was proceeding only as to Alex Jones and not the Debtor. It's a funky way to handle it, but Norm argued that severance was not allowed, the court seemed to give some credence to that argument, and it's not clear that what the court did was improper instead of just

1

uncommon. We successfully created enough of an issue so that the judge did not award fees and costs to the Plaintiffs—there are arguments, just not winning arguments—but remand was all but certain.

2) It's not obvious that the Debtor should seek to extend the stay:

   a. According to Norm, there are claims against Alex Jones for his own actions and claims against the Debtor. Unlike in Texas, there was no finding of alter ego by default and Judge Bellis has not been nearly as tough on evidentiary rules. So we have the ability to separate off issues of what Alex Jones did with respect to FSS and what FSS employees did with respect to Alex Jones. Take the Texas trial as an example—(i) The defamation award was only $100k (and Alex Jones only did some of those statements) whereas the remaining $4.0 million of exemplary damages was for intentional infliction of emotional distress which was from *other* FSS employees sending people to Sandy Hook; and (ii) On the other hand, whether it is right or not, having Alex Jones also on trial probably doesn't help matters for FSS.

   b. I don't see how we meet the standard for extending the stay with respect to the Connecticut litigation, which is only supposed to be granted in "extreme and unusual circumstances." Extending the stay is appropriate where: (i) the Debtor is a guarantor of the obligation; (ii) the claim is against the Debtor's insurer; or (iii) there is such an identity between the debtor and a third-party defendant that the debtor may be said to be the real party in interest. I know that you have asserted an indemnity claim for Alex Jones, but it's not in any of the documents prior to April 2022, and the Connecticut Litigation does not assert alter ego (this is different for the remaining Texas litigation). And if the factors *are* met, the more likely outcome is that the stay would also be lifted as to the Debtor, which Marc tells me would affect the Debtor.

   c. It will be a serious blow to the Debtor's credibility when we say that the point of the bankruptcy is to find a way to pay and resolve the claims rather than to merely protect Alex Jones. That would be a point in favor of the appointment of a committee, and the additional costs that would incur.

   d. Incurring costs to fight to extend the stay—which, if successful, would merely delay rather than prevent anything—instead of incurring costs litigating in Connecticut is not obviously a better use of estate resources. The right time to seek an extension of the stay for the Connecticut litigation was at the beginning of the case, when we did not have a bunch of discovery due and upcoming deadlines. That was presented to the group but the instead the decision was made that Alex would file a cross action and rely on that. We might just have to live with that decision. From your client's perspective, the better course of action might be better for the Debtor to also litigate in Connecticut and bear some of the cost.

3) The Debtor needs to focus on things that will preserve and increase the value of its estate and not fall into the trap that the Plaintiffs are in of just fighting everything for the sake of fighting. I can't tell Marc that I believe that seeking a stay will accomplish anything other than incur expense to the estate.

**R. J. Shannon**
Partner
**Shannon & Lee LLP**
Cell: (512) 693-9294

---

**From:** Shelby Jordan <sjordan@jhwclaw.com>
**Date:** Tuesday, August 16, 2022 at 6:36 AM
**To:** R. J. Shannon <rshannon@shannonleellp.com>, Ray Battaglia <rbattaglialaw@outlook.com>, Kyung S. Lee

2

\<klee@shannonleellp.com\>
**Subject:** Re: Isn't this our case in Conn

RJ:  I wasn't clear – Isn't this is why we need to seek a stay in the Conn District Court – while we seek an injunction in Judge Lopez Court – for him to rule that there is clear related to jurisdiction and seek a transfer to the "Home" Court –

The BR Court took away the right of the District Court to determine the issue of withdrawal of the reference and handling of the case and trial by the "Home" district court which 157(b)(5) mandates.

Shelby

---

**From:** Shelby Jordan \<sjordan@jhwclaw.com\>
**Date:** Tuesday, August 16, 2022 at 6:31 AM
**To:** RJ Shannon \<rshannon@shannonleellp.com\>, Ray Battaglia \<rbattaglialaw@outlook.com\>, "Kyung S. Lee" \<klee@shannonleellp.com\>
**Subject:** Isn't this our case in Conn

Isn't this the outcome we want in Conn District Court –

> United States Court of Appeals
> for the Fifth Circuit
> No. 21-20557
> In re GenOn Mid-Atlantic Development, L.L.C.
> Debtor,
> Natixis Funding Corporation,
> Appellant,
> versus
> GenOn Mid-Atlantic, L.L.C.,
> Appellee.
> Appeal from the United States District Court
> for the Southern District of Texas
> No. 4:19-cv-3078
> Before Smith, Wiener, and Southwick, Circuit Judges.
> Jerry E. Smith, Circuit Judg

**Bankruptcy Removal Isn't the Same as General Removal, Fifth Circuit Explains**

Fifth Circuit finds 'related to' jurisdiction in a lawsuit between two third parties who were neither debtors nor creditors.

Fifth Circuit Judge Jerry E. Smith wrote an erudite opinion on the finer points of post-confirmation and "related to" jurisdiction. Most notably, though, his opinion explores the finer points regarding abstention. It's a "must read" for jurisdiction buffs.

3

Procedurally and factually, a case can't be more complicated. The following exposition glosses over 10 pages of minutia to give our readers a sense of the facts from 100,000 feet.

The leading character in the drama was a non-debtor operator of leased power plants. The power plant operator's parent was a huge power producer in chapter 11 in Houston.

The antagonist was a bank that issued $130 million in letters of credit in favor of the non-debtor subsidiary. The subsidiary paid $130 million cash for the bank to issue the LCs. In other words, the bank was fully covered, or so it thought.

Indeed, the bank was fully covered until someone made a mistake. Through an error in a complex transaction, the bank opened itself up to tens of millions of dollars of liability in excess of $130 million. Disputes arose when the bank was called on the unexpected liability.

The result was a settlement engrafted onto the parent's chapter 11 plan that was confirmed in Houston but not consummated entirely. The settlement exonerated the parent-debtor from liability on the unexpected liability.

However, the bank sued the non-debtor subsidiary and third parties in state court in New York. Claiming that the state court lawsuit was related to the Houston bankruptcy, the non-debtor subsidiary withdrew the suit to federal district court in New York based on "related to" jurisdiction.

The bank filed a motion to remand to state court. The district judge in New York sought an opinion from Chief Bankruptcy Judge David R. Jones of Houston on the question of whether the suit could have an effect on the parent's chapter 11 case to justify bankruptcy jurisdiction.

Bankruptcy Judge Jones found a "huge potential effect" on the bankruptcy, prompting the district judge in New York to deny the motion to remand and transfer venue to Houston.

Back in Houston, the district court referred the lawsuit to Bankruptcy Judge Jones for report and recommendation. Ultimately, the Houston district judge accepted the report and recommendation by Bankruptcy Judge Jones and entered a take-nothing judgment. In other words, the bank was stuck with liability in excess of $130 million.

The bank appealed to the Fifth Circuit, to no avail. Of interest to our readers, we will focus on the discussions of jurisdiction and abstention in Circuit Judge Smith's July 29 opinion.

Jurisdiction

The bank claimed that the judgment was a nullity because there was no federal jurisdiction since the dispute involved only non-debtor third parties and the scope of "related to" jurisdiction narrows after confirmation.

The outcome turned on the contours of "related to" jurisdiction under 29 U.S.C § 1334(b).

Following Fifth Circuit precedent in *Craig's Stores*, *Zale* and *Enron*, Judge Smith said that the pivotal question was whether the suit pertained to the implementation or execution of the parent's chapter 11 plan. He said that the case was "at the limit of related-to jurisdiction" and was "closer than our usual related-to fare."

Judge Smith said that "related to" jurisdiction was not foreclosed just because the dispute was between third parties who were neither debtors nor creditors in the parent's chapter 11 case.

In the settlement that was part of the parent's plan, the non-debtor subsidiary had pledged to maintain large cash reserves as comfort for the owners of the power plants it operated. If it were denuded of cash by the bank's lawsuit, the settlement would bust and the parent couldn't consummate the confirmed plan.

Judge Smith found "related to" jurisdiction because he saw a nexus between the lawsuit and the implementation and execution of the parent's plan.

Judge Smith was careful to say that his holding would not sweep every lawsuit against a debtor's subsidiary into bankruptcy court. Rather, he held that

> post-confirmation jurisdiction is proper only where the dispute pertains to the plan's implementation or execution. Few disputes between non-debtors qualify . . . . To fall within our post-confirmation jurisdiction, a dispute typically must implicate a specific plan's provision or the parties' bankruptcy-law rights or responsibilities.

Because there was jurisdiction, "removal was proper," Judge Smith said.

Abstention

Judge Smith next ruled that 28 U.S.C. § 1334(c)(2) did not require abstention.

"[I]n a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which *an action could not have been commenced in a court of the United States* absent jurisdiction under this section," the subsection says, "the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." [Emphasis added.]

Among the four requisites of abstention, the appeal turned on whether there would not have been federal jurisdiction were there no "related to" jurisdiction. In other words, would there have been diversity or federal question jurisdiction? Clearly, there was no federal question jurisdiction, so diversity jurisdiction was decisive.

The non-debtor subsidiary said there was diversity jurisdiction between it and the bank, but the bank said there was no diversity jurisdiction because there was no complete diversity considering the other defendants in New York.

Judge Smith said "it's true" that diversity jurisdiction would not allow removal of the bank's claims against all of the defendants in New York, but "that's not what Section 1334(c)(2) asks." The bankruptcy removal statute, 28 U.S.C. § 1452(a), allows removal of "any claim or cause of action."

The abstention statute, he said,

> commands abstention only where "an action" regarding the claims before the federal district court "could not have been commenced" in a federal court absent bankruptcy jurisdiction. In other words, federal courts must abstain only if "the claim" in the federal court "has no independent basis for federal jurisdiction."

Judge Smith was saying that abstention turns on the claims removed to bankruptcy court under "related to" jurisdiction, not the lawsuit filed in state court. He distinguished bankruptcy removal, which permits removal of a "claim," from the general removal statute, 28 U.S.C. § 1446(a), which allows removal of a "civil action."

Judge Smith said that the subsidiary brought only state-law claims "against it" into federal court.

Because an action based only on those "claims" could have been brought in federal court under diversity jurisdiction, Judge Smith held that "abstention was not required."

Finding no abuse of discretion, Judge Smith upheld denial of the motion to abstain. In the next 15 pages, he upheld dismissal of the bank's claims on the merits and affirmed the judgment of the district court.