# R. J. Shannon

| | |
|---|---|
| **From:** | R. J. Shannon |
| **Sent:** | Thursday, June 30, 2022 2:57 PM |
| **To:** | Kyung S. Lee; MSchwartz@schwartzassociates.us; rbattaglialaw@outlook.com; jshulse@chartcapitalmgmt.com; sjordan@jhwclaw.com |
| **Subject:** | RE: A few questions |
| **Attachments:** | Rethinking Lawyer Ethics to Allow the Rules of Evidence Rules of.pdf |

My research into the case law and relevant ethical rules is that we are **_not required_** to delete or destroy the additional documents, which seems to just be the P&L. In light of the pending TUFTA action, I think we **_should not_** destroy the documents because it would arguably be spoilation of evidence.

(1) The documents were not wrongfully obtained.
    a. Melinda Flores—an FSS employee—provided these documents in response to the request of an FSS consultant. She had access to this information.
    b. This does not appear to be a misappropriation of a trade secret because PQPR did not take any actions to keep the information secret *from FSS* and it does not have independent value derived from being kept secret. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(6).
    c. Factors for whether something is a trade secret are according to *In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009):
        i. The extent to which the information is known outside of the business;
        ii. The extent to which it is known by employees involved in the business;
        iii. The extent of measures taking to guard the secrecy of the information;
        iv. The value of the information to the business and to its competitors;
        v. The amount of effort or money in developing the information; and
        vi. The ease or difficulty with which the information could be properly acquired or duplicated by others.
    d. Use of a trade secret requires attempting to use the trade secret for profit from commercial use. *Atl. Richfield Co. v. Misty Prods.*, Inc., 820 S.W.2d 414, 422 (Tex. App. 1991)
    e. There is no implied contract re confidentiality under Texas law. *See Sci. Mach. & Welding, Inc. v. Rose*, No. 03-20-00564-CV, 2022 Tex. App. LEXIS 1884, at *14 (Tex. App.—Austin Mar. 23, 2022)

(2) The documents are not privileged vis-à-vis FSS.
    a. I don't see any applicable privilege here. These were not created for litigation or contain attorney-client statements.
    b. Lemmon might argue that they are privileged w/r/t to other parties as a trade secret, but that's an issue for another time addressed in my recommendation below.
        i. Texas Rule of Evidence 507 allows a person to prevent other persons from disclosing trade secrets.
        ii. Lemmon could assert that privilege if FSS was required to disclose the Income Statement to someone else and argue that it is a trade secret. A holder of a trade secret may divulge information to a limited extent without destroying its status as a trade secret. *Schwimmer v. Presidio Indus. LLC*, No. 3:10-CV-2213-P, 2011 U.S. Dist. LEXIS 161754, at *16 (N.D. Tex. Feb. 11, 2011).
        iii. Texas Rule of Evidence 511(b)(2) and Rule of Civil Procedure 193.3(d) would prevent a waiver of privilege if made in discovery.

(3) The applicable ethical rules do not require destruction of the documents.

a. Attached law review article details the changes to the ABA model rules that the Texas courts have used as persuasive authority before.
b. The Texas Disciplinary Rules do not contain anything about this and the Texas Rules of Evidence merely state that inadvertent disclosures maintain their privilege.

(4) The applicable case law does not require destruction of the documents.
  a. There is some caselaw that allows for (but does not require) the disqualification of attorneys where they have and use **privileged** information obtained by their client. *See In re Meador*, 968 S.W.2d 346, 351 (Tex. 1998).
    i. The Texas Supreme Court identified the following factors for disqualification for use of privileged documents outside of formal discovery: 1) Whether the attorney knew or should have known the material was privileged; 2) The promptness with which the attorney notices the opposing side that he or she has received the its privileged information; 3) The extent to which the attorney reviews and digests the privileged information; 3) The significance of the privileged information; 4) The extent to which the movant may be at fault for the unauthorized disclosure; 5) The extent to which the non-movant will suffer prejudice from the disqualification.
    ii. Each of these factors other than No. 3 is in our favor even if it is technically privileged for one reason or another.
  b. Further, those cases talk about harm whereas here the document should be discoverable in any dispute where they are relevant.
  c. Texas Rules of Evidence do not apply since the document was not sent inadvertently for was it in response to a discovery request. Melinda must have intended to send these exact documents but apparently just did not listen to what David said.

I would tell Lemmon that our research indicates that we are not required to destroy the additional document and we are concerned that doing so may be spoliation of evidence regarding the TUFTA action but **_(a)_** we are happy to hear from him to reconsider if we are missing something, **_(b)_** we will hold the information confidential subject to obtaining the document in discovery if there is a dispute with PQPR, and **_(c)_** we will inform Lemmon if we are compelled to produce it to a third party so that PQPR can assert any relevant privilege against production by FSS. Splits the baby nicely, and if we are right that it is not privileged as a trade secret, we would be able to obtain in discovery.

What do you all think?
--
**R. J. Shannon**
Partner
**Shannon & Lee LLP**
Cell: (512) 693-9294
rshannon@shannonleellp.com

---

**From:** Kyung S. Lee <klee@shannonleellp.com>
**Sent:** Thursday, June 30, 2022 12:35 PM
**To:** MSchwartz@schwartzassociates.us; rbattaglialaw@outlook.com; R. J. Shannon <rshannon@shannonleellp.com>; jshulse@chartcapitalmgmt.com; sjordan@jhwclaw.com
**Subject:** Re: A few questions

Let's give everyone a little time to think about the issues. I propose we have a Zoom somewhere between 3-6 depending on folks' schedules.

For right now, I will propose a Zoom at 3PM CST today among us. If anyone has a conflict, please speak up. Marc, can you circulate Zoom Room for 3 now and if people have conflicts we can use that same Zoom Room for a different time that fits everyone's schedule?

**Kyung S. Lee**
Partner
**Shannon & Lee LLP**
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Cell: (713) 301-4751
klee@shannonleellp.com

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**From:** Marc Schwartz <MSchwartz@schwartzassociates.us>
**Date:** Thursday, June 30, 2022 at 12:32 PM
**To:** Kyung S. Lee <klee@kslpllc.com>, rbattaglialaw@outlook.com <rbattaglialaw@outlook.com>, R. J. Shannon (FIRM) <rshannon@shannonleellp.com>, Jeffrey Shulse <jshulse@chartcapitalmgmt.com>, Shelby Jordan <sjordan@jhwclaw.com>
**Subject:** RE: A few questions

Should we Zoom?

**From:** Kyung S. Lee <klee@kslpllc.com>
**Sent:** Thursday, June 30, 2022 12:29 PM
**To:** rbattaglialaw@outlook.com; R. J. Shannon (FIRM) <rshannon@shannonleellp.com>; Marc Schwartz <MSchwartz@schwartzassociates.us>; Jeffrey Shulse <jshulse@chartcapitalmgmt.com>; Shelby Jordan <sjordan@jhwclaw.com>
**Subject:** Re: A few questions

Gentlemen: Lemmon is not happy these documents were sent to us. Apparently, David Jones only authorized the balance sheet of PQPR to be sent to us. Here are PQPR's instructions on how to handle these erroneously produced documents. I have not encountered this situation before, so I need guidance or a little research on this point to make sure we are doing what is right for Schwartz and FSS.

**Kyung S. Lee**
**Shannon & Lee LLP**
Cell: 713-301-4751
klee@shannonleellp.com

**From:** Stephen Lemmon <lemmon@slollp.com>
**Date:** Thursday, June 30, 2022 at 12:24 PM
**To:** Kyung S. Lee <klee@kslpllc.com>
**Cc:** rbattaglialaw@outlook.com <rbattaglialaw@outlook.com>, R. J. Shannon (FIRM)

<rshannon@shannonleellp.com>
**Subject:** Re: A few questions

This is a mistake.  The documents need to be returned and all copies destroyed.

Sent from my iPhone

> On Jun 30, 2022, at 12:14 PM, Kyung S. Lee <klee@kslpllc.com> wrote:
>
> Please review and let's chat.
>
> Kyung S. Lee
> Kyung S. Lee PLLC
> Partner
> Pennzoil Place
> 700 Milam, Suite 1300
> Houston, Texas 77002
> Mobile (713) 301-4751
> Klee@kslpllc.com
> www.kslpllc.com
>
> ---
>
> **From:** Marc Schwartz <MSchwartz@schwartzassociates.us>
> **Sent:** Thursday, June 30, 2022 12:05:50 PM
> **To:** Kyung S. Lee <klee@kslpllc.com>; R. J. Shannon <rshannon@shannonleellp.com>
> **Subject:** FW: A few questions
>
> ---
>
> **From:** Jeffrey Shulse <jshulse@chartcapitalmgmt.com>
> **Sent:** Thursday, June 30, 2022 10:47 AM
> **To:** Marc Schwartz <MSchwartz@schwartzassociates.us>
> **Subject:** Fwd: A few questions
>
> These don't make any sense to me ... there are some huge numbers on the balance sheet that net against other huge numbers ... I'm digging into it
>
> Sent from my iPhone
>
> Begin forwarded message:
>
>> **From:** Jeffrey Shulse <jshulse@chartcapitalmgmt.com>
>> **Date:** June 30, 2022 at 10:36:42 AM CDT
>> **To:** Jeffrey Shulse <jshulse@outpostcc.com>
>> **Subject: Fwd: A few questions**
>>
>> Sent from my iPhone

4

Begin forwarded message:

**From:** Melinda Flores <melinda@freespeechsystems.com>
**Date:** June 30, 2022 at 9:56:46 AM CDT
**To:** Jeffrey Shulse <jshulse@chartcapitalmgmt.com>
**Cc:** Melinda Flores <melinda@freespeechsystems.com>
**Subject: Re: A few questions**

Jeff,
Attached is the payroll information you requested as well as the PQPR reports.  You can call me at 11....512-497-0948
Thanks,

Melinda

----- Original Message -----
From: "Jeffrey Shulse" <jshulse@chartcapitalmgmt.com>
To: "Melinda Flores" <melinda@freespeechsystems.com>
Sent: Wednesday, June 29, 2022 7:25:26 PM
Subject: Re: A few questions

Yes … sounds good

Sent from my iPhone

> On Jun 29, 2022, at 6:14 PM, Melinda Flores <melinda@freespeechsystems.com> wrote:
>
> This will be fine, Jeff.  Will 11 am work for you?  I can send some reports over to you before then for review if you'd like.
>
> Melinda
>
> ----- Original Message -----
> From: "Jeffrey Shulse" <jshulse@chartcapitalmgmt.com>
>
> To: "Melinda Flores" <melinda@freespeechsystems.com>
>
> Sent: Wednesday, June 29, 2022 9:54:53 AM
>
> Subject: Re: A few questions
>
> And my first day was 6/21 … just fyi
>
> Sent from my iPhone

5

> On Jun 29, 2022, at 9:52 AM, Jeffrey Shulse <jshulse@chartcapitalmgmt.com> wrote:
>
> If you want to talk remotely tomorrow … I don't want you to change everything around for me … and I don't have a need to drive to Austin just to drive to Austin
>
> Remote tomorrow is fine with me if it works for you?
>
> Sent from my iPhone
>
>> On Jun 29, 2022, at 9:44 AM, Melinda Flores <melinda@freespeechsystems.com> wrote:
>>
>> Hi Jeff,
>>
>> Sorry I missed you yesterday. I wasn't aware you were coming in and I had some back to back up appointments in the afternoon.
>>
>> I received your paperwork and all looks good. We didn't get the background check in time to include you in this Friday's payday

so your first payday will be 07/15/22 and will cover the pay period that started Monday 06/27/22 and ends 07/10/22 in addition to the last couple of days of the period that just ended.  Your first pay will be a live check that will need to be deposited.  Your direct deposit will start on the following pay period.

I spoke to Dr. Jones yesterday and gave me the go ahead and give you financials for 2021.  I can have that ready for you tomorrow and we can actually sit in the conference room and remote in to QuickBooks if need be.

I can also provide the payroll information for you as well.

I usually work remotely on Tuesdays and Thursdays but since you're coming in tomorrow I'll be here in the office.  More likely I will work from home on Friday this week.

Thanks,

Melinda

----- Original Message -----

From: "Jeffrey Shulse" <jshulse@chartcapitalmgmt.com>

To: "Melinda Flores" <melinda@infowars.com>

Sent: Tuesday, June 28, 2022 2:23:06 PM

Subject: A few questions

Melinda,

I believe you are out this afternoon… so a few quick items

Did you get my new hire paperwork I put in your basket last week?  Any questions or issues ?  When is payroll ?  I assume we are paid on Friday's ?

I need financial info for PQPR … Bob Roe is going to give you the "all clear" … but I need to sift through the last 12 months of info to figure out some costs … say 1/1/2021 to 12/31/21 and maybe Q1 of 2022?  Again, I need to do some cost analysis to figure out some fair revenue sharing percentages

It would also be helpful to see ADP payroll info for the last 6-8 months … how about 10/1/21 to 5/31/22?  I need to put together an org chart by company that

8

actually pays the salary, what company they actually do work for … FSS or PQPR and what "department" they work in … if you already have something like that …. It would be a helpful start

I will be back in Austin on Thursday morning… what is your schedule for the next few days ?

Thanks

Jeff Shulse

Sent from my iPhone

9