**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 5

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 24, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: § | |
| § | Case No. 22-60043 |
| FREE SPEECH SYSTEMS, LLC., § | Chapter 11 (Subchapter V) |
| § | |
| Debtor. § | |

### SECOND INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). This order is the second interim order ("Second Interim Order"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. Interim Use. The Court approves the interim use of cash collateral as set forth herein.

2. <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3. <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4. <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Second Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5. <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6. <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR up to $750,000 as provided in the Budget for "Repay PQPR Inventory" (each payment comprising a portion of the $750,000, a "<u>PQPR Payment</u>"). Creditors and parties in interest shall have thirty (30) days from the date

they receive notice that a PQPR Payment was issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment. The Debtor shall provide notice of a PQPR Payment to creditors and parties in interest on the same day the payment is issued.

7. <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8. <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9. <u>Adequate Protection – Replacement Liens</u>.   The adequate protection and related carve out set forth in the First Interim Order are incorporated in the Second Interim Order.

10. <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11. <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12. <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the

U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14. <u>Discovery</u>. The Tort Plaintiffs issued written discovery to the Debtor and PQPR relating to the use of cash collateral on a final basis. PQPR and the Debtor will provide written discovery responses and produce responsive documents to the Tort Plaintiffs no later than August 30. If PQPR and the Debtor have objections to discovery, it will be their obligation file written objections to discovery before August 30, 2022. PQPR and the Debtor will make a good faith effort to begin producing responsive documents on a rolling basis as soon as possible, but not later than August 29th, 2022. The Tort Plaintiffs will provide deposition topics no later than August 22, which may be subject to amendment once document production is reviewed. The Debtor shall present a corporate representative for deposition on September 6, 2022. PQPR shall present a corporate representative for deposition on September 8. PQPR, the Debtor, and the Tort Plaintiffs agree that any discovery dispute may be heard on an emergency basis.

15. <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on September 13, 2022, at 1:00 p.m. Central time.

Signed: August 24, 2022

Christopher Lopez
United States Bankruptcy Judge

**Free Speech Systems LLC**
**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**

**Between August 20, 2022 and September 16, 2022**

| Period | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | Total |
|---|---|---|---|---|---|
| Week Number | 4 | 5 | 6 | 7 | |
| **Income** | | | | | |
| Product Sales | $ 900,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 3,900,000.00 |
| Advertising | $ 480,166.46 | $ - | $ - | $ - | $ 480,166.46 |
| Donations | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | $ 1,383,307.71 | $ 1,003,141.25 | $ 1,003,141.25 | $ 1,003,141.25 | $ 4,392,731.45 |
| **Selling & Product Costs** | | | | | |
| Inventory Purchase | $ (76,155.17) | $ (76,155.17) | $ (225,294.19) | $ (225,294.19) | $ (602,898.72) |
| Repay PQPR Inventory | $ (250,000.00) | | $ (500,000.00) | $ - | $ (750,000.00) |
| Merchant Account Fees | $ (44,100.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (191,100.00) |
| Shipping cost for drop ship orders | $ (11,957.62) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (51,816.36) |
| Fulfillment Services | $ (219,512.20) | $ (243,902.44) | $ (243,902.44) | $ (243,902.44) | $ (951,219.51) |
| Processor Fees | $ (36,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (156,000.00) |
| eCommerce Store Maintenance | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | $ (637,724.99) | $ (454,951.73) | $ (1,071,482.87) | $ (571,482.87) | $ (2,735,642.47) |
| **Operating Expenses** | | | | | |
| **Advertising & Promotion** | | | | | |
| Advertising & Promotion | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | $ - | $ (17,541.98) | $ - | $ - | $ (17,541.98) |
| **Computer/IT/IP Expense** | | | | | |
| Internet & TV services | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| Website Hosting | $ - | $ - | $ - | $ (266.50) | $ (266.50) |
| **Total Computer/IT/IP Expense** | $ - | $ (238,031.01) | $ - | $ (1,874.89) | $ (239,905.91) |
| Insurance | $ - | $ (2,166.50) | $ - | $ - | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | $ - |
| Bank Fees & Service Charges | $ (69.38) | $ (77.08) | $ (77.08) | $ (77.08) | $ (300.63) |
| Equipment Rental | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | $ (3.17) | $ (3.53) | $ (3.53) | $ (3.53) | $ (13.76) |
| Business Meals | $ (423.88) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,836.79) |
| **Total Office & Administrative Expense** | $ (496.43) | $ (2,541.48) | $ (551.58) | $ (551.58) | $ (4,141.08) |
| Outsourced Services | $ - | $ - | $ - | $ - | |
| Consulting Services | $ - | $ - | $ - | $ - | |
| **Utilities** | | | | | |
| Electricity | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |
| Gas Service | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | $ - | $ (23,057.46) | $ - | $ (5,107.63) | $ (28,165.09) |
| **Occupancy** | | | | | |
| Rent | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | $ - | $ (72,280.93) | $ - | $ - | $ (72,280.93) |
| Supplies | $ - | $ (1,258.02) | $ - | $ - | $ (1,258.02) |
| Telephone | | $ (18,337.88) | $ - | $ - | $ (18,337.88) |
| **Personnel Expenses** | | | | | $ - |
| Salaries & Wages - Base | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |

**EXHIBIT A**

**Free Speech Systems LLC**
**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**

**Between August 20, 2022 and September 16, 2022**

| | Period | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | Total |
|---|---|---|---|---|---|---|
| **Total Personnel Expenses** | | $ - | $ (201,755.20) | $ - | $ (201,755.20) | $ (403,510.40) |
| **Travel** | | | | | | $ - |
| Mileage/Parking/Tolls | | $ (150.67) | $ (167.41) | $ (167.41) | $ (167.41) | $ (652.90) |
| Vehicle Leases | | $ - | $ - | $ (1,470.56) | $ - | $ (1,470.56) |
| **Total Travel Expenses** | | $ (150.67) | $ (167.41) | $ (1,637.97) | $ (167.41) | $ (2,123.46) |
| **Total Operating Expenses** | | $ (647.10) | $ (577,137.87) | $ (2,189.56) | $ (209,456.72) | $ (789,431.24) |
| **Non-Operating Expenses** | | | | | | $ - |
| Payment on PQPR Note | | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | | $ - | $ - | $ - | $ - | $ - |
| **Total Other Expenses** | | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| **Professional Fees** | | | | | | |
| Subchapter v Trustee retainer | | | | | $ (25,000.00) | $ (25,000.00) |
| Fulfillment Expert | | $ (12,500.00) | $ - | $ - | $ - | $ (12,500.00) |
| Witness expenses and cost | | | | | | |
| Pattis & Smith | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | | $ - | $ - | $ (50,000.00) | $ - | $ (50,000.00) |
| SALLC Fees | | $ - | $ - | $ - | | $ - |
| Shannon & Lee LLP | | $ - | $ - | $ - | | $ - |
| Ray Battaglia | | $ - | $ - | $ - | | $ - |
| **Total Professional Fees** | | $ (12,500.00) | $ - | $ (150,000.00) | $ (25,000.00) | $ (187,500.00) |
| **Total Cash Flow** | | $ 727,435.62 | $ (33,948.36) | $ (225,531.18) | $ 192,201.66 | $ 660,157.73 |