IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS LLC, | ) Case No. 22-60043 (CML) |
| Debtor. | ) |

## OBJECTION OF THE CONNECTICUT PLAINTIFFS TO THE DEBTOR'S EMERGENCY MOTION TO APPROVE ASSUMPTION OF COMMERICAL REAL PROPERTY LEASE WITH BCC UBC LLC

The Connecticut Plaintiffs,[1] as creditors and parties in interest in the above-captioned chapter 11 case, by and through their undersigned counsel, hereby submit this objection (the "Objection") in response to the *Debtor's Emergency Motion to Approve Assumption of Commercial Real Property Lease with BCC UBC LLC* [Docket No. 412] (the "Motion"). In support of the Objection, the Connecticut Plaintiffs respectfully state as follows:

### PRELIMINARY STATEMENT[2]

1. The Connecticut Plaintiffs appreciate the significance of the Lease to the Debtor's current business. The Connecticut Plaintiffs also recognize that—at some future point in time— the Debtor's estate may benefit from assumption of the Lease. Today, however, is not that day. The path forward in this chapter 11 case remains uncertain. Premature assumption of the Lease could result in a substantial and unnecessary administrative expense claim that would jump ahead of the Debtor's pre-petition creditors. The Bankruptcy Code provides the Debtor a readily

---

[1] The "Connecticut Plaintiffs" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, and Robert Parker.

[2] Capitalized terms not otherwise defined in this section share the meanings ascribed to them in the remainder of this Objection.

1

available solution to reduce or eliminate this risk—section 365(d)(4)(B)(i) allows the Debtor to seek an extension of up to 90 days for cause. Ample cause for such an extension exists.

2. Alexander E. Jones ("Jones"), whom the Debtor has said is critical to any go-forward business, has recently and repeatedly suggested that he may leave the Debtor's employment and pursue other purported opportunities.[3] Even if Jones remains employed by the Debtor, the Debtor's ability to successfully reorganize under Title 11 remains highly questionable. Assumption of the Lease in the face of these uncertainties is premature. Should Jones pursue other employment, the Debtor has said that this chapter 11 case would face near-certain liquidation. And had the Debtor already assumed the Lease in the case of such a liquidation, the resulting rejection damages—more than $750,000 in new claims against a liquidating estate—may receive administrative priority. Extension abates this specific and substantial risk, and it does so without prejudice to the Lessor or any other party in interest.

3. If the Debtor will not seek to extend the assumption deadline for cause or the Court denies such a request, then the Connecticut Plaintiffs respectfully request that the order granting the Motion provide that (a) the Debtor or any future chapter 7 trustee can assign the Lease notwithstanding any provision to the contrary therein, including for the avoidance of doubt Section 8.01 thereof, subject to the Landlord's consent not to be unreasonably withheld; (b) the Debtor has demonstrated to the Court's satisfaction that the Lessor is neither an affiliate nor related party of the Debtor, Jones, or any of their respective affiliates or related parties; and (c) the Debtor has represented to the Court that no portion of the rent the Lessor receives shall be

---

[3] In a hearing on December 19, 2022, counsel to the Debtor observed that "it is clear to [the Chief Restructuring Officer] and to me as [D]ebtor's counsel that in the absence of Mr. Jones being on the air broadcasting and promoting products that the [chapter 11] case is not tenable. And so he's a vital cog." Docket No. 354 at 29:14–18.

subsequently distributed to the Debtor, Jones, or any of their respective affiliates or related parties.

## BACKGROUND

4. The Connecticut Plaintiffs obtained judgments in excess of $1.4 billion against, among others, the Debtor in pre-petition litigation consolidated under the caption *Lafferty* v. *Jones*. *See* No. UWY-CV18-6046436-S, Docket No. 1044 (Conn. Super. Ct. Dec. 22, 2022) (entering judgment for the Connecticut Plaintiffs upon completion of a trial). The Connecticut Plaintiffs are the largest creditors in this chapter 11 case.

5. The Motion seeks, on an emergency basis, the Court's approval of the Debtor's assumption of that certain lease agreement, executed on June 9, 2008 (as subsequently amended, extended, and otherwise modified, the "Lease"), with BCC UBC LLC (the "Lessor") concerning real property located at 3019 Alvin Devane Boulevard in Austin, Texas. Given the emergency nature of the relief sought, no objection deadline was set.

6. After the Motion was filed, Jones launched a new venture called "Alex Jones Live" which provides remarkably similar content to the Debtor's programming.[4] On this website, Jones announced that two additional Austin-area studios (*i.e.,* studios in addition to the one located on the premises subject to the Lease) have been procured for his benefit by undisclosed outside investors.[5] Jones likewise announced that he intends to reduce the number

---

[4] *See generally* Alex Jones, *World Premiere! Alex Jones Officially Launches New Podcast*, ALEX JONES LIVE (last visited Feb. 12, 2023), https://alexjones.live/play/Alex-Jones-LIVE/premiere-alex-jones-officially-launches-new-podcast [https://perma.cc/4BDU-GVQG]. The Connecticut Plaintiffs are continuing to investigate this new venture—including whether the Debtor's property is being used in furtherance of such venture or whether revenue generated by this venture is being properly accounted for in Jones's chapter 11 case—and reserve all rights with respect thereto.

[5] *Id*. ("Now we built this because I wanted to be able to do something separate and completely different and that had a very small crew[.] . . . [W]ith all the attempts to shut us down the last few years, and all the attacks that are going on, it's more important than ever. . . . Just in case anybody thought I was going away—two studios in Austin are already set up separate from this one with outside groups. The whole nine yards.

3

of days each week that he works for the Debtor.[6] Finally, Jones claimed that he had five other employment offers that would involve him leaving the Debtor.[7]

7. Jones says that the purpose of his new venture is to provide a "bridge" in case the bankruptcy courts "don't treat us right." In particular:

> So, this [Alex Jones Live] is also a bridge. I don't intend to shut down Infowars. I intend to use the bankruptcy as a vehicle to try to settle these cockamamie cases and all the rest of this. But if that's disingenuous, and the systems don't treat us right and screw us over at the federal level like they did at the state level, that's fine. . . . [T]his is really a way to tell the system, you want to silence me and pin me down and try to shut down something I love, like Infowars? You're not doing that.[8]

## ARGUMENT

**I. Premature assumption of the Lease may result in substantial harm to the Debtor's estate.**

8. Premature assumption of the Lease exposes the Debtor's estate to material risk of substantial financial harm. While the Bankruptcy Code generally provides for unsecured treatment of claims for rejection damages, a special exception for previously assumed contracts entitles claims for rejection damages under such circumstances to administrative priority. *See* 11 U.S.C. § 503(b)(7). The Debtor's subsequent rejection of the Lease remains a distinct possibility

---

Advertising. Everything lined up. I just go in and do the shows.").

[6] *See* Alex Jones, *Alex Jones Launches His New Subscriber Platform,* ALEX JONES LIVE (last visited Feb. 12, 2023), https://alexjones.live/play/special-reports/alex-jones-explains-his-vision-with-new-subscriber-platform [https://perma.cc/GPQ7-5LSM] ("I'm still going to do the show on Infowars. Probably five days a week. I may cut back a day just to be completely honest.").

[7] *See* Alex Jones, *World Premiere! Alex Jones Officially Launches New Podcast*, ALEX JONES LIVE (last visited Feb. 12, 2023), https://alexjones.live/play/Alex-Jones-LIVE/premiere-alex-jones-officially-launches-new-podcast [https://perma.cc/4BDU-GVQG] ("Now I've got five offers[.] . . . [F]our of them are to leave Austin and move over parts of the country to be basically one of the big anchors or main polls for the populist nationalist system. It's exploding. . . . And if I have to I'll go do that.").

[8] *See* Alex Jones, *Alex Jones Launches His New Subscriber Platform,* ALEX JONES LIVE (last visited Feb. 12, 2023), https://alexjones.live/play/special-reports/alex-jones-explains-his-vision-with-new-subscriber-platform [https://perma.cc/GPQ7-5LSM].

in this chapter 11 case, given Jones's and his counsel's recent and repeated suggestions—both at the December 19, 2022 hearing and more recently on "Alex Jones Live"—that Jones is actively considering other employment options and other business ventures.[9] Jones's statement that he intends to devote less time to the Debtors so that he can focus more on "Alex Jones Live" only underscores the uncertainty over the Debtor's future. In addition, the Debtor's current need for the premises is called into question given Jones's recent disclosure that he has procured access to two additional studios—in addition to the home studio he uses for "Alex Jones Live"—from which to broadcast.[10] If other suitable studio space is available for a modest sum or free, then the Debtor should certainly not assume an expensive and unnecessary lease.

9. In the event the Debtor liquidates—a near-certainty if Jones were to accept an offer of outside employment—the prior assumption of the Lease would prove catastrophic. Given base rent of $34,410 per month and a termination date of December 31, 2024, the Lessor may assert an administrative expense claim on account of the Lease exceeding $750,000. The potential harm to the Debtor's estate is compounded by the fact that Section 8.01 of the Lease prohibits assignment, thereby preventing the estate from assigning the lease to a third party and mitigating damages. *See* Motion, Ex. A, § 8.01. Counsel to Jones has already acknowledged the possibility that the estate in this chapter 11 case could become administratively insolvent.[11] The

---

[9] In a hearing on December 19, 2022, counsel to Jones stated that, "without Mr. Jones, I think it is pretty clear that Free Speech Systems would be administratively insolvent and go to [c]hapter 7. ***And right now Mr. Jones can and may be forced to take third-party employment if he cannot make what he needs to make to survive.***" Docket No. 354 at 35:16–21 (emphasis added).

[10] *See* Alex Jones, *World Premiere! Alex Jones Officially Launches New Podcast*, ALEX JONES LIVE (last visited Feb. 12, 2023), https://alexjones.live/play/Alex-Jones-LIVE/premiere-alex-jones-officially-launches-new-podcast [https://perma.cc/4BDU-GVQG] ("[T]wo studios in Austin are already set up separate from this one with outside groups.").

[11] Dec. 19, 2022 Hr'g Tr. at 35:16–21, Docket No. 354.

adverse effects of a six-figure administrative expense claim on an already-insolvent estate would be substantial for unsecured creditors such as the Connecticut Plaintiffs.

> II. **The Debtor would prevail if it sought to extend the deadline to assume the Lease under section 365(d)(4)(B)(i) of the Bankruptcy Code.**

10. The Bankruptcy Code does not define "cause" for purposes of section 365(d)(4)(B)(i). Accordingly, such determinations are left to the court's discretion. Here cause, exists for at least three reasons.

11. *First*, given material uncertainty regarding the trajectory of these cases, assumption of the Lease at this time does not serve the interest courts consider paramount to a determination of good cause—the successful rehabilitation of the Debtor. *See, e.g.*, *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (collecting cases). The Debtor has not reached an agreement with Jones regarding his future employment, and Jones has indicated he is entertaining multiple offers of outside employment.[12]

12. *Second*, progress in this chapter 11 case remains stalled. The Debtor has made little meaningful progress in appraising its financial situation or the potential value of its assets, has not filed a plan of reorganization, and has failed to reach agreement with or build consensus among key stakeholders to any reorganization. *See, e.g.*, *In re Panaco, Inc.*, 2002 WL 31990368, at *5 (Bankr. S.D. Tex. 2002) (observing that the reasonableness of a timeframe within which a debtor should assume or reject an executory contract depends upon, among other things, the question whether the "debtor has had sufficient time to formulate a plan") Assumption of the Lease under these circumstances may ultimately impede, rather than support the successful rehabilitation and reorganization of the Debtor.

---

[12] *See* Alex Jones, *World Premiere! Alex Jones Officially Launches New Podcast*, ALEX JONES LIVE (last visited Feb. 12, 2023), https://alexjones.live/play/Alex-Jones-LIVE/premiere-alex-jones-officially-launches-new-podcast [https://perma.cc/4BDU-GVQG] ("I've got five offers[.] . . . [I]f I have to I'll go do that.").

13. **_Third_**, the Debtor continues to timely pay rent and satisfy other obligations under the Lease on a post-petition basis. _See_ Motion at ¶ 16. A 90-day extension under these circumstances would not prejudice the Lessor. Assumption of the Lease, however, could result in substantial harm to the Debtor's estate and other creditors if the Debtor subsequently rejects the lease or is unable to confirm a plan and converts to chapter 7.

14. Put simply, the Debtor should not assume the Lease at this juncture without first seeking the 90-day extension for cause permitted under section 365(d)(4)(B)(i) of the Bankruptcy Code. The balance of potential harms weighs strongly in favor of the Debtor's creditors and other stakeholders that would bear the harm caused by the Debtor's premature assumption of the Lease.

## RESERVATION OF RIGHTS

For the avoidance of doubt, the Connecticut Plaintiffs reserve their rights to amend or supplement this Objection on any basis and reserve all rights and remedies with respect to the Motion and otherwise in this chapter 11 case.

Respectfully submitted,

**CAIN & SKARNULIS PLLC**
By: _/s/ Ryan E. Chapple_
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone: (512) 477-5000
Fax: (512) 477-5011
E-mail: rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER PC**
Alinor C. Sterling (admitted _pro hac vice_)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
E-mail: asterling@koskoff.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Christopher Hopkins (*pro hac vice* pending)
Martin J. Salvucci (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990
E-mail: kkimpler@paulweiss.com
E-mail: chopkins@paulweiss.com
E-mail: msalvucci@paulweiss.com

*Co-Counsel to the Connecticut Plaintiffs*

## CERTIFICATE OF CONFERENCE

I have discussed the relief sought with Debtor's counsel and, as of this filing, have not been able to resolve my clients' objections to the matter.

*/s/ Martin J. Salvucci*
Martin J. Salvucci

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Objection has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 13th day of February 2023.

*/s/ Ryan E. Chapple*
Ryan E. Chapple