## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
|  | ) |  |
| FREE SPEECH SYSTEMS LLC, | ) | Case No. 22-60043 (CML) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### JOINT MOTION OF THE CONNECTICUT PLAINTIFFS AND THE TEXAS PLAINTIFFS TO REVOKE THE DEBTOR'S SUBCHAPTER V ELECTION

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

The Connecticut Plaintiffs[1] and the Texas Plaintiffs[2] (together, the "Sandy Hook Families"), by and through their respective undersigned counsel, file this joint motion (the "Motion") for entry of an order pursuant to sections 105(a), 1104, and 1182 of title 11 of the United States Code (the "Bankruptcy Code"), revoking the subchapter V election of Free Speech Systems LLC (the "Debtor" or "FSS") and directing that further

---

[1]   The "Connecticut Plaintiffs" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, and Robert Parker.

[2]   The "Texas Plaintiffs" are Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine. For purposes of this Motion, Marcel Fontaine is one of the "Sandy Hook Families" for ease of identification, but his claims against the Debtor are distinct and not "Sandy Hook" related.

proceedings in this chapter 11 case comply with all applicable requirements under chapter 11 of the Bankruptcy Code. In support of the Motion, the Sandy Hook Families respectfully state as follows:

## PRELIMINARY STATEMENT

1.     FSS is not eligible for relief under subchapter V of the Bankruptcy Code because it is a "member of a group of affiliated debtors under this title that has aggregate non[-]contingent liquidated secured and unsecured debts in an amount greater than $7,500,000." 11 U.S.C. § 1182(1)(B)(i). Subchapter V is exclusively available to small businesses with limited resources and, more importantly, limited liabilities, such that Congress determined that they were entitled to streamlined reorganization procedures that deprive creditors of certain "bedrock" protections otherwise available in chapter 11. In determining whether a debtor is sufficiently "small" to qualify for subchapter V, Congress focused exclusively on the amount of liquidated debts owed to non-affiliated creditors. Where a debtor owes less than $7.5 million, Congress determined that the benefits of an expedited reorganization process outweigh the creditors' need for more fulsome protections, including application of the absolute priority rule. But where a debtor—or, as relevant here, "a group of affiliated debtors"—owes more than $7.5 million in liquidated debts, Congress provided creditors with the full scope of protections offered under chapter 11 of the Bankruptcy Code. The Sandy Hook Families hold liquidated judgments exceeding $1.4 billion, more than 186 times the statutory limit.

2.     It is no answer that the Sandy Hook Families's claims were unliquidated on July 29, 2022, when FSS commenced its subchapter V case. Congress imposed two *separate* tests to determine whether a "small business" is eligible for subchapter V, and

2

FSS must satisfy *both* tests.  *First*, FSS itself must have less than $7.5 million in liquidated debts "as of the date of the filing of the petition."  11 U.S.C. § 1182(1)(A).  Because FSS filed its subchapter V case before the Sandy Hook Families's claims were liquidated, it arguably meets this test.  *Second*, FSS cannot be a "member of a group of affiliated debtors under this title that has aggregate non[-]contingent liquidated secured and unsecured debts in an amount greater than $7,500,000."  *Id*. at § 1182(1)(B)(i).  Unlike the first test, this prong is *not* solely tested as of the petition date; indeed, such words do not appear at all in the subsection.  FSS therefore ceased qualifying as an eligible subchapter V debtor once Alex Jones ("Jones") filed his own chapter 11 case in December 2022 and the Sandy Hook Families's claims were liquidated.  Today, there is no question that FSS and Jones are "affiliated debtors" and that the Sandy Hook Families's claims have been liquidated in an amount exceeding $7.5 million.  Under the plain language of the statute, FSS is therefore ineligible to proceed under subchapter V.

3.       Revoking FSS's subchapter V election ensures that the Sandy Hook Families will gain the full suite of protections the Bankruptcy Code offers creditors under chapter 11.  For example, by excising the absolute priority rule, subchapter V allows the owner of a "mom-and-pop" business to retain its equity ownership notwithstanding the business's failure to pay creditors in full, provided that such creditors receive the disposable income generated by that business for three to five years.  That makes proportional sense where a debtor owes less than $7.5 million.  When the debtor owes creditors $1.4 *billion,* however, it makes no sense at all.  Larger claims require greater protections, and revocation is the appropriate mechanism for obtaining these protections.

4.      By this Motion, the Sandy Hook Families seek to ensure that they are fully protected in these chapter 11 cases.  In doing so, the Sandy Hook Families seek to minimize the disruption to the Debtor.  The Motion, for example, does *not* seek to dismiss the Debtor's case, or at this stage, seek conversion to a chapter 7 proceeding.  Rather, the Sandy Hook Families submit that the case proceed as a regular chapter 11 case—no different from Jones's individual chapter 11 case.  No official committee of unsecured creditors would need to be formed given the already-existing Official Committee of Unsecured Creditors in the Jones chapter 11 case, thus avoiding the unnecessary costs of two separate committees.  Finally, the Sandy Hook Families recognize the important work well underway by the subchapter V trustee, and respectfully submit that she be appointed as an examiner in the FSS chapter 11 case with the same responsibilities.  Indeed, revoking the Debtor's subchapter V election will allow both the FSS and Jones chapter 11 cases to efficiently proceed on parallel paths, rather than the current prospect of two separate plan confirmation proceedings.

5.      For these reasons, and those set forth more fully below, the Sandy Hook Families respectfully request that the Court revoke FSS's subchapter V election and ensure the Sandy Hook Families's entitlement to all of the protections that the Bankruptcy Code provides to creditors holding $1.4 billion in liquidated claims.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the Motion under 28 U.S.C. § 1334.  Venue is proper under 28 U.S.C. § 1408.  This is a core proceeding as defined in 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105, 1104, and 1182 of the Bankruptcy Code.

## BACKGROUND

### I.    The Pre-Petition Litigation

7.     In May 2018, a subset of the Connecticut Plaintiffs brought an action in Connecticut state court against, among others, FSS and Jones alleging defamation, intentional infliction of emotional distress, invasion of privacy, and civil conspiracy. *Lafferty* v. *Jones*, Case No. 18-6046436, Complaint (May 23, 2018) at ¶¶ 336–94. Substantially similar actions against the same defendants filed by the remaining Connecticut Plaintiffs were consolidated with this initial lawsuit under the caption *Lafferty* v. *Jones*, Case No. UWY-CV18-6046436-S, which resulted in a default judgment against, among others, FSS and Jones after years of non-compliance in respect of discovery requests and other court orders. *See Lafferty*, Nov. 15, 2021, Hr'g Tr. [Docket No. 579] (Nov. 18, 2021) at *9–13, *57 (ordering default judgment against Jones and other defendants because of, among other things, "willful non[-]compliance" with court orders).   After a damages trial in October 2022, a jury awarded approximately $965 million in compensatory damages to the Connecticut Plaintiffs.  *Lafferty*, Verdict for Plaintiffs [Docket No. 1010] (Oct. 12, 2022).   Subsequently, the Connecticut state court ordered approximately $323 million in common-law punitive damages and attorneys' fees and $150 million in statutory punitive damages.   *Lafferty*, Memo. Decision re Punitive Damages [Docket No. 1026] (Nov. 10, 2022) at *44–45.

8.     Also in 2018, subsets of the Texas Plaintiffs brought actions in Texas state court against FSS and Jones.[3]   Of these, Neil Heslin's and Scarlett Lewis's cases were

---

[3]     *See Heslin* v. *Jones*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas; *Lewis* v. *Jones*, Cause No. D-1-GN-18-006623, in the 53d District Court for Travis County, Texas; *Pozner* v. *Jones*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis

consolidated, and on January 13, 2022, the state court entered a final judgment in the consolidated litigation, *Heslin* v. *Jones*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas.

## II.    The FSS Bankruptcy

9.       Meanwhile, on July 29, 2022, FSS filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court").   Voluntary Petition of Free Speech Systems LLC [Docket No. 1] (the "FSS Petition").  The FSS Petition claimed "aggregate non[-]contingent liquidated debts" of "less than $7,500,000" and checked "choose[] to proceed under subchapter V of Chapter 11."  *Id.* at 2 (emphasis modified).   The FSS Petition declined to identify the Debtor as a "small business debtor as defined in 11 U.S.C. § 101(51D)."  *Id.*   The FSS Petition lists Jones as the 100% owner of the common equity of FSS and denotes Jones's "Membership Interest" in FSS. *Id*. at *8.

## III.    The Jones Bankruptcy

10.       On December 2, 2022—less than a month after the award of damages in *Lafferty*, but prior to the Connecticut state court's entry of judgment—Jones filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  *In re Alexander E. Jones*, Case No. 22-33553 (Dec. 2, 2022), Voluntary Petition of Alexander Emeric Jones [Docket No. 1] (the "Jones Petition").  The Jones Petition disclosed the decision to seek such relief before the Court because of an "affiliate case filed in the district," *i.e.*, this chapter 11 case.  *Id.* at *2.  The Jones Petition also responded "[y]es" to a question that asked "[a]re any bankruptcy cases pending or being filed . . . by an affiliate," noting that

County, Texas; *Fontaine* v. *Jones*, Cause No. D-1-GN-18-001605, in the 459th District Court for Travis County, Texas

Jones's "affiliate," *i.e.*, FSS, had filed the FSS Petition on July 29, 2022.  *Id.* at *3.

The Jones Petition likewise included an affirmation that "I am filing under Chapter 11,

but I am NOT a small business debtor according to the definition in the Bankruptcy

Code." *Id.* at *4 (emphasis in original).

11.     The Jones Petition estimated assets between $1,000,001 and $10 million

and aggregate liabilities between $1,000,000,001 and $10 billion.  *Id.* at 7.  The Jones

Petition lists several Connecticut Plaintiffs as creditors that hold the largest unsecured

claims against the estate, identifying each of these creditors' claims as contingent,

unliquidated, and disputed.  *See* Jones Petition, *List of Creditors Who Ha[ve] the 20*

*Largest Unsecured Claims Against You and Are Not Insiders*, 1–17.  Pursuant to

section 362 of the Bankruptcy Code, the Jones Petition automatically stayed all pending

litigation against his estate.

## IV.     The Connecticut and Texas Judgments

12.     However, upon joint stipulation modifying the automatic stay between the

Sandy Hook Families, FSS, and Jones, the Court entered an order allowing cases filed by

the Sandy Hook Families against FSS and Jones to proceed to entry of judgment, and to

allow any appeals once these judgments were entered.  *Jones*, Agreed Order Modifying

the Automatic Stay [Docket No. 58] (Dec. 19, 2022) at *2.  Judgment was entered in

Connecticut against Jones and FSS on December 22, 2022 (the "Connecticut Judgment").

*Lafferty*, Judgment on Verdict for Plaintiffs [Docket No. 1044] (Dec. 22, 2022).[4]

FSS and Jones owe in excess of $1,438,000,000 under the Connecticut Judgment.

---

[4]     Pursuant to section 17-2 of the Connecticut Practice Book, judgment enters when the last order
perfecting the judgment is entered.  Here, judgment entered on December 22, 2022.  *See Lafferty*,
Memo. Decision re New Trial and Remittitur Motions [Docket No. 1043] (Dec. 22, 2022) at *5–6.

13.     Jones has appealed the Connecticut Judgment to the Connecticut Appellate Court. *Lafferty*, Appeal Form [Docket No. 1050] (Dec. 29, 2022).

14.     The judgment rendered by the 261st District Court for Travis County, Texas, in favor of the Texas Plaintiffs was entered on January 13, 2023 (the "Texas Judgment").     Notice of Final Judgment [Docket No. 382] Ex. 1 (Jan. 13, 2023).  The Texas Judgment ordered that certain of the Texas Plaintiffs recover $50,043,653.80 against FSS and Jones. *Id.* at \*3.  On February 14, 2023, Jones filed his Schedules of Assets and Liabilities and Statement of Financial Affairs in his chapter 11 case.  Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket Nos. 161, 162] (the "Jones Schedules and Statements").  The Jones Schedules and Statements include claims in respect of the Connecticut Judgment and ***do not*** indicate this claim is "unliquidated," despite an instruction to do so if applicable.  Jones Schedules and Statements, Schedule E/F at \*2–8.

## RELIEF REQUESTED

15.     By this Motion, the Sandy Hook Families request entry of the Proposed Order revoking the Debtor's subchapter V election and directing that further proceedings under this chapter 11 case comply with all requirements under chapter 11 of the Bankruptcy Code.

## BASIS FOR RELIEF

16.     The plain text of section 1182 of the Bankruptcy Code excludes from eligibility under subchapter V any member of a group of affiliated debtors with aggregate non-contingent, liquidated debts in excess of $7,500,000.  The Jones Petition and subsequent entry of the Connecticut Judgment—an amount dwarfing $7,500,000— accordingly preclude the Debtor's election for treatment under subchapter V of the

Bankruptcy Code.  In proceedings under both subchapter V and chapter 13, numerous courts have concluded they cannot alter, modify, or waive these statutorily prescribed thresholds on debt.

17.     Accordingly, the Court should revoke FSS's election for treatment under subchapter V.  Revocation also serves the best interests of the Debtor's estate and its creditors, allowing FSS to continue operating and generating income, on the one hand, while ensuring critical protections for creditors that are otherwise absent from subchapter V, on the other.  Revocation lastly comports with the intent of Congress in enacting subchapter V for the benefit of debtors with only modest liabilities, and will not—on account of the work already undertaken by the subchapter V trustee and the already-existing Official Committee of Unsecured Creditors in the Jones chapter 11 case—disrupt or delay an orderly transition to chapter 11.

## I.     The Court Should Revoke FSS's Subchapter V Election Because FSS Is No Longer Eligible for Subchapter V Treatment

### A.     The Statutory Text Unambiguously Excludes FSS from Subchapter V

18.     Congress drafted section 1182 of the Bankruptcy Code to ensure that only certain debtors could proceed under subchapter V.  *See* 11 U.S.C. § 1182(1).  In defining the term "debtor," section 1182 expressly *excludes* "any member of a group of affiliated debtors under this title that has aggregate non[-]contingent liquidated secured and unsecured debts in an amount greater than $7,500,000 (excluding debt owed to 1 or more affiliates or insiders)."  11 U.S.C. § 1182(1)(B)(i).

#### i.     Jones and FSS Are Affiliated Debtors

19.     Section 101 of the Bankruptcy Code defines an "affiliate" as an "entity that directly or indirectly owns, controls, or holds with the power to vote, 20 percent or

more of the outstanding voting securities of the debtor . . . "   11 U.S.C. § 101(2)(A).

As the FSS Petition acknowledges, Jones own 100% of the membership interests of FSS.

FSS Petition, *List of Equity Security Holders*.   The Jones Petition likewise expressly

identifies FSS as an affiliate of Jones.  Jones Petition at 3.

### ii.   Jones and FSS Now Carry More Than $7,500,000 in Aggregate Non-Contingent Liquidated Debts

20.   The Jones Petition estimates between $1 billion and $10 billion in

aggregate liabilities, and lists the claims held by the Connecticut Plaintiffs.  *See id*. at 7.

The Jones Petition identifies these claims as contingent, disputed, and unliquidated.

Jones Petition, *List of Creditors Who Ha[ve] the 20 Largest Unsecured Claims Against

You and Are Not Insiders*, 1–7.  Not only were these claims liquidated at the time the

Jones Petition was filed, the Connecticut and Texas state courts have since entered the

Connecticut Judgment and the Texas Judgment respectively, which include in excess of

$1,438,000,000 owed to the Connecticut Plaintiffs and $50,043,653.80 to certain of the

Texas Plaintiffs.   *Lafferty*, Judgment on Verdict for Plaintiffs [Docket No. 1045]

(Dec. 22, 2022); Notice of Final Judgment [Docket No. 382] Ex. 1 (Jan. 13, 2023).

21.   Because amounts owed in respect of the Connecticut and Texas Judgments

are fixed, precise, and certain, these claims are liquidated and non-contingent.

*See, e.g.*, *In re Scott*, 2006 WL 3166841, at *2 (Bankr. S.D. Tex. Nov. 1, 2006)

("Courts have generally held that a debt is 'liquidated' if its amount is readily and

precisely determinable, as where the claim is determinable by reference to an agreement,

judgment, or by a simple computation.  A debt is liquidated if the amount due can be

determined with some degree of precision.").   Indeed, Jones recognizes this, as in the

recently filed Jones Schedules and Statements he acknowledges the amounts he owes to

the Connecticut Plaintiffs as liquidated. *See* Jones Schedules and Statements, Schedule E/F at *2–8.

22.     The pendency of appeals by FSS and Jones does not affect this conclusion. *See In re Xenos Yuen*, 2013 WL 5567266, at *2 (Bankr. S.D. Tex. Oct. 9, 2013) ("A final judgment is not required for a debt to be non[-]contingent or liquidated.  The fact that a judgment is on appeal does not make the debt contingent or unliquidated.  A judgment on appeal represents a liability which is fixed and non[-]contingent and remains a final, enforceable judgment until it is reversed, if ever, on appeal."); *see also In re Ibbott*, 637 B.R. 567, 579–82 (Bankr. D. Md. 2022) (collecting cases in support of the same proposition).

### iii.     This Requirement Is Not Fixed to the Petition Date

23.     The plain text of section 1182 of the Bankruptcy Code requires that any debtor electing subchapter V treatment meet these eligibility requirements for the duration of its chapter 11 case.  While section 1182(1)(A) makes reference to the petition date in respect of certain eligibility requirements not relevant here, section 1182(1)(B) does not.  *Compare* 11 U.S.C. § 1182(1)(A) (providing that certain requirements are to be assessed "as of the date of the filing of the petition . . . ") *with* § 1182(1)(B) (providing for no such limitation).

24.     The Court should afford significance to this omission.  *See Dean* v. *United States*, 556 U.S. 568, 573 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Russello* v. *United States*, 464 U.S. 16, 23 (1983)); *Burnett* v. *Stewart Title, Inc.*, 431 B.R. 894, 897 (S.D. Tex. 2010), *aff'd sub nom.*

*In re Burnett*, 635 F.3d 169 (5th Cir. 2011) (same).  The presence of this limitation in section 1182(1)(A) and subsequent omission *from the very next subsection* means that Congress "considered the unnamed possibility and meant to say no to it." *See Barnhart* v. *Peabody Coal Co.*, 537 U.S. 149, 168 (2003).

25.     When the Jones Petition was filed, and even more so, once the Connecticut and Texas state courts entered the Connecticut Judgment (December 22, 2022) and Texas Judgment (January 13, 2023), respectively, FSS became a member of a group of affiliated debtors with aggregate non-contingent liquidated debts over $7,500,000 owed to non-insiders or affiliates.  FSS therefore, for purposes of subchapter V, is "not a debtor."  *See* 11 U.S.C. § 1182(1)(B)(i).

**B.     The Court Should Not Disregard the Limitations Imposed by Section 1182(1)(B)(i)**

26.     The Court should accordingly revoke the Debtor's subchapter V election. In the two cases to have directly considered eligibility requirements under section 1182 in this context, the court revoked the debtor's subchapter V election on the basis of the plain meaning of the statutory text.  *See In re Serendipity Labs, Inc.*, 620 B.R. 679, 865–686 (Bankr. N.D. Ga. 2020) (revoking the debtor's subchapter V designation because the debtor does not satisfy the "plain language" of the applicable definition in the Bankruptcy Code and noting that "the Court's inquiry ends there"); *In re Phenomenon Mktg. & Ent., LLC*, 2022 WL 1262001, at *5 (Bankr. C.D. Cal. Apr. 28, 2022), *as modified by*, 2022 WL 3042141 (Bankr. C.D. Cal. Aug. 1, 2022) (enforcing the statute's "plain language" and finding the debtor did not meet the criteria of section 1182 and therefore could not proceed under subchapter V).

27.     Courts in both cases considered and rejected the possibility that practical considerations should govern in derogation of the plain statutory text. In *Serendipity Labs,* for example, the court dismissed the debtor's arguments that revocation might increase administrative expense or destroy value for stakeholders, acknowledging that "[w]hile that may be true, Congress enumerated specific eligibility requirements under [section] 1182 without affording courts discretion to consider the potential effect of the election on the bankruptcy estate.  The benefits of subchapter V are available to debtors who qualify and are not available to those who do not."  620 B.R. at 682–83; *see also In re Phenomenon Mktg. & Ent.,* 2022 WL 1262001, at *5 (observing that "[t]o the extent that Congress did intend entities such as the Debtor to benefit from subchapter V, it is the role of Congress, not this Court, to amend the statute accordingly").[5]

28.     These decisions reflect a broader consensus that debt limits prescribed by the Bankruptcy Code are neither discretionary nor flexible.  Courts have reached similar conclusions in the context of chapter 13, rejecting policy arguments that would privilege discretion in favor of adherence to the statutory text.  *See, e.g.*, *In re Smith*, 435 B.R. 637, 649 (B.A.P. 9th Cir. 2010) ("To the extent the existing chapter 13 debt limits are too low to provide chapter 13 relief to homeowners impacted by the current economic climate, that is a matter within the purview of Congress."); *In re Bailey-Pfeiffer*,

---

[5]     Rule 1020(b) of the Federal Rules of Bankruptcy Procedure—which provides that "a party in interest may file an objection to the debtor's [subchapter V election] . . . no later than 30 days after the conclusion of a meeting of the creditors held under § 341(a) of the [Bankruptcy Code]" offers no basis to deny revocation here.  *See* Fed. R. Bankr. P. 1020(b).  *First,* the circumstances giving rise to revocation did not arise until December 2, 2022, when the Jones Petition was filed.  *Second,* in any event, a court is empowered to revoke a debtor's subchapter V election *sua sponte* if it does not meet the eligibility requirements of subchapter V.   *See In re Nat'l Small Bus. All., Inc. (NSBA),* 642 B.R. 345, 347 (Bankr. D.D.C. 2022).

2018 WL 1896307, at *4 (Bankr. W.D. Wis. Mar. 23, 2018) ("The court cannot limit application of the debt limits to 'large business owners' based on legislative history when the statutory language is clear on its face and has no such limitation . . . even if all parties agree that it would be better if [the debtor] were eligible to be a chapter 13 debtor, that consensus cannot override Congress's decision to limit those persons eligible for chapter 13 relief in enacting the 109(e) debt limits.").

29.     Much the same is true where the Bankruptcy Code contemplates aggregate debt limits for multiple filers.   *See, e.g.*, *In re Miller*, 493 B.R. 55, 61 (Bankr. N.D. Ill. 2013) ("Because the [debtors'] unsecured debt exceeds $360,475, they are ineligible to be debtors in a joint chapter 13 case, whatever their eligibility to file individual chapter 13 cases."); *In re Pete*, 541 B.R. 917, 920 (Bankr. N.D. Ga. 2015) ("Perhaps Congress should raise the debt limits for eligibility for chapter 13 cases for single and joint filers and allow each debtor to qualify separately, but it has not yet decided to do so.").

30.     Courts have acknowledged that adherence to statutorily defined limitations on indebtedness in these contexts may require that a debtor seek relief under another chapter of the Bankruptcy Code.   *See id*. at 922 ("In considering such debt limits, Congress determined that those who exceed these debt limits should have to seek bankruptcy relief in other ways or chapters, which might include chapters where greater creditor protections exist—such as a disclosure statement, voting on plan confirmation and the absolute priority rule found in chapter 11."); *In re Bailey-Pfeiffer*, 2018 WL 1896307, at *4 ("[The debtor] is entitled to continue in bankruptcy, but only in a chapter 7 or chapter 11 case; she cannot continue under chapter 13.").

31.     In sum, overwhelming weight of authorities supports the conclusion that FSS's failure to satisfy the eligibility requirements for aggregate indebtedness described in section 1182 of the Bankruptcy Code should lead the Court to revoke the Debtor's subchapter V election.  *See id.* at *4 ("The soundest policy arguments do not trump the statutory language, and, while the decision to dismiss or convert a case under section 1307 is discretionary, the court is bound to apply its discretion consistent with the plain terms of the [Bankruptcy] Code.  Those plain terms preclude the court from allowing a person who is ineligible to be a chapter 13 debtor from continuing in chapter 13.").

## II.     The Court Should Revoke the Debtor's Subchapter V Election, In Any Event

32.     Because FSS fails to satisfy the eligibility requirements of section 1182, the Bankruptcy Code *requires* its subchapter V election be revoked.   In addition, substantial persuasive authorities suggest that the Court also *should* do so because revocation under these circumstances serves the best interests of both FSS and its creditors.  Revocation allows for the possibility that the former will continue operations as a going concern, on the one hand, and ensures that the latter are afforded the critical structural protections that Congress intended should apply in chapter 11 cases outside the context of subchapter V.

### A.     Courts May Revoke a Subchapter V Election Where Revocation Serves the Best Interests of the Estate and Its Creditors

33.     The Bankruptcy Code does not directly address the revocation of a debtor's subchapter V election.  At least one court, however, recently concluded that revocation of a debtor's subchapter V election need not result in liquidation and may, if "in the best interests of creditors and the estate," continue under chapter 11, subject to

all applicable requirements thereunder.  *See NSBA*, 642 B.R. at 347.  Indeed, that court held that, where a debtor becomes ineligible for subchapter V during the case, the court is empowered to revoke its subchapter V designation.  *See id.* at 349–50.

34.     In *NSBA*, the court determined that a subchapter V debtor that had failed to confirm a plan on five occasions could not proceed under subchapter V, given the "Debtor's failure to propose a [] confirmable plan."  *Id.* at 347, 349.  Notwithstanding the Bankruptcy Code's silence on revocation in this manner, the court concluded it was empowered to revoke the debtor's subchapter V election for two reasons:  (a) courts permit a debtor to elect to proceed under subchapter V post-petition, and it follows that the reverse must also be permissible; and (b) section 105 of the Bankruptcy Code "empower[s the court] to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code."  *See id.* at 348–49 (quoting 11 U.S.C. § 105).

35.     Having concluded the debtor was no longer eligible under subchapter V and that sufficient authority existed to revoke the debtor's subchapter V election, the court likewise held that revoking the debtor's subchapter V election—rather than dismissing the chapter 11 case or converting it to chapter 7—served the best interests of the estate and its creditors.  *Id.* at 349–50.  In doing so, it focused on the negative impact that conversion to chapter 7 or outright dismissal would have on the debtor's estate and the recoveries available to creditors.  The court noted that dismissal would "once again" place the debtor "right back into the fray of the state court litigation" that existed before it filed, and that conversion to chapter 7 would result in the "immediate termination" of the debtor's business, at the cost of "little-to-no value to be distributed to creditors."  *See id.*

Revocation of the debtor's subchapter V election without conversion or dismissal, by contrast, would "preserve the only value currently held by the Debtor," ensuring "the ability to continue to attempt to reorganize under the rigors and requirements of standard chapter 11." *Id.*

36.    In sum, the *NSBA* court held that "[i]n a situation where a Debtor has elected subchapter V status but is either (a) not eligible or (b) cannot meet the deadlines and requirements thereof, allowing for the revocation of the subchapter V designation so that the debtor may proceed under standard chapter 11 is consistent with the right conferred to a debtor in the Bankruptcy Code to convert a case to another chapter therein. There are benefits to both debtors and creditors to allow a case to remain under chapter 11 with a revocation of the subchapter V election." *Id.* at 349 (citations omitted).

### B.    Revocation Serves the Best Interests of the Estate and Its Creditors

37.    Here, revocation of FSS's subchapter V election and subsequent proceedings consistent with the requirements of chapter 11 would similarly serve the best interests of the Debtor's estate and its creditors. Unlike the threshold requirements for eligibility under section 1182, there is "no bright line test" for determining best interests and "[t]he decision is left to the Court's discretion." *See In re Ozcelebi*, 639 B.R. 365, 425 (Bankr. S.D. Tex. 2022). As in *NSBA*, however, courts generally consider the impact of conversion or dismissal on the debtor's creditors in cases where a debtor is ineligible to proceed under subchapter V. *See id.* In the case of dismissal, such considerations include the possibility that the debtor could file for bankruptcy again or what recoveries, if any, the creditors might then obtain. *See id.* (concluding that conversion served the best interests of all parties, because by the debtor's "own admission, dismissal of this case is unlikely to result in recovery for the Debtor's

17

unsecured creditors"); *In re Hao*, 644 B.R. 339, 349 (Bankr. E.D. Va. 2022) ("A dismissal without prejudice would only invite the Debtor to file the same case a second time. There would be no resolution of the creditors' claims outside of bankruptcy.").

38.     An orderly transition to chapter 11 would provide FSS's creditors significant structural protections—including the benefit of the absolute priority rule, heightened requirements for cramdown, and adequate information under a disclosure statement—which are otherwise unavailable on account of subchapter V. *See generally* 11 U.S.C. §§ 1125, 1129 (requiring the claims of a dissenting class of creditors to be paid in full before any class of creditors junior to the class may receive or retain property in satisfaction of their claims—the "absolute priority rule"); (allowing a court to approve a plan of reorganization as long as one "impaired" class votes in favor of the plan and other requirements are met—the "cramdown requirements"); (requiring a statement containing "adequate information" and meeting specific notice requirements be approved by the court before a plan is confirmed—the "disclosure statement"); *see also In re Lehman Bros. Holdings Inc.*, 855 F.3d 459, 470 (2d Cir. 2017) (noting that "the absolute priority rule" is a "bedrock principle of bankruptcy law, under which creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets").

39.     Although the Sandy Hook Families would not object to conversion to chapter 7 or outright dismissal, chapter 11 likely offers the most constructive path forward.  Conversion to chapter 7 may adversely affect creditor recoveries and dismissal at this stage would likely destroy whatever going-concern value FSS might otherwise

make available to creditors like the Sandy Hook Families.  Dismissal, as in *NSBA*, would return the parties "right back into the fray of [] state court litigation" with little obvious benefit to any party.  *See NSBA*, 642 B.R. at 349.  Accordingly, chapter 11 represents the least disruptive path forward at this juncture.

## III.    Revocation Comports with Congressional Intent in Enacting Subchapter V

40.    Although not dispositive, the same policy concerns that animated the Congressional enactment of subchapter V in the first instance also buttress the revocation of FSS's subchapter V election.  Indeed, Congress enacted subchapter V in an effort to benefit "typical[] family-owned businesses" by "streamlin[ing] the process by which small[-]business debtors reorganize and rehabilitate their financial affairs." H.R. Rep No. 116–171, at *1 (2019); *see also* Press Release, Amy Klobuchar, Senator, Klobuchar Joins Colleagues to Introduce Bipartisan Legislation to Help Small Businesses Restructure Debt (April 10, 2019), https://www.klobuchar.senate.gov/public/index.cfm/2019/4/klobuchar-joins-colleagues-to-introduce-bipartisan-legislation-to-help-small-businesses-restructure-debt   (observing that the enactment of subchapter V "ensur[es] that when mom-and-pop businesses fall on hard times, they have a chance to recover and be successful").  The "typical family-owned businesses" and "mom-and-pop[s]" that Congress aimed to protect typically do not have liquidated claims against them exceeding $1.4 billion.

41.    Congress enacted subchapter V "in response to [the] concern" that "[w]hile the Bankruptcy Code envisions that creditors will play a major role in monitoring [chapter 11] cases" for small businesses, this engagement "often does not occur, chiefly because creditors in these smaller cases do not have claims large enough to warrant the time and money to participate actively in these cases."  H.R. Rep No. 116–

171, at *3 (2019); *see also* 116 Cong. Rec. E977 (daily ed. July 24, 2019) (statement of Rep. Sheila Jackson Lee) (same).

42.    This policy concern does not apply here.  The Sandy Hook Families are the largest creditors in this chapter 11 case, have obtained judgments totaling over $1.4 *billion* against both FSS and Jones, and accordingly are implicated in both chapter 11 cases in a manner that would "warrant the time and money to participate actively in [both] cases."  H.R. Rep No. 116–171, at *3 (2019).  Both the Connecticut Plaintiffs and the Texas Plaintiffs have separately retained (multiple) counsel in both chapter 11 cases, and the Official Committee of Unsecured Creditors in the Jones chapter 11 case is (or will soon be) represented by professionals from three firms so concerned with the administration of equal justice under the law that they have discounted their rates in part or in full to ensure nothing less.  *See Jones*, Application of the Official Committee of Unsecured Creditors of Alexander E. Jones to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel [Docket No. 96] (Jan. 18, 2023); Application of the Official Committee of Unsecured Creditors of Alexander E. Jones to Retain and Employ Nardello & Co. LLC as Specialized Forensic Financial Advisor [Docket No. 136] (Feb. 6, 2023).

43.    These chapter 11 cases do not resemble the ordinary subchapter V case contemplated by Congress precisely because the Sandy Hook Families will continue to "play a major role in monitoring" both chapter 11 cases.  *See id.*  Said another way, the typical "mom-and-pop" business does not generate billions of dollars of liability. The fact that FSS and Jones have done so reinforces the notion that they should not benefit from the special protections Congress intended should apply only to small

businesses with modest liabilities capable of providing meaningful recoveries to their creditors from the small business's future income.

IV.     **The Subchapter V Trustee's Important Work Will Minimize Any Delay or Disruption That Will Result in This Chapter 11 Case**

44.     To date, the subchapter V trustee has made significant progress in this chapter 11 case and the Sandy Hook Families understand that she will soon share a preliminary draft of the report that the Court ordered that she publicly file regarding the Debtor's financial affairs. *See Order Expanding the Subchapter V Trustee's Duties*, [Docket No. 183] (Sept. 20, 2022) ("For the reasons stated on the record at the September 20, 2022 hearing, the subchapter V trustee's duties in this bankruptcy case are expanded under 11 U.S.C. § 1183(b)(2). The subchapter V trustee is directed to investigate the Debtor and file a report pursuant to 11 U.S.C. §§ 1106(a)(3) & (4) as soon as practicable."); Sept. 20, 2022 Hr'g Tr., [Docket No. 194] at *255–56 ("[T]here has to be greater transparency in this case. I understand that PQPR may want to have discussions about what that means, but it's going to cost what it costs . . . I'm charging the trustee to do the work, and it'll cost what it costs."). This important work will ensure minimal disruption or delay as this chapter 11 case transitions from subchapter V.

45.     The Sandy Hook Families envision an important, continued role for the subchapter V trustee if the Debtor's subchapter V designation is revoked and the FSS case proceeds under chapter 11. The Sandy Hook Families respectfully submit that the subchapter V trustee should be appointed as an examiner in the FSS chapter 11 case with substantially the same responsibilities as her current mandate.

## RESERVATION OF RIGHTS

For the avoidance of doubt, the Sandy Hook Families reserve their rights to amend or supplement this Motion on any basis and reserve all rights and remedies with respect to the Motion and otherwise in this chapter 11 case.

## CONCLUSION

For these reasons set forth above, the Sandy Hook Families request that the Court enter the Proposed Order (a) revoking the Debtor's subchapter V designation, (b) allowing this chapter 11 case to proceed under all applicable provisions of chapter 11 of the Bankruptcy Code, and (c) granting such other relief as may be appropriate under the circumstances.

Dated: February 15, 2023

**MCDOWELL HETHERINGTON LLP**
By: */s/ Avi Moshenberg*
Avi Moshenberg
State Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone:  (713) 337-5580
Fax:  (713) 337-8850
E-mail:  Avi.Moshenberg@mhllp.com

**CHAMBERLAIN, HRDLICKA,
WHITE, WILLIAMS & AUGHTRY, PC**
By: */s/ Jarrod B. Martin*
Jarrod B. Martin
State Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, TX 77002
Telephone:  (713) 356-1280
Fax:  (713) 658-2553
E-mail:  jarrod.martin@chamberlainlaw.com

**WILLKIE FARR & GALLAGHER LLP**
By: */s/ Jennifer J. Hardy*
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, TX 77002
Telephone:  (713) 510-1766
Fax:  (713) 510-1799
E-mail:  jhardy2@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000
Fax:  (212) 728-8111
E-mail:  rstrickland@willkie.com
E-mail:  slombardi@willkie.com
E-mail:  csisco@willkie.com

***Co-Counsel to the Texas Plaintiffs***

Respectfully submitted,

**CAIN & SKARNULIS PLLC**
By: */s/ Ryan E. Chapple*
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone:  (512) 477-5000
Fax:  (512) 477-5011
E-mail:  rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone:  (203) 336-4421
E-mail:  asterling@koskoff.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Martin J. Salvucci (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Fax:  (212) 757-3990
E-mail:  kkimpler@paulweiss.com
E-mail:  chopkins@paulweiss.com
E-mail:  msalvucci@paulweiss.com

***Co-Counsel to the Connecticut Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Motion has been served on counsel for the Debtor, the Debtor, and all parties receiving or entitled to notice through CM/ECF on this 15th day of February, 2023.

*/s/ Ryan E. Chapple*

Ryan E. Chapple