```
1                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF TEXAS
2                         HOUSTON DIVISION

3                                )   CASE NO: 22-60043-cml
                                 )
4                                )   Houston, Texas
     FREE SPEECH SYSTEMS, LLC,   )
5                 Debtor.        )   Wednesday, August 24, 2022
                                 )
6                                )   10:01 AM - 10:40 AM
     -----------------------------)
7

8                              TRIAL

9          BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                  UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For Free Speech          RAYMOND WILLIAM BATTAGLIA
     Systems, LLC:            KYUNG SHIK LEE
13                            Law Offices of Ray Battaglia, PLLC
                              66 Granburg Circle
14                            San Antonio, TX 78218

15                            R. J. SHANNON
                              Shannon & Lee LLP
16                            700 Milam Street, Suite 1300
                              Houston, TX 77002
17
     David Wheeler, et al.:   ALINOR C. STERLING
18                            Koskoff Koskoff & Beider PC
                              350 Fairfield Avenue
19                            Bridgeport, CT 06604

20                            RYAN E. CHAPPLE
                              Cain & Skarnulis PLLC
21                            303 Colorado Street, Suite 2850
                              Austin, Texas 78701
22
     For the U.S. Trustee:    HA MINH NGUYEN
23                            Office of the U.S. Trustee
                              515 Rusk Street, Suite 3516
24                            Houston, TX 77002

25
```

```
 1    For Leonard Pozner        AVI MOSHENBERG
      Et al.:                   McDowell Hetherington
 2                              1001 Fannin Street, Suite 2700
                                Houston, TX 77002
 3
                                JARROD B. MARTIN
 4                              Chamberlain Hrdlicka
                                1200 Smith Street, Suite 1400
 5                              Houston, TX 77002

 6    Trustee:                  MELISSA A. HASELDEN
                                Haselden Farrow, PLLC
 7                              Pennzoil Place
                                700 Milam, Suite 1300
 8                              Houston, TX 77002

 9    ALSO PRESENT:             W. MARC SCHWARTZ

10    Court Reporter:           Unknown

11    Courtroom Deputy:         Unknown

12    Transcribed by:           Veritext Legal Solutions
                                330 Old Country Road, Suite 300
13                              Mineola, NY 11501
                                Tel: 800-727-6396

14

15    Proceedings recorded by electronic sound recording;
      Transcript produced by transcription service.
16

17

18

19

20

21

22

23

24

25
```

```
 1        HOUSTON, TEXAS; WEDNESDAY, AUGUST 24, 2022; 10:01 AM
 2                        (Call to Order)
 3        THE COURT:  Okay.  Good morning, everyone.  This
 4   is Judge Lopez.  Today is August 24th.  I'm going to call
 5   the 10 a.m. case, which is Free Speech Systems, LLC.  Folks,
 6   the line is completely unmuted so I would ask everyone to
 7   please take a look at your phone and place it on mute.  I'm
 8   trying to avoid muting the entire line and having people hit
 9   5*, but if I start to get a little bit of back noise, I will
10   do that.  So, again, please take a look at your phone and
11   just put it on mute at this time and let us proceed.  Why
12   don't we take appearances, starting in the courtroom?
13        MR. LEE:  Good morning, Your Honor.  Nice to see
14   you again.
15        THE COURT:  Good to see you.
16        MR. LEE:  Kyung Lee with Shannon & Lee on behalf
17   of the Debtor, FSS, Free Speech Systems, LLC.  At counsel's
18   table today with me is Marc Schwartz, the Chief
19   Restructuring Officer, and on video, we should have Mr. Ray
20   Battaglia, who is lead counsel for the Debtor and I think we
21   may also have Mr. R. Shannon -- R.J. Shannon, with my firm,
22   but he may be attending a confirmation hearing in front of
23   Judge Rodriguez, so he may not be on video today.  But those
24   are the parties in front of you for the Debtor.
25        THE COURT:  Thank you.  Good morning, Mr.
```

1    Schwartz.

2            MR. CHAPPLE:  Good morning, Your Honor.

3            THE COURT:  Good morning.

4            MR. CHAPPLE:  Ryan Chapple on behalf of the

5    Connecticut Plaintiffs.  I believe my colleague, Alinor

6    Sterling, is on the video, as well.

7            THE COURT:  Yes, I see her.

8            MR. CHAPPLE:  Okay.

9            THE COURT:  Good morning.

10           MR. CHAPPLE:  Good morning.  Thank you.

11           MR. MOSHENBERG:  Good morning, Your Honor.

12           THE COURT:  Good morning.

13           MR. MOSHENBERG:  Avi Moshenberg on behalf of the

14   Texas Plaintiffs.  And also attending by phone is Jarrod

15   Martin, Your Honor.

16           THE COURT:  Okay.  Good morning.

17           MR. MOSHENBERG:  Good morning.

18           MR. NGUYEN:  Good morning, Your Honor.  Ha Nguyen

19   for the U.S. Trustee.  Also with me is Millie Sall, who is

20   the Assistant U.S. Trustee.

21           THE COURT:  Okay.  Good morning.  Good morning.

22           MS. HASELDEN:  Good morning, Your Honor.  Melissa

23   Haselden, Subchapter 5 Trustee.

24           THE COURT:  Good morning.  Okay.  Anyone wish to

25   make an appearance who is on the phone and attending by

1    video?  It sounds like we've got the floor covered, so, Mr.

2    Lee, I'll turn it over to you.

3            MR. LEE:  Thank you, Your Honor, and for the

4    record, Kyung Lee for the Debtor, Free Speech Systems, LLC.

5    I think there are three matters today -- well, two really,

6    matters and a third topic which I'd like to address with

7    Court.

8            THE COURT:  Okay.

9            MR. LEE:  The first is the continuation and the

10   amendment on the Cash Collateral Order.

11           THE COURT:  Okay.

12           MR. LEE:  And I believe Mr. Battaglia and I have

13   wrote the parties and with PQPR and we have an agreement,

14   which I believe Mr. Battaglia has uploaded to the Court and

15   there's a revised budget.  I am not well learned on that

16   topic, so I'm going to have to let Mr. Battaglia address

17   that issue, so that will be Topic #1.

18           THE COURT:  Okay.

19           MR. LEE:  Topic #2 is, Mr. Chapple and I will

20   update you on where we are on the Emergency Motion of the

21   Stay, Docket #15.

22           THE COURT:  Okay.

23           MR. LEE:  And then finally, #3 will be a short

24   report from Mr. Schwartz as to the business developments on

25   the case.

1          THE COURT:  Okay.

2          MR. LEE:  And that will be very short, but I just

3     wanted to let you know that's the structure of today's

4     hearing from the Debtor's perspective.

5          THE COURT:  Okay.  Thank you very much.

6          MR. LEE:  So, I'm going to turn it over to Mr.

7     Battaglia on the Cash Collateral Order.

8          THE COURT:  Okay.  Mr. Battaglia, can you hear me

9     okay?

10         MR. BATTAGLIA:  I can, Your Honor.  Can you hear

11    me?

12         THE COURT:  Just fine.  Thank you.  Good morning.

13         MR. BATTAGLIA:  Good morning.  The Court entered a

14    Cash Collateral Order on August 3rd, I believe it was, and

15    then modified it at a hearing a week or so ago.  And what we

16    have done is incorporated those two Orders -- I'm getting

17    feedback here, Judge.  I'm sorry.  Incorporated those two

18    Orders into a Second Amended Cash Collateral Order.  The

19    Order has been circulated and discussed and negotiated with

20    the Plaintiff's counsel, with the U.S. Trustee and with the

21    Subchapter 5 Trustee.  The budget attached takes us through

22    September 16th.  The Order contemplates a hearing on

23    September 13th at 5:30, which is a date, that I understand

24    has been discussed before.

25         THE COURT:  Okay.  Let me -- I -- and the proposed

1    Order, is that the version that was filed at Docket #96

2    yesterday?  That's the one that I've reviewed.

3              MR. BATTAGLIA:  I believe so, Your Honor.  It was

4    the Order that was uploaded last night after 7 o'clock or

5    so.

6              THE COURT:  Okay.  Thank you.  That's the one I've

7    had the opportunity to review.  Let me hear from other

8    parties who wish to -- and we're just talking about the cash

9    collateral.

10             MR. NGUYEN:  Your Honor, if I may address the

11   Court.  If we look at the Cash Collateral Budget, and I

12   talked to Mr. Battaglia about this.

13             THE COURT:  Mm hm.

14             MR. NGUYEN:  There are two payments within the

15   budget, $100,000 to Mr. Pattis and another $50,000 to Mr.

16   Renault.  Just because it's on the Cash Collateral Budget

17   and Your Honor approved the cash collateral, doesn't mean

18   that those payments are willing to be made.  There are

19   pending applications to employ these counsel.  I just want

20   to make that real clear.  Those payments should not be made

21   until Your Honor signs those employment applications for Mr.

22   Pattis and Mr. Renault.

23             THE COURT:  Yeah.  I read that as just having it

24   in the budget subject to the Court signing the application,

25   but I appreciate the clarification.

1          MR. NGUYEN:  Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MR. BATTAGLIA:  And Your Honor -- Ray Battaglia,

4     that is clearly what we're doing.  There are two conditions

5     precedent to payment, one is retention, and one is a budget.

6          THE COURT:  Okay.  Thank you.

7          MR. MOSHENBERG:  Your Honor, on behalf of the

8     Texas Plaintiffs, we're fine with the proposed Interim Cash

9     Collateral Order.

10         THE COURT:  Okay.  I just had just a couple of

11    clarifying questions for my part and I'd like to just hear

12    what's going on with the Motion to, let's say, just so I

13    understand where that is so I can think about it all at the

14    same time because they're somewhat interconnected.  But the

15    one is -- the simple one is, September 13th works and I'm

16    now going to start teaching a class and it's going to take

17    me away in the morning.  But I can do 1 p.m. on September

18    13th -- 1:30 p.m. on September 13th if that would work for

19    the parties.  If not, let's pencil that in and then we can

20    find a date that works.  But I'll be out that -- most of

21    that morning.

22         MR. MOSHENBERG:  Okay.  I think tentatively,

23    that's fine, but I'll just double check with my team.

24         THE COURT:  Okay.

25         MR. MOSHENBERG:  That should work, Your Honor.

1          THE COURT:  Okay.

2          MR. MOSHENBERG:  In terms of the Motion from the

3     Stay, that's not really a Texas Plaintiffs' issue.

4          THE COURT:  Yeah.

5          MR. MOSHENBERG:  So, if you'd like, we can hand it

6     over.

7          THE COURT:  Just to, kind of, hear your thoughts,

8     Mr. Chapple, just as it all relates together because it

9     sounds like these -- there are certainly items within the

10    budget that contemplate a resolution on the Motion to Lift

11    Stay, although nothing has been put before me.  I just want

12    to understand so I understand -- fully understand what's

13    happening in the budget.

14         MR. CHAPPLE:  That's correct, Your Honor.  Excuse

15    me.  And I appreciate the opportunity.  So, let me -- let me

16    catch the Court up to speed on goings on the past few days.

17    We have been negotiating back and forth with the Debtor -- I

18    say, "we", the Connecticut Plaintiffs, knowing that the

19    hearing on the Connecticut Plaintiffs' Emergency Lift Stay

20    is set for today.  We had gotten Your Honor to the point

21    where we were exchanging red-lines and an Agreed Order.

22    There are two issues hanging out there that are yet to be

23    agreed to.  One, I don't have any heartburn about it being

24    resolved.  The other one, I thought we were far along to get

25    it resolved, and then Your Honor, last night I saw the

```
1   Applications to Employ that were filed by the Debtors,
2   specifically the application to employ Mr. Pattis.  I
3   believe on the current version that is filed, the
4   application, the Debtors are seeking authority to pay Mr.
5   Pattis for fees that he alleges that he incurred during the
6   month of August, when the Stay was in place, when the
7   Connecticut -- and Your Honor, let me -- pardon me, let me
8   segue just a little bit.  We -- we filed a Notice of Filing
9   with you a week or so ago.
10           THE COURT:  On the remand?
11           MR. CHAPPLE:  Yes, Your Honor.
12           THE COURT:  Right.
13           MR. CHAPPLE:  To make sure the Court was fully
14   aware of the goings on in Connecticut.
15           THE COURT:  I appreciate it.
16           MR. CHAPPLE:  And so, basically, what has been
17   going on in Connecticut, the trial judge said that they were
18   going to proceed against Mr. Jones only, that the claims
19   against Free Speech were stayed, there was a removal, there
20   was a remand back.  In the Remand Order, the Connecticut
21   Bankruptcy Court judge specifically held that the Trial
22   Court judge was acting properly, was not violating the Stay,
23   was only pursuing the claims -- or was only allowing the
24   claims against Mr. Jones to go forward.  They had this
25   antiquated jury selection process that we talked about in
```

1    Connecticut where it takes, essentially, three or four weeks

2    to pick a jury.  They do individual voir dire.  So, they've

3    been going through that process as to the Connecticut

4    Plaintiffs and to Mr. Jones.  So, in our discussions, we had

5    talked about a resolution that included the Connecticut

6    Plaintiffs not objecting to the retention of Mr. Jones or

7    Mr. Renault -- excuse me, Mr. Pattis or Mr. Renault.  Mr.

8    Renault is a little bit of a different animal because he's

9    going to be paid hourly as I understand it.  Mr. Pattis is

10   seeking a flat fee -- a flat monthly fee for the time that

11   he's going to be trying the case in Connecticut.  Our

12   discussions have been focused on that fee going forward,

13   from the day the Stay would be lifted.

14           THE COURT:  Prospectively.  Got it.

15           MR. CHAPPLE:  Going forward, yes.

16           THE COURT:  Okay.

17           MR. CHAPPLE:  Now, when I saw the application, I

18   saw that, as it's written, the Debtor is seeking

19   authorization to pay fees for Mr. Pattis for August work.

20   Now, we can't -- the Connecticut Plaintiffs, and I don't

21   think anyone else in this case, can agree to that and we're

22   not going to agree with that.  I spoke with Mr. Lee this

23   morning.  It's my understanding that the application was

24   filed because we wanted to get something in front of you

25   before the hearing.  It's my understanding that they are

1    working on that issue, so my thought is, the applications

2    get set at a date certain in the near future, the hearing on

3    the Motion to Lift Stay gets set on that day.  Contingent in

4    our Agreed Order Lifting Stay would be your approval of the

5    retention of them so they can have counsel in Connecticut.

6    And in the meantime, we'll continue to work with the Debtor

7    to try to resolve those two issues.  One that I told you I

8    don't think will be a problem, this other one is the one

9    that I just described.  I'm hoping that we can get there, if

10   we can, then I think it should be -- and I don't want to

11   speak out of turn.  I know that -- I know that the United

12   States Trustee's Office may have questions, the other

13   parties may have questions, but that's just --

14        THE COURT:  Yeah.  The applications got filed --

15   no, I appreciate it.

16        MR. CHAPPLE:  That's, kind of, where we --

17        THE COURT:  An application was filed, and everyone

18   can have an opportunity to look at it and react to it.

19        MR. CHAPPLE:  Sure.

20        THE COURT:  But I appreciate the update.

21        MR. CHAPPLE:  Yes.

22        THE COURT:  That's what I needed to hear.

23        MR. CHAPPLE:  Okay.

24        THE COURT:  I needed to understand -- kind of,

25   understand where things stand.  So, there is a process that

1   has started in Connecticut, I'm assuming?  It sounds like

2   against Mr. Jones and --

3             MR. CHAPPLE:  That's correct, Your Honor.

4             THE COURT:  -- if the Stay then is lifted, then

5   the Connecticut State Court would then, essentially, take

6   out all the cases, including Free Speech, the second time

7   (indiscernible)

8             MR. CHAPPLE:  Correct, correct, correct.  Yes.

9             THE COURT:  Okay, okay, okay.  Just from a timing

10  standpoint, Mr. Lee, when do y'all contemplate wanting to

11  come back on the applications/the Motion?  There's a process

12  that's starting.  I take it we need to take these

13  applications up on an expedited basis to start that process,

14  which is fine for me.  I think, if this is the route that

15  everybody wants to go, the parties are working together, it

16  sounds like a smart idea.  And I believe that, you know, if

17  Free Speech -- the Stay is going to be lifted, Free Speech

18  needs representation, everybody knows that.  And I think

19  Free Speech should have a fair opportunity to hire their

20  counsel and you know, they should be responsible for their

21  fair share of the fees, whatever that is, going forward.  So

22  -- but all those issues are not before me today, but I

23  appreciate the update.  I just need to understand the timing

24  of that, so I understand how we sync it with the Final Cash

25  Collateral Hearing.  Do you want to -- it sounds like you

1  need to come before the Final Cash Collateral Hearing, a

2  separate hearing.

3          MR. LEE:  Yes, Your Honor.

4          MR. CHAPPLE:  Your Honor my thought -- and I

5  haven't spoken with Mr. Lee about this directly, but would

6  be, the latter part of next week.  And of course, I'd like

7  to hear from the U.S. Trustee's Office, as well, because I

8  know -- but that -- Your Honor, I believe if there is a --

9  if an agreement is going to be reached, it'll happen

10 relatively quickly.

11         THE COURT:  Okay.

12         MR. CHAPPLE:  At least from our perspective.  I

13 know that there are other parties who may have issues with

14 the application.

15         MR. LEE:  Your Honor, from the Debtor's

16 perspective, I know I'm pushing the envelope, but we were

17 expecting to come back Friday.

18         THE COURT:  Let me -- let me hear from the --

19         MR. LEE:  And I thought that's what I mentioned to

20 Mr. Chapple, but we're willing to come back Friday to get

21 this done and to talk to everyone.  And we're amenable to

22 whatever schedule, but we understand the importance of this

23 in Connecticut and the fact that there's jury selection

24 taking place, and we want to be participating in that.  And

25 I don't want to address all the issues that Mr. Chapple did

```
1    --

2              THE COURT:  I understand.

3              MR. LEE:  But we need to be up there and so, we're

4    ready to proceed as quickly as possible.

5              THE COURT:  Okay.

6              MR. CHAPPLE:  And one point that I would make, I -

7    - Mr. Lee and I had a conversation and Friday sounded

8    reasonable and doable to me and that was before I saw their

9    application.  So, I -- you know, I just -- I want to make

10   sure we have an adequate time to address that issue.

11             THE COURT:  Okay.  Thank you.

12             MR. NGUYEN:  Your Honor --

13             THE COURT: Yes.

14             MR. NGUYEN:  I can just address the two

15   applications.  I certainly --

16             THE COURT:  Again, you don't have to give me your

17   thoughts on them, just the timing issue is -- I know you

18   have to do your work and I want to give you a full and fair

19   opportunity to do it.

20             MR. NGUYEN:  I -- Your Honor, I agree with the

21   Court that FSS needs representation in State Court, but my

22   only issue is what Your Honor mentioned earlier.  Is FSS

23   paying its fair share of the legal fees for representation

24   in State Court?  Under the current application, FSS is

25   paying the entire fee for both FSS and Mr. Jones.  My
```

1    understanding is that there's an indemnification, but that

2    indemnification was signed earlier this year.  So, I don't

3    know if the estate is contractually obligated to pay Mr.

4    Jones' legal fees, and so, I, kind of, don't want to rush

5    things because we're talking about $300,000 going to Mr.

6    Pattis.  That's significant funds that could be used to pay

7    creditors in this estate.  I don't fully understand the full

8    scope of the indemnification.  My understanding is that it

9    was recently executed for Mr. Jones.  And there are a lot of

10   other questions in terms of Section 327(e).  Really, if --

11   it's great that the Plaintiff are agreeing to -- not opposed

12   to these objections, but we have a statutory duty to look at

13   them.

14              THE COURT:  Oh, absolutely.

15              MR. NGUYEN:  The Court has an independent duty to

16   look at them, whether Mr. Pattis and Mr. Renault qualifies

17   under 327(e).  So, we're willing to work as quick as

18   possible to get the Plaintiff to Connecticut State Court to

19   have a jury trial in their claim.  I'm willing to work with

20   the Debtors.  I need some cooperation from them.  I need to

21   see what the Employment Contracts look like.  I need to

22   understand the payments between the -- the fee splitting.

23   At this time, it's 100 percent FSS.  I want to understand

24   why that's appropriate.  And then I also want to understand

25   how the Debtors meet the requirement under 327(e).  There

1    might be claims by the estate based on some of the conduct

2    that occurred in the Texas State Court with the mishandling

3    of medical records.  So, those are all issues that we need

4    to evaluate.  I'll willing to go into next week, but I need

5    some cooperation from the parties to provide me with

6    documents and some of my answers -- some answers to my

7    inquiries.

8              THE COURT:  All right.  I feel like we should, at

9    least, take this up on Monday.  And it sounds like the

10   parties need an opportunity to talk.  The U.S. Trustee is

11   saying that they have some questions, but I think Monday is

12   really fast, to take it up on an expedited basis.  We can

13   take it up on Monday and parties have -- I'm sure parties

14   will be working through the weekend on that and talking

15   about issues.  And Mr. Chapple, that'll give y'all an

16   opportunity to review, have conversations, dialogs with Mr.

17   Lee.  We can meet probably at 11 a.m. if the parties want or

18   in the afternoon.  I'm willing to do that.  Just this week,

19   I -- I don't know what's going to get accomplished in two

20   days and I think the parties need to think about what I said

21   earlier, and maybe have an opportunity to speak.  And

22   there's also two lawyers who are seeking applications and

23   they're not in the courtroom, so I don't want to -- I want

24   to give them an opportunity to think about some things, as

25   well, in fairness to them.  But look, I do think Free Speech

1    -- the Stay is going to lift.  They're going to need

2    adequate representation and they should have an opportunity

3    like everybody.  327 says what it says, but as long as Free

4    Speech is paying its fair share, I think that's what I'll be

5    focused on.

6           MR. CHAPPLE:  Okay.  Your Honor, just one point of

7    scheduling.  And I can take a short break and see if I can

8    get coverage, but I'm on a plane Monday and it's, I believe,

9    a four or so hour flight.  So, that, kind of, kills my day.

10   Is Tuesday available with the Court?  If not, I can make a

11   few calls.

12          THE COURT:  I start a two-day trial all day.

13          MR. CHAPPLE:  Okay.

14          THE COURT:  -- on the 30th and the 31st, but why

15   doesn't everyone take a look at their schedules and then we

16   can reach out to my Case Manager and maybe I can carve out a

17   time within -- if it's going to be contested, I would need

18   to know.  That'll carve out some more time.  Monday, I know,

19   for sure, works.  If not, then I think Thursday -- next

20   Thursday afternoon.

21          MR. CHAPPLE:  Okay.  Let's --

22          THE COURT:  September 1st because I have that two-

23   day trial and that's going to go all day.  If not, then next

24   Thursday afternoon would be the time to do it.

25          MR. CHAPPLE:  If you don't mind, I'll --

```
 1              THE COURT:  No, no, no.  Take your time.

 2              MR. CHAPPLE:  -- I'll make a few calls and see if

 3      --

 4              THE COURT:  And we don't have to set anything

 5      today.

 6              MR. CHAPPLE:  Okay.

 7              THE COURT:  I'm just giving everyone -- you know,

 8      next Thursday or next Friday would also --

 9              MR. CHAPPLE:  And the Monday time was, you said,

10      at 11 a.m., Your Honor?

11              THE COURT:  11 a.m. or -- if it's -- if it's

12      Monday and we need to have a hearing that's late to

13      accommodate, if it works for the parties, I won't be the

14      hold up.

15              MR. CHAPPLE:  Okay.

16              THE COURT:  All right.  We have Court 6 p.m. if

17      you want it.  I don't -- it just depends on how the parties

18      are proceeding and if it makes sense to have it or not.  But

19      I -- the Court will be available.  I won't be the hold up.

20              MR. CHAPPLE:  Thank you, Your Honor.

21              THE COURT:  Okay.

22              MR. LEE:  And Your Honor, one --

23              MR. BATTAGLIA:  Your Honor, may I address the

24      Court?

25              THE COURT:  Yes, after I apologize to my staff for
```

1    making that statement.  Yes, yes.

2         MR. BATTAGLIA:  This is Mr. Battaglia on behalf of

3    Free Speech Systems.  Obviously, speed is important here.  A

4    jury is being selected and put in the box as we speak.  And

5    Mr. Pattis is currently representing only one party and yet,

6    a proposed Lift Stay Order does contemplate that people are

7    waiving objections to the selection of the jury based on the

8    Stay.  Mr. Pattis is in an awful position for selecting a

9    jury for one party and yet, the expectation is that this

10   trial will go forward as to both parties.  So, speed is

11   really, really important.

12        THE COURT:  If we could do it on Monday.  If

13   there's a time -- I know you're flying.  Just let's find a

14   time.

15        MR. CHAPPLE:  Yes, sir.

16        THE COURT:  Or if we need to -- if earlier is

17   better, in the morning, then we can do that, as well.  And

18   maybe I can move my 10 a.m., I just --

19        MR. CHAPPLE:  Well, and I may be able to move it -

20   -

21        THE COURT:  -- would have to work my Case Manager.

22        MR. CHAPPLE:  -- and travel the day before or the

23   day after.

24        THE COURT:  Okay.

25        MR. CHAPPLE:  So, I'll (indiscernible)

1          THE COURT:  So, why don't the parties just work on

2     it and let's see if we can set a date and a time this

3     afternoon.  Just work with my Case Manager.  She'll --

4     she'll have authority.  Just give you the date and we'll

5     lock it in.  Okay?

6          MR. LEE:  One last item so that we don't bother

7     Ms. Saldania over and over again, can you set us a new

8     deadline to file witness and exhibit lists, just in case we

9     don't come to an agreement, Your Honor?

10          THE COURT:  Yeah, I think for that one, if we go

11     on Monday, then quite frankly, I think if you got me

12     something -- and again, witness and exhibit lists can be --

13     I would want to know something by Friday and I'll just call

14     it Friday.

15          MR. LEE:  All right.  Close of business on Friday.

16     How about that, Your Honor?

17          THE COURT:  I mean, Friday.

18          MR. LEE:  Thank you.  All right.

19          THE COURT:  Yeah.

20          MR. LEE:  Thank you, Your Honor.

21          THE COURT:  Yeah, yeah.  I mean Friday, whatever.

22     I'll come in on Saturday morning and I'll know if we're

23     going live or not.  But there'll be something on Friday.  I

24     won't put a time limit on it.

25          MR. LEE:  Thank you, Your Honor.  I think

1    (indiscernible) short brief report on the business --

2            THE COURT:  Let me -- let me just talk quickly

3    about the cash collateral.

4            MR. LEE:  Oh, I apologize.

5            THE COURT:  With that in mind, and assuming the

6    parties can do 1 p.m., that can get tweaked on -- for

7    September 13th.  I can do that.  Oh, 1:30, I can do that

8    time, for sure.  If we need to do -- we could have it there

9    -- the one question I had was just to understand -- there

10   was a notice of payment -- I know I approved a $250,000

11   payment to PQPR in the interim.  This -- and there was a

12   notice filed that PQPR was paid that and that's entirely

13   appropriate under my Order.  This Order seems to suggest

14   that there will be an additional payment and I don't know if

15   there's overlap between the -- this payment is for $750,000

16   and I don't understand if there's overlap between the

17   $250,000 that was paid, according to the notice, and that

18   we're just talking an additional $500,000 with a claw back

19   or if we're talking an additional $750,000.  When I looked

20   at the budget, I think it just refers to the extra $500,000,

21   but I need to -- just -- that's just a clarification

22   question for me.

23           MR. LEE:  Judge Lopez, may Mr. Schwartz address

24   that for you or --

25           THE COURT:  Yes, or whoever.  Mr. Battaglia --

 1           MR. BATTAGLIA:  Your Honor, let me address it for

 2    you (indiscernible).

 3           THE COURT:  Okay.

 4           MR. BATTAGLIA:  Your Honor, the total PQPR

 5    reimbursement is $750,000.  $250,000 was included in the

 6    First Interim Order.  The additional $500,000 is included in

 7    this Order.  I think the reference in the written terms of

 8    the Order is to say that the claw back (indiscernible) the

 9    whole $750,000.

10           THE COURT:  Got it.  Thank you.  That's the

11    clarification I needed.  And if I approve this, the claw

12    back right is going to have to have some meaning to it.  So,

13    PQPR -- I don't see this (indiscernible) so, I have to

14    understand and I need to -- Mr. Schwartz, I need you to just

15    think about it.  It's got to have some meaning so that if --

16    I don't know anything, but I'm assuming just worst case

17    scenario for PQPR that there is an Order issuing a claw back

18    -- the money has to be there to give back.  I don't want to

19    find myself in a situation where $750,000 has been paid to

20    the estate and there's only $100,000 by the time the claw

21    back comes back.  I'm making up a hypothetical and no-one

22    should read anything into it.  I'm just -- I -- I know what

23    I know about PQPR based upon the initial hearing.  There's

24    an agreement between the parties, there's a claw back right.

25    So -- and it applies to the entire $750,000 that was

1   contemplated in the budget.  I've got no problems with that.

2   I just want to make sure that everybody's clear that the

3   claw back right has to have some substance, if that's what

4   I'm being asked to sign.  And so, PQPR is going to have to

5   understand that Mr. Schwartz -- and if someone needs to come

6   back and ask me for something different based upon what you

7   learn, then let me know.  But I just want to make sure --

8   and what I'm discussing, for folks on the phone, is

9   incredibly standard bankruptcy talk when it comes to,

10  essentially -- in case, a claw back right that the judge may

11  -- if the judge allows -- if it comes, it comes, if it never

12  does, it never does.  But if it comes, then I just want to

13  make sure that the parties have the ability to seek relief

14  that I would be granting in this Order and that it would

15  have some merit.  I just don't know what I don't know.

16  Okay?  So, let me ask -- does anyone wish to be heard on the

17  -- what I would call the Second Interim Cash Collateral

18  Order?

19          Okay, so I would just note for the record then,

20  that the Court, on August 5th, signed an initial Cash

21  Collateral Order authorizing the use of cash collateral.

22  There was a budget attached to that and it set a further

23  hearing for today.  The parties are in discussions with

24  regard to the Motion to Lift the Stay.  There was also a

25  Motion to Lift the Stay set for today, as well.  It appears

1    that the parties are reaching a resolution.  Everybody's

2    rights are reserved, obviously.  It sounds like the parties

3    need some more time to talk and it makes sense to have a

4    continued hearing on cash collateral, subject to everyone's

5    rights at a final.  I am encouraged to hear, and I'm sure

6    Mr. Schwartz will tell me -- it sounds like business is

7    going a little better than expected or as you expected when

8    we came back for the modification to the Interim Cash

9    Collateral Order.  It seems like sales are up, which is,

10   obviously, very good for the estate.  And I do note, I did

11   review the budget and I did see the agreements with respect

12   to payments to insiders and the continuation of the

13   arrangement with Blue Ascension to continue.  So, I did get

14   a chance to really study it really hard and compared it to

15   the original budget and to the budget that was -- the

16   modified -- as modified by the Order and then what was posed

17   here.

18           I'm comfortable with granting a continued Cash

19   Collateral Interim Order subject to a final.  But I would

20   ask the parties to communicate my thoughts on, kind of, the

21   one part that I talked about, and I will sign that Order and

22   enter it on the docket today.  I would note that signing

23   this Interim Cash Collateral Order further facilitates if

24   there's going to be agreement on -- or a trial.  In

25   Connecticut State Court, there has to be some additional use

1    of cash collateral to pay for professionals and to allow the

2    estate to continue uninterrupted during that time.  And so,

3    these Orders really go hand-in-hand, which is why I wanted

4    to understand what was happening there before I ruled on the

5    Interim Cash Collateral Order.  I appreciate that all the

6    parties have been working together and I would note for the

7    record, that the initial use of cash collateral was heavily

8    contested, right, and so was the modification to that.  So,

9    the fact that the parties are working together, I see the

10   Subchapter 5 Trustee here, I see the United States Trustee

11   here, I see parties with a vested interest in this estate.

12   The Texas Plaintiffs are here, the Connecticut Plaintiffs

13   are here and they've all been in discussions.  It gives the

14   Court a little comfort about the process.  And so, I thank

15   everyone for their hard work and I know that everybody's

16   rights are reserved in a final.  I've reviewed the Order and

17   I'll sign it and get it on the docket today.  The only

18   change I'll make is to the hearing time, which would be 1

19   p.m.  Okay?

20           MR. LEE:  Thank you, Your Honor.

21           THE COURT:  Okay.

22           MR. BATTAGLIA:  Your Honor, do you require that I

23   modify the Order, or will you do it?

24           THE COURT:  Oh, no.  I'll take care of that.  I

25   think you can trust me on this one.

```
 1            MR. BATTAGLIA:  Thanks, Judge.

 2            THE COURT:  No, I'll do that.  Let everyone focus

 3    on more important matters.  I'll get that signed and on the

 4    docket shortly.  We've heard about -- let me ask, with

 5    respect to the Lift Stay update, I did get a chance to hear

 6    from the U.S. Trustee and from other parties.  Is there

 7    anyone who wishes to address the Court to provide any form

 8    of a statement or update as they think about the Motion to

 9    Lift Stay?  No-one has to say anything, I'm just opening it

10    up.

11            THE COURT:  Okay.  We'll -- we'll take that up.

12    We need to talk about timing on that Motion.  But if so, it

13    should go hand-in-hand with the applications, is that

14    correct?

15            MR. CHAPPLE:  That's correct, Your Honor.  Yes.

16            THE COURT:  And if -- so that means that the

17    continued hearing on the hearing -- the Motion to Lift Stay

18    has got to go forward on Monday, as well.  Right?

19            MR. CHAPPLE:  Yes, Your Honor.

20            THE COURT:  Okay.  Yeah, so then I'm really

21    holding everyone to a Friday witness and exhibit list.

22    We'll call it Friday.  I will sign no extensions.  I don't

23    trust you all.  Just kidding.  We will, on Friday, at least

24    some form of a witness and exhibit list so that the parties

25    understand and the parties have an opportunity to see where
```

1    we are with respect to the applications and to the Motions -

2    - the Motion to Lift the Automatic Stay.

3              MR. LEE:  One final point, Your Honor.  I just

4    want to make the Court clear, for these purposes, that the

5    Automatic Stay continues in place until we conclude that

6    hearing on Monday afternoon.

7              THE COURT:  That's correct.

8              MR. LEE:  Thank you, Your Honor.

9              THE COURT:  That's correct.

10             MR. CHAPPLE:  Your Honor, one other question.  I

11   just -- I want to make sure -- I don't want to hold the

12   Court up on a Friday afternoon.  You said Friday, so we can

13   file Friday evening?  You're not going to look at it until -

14   -

15             THE COURT:  I mean Friday, yeah.  Friday.

16             MR. CHAPPLE:  Okay.

17             THE COURT:  11:59 p.m., you know.

18             MR. CHAPPLE:  Thank you for the clarification,

19   Judge.

20             THE COURT:  Mm hm.  Mr. Schwartz?  Okay, Mr.

21   Schwartz?

22             MR. SCHWARTZ:  Thank you, Your Honor.

23             THE COURT:  You're smiling.  It tells me you've

24   got good news.

25             MR. SCHWARTZ:  Operation it's good news.  First

1    off, the last time we were here, back log, which you

2    mentioned that hearing.  It is -- for all practices

3    purposes, that back log has been worked off.

4              THE COURT:  Okay.

5              MR. SCHWARTZ:  We now have the back log down.  We

6    have a back log but it's because we have a large number of

7    orders for a product that is not -- could not be released

8    yet.  So, those orders are waiting that date so we could

9    then process them.  That happens to be -- it's a book and

10   the publisher won't let us (indiscernible) until the release

11   date for the book itself.

12             THE COURT:  Okay.

13             MR. SCHWARTZ:  So, that's primarily -- that's the

14   back log is a day and a half's worth of work and we've been

15   running at high volumes with orders.

16             THE COURT:  Okay.

17             MR. SCHWARTZ:  So, that's normal.

18             THE COURT:  How has the process with Blue

19   Ascension been working?  The modification?

20             MR. SCHWARTZ:  Well, Your Honor, Blue Ascension

21   didn't give the processor it's banking information until, I

22   think, late last Friday.  So, in fact, what you saw on the

23   variance report was the fulfillment cost.  I paid it, FSS

24   paid it.  We realized (indiscernible) what's going on here

25   and Blue Ascension didn't give them the information yet and

1    said, "Could you send us some money because we don't have

2    any?", and so that's how that is working.

3                THE COURT:  Okay.

4                MR. SCHWARTZ:  And so, it's hopefully this week is

5    running now the way we wanted it to.

6                THE COURT:  Okay.

7                MR. SCHWARTZ:  We're still bringing in new

8    products with our sales -- in essence $500,000 a week before

9    we filed bankruptcy.  I think we put the budget in at

10   $525,000 or something like that.

11               THE COURT:  Mm hm.

12               MR. SCHWARTZ:  We're very -- we're just shy of a

13   million dollars in cool basis sales for last week and we

14   expect to be at a million dollars, and almost a steady state

15   there for a while.  The company's done much better than that

16   in prior years.  We're working with Mr. Jones, Alex Jones,

17   and with the eCommerce Manager on inventory levels and

18   financing the inventory, etc.  So, okay, we could probably

19   handle (indiscernible) state of about a million dollars a

20   week in sales up and down.  Let's see, we are working on --

21   the company has never had a restocking plan.  They run out

22   and (indiscernible) buy something as opposed to looking at

23   what they have and anticipating to replenish.  So, we are

24   already working on plan right now to get a methodical

25   restocking program.  And once we get some of these Court

1    issues out of the way, I'd rather spend more time on that

2    side of it, which I think will make a significant

3    difference.  And making the profitability of the products,

4    the supplements -- a huge mark up on it.  If you go buy a

5    bottle of iron or whatever, over the counter or on Amazon,

6    it's got a 300-400 percent markup on it.  And that's -- we

7    have the same kind of markup on it, over several percent.

8    Employee headcount is down to 48, which is good.  Every one

9    of the former employees is either going to work for Blue

10   Ascension or found themselves another job.  I don't know

11   (indiscernible) not working.  Big (indiscernible) this week,

12   substantially all of our vendors who used to use the Amex

13   card, for example, Amazon Web Services (AWS), they charged

14   the Amex card for our monthly bills (indiscernible).  We

15   believe we've gotten substantially all the vendors now

16   converted over to a debit card, which I have and I control.

17   And that's a huge -- because those vendors won't operate --

18   won't provide a service, so they want -- they don't want a

19   wire transfer, ACH, so on.  It's a card --

20           THE COURT:  Got it.

21           MR. SCHWARTZ:  -- to charge.  Another change in

22   effect is, we've gotten a routine in place (indiscernible)

23   accounting.  Another big changes.  We couldn't understand

24   why we were in some of these crises.  You haven't paid this

25   bill and (indiscernible) cut us off.  That kept happening

1    and we couldn't figure out why.  Turns out, the email

2    address that we thought was the email address for the

3    accounting practice for years, was supposed to be sent to,

4    was not an email address.  It was called a group-something.

5    So, the invoices have been going somewhere out there and

6    sitting on someone's computer, really.  (indiscernible)

7    became a crisis and then they'd send it to us.  That now is

8    a real email address, so now the bills are coming to us and

9    we've told everyone to get us the bills by 1 o'clock on

10   Wednesday and they're paid on Friday.  And we've done that

11   now -- well, last week was the first week we really had that

12   done.  And just (indiscernible) fumbling around trying to

13   figure out how to use the e-payment system because I've

14   never really been authorized for payments.  We've got the

15   bills paid a little bit later.  And this week, we'll have

16   (indiscernible) because I don't know which button to push

17   now.

18           One other matter I wanted to bring to your

19   attention is the (indiscernible) budget for $250,000.  That

20   was not paid as originally planned.  Mainly because we

21   didn't have any banking information for PQPR.  We finally

22   got the banking information last week and worked out how to

23   (indiscernible) and they actually got paid, I believe, this

24   week, some wire, actually it should arrive in that bank.

25           THE COURT:  Okay.

1          MR. SCHWARTZ:  But after that, now we're on course

2     with that.  So, that's a big improvement, getting the

3     accounting squared away.

4          THE COURT:  Okay.  Thank you very much.

5          MR. SCHWARTZ:  Thank you.

6          THE COURT:  Okay.  So, I'll sign the Cash -- the

7     Interim Cash Collateral Order.  I'll get that on the docket

8     today.  We will set a time, tentatively for Monday to

9     consider the applications and the Motion to Lift the

10    Automatic Stay at the same time.  Witness and exhibit lists

11    will be due on Friday, August 26th and I encourage the

12    parties to continue to talk productively.  I appreciate that

13    everybody's talking.  I encourage the parties to continue to

14    talk and give some thought to the things that I've said and

15    I guess we'll see each other on Monday.

16         MR. LEE:  Thank you, Your Honor.

17         THE COURT:  Anything else we need to talk about

18    today?

19         MR. LEE:  Not from the Debtor's perspective, Your

20    Honor.

21         THE COURT:  Okay.  Thank you very much.

22         MR. LEE:  Thank you.

23         THE COURT:  I'll see everyone on Monday.

24         MR. LEE:  Thank you, Your Honor.

25        (Proceedings adjourned at 10:40 a.m.)

```
 1                        CERTIFICATION

 2

 3     I certify that the foregoing is a correct transcript from

 4     the electronic sound recording of the proceedings in the

 5     above-entitled matter.

 6

 7

 8

 9

10     Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  February 17, 2023
```