UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **Debtor.** | § | |

**DEBTOR'S RESPONSE TO JOINT MOTION OF THE CONNECTICUT PLAINTIFFS AND THE TEXAS PLAINTIFFS TO REVOKE THE DEBTOR'S SUBCHAPTER V ELECTION**

Free Speech Systems, LLC ("FSS" or "Debtor") debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Bankruptcy Case"), by and through its undersigned counsel, hereby submits this response (the "Response") to the *Joint Motion of the Connecticut Plaintiffs and the Texas Plaintiffs to Revoke the Debtor's Subchapter V Election*[1] (Dkt. No. 468) (the "Motion") joined by the United Stated Trustee ("Joinder") at Dkt. No. 501.

## I. PRELIMINARY STATEMENT

1. The Motion and Joinder request relief from the Debtors election to proceed under Subchapter V of chapter 11 without any statutory or decisional authority to support their request. They seek to revoke an election they admit was proper at the time it was made. In support of their Motion, Movants rely entirely on a disingenuous and tortured interpretation of 11 U.S.C §1182.[2] In addition, the Motion is untimely and for those reasons must be denied.

2. The Motion and Joinder urge this Court to read subsection 1182(1)(B) of the Bankruptcy Code in isolation from subsection 1182(1)(A) of the Code, ignoring in the first

[1] The Connecticut Plaintiffs and the Texas Plaintiffs are collectively referred to herein as the "Plaintiffs" and together with the U.S. Trustee's Office as the "Movants".

[2] Title 11 of the U.S. Code is referred to as the "Bankruptcy Code" or "Code".

instance that the first three word of subsection (A) are "subject to subparagraph (B)". , Congress literally directed that the entirety of section 1182 (1) is to be read as one.

3. Movants seek to eliminate the temporal element contained in section 1182(1)(A) from the calculation of the statutory debt cap under section 1182(1)(B) of the Code. Closer examination reveals the clear error of this misguided interpretation.

4. Section 1182(1)(A) of the Code establishes the following limitations on who may be a debtor under Subchapter V of chapter 11 of the Code ("Subchapter V"):

a. The debtor must be a person;

b. That person must be engaged in a commercial or business activity;

c. The primary business activity of the debtor cannot be ownership of single asset real estate;

d. On the ***date of filing of the petition***, the aggregate noncontingent liquidated secured and unsecured debts of the debtor must not exceed $7,500,000; and

e. At least 50% of that debt must arise from the debtor's commercial or business activities.

5. Section 1182(1)(B) read in isolation from 1182(1)(A) would define "Debtor" to exclude only "(i) any member of a group of affiliated debtors under this title that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $7,500,000 (excluding debt owed to 1 or more affiliates or insiders)."

6. Disassociating the two subsections of the statute to remove the temporal restriction must necessarily remove the other restrictions and limitations under 1182(1)(A). If so, affiliated debtors, (i) need not be engaged in commercial or business activity, (ii) may be owners of single asset real estate and (iii) the debtor's debts need not arise from commercial or business activities

and remain eligible to be debtors under Subchapter V. The statutory construction advanced by Movants instructs this Court to eviscerate the statute and write out a significant portion of section 1182(1)(A) to arrive at the interpretation they desire.

7. The interpretation advanced by Movants is the contrary to the directive of the Supreme Court in *United States v. Ron Pair Enterprises, Inc*., 489 U.S. 235, 240-41 (1989). The plain language of section 1182 is to consider the noncontingent liquidated secured and unsecured debts of an otherwise eligible debtor and its affiliate ***as of the petition date for the applicable debtor***.

## II. BACKGROUND AND PROCEDURAL HISTORY

8. On July 29, 2022, FSS filed a voluntary chapter 11 petition and elected to proceed under Subchapter V. Melissa A. Haselden has been appointed as the Chapter 11 Subchapter V Trustee in FSS's.

9. The Debtor's Schedules (Dkt. No. 121) listed total liabilities on the Petition Date of $54,642,512.46. Of that sum, $53,646,687.84 was alleged to be owed to PQPR Holdings Limited, LLC an insider to the Debtor. According to the Debtor's records its aggregate noncontingent liquidated secured and unsecured debts (excluding insiders) did not exceed $1,000,000, well within the cap established in section 1182(A). On the Petition Date, the claims of the Plaintiffs remained contingent and unliquidated and were of no moment to the Debtor's qualification to file as a small business debtor under Subchapter V.

10. Plaintiffs grudgingly admit in the Motion that because FSS filed its subchapter V case before the Plaintiffs claims were liquidated, it met the definition of a "debtor" under section 1182(1)(A)." Motion at ¶2. The Movants never contested the Debtor's eligibility to file as a small

business debtor under Subchapter V from the July 29, 2022, petition date through the date of filing of the Motion on February 15, 2023.

11. On August 1, 2022, the Court entered its *Order Modifying Automatic Stay to Allow Heslin/Lewis Trial to Continue to Final Judgment* (Dkt. No. 16), granting relief requested by the Debtor on an emergency basis. That Order permitted the lawsuit styled *Neil Heslin v. Alex E. Jones and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, ("Texas State Court Litigation") to proceed to trial.

12. On August 29, 2022, the Court entered its *Agreed Order Modifying the Automatic Stay to Allow the Connecticut Litigation to Continue to Final Judgment* (Dkt. No. 117). That Order permitted the lawsuit styled *Lafferty v. Jones (UWYCV18- 6046436-S), Sherlach v. Jones (UWY-CV18-6046437-S), and Sherlach v. Jones (UWYCV18- 6046438-S)* which were consolidated under *Lafferty v. Jones (UWYCV18- 6046436-S) (*collectively, the *"*Connecticut State Court Litigation*")* to proceed to trial.

13. According to Plaintiffs Motion:

> After a damages trial in October 2022, a jury awarded approximately $965 million in compensatory damages to the Connecticut Plaintiffs. Lafferty, Verdict for Plaintiffs [Docket No. 1010] (Oct. 12, 2022). Subsequently, the Connecticut state court ordered approximately $323 million in common-law punitive damages and attorneys' fees and $150 million in statutory punitive damages. Lafferty, Memo. Decision re Punitive Damages [Docket No. 1026] (Nov. 10, 2022). Motion at ¶ 7.

14. On December 2, 2022, Alex Jones ("Jones") filed his voluntary chapter 11 petition. The United States Trustee appointed an official Committee of Unsecured Creditors on December 13, 2022 (the "Committee").

## III. ARGUMENT

### A. No Provision of the Bankruptcy Code Authorizes Revocation of a Subchapter V Election.

15. Movants seek revocation of FSS' valid election for relief under Subchapter V. Movants cite no authority for the relief they request. To the contrary, even the cases upon which they cite in their Motion acknowledge that revocation of a Subchapter V election is not specifically provided for in the Code. *In re Nat'l Small Bus. All., Inc.*, 642 B.R. 345, 348 (Bankr. D.D.C. 2022). (*See also*, *In re ComedyMX, LLC*, 647 B.R. 457, 463 (Bankr. D. Del. 2022) "If the text of the Bankruptcy Code squarely addressed the question of de-designation one way or the other, that would be the beginning and end of the matter. But it does not,").

**B. FSS' Petition Date is the Relevant Date for Determining Eligibility under Subchapter V**

16. Movants interpretation of section 1182(1) of the Code runs afoul of black letter law on statutory construction. Interpretation of the language of a statute begins with the text of the statute itself. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). FSS concurs with Movants conclusion that section 1182(1) is not vague or ambiguous. However, their interpretation of the statute ignores language which Movants find inconvenient to their chosen interpretation.

17. Movants ignore the direction not to omit words or parts of clauses which are pertinent to a proper interpretation of the statute at hand. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985) ("This "blue pencil" method of statutory interpretation—omitting all words not part of the clauses deemed pertinent to the task at hand—impermissibly ignores the relevant context in which statutory language subsists."). The Court is obligated to give effect to every word and clause of a statute. *United States v. Menasche,* 348 U.S. 528, 75 S. Ct. 513, 99 L. Ed. 615 (1955)

18. Movants ignore the very first clause of section 1182(1)(A) which instructs that subsections A and B are to read in concert. They proceed to read those sections in isolation in

order to extract the temporal limitations of section 1182(1)(A) from the balance of the statute while retaining the remaining restrictions and limitations set out in section 1182(1)(A) but also left out of section 1182(1)(B). Movants run afoul of the obligation to give effect to every word and clause of a statute.

19. Removal of the temporal restrictions on eligibility is contrary to the fundamental purpose of Subchapter V. In *In re Parking Mgmt., Inc.,* 620 B.R. 544 (Bankr. D. Md. 2020) the Court found the debtor eligible under Subchapter V despite the (i) existence of a prepetition PPP loan obligation and (ii) motions to reject 12 leases filed on the petition date. That Court determined that both obligations remained contingent and unliquidated on the petition date. The Court held that "Opening up eligibility determinations to post-petition events, even if deemed to apply retroactively, is contrary to the purpose and spirit of Subchapter V, and could nullify the very benefits it is intended to convey." *Id.* at 554.[3]

**C. Plaintiffs' Motion is Untimely**

20. Plaintiffs blithely dismiss the application of Rule 1020(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") in a footnote. Motion at FN5. It is understandable that they would do so inasmuch as the Motion is well beyond the bar date for filing of such a motion. Bankruptcy Rule 1020(b) provides as follows:

---

[3] *See also, In re Ibbott,* 637 B.R. 567 (Bankr. D. Md. 2022) That Court, in connection with determining eligibility to file under chapter 13 held as follows:

> As recognized in *Parking Management*, the Court should not consider any postpetition actions that could result in a contingent debt becoming noncontingent after the case is filed. *Parking Mgmt*., 620 B.R. at 554 ("The ... plain language of § 109(e) requires consideration of the debts as they exist as of the petition date, irrespective of postpetition events.") (citations omitted). "To hold otherwise would mean that a debtor could float in and out of Chapter 13 eligibility during the course of a case, depending on what happens, which of course makes no legal or practical sense." *Id*. "[T]he fact that some later resolution of the conflict might render more certain the precise nature of the debt itself ... is relatively immaterial in determining the debtors' financial condition and Chapter 13 eligibility on the date the petition is filed." *Id*. Consequently, the Court considered the nature of the debt owed by the Debtor to Cantwell-Cleary as of the Petition Date without regard to whether the judgments may be modified or reversed on appeal at some time in the future.

> Objecting to Designation. The United States trustee or a party in interest may file an objection to the debtor's statement under subdivision (a) no later than 30 days after the conclusion of the meeting of creditors held under § 341(a) of the Code, or within 30 days after any amendment to the statement, whichever is later.

21. FSS designation as a small business chapter 11 case was included in its voluntary petition (Dkt. No. 1). The 341 meeting in the Bankruptcy Case was held and concluded on September 7, 2022. Plaintiffs' Motion was filed on February 15, 2023, more than four months after the conclusion of the 341 meeting. The Motion is untimely and for that reason alone should be denied.

22. Plaintiffs claim immunity from the application of Bankruptcy Rule 1020(b) because Alex Jones did not file his bankruptcy case until December 2, 2023. Plaintiffs chose to ignore Bankruptcy Rule 9006(b)(1) which requires the filing of a motion to enlarge the time to file and allege some excusable neglect for their failure to timely file their objection to designation.

23. No such motion for enlargement of time has been filed. Even if such a motion was filed, Plaintiffs would have to explain the 75 day delay between the date of the Jones Petition and the date on which the Motion was filed. Plaintiffs have been represented at various times by no less than 3 international law firms with highly sophisticated insolvency practices and dozens of lawyers at their disposal[4]. In addition, Plaintiffs have retained several highly capable Texas law firms. No excusable neglect exists for Plaintiffs delay in bringing the Motion before the Court.

**D. The Court Should Not Revoke the Subchapter V Election "In Any Event"**

24. Lacking any statutory basis for revocation, Plaintiffs rely on a single case for their "Any Event" revocation. Plaintiffs' reliance on *In re Nat'l Small Bus. All., Inc. (NSBA)*, 642 B.R. 345, 347 (Bankr. D.D.C. 2022) is misplaced. In NSBA, the Court "revoked" the debtor's case

---

[4] Based upon the notice of appearance and *pro hac vice* motions filed in this case.

designation as a small business debtor based on a series of factual findings which bear no relation to the case *sub judice.*

25. NSBA filed its petition on January 31, 2021. The Court issued its revocation order on April 18, 2022. At that time, the case had been pending for more than 440 days. During the intervening period following the petition date, the Debtor filed five plans of reorganization. Its fifth amended plan was denied confirmation. Moreover, the debtor had been removed by prior orders of the court.

26. Whether the NSBA decision was proper is highly debatable. What is not subject to argument is that the NSBA court relied upon its equitable powers under section 105(a), not on the debtor's eligibility under section 1182(1) of the Code, and based its decision on the specific facts of that case which are not present here.

**E. Revocation Does Not Serve the Best Interest of the Debtor and Its Other Creditors**

27. Revocation of the Subchapter V election does not serve the interests of any creditors other than the Plaintiffs. On March 7, 2023, FSS filed its Plan of Reorganization. The standards for confirmation of a plan under section 1191 differ materially from those under section 1129 of the Bankruptcy Code. Clearly, the Plaintiffs find the requirements of section 1191 disadvantageous to their interests. However, the Plaintiffs are not FSS's only creditors.

28. The interests of other creditors will be harmed if the Plaintiffs are able to exercise control over the Bankruptcy Case by virtue of their claims. By their own admission, Plaintiffs would not be opposed to conversion of the Bankruptcy Case to a liquidation under chapter 7 or an outright dismissal. Motion at ¶ 39. The goals of the Plaintiffs diverge from the interests of the Debtor's other creditors who are unlikely to receive any distributions under either a dismissal or conversion to chapter 7. The interests of creditors with a stated agenda of putting the Debtor out

of business differ materially from trade creditors who want to be paid on account of their claims while continuing to generate income from the Debtor's continued operations.

29. It is also difficult to image how the estate and its creditors will benefit from the appointment of a creditors committee dominated by the Plaintiffs and the imposition of an obligation to pay U.S. Trustee's fees. Even if a committee's professionals were retained *pro bono,* the Debtor's administrative costs would escalate in order to respond to the committee and its advisors. Those costs coupled with the burden of U.S. Trustee's fees will threaten the administrative solvency of this case. Based on the current level of monthly disbursements, U.S. Trustee's fees would fall in a range from $60,000 to $70,000 per quarter.

30. Finally, conversion to chapter 11 will be disruptive to the ongoing mediation efforts previously approved by this Court.

### F. Conversion to a Chapter 11 Case Will Most Certainly Disrupt and Delay the Work of The Subchapter V Trustee

31. Upon conversion to a Chapter 11 case, the Subchapter V Trustee and her counsel will no longer have any role in the Bankruptcy Case. FSS concurs with the position of the U.S. Trustee in this regard, the request in the Motion to transform the Subchapter V Trustee to an examiner is premature.

## IV. STATEMENT OF EFFORTS TO REACH AGREEMENT

32. Movants counsel and counsel for the Debtor discussed Movants' intention to file the Motion on or about February 14, 2023. No agreement is likely due to the diametrically opposite positions of the parties on the legal and factual premise of the Motion.

WHEREFORE, Debtor respectfully requests that the Court deny the Motion and grant any other relief that is just and proper.

Dated: March 9, 2023.

Respectfully submitted.

LAW OFFICES OF RAY BATTAGLIA, PLLC

/s/ *Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Counsel to the Debtor and Debtor-In-Possession*

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/Raymond W. Battaglia*
Raymond W. Battaglia