IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
|  | ) |  |
| FREE SPEECH SYSTEMS LLC, | ) | Case No. 22-60043 (CML) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**JOINT REPLY OF THE CONNECTICUT PLAINTIFFS
AND THE TEXAS PLAINTIFFS IN SUPPORT OF THE
MOTION TO REVOKE THE DEBTOR'S SUBCHAPTER V ELECTION**

1.       By their Motion,[1] the Connecticut Plaintiffs and the Texas Plaintiffs (collectively, the "Sandy Hook Families") seek to revoke the Debtor's subchapter V election because the Debtor is explicitly excluded from the definition of a "debtor" eligible for subchapter V, as provided in section 1182 of the Bankruptcy Code.  In its Opposition[2] to the Motion, the Debtor's *sole* argument for continued eligibility under section 1182 would require that the Court effectively rewrite the statute to include limitations that Congress did not.  This approach conflicts not only with the statute's plain language, but also the great weight of precedent and guidance from the Supreme Court on statutory construction.

2.        The Debtor's remaining arguments fare no better.  For one, the Debtor does not cite to a *single case* in which a court permitted a debtor to remain a subchapter V debtor where it was not eligible under section 1182 of the Bankruptcy

---

[1]     Capitalized terms not defined in this *Joint Reply of the Connecticut Plaintiffs and the Texas Plaintiffs in Support of the Motion to Revoke the Debtor's Subchapter V Election* shall have the meaning ascribed to such term in the *Joint Motion of the Connecticut Plaintiffs and the Texas Plaintiffs to Revoke the Debtor's Subchapter V Election* [Docket No. 468] (the "Motion").

[2]     The "Opposition" refers to the *Debtor's Response to Joint Motion of the Connecticut Plaintiffs and the Texas Plaintiffs to Revoke the Debtor's Subchapter V Election* [Docket No. 504].

Code.   Similarly, the Debtor fails to grapple with or meaningfully address the case

authorities cited in the Motion that establish that a court may revoke a subchapter V

election.   Finally, the Debtor's claim that Rule 1020 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") bars consideration of the Motion should fail.   Even if

Bankruptcy Rule 1020 did apply—which it does not—the Sandy Hook Families satisfy

the standard for excusable neglect under Bankruptcy Rule 9006.

       3.      The Debtor is statutorily ineligible for the protections of subchapter V and

the Opposition provides no principled basis for denying the Motion.   Accordingly, the

Court should revoke the Debtor's subchapter V designation.

## ARGUMENT

### I.    Bankruptcy Courts Are Empowered to Revoke a Debtor's Subchapter V Election

       4.      The Debtor first argues that no provision in the Bankruptcy Code

authorizes revocation of a debtor's subchapter V election, Opp. ¶ 15, to suggest this

Court lacks authority to do so.   This argument ignores not only prior cases where

bankruptcy courts have—consistent with the relief requested in the Motion—revoked a

debtor's subchapter V election, but also the Bankruptcy Rules, which expressly

contemplate revocation of a debtor's subchapter V election.

       5.      *First*, contrary to the Debtor's assertion that the Sandy Hook Families

"cite no authority for the relief they request," Opp. ¶ 15, as detailed in the Motion,

*several courts* have revoked a debtor's subchapter V designation, despite the Bankruptcy

Code's silence on this point.   Courts have even done so *sua sponte* and *solely* pursuant to

their equitable powers under section 105 of the Bankruptcy Code.   *See In re Nat'l Small*

*Bus. All., Inc.* ("NSBA"), 642 B.R. 345, 348–49 (Bankr. D.D.C. 2022).

6.      Courts have also revoked a debtor's subchapter V designation where, as here, the debtor does not satisfy the definitional requirements of section 1182 of the Bankruptcy Code.  *See, e.g.*, Mot. ¶¶ 26–27 (discussing *In re Serendipity Labs, Inc.*, 620 B.R. 679 (Bankr. N.D. Ga. 2020) and *In re Phenomenon Mktg. & Ent., LLC*, 2022 WL 1262001 (Bankr. C.D. Cal. Apr. 28, 2022), *as modified by*, 2022 WL 3042141 (Bankr. C.D. Cal. Aug. 1, 2022)).  The Debtor does not even acknowledge these authorities—let alone distinguish them.

7.      *Second*, the simple fact that the Bankruptcy Code does not expressly contemplate revocation proves nothing.  Bankruptcy courts regularly grant relief consistent with, but not expressly contemplated by, the Bankruptcy Code.  *See, e.g., In re Mirant Corp.*, 296 B.R. 427, 429–30 (Bankr. N.D. Tex. 2003) (allowing "critical vendor" payments despite lack of explicit authority in the Bankruptcy Code).  Moreover, Bankruptcy Rule 1020—the very rule on which the Debtor relies in its Opposition, *see, e.g.*, Opp. ¶ 20—establishes a clear process for objections to a debtor's subchapter V election.  *See* Fed. R. Bankr. Pr. 1020(b), (c).  Such rights must be afforded remedies.  Indeed, Bankruptcy Rule 1020(a) acknowledges that "[t]he status of the case as a . . . case under subchapter V of chapter 11 shall be in accordance with the debtor's statement under this subdivision, *unless and until the court enters an order finding that the debtor's statement is incorrect*."  Fed. R. Bankr. Pr. 1020(a) (emphasis added).

8.      The Debtor does, however, cite two cases "acknowledg[ing] that revocation is not specifically provided for in the [Bankruptcy] Code."  Opp. ¶ 15.  While these cases *acknowledge* that the Bankruptcy Code does not explicitly address revocation, these cases only undermine the Debtor's argument.  In *NSBA*, for instance, the court

3

revoked the debtor's subchapter V election *despite this acknowledgement*.  642 B.R. at

348–350.  Far from supporting the Debtor's argument, *NSBA* further undercuts the notion

that a lack of express authorization in the Bankruptcy Code somehow divests a court of

authority to revoke a debtor's subchapter V election.  The second case the Debtor cites

for this point—*In re ComedyMX, LLC*, 647 B.R. 457 (Bankr. D. Del. 2022)—likewise

offers little support.  *ComedyMX* did not decide the question of a bankruptcy court's

authority to revoke a debtor's subchapter V election.  Rather, it noted that a "debtor's

determination to proceed under subchapter V shall be controlling *unless and until the*

*Court determines that the debtor is statutorily ineligible*."  *Id.* at 464 (emphasis added).

9.      To reiterate, the Debtor fails to cite to a *single case* where a court held that

it lacks the authority to revoke a debtor's subchapter V election.  The Sandy Hook

Families, by contrast, have provided the Court with numerous cases demonstrating that

courts have such authority.

**II.      A Subchapter V Debtor Must Comply with the Requirements of Section 1182(1)(B)(i) for the Duration of Its Chapter 11 Case**

10.     Nowhere in its Opposition does the Debtor dispute that it is a member of a

group of affiliated debtors with aggregate liquidated, non-contingent debts exceeding

$7,500,000 owed to non-insiders.  To the contrary, the Debtor concedes that it would be

ineligible to file as a subchapter V debtor if it were to file today.  The Debtor's sole

argument is that, in its view, the requirements of subsection 1182(1)(B)(i) should be

assessed *only* on the petition date.  Opp. ¶¶ 16–19.  It is of no moment to the Debtor that

the text of the subsection 1182(1)(B) contains no such temporal limitation, because,

according to the Debtor, the Court should simply read into subsection (B) a temporal

limitation that appears only in subsection (A).  The plain—and contrasting—language of these two sections compels the opposite result.

11.     The Debtor urges the Court to read additional words into the statute because the "very first clause of section 1182(1)(A)" allegedly "instructs that subsections A and B are to be read in concert."  Opp. ¶ 18.  But this "very first clause" in fact only states that subsection A—which defines a subchapter V debtor as one that, among other requirements, has aggregate debts as of the petition date not exceeding a certain amount—is "subject to paragraph B."  11 U.S.C. § 1182(1)(A).  Paragraph B, in turn, excludes from this definition "any member of a group of affiliated debtors under this title that has aggregate non-contingent liquidated secured and unsecured debts in an amount greater than $7,500,000."  11 U.S.C. § 1182(1)(B)(i).

12.     Reading these provisions "in concert" therefore—as is further detailed in the Motion and in the U.S. Trustee Statement[3] supporting the Motion—requires that a debtor both (a) have aggregate liquidated, non-contingent debts of less than $7,500,000 as of the petition date *and* (b) not be a member of a group of affiliated debtors with aggregate debts above $7,500,000 *at any time*.  In other words, the statute imposes a two-part test for eligibility, and a debtor must satisfy both prongs.  The "subject to" language in Paragraph A, on which the Debtor solely relies, only confirms that it is *not* enough to satisfy Paragraph A; a Debtor must *also* comply with Paragraph B.  That a Debtor must satisfy both tests does not mean that language expressly found in Paragraph A secretly applies to Paragraph B.  Indeed, the temporal language in Paragraph

---

[3]     The "U.S. Trustee Statement" refers to the *United States Trustee's Response in Support of Joint Motion of the Connecticut Plaintiffs and the Texas Plaintiffs to Revoke the Debtor's Subchapter V Election* [Docket No. 501].

A applies solely to the question of the *debtor's* liquidated debts, and not to other requirements, such as the requirement that the debtor be engaged in commercial activities. And nothing in Paragraph B suggests that it is incorporating Paragraph A's terms. Contrary to the Debtor's assertion, Opp. ¶ 18, this interpretation gives effect "to every word and clause of a statute." This reading is also consistent with recent[4] and repeated pronouncements from the Supreme Court that "[w]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act we generally take the choice to be deliberate."[5]   *Bartenwerfer* v. *Buckley*, No. 21-908, Slip Op. at 7 (Feb. 22, 2023) (internal citations omitted); *see also* Mot. ¶ 24.

13.    Nor can the Debtor overcome the conclusion dictated by these fundamental principles of statutory construction by citing to *In re Parking Management, Inc.*, 620 B.R. 544 (Bankr. D. Md. 2020). Opp. ¶ 19. After all, *Parking Management* only considered section 1182(1)(A)'s requirement that a debtor have less than $7,500,000 in aggregate non-contingent liquidated debts *as of the petition date*. *Id.* at 547, 550. That the court appropriately assessed that requirement as of the petition

---

[4]    The statutory scheme at issue in *Bartenwerfer* v. *Buckley* is similar to the one at issue here. In *Bartenwerfer*, the debtor similarly argued that a limitation contained in neighboring subsections of a provision of the Bankruptcy Code should be read into the provision at issue in that case. *See* No. 21-908, Slip Op. at 7–8. The Supreme Court declined, noting that, "if there is an inference to be drawn here, it is not the one that [the debtor] suggests. The more likely inference is that (A) excludes debtor culpability from consideration given that (B) and (C) expressly hinge on it." *Id.* at 7.

[5]    This same reasoning applies to the Subchapter V Trustee's argument that the Court should read a petition-date limitation into the statute here, on the theory that other sections of the Bankruptcy Code, such as section 109(e), contain petition-date limitations for calculating debts for eligibility purposes. *See Subchapter V Trustee's Limited Response to the Joint Motion of the Connecticut Plaintiffs and the Texas Plaintiffs to Revoke the Debtor's Subchapter V Election* [Docket No. 513] (the "Subchapter V Trustee Response") ¶ 4. If anything, the presence of this limitation in other nearby statutory provisions—and its absence in the one at issue, *i.e.*, section 1182(1)(B)(i)—demonstrates only that Congress "considered the unnamed possibility and meant to say no to it." *See Barnhart* v. *Peabody Coal Co*., 537 U.S. 149, 168 (2003).

date is irrelevant to the issue here about when the requirements of section 1182(1)(B)—which *does not* contain the same "petition date" limitation and was not at issue in *Parking Management*—are assessed.[6]  Citing a case that construed Paragraph A does not answer how to construe Paragraph B and whether a debtor is eligible under this paragraph when its affiliates owe more than $7,500,000 in liquidated, non-contingent debts.

### III.    Bankruptcy Rule 1020 Does Not Bar Consideration of the Motion

14.    The Debtor's argument that the Motion was untimely under Bankruptcy Rule 1020 also fails for at least two reasons.  Opp. ¶¶ 20–23.  For one, Bankruptcy Rule 1020 does not apply given the facts of these chapter 11 cases.  For another, even if Bankruptcy Rule 1020 applied, the Sandy Hook Families satisfy the "excusable neglect" standard for an enlargement of time under Bankruptcy Rule 9006.

15.    *First*, Bankruptcy Rule 1020 does not apply since the Sandy Hook Families *could not* have complied with the rule.  Bankruptcy Rule 1020 requires a movant to object to a subchapter V designation no later than 30 days after the conclusion of the meeting of a debtor's creditors that is held pursuant to section 341 of the Bankruptcy Code.  Fed. R. Bankr. Pr. 1020(b).  In the case of the Debtor, that meeting was held on September 7, 2022.  Official Form 309F2 [Docket No. 53] at 2.  However, the circumstances that gave rise to FSS's ineligibility to proceed as a subchapter V debtor did not arise until months later, in December 2022, when Jones filed for bankruptcy.  So, Bankruptcy Rule 1020 cannot apply for the simple reason that the Sandy Hook Families could not have complied with its requirements under these circumstances.

---

[6]    For the same reason, the Subchapter V Trustee's discussion of *In re Parking Management, Inc.* is also unavailing.  *See* Subchapter V Trustee Response ¶ 3.

16.     *Second*, even if Bankruptcy Rule 1020 applied here, the Sandy Hook Families satisfy the standard for excusable neglect in seeking enlargement of the 30-day time period to object.[7]   Under Bankruptcy Rule 9006, bankruptcy courts may grant "enlarge[ments]" of the 30-day period in Bankruptcy Rule 1020 upon a motion that establishes that the movant's "failure to act was the result of excusable neglect." Fed. R. Bankr. Pr. 9006(b)(1).[8]   Excusable neglect is an equitable determination, taking account all relevant circumstances surrounding the party's omission.   *See e.g., Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see also In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 739 (5th Cir. 1995) ("The standard for determining whether a party's neglect of a deadline is excusable is a flexible one because it is rooted in equity.").

17.     The Supreme Court has enumerated four factors for courts to consider in determining whether a party has demonstrated excusable neglect: (a) the danger of prejudice to the debtor, (b) the length of the delay and its potential impact on judicial proceedings, (c) the reason for the delay, including whether it was within the reasonable control of the movant, and (d) whether the movant acted in good faith.   *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.   Of these, many courts consider the reason for the delay to be the most important, "and specifically whether the delay was in the reasonable control of the movant."   *See, e.g., In re Orosco*, 2020 WL 6054695, at *4 (Bankr. N.D. Tex.

---

[7]   Even if the Sandy Hook Families could not satisfy this standard—which they do—a court is empowered to revoke a debtor's subchapter V election *sua sponte*.   *See* Mot. ¶ 27 n.5 (citing *NSBA*, 642 B.R. at 347).

[8]   Out of an abundance of caution, the Sandy Hook Families request—to the extent necessary—that the Court construe the Motion as a request to enlarge time under Bankruptcy Rule 9006(b).

Oct. 13, 2020) (quoting *In re Lehman Bros. Holdings*, 433 B.R. 113, 130 (Bankr. S.D.N.Y. 2010)).

18.     As discussed above, the delay was not within the Sandy Hook Families' control because the circumstances that gave rise to the arguments raised in the Motion did not arise until December 2022, months after the ostensible deadline under Bankruptcy Rule 1020. Because courts permit late filings *even where* such late filing was within the reasonable control of the movants, the Sandy Hook Families satisfy the inquiry here. Any failure to file the Motion within 30 days of the meeting of creditors under section 341 of the Bankruptcy Code was not possible, and therefore outside their reasonable control. *See In re Eagle Bus Mfg., Inc.*, 62 F.3d at 739 ("[E]xcusable neglect is not limited to errors caused by circumstances beyond the late filing party's control.").

19.     The other *Pioneer* factors also militate in favor of a determination of excusable neglect. *First*, the Debtor will suffer no prejudice from an enlargement of time. The Debtor has made little progress in the subchapter V case, and what progress has been made could be readily repurposed in a "regular" chapter 11 case. The Debtor has failed to engage *any* of its significant creditors in developing a consensual plan of reorganization or otherwise build consensus around a path out of bankruptcy. With the exception of an incomplete plan of reorganization[9] that was hurriedly filed in advance of

---

[9]     The *Debtor's Plan of Reorganization Under Subchapter V of the Bankruptcy Code* [Docket. No. 502], filed a day before the Debtor's opposition to the Motion was due does not change the analysis. Despite the parties' discussion and seeming agreement at a hearing on February 14, 2023, that the Debtor should not prematurely file a plan, the Debtor filed a plan without even talking to the Sandy Hook Families. *See Jones*, Feb, 14, 2023, Hr'g Tr. [Docket No. 169] at 28–30, 33. This transparent attempt to manufacture leverage with respect to the Motion should in no way militate against revocation.

the Debtor late-filing[10] the Opposition, all the work completed thus far in this subchapter V case can be repurposed for the Debtor's chapter 11 case. In addition, the Debtor's argument that it will be prejudiced due to additional expenses that will have to be borne by the Debtor's estate, Opp. ¶ 29, is at odds with recent guidance from the Fifth Circuit. In rejecting an analogous argument just last year regarding the weight to afford the added burdens identified in the Opposition, the Fifth Circuit observed that—if additional costs and expenses to the estate were held to constitute prejudice—this inquiry would become a "dead letter" because it would "cut in the debtor's favor every time." *See In re CJ Holding Co.*, 27 F.4th 1105, 1113 (5th Cir. 2022). The Debtor's argument is at variance with this decision, which suggests that additional costs to the estate do not constitute "prejudice" for purposes of the excusable neglect inquiry, and the Court should accordingly disregard this argument. In any event, additional administrative costs cannot, by themselves, justify depriving the Sandy Hook Families of fundamental protections under the Bankruptcy Code and allow a Debtor to retain 100% ownership of a business while offering creditors owed more than $1.4 billion less than a one-cent recovery.

20. *Second*, the Sandy Hook Families acted expeditiously given the circumstances of these chapter 11 cases. The Motion could not have been filed before December 2, 2022, as the Jones Petition was the triggering event. The Sandy Hook Families filed the Motion two months later, on February 15, 2023. As all parties acknowledge, the question presented by the Motion is one of first impression in this circuit. U.S. Trustee Statement ¶ 1; Subchapter V Trustee Response ¶ 3. The argument

---

[10]   The Sandy Hook Families note that the Debtor filed its Opposition after the objection deadline, offered no basis for late-filing, and neither requested nor was granted an extension.

raised by the Motion also depends upon an examination not just of FSS's debts, but also of Jones's debts, and the meeting of creditors pursuant to section 341 of the Bankruptcy Code in *Jones* has not yet concluded.[11]   Further, the Sandy Hook Families filed the Motion *the day after* the Jones Schedules and Statements were filed.[12]   The Sandy Hook Families have acted as quickly as reasonably feasible.

21.   *Finally*, the Sandy Hook Families have acted in good faith.  As described in the Motion, the sole motivation for seeking revocation in this case is to secure the "full suite of protections the Bankruptcy Code offers creditors under chapter 11[,]" which is entirely appropriate given the size of their claims.  Mot. ¶ 3.  The Debtor is well aware of those protections and conveniently timed its filing mere days before it knew it would become ineligible for subchapter V due to an impending damages award, which was virtually certain at the time of filing, because the Debtor's liability had already been established in one of the Texas actions.  The Debtor's gamesmanship should not be rewarded at the expense of the Sandy Hook Families.

**IV.     The Court May Also Revoke a Subchapter V Designation Pursuant to Its Equitable Powers**

22.   The Debtor next argues that *NSBA*—where the court revoked a debtor's subchapter V designation pursuant to its equitable powers under section 105 of the

---

[11]   FSS is ineligible to proceed under subchapter V not because of FSS's *own* aggregate debts, but the aggregate debts of its 100% owner and affiliate, Jones.  The section 341 meeting of creditors in the *Jones* bankruptcy, however, still has not concluded, in part because of the failure of Jones to provide *any* meaningful financial disclosure.  *Jones*, Notice of Continued First Meeting of Creditors [Docket No. 175].  To the extent the Bankruptcy Rule 1020 deadline is keyed to this meeting as it provides the debtor's creditors with important information regarding the debtor's eligibility to proceed under subchapter V, the Sandy Hook Families submit that the section 341 meeting in *Jones* is also relevant to the "excusable neglect" inquiry, as this meeting too, bears on FSS's ability to proceed under subchapter V.

[12]   Jones filed schedules and statements he subsequently acknowledged were incomplete on February 14, 2023, Jones Schedules and Statements [Docket. Nos. 161; 162], and the Sandy Hook Families filed the Motion on February 15, 2023.

Bankruptcy Code—somehow stands for the proposition that bankruptcy courts are *not* empowered to revoke a debtor's subchapter V designation on other grounds, including where the debtor is ineligible under section 1182.  Opp. ¶¶ 24–26.

23.    It is true that the *NSBA* court relied on its equitable powers under section 105 of the Bankruptcy Code—rather than on section 1182—to revoke a debtor's subchapter V designation.  *See* 642 B.R. at 349.  But this decision in no way precludes a court from revoking a subchapter V designation where that debtor is statutorily ineligible.  Rather, *NSBA* points to other, independent grounds for revocation if in the best interests of the estate and its creditors, *even where* a debtor meets the eligibility criteria of section 1182.  In any event, as detailed in the Motion, Mot. ¶¶ 37–39, revocation serves the best interests of the estate and its creditors here.  Thus, revocation is authorized not only because the Debtor is statutorily ineligible under section 1182(1)(B), but also because it is in the best interests of the estate and its creditors.

## V.    The Debtor's Policy Arguments Cannot Override the Statutory Text

24.    Finally, the Debtor argues that increased administrative expenses and the additional creditor protections that attend a regular chapter 11 case create grounds to deny the relief requested in the Motion.  Opp. ¶ 29.  But, as detailed in the Motion, courts routinely reject policy arguments and practical considerations where a debtor fails to meet the statutory requirements of the Bankruptcy Code.  *See* Mot. ¶¶ 26–31 (collecting cases).  It is, again, telling that the Debtor fails to meaningfully engage with *any* of the authorities that the Sandy Hook Families cite on this point.

### CONCLUSION

For the reasons set forth above, the Sandy Hook Families request that the Court revoke the Debtor's subchapter V election.

Dated: March 22, 2023

Respectfully submitted,

**MCDOWELL HETHERINGTON LLP**
By: */s/ Avi Moshenberg*
Avi Moshenberg
State Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone:  (713) 337-5580
Fax:  (713) 337-8850
E-mail:  Avi.Moshenberg@mhllp.com

**CAIN & SKARNULIS PLLC**
By: */s/ Ryan E. Chapple*
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone:  (512) 477-5000
Fax:  (512) 477-5011
E-mail:  rchapple@cstrial.com

**CHAMBERLAIN, HRDLICKA,
WHITE, WILLIAMS & AUGHTRY, PC**
By: */s/ Jarrod B. Martin*
Jarrod B. Martin
State Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, TX 77002
Telephone:  (713) 356-1280
Fax:  (713) 658-2553
E-mail:  jarrod.martin@chamberlainlaw.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone:  (203) 336-4421
E-mail:  asterling@koskoff.com

**WILLKIE FARR & GALLAGHER LLP**
By: */s/ Jennifer J. Hardy*
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, TX 77002
Telephone:  (713) 510-1766
Fax:  (713) 510-1799
E-mail:  jhardy2@willkie.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Martin J. Salvucci (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Fax:  (212) 757-3990
E-mail:  kkimpler@paulweiss.com
E-mail:  chopkins@paulweiss.com
E-mail:  msalvucci@paulweiss.com

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000
Fax:  (212) 728-8111
E-mail:  rstrickland@willkie.com
E-mail:  slombardi@willkie.com
E-mail:  csisco@willkie.com

*Co-Counsel to the Connecticut Plaintiffs*

*Co-Counsel to the Texas Plaintiffs*