**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 22-60043 |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| DEBTOR. | § | Chapter 11 (Subchapter V) |
| | § | |

## BRIEF IN SUPPORT OF THE DEBTOR'S MOTION FOR ORDER APPROVING SETTLEMENT

In support of the *Debtor's Motion for Order Approving Settlement* [ECF No. 515] (the "9019 Motion"),[1] S&L and SALLC respectfully state as follows:

## BACKGROUND

1.     On August 20, 2022, the Debtor filed applications to employ SALLC [ECF No. 83] and S&L [ECF No. 85].

2.     The Court held a hearing on the employment applications on September 20, 2022. For the reasons stated on the record, the Court denied the S&L Employment Applications.

3.     On October 4, 2022, S&L and SALLC filed motions for a rehearing under Bankruptcy Rule 7023, incorporating Rule 59 of the Federal Rules of Civil Procedure. The Court held a hearing and denied the Rule 59 motions on January 20, 2023.

4.     S&L and SALLC filed notices of appeal with respect to the Court's orders denying the employment applications and Rule 59 motions on February 4, 2023. The appeals (the "Appeals") are pending before the U.S. District Court for the Southern District of Texas.

5.     Separately, S&L and SALLC filed motions for the allowance of administrative expense [ECF Nos. 251 & 252] (the "Administrative Expense Motions") on October 24, 2022. In

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms as set out in the 9019 Motion.

the Administrative Expense Motions, S&L and SALLC seek in the alternative (a) retroactive approval of a limited scope of their employment under Bankruptcy Code § 327, award of compensation under Bankruptcy Code § 330, and administrative expense claims under Bankruptcy Code § 503(b)(2); (b) *de facto* approval of their employment and an administrative expense claim under Bankruptcy Code § 503(b)(1) for services provided; and (c) an administrative expense claim under Bankruptcy Code § 503(b)(1) and use of their prepetition retainers for certain hard costs that would have otherwise been borne by the bankruptcy estate. S&L seeks allowance of an administrative expense claim of $325,215.85 (reflecting a reduction of $62,475 from the *Lodestar* amount), and SALLC seeks allowance of an administrative expense claim of $348,463.89 (reflecting a reduction of $12,197 from the *Lodestar* amount).

6.      On November 14, 2022, the Debtor and the Subchapter V Trustee filed a joint objection [ECF No. 269], Jones filed a limited objection [ECF No. 268], and the U.S. Trustee filed an objection [ECF No. 267] to the Administrative Expense Motions. No prepetition creditor objected to the Administrative Expense Motions and none of the parties who did object assert that S&L or SALLC have an adverse interest with respect to the limited scope and duration of the employment for which they seek approval through the Administrative Expense Motions. S&L filed an omnibus reply [ECF No. 362] (the "Administrative Expense Reply") that SALLC joined [ECF No. 371].

7.      The Parties conducted arms-length negotiations with respect to the Administrative Expense Motion and consulted with the Sandy Hook Plaintiffs, PQPR, and Alex Jones. As the result of these negotiations, the Parties reached a consensual resolution of the disputes reflected in the Appeals and the Administrative Expense Motions reflected in the 9019 Motion and the Proposed Order attached thereto.

8.      Under the terms of the Settlement, S&L would keep its prepetition retainer of $50,822.68 and SALLC would keep its prepetition retainer of $75,000.00. Upon the entry of a final, non-appealable order approving the Settlement, S&L and SALLC would be required to cause the Appeals and the Administrative Expense motions to be dismissed or withdrawn. Approval of the Settlement would not require the this Court to take any action with respect to the Appeals or Administrative Expense Motions.

9.      The Debtor filed the 9019 Motion seeking approval of the Settlement on March 16, 2023. The U.S. Trustee filed an objection to the 9019 Motion [ECF No. 553] (the "UST Objection"). A week after the objection deadline, the Sandy Hook Plaintiffs filed a joinder to the UST Objection [ECF No. 559].

10.     The UST Objection does not dispute that the Settlement meets the standards for approval of a settlement set out by the Fifth Circuit but rather seeks to avoid evaluation of the 9019 Motion under that standard. No party with a financial stake in the case filed any timely objection or other response to the 9019 Motion or disputes at all that the settlement meets the standards for approval of a settlement under applicable law.

## **ARGUMENT**

11.     The 9019 Motion should be granted and the Settlement approved. The Settlement meets the relevant standards set out by the Fifth Circuit, reflects a proper exercise of business judgement by the Debtor through its current CRO Patrick Magill, and properly resolves pending litigation regarding the bankruptcy estate and the disposition of the prepetition retainers held by S&L and SALLC.

### A. Standard for Approving a Settlement or Compromise

12.     Bankruptcy Rule 9019 governs the procedural requirements to be followed before a settlement may be approved. Bankruptcy Rule 9019(a) provides in relevant part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." FED. R. BANKR. P. 9019(a).  Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve compromises and settlements if they are "fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).

13.     Courts should approve a proposed settlement or compromise under Bankruptcy Rule 9019 if the settlement is within a range of reasonableness, fair and equitable, and in the best interest of the bankruptcy estate. "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, comparing the terms of the compromise with the likely rewards of litigation." *In re Cajun Elec. Power Co-op., Inc.*, 119 F.3d at 356 (citations omitted); *see also Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414 (1968); *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599 (5th Cir. 1980). A bankruptcy court need not be convinced that the proposed settlement is the best possible, but "need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008).

14.     The Fifth Circuit has directed that, in determining whether to approve a proposed settlement, a bankruptcy court should evaluate the following factors: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and

likely duration of the litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise. *In re Age Refining, Inc.*, 801 F.3d 530 (5th Cir. 2015); *In re Jackson Brewing Co.*, 624 F.2d at 602.

15.     Under the third, catch-all provision, the Fifth Circuit has specified two additional considerations. First, the court should consider the best interests of the creditors, "with proper deference to their reasonable views." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996). Second, the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* at 918 (internal citations omitted).

**B.  The Settlement Meets the Standard for Approval**

16.     The Settlement satisfies the requirements set out by the Fifth Circuit. The Settlement results in an expedient and favorable outcome for the Debtor's bankruptcy estate well within the range of a litigated outcome, while avoiding the attendant expense of the litigation.

*i.)  Probability of Success in Litigation in Light of Uncertainties of Fact and Law*

17.     While there is ostensibly a dispute among the Parties and the U.S. Trustee, there is at a minimum uncertainty in the underlying law at issue. S&L and SALLC set out a basis for the relief requested in the Administrative Expense Motions and the Administrative Expense Reply.

18.     In the Administrative Expense Motions, S&L and SALLC seek retroactive approval of their employment on a more limited basis than sought in the Debtor's applications to employ those professionals. Under Bankruptcy Code § 327(a), the S&L and SALLC seek retroactive approval of their employment limited for the period from the Petition Date through September 20, 2022. S&L also seeks retroactive approval of its employment under Bankruptcy Code § 327(e) for a limited scope of services that were contemplated to be S&L's primary responsibility under the Debtor's application to employ S&L.

19.     Caselaw is clear that professionals have standing to seek retroactive approval of their employment in connection with an application for compensation. *E.g.*, *In re McKenzie*, 2013 Bankr. LEXIS 2672, at *2-*3 (Bankr. E.D. Tenn. July 2, 2013) (2013 WL 3335168); *In re Little Greek Rest.*, 205 B.R. 484, 486 (Bankr. E.D. La. 1996); *In re Saybrook Mfg. Co.*, 108 B.R. 366, 369-70 (Bankr. M.D. Ga. 1989); *see also In re Mohiuddin*, 627 B.R. 875, 884 (Bankr. S.D. Tex. 2021) (retroactively expanding the scope of attorney's employment under Bankruptcy Code § 327(e) in connection with an application for compensation). S&L and SALLC contend that they meet the requirements for such retroactive approval of their employment requested in the Administrative Expense Motions.[2] No party has expressly opposed the retroactive approval requested.

20.     The orders denying the applications to employ do not create collateral estoppel preventing S&L or SALLC from seeking retroactive approval of the limited scope of employment requested in the Administrative Expense Motions. Among other reasons: (a) the issues at stake are not identical,[3] (b) the interests of the Debtor and S&L and SALLC are not identical,[4] and (c) the determination of whether S&L and SALLC had an interest adverse to the estate was not a necessary part of the Court's ruling.[5] Further, in its ruling at the September 20 Hearing, the Court left open

---

[2] This issue is further addressed in the Administrative Expense Reply at paragraphs 11 through 55.

[3] The Debtor sought authority to employ S&L and SALLC on an ongoing basis in the respective employment applications. In the Administrative Expense Motions, S&L and SALLC seek retroactive approval of a limited scope of employment covering only the period prior to September 20, 2022.

[4] For example, in presenting evidence to the Court at the September 20, 2022, hearing, the Debtor had an interest in avoiding presenting evidence that would interfere with its business relationship with PQPR until a replacement was put in place. Moreover, the Debtor had already received the benefit of the services of S&L and SALLC through September 20, 2022, so that the second-best option for the Debtor was the denial entirely of the employment applications rather than approval of a limited scope of the employment—i.e., the Debtor had no incentive to seek the relief S&L and SALLC request in the Administrative Expense Motions.

[5] This is reflected in the Court's rulings in this chapter 11 case. The Court stated at the September 20, 2022, hearing that the ruling left open questions about where the ruling left S&L and SALLC with respect to retention (Sept. 20, 2022, Hrg. Tr. 256:14-17). And at the January 20, 2023, hearing the Court stated that the issue at the September 20, 2022, hearing was that the Debtor did not meet its burden (Jan. 20, 2023, Hrg. Tr. 63:14-17). Further, the basis of the

questions about S&L's and SALLC's retention for the work provided prior to that date. (Sept. 20, 2022, Hrg. Tr. 256:14-17 ("I understand that that's going to require some questions as to where that leaves Shannon and Lee and Mr. Schwartz in terms of you know, retention and the work that they've done.")). Courts have also indicated that rulings on applications to employ may not be "final" orders, which is a necessary for collateral estoppel to apply. *E.g.*, *Simon v. Amir (In re Amir)*, 436 B.R. 1, 12 (B.A.P. 6th Cir. 2010); *Green v. Gray*, 2013 U.S. Dist. LEXIS 38640, at *16-*17 (D. Mass. Mar. 18, 2013) (2013 WL 1124731).

21.     Nor does law of the case doctrine—which is more applicable to a court's own prior rulings in a case than collateral estoppel—prevent S&L or SALLC from obtaining retroactive approval of the limited scope of employment sought in the Administrative Expense Motions. Among other reasons, the evidence that S&L and SALLC seek to submit with respect to the Administrative Expense Motions is substantially different. Moreover, the law of the case doctrine applied by a court to its own prior decisions is always discretionary. *Greener v. Cadle Co.*, 298 B.R. 82, 94 (N.D. Tex. 2003) (quoting *United States v. O'Keefe*, 169 F.3d 281, 283 (5th Cir. 1999)).

22.     S&L and SALLC seek the allowance of administrative expense claims totaling $673,679.74 in the Administrative Expense Motions. The total amount reflected in the Settlement is $125,822.68. The Settlement resolves the dispute for approximately ***18.7%*** of the total amount that may result from litigation of the Appeals and Administrative Expense Motions.

23.     S&L also seeks in the alternative retroactive approval Bankruptcy Code § 327(e) for the limited scope of employment related to (a) administrative matters such as the preparing and filing of notices, serving pleadings, and complying with local rules requirements, (b) matters

---

U.S. Trustee's objection to the employment applications was not that S&L or SALLC held or represented an adverse interest.

related to enabling the Sandy Hook Litigation to continue to judgment, and (c) specific matters requested by the Debtor or lead bankruptcy counsel. The majority of the services provided by S&L fall within this limited scope. S&L contends that the reasonable compensation for services under this limited scope would exceed the amounts reflected in the Settlement for both S&L and SALLC. With respect to litigation and automatic stay issues, the total *Lodestar* amount for the services S&L provided is $141,168.75. And the Court indicated at the January 20, 2023, hearing on the Rule 59 motions filed by S&L and SALLC, that this was not an issue before the Court at the September 20 Hearing and was not decided. (*See* Jan. 20, 2023, Hrg. Tr. 63:11-8).

24.     Both S&L and SALLC also seek *de facto* approval of their employment and an administrative expense request under Bankruptcy Code § 503(b)(1) pursuant to the reasoning set out in *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 479-80 (B.A.P. 9th Cir. 1996). S&L contends that the amount of the administrative expense under this theory would be at least $123,597.01 for S&L. While SALLC did not break out the amount requested under this theory, the total amount would exceed the amount reflected by the Settlement.

25.     Taken together, the amount reflected in the Settlement is well within the range of reasonableness based on the relevant issues and authorities. The outcome of the litigation could result in an administrative claim totaling as much as $673,679.74. And even only partial success on the arguments asserted in the Administrative Expense Motions could result in an administrative expense claim in an amount exceeding the amount reflected in the Settlement. The ***81.3%*** discount more than appropriately accounts for the uncertainties present.

*ii.) Complexity, Duration, Expense, Inconvenience, and Delay*

26.     Absent the Settlement, S&L and SALLC intend to continue to litigate the Appeals and the Administrative Expense Motions. For the reasons set out in the various papers, S&L and SALLC believe that the Court should ultimately award the full $673,679.74 administrative

expense requested absent approval of the Settlement. Still to date, no party in interest has asserted that S&L or SALLC have an interest adverse to the Debtor's estate at all, much less with respect to the limited scope sought in the Administrative Expense Motions.

27.    Continuing to litigate the Appeals and Administrative Expense Motions would result in additional expense to the Debtor's estate that the Debtor has determined further support the Settlement being the superior outcome. As the Court has indicated, the Administrative Expense Motions involve issues that would likely require analysis justifying a written opinion from the Court. (*See* Jan. 20, 2023, Hrg. Tr. 65:5-19, 67:5-10). It is not a simple issue. The Debtor's estate would incur expenses in the litigation that could otherwise be used to satisfy creditors and fund operations and face distraction from other issues in the case.[6]

28.    The Debtor and its estate would incur expense notwithstanding the limited nature of the Debtor's opposition to the Administrative Expense Motions. S&L and SALLC believe that properly pursing their administrative expense claims requires submitting evidence that the Debtor will likely assert is subject to privilege.[7] S&L contends that this evidence can be submitted consistent with applicable law but to date the Debtor has not to date agreed with this position.[8] There are issues that would require the Debtor to participate in the litigation even if the U.S. Trustee took the laboring oar in opposing the Administrative Expense Motions. The Settlement

---

[6] Among other things, the Debtor has filed a proposed plan of reorganization [ECF No. 502] and the Connecticut and Texas Plaintiffs have filed adversary proceedings objecting to dischargeability that implicate unsettled issues of law [ECF Nos. 507 & 509].

[7] These documents, perhaps among others, include (a) a memorandum dated June 5, 2022, regarding PQPR's asserted lien and note, (b) an August 6, 2022, email from R. J. Shannon to Raymond Battaglia, Kyung Lee, and Marc Schwartz regarding Alex Jones's asserted indemnity claim, and (c) a framework of the costs of continuing the Connecticut Litigation prepared by SALLC. The Debtor has not agreed to waive any privilege with respect to these documents; however, S&L contends that those documents are admissible and would defeat any assertion that S&L held or represented an interest adverse to the Debtor's estate.

[8] Rule 1.05(c) of the Texas Disciplinary Rules of Professional Conduct provides that "[a] lawyer may reveal confidential information . . . [t]o the extent necessary to enforce a claim or establish a defense on behalf of the lawyer in a controversy between the lawyer and the client." The term "confidential information" includes information subject to attorney-client privilege. TDRPC 1.05(a). And SALLC is not an attorney subject to attorney-client privilege.

avoids this expense to the bankruptcy estate and the distraction from administration of the estate and this chapter 11 case.

### iii.) Best Interests of Creditors with Proper Deference to their Views

29.     The Debtor, through its CRO, has evaluated the Settlement and believes that it is in the best interests of the Debtor's estate and its creditors. The Court should grant weight to this determination. *See, e.g.*, *In re Idearc Inc.*, 423 B.R. 138, 183 (Bankr. N.D. Tex. 2009), *aff'd In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011) (reasoning that courts may give weight to the informed judgments of the debtor-in-possession and consider the competency and experience of counsel who support the compromise) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991)) (citing also *In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998)).

30.     The Debtor's evaluation is also consistent with the expressed views of creditors. No prepetition creditor opposed the Administrative Expense Motions seeking administrative expense claims totaling $673,679.74.[9] While the Debtor did not agree to the full amount sought in the Administrative Expense Motions, the Settlement reflecting approximately 18.7% of the amount requested (i.e., an 81.3% reduction) is not counter the views expressed by the creditors on the issue. The Debtor negotiated a *better* deal for the estate than what the creditors viewed as appropriate, as its duties as debtor-in-possession require. Further, no creditor objected to the 9019

---

[9] Alex Jones filed a limited objection, but did not dispute the administrative expense request sought by S&L (as discounted therein by $62,475.00 from the *Lodestar* amount for a reduced total of $325,215.85) or raise any specific dispute with the amount sought by SALLC.  The Sandy Hook Plaintiffs did not oppose the Administrative Expense Motions.

Motion despite the significant creditor involvement in the case and their representation by several competent attorneys.[10]

*iv.) Arms-length Negotiations*

31.    The Settlement was negotiated at arms-length among the Debtor, the Subchapter V Trustee, SALLC, and S&L, and after consultation with the Sandy Hook Plaintiffs and Jones.[11] The Sandy Hook Plaintiffs were consulted with respect to the original Administrative Expense Motions and indicated that they did not oppose the relief sought, as reflected in **Exhibit A** hereto and their lack of objection to the Administrative Expense Motions. Each of the parties were either represented by separate counsel or are themselves attorneys. And the Debtor exercised its business judgement agreeing to the Settlement through its CRO who was not engaged by the Debtor at the same time as S&L or SALLC and has no connection with S&L or SALLC.

32.    The Subchapter V Trustee's involvement in the negotiations that resulted in the proposed Settlement further demonstrates the arms-length nature of the negotiations. The Subchapter V Trustee is obviously independent and has conducted significant investigation into the Debtor over the past six (6) months and is therefore well situated to evaluate the wisdom of the Settlement. Her involvement also accords with the Court's direction in its ruling at the September 20 hearing that it would be looking for guidance from the Subchapter V Trustee with respect to the open questions about where the Court's September 20 ruling left S&L and SALLC regarding retention and compensation for work already done. (Sept. 20, 2022, Hrg. Tr. 256:14-257:3).

---

[10] The Sandy Hook Plaintiffs and Mr. Jones were actively consulted in connection with the negotiations. Ultimately, the Settlement reflects a better deal for the estate than what was discussed with the Sandy Hook Plaintiffs and Mr. Jones. The Debtor did what it was supposed to do and negotiated the best deal it could.

[11] The U.S. Trustee was also consulted but opposed the settlement on grounds other than whether the settlement met the standards set forth by the Fifth Circuit, as reflected in the UST Objection.

### C. The U.S. Trustee's Objection Should Be Overruled

33.     The U.S. Trustee argues in essence that the parties cannot consensually resolve the disputes and must continue to litigate. Under the position taken in the UST Objection, any party in interest can force a debtor-in-possession to take the gamble inherent in litigation, including any appeal of a denial of the Administrative Expense Motion, regardless of the wisdom of the Settlement, the effect continuing the litigation would have on the bankruptcy estate and administration of the case, or the reasoned view of creditors.

34.     The UST Objection fails to consider the mechanics of the Settlement, misapplies relevant authority, and is contrary to policy favoring the settlement of disputed issues in the U.S. judicial system generally and bankruptcy in particular. The Settlement does ***not*** require the Court to take any action with respect to the Appeals or the Administrative Expense Motions. Instead, the Settlement would be effectuated through the disposition of estate property and actions of S&L and SALLC consistent with the terms of the Settlement. Nor does the Settlement contravene the statutory scheme Bankruptcy Code. Rather, it simply applies the provisions of Bankruptcy Code § 363(b)(1) and Bankruptcy Rule 9019 consistent with applicable authority. Further, longstanding judicial policy generally and bankruptcy policy particularly favor settlements where there are disputed issues of law and fact. The Court should reject the contention that the U.S. Trustee can require the Debtor to accept the gamble of litigation when the Debtor has reached a compromise of the disputes under terms that are fair and equitable, are in the best interests of the estate and its creditors and indeed better than the deal tacitly agreed to by everyone with a financial stake in the case other than the Debtor, and were negotiated at arms-length among multiple parties, including the Subchapter V Trustee.

i.)    *The Court has jurisdiction to Approve the Settlement.*

35.    The U.S. Trustee's first argument is that the Court cannot approve the Settlement because the Court was divested of jurisdiction with respect to the Appeals. (UST Objection ¶¶ 2, 13). But the Court would not exercise any jurisdiction over the Appeals by approving the Settlement. Rather, the Proposed Order accompanying the Settlement Agreement provides that "S&L and SALLC shall cause their respective Appeals and Administrative Expense Motions to be dismissed or withdrawn." Proposed Order ¶ 4 [ECF No. 515-1].

36.    S&L and SALLC would be required to take the actions necessary to fulfill their obligations under the Settlement, but that is not the same as this Court exercising jurisdiction over the Appeals. Bankruptcy courts frequently approve settlements related to disputed matters on appeal. And even if the approval of a settlement would make the appeal moot—it is debatable whether S&L and SALLC would remain persons aggrieved for appellate standing after approval of the Settlement—this does not limit Court's ability to approve a settlement. *See, e.g.*, *In re Life Partners*, Inc., 708 F. App'x 831 (5th Cir. 2017) (per curiam) (dismissing a pending appeal after a bankruptcy court approved a settlement of the underlying dispute because there was no longer a case or controversy with respect to which the appellate court could grant any effectual relief in light of the settlement); *In re S. Med. Arts Companies, Inc.*, 343 B.R. 250, 254 (B.A.P. 10th Cir. 2006) ("[A] bankruptcy court loses jurisdiction only over those aspects of a case involved in an appeal. Here, the summary judgment appeal is distinct and separate from the issue of whether a compromise may be reached . . . . Because the Compromise is a separate aspect of the case, the bankruptcy court has jurisdiction to rule on the Compromise."). The Settlement here would not determine the merits of the Appeals and therefore is within the jurisdiction of the Court.

*ii.) Using estate property to compromise disputed claims against the estate is well within the scope of a motion under Bankruptcy Rule 9019.*

37.     The U.S. Trustee's second argument is that the 9019 Motion exceeds the proper scope of Bankruptcy Rule 9019 because applications for professional employment and compensation require court approval and the Settlement would have the effect of resolving the U.S. Trustee's objection to the Administrative Expense Motion. But this argument again ignores the mechanics of the Settlement as well as the clear authority indicating that debtors-in-possession **_can_** settle disputes among other parties where that dispute concerns property of the bankruptcy estate or administration of the bankruptcy case and rather than the private rights of the non-settling parties.

38.     The Settlement would not give S&L or SALLC an administrative expense claim or determine any issues with respect to the Appeals. Instead, it would provide for the disposition of the prepetition retainers that S&L and SALLC already hold in exchange for (a) S&L and SALLC releasing any and all claims that S&L and SALLC have or may assert against the Debtor or its bankruptcy estate and (b) taking actions to cause the dismissal or withdrawal of the Administrative Expense Motions and the Appeals.

39.     Bankruptcy Code § 363(b)(1) provides authority for a debtor in possession to use estate property outside of the ordinary course of business after notice and a hearing. Non-ordinary course use of estate property is generally evaluated under the business judgment standard. *See, e.g.*, *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). While applicable caselaw applies an arguably heighted standard for settlements and compromises, the authority to use estate property in connection with a settlement or compromise ultimately derives from section 363. *See In re Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 354 (5th Cir. 1997) ("Under the Bankruptcy Rules, a trustee is permitted to settle lawsuits pursuant to section 363(b)"); *cf. In re Novak*, 383

B.R. 660, 666–67 (Bankr. W.D. Mich. 2008) (reasoning that a Rule 9019 motion is not necessary for every settlement that a trustee might reach because Bankruptcy Code 9019 is procedural rather than substantive but that court involvement is required for settlements that implicate substantive matters that otherwise require court approval).

40.     Further, the trustee or debtor-in-possession can settle litigation among other parties where that litigation concerns the bankruptcy estate or administration of the case rather than the private rights of the other parties. *See, e.g.*, *In re Age Ref., Inc.*, 801 F.3d 530, 536-37, 543-45 (5th Cir. 2015) (affirming a bankruptcy court's approval of a settlement that resolved an unsecured creditor's committee's motion to value collateral and objection to claim, over opposition from the committee, without determining the merits of the committee's motion and objection to claim); *In re DVR, LLC*, 582 B.R. 507, 518 (Bankr. D. Colo. 2018), *aff'd*, 606 B.R. 80 (D. Colo. 2019) (holding that that a trustee or debtor-in-possession can settle an objection to claim raised by another party when doing so is in the best interests of the estate). This settlement power is "an important arrow in the trustee's quiver" and provides a mechanism "to put an end to litigation that would otherwise drain the estate's resources or delay distributions to creditors." *In re DVR, LLC*, 582 B.R. at 518.

41.     What matters is whether the proposed settlement meets the standard under Bankruptcy Rule 9019. As indicated by the U.S. Bankruptcy Court for the Southern District of New York in *Stearns Holdings*, "where consideration is paid pursuant to a settlement, the Court need not review such payment under section 503(b) of the Bankruptcy Code." *In re Stearns Holdings, LLC*, 607 B.R. 781, 793 (Bankr. S.D.N.Y. 2019). Instead, the proposed settlement should be analyzed under the standards for approval of a settlement under Bankruptcy Rule 9019. *See id.* (applying the standard for approval of a settlement or compromise under applicable law).

The appropriate analysis here is whether the proposed settlement is fair and equitable and in the best interests of the estate, considering the underlying disputes being compromised.

### iii.)   _The 9019 Motion does not contravene or attempt to rewrite the Bankruptcy Code._

42.     The U.S. Trustee's third argument is that the 9019 Motion should be denied because it contravenes the Bankruptcy Code. But as described above, the 9019 Motion simply asks the Court to apply Bankruptcy Code § 363(b)(1) and Bankruptcy Rule 9019. There is nothing inconsistent with applying those provisions as written and evaluating the Settlement under the standards set out by the Fifth Circuit. The Bankruptcy Code is not such a flawed statutory scheme that the Court needs to judicially amend it to include the _ad hoc_ exceptions urged in the UST Objection.

43.     _Davis v. Elliot Mgmt. Corp. (In re Lehman Bros. Holdings Inc.)_, 508 B.R. 283 (S.D.N.Y. 2014), is the only authority cited in the UST Objection that is even tangentially relevant to this contention. In _Lehman_, members of the official committee of unsecured creditors sought administrative expense claims for the fees of professionals retained by the individual committee members. _Id._ at 287. The proposed plan of reorganization pursuant to a purported settlement provided that the individual committee members' reasonable professional fees would be treated as administrative expenses without any showing of substantial contribution, and the bankruptcy court confirmed the plan. _Id._ at 287-88. In accordance with the plan, the individual committee members filed applications for the payment of their individual professional fees irrespective of substantial contribution, which the bankruptcy court granted over the U.S. Trustee for Region 2's objection. _Id._ at 288. The U.S. District Court for the Southern District of New York reversed the bankruptcy court's ruling, reasoning that "because § 503(b)—the sole source of administrative expense— excludes paying professional fee expenses on the basis of committee membership, the Individual Members cannot have their professional fee expenses paid as administrative expenses solely on

the basis of their committee membership." *Id.* at 290-92, 296. The district court remanded the matter to the bankruptcy court for further proceedings to determine whether the individual committee members made substantial contributions that would entitle them to have their professional fee expenses paid as administrative expense claims under Bankruptcy Code § 503(b)(4). *Id.* at 296.

44.     As cases interpreting *Lehman* have explained, however, the decision does ***not*** prohibit the settlement of asserted but disputed professional fees. *See City of Rockford v. Mallinckrodt PLC (In re Mallinckrodt PLC)*, 2022 U.S. Dist. LEXIS 54785, at *14 (D. Del. Mar. 28, 2022) (2022 WL 906458); *In re Mallinckrodt PLC*, 639 B.R. 837, 906 n. 229 (Bankr. D. Del. 2022); *In re Purdue Pharma L.P.*, 633 B.R. 53, 66 (Bankr. S.D.N.Y. 2021), overruled on other grounds by 635 B.R. 26 (S.D.N.Y. 2021); *In re Stearns Holdings*, LLC, 607 B.R. at 793. The error in the bankruptcy court's ruling in *Lehman* was that the plan provided for the payment of the individual committee members' legal fees in full without requiring them to show any substantial contribution. It was not the *settlement* of disputed substantial contribution claims—appropriately reduced to reflect the uncertainties present in the relevant dispute—but that the plan avoided entirely the need to even assert substantial contribution for the claims to be allowed in their entirety. Lehman did not involve an actual settlement or compromise.

45.     Here, the Settlement resolves the disputes underlying the Administrative Expense Motions and the Appeals at a substantial discount to what S&L and SALLC believe they are entitled to and have asserted in the Administrative Expense Motions. Although there is ostensibly some dispute—despite no party expressly opposing the retroactive approval of the limited employment of S&L or SALLC requested in the Administrative Expense Motions—there is a basis for the relief that S&L and SALLC request supported by relevant authority. Further, the Settlement

is an actual settlement and compromise, reflecting an ***81.3%*** reduction in the amount sought through the Administrative Expense Motions. The Settlement does not require a rewriting the Bankruptcy Code as was at issue in *Lehman*. It is a legitimate settlement and compromise of disputed issues in both form and substance that was negotiated at arms-length and should be evaluated as such.

46.     The other authorities referenced in the U.S. Trustee are factually or legally inapposite. *Atl. Co. v. Broughton*, 146 F.2d 480 (5th Cir. 1944), was about a settlement related to conduct criminalized under the Fair Labor Standards Act. *Id.* at 482 ("Sections 6 and 7 of the Act effectuate that policy by providing in mandatory language that every employer shall pay the wages prescribed, and Sections 15 and 16 provide criminal punishment for any failure to comply therewith.") (stating so the sentence directly preceding the language quoted in the UST Objection); *see also id.* at 484 (Waller, J., dissenting) (disagreeing that the criminal aspects of the statute applied to the matter at issue in that case). *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017), was about a structured dismissal that provided for distributions contrary to the priority provided by the Bankruptcy Code without the consent of the affected creditors or statutory authority for that outcome in the dismissal statute. *Id.* at 465-66. *In re Roquomore*, 393 B.R. 747 (Bankr. 2008), involved the settlement of an objection to discharge, evaluated the settlement under the Fifth Circuit standards applicable to Bankruptcy Rule 9019. *Id.* at 481 ("The Court finds that the Compromise is not fair, equitable, or in the best interest of the SRR estate . . . ."). *Lamie v. U.S. Tr.*, 540 U.S. 526 (2004), was about an application for compensation by the attorney for a chapter 7 debtor that had not been engaged by the trustee and was providing services to the chapter 7 debtor *qua* debtor. *Id.* at 529.  And *In re King*, 546 B.R. 682 (Bankr. S.D. Tex. 2016), involved a fee application of a chapter 7 trustee's own law firm in which the bankruptcy court awarded fees

and expenses in an amount approximately $82,000 less than requested because the fees requested (a) included amounts for services that amounted to the performance of the trustee's duties, were not reasonable or necessary, and were reflected in lumped time entries, (b) included rates for certain tasks that were unreasonable, and (c) were reduced from the *Lodestar* amount for various reasons. *Id.* at 727-28, 731-34.

47.      Ultimately, the U.S. Trustee asks the Court to apply an *ad hoc* exception preventing the straightforward application of Bankruptcy Code § 363(b)(1) and Bankruptcy Rule 9019. The relevant authorities do not support this rewriting of the Bankruptcy Code. Instead, the Court should apply the well-established standard for the approval of a settlement and compromise under Bankruptcy Rule 9019.

       *iv.)*      *Bankruptcy policy favors settlement where there are disputed issues of law.*

48.      It is well-established that compromises and settlements are favored in the U.S. judicial system generally and the bankruptcy process in particular. *HSBC Bank USA, N.A. v. Fane (In re MF Glob. Inc.)*, 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012) ("Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate") (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)); *Wm. Cameron & Co. v. Gresham (In re Gresham)*, 2006 U.S. Dist. LEXIS 74286, at *9 (N.D. Tex. Oct. 12, 2006) (2006 WL 2924622) ("Consensual resolution of litigation has been favored in law from time immemorial . . . .") (quoting *Hass v. Hass (In re Hass)*, 273 B.R. 45, 50 (Bankr. S.D.N.Y. 2002)); 10 COLLIER ON BANKRUPTCY ¶ 9019.01 ("Compromises and settlements are favored in bankruptcy."). Settlements allow the case to proceed expeditiously without the cost, delay, or risk inherent in litigation.

49.      The ability of the trustee or debtor-in-possession to settle litigation among other parties where the dispute concerns the bankruptcy estate furthers this important goal. *See In re*

*DVR, LLC*, 582 B.R. at 518. Other parties are protected because the settlement is subject to the bankruptcy court's approval, after notice and a hearing, based on the Court's evaluation of whether the settlement is fair and equitable. This was part of the balance Congress put in place to prevent the broad standing rights provided to parties in interest resulting in litigation that would otherwise drain the estate's resources or interfere with administration of the case. *Id.*

50.     Under the U.S. Trustee's position, the Debtor would be forced to roll the dice on the outcome of the litigation and risk incurring an administrative expense more than five (5) times the amount reflected in the Settlement. As the ante for that gamble, the Debtor would be required to incur expenses and address matters that would distract the Debtor and its professionals from administering its chapter 11 case. Neither the Bankruptcy Code nor applicable caselaw require this outcome, everyone other with a financial stake in the case has already at least tacitly agreed to even more going to S&L and SALLC, and it is contrary to the goals of the bankruptcy process. The Court should reject this contention.

## **CONCLUSION**

51.     Based on the foregoing and the evidence and arguments to be submitted at the hearing on the 9019 Motion, the Court should grant the relief requested by the Debtor in the 9019 Motion. The Settlement clearly meets the standards set out by the Fifth Circuit for the approval of a compromise. The Debtor exercised appropriate business judgment after arms-length negotiations, the Settlement is consistent with the expressed views of creditors, and approval of the Settlement is consistent with applicable authority and the policy favoring compromise where there are disputed legal issues.

[*Remainder of Page Intentionally Left Blank*]

Dated: April 24, 2023                    Respectfully submitted,

                                        **SHANNON & LEE LLP**

                                        */s/R. J. Shannon*
                                        Kyung S. Lee
                                        State Bar No. 1218400
                                        klee@shannonleellp.com
                                        R. J. Shannon
                                        State Bar No. 24108062
                                        rshannon@shannonleellp.com
                                        700 Milam Street, STE 1300
                                        Houston, TX 77002
                                        Tel. (713) 714-5770
                                        Fax. (833) 714-5770

                                        -and-

                                        **KANE RUSSELL COLEMAN & LOGAN PC**

                                        */s/Michael P. Ridulfo*
                                        Michael P. Ridulfo
                                        State Bar No. 16902020
                                        Federal Bar No. 27086
                                        5151 San Felipe, Suite 800
                                        Houston, Texas 77056
                                        Tel. (713) 425-7400
                                        Fax. (713) 425-7700
                                        Email: mridulfo@krcl.com

                                        *Counsel for W. Marc Schwartz and Schwartz*
                                        *Associates, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system on the date of filing.

                                        */s/R. J. Shannon*