## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 22-60043 |
| FREE SPEECH SYSTEMS, LLC | § | Chapter 11 (Subchapter V) |
| Debtor. | § | |

### ALEX E. JONES LIMITED OBJECTION TO SHANNON & LEE LLP, MARC SCHWARTZ AND SCHWARTZ ASSOCIATES, LLC'S MOTIONS FOR ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM AND GRANTING RELATED RELIEF [DOC #251 AND #252]

TO THE HONORABLE CHRIS LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Alex E. Jones (herein "Jones") files this Limited Objection (herein the "Limited Objection") to the fee and expense Applications of Shannon & Lee, LLP ("Debtor's Attorneys") and Marc Schwartz and Schwartz Associates**,** LLC, ("Debtor's CRO") (the "Fee Applications") as follows:

## I.
## PRELIMINARY STATEMENT

### A.     Background of Alex Jones Connection to These Fee Applications

1.     The Debtor's attorneys and Debtor's CRO have served in that position in four separate but affiliated filings of Chapter 11 cases, the original three cases involving InfoW, LLC, IWHealth, LLC and Prison Planet TV, LLC (the "Prior Chapter 11 cases") and the current case of Free Speech Systems, LLC ("FSS").  In the Prior Chapter 11 cases, shortly after this Court entered its Orders confirming the withdrawal with prejudice of all of the claims by all Connecticut and Texas Sandy Hook Plaintiffs then-pending litigation (the "Sandy Hook Litigation"), the Debtors Attorneys and the Debtor's CRO commenced an engagement with the Debtor FSS as as it's professional legal counsel and financial professional.

2.   Jones paid the retainers for the professionals retained in the prior Chapter 11 cases which fees and retainers for that work was not the subject of any requested Court approval. Additionally, Jones paid the professional retainers, in part, for these same professionals.

3.   Jones has also paid, during 2022, significant funds to further the prior Chapter 11 cases, also to fund dramatically increasing litigation costs (both attorney's fees and expenses and experts), to otherwise backstop the cash inadequate flow and professional retainers of FSS, aggregating approximately $10 million (which comprised the bulk of Alex Jones liquidity and more than 50% of his then net worth, $3 million of which came from the sale of Jones' homestead).

4.   Although Jones initiated the financial side of the Chapter 11s filed thus far, neither he nor his counsel directed or dictated either the Debtors Attorneys or the Debtor's CRO in any aspect of their professional work. Jones' counsel had considerable input into the Debtors Attorneys thoughts and direction, unfortunately little of which was either followed or implemented. To be clear, Jones does not object *in any respect* to the refusal to implement the recommendations and requests of Jones' Counsel, although both Jones and his Counsel did not agree with (i) the process or progress of the Debtors cases during their prior Chapter 11 cases; or (ii) the FSS case-decisions regarding the timing of the defense and trial of the Sandy Hook Litigation, the removals, consideration of claims, bar date issues, withdrawal of the reference, District Court litigation jurisdiction, and numerous other topics dealing with the process of a bankruptcy Debtor inundated by litigation claims all set for trial back-to-back on the petition date.[1]

B.   **Jones Makes No Objection to the Rates or Time Accounting, or the Discount Amount Proposed By Debtors Attorneys**

---

[1] Jones references the Motion for Reconsideration and the lengths Debtors Counsel went (including quoting from privileged communication-emails) to portray and emphasize the difficult decision making the parties' and counsel were frequently involved. Nothing in this Objection, however, waives any privileged communication or work product of any counsel, including Jones Counsel and nothing in this Objection is intended to imply that the debates and strategy conflicts were anything but strong opinions expressed by competent counsel.

5. This Limited Objection does not complain of the hourly rate charged for the professional fees of either Debtors Attorneys or Debtor's CRO nor does this Limited Objection complain of the accuracy of the accounting for each of their hours, services, and expenses set out in the Applications.

6. This Objection does not complain of the amount of the proposed fee and expense proposed deduction, or the fee amount (as discounted) by Debtors Attorneys, for the reasons set out below. As noted above, Debtors Attorneys and Jones counsel had significant and frequent debate, disagreements, and opinions of the best legal position, strategies, and claims treatment, importantly, the reduction in fees and the agreement of Jones to those reduced fees, is the result of a fair compromise reflecting the opposing positions often taken by joint-interest counsel involved in complex litigation and bankruptcy cases.

### C. Jones Has No Objection to Rates or Time Accounting of the Debtor's CRO

7. This Limited Objection does not complain of the hourly rate charged for the professional fees of Debtor's CRO nor does this Limited Objection complain of the accuracy of the accounting for the hours, services, and expenses set out in the CRO's Application. However, as set out below, Jones does complain of the proposed discounted amount set out in the Debtor's CRO Application as exceeding the value to the estate of those professional services.

## II.
## JONES' OBJCTIONS

### A. Limited Objection to the Application of Debtors Attorneys

8. The only issue and complaint made by Jones regarding the Debtors Attorneys Fee application deals with two areas:

    a. **Responsiveness to This Court's Questions and Concerns and the Unwarranted Pleading Regarding the U.S. Trustees Office**: Immediately upon the filing of the

FSS Chapter 11 this Court set out on the record and in some detail, two important areas of the Court's concern:

      i.      First, the Court expressed concern regarding the overlap of services by the Debtors Attorneys (and the Debtor's CRO) and the fact that there had been no disclosures by either professional of the potential conflict of interest for serving, at the same time the winding-down the Prior Chapter 11 cases while at the same time initiating and advising if the FSS Chapter 11 could be filed; and

      ii.      Second, the several FSS Budgeted items that included payment of *all* of Jones out-of-pocket costs to attend the Connecticut trial (an $80,000.00 payment) and payment by FSS of all the then-due attorneys' fees to trial counsel representing *both Jones and FSS*. The Court was concerned that Jones should be shouldering his share of these expenses.

9. Both of these Court-expressed complaints called for a prompt and thorough response by Debtors counsel in charge. Neither were responded to. Even more disconcerting than the lack of a response at all to the Court-expressed concerns (much less thorough and in writing), was the inflammatory and inaccurate pleadings finally filed by Debtors Counsel to the US Trustee objection to Debtors Counsel's retention, effectively reciting the quoted transcript excerpts of the topics of the Court's concerns *that had never been addressed*. Jones believes the offensive pleadings (and the implications of untruthful and unethical conduct by the US Trustee) that did not address the Court's concerns, were counter-productive to any effort to inform the Court of the basis and commercially reasonableness of the issues raised.

10. Finally, Jones did not anticipate either the failure of Debtors counsel to promptly respond to the Court's questions would be followed at the hearing by Debtors Attorneys arguments

and the CRO testimony that all but ignored why the Debtor had proposed the budget items to be paid, including: (i) that the Debtor has a written employment (and statutory) obligation of indemnity and that the salary to be paid to Jones had been unilaterally suspended by the Debtor (such that Jones was furnishing , notwithstanding that Jones produced 100% of the gross revenues for FSS he had no cash flow or salary to pay his share; (ii) that Jones had paid 100% of FSS legal fees due shortly before the Chapter 11 filing; (iii) that Jones purchased $400,000.00 in consignment products to cover the Debtor's inability to obtain product because the Debtor's CRO budgeted a weekly amount *that was only 30% of the past 4 years actual need based on actual income*, shutting down new purchase sales for the first 23 days of the FSS Chapter 11 case (reflecting several million dollars in lost sales); among a number of other matters to be reported to the Court as part of the Connecticut and Texas status report on the judgments resulting and the additional costs 100% funded by Jones because of the failure to answer this Court's concerns. Finally, Jones has no objection to application of the retainer to the discounted fees and expenses of Debtors Attorneys but does not agree the payment schedule is reasonable for the current status of this FSS Chapter 11 case.

        **b.**    **All Fees Paid In All Four Chapter 11 Cases Should Be Fully Disclosed and Considered By This Court When Determining the Debtors Attorneys Application**: Jones believes that full disclosure of professional compensation should require the disclosure to this Court of the overall professional fees paid to Debtors Attorneys, including the Prior Chapter 11 cases.

        **B.**    **Limited Objection to the Application of Debtor's CRO**

    11.    Jones generally agrees that the Debtor's CRO rendered services beneficial to the estate but does not agree that the amount reflects those benefits. However, Debtor's CRO created

or exaggerated operational problems that challenged the ability of FSS to operate at all and stop salary payments for the employee that furnished 100% of the FSS Income.

        a.    **The CRO Was Not An "Operations" CRO and Created Significant Operational Problems**

12.    Initially, it was not until Debtor's CRO testified before this Court that Marc Schwartz had served possibly once before as a CRO before accepting this retention as the 4 Debtors CRO. Because operations did not become an issue in the Prior Chapter 11 cases before the Plaintiffs claims were dismissed with prejudice, what did become obvious to Jones by early August was that the Debtor's CRO was not an "operations" restructuring officer, but an accounting restructuring officer. Although the Debtors CRO accounting specialty was clearly needed, the absence of an experienced operating and budgeting professional for the FSS operations was significantly missing yet vitally important. As discussed above, Debtor's CRO did a line-item cash collateral budget with a specific number for "product purchases" per week (*i.e.*, the $150,000.00 per week, or gross product purchases annually of *$7.8 million!*). However, historical operations indicated six times that amount per week was needed to replace product sales. As a result, product re-ordering immediately exceeded the budget and re-ordering collapsed in less than a week as did cash flow along with that collapse. The credit card purchases were received and banked yet could not be used to re-purchase inventory because they exceeded the budgeted amount.

13.    The budget issues created by the grossly incorrect budgeting filings and projections was only corrected by this Court's Order in late August, 2022, however, sales did not regain the pre-Chapter 11 ordering level until well after this Court determined in mid-September, 2022 not to appoint the Debtor's CRO as proposed.

14. Jones believes the requested fees exceed the value to the estate of the services actually received.

15. Finally, Jones has no objection to application of the retainer to the approved fees and expenses of Debtors Attorneys found by this Court but does not agree the proposed payment schedule is reasonable for the current status of this FSS Chapter 11 case.

   b. **All Fees Paid In All Four Chapter 11 Cases Should Be Fully Disclosed and Considered By This Court When Determining the Debtor's CRO**

16. Jones believes that full disclosure of professional compensation should require the disclosure to this Court of the overall professional fees paid to Debtor's CRO, including the Prior Chapter 11 cases.

### III. CONCLUSION

For the foregoing reasons, Jones requests these objections be considered and that compensation be determined in this Court's judgment, and that Jones be granted such other relief the Court deems just.

Dated: November 14, 2022

                 Respectfully submitted,

                 */s/ Shelby A. Jordan*
                 SHELBY A. JORDAN
                 State Bar No. 11016700
                 S.D. No. 2195
                 ANTONIO ORTIZ
                 State Bar No. 24074839
                 S.D. No. 1127322
                 **Jordan & Ortiz, P.C.**
                 500 North Shoreline Blvd., Suite 900
                 Corpus Christi, TX 78401
                 Telephone: (361) 884-5678
                 Facsimile: (361) 888-5555
                 Email: sjordan@jhwclaw.com
                      aortiz@jhwclaw.com

Copy to: cmadden@jhwclaw.com
**COUNSEL FOR ALEX JONES**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served via e-mail on counsel for Debtor, Shannon & Lee, LLP and Schwartz Associates, LLC and all parties receiving or entitled to notice through CM/ECF on November 14, 2022.

*/s/ Shelby A. Jordan*
Shelby A. Jordan