```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3                                )  CASE NO: 22-60043-CML
                                  )
 4    FREE SPEECH SYSTEMS LLC,     )  Houston, Texas
                                  )
 5             Debtor.            )  Friday, April 28, 2023
                                  )
 6                                )  10:00 a.m. to 2:19 p.m.
      -----------------------------)
 7

 8                              TRIAL

 9          BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                 UNITED STATES BANKRUPTCY JUDGE
10

11    APPEARANCES:

12    For the Debtor:        RAYMOND WILLIAM BATTAGLIA
                             Law Offices of Ray Battaglia, PLLC
13                           66 Granburg Circle
                             San Antonio, TX 78218
14
                             VICKIE L. DRIVER
15                           Crowe & Dunlevy, PC
                             2525 McKinnon Street, Suite 425
16                           Dallas, TX 75201

17                           R. J. SHANNON
                             Shannon & Lee LLP
18                           700 Milam Street, Suite 1300
                             Houston, TX 77002
19
      For the U.S. Trustee:  HA MINH NGUYEN
20                           JAYSON RUFF
                             Office of the U.S. Trustee
21                           515 Rusk Street, Suite 3516
                             Houston, TX 77002
22
      For Melissa A. Haselden  ELIZABETH CAROL FREEMAN
23    Trustee:               The Law Office of Liz Freeman
                             PO Box 61209
24                           Houston, TX 77208

25
```

```
 1    For Schwartz Assocs.:    MICHAEL P. RIDULFO
                               Kane Russell Coleman Logan
 2                             5151 San Felipe, Suite 800
                               Houston, TX 77056
 3
      For Texas Plaintiffs:    JENNIFER J. HARDY
 4                             Willkie Farr & Gallagher LLP
                               600 Travis Street
 5                             Houston, TX 77002

 6    For the Committee:       SARA BRAUNER
                               DAVID ZENSKY
 7                             KATHERINE PORTER
                               Akin Gump Strauss Hauer & Feld LLP
 8                             2300 N. Field Street, Suite 1800
                               Dallas, TX 75201
 9
      For PQPR Holdings:       STEPHEN LEMMON
10                             Streusand Landon Ozburn, LLP
                               Spyglass Point
11                             1801 S. MoPac Expressway, Suite 320
                               Austin, TX 78746
12
      For David Wheeler:       KYLE J. KIMPLER
13                             Paul, Weiss, Rifkind, Wharton &
                               Garrison LLP
14                             1285 Avenue of the Americas
                               New York, NY 10019
15
      Court Reporter:          R. Saldaña
16
      Courtroom Deputy:        R. Saldaña
17
      Transcribed by:          Veritext Legal Solutions
18                             330 Old Country Road, Suite 300
                               Mineola, NY 11501
19                             Tel: 800-727-6396

20

21
      Proceedings recorded by electronic sound recording;
22    Transcript produced by transcription service.

23

24

25
```

1                                    <u>INDEX</u>

2     <u>WITNESSES</u>              <u>DIRECT</u>   <u>CROSS</u>   <u>REDIRECT</u>   <u>RECROSS</u>

3

4     JAMES PATRICK MAGILL

5

6

7

8     <u>EXHIBITS</u>                                        <u>RECEIVED</u>

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              HOUSTON, TEXAS; FRIDAY, APRIL 28, 2023; 10:00 AM

 2                          (Call to Order)

 3              CLERK:  All rise.

 4              THE COURT:  Okay, good afternoon, everyone.  This

 5   is Judge Lopez.  Today is April 28.  I'm going to call the

 6   one o'clock case, 22-60043.  It is the case of Free Speech

 7   Systems here on two matters.  One is a continued cash

 8   collateral hearing and one is to approve a compromise under

 9   Bankruptcy Rule 9019.

10              So why don't I take appearances.  I'll start in

11   the courtroom and then I've muted the entire line.  If you

12   wish to make an appearance after I've taken appearances in

13   the courtroom, I'll turn online.  So if you want to be

14   recognized for purpose of this hearing, please hit five

15   star, but I'll start with any appearances in the courtroom.

16              Mr. Battaglia.

17              MR. BATTAGLIA:  Afternoon, Your Honor.  Ray

18   Battaglia for Free Speech Systems.

19              THE COURT:  Okay.

20              MR. BATTAGLIA:  And Patrick Magill, the chief

21   restructuring officer in the courtroom.

22              THE COURT:  Okay.  Good to see you, Mr. Magill.

23              MS. DRIVER:  Good afternoon, Your Honor.  Vicky

24   Driver with Crow and Dunlevy on behalf of Mr. Jones.  With

25   me on the on the Webex is Mr. Jordan.
```

1           THE COURT:  Thank you.

2           MR. NGUYEN:  Good afternoon, Your Honor.  Ha

3   Nguyen for the U.S. Trustee.  I also have Jason Ruff here

4   for the U.S. Trustee as well.

5           THE COURT:  Good afternoon to both of you.  Mr.

6   Shannon, good afternoon to you.

7           MR. SHANNON:  Good afternoon, Your Honor.  R.J.

8   Shannon for Shannon & Lee LLP.

9           THE COURT:  Okay.  Good afternoon.

10          MS. FREEMAN:  Good afternoon, Your Honor.  Liz

11  Freeman on behalf of Melissa Haselden, the Subchapter V

12  Trustee.  And Ms. Haselden is in the courtroom today.

13          THE COURT:  Okay.  Good afternoon.  Good

14  afternoon, sir.

15          MR. RIDULFO:  I had to show up in person since you

16  muted me the last time I was on.  Your Honor, Mike Ridulfo

17  for Schwartz Associates.  Good to see you.

18          THE COURT:  Good afternoon.  Okay.  Let me --

19  just give me a second.  I'm going to open this up.  Let's

20  see on the line, who do we have?

21          MS. BRAUNER:  Good afternoon, Sara -- can you hear

22  me, Your Honor?

23          THE COURT:  Just fine.  Good afternoon.  Do you

24  wish to make an appearance, Ms. Brauner?

25          MS. BRAUNER:  Can you hear me, Your Honor?

```
 1              THE COURT:  Just fine.  Good afternoon.

 2              MS. BRAUNER:  Great.  Good afternoon. Sara

 3    Brauner, Akin Gump on behalf of the Committee and with me

 4    are my partners David Zensky and Katherine Porter.  Thank

 5    you.

 6              THE COURT:  Okay.  Good afternoon.  Good

 7    afternoon, Mr. Zensky. Good to see you, Ms. Porter.  Good

 8    afternoon.  All right.  Anyone else wish to make an

 9    appearance, you can hit five star.

10              It was a 512 number I just --

11              MR. LEMMON:  Your Honor, Steve Lemmon for PQPR.

12              THE COURT:  Good afternoon, Mr. Lemmon.

13              All right, here's a 718 number.

14              MS. HARDY:  Good afternoon, Your Honor.  Jennifer

15    Hardy on behalf of the Texas plaintiffs.

16              THE COURT:  Good afternoon, Ms. Hardy.  Anyone

17    else?  Got one more.

18              MR. KIMPLER:  Good afternoon, Your Honor.  It's

19    Kyle Kimpler from Paul Weiss on behalf of the Connecticut

20    plaintiffs.

21              THE COURT:  Okay.  Good --

22              MR. KIMPLER:  On with me this afternoon are my co-

23    counsel, Brian Chapel and Alinor Sterling.  And then to the

24    extent we're going to participate in today's hearing that'll

25    be handled by my colleague, Mr. Martin Salvucci who you also
```

1   see on screen.

2          THE COURT: Okay.  Good afternoon.  Mr. Salvucci,

3   have you -- let me see, I want to make sure I unmute your

4   line.

5          MR. SALVUCCI:  Thank you, Your Honor. Good

6   afternoon.

7          THE COURT:  Okay.  Good afternoon.  All righty.

8   Anyone else?

9          Going up and down a couple of times, Mr. Ridulfo.

10  I want to make sure I got this right this time.  Okay.  That

11  seems to cover everyone, so I'll turn it over to you Mr.

12  Battaglia.

13         MR. BATTAGLIA:  Your Honor, Ray Battaglia for Free

14  Speech Systems.  There are, as you indicated, two matters on

15  the Court's docket today.  There's another notice that I

16  filed yesterday that the Court may want to explore or

17  discuss, and I'm happy to do that if there are questions

18  about it, but as far as the matters on the docket, the 11th

19  interim cash collateral proposed order was uploaded Docket

20  No. 571.

21         There are a couple of changes that I'll make the

22  Court aware of.  It's been circulated among the parties.

23  I've spoken with the U.S. Trustee's Office and answered some

24  questions and comments from them.  The budget did not

25  include the $5,000 weekly adequate protection payment to

1    PQPR.

2         Frankly, in light of the Trustee's report, in

3    light of some pressure from plaintiffs, we decided not to

4    pay that and think it's warranted but not an issue for

5    today.  Mr. Lemmon has agreed and we have inserted in the

6    proposed order a requirement the Debtor escrow -- I'm going

7    to say escrow, I think the order says, reserve -- $5,000 per

8    week, subject to further orders of this Court and with

9    complete reservation of rights of all parties.

10         The Debtor doesn't maintain a separate account, so

11   this is more or less an accounting reserve and of course,

12   the cash balances with God's blessing will never ever

13   approach $20,000 in a given month.  It'll be far in excess

14   of that.  So I think that's a solution that kicks the can

15   down the road at a minimum.

16         And the only other changes to the order or the

17   budget, there was a provision in in the prior ten orders

18   that dealt with the ability to object to the repayment of

19   PQPR's $750,000 inventory purchases and a requirement that

20   notice be given and an opportunity for parties to object.

21   Inasmuch as that's been repaid and the notice has been sent

22   more than 30 days ago, there wasn't a need to continue

23   including that provision in the order.

24         With that, with those exceptions and changing it

25   from the 11th -- from the 10th to the 11th, the order is the

1    same and the budget is attached and I've received no other

2    questions, comments, or inquiries.

3          THE COURT:  Okay.  Let me just open it up.  Does

4    anyone wish to be heard with respect to cash collateral?

5    Mr. Nguyen?

6          MR. NGUYEN:  Yes, Your Honor.  Really briefly.

7    Your Honor, the U.S. Trustee, we do not oppose on this 11th

8    interim order.  Every time I get one of these orders, I have

9    a conversation with Mr. Battaglia.  I think we -- we're on

10   our number eleventh phone call for ever time this happened.

11   I have no complaint at all about our line of communication.

12   However, the U.S. Trustee would note that this is a

13   Subchapter V case and as we're entering the summer month,

14   this case will be almost one year old.

15         The Court has and the U.S. Trustee has as well a

16   mandate from Congress to move these case quickly to their

17   destination.  Within the last couple of months, there has

18   been very little progress being made due to mediation.  At

19   some point -- and we hope at some point in the near future -

20   - that the parties will either fish or cut bait on mediation

21   and tee up issues before the Court to be decided.

22         I'm not asking for the Court to set any deadlines

23   today.  I'm not complaining about anyone causing any delay.

24   It's just the nature of the case.  But we got to move

25   forward and the duration of the case is just going on far

1   too long for a Subchapter V case and then there's an

2   administrative burden that comes with it in terms of cost.

3   So we just want to bring that to Your Honor's attention.  I

4   know you're aware of it.

5          THE COURT:  Very much appreciated.  No, no --

6          MR. NGUYEN:  Thank you, Your Honor.

7          THE COURT:  Thank you.  Anyone else wish to be

8   heard with respect to cash collateral?

9          When do you need a hearing again, Mr. Battaglia?

10          MR. BATTAGLIA:  Your Honor, we're budgeting

11   monthly, so sometime before the end of the month of May.

12          THE COURT:  Okay.  Let me just take a look at my

13   calendar here.  I'm going to share a thought as well before

14   we kind of go to the next matter.  Do you think we could do

15   Thursday, May 25th, at either 9 a.m. or 2 p.m.?  What would

16   work better?

17          MR. BATTAGLIA:  Two is better for me for travel

18   purposes because after my experience flying today for the

19   first time, I'll be driving from now on.

20          THE COURT:  Okay.  What date did I say?  May 25th?

21          MR. BATTAGLIA:  Yes.

22          THE COURT:  Okay.  So I guess kind of following up

23   before we kind of go to the next matter -- I'm going to sign

24   this order and get it -- it'll get on the docket after we're

25   done.

1          With respect to the notice that was filed

2     recently, my case -- I want folks to reach out to my case

3     manager.  I think we just need to have a separate hearing

4     and I don't want to start giving out dates because my case

5     manager is going to tell me I got the wrong date or

6     something, but I want to schedule a couple of hours or maybe

7     an hour or so or two to go over -- we can take up the notice

8     just so there's transparency about the notice and also the

9     Subchapter V Trustee's report.

10          I'd like to hear from the CRO, thoughts about the

11     report.  Let's talk about what's in there and what next

12     steps are.  I think that goes in line and I'd like to do it

13     sometime in May.  You know, next week -- not next week, but

14     just sometime in the next couple of weeks.  Let's just have

15     a conversation about, you know, the course of the case and

16     what your thoughts are on it.  Give everyone an opportunity

17     to talk about it.  I can share some of mine.

18          Let's just kind of set some time apart.  I think

19     that also falls in line with what the U.S. Trustee has

20     mentioned, which I share the concern.  Let's just kind of

21     talk about it and so I can talk about next steps in

22     connection with the case.

23          Since mediation was brought up, is -- are the

24     parties still mediating or is that still going on or --

25          MR. BATTAGLIA:  They are and I'll try to be very

```
 1   cryptic.
 2             THE COURT:  You don't have to.  Why don't we talk
 3   about it at the --
 4             MR. BATTAGLIA:  That's fine.
 5             THE COURT:  Why don't we schedule a hearing on
 6   that day, and then everybody can kind of figure out what
 7   they want to say about mediation and where that goes because
 8   I think it all kind of fits in.  Right?  And maybe we can
 9   all talk about next steps and what we're reading and share
10   thoughts at that time.  Okay?
11             MR. BATTAGLIA:  Certainly.
12             THE COURT:  But let's just figure a date in the
13   next couple of weeks.  I want to make sure Ms. Haselden is
14   here and it works and everybody has enough time to kind of
15   talk about it, just in the Free Speech case.  Okay?
16             MR. BATTAGLIA:  Yes, sir.
17             THE COURT:  Okay.  Let me sign this order so that
18   I know you're -- it's good.  It'll hit the docket a little
19   bit later.  Just give me a second.  I have signed.  Okay,
20   I've signed that order and it is off to docketing.  Okay.
21             MR. BATTAGLIA:  Last matter on the Court's docket
22   is the motion to compromise, the 9019 motion to compromise
23   the -- basically the disputes with Shannon & Lee and Marc
24   Schwartz and Associates.  Debtor filed the motion and just
25   so the Court is aware, what I'll present to the Court today
```

1    will be sort of business judgment testimony or test -- facts

2    and the argument on the issues that the Trustee's raised and

3    the Sandy Hook plaintiffs have joined into, I leave that to

4    the applicants themselves.

5          And, you know, the Court's well aware of the

6    history that precedes all of these issues. The Court's

7    denial of the application for retention, the denial of the

8    motion for reconsideration, that those orders are on appeal.

9          Separately, there are motions for payment of

10    administrative claims by Shannon & Lee of approximately

11    $325,000 and Marc Schwartz and Associates for another

12    $348,000, a total of $673,000.  The settlement terms that

13    are proposed and before the Court today would be to allow

14    those professionals to simply take their prepetition

15    retainers, Shannon & Lee a 50,000 and some change, 50,800

16    some odd dollars.  And Marc Schwartz and Associate is

17    holding a $75,000 prepetition retainer.  And they would, if

18    the Court authorizes the settlement to go forward, they

19    would dismiss their appeals and they would dismiss their

20    administrative claims.

21          The evidence that the Debtor would put on, and I'm

22    happy to proffer or call Mr. Magill.  I don't think it's

23    necessarily seriously disputed, but is generally speaking

24    that in the business judgment in the best interests of the

25    Debtor and its estate, the settlement relieves the Debtor of

1    a potential obligation, no matter how remote -- and I

2    appreciate that the Court has been pretty specific about its

3    rulings and I've looked at some of the case law -- but

4    relieves the Debtor of a potential obligation for another

5    $600,000 worth of administrative costs for something that

6    does not disrupt or alter its cash flow because it's already

7    paid a deposit retainer.

8            And that's an enormous consideration from the

9    Debtor's estate, so whether it's a 5 percent risk or a 10

10   percent risk or greater, it's of a very serious magnitude

11   that the Debtor will be forced to bear.  The parties who --

12   the Trustee's office, and I appreciate what they're doing

13   and why they're doing it and the parties who joined in that

14   appeal, and the Debtor has not, you know, they certainly

15   have their positions and I know why, but they won't bear

16   that $600,000 added expense.  The estate will and the estate

17   will have to power through those issues.

18           There's a distraction element to the estate.  As I

19   said, I'm not a party to the appeal, the Debtor is not, but

20   that doesn't mean I'm dismissed from having to pay attention

21   to it and that the Debtor doesn't have to be aware of what's

22   going on.  The other parties who are party to the appeal

23   aren't bearing cost, as I understand it.

24           So these issues are disputed and whether that

25   dispute is remote or not, the business judgment that Mr.

1    Magill would testify to is that in his best business

2    judgment, this is a rational, reasonable settlement in the

3    best interest of the estate and meets the obligations of the

4    myriad of case laws on settlements under 9019 in the Fifth

5    Circuit.  And I'll be happy to proffer him.  I'll be happy

6    to call him at the Court's --

7              THE COURT:  I would like some -- at least a

8    proffer or you can put him up, however you wish to proceed

9    is fine with me.  I just want to make sure that --

10             MR. BATTAGLIA:  I'll let others open and then I'll

11   put Mr. Magill on.

12             THE COURT:  Huh?

13             MR. BATTAGLIA:  I'll let others open and then I'll

14   put Mr. Magill on.

15             THE COURT:  Okay.  Thank you.

16             MS. FREEMAN:  Judge, just very briefly, we filed -

17   - Ms. Haselden filed an objection to the request for

18   administrative expense at Docket No. 269; however, Ms.

19   Haselden is in support of the 9019.  We don't have anything

20   to add beyond what was filed in that initial response at

21   269; however, after discussions with Mr. Battaglia and the

22   CRO, we do understand the benefit to the estate and the

23   attendant risks to the appeals.  Therefore, Ms. Haselden is

24   in support of the 9019 being approved.

25             THE COURT:  Thank you.  Is there anyone else who

1    wishes to speak in -- I should say to a form of a brief

2    opening in support of the motion?

3            MR. SHANNON:  Good afternoon again, Judge.  R.J.

4    Shannon for Shannon & Lee.  I really think that the -- I

5    think the main thing to consider about this is that there

6    isn't any objection to the reasonableness of the settlement,

7    the economic terms of the settlement, or that it's in the

8    best interests of the estate.  We can talk about some of the

9    legal issues, I guess, you know, I would say probably after

10   evidence makes the most sense.

11           But as far as the standards that the Fifth Circuit

12   set, there's not a dispute that the settlement meets those

13   standards.  I think the questions are about jurisdiction,

14   whether a settlement can -- whether a Debtor in Possession

15   or Trustee can settle something where there's a dispute

16   amongst other parties and whether there's some kind of

17   competing interest in the Bankruptcy Code to consider.

18           Those were addressed.  Shannon & Lee and Schwartz

19   Associates filed a brief.  I think it was on Monday at

20   Docket No. 562.  I think for now, I'll talk a little bit

21   more about some of the case law if we want to get there.  If

22   you want to hear it now, I'm happy to do it now.

23           THE COURT:  Leave it up to you, Counsel.

24           MR. SHANNON:  Okay.  Yeah, I mean, I think it

25   makes the most sense to wait until after the evidence.

1          THE COURT:  Okay.

2          MR. SHANNON:  Because I don't think there is going

3    to be any competing evidence as far as the standard of

4    approval.

5          THE COURT:  Thank you.

6          MR. RIDULFO:  Your Honor, Mike Ridulfo for

7    Schwartz Associates, LLC.  Not much to add.  We have joined

8    in the brief that was filed earlier in the week.  We think

9    the settlement makes sense for all parties.  It's been a

10   very difficult process and we look forward to the Court

11   approving the resolution.

12         THE COURT:  Thank you.

13         MR. RIDULFO:  Thank you.

14         THE COURT:  Anyone else who wishes to be heard in

15   support of the motion?

16         MS. DRIVER:  Your Honor, Vicky Driver for the

17   Jones estate (indiscernible) the 100 percent equity owner in

18   Free Speech Systems, we also agree that this is a well-

19   supported settlement and would show our support in -- for

20   approving the settlement.

21         THE COURT:  Thank you.  Anyone else?  Okay.  Does

22   the Trustee wish to make any opening remarks?

23         MR. NGUYEN:  Yes, Your Honor.  I'll be brief.

24         THE COURT:  Okay.  Take your time.

25         MR. NGUYEN:  Your Honor, we oppose the 9019

```
 1   settlement, partially because it contravenes the Bankruptcy
 2   Code and once evidence is put in and Mr. Shannon makes his
 3   argument, I have some argument as to as to why the Court
 4   shouldn't authorize a settlement that contravenes the
 5   Bankruptcy Code.  There's some jurisdictional issues as well
 6   that we'll get into once Mr. Battaglia put on the evidence.
 7             THE COURT:  Thank you.
 8             MR. NGUYEN:  Thank you, Your Honor.
 9             THE COURT:  Anyone else wish to make a form of an
10   opening in the courtroom?  I don't see anyone else.  Does
11   anyone on, maybe on the line wish to make any opening
12   remarks?
13             MR. SALVUCCI:  Good afternoon, Your Honor.  Martin
14   Salvucci of Paul Weiss Rifkind Wharton Garrison on behalf of
15   the Connecticut plaintiffs, who joined with Texas plaintiffs
16   that Document No. 559, filed a joinder in support of the
17   objection.  I'll likewise reserve comments until Mr. Nguyen
18   has presentation, but we also see the jurisdictional
19   question as not only significant but probably dispositive.
20             THE COURT:  Okay.
21             MR. SALVUCCI:  Thank you, Your Honor.
22             THE COURT:  Thank you.  Anyone else?
23             Okay.  Mr. Battaglia?
24             MR. BATTAGLIA:  Yes, Your Honor.  I'll call
25   Patrick Magill.
```

1          THE COURT:  Okay.  Mr. Magill.  Come on up.  Why

2     don't you have a seat?  Please raise your right hand.  Do

3     you swear to tell the truth, the whole truth, and nothing

4     but the truth?

5          THE WITNESS:  I do.

6          THE COURT:  Okay.  Let the record reflect that the

7     witness is duly sworn in.  Mr. Magill, you have sat in the

8     chair a few times, so you know how the mic works and I will

9     --

10         THE WITNESS:  Yes.

11         THE COURT:  Okay.  Mr. Battaglia, you may proceed.

12         DIRECT EXAMINATION OF JAMES PATRICK MAGILL

13    BY MR. BATTAGLIA:

14    Q    Would you state your name for the record, please?

15    A    James Patrick Magill, M-A-G-I-L-L.

16    Q    If you can, and it's hard to sometimes, if you'd give

17    the Court a brief background of your business experience.

18    A    My business experience, I have a undergraduate degree

19    in accounting.  I'm a certified public accountant in the

20    State of Texas and my business is primarily for the last 40

21    years, has been accounting and business restructuring, both

22    in health care and non-healthcare and the last 30 years has

23    been concentrated in bankruptcy and turnarounds.

24    Q    And have you had opportunities to serve in the capacity

25    of a chief restructuring officer or a trustee in the past?

1   A    Yes, many times.

2   Q    When did your involvement in the Free Speech Systems

3   case commence?

4   A    October of 2022?

5   Q    And what role do you serve?

6   A    CRO, chief restructuring officer.

7   Q    Do you have a familiarity in that role with the

8   disputes that are before the Court and being settled by this

9   motion?

10  A    I am.

11  Q    Can you tell the Court in your own words, please, why

12  you think this is a good settlement for the estate?

13  A    Well, I believe that the -- however remote, the

14  potential liability that we might have in both monitoring

15  any kind of further litigation in this matter plus the

16  possibility that we might be saddled with some kind of

17  settlement down the road concerns me.  We are constantly

18  trying to monitor administrative claims and also want to

19  make sure that we can kind of control how this is going,

20  this whole process is going to end without hanging out

21  there.

22       That has some concern.  The particular attraction to me

23  on this is that we can settle it without the estate writing

24  another check.  And as long as we can settle this, that does

25  not affect our cashflow and it eliminates, however remote

1   somebody might think it is, any kind of future liability.

2   It seems like that's in our best interest.

3           MR. BATTAGLIA:  Thank you.  I have no further

4   questions of the witness.

5           THE COURT:  Okay.  Does anyone wish to question

6   the witness who supports the motion?  Okay.  Any questions

7   for any party who opposes the motion?  And I'll start in the

8   courtroom.

9           MR. NGUYEN:  No, Your Honor.  Thank you.

10          THE COURT:  Okay, thank you.  Mr. Salvucci, do you

11   have any questions for the witness?

12          MR. SALVUCCI:  No questions, Your Honor.  Thank

13   you.

14          THE COURT:  Mr. Magill, thank you very much for

15   your time.

16          MR. BATTAGLIA:  Your Honor, I would ask that the

17   Court take judicial notice of the administrative expense

18   motions at ECFs 251 and 252.  Those are the administrative

19   expense motions filed by Shannon & Lee and by Marc Schwartz

20   and Associates which have drawn objections and remain

21   pending at this point in time.

22          THE COURT:  Okay.  I'll take judicial notice that

23   they were filed, yes, and that there are objections filed to

24   them and they remain pending.

25          MR. BATTAGLIA:  I have no further evidence.  I

1    don't know if anybody has any.

2           THE COURT:  Okay.  Any further evidence in support

3    of the relief requested?

4           MR. SHANNON:  Yes, Judge.  Shannon & Lee filed a

5    witness and exhibit list at Docket No. 567.  Virtually

6    everything, Exhibits 1 through 23 I believe, you know, are

7    things that would be appropriate for judicial notice.  The -

8    - Exhibit 1 is just the motion we're here on for today.  Two

9    is the exhibit -- Exhibit 2, I'm sorry, is the U.S.

10   Trustee's objection.  Three is the joinder.  Four is the

11   Shannon & Lee's motion to allow the administrative expense

12   claim.  Five is Schwartz Associates' administrative expense

13   motion.  Six is the U.S. Trustee's objection.  Seven is Alex

14   Jones' objection.  Eight is the Debtor and the Subchapter V

15   Trustee's joint objection.  Nine is Shannon & Lee's omnibus

16   reply to those objections.

17          THE COURT:  Got it.  Which -- out of all the -- 1

18   through 24, are you seeking to -- what are you -- what are

19   you --

20          MR. SHANNON:  I would like the Court just to take

21   judicial notice of that, you know, again that the -- those

22   are the pleadings.  Those are the pleadings that reference

23   the --

24          THE COURT:  Want me to take judicial notice of 1

25   through 24?

1          MR. SHANNON:  One through twenty-three, I believe.

2          THE COURT:  Okay.

3          MR. SHANNON:  And the one thing to note, I think

4    it's Exhibit 9 -- I'm sorry.  Not Exhibit 9. Exhibit 13, 16,

5    19, and 22 are orders by the District Court and the appeals.

6    I still think the Court can take judicial notice there.  You

7    know, they --

8          THE COURT:  Publicly filed claims.  I can take

9    judicial notice.

10         MR. SHANNON:  Yeah, and they're signed by the

11   District Court, so they're -- I think that's another basis.

12   Exhibit 24, I don't know if it's going to be an issue.  I

13   haven't heard anything in the arguments that it would be,

14   but you know, I know that in the U.S. Trustee's objection, I

15   think there was either an implication or I believe a

16   statement that there weren't any discussions with the Sandy

17   Hook plaintiffs.  This just wasn't -- that just wasn't true,

18   so I do believe that can also be admitted.  I think it's a -

19   - you know, the --

20         THE COURT:  Why don't I just take notice of 1

21   through 23, judicial notice, and we'll save 24

22   (indiscernible).

23         MR. SHANNON:  Okay.

24         THE COURT:  Okay.  Thank you.  Anything else from

25   parties in support?

1          Okay.  Let me -- Mr. Battaglia, Mr. Shannon, Mr.

2   Ridulfo, is it fair to say that your side has rested on the

3   evidence?

4          MR. BATTAGLIA:  Debtor rests.  Yes, Your Honor.

5          THE COURT:  Okay, thank you.  Okay, for those who

6   opposed, Mr. Nguyen, any evidence to present?

7          MR. NGUYEN:  No evidence, Your Honor.

8          THE COURT:  Okay.  Mr. Salvucci, any evidence to

9   present?

10          MR. SALVUCCI:  No evidence, Your Honor, just

11   argument.  Thank you.

12          THE COURT:  Okay.  Is it fair to say that your

13   side, in terms of evidence, there's no evidence presented,

14   fair to say that that side has rested as well?  Okay, so I'm

15   going to close the evidentiary record and we'll proceed to

16   any closing arguments.

17          I'll start with the Debtor's side, Debtor, Mr.

18   Ridulfo, Mr. Shannon, whoever wants to go first is fine.

19   Any statements -- or Ms. Freeman, just, if there's anything

20   you should tell me.

21          MR. BATTAGLIA:  The only thing I do want to add,

22   Judge, just regarding jurisdictional issues is of course,

23   the administrative expense claims are still pending before

24   the Court with objections.  They are not on appeal at this

25   time.  And I think that it strikes me as odd that a Debtor

1    doesn't have the ability to settle a claim against it that's

2    pending and that seems to be the crux of part of the

3    arguments that the opponents are making and that's really

4    the only argument I have.

5            THE COURT:  Thank you.

6            MR. SHANNON:  Judge, R.J. Shannon again for the

7    record.  I think, you know, again, the evidence just

8    supports the fact that there is no dispute that the

9    settlement meets the standards under -- for approval of a

10   settlement under 9019 under the Fifth Circuit law.  I just

11   point out also that there's not any dispute about the

12   alleged facts in the motion.  There's no dispute about, for

13   example, Paragraph 14 of the motion that there were

14   negotiations involving the Debtor, the Subchapter V Trustee,

15   Shannon & Lee, and Schwartz Associates to get to the

16   settlement that's being proposed today.

17           There's no dispute about the terms of the

18   settlement or what it does in Paragraph 14 of the motion.

19   Paragraph 15 of the motion, there's no dispute that the

20   Debtor's CRO Patrick Magill evaluated the settlement,

21   determined it's the best -- in the best interest of the

22   Debtor's estate.  I think that that's the evidence you've

23   heard today.

24           Paragraph 23 of the motion again, not disputed

25   that the settlement reflects, you know, 18.7 percent of the

1    amount in the administrative expense motions.  Maybe put

2    another way, 81.3 percent discount.  There's no dispute

3    about Paragraph 24 of the motion that continuing the

4    litigation would result in expense to the Debtor's estate.

5    I believe that i's also something that you heard today from

6    Mr. Magill's testimony.

7            Paragraph 25 of the motion, again, not disputed,

8    that the matter is -- it's not -- it's unlikely to be

9    resolved quickly.  Again, not disputed.  Paragraph 26 not

10   disputed.  "Due to the uncertainties involved, the expense

11   of continuing the litigation, and the delay and the

12   inconvenience of continuing the litigation, the settlement

13   is in the best interests of the Debtor's creditors."

14           And lastly, there's no dispute about paragraph 27

15   of the motion, that the settlement was negotiated at arm's

16   length among the Debtor, the Subchapter V Trustee, Shannon &

17   Lee, and Schwartz Associates.  I also think, Judge, the

18   things that we -- you can take judicial notice of, the

19   exhibits that I asked the Court to take judicial notice of,

20   you know, what are the disputed issues and contentions of

21   the parties?

22           I think the Shannon & Lee Exhibits 4 through 22 at

23   ECF 567 outline what those disputes are and that they are

24   disputed issues, real disputed issues.  I think you can take

25   judicial notice as -- looking at those documents with

1    respect to the administrative expense motions, no one's come

2    in and argued that the Court cannot or should not

3    retroactively approve the employment on a limited basis

4    requested and that hasn't been asserted so far.

5           You can also see from those documents that there's

6    no opposition from any creditors to the amount of the

7    administrative expense motions as reduced in those

8    administrative expense motions, the 600,000-plus dollars.

9    The settlement's obviously better than that, but there was

10   no opposition to that higher amount by any creditors.

11          And lastly, Judge, I think you can take judicial

12   notice that the Subchapter V Trustee has looked into the

13   issue.  Point out Shannon & Lee Exhibit 23.  That was the

14   Subchapter V Trustee's report.  It's a 29 page single spaced

15   report that really delves in deep and the Trustee -- the

16   Subchapter V Trustee doesn't have an objection to the

17   settlement, supports the settlement.  And she's the person

18   that's looked into it the most.  I think that that is

19   something that the Court should take into consideration.

20          I think there are other things that the Court can

21   take judicial notice, but I'll leave it there for now.  But

22   I think it's pretty clear that both based on the lack of any

23   kind of opposition, the lack of any dispute as to those

24   factual allegations in the motion and the evidence you heard

25   today that the settlement meets the standards for approval

1       of a settlement and compromise under the Fifth Circuit law.

2              But turning to the things that are actually at

3       issue, and I do think these are -- you know, that really is

4       not at issue.  It's the points raised by the U.S. Trustee's

5       objection and the first one is jurisdiction.  You've heard

6       that being talked about.  It's dealt with pretty -- in my

7       mind, extensively in the brief that we filed, but I think

8       the -- you can just take one thing or two things out of it.

9       I'll quote the Tenth Circuit Bankruptcy Appellate Panel, In

10      re:  South Medical Arts Companies, Inc.  That's 343 B.R.

11      250.

12             That Bankruptcy Appellate Panel said, "A

13      bankruptcy court loses jurisdiction only over those aspects

14      of the case involved in an appeal.  Here, the summary

15      judgment appeal is distinct and separate from the issue of

16      whether a compromise may be reached.  Because the compromise

17      is a separate aspect of the case, the bankruptcy court has

18      jurisdiction to rule on the compromise."

19             That's reflected in some Fifth Circuit precedent

20      as well.  In re:  Life Partners, Inc., 708 F.App'x 831 (5th

21      Cir. 2017).  The Fifth Circuit dismissed a pending appeal

22      because there was no longer a case in -- case or controversy

23      when there was a settlement of the underlying dispute

24      approved by the bankruptcy court that resolved the

25      underlying issue.  I haven't seen any case law that says a -

1    - something that's on appeal can't be settled.  I don't

2    think there is that case law.

3            And I also just point out, Judge, that the --

4    approving the settlement doesn't require the Court to do

5    anything at all with respect to the appeal or even with

6    respect to the administrative expense motion.  No one's --

7    the Debtor is not coming in here and asking you, the

8    settlement would not require you to do -- you know, to say

9    that the appeal is dismissed.  That's not what the

10   settlement's asking.

11           The settlement says that Shannon & Lee and

12   Schwartz Associates will take the actions to dismiss the

13   appeals.  There's no cross appeal here.  It's just Shannon &

14   Lee and Schwartz Associates that are pursuing their appeals.

15   So I just don't see the jurisdictional issue.  I also point

16   out that the District Court did enlarge the time to file

17   briefs in that case because of the settlement and those are

18   -- you can see those in Shannon & Lee Exhibits 13, 16, 19,

19   and 22.

20           So it's not something that the District Court said

21   no, the settlement doesn't matter.  And again, Judge, I just

22   think if that was the case, if the position, if it was true

23   that a -- something, a collateral issue to an appeal could

24   never be determined, then there can never be a settlement of

25   an appeal in a bankruptcy case because this isn't even an --

1    you know, a settlement of the of the actual appeal.  This is

2    a collateral issue at most.  So again, I think the

3    jurisdiction, there's definitely jurisdiction for you to

4    approve the settlement.

5            The second argument that the U.S. Trustee brings

6    up is about the scope of Bankruptcy Rule 9019, right, and

7    essentially, whether a Debtor in Possession or a Trustee can

8    settle something even when there are other objecting

9    parties.  You know, just as a general matter, I think using

10   estate property to compromise disputed claims is clearly

11   within the scope of Bankruptcy Rule 9019 and Bankruptcy Code

12   Section 363.

13           I'll point the Court out to the case In re:  DVR,

14   LLC, 582 B.R. 506 (Bankr. D. Colo. 2018).  It analyzed that

15   issue and what it held was that yes, a Debtor in Possession

16   or Trustee can settle objections raised by other parties

17   where it concerns the bankruptcy estate or administration of

18   the bankruptcy case rather than the private rights of non-

19   settling parties.

20           And that Court describes why.  It says, you know,

21   one, the settlement power is "an important arrow in the

22   Trustee's quiver."  Two, it provides a mechanism "to put an

23   end to litigation that would otherwise drain the estate's

24   resources or delay distributions to creditors."  And three,

25   it's part of a system that Congress put into place to

1   balance the broad standing rights that parties have in

2   bankruptcy.  It's part of that system.

3          Again, this is something you can see in Fifth

4   Circuit precedent in the case In re:  Age Refining, Inc.,

5   801 F.3d 530 (5th Cir. 2015).  It was actually cited in the

6   Debtor's motion.  And in that case, a bankruptcy court

7   approved a settlement with respect to an asserted secured

8   claim, you know, over the Committee's objection, and B,

9   while the Committee was prosecuting a motion to value the

10  collateral and an objection to the claim.  The Fifth Circuit

11  affirmed the bankruptcy court's ruling and said that

12  settlement was appropriate.

13         The last thing, the last of argument that, the

14  U.S. Trustee's objection that has been joined said was that,

15  well, look, it -- the approval is somewhat contravened in

16  the Bankruptcy Code.  And Judge, I just disagree with that.

17  I mean, it's a straightforward application of Section 363

18  and Bankruptcy Rule 9019.  I think really what the U.S.

19  Trustee's objection says is it really wants to make an

20  exception, an ad hoc exception to that.

21         Point the Court to the case In re:  Stearns

22  Holdings, LLC, 607 B.R. 781 (Bankr. S.D.N.Y. 2019).  That

23  Court said, "Where consideration is paid pursuant to a

24  settlement, the Court need not review such payment under

25  Section 503(b) of the Bankruptcy Code."  And what that --

1    what Stearns Holdings did was it just applied the standard

2    for approval of a settlement.  It's a well-established

3    standard.  You look at the uncertainties present, the costs

4    of litigation, the interference of litigation, the views of

5    creditors, whether it was negotiated at arm's length, and

6    determine whether the settlement is fair and equitable and

7    should be approved.

8         Look, I do think there could be potentially an

9    issue. It hasn't been raised here but it, it could be an

10   issue of, hey, is, is this actually a settlement.  I haven't

11   heard an assertion that it's not, but I do think that could

12   be -- that could be a question that's raised.  And I think

13   the Lehman case that was cited in the U.S. Trustee's

14   objection shows what that -- you know, what something that

15   is couched as a settlement is actually not a settlement,

16   despite how it's how it's been formally presented.

17        In the Lehman case the, you know, "settlement"

18   provided that the Committee members' expenses would be paid

19   in full without showing substantial contribution.  That

20   happened beforehand.  There wasn't a dispute about

21   something, about whether something constitutes substantial

22   contribution, and then a settlement at some discount.  It

23   just said, look, this provision of Bankruptcy Code just

24   doesn't apply to allow that administrative expense claim in

25   full.

1          Judge, I agree that the Debtor couldn't come in

2     here and get approval of a settlement that proposed to allow

3     the amount in the administrative expense motions in full

4     over an objection, but that's not what's happening.  The

5     settlement would be, you know, 18.7 percent of what is

6     asserted.  I think a settlement is a tool to manage risk of

7     litigation, to manage the cost of litigation, and that's

8     something you see reflected in the standards of approval of

9     a settlement.

10          And that's what this -- that's what this is here.

11     I think it's clearly a settlement.  It's not a number that

12     would have been agreed to absent the uncertainties of the

13     litigation, the cost of litigation.  It's not quibbling

14     around the edges and as you heard Mr. Magill talk about, you

15     know, it's anchored to an amount that the Debtor would --

16     that would not interfere with the Debtor's cash flow.

17          The last case I want to talk about, Judge, is the

18     Roquemore case referenced in the U.S. Trustee's objection in

19     the Sandy Hook plaintiffs' joinder.  The case was cited and

20     I actually think it kind of -- it shows or it supports the

21     Debtor's motion.  It shows how competing policies of the

22     Bankruptcy Code are addressed in the context of a

23     settlement.

24          That case involves a Section 727 objection to

25     discharge and what the Bankruptcy Court did was actually

1    analyze it under the standards for Bankruptcy Rule 9019, but

2    said look, because of these competing standards, you're

3    going to look at it with a little bit of heightened

4    scrutiny.  And the Court really talked about how important,

5    you know, objections to discharge are and the very important

6    policy implications there.

7         But still, you know, it actually applied the

8    standard to approval of a settlement and compromise under

9    Bankruptcy Rule 9019.  I think Roquemore supports that the

10   competing policy considerations are something the Court can

11   think about.  It's something that the Court can think about

12   with respect to a, you know, whether a settlement is fair

13   and reasonable.

14        You could even say it's a thumb on the scale, but

15   here, there is no -- there is no dispute that they -- that

16   the standard is met and that the settlement especially the

17   economic terms of the settlement are reasonable.

18        So Judge, that's what I have.  I think based on

19   that, based on the evidence you've heard, the Court should

20   approve the settlement.  I don't think the Bankruptcy Code

21   requires the Debtor to make an unsound gamble in litigation

22   where it has reached a settlement that's fair and equitable

23   in the best interest of the bankruptcy estate and was

24   negotiated at arm's length.

25        THE COURT:  Thank you very much.

```
 1              MR. SHANNON:  Thank you, Judge.
 2              MR. RIDULFO:  Again, Your Honor, Mike Ridulfo for
 3    Schwartz Associates.  Your Honor, we join in the arguments
 4    made by Mr. Shannon.  It just strikes me and I think this is
 5    the overlay here.  This is exactly what Rule 9019 is
 6    intended to be used for.  The Debtor routinely compromises
 7    claims, negotiates administrative claims, files claim
 8    objections.  We think this is specifically in the province
 9    of the Debtor's business judgment and we ask the Court to
10    grant the motion.
11              THE COURT:  Thank you very much.  Anyone else wish
12    to be heard in support of the motion?
13              Okay.  Let me turn to the Trustee.  Any comments?
14              MR. NGUYEN:  Thank you, Your Honor.  Ha Nguyen for
15    the U.S. Trustee.  Your Honor, I will be brief.  We said a
16    lot in our papers.  The U.S. Trustee filed an objection to
17    the motion which succinctly laid out the issues that my
18    office has with this type of proposed settlement.  While the
19    Court -- and we don't normally stand in the way -- should be
20    encouraged -- encouraging parties to resolve issues and come
21    to consensus.  However, there are limitations on what the
22    Court can and cannot approve and the settlement that the
23    parties are asking the Court to approve today is one of
24    those -- is one that the Court cannot approve because it
25    contravenes the Bankruptcy Code.
```

1          This is not a matter about dollars and cents.

2     That would be easy.  That would be an easy call.  This is

3     about whether parties can negotiate around the strict

4     requirements for employment and compensation under the

5     Bankruptcy Code and your own orders on September 20th.  In

6     essence, the parties are rewriting what is required under

7     the law.

8          I heard the term ad hoc exception.  Complying with

9     the law is not an ad hoc exception.  It's the requirement.

10    When it comes to employment and compensation, all parties

11    have the right to be heard, not just the Subchapter V

12    Trustee, not just the Debtor, but also creditors and the

13    U.S. Trustee and the Court has its own obligation, which is

14    clearly laid out in the Supreme Court Espinoza case, which

15    says that the Court is obliged to ensure compliance with the

16    Bankruptcy Code on its own initiative, even if no creditors

17    object.

18         The Court's responsibilities, the parties' rights

19    to object and oppose under 327 and 330 and other provisions

20    of the Bankruptcy Code cannot be bargained away through a

21    9019 settlement.  This request is not just about retainers,

22    Your Honor.  This is about compliance with bedrock

23    principles of the Bankruptcy Code.  I would urge the Court

24    to consider the importance of this decision as it applies to

25    all cases going forward.

1           Why would any professional go through showing that

2      they are disinterested and they qualify under 327?  Why

3      would any professional submit any disclosure of connections

4      to the Court or make a showing that their fees are

5      reasonable, filing fee application?  Why would any

6      professional do any of this if they can do a handshake

7      agreement with the Debtor under a 9019 settlement?  Further,

8      Your Honor, if you think about it, these examples, you know,

9      the code doesn't allow -- doesn't authorize conflict the

10     counsel to represent the Debtor.

11          If Your Honor allow payments under Rule 9019 can

12     conflict the counsel backchannel their way into payment by

13     providing services to the Debtor without an application and

14     then filing another handshake 9019 motion with the Court;

15     when you think about these examples, this is the precise

16     reason why the Court should deny this attempt to circumvent

17     the well-controlled process of employment and compensation

18     that Congress implemented in Section 327, 328, 330, and so

19     forth. And again, it's important.

20          Rule 9019 is a very general provision and there

21     are rules of statutory construction that says the -- you

22     know, the -- I'm sorry, I'm -- specific rules governs over

23     the general rule.  And rule -- and again, Rule 9019 is just

24     a rule.  It cannot be used to undermine substantive

25     provisions of the Bankruptcy Code such as Section 327 and

1    330.  Those sections are in the code.  Rule 9019 is just a

2    rule implemented by the judicial conference.

3            And I think another important point that I think

4    get lost in all of this is the U.S. Trustee objects to this

5    settlement for the purposes of effectuating your order on

6    September 20th, your order denying S&L and Schwartz's

7    application.  The Court listened to hours of testimony and

8    looked at evidence and thoroughly explained its reasoning on

9    the bench and told everybody why these applications should

10   be denied.

11           The impact of that decision, if we read Lamie v.

12   U.S. Trustee, is that unretained professionals do not have

13   the right to compensation from the bankruptcy estate.  And I

14   will quote from the Supreme Court.  And it says, "A debtor

15   attorney not engaged as provided by Section 327 is simply

16   not included within the class of person eligible for

17   compensation."

18           This is the effect of your September 20th orders.

19   Now what S&L and Schwartz and the Debtor through this 9019

20   motion is saying is, you know, ignore what the Court said on

21   September 20th and also the Bankruptcy Code and simply just

22   look at Rule 9019 and allow us to be compensated by the

23   bankruptcy estate.

24           Your Honor, your orders on September 20th mean

25   something and they have implications and they have legal

1    ramifications.  S&L and Schwartz are entitled to go up to
2    District Court and say, hey, we think Judge Lopez is wrong.
3    They have that right to appeal and they did.  And the U.S.
4    Trustee will be there and we will say Judge Lopez was well
5    reasoned and he got it right.  That is the process, not in
6    Rule 9019 settlement for the Debtor where none of the
7    respondents to the appeal is involved.  Simply, this is a
8    back channel way to ignore your orders and the ramification
9    of your ruling on September 20th, to allow them to receive
10   payment from the bankruptcy estate.
11          Lastly, Your Honor, we mentioned jurisdiction in
12   our order.  S&L and Schwartz in its -- in their brief stated
13   that the Court is not exercising any jurisdiction over the
14   appeal, but I have never seen the argument where it is not
15   an exercise of jurisdiction when the Bankruptcy Court is
16   ordering the appellant to dismiss their appeal.  And also
17   the reason why they're up there in District Court is to undo
18   your ruling on their Section 327 application, which is the
19   right to be -- to receive compensation from the estate.
20          They're saying, forget about the merits and the
21   arguments up there.  They're saying just allow us to have
22   that right now through this 9019 motion.  So that's why I
23   believe the jurisdiction question is very dispositive
24   because it gives them exactly what they want without taking
25   it up to the District Court.

1          Your Honor, we stand by what we wrote in our

2     objection on jurisdiction and believe that the caselaw that

3     we cited supports the notion that once an appeal is filed,

4     the District Court has jurisdiction on the matter.  Unless

5     the Court has any question, the U.S. Trustee requests that

6     the 9019 motion be denied.

7          THE COURT:  Thank you very much.

8          MR. NGUYEN:  Thank you, Your Honor.

9          THE COURT:  Okay.  Mr. Salvucci.

10         MR. SALVUCCI:  Thank you, Your Honor, and may it

11    please the Court, once again Martin J. Salvucci of Paul

12    Weiss Rifkind Wharton and Garrison on behalf of the

13    Connecticut plaintiffs.  We're of the view that the United

14    States Trustee has this pretty much exactly right and I

15    don't want to belabor energetic agreement, particularly

16    because I think I'm on the last one in line here.

17         I did just want to emphasize that I think the

18    objection raises several arguments, any one of which

19    standing on its own could offer a sufficient basis and

20    should offer sufficient basis for the Court to deny the

21    motion.

22         In our view, this is a threshold question of

23    jurisdiction.  Of course, the Court has an independent

24    obligation to police its own subject matter jurisdiction.

25    The United States Court of Appeals for the Fifth Circuit has

1    -- quoting the Supreme Court, "observes that the filing of a

2    notice of appeal is an event of jurisdictional

3    significance."  That language which comes from the Griggs

4    case also makes clear that divestiture is to those aspects

5    of the case that are involved in the appeal.

6         While it's true and I don't think anyone said this

7    directly, but while it's true that there is more flexibility

8    or functional inquiry to the divestiture doctrine in

9    bankruptcy, it's not so flexible or so functional as to

10   allow a Court to revisit, comment upon, or supplement an

11   earlier order that's already on appeal.  I think that's very

12   helpful language from another bankruptcy appeal in the

13   Northern District of Texas, Judge Fitzwater in the Axys

14   Capital Management case, reiterating exactly that point.

15        And the issue is that the proposed settlement

16   takes square aim at the two orders that are now on appeal.

17   It would be a triumph of form over substance to say that

18   simply because the Court is not formally speaking, acting on

19   those orders itself, it's not taking square aim at the

20   subject matter of those orders.

21        Moreover, Your Honor, even if there were

22   jurisdiction in this case, the proposed settlement aims to

23   effect, as Mr. Nguyen I think ably elaborated on, end run

24   around the heightened requirements the Bankruptcy Code does

25   set forth with retention, compensation of estate

1   professionals.  It's no accident, Your Honor, that Congress

2   devoted extensive red ink in the Bankruptcy Code to the

3   mechanics for these sorts of efforts and Rule 9019, a much

4   more general non-substantive provision, should not operate a

5   as effectively a side door around those around those

6   requirements.

7          We think the  Roquemore case is actually quite

8   helpful for us in part because it acknowledges there are

9   certain topics in the case of in the -- in the case of

10   Roquemore, it was a discharge objection.  There are certain

11   topics that are not really properly the province of a 9019

12   motion.  I acknowledge that certain Courts say that

13   expressly about discharge objections and we think here would

14   make very little sense for the statutory requirements in

15   Section 327 (indiscernible) to effectively be undone by a

16   9019 motion.

17          The last thing that I say, and this is not

18   strictly speaking a legal point, Your Honor, is that we are,

19   as the Sandy Hook families collectively probably on the

20   order of 99 percent of unsecured creditors because so much

21   has been said about the risk posed by the administrative

22   expense motions, it does just bear mentioning that it is the

23   unsecured creditors who are going to be bearing the risk

24   that those motions are granted.

25          We've assessed those risks and my clients are

1    comfortable with those risks, Your Honor.  I think

2    (indiscernible) said in the context of its 9019 inquiry,

3    that there is some proper deference owed to the reasonable

4    views of creditors.  I think that was the Foster Mortgage

5    case.  And so to the extent helpful and probative, I would

6    just like to point out once again that 99 percent of the

7    unsecured creditors do oppose the settlement,

8    notwithstanding the legal issues.

9           With that, unless Your Honor has any further

10   questions for me, Sandy Hook families likewise, respectfully

11   submit that the motion be denied, and the objection

12   sustained.

13          THE COURT:  Thank you very much.  Does anyone else

14   wish to be heard?

15          MR. SHANNON:  Judge, if I could respond just

16   briefly.

17          THE COURT:  I've heard enough.  I am going through

18   the line, because last time Mr. Ridulfo, I didn't recognize

19   him and now it's on my mind to do the double and the triple

20   check on this.

21          Does anyone on the line wish to be heard?

22          Okay.  So before the Court is to approve a

23   compromise under 9019, settling claims involving Shannon &

24   Lee and Schwartz and Associates, which I'll call

25   (indiscernible) for purposes of this decision.

1          I want to just, first of all, thank every person

2    who participated in the briefing and in the hearing.  I

3    think it's important.  It's part of the process.  I think

4    you will note today anyone who wanted to speak, I let speak.

5    I think today is an important hearing and so I'm -- anybody

6    who was interested in speaking either in support or against

7    it, certainly was afforded the opportunity.  I'm going to

8    find that there's been due and proper notice of today's

9    hearing and service of the motion.

10          The Court has jurisdiction over this matter over

11   28 U.S.C. 1334.  This is a Court proceeding under 28 U.S.C.

12   157 to consider the 9019 motion.  So I'd note when this case

13   started, Mark Schwartz served as the Debtor's proposed chief

14   restructuring officer and his firm provided proposed

15   financial services to the Debtor and did so into this case,

16   and Shannon & Lee served as co-counsel along with Mr. Ray

17   Battaglia.

18          The Court denied the Schwartz and Associates and

19   Shannon & Lee retention applications for the reasons stated

20   on the record.  I also denied motions to reconsider those

21   applications.  Schwartz and Associates and Shannon & Lee

22   have appealed the orders, denying their retention

23   applications and the motion to reconsider.  Those appeals

24   are pending before the U.S. District Court for the southern

25   district of Texas.  Aside from the retention applications

1    and the appeals, Shannon & Lee and Schwartz and Associates -

2    - I guess I won't refer to them as (indiscernible).  I'll

3    just keep using Schwartz and Associates -- also filed

4    motions for the allowance of administrative expense claims

5    in October of 2022.  Those motions seek about 675,000 in

6    collective fees for work performed for the Debtor after the

7    petition date.  There have been numerous parties who have

8    objected to those and those issues remain pending and they

9    are not on appeal.  They still remain pending in front of

10   this Court.

11        Court was asked to approve a compromise in a

12   settlement between the Debtor and Schwartz and Associates

13   and Shannon & Lee.  Under the settlement, Shannon & Lee

14   would keep a prepetition retainer of about $50,000 and

15   Schwartz and Associates would keep a prepetition retainer of

16   about 75,000.  For Shannon & Lee, this amounts to about 15

17   percent of the admin claim requested and for Schwartz and

18   Associates, it's about 20 percent of the admin claim

19   requested.

20        Upon entry of a final non-appealable order,

21   Shannon & Lee and Schwartz and Associates have indicated

22   that they would cause the appeals and the admin motions to

23   be dismissed or withdrawn.  The Subchapter V Trustee object

24   -- filed an objection to the admin expense motion but was

25   involved in and now supports the proposed settlement before

1    the Court and supports entry of an order approving it.

2              U.S. Trustee objects to the settlement and so do

3    Sandy Hook plaintiffs.  The Connecticut families filed a

4    joinder supporting the UST's objection.  UST argues that --

5    and the families, argues that the motion should be denied.

6    First, they believe the Court has no jurisdiction to approve

7    the settlement because it pertains to matters subject to the

8    appeal.

9              Second, it exceeds the scope of a 9019 motion

10   because it's the Court and not the Debtor who has to prove

11   professional employment and compensation applications in a

12   bankruptcy case, and for that reason, Chapter 11 Debtor

13   can't, according to these parties, bargain away a right of

14   other parties including the U.S. Trustee and the families,

15   to object to improper employment or compensation obligations

16   or bargain away the Court's independent obligations to

17   review them.

18             Third, the motion requests payments of these

19   professionals under an incorrect legal standard because

20   according to the parties 9019 doesn't displace the legal

21   requirements that a professional must seek to be retained

22   and compensated under Bankruptcy Code Sections 327, 330, and

23   503, and there's no exception under the Bankruptcy Code for

24   unretained professionals.

25             So after considering the evidence and applicable

1    law and the arguments today, I'm going to overrule the

2    objections and I'm going to approve the settlement, and I'm

3    going to provide my reasons.

4            Bankruptcy Rule 9019 governs the requirement to be

5    followed before a settlement can be approved.  It provides

6    that on motion and after notice and hearing, the court may

7    approve a compromise in a settlement.  That's just the

8    general rule, right, so in deciding whether a settlement of

9    litigation is fair and equitable, a judge in bankruptcy must

10   make a well informed decision comparing the terms of the

11   compromise with the likely rewards.  That's coming from In

12   re:  Cajun Electric Power Corp, 119 F.3d 349, 356 (5th Cir.

13   1997).

14           The standard of approval of a Bankruptcy Rule 9019

15   settlement is whether the proposed settlement is fair,

16   equitable, in the best interests of the estate, right?  That

17   comes from the In re:  Age Ref. Inc., 801 F.3d 530 (5th Cir.

18   2015) case.

19           In determining whether a settlement is fair and

20   equitable, the Fifth Circuit applies a three part test that

21   considers the probability of success in litigating the

22   claim, subject to the settlement and due consideration for

23   the uncertainty in fact in law:  the complexity and likely

24   duration of any attendant expenses -- excuse me, the

25   complexity and likely duration of litigation and any

1    attendant expense; the inconvenience and delay, "and all

2    other factors bearing on the wisdom in compromise, including

3    the best interests of the creditors with proper deference to

4    their reasonable views; and two, to the extent to which the

5    settlement is truly the product of arm's length bargaining

6    and no fraud or collusion."

7           I turn to the first factor.  In the admin expense

8    motions, Shannon & Lee and Schwartz and Associates seek as

9    part of their request retroactive approval of their

10   employment on a limited basis and if the Court denies that

11   retroactive approval, they seek approval of an admin

12   expenses for services rendered on behalf of the Debtor, work

13   that they believe benefited the estate.

14          The U.S. Trustee's first objection focuses on the

15   appeals.  Doesn't believe I have jurisdiction over the

16   matter subject of the appeals and the families and the

17   Trustee are right about that.  This Court makes no

18   statements justifying its decisions or whatsoever denying

19   the retention applications or denying the motion for

20   reconsideration.  I stand by every word I said in those and

21   I said it before and I already said that on the record.

22          I'm not trying to settle the appeals, nor do I

23   make any statements about retroactive approval and whether

24   that would even be appropriate about the retention

25   applications, none of it.  But the U.S. Trustee and the

1    families are wrong that the Court doesn't have authority or

2    jurisdiction to approve the settlement.  What's the

3    settlement really about, right?

4         It's about alleged claims to compensation and the

5    Debtor's potential claims against the professionals, right,

6    including turnover, potential fraudulent transfer actions

7    related to the retainer.  That's what this is really about.

8    The appeals won't resolve the questions about whether

9    professionals are entitled to any compensation, and if so,

10   how much or if they have to return all or a portion of their

11   retainer.

12        This Court can settle claims against the estate

13   and potential claims held by the estate.  By settling the

14   claims, the firms have indicated they don't want to pursue

15   their appeals, but that's their right.  The Court's orders

16   and the legal reasoning undergirding their appeals matters

17   that would remain in effect, their applications would remain

18   denied.  The Court isn't robbing the U.S. Trustee of any

19   right to object to the admin motions.  They've already done

20   that and it's not object -- not robbing the U.S. Trustee or

21   the families of any matters related to the appeals.

22        I have no jurisdiction over that.  I have no idea

23   what's going on in those appeals.  If parties are going to

24   file objections and take part in the appeals, they have the

25   right to do so.  If those parties want to withdraw their

1    appeal, that's got nothing to do with me.

2            These professionals are not retained and the

3    proposed settlement won't change that.  And these firms are

4    going to have to live with that, live with denied

5    applications.  But if the Debtor wants to settle potential

6    (indiscernible) climbs for 15 percent or 20 percent of the

7    face value of the climb, this Court has the absolute

8    jurisdiction and authority under federal law to settle

9    causes of action, right, including under 28 U.S.C.

10   157(b)(2)(C), (E), and (F) and Section 105 of the Bankruptcy

11   Code.

12           Looking at the complexity of the case and the

13   attendant expenses, and I would note that I consider here

14   the unopposed and who I find very credible testimony by Mr.

15   Magill.  And I would note that you know, regardless of how

16   the appeals were to turn out -- and again, there's no

17   question that these Debtors are not going to continue to

18   serve.  Mr. Battaglia serves as Debtors' counsel.  Mr.

19   Magill is the new CRO.  They're not getting replaced in

20   these cases, no matter what would happen in the appeals.

21           And again, Mr. Magill who came on after everything

22   happened is telling me that he believes it's in the best

23   interest of the Debtor and of the estate to settle these

24   matters.  So continuing to mitigate the administrative

25   expense motions is going to result in additional expenses to

1    the Debtor's estate that the Debtors has determined further

2    supports the settlement being the superior outcome.  The

3    Debtor is exercising its business judgment based on the

4    facts before it and at this stage of the case, right?

5           The U.S. Trustee already noted, this case is

6    almost a year into a Subchapter V case.  The attendant time

7    required on the issue will no doubt be substantial and

8    dealing with this issue is a distraction at a time when the

9    Debtor is in mediation, has a plan on file, and must decide,

10   given next steps, given the Subchapter V Trustee's report

11   highlighting matters that will require significant time and

12   resources, in this Court's opinion, the amount of money

13   expended and the administrative expense motions makes the

14   potential recovery of the retainers to be -- firms to be

15   paid insignificant.

16          The U.S. Trustee, you know, focuses on the fact

17   that the firms were not retained and therefore not entitled

18   to compensation under Section 330 in the Bankruptcy Code.

19   Parties have the right to object to such fees.  That's true.

20   The U.S. Trustee is absolutely right about that.  Trustee's

21   also right that fees approved under Section 330 are entitled

22   to administrative priority under the Section 503(b)(2) of

23   the Bankruptcy Code.

24          But their admin motions also seek approval of

25   fees, among other things, Section 503(b)(1)(A).  Is a non-

1    retained professional permitted compensation under Section

2    503(b)(1)(A)?  If a professional, you know, incurred

3    expenses on behalf of the estate, no question they were paid

4    for on behalf of the estate post-petition if the Debtor

5    completed schedules for a Debtor and did a good job, is

6    there room under Section 503(b)(1)(A) to -- later finds a

7    conflict; you know, is there room under Section 503(b)(1)(A)

8    to compensate for the non-conflicted work?

9          Fifth Circuit hasn't opined on this issue in this

10   situation that Shannon & Lee and Schwartz and Associates

11   find themselves in, neither has this Court.  U.S. Trustee

12   wants the opportunity to object to the admin expense

13   motions.  Settlement resolves all legal -- all the legal

14   dispute for the admin which is about for about 18 percent in

15   the aggregate.  The Debtor's CRO who replaced Schwartz is an

16   independent party and determined it's best to settle.  I

17   find that the CRO thoroughly considered the interest of the

18   estate and its creditors and concluded that the settlement

19   was in the best course.  That makes sense.

20         As to the issues that I raised on the legal issue,

21   I hope to never address the issue because it means that a

22   professional retention application has been denied.  The

23   lesson is for professionals to place a premium on disclosure

24   and transparency and never find themselves in this

25   situation.  I want to leave no confusion about one point and

1    I think Mr. Nguyen raised the issue about future

2    considerations.  You know, what would this Court's order do?

3            Anyone who sees approval of this settlement as a

4    potential road map for future professionals whose retention

5    applications are denied is mistaken and hasn't really

6    thought through this issue.  Any perceived holdup value or

7    consideration that by keeping litigation open a party can

8    drive towards a settlement is meritless to me and I took no

9    consideration of that in connection with today.  I don't

10   care about or consider appellate time or a litigation holdup

11   value today.

12           These professionals are going to have to live with

13   denied applications and they're going to seek and be

14   permitted to keep a fraction of what they bill, not even

15   thinking about what they could have billed.  Doesn't even

16   factor what a firm like Schwartz and Associates has lost in

17   time and having to hire a separate counsel in this case.

18   You add -- I'm sure, this isn't a sweetheart deal for any of

19   the professionals.

20           This is however a sound exercise of the Debtor's

21   business judgment to settle.  I don't think anyone sees

22   keeping, you know, someone that's billed to date, you know,

23   over $300,000, close to $400,000, and then has to fight for

24   an admin motion, fight -- to fight legal argument sin this

25   bankruptcy case.  I don't care about the appeals.  Just

1     admin motions in here, arguing for retention, sees that as a

2     sweetheart deal, you get to keep 15 percent of what you

3     billed and you don't even -- you're not even counsel

4     anymore.  That's not a sweetheart deal that's going on here.

5     I don't think anybody sees this as some potential road map

6     or a sweetheart deal or smart decision in future that

7     there's going to be some backhanded handshake.

8          And there will be debtors at a particular

9     different kind of a case -- every 9019 motion is taken up on

10    the facts at the time and for the reasons they are

11    considered.  And maybe a Debtor who objects to all of this,

12    and I'll have to take up those issues and I'll deal with

13    them.  Maybe sometimes there are no settlements and parties

14    are going to have to go take that up.

15         I think anyone who thinks that debtors are going

16    to respond in a certain way and, you know, what the Court

17    may or may not do, these cases are in unique circumstances

18    at a -- as a Subchapter V case and I'm hearing from a new

19    independent CRO, a lot of factors that go into the Court's

20    decisions today and this is not -- this case is anything but

21    run of the mill.

22         I rely heavily -- you know, you have two lawyers

23    involved, you know, one was co-counsel to the Debtor and was

24    able to pick up.  There's a lot of things that go into this,

25    where the case says at this stage.  The United States

1    Trustee just stood up and said this is a case that's been

2    going on for a year, Your Honor, we've got to start making

3    resolution.  That's what Mr. Magill is saying.  Time to move

4    on from certain things and he's made an assessment that

5    solving this, solving dueling claims and potential dueling

6    claims, potential fraudulent transfer actions, potential

7    turnover actions and the cost attendant to that, none of

8    that is going to be resolved regardless of what happens

9    upstairs.

10          Court affords great right to determination by the

11   CRO.  So when I think about the wisdom of the compromise, I

12   think about what Mr. Magill has done here.  It's in the best

13   interest of creditors.  I know that there's some creditors

14   object, and I certainly take the families' considerations

15   here, but I do find -- and I do find it's in the best

16   interest of the estate and its creditors.  The settlement

17   was negotiated at arm's length.  The Subchapter V Trustee

18   was involved here as well.

19          Each party was represented by sophisticated

20   counsel or are themselves attorneys, right.  (indiscernible)

21   business judgment.  The Subchapter V Trustee involvement in

22   the negotiations that resulted in the proposed settlement

23   show that the arm's length nature of these issues.  It's not

24   -- doesn't contravene the Bankruptcy Code to settle claims.

25   And there is a better off principle of paying claims and I

1    don't think there are any winners today, but I do think it's

2    important.  The estate is telling me that it wants to move

3    on from this.  It can.

4          And so I'm going to approve the settlement, but

5    I'm not ordering Shannon & Lee to withdraw the objection to

6    -- in the appeals, all right.  I'm going to approve a

7    settlement where they get to keep the retainers.  That's

8    their deal and I don't know what that does to the appeals,

9    but whatever it does, it does and parties can go upstairs

10   and argue.

11         I'm settling a claim.  Both can go upstairs and

12   explain to the District Court that I have settled dueling

13   claims with the admin claim and potential turnover retainer.

14   That's what I'm settling.  That's what this is really about.

15   This isn't about future fees or limited retainers --

16   retentions for future claims.  I don't know about any of

17   that, but I hope this allows the Debtor to put one thing

18   behind it.

19         I want hearings set on other issues.  Mr. Magill,

20   I think you heard me loud and clear about setting up a time

21   where we can talk, Mr. Battaglia, about where this case

22   goes.  I take to heart what the United States Trustee said

23   about, you know, this case has been going on for a while.

24   The parties have been in mediation and I don't like getting

25   in the way and telling people to get out of mediation or in

1    it, but -- maybe we can talk in a couple of weeks about kind

2    of where things are and I don't want to reveal mediation

3    confidences.

4           I have no idea what's going on there, but I do

5    know that I have a Subchapter V Trustee report that I

6    extended.  I authorized the Trustee, I expanded her powers,

7    to be able to do it and there's some things in there that I

8    think we need to talk about.  That's where we are.  So I

9    think for all those reasons, I'll just enter a short order

10   authorizing -- I'm deleting the paragraph about directing

11   parties what to do upon final -- that's not before me and I

12   don't want to get in the way of a settlement.

13          But again, I -- look, I think it's important what

14   the United States Trustee raised and the families raised and

15   I very much appreciate their arguments today.  It just tells

16   me that the process is working that the Subchapter V Trustee

17   is involved, the United States Trustee is involved.  You got

18   the families involved.  You got the Debtors involved.

19   You've got professionals involved.  That is exactly what is

20   supposed to happen to allow the process to continue.

21          So I will sign that order with that one paragraph

22   deleted and I'll get it entered today.  I very much

23   appreciate everyone's involvement today.

24          MR. BATTAGLIA:  Your Honor, I appreciate the

25   Court's not wanting order regarding an appeal, but it

1    remains the agreement of the parties, so --

2              THE COURT:  I'm just saying, I'm not ordering.

3              MR. BATTAGLIA:  Understood.

4              THE COURT:  I'm not telling the parties what to do

5    upstairs.  They can -- they'll do what they'll do.  I

6    understand -- okay.  Anything else we need to talk about

7    today?

8              MR. BATTAGLIA:  I guess I'll circulate an email

9    and see if there's a time, maybe second week of May.

10             THE COURT:  Yeah, the first week of May is --

11             MR. BATTAGLIA:  To come back and address --

12             THE COURT:  -- not good for me.  Yeah, just come

13   back and let's just set a, I don't know, maybe an hour, hour

14   and 15 minutes or something, just to kind of talk about it.

15   And if there's something that comes up in the Jones case

16   that maybe -- I don't know, I'm just using it -- maybe we

17   can use it as an omnibus day.  Just give it some thought and

18   figure it out.  I don't -- I haven't checked the docket.  I

19   mean --

20             MR. BATTAGLIA:  I think --

21             THE COURT:  Well, I've been seeing the back and

22   forth between the Committee and the Debtors.  I've been

23   reading everything.  I just don't know if there's something

24   that is ripe for adjudication in that, but maybe we can all

25   think about it.

1          MR. BATTAGLIA:  Just look for a status conference

2     day for an hour or so in the second week of May and we can

3     address the notice that --

4          THE COURT:  Yeah, why don't we make it a joint

5     status conference because Jones is involved in the

6     mediation.

7          MR. BATTAGLIA:  Both cases, yes.

8          THE COURT:  So that'll make a lot of sense.

9          MR. BATTAGLIA:  Yes, sir.

10          MS. DRIVER:  Your Honor, this is just a --

11          MAN:  Your Honor?

12          MS. DRIVER:  -- cleanup matter.

13          THE COURT:  Just a second.

14          MS. DRIVER:  Oh --

15          THE COURT:  Go ahead.

16          MS. DRIVER:  This is just a small cleanup matter.

17     The -- each of the Texas plaintiffs and the Connecticut

18     plaintiff groups have filed non-dischargeability options in

19     the Jones case.  They've extended the professional courtesy

20     of allowing us an extra week to file our answers, otherwise

21     they would be due today.  So Your Honor, my litigators were

22     a little antsy to see if it was -- if Your Honor would

23     possibly take a look at our unopposed motion for that one

24     week and think about entering those orders, if at all

25     possible.

```
 1              THE COURT:  There's no disagreement.  I'll take

 2    it.  And I did see that the Fifth Circuit took the Judge

 3    Gargotta's decision on direct appeal.  So we will see where

 4    that goes.  I -- just noting that for the record.  So that I

 5    know that was part of one of the stipulations that if the

 6    Fifth Circuit took it -- I just, I'm saying it for the

 7    public.

 8              MR. BATTAGLIA:  With the Free Speech case.

 9              MS. DRIVER:  Yeah.  We don't see it having a lot

10    of applicability for Mr. Jones.

11              THE COURT:  No, no, no, no.  I'm just talking

12    about the Free Speech case, just, that I know that was one

13    thing I just want the parties to note for the record.  So I

14    will take a look at that.

15              MS. DRIVER:  Thank you, Your Honor.  We appreciate

16    that.

17              THE COURT:  Let me just make sure I'm looking at

18    the right thing.  Is it in the -- is it in the Jones

19    adversary?

20              MS. DRIVER:  There's one that's 23-3035 and that's

21    the proposed -- the motion was Docket No. 20 and the

22    proposed order is 21.

23              THE COURT:  Okay.

24              MS. DRIVER:  And then in the 3037 matter, the

25    motion was Docket No. 48 with the proposed order following
```

1    at 49.

2              THE COURT:  Okay.  I'll get them signed and on the

3    docket shortly today.

4              MS. DRIVER:  Thank you, Your Honor.

5              THE COURT:  Give everyone some comfort.  Okay.

6    It's okay.  I'm just going to sit here and sign these

7    orders.  So when I tell people that it's really on the

8    docket, I can really mean it.  Is there anything else we

9    need to talk about today, any scheduling, any other issues

10   that we need to talk about?

11             MR. BATTAGLIA:  -- Free Speech side, Your Honor.

12             THE COURT:  Okay.  Anything else from anyone else?

13             Okay.  Everyone, thank you very much.  I'm just

14   going to sit here.  Everyone's excused.  I'm just going to

15   sign these two orders, make sure that --

16             MR. BATTAGLIA:  Thank you, Your Honor.

17             (Whereupon these proceedings were concluded at

18   2:19 PM)

19

20

21

22

23

24

25

```
 1                    I N D E X

 2

 3                    RULINGS

 4                                          Page      Line

 5    Settlement with Retainers, GRANTED    56        4

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                 C E R T I F I C A T I O N

 2

 3        I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  May 2, 2023
```