```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3
                                    )   CASE NO: 22-60043-cml
 4                                  )
     FREE SPEECH SYSTEMS LLC,       )   Houston, Texas
 5                                  )
          Debtor.                   )   Thursday, June 29, 2023
 6                                  )
                                    )   11:02 AM to 11:42 AM
 7                                  )
     -----------------------------)
 8                                  )   CASE NO: 22-33553-cml
                                    )
 9   ALEXANDER E. JONES,            )
                                    )
10        Debtor.                   )
                                    )
11   -----------------------------)

12                                   TRIAL

13           BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                  UNITED STATES BANKRUPTCY JUDGE
14

15   APPEARANCES:

16   For Free Speech          RAYMOND BATTAGLIA
     Systems LLC:             Law Office of Ray Battaglia
17                            66 Granburg Circle
                              San Antonio, TX 78218
18
     For Alex E. Jones:       RAYMOND BATTAGLIA
19                            Law Office of Ray Battaglia
                              66 Granburg Circle
20                            San Antonio, TX 78218

21                            VICKIE L. DRIVER
                              Crowe & Dunlevy PC
22                            2525 McKinnon Street, Suite 425
                              Dallas, TX 75201
23
     For the U.S. Trustee:    JAYSON RUFF
24                            Office of the United States Trustee
                              515 Rusk Street, Suite 3516
25                            Houston, TX 77002
```

```
 1
    For Leonard Pozner,      AVI MOSHENBERG
 2  et al.:                  McDowell Hetherington LLP
                             1001 Fannin Street, Suite 2400
 3                           Houston, TX 77002

 4  For the Trustee:         MELISSA HASELDEN
                             Haselden Farrow PLLC
 5                           Pennzoil Place
                             700 Milam, Suite 1300
 6                           Houston, TX 77002

 7  For PQPR Holdings        STEPHEN WAYNE LEMMON
    Limited, LLC:            Streusand Landon Ozburn Lemmon LLP
 8                           1801 S. Mopac Expressway, Suite 320
                             Austin, TX 78746
 9
    For David Wheeler:       KYLE J. KIMPLER
10                           Paul, Weiss, Rifkind, Wharton &
                             Garrison LLP
11                           1285 Avenue of the Americas
                             New York, NY 10019
12
    Court Reporter:          UNKNOWN
13
    Courtroom Deputy:        UNKNOWN
14
    Transcribed by:          Veritext Legal Solutions
15                           330 Old Country Road, Suite 300
                             Mineola, NY 11501
16                           Tel: 800-727-6396

17


18
    Proceedings recorded by electronic sound recording;
19  Transcript produced by transcription service.

20

21

22

23

24

25
```

```
 1          HOUSTON, TEXAS; THURSDAY, JUNE 29, 2023; 11:02 AM
 2                           (Call to Order)
 3          THE COURT:  Good morning.  This is Judge Lopez.
 4   Today is June 29.  I'm going to call the eleven o'clock case
 5   -- two of them, actually -- 22-33553, case of Alex Jones and
 6   22-60043, Free Speech Systems, LLC, on numerous matters.
 7   Why don't I take appearances in the courtroom and then we
 8   can work around.  If you can just -- if you're only making
 9   an appearance in one particular case, then go ahead, but if
10   -- otherwise, I'll just accept them for both for purposes of
11   today.
12          MR. BATTAGLIA:  Good morning, Your Honor.  Ray
13   Battaglia for Free Speech Systems.
14          THE COURT:  Morning.
15          MR. BATTAGLIA:  Patrick McGill is with me in the
16   courtroom as well.
17          THE COURT:  Mr. Battaglia, is it as hot in San
18   Antonio as it is in Houston?
19          MR. BATTAGLIA:  Hotter.
20          THE COURT:  Hotter?
21          MR. BATTAGLIA:  Yeah.  But there's that cool front
22   coming through.  It's going to be in the upper 90s.
23          THE COURT:  Did not imagine that you would come to
24   Houston for relief from the heat.
25          MR. BATTAGLIA:  And you come here for the humidity
```

1    as well.

2           MS. DRIVER:  We all come here for the company,

3    Your Honor, no relief from the heat.  Good morning -- or

4    almost afternoon, Your Honor.  Vickie Driver on behalf of

5    Alex Jones and in the courtroom, I have Robert Schleizer

6    who'll be proffering some testimony later from BlackBriar

7    Advisors.

8           THE COURT:  Okay.  Thank you.

9           MR. RUFF:  Good morning, Your Honor.  Jason Ruff

10   for the U.S. Trustee's Office.

11          THE COURT:  Good morning.

12          MR. MOSHENBERG:  Good morning.  Avi Moshenberg and

13   Jennifer Hardy for the Texas Plaintiffs.

14          THE COURT:  Good morning.

15          MR. MOSHENBERG:  Good morning.

16          MS. HASELDEN:  Good morning, Your Honor.  Melissa

17   Haselden, Subchapter 5 Trustee for Free Speech Systems.

18          THE COURT:  Good morning. Anyone else?  Okay.  If

19   you are online, on video, or, I should say, in the audio,

20   and you wish to make an appearance, why don't you hit 5-

21   start.  Once I unmute your line, I'm going to keep it

22   unmuted.  I just ask that you please monitor and just keep

23   your line muted unless you're speaking.  I'm going to unmute

24   a 212 line.

25          MR. KIMPLER:  Good morning, Your Honor.  It's Kyle

1    Kimpler from Paul Weiss on behalf of the Canada Plaintiffs.

2    Are you able to hear me?

3             THE COURT:  Just fine.  Good morning, Mr. Kimpler.

4             MR. KIMPLER:  Good morning.

5             THE COURT:  All right.  Here's a 512 number.

6             MR. LEMMON:  Your Honor, Steve Lemmon for PQPR.

7             THE COURT:  Good morning, Mr. Lemmon.  Anyone else

8    wish to make an appearance this morning?  Okay.  Who do I

9    turn it over to?

10            MR. BATTAGLIA:  I'll kick things off, Your Honor.

11   Ray Battaglia for Free Speech Systems.  I filed an agenda.

12   There are a limited number of things.  The matters on the

13   Alex Jones docket are, frankly, the same -- mirror images --

14   of some of the matters on our docket.

15            We have the cash collateral motion, which is up

16   again, filed post-order last night.  It was circulated to

17   the parties on Monday.  I've had no comments or questions

18   from anybody regarding the order.  I'm be happy to address

19   those with the Court if you have any when we get to that.

20            We have the motion to compromise with certain of

21   the Texas Plaintiffs.  That's set in both cases.  There's a

22   reservation of right filed.  I think have some concerns

23   what's in there being accurate, but I'm not aware of any

24   opposition.  I think we have a proffer of Mr. McGill and our

25   proffer of Mr. Schleizer in support of that motion.

1              And then the last motion, which is again only in

2      the Free Speech case is the motion to expand the scope of

3      the employment of Pattis & Smith to include the post-trial

4      and appellate matters.  I'm not aware of any opposition or

5      comments.  I haven't received any from anybody on that as

6      well.  So I'll proceed in whatever order the Court would

7      prefer.

8              THE COURT:  If it's okay with everyone, do you

9      think we can do cash collateral, Pattis & Smith, and then

10     however the parties wish to proceed on the 9019 just so we

11     can -- okay.

12             MR. BATTAGLIA:  That's fine --

13             THE COURT:  Why don't we start with cash

14     collateral?

15             MR. BATTAGLIA:  Sure.  Your Honor, this is a

16     continuation.  It's the monthly budget, is attached to

17     proposed form of order.  It, frankly, reflects pretty

18     normalized spending and revenue numbers.  I don't think

19     there's anything particularly unusual in it, and probably

20     the best thing to do is if the Court has questions or

21     comments about the budget -- because the order -- the terms

22     of the order are identical with the exception of the 12th is

23     now 13th.

24             THE COURT:  I agree.  Anyone wish to be heard in

25     connection with the cash collateral?  Okay.  Let me just

1    take a look online.  Okay.  You need to new date.  When do

2    you want to come back?

3              MR. BATTAGLIA:  Towards the end of the month,

4    Judge.

5              THE COURT:  Do you think we can do 9:00 a.m. on

6    Thursday the 27th?  It can be a video hearing.

7              MR. BATTAGLIA:  That's fine, Judge.

8              THE COURT:  Okay.  I'm going to sign that right

9    now, and I'll get it off to -- it'll hit the docket shortly

10   after the hearing.  Where do we go next?

11             MR. BATTAGLIA:  Pattis & Smith, Your Honor.  The

12   Court had signed an order approving the retention of Pattis

13   & Smith to try the Connecticut litigation.  Obviously, we're

14   -- there were some boundaries on the fees.  You recall that

15   Mr. Pattis works on a flat fee basis as opposed to an hourly

16   rate charge.  I think it's still a bargain.  Obviously,

17   changing lawyers on a case that's been pending before state

18   court for years and was tried by Mr. Smith is not a

19   particularly good thing to do, and, honestly, the options

20   are not there.  There's not a lot of lawyers that would take

21   on this case.  And so he has proposed to be -- expand his

22   retention to include post-trial matters and his fee at 50

23   percent of his total fee would come to -- I think it's 125

24   or 130,000 gross.  We scheduled 30,000 -- excuse me --

25   70,000 in this month's cash collateral and 70,000 in next

1    month's cash collateral.  It's probably -- that's 5,000 too

2    much but it's $135,000 to this estate.  We think that's a

3    bargain (indiscernible) you know, the scope of what needs to

4    be done and what otherwise would be charged.

5           THE COURT:  Well, it feels consistent with the

6    prior order and the work that needs to continue to get done

7    in that case so --

8           MR. BATTAGLIA:  I did not disclose -- I didn't --

9    frankly, I didn't remember it.  I don't know it matters.

10   His declaration remains the same, but there was a sanctions

11   order issued against Norm Pattis in conjunction with

12   releasing some information or documents that he shouldn't

13   have.  It's on review or appeal.  I'm not sure what they

14   call it up there.  But at this point, you know, the work's

15   largely been done, but there are other lawyers in the firm

16   that take over.

17          THE COURT:  I do recall someone mentioned

18   something like that in one of earlier --

19          MR. BATTAGLIA:  I just wanted to make sure I

20   didn't fail to mention that.

21          THE COURT:  No, no.  I appreciate it.  Thank you.

22   Let me ask, does anyone wish to be heard in connection with

23   the expansion of the Pattis application.  Mr. Ruff, you're

24   okay with this?

25          MR. RUFF:  Your Honor, thank you.  I actually did

```
1    have some conversations because I had just a few questions
2    with -- not with Mr. Battaglia but with Ms. Driver who was
3    able to fill in some blanks for me just to make sure that,
4    for example, that Mr. Pattis was still indeed licensed to
5    practice law and authorized to practice law.  So my
6    understanding is that, while the matter is under review, his
7    suspension has been stayed pending that review.  And then
8    also that there are other members of the firm that can still
9    step in and so that the Debtors will not be without counsel
10   should Mr. Pattis not be able to continue on at some point
11   in that representation.
12           THE COURT:  Got it.  Okay.  Okay.  That makes
13   sense.  That's what I needed to know.  That was going to be
14   my question and you answered it so -- okay.  I'm signing the
15   order.  Okay.  We're for the 9019s now -- oh, was that it --
16   the 9019s?
17           MR. BATTAGLIA:  9019s is the last thing on the
18   docket today, Your Honor, and they're filed companions in
19   both cases.  A post-form of order has been uploaded.
20   Essentially, this is a deal from the Debtor's perspective.
21   It kicks the can down the road in hopes that we can resolve
22   -- reach a resolution of matters, and if we're unable to
23   reach a resolution, frankly, the only thing that sticks is
24   the stay's been lifted.
25           If there's an agreement, there's an establishment
```

1    of debt for these particular Texas Plaintiffs who have not

2    yet gone to trial.  I'm not abdicating my fiduciary

3    responsibilities but at some level the denominator in this

4    case is not as important as the numerator.  The denominator

5    is a function of the sharing of whatever comes out of these

6    cases, and so that's sort of the premise for the agreement

7    is not spending 400, $500,000 in attorney's fees litigating

8    the balance of these cases, not having Mr. Jones be absent

9    from the studio or distracted.

10           We know and I'd proffer testimony of Ms. McGill

11    that when he's absent from the studio on a short-term basis,

12    revenues decline by as much as 40 percent.  And so there's a

13    cost to -- there's an opportunity cost and an out-of-pocket

14    cost that we, frankly, think considering what this deal

15    really is is well worth doing.

16           And so I'm happy after the Court takes other

17    remarks to proffer Mr. McGill's testimony.  I think Ms.

18    Driver's going to proffer Mr. Schleizer's testimony, and I

19    think that's all the evidence we have for the Court today.

20    And I'm happy to ask -- answer -- any questions the Court

21    might have about the terms.

22           THE COURT:  No, no.  No questions.  Thank you.

23    Anyone else in the form of a -- kind of an opening before we

24    kind of get into evidence wish to address -- Ms. Driver?

25           MS. DRIVER:  Thank you, Your Honor.  I would --

1    I'm not going to belabor the points that were made by

2    counsel for FSS.  We're fairly aligned in this situation.

3    Just that it is a distraction to both of our estates for Mr.

4    Jones to be involved in trial and to pushing this off until

5    that mid-October date just really give us time to let this

6    bankruptcy work through the mediation and if the mediation's

7    done successfully, potential reorganization path and a

8    confirmation hearing that we would hope to have in advance

9    of that date so that we can try to reorganize this Debtor.

10   And then if need be, for them to liquidate those claims in

11   the Texas courts, so be it, but if we can resolve their

12   claims for purposes of distribution under a plan, we can

13   hopefully save everybody the time, grief, and consternation

14   of a trial.

15           I did want to note that there are not existing

16   claims against Mr. Jones in the Fontaine matter.  Those

17   existing claims are only in the De La Rosa/Pozner matter.

18   Those were dismissed in a -- a good long while ago.  It

19   doesn't mean they cannot appeal that and they have some

20   appellate rights that we're not impeding here, but as for

21   now, that trial only goes forward for liability against FSS.

22   That was just one distinction I wanted to bring forth to

23   Your Honor.

24           And then, I do believe there was a reservation of

25   right that was filed by the Connecticut Plaintiff last

```
 1    night.  I don't feel like we need to get into a tit for tat

 2    right now, but I do think that our motion speaks for itself

 3    and some of the characterizations in there, I felt were not

 4    supported by our motion.  They were mischaracterizations of

 5    our motion, but I trust that Your Honor's read our motion

 6    and that's what Your Honor would be granting, a reservation

 7    of rights, in my opinion.  We didn't intend to nor can we

 8    nor would you impede on their rights any more than is

 9    already in order, and if there's no objections to the order,

10    I think that speaks for itself.

11              THE COURT:  Okay.  Thank you.

12              MS. DRIVER:  And I'd be happy to put on the

13    proffer, Mr. Schleizer, when everybody's done with their

14    openings.

15              THE COURT:  Alrighty.  Why don't we just get right

16    into the -- get right to (indiscernible), I mean, if you

17    have any proffers.  Just for the record, Mr. Battaglia, are

18    you going to present, essentially, a proffer in support of

19    the motion filed in the Free Speech case?

20              MR. BATTAGLIA:  That's correct.

21              THE COURT:  Okay.  I just want the record to be

22    clear in case anyone's listening.

23              MR. BATTAGLIA:  Although I think the evidence is

24    cumulative for both.

25              THE COURT:  It's cumulative on both.  Got it.
```

1   Okay.

2          MR. BATTAGLIA:  Your Honor, if called to the

3   stand, I would call Patrick McGill.  Mr. McGill will testify

4   --

5          THE COURT:  Let me just make sure.  Everyone okay

6   with Mr. McGill proceeding by proffer today?  Is there any

7   objection?  Okay.  Mr. McGill, let me have you just --

8   before Mr. Battaglia starts, let me have you raise your

9   right hand.  Do you swear to tell the truth, the whole

10  truth, and nothing but the truth?

11         MR. MCGILL:  I do.

12         THE COURT:  Okay.  We're going to proceed by

13  proffer and I'll do this as well for the other witness.

14  After Mr. Battaglia's made the statements, I'm going to ask

15  if they're true and correct and if there's any corrections

16  to anything he said and then I just need that confirmation

17  from you because you would be adopting those statements as

18  your testimony.  Okay?  Mr. Battaglia, I apologize.  Go

19  ahead.

20         MR. BATTAGLIA:  Yes, sir.  Patrick McGill is the

21  court approved chief restructuring officer for Free Speech

22  Systems.  He has been since October of 2022.  Mr. McGill

23  would testify that his background and experience is as a CPA

24  although I don't believe he holds a CPA currently.  He has

25  worked in the field of accounting.  He has worked in

1    management of corporations.  He has worked as a

2    restructuring officer and trustee in numerous bankruptcy

3    cases.

4           He has essentially been appointed to run the day-

5    to-day operations, business operations, of the Debtor Free

6    Speech Systems.  He is familiar with the operations of the

7    Debtor's estate and has done recently an analysis of the

8    Debtor's sales over periods of time when Mr. Alex Jones is

9    not on the air as opposed to when he is on the air, and when

10   he's not on the air, there are guest hosts or other hosts

11   who fill in, and we see a sales decline of at least 40

12   percent for short-term absences.

13          He would also testify that he was investigated

14   through counsel the cost of trial through existing attorneys

15   and that cost out of pocket would be in the neighborhood of

16   $400,000 in attorney's fees and that the disruption to the

17   estate and the cost to the estate justify entering into a

18   deal which will lift the stay in October for these cases to

19   go -- the earliest these case could go to trial in exchange

20   for the accommodations made in the motion of agreeing to an

21   allowed claim in the event the parties arrive at a

22   settlement.  And that would be his testimony, Your Honor.

23          THE COURT:  Thank you.  Mr. McGill, let me just

24   get you closer to the mic and you can just -- want to

25   confirm that those statements by Mr. Battaglia are true and

1    accurate.

2            MR. MCGILL:  They're true and accurate.

3            THE COURT:  Any corrections you would make to

4    anything?

5            MR. MCGILL:  No, sir.

6            THE COURT:  Okay.  Thank you very much.  Anyone

7    wish to cross-examine the witness?  Okay.  I'm going to

8    accept the proffer.  Thank you.

9            MR. BATTAGLIA:  With that, Free Speech Systems

10   rests and I'll let Ms. Driver have the podium.

11           THE COURT:  Okay.  Thank you.  Ms. Driver.

12           MS. DRIVER:  Thank you, Your Honor.  We would

13   propose to also do a proffer of Mr. Robert Schleizer for the

14   Court.

15           THE COURT:  Mr. Schleizer.  Would you please raise

16   your right hand?  Do you swear to tell the truth, the whole

17   truth, and nothing but the truth?  Okay.  And I'll just let

18   the record reflect that the witness has been duly sworn in.

19   Mr. Schleizer, once the proffer is over, I'll ask you the

20   same questions, whether the statements in the proffer are

21   true and correct and if there's any corrections.  Okay?

22   Okay.  Thank you very much.  Ms. Driver, you may proceed.

23           MS. DRIVER:  Thank you, Your Honor.  If Mr.

24   Schleizer were to testify, he'd testify that his name -- is

25   full name is Robert Schleizer and he was the -- he is the

1    managing partner of BlackBriar Advisors, LLC.  He holds a BA

2    in accounting from Arizona State and he previously practiced

3    as a CPA.  He is currently a certified turnaround

4    professional in his practice in restructuring field and as a

5    turnaround professional since 1986.

6         He would further testify that BlackBriar's been

7    hired as financial advisors for Alex Jones in the bankruptcy

8    case, and in that role, he has personally, along with staff

9    at BlackBriar, reviewed the Debtor's financial records and

10   spent multiple hours with Mr. Jones as well as multiple

11   employees of Free Speech Systems and with Patrick McGill.

12        He's also had occasion to review costs related to

13   the Texas trial that took place in 2022, and based upon that

14   information provided today, it is his opinion that trial on

15   the De La Rosa/Pozner matter would significantly distract

16   Mr. Jones from his reorganization efforts taking him off the

17   air for preparation and trial when needed.  This time would

18   also prevent his firm and his attorneys from spending the

19   time necessary with him to try to prepare and confirm a plan

20   of reorganization along with any negotiations therewith.

21        In his view, delaying trial until mid-October will

22   allow for the bankruptcy process to run its course before

23   this trial would begin.  And that would conclude the proffer

24   of Mr. Schleizer.

25        THE COURT:  Okay.  Mr. Schleizer, can you just

1    come forward?  Just get close to a microphone.  You can use

2    the one at the table there as well.  It's fine.  I just want

3    you to confirm that the statements that you heard are true

4    and accurate.

5            MR. SCHLEIZER:  Yes, Your Honor.  They're true and

6    accurate.

7            THE COURT:  Any corrections you would make?

8            MR. SCHLEIZER:  No, sir.

9            THE COURT:  Okay.  Does anyone wish to cross-

10   examine this witness?

11           MR. KIMPLER:  Your Honor, it's Kyle Kimpler on

12   behalf of the Connecticut Plaintiffs.  We would like to ask

13   him a question or two.

14           THE COURT:  Okay.  Alrighty.  I'm going to accept

15   the proffer as the testimony.  It okay.  You can stay right

16   there.  You can answer the questions.  Okay.  Mr. Kimpler.

17           MR. KIMPLER:  Thank you.  Mr. Schleizer, as you

18   may know, I represent the Connecticut Plaintiffs.  It's

19   correct that you've reviewed the motion, including the

20   proposed claim amounts on Exhibit A?

21           MR. SCHLEIZER:  No, I haven't.

22           MS. DRIVER:  Exhibit A was under seal and Mr.

23   Schleizer's not seen that in quite some time so he -- we saw

24   it at some point, but if the claim are not -- are not within

25   his purview today.

1                THE COURT:  He can answer the question, Ms.

2    Driver.

3                MR. SCHLEIZER:  No, I have not seen it.  As Mr.

4    Driver stated, it's under seal.  I looked at the drafts of

5    it, but I did not see the final.

6                MR. KIMPLER:  Who on behalf of the Debtor has --

7    I'm sorry -- let me rephrase that question.  On behalf of

8    the Debtor, who is -- who would take the position that those

9    claim amounts are reasonable for purposes of settlement?

10               THE COURT:  He can answer the question, Ms.

11   Driver.

12               MR. SCHLEIZER:  I will end up looking at them as

13   part of the plan which we have not filed yet.  We're in the

14   process of drafting that.  But it will be something that I

15   will be reviewing with Mr. Jones.

16               MR. KIMPLER:  Has Mr. Jones reviewed the claim

17   amounts that are on Exhibit A?

18               MR. SCHLEIZER:  It's been discussed with him.  I

19   don't know that he's seen the final -- or the discussion --

20   the document that was filed with the court.

21               MR. KIMPLER:  Mr. Schleizer, are you aware that

22   the largest verdict ever entered in any of the 17 cases that

23   have gone to trial is $170 million?

24               MR. SCHLEIZER:  Yes.

25               MR. KIMPLER:  Do you believe that's reasonable

1   claim amount?

2          MR. SCHLEIZER:  I can't have an -- I don't have an

3   opinion on that.

4          MR. KIMPLER:  Do you have an opinion as to whether

5   a claim amount that is larger than $170 million would be

6   reasonable?

7          MR. SCHLEIZER:  I don't.

8          MR. KIMPLER:  Do you know if Mr. Jones has an

9   opinion as the reasonableness --

10          MR. SCHLEIZER:  No.

11          MR. KIMPLER:  -- of a $170 million claim amount?

12          MR. SCHLEIZER:  No, I don't.

13          MR. KIMPLER:  Thank you, Your Honor.  No further

14   questions.

15          THE COURT:  Okay.  Anyone else have any questions

16   for this witness?  Okay.  Thank you very much for your time,

17   sir.

18          MR. SCHLEIZER:  Thank you.

19          MS. DRIVER:  Your Honor, that would conclude the

20   evidence from Mr. Jones and I would echo Mr. Battaglia's

21   comments that that was -- all of that evidence was for the

22   approval of both of the motions.

23          THE COURT:  Okay.  Thank you.  Ms. Driver, is

24   there any other evidence that the Jones' side wishes to put

25   on?  Any additional?

```
 1              MS. DRIVER:  No, Your Honor.
 2              THE COURT:  Okay.  Alrighty.  Anyone have any
 3    statements that they wish to make either -- let me just
 4    start -- in support?  Well, let me start -- anyone who
 5    opposes the relief requested, are there any statements that
 6    you would wish to make?
 7              MR. KIMPLER:  Your Honor, it's Kyle Kimpler again
 8    from Paul Weiss on behalf of the Connecticut Plaintiffs.  I
 9    wouldn't characterize our position as opposition, although
10    it's probably not in support either so if it's appropriate,
11    I'm happy to give you just a couple minutes now or it can
12    wait if you'd like to hear from others first.
13              THE COURT:  No.  I'm fine listening.  Why don't
14    you proceed?
15              MR. KIMPLER:  Okay.  Thank you, Your Honor.  We
16    did file a reservation of right at docket number 360 in the
17    Alex Jones case.  I just wanted to give the Court a little
18    bit of context as to why that reservation of rights was
19    filed.
20              There have to date been 17 victims who have taken
21    their cases to verdict.  Fifteen of those have happened in
22    Connecticut state court.  Two of those have happened in
23    Texas state court.  In Texas so far, the judgments have been
24    for $27 million and $22 million from an average Texas state
25    verdict of $25 million.  In Connecticut, the verdicts have
```

1  ranged from $48 million to $170 million, an average of $96

2  million which is roughly four times the average Texas

3  judgment to date.

4          I think the motion is quite clear that the

5  proposed claim amounts that you see on sealed Exhibit A

6  according to the unsealed motion are intended to put the

7  Plaintiffs -- the Texas Plaintiffs whose claim have not been

8  liquidated on par or in parity with the Connecticut

9  Plaintiffs.  And I think as you heard from Mr. Battaglia,

10  you know, and I think this is also -- if you look at

11  Paragraph 23 of the motion, the Debtors are being quite, you

12  know, transparent about the way they're looking at this

13  which is, the amount of judgments to date are so far greater

14  than what Mr. Jones could ever pay that I think is what Mr.

15  Battaglia said, this is just the denominator.  It's not that

16  important, but it is important to other creditors that are

17  already part of that denominator.  The amounts that is

18  allowed here has a direct impact on the recoveries to my

19  clients and so it is something that we're very focused on.

20          Now I have not come to court today to raise alarm

21  bells about the proposed claim amounts and the reason that

22  that is so is because of the way the motion is set up.  The

23  motion is set up such that these claim amounts would only

24  ever be effective in a situation where there is a fully

25  consensual Chapter 11 plan that includes consent from my

1    client.  And so I think from our perspective, we appreciate

2    that.  Nobody was trying to jam this down over us, and we

3    very much appreciate that, and we very much do want to work

4    towards a fully consensual plan where this would never be an

5    issue.

6           But I want to be very clear that if that is not

7    what happens in this case, we very may well have concerns

8    about the amounts that are in this motion.  Again, I don't

9    think that's teed up for today.  I also want to be very

10   clear as we said in our motion that we fully support the

11   Texas Plaintiffs taking their cases to verdict, although we

12   are aware of the cost of doing so and the benefits of, you

13   know, I think somebody said kicking the can down the road.

14          So I just want to be -- Your Honor to be aware of

15   why we had filed the reservation of rights, the impact that

16   it could potentially have on our -- the recoveries of my

17   clients.  And with that, Your Honor, we're happy to, you

18   know, not oppose the motion, I should say, given the way

19   that it's set up and I think what is intended to do.

20          So unless Your Honor has any questions for me,

21   that's all I have.

22          THE COURT:  I would just note, though, Mr.

23   Kimpler, right, I certainly understand the concern and it's

24   certainly a reservation of right and everything has to be

25   consensual.  I didn't hear you address the cost of --

1    potential cost of litigation factoring into -- on top of any

2    judgments and -- I understand the reservation of rights.  I

3    also have to balance that, I think, with the cost of

4    litigation and the fact that I don't know what the facts are

5    and I don't think it's as simple as -- for anyone, for any

6    Connecticut Plaintiff as well and any Texas Plaintiff to

7    know whether a Texas Plaintiff has a judgment that should

8    fall within a certain range, right.

9         I mean, I think every jury's going to make a

10   determination based on every case on its own merits and

11   maybe there's someone in Texas who deserves a lot of money.

12   I don't know.  Or maybe not.

13        MR. KIMPLER:  Your Honor, I think that's

14   absolutely correct.  Each case is different.

15        THE COURT:  Right.

16        MR. KIMPLER:  If you look at the 15 judgments in

17   Connecticut, there's a very wide difference.  I think all I

18   would say, Your Honor, is that if we were ever in a non-

19   consensual setting --

20        THE COURT:  Your rights are reserved.  I got it.

21        MR. KIMPLER:  -- there might -- probably need to

22   be a further evidentiary record to support these amounts or

23   least that would be our position and --

24        THE COURT:  No, no.  I think -- I got it.  I got

25   it.  Everything changes if it's consensual.  If it's fully

1    consensual then that means one thing.  If it's not, then it

2    means something else and nothing is getting locked in in

3    connection with a plan, and I understand that.

4         But I think I need to get a little bit additional

5    comfort before I approve anything today.  I haven't heard --

6    the testimony that I heard was that no one -- that maybe

7    matters had been -- the numbers had been discussed with Mr.

8    Jones but no one could confirm it.  And I need some kind of

9    confirmation that Mr. Jones knows exactly what's on that

10   number because the record is closed and somebody's going to

11   have to give me that comfort because I'm not going to

12   approve numbers that -- this is his case he's got to know

13   what's in there, Ms. Driver.  So I need someone to testify

14   that he's seen the numbers.

15        MS. DRIVER:  Yes.  And I don't know that I can

16   testify but I think my representation to Court can be -- as

17   his attorney -- he has seen the numbers.  Mr. Schleizer may

18   or may not have been there so I don't know that his evidence

19   was the best evidence of that but I have -- I can represent

20   that to you.  Unfortunately, he is in another state.  His

21   father-in-law is gravely ill so --

22        THE COURT:  I know that, but I'm just saying, you

23   all are asking me to approve that based on that testimony

24   and that's -- I don't know how I can do that today, but I'm

25   happy to give you all an opportunity to do so.  Is there a

1   way you can get in contact with Mr. Jones so that he knows?

2          MS. DRIVER:  I can get a declaration from him that

3   he's seen it.  I don't know how quickly I can get it just

4   because of where he is, but I can take a look at that.  And,

5   Mr. Battaglia, if you've got any other ideas.

6          MR. BATTAGLIA:  No.

7          MS. DRIVER:  But, yeah, this concept was discussed

8   with him on a very, very, very detailed basis so -- without

9   just disclosing attorney/client privilege, I can just tell

10  you that that's been discussed.

11         THE COURT:  And maybe I just need a declaration

12  from him saying that he has reviewed and is -- you know, the

13  Exhibit A.  And it can just be, you know, in the motion,

14  related to the motion.  I think that would get me

15  comfortable for today.

16         MS. DRIVER:  Okay.

17         THE COURT:  With that being said, you know, I

18  think the standard that's being requested in both of these

19  motions is under bankruptcy rule 9019, right, and that

20  requirement.  You look at Supreme Court precedent, TMT --

21  properly known as the TMT Factors are (indiscernible)

22  circuit cases like Jackson Bruen, right.  You look at two

23  things:  Is it fair and equitable and in the best interest

24  of the estate, and certainly an attempt to try to settle

25  litigation and the cost of litigation and the time of

1    litigation and potential appeals related to litigation

2    certainly is in the best interest of the estate.  And the

3    Debtor in each case is telling me that they believe that

4    those numbers are fair and reasonable and I don't have any

5    evidence to the contrary.  So I do (indiscernible) but I do

6    understand that really what's happening and someone correct

7    me if I'm wrong is, the parties are agreeing to a potential

8    number and right now it's a potential number if there is a

9    fully documented consensual plan and I did see the revised

10   redline by a certain date and the parties are going to let

11   me know and file something saying there is a consensual deal

12   that we think satisfies an order -- and agreed order -- and

13   if not, then the parties will -- then the numbers have no

14   value and they're meaningless.

15          And the stay gets lifted in August to allow pre-

16   trial discovery and if something doesn't happen by October,

17   then the -- then all bets are off.  And litigation -- the

18   stay is lifted to allow the parties to continue litigating

19   in October.  If there is a fully consensual plan, I do

20   understand that, right, at some point, there may come a time

21   where that number does become public as Mr. Kimpler's right

22   will be reserved -- fully reserved -- at that time either to

23   contest or maybe the number never -- I guess, Mr. Kimpler,

24   you're going to have to then -- you know, I think

25   everybody's rights are preserved.

1          Either there's a fully consensual plan or there is

2     not.  So I just think -- so it looks like either the stay's

3     going to get lifted or not.

4          MS. DRIVER:  You're correct, Your Honor.

5          THE COURT:  I guess that's the way I'm really

6     looking at it, right.  The number's going to stay under

7     seal, but if there's a fully consensual plan, then, right,

8     everybody will know what's going on, but that will require

9     agreement by the Connecticut Plaintiffs.  And if there's

10    not, then the number's meaningless and the parties go off

11    and litigate and the case will continue whatever trajectory

12    it if.  So that's my understanding.

13         So Mr. Kimpler, I understand that reservation of

14    rights.  I'll say this.  I think orders say what they say,

15    but I do think, you know -- think orders are entered on a

16    moment in time and they will stand on what they explicitly

17    state.  But I think your of your rights are preserved, and

18    if there's not a consensual plan, well, then, I think

19    everything changes, right, and I think -- I understand the

20    need and the desire just for clarity on the point.  And so

21    that's why I read it.

22         So I'm going to approve everything on a contingent

23    basis.  I can sign the Free Speech one now.  It sounds like

24    you both want me to sign them at the same time.  You all

25    tell me, but I think I'm just looking for a declaration from

```
 1    Mr. Jones that just at least confirms or if you want to get
 2    your -- you want the witness to talk to -- someone where I
 3    can evidence from the Alex Jones case that he understands
 4    what's on Exhibit A.
 5            I just don't -- I'm sure, Ms. Driver, you've done
 6    your job.  I just need that record in front of me --
 7            MS. DRIVER:  Certainly.
 8            THE COURT:  -- so that there's no -- you know,
 9    four months down the line, if there's a fully consensual
10    plan that everybody understands what the deal is, and I've
11    signed the orders and I'm also providing assurance to the
12    counterparties that everybody agrees to the numbers.
13            MS. DRIVER:  And I -- Your Honor, I apologize.
14    This was -- I understood this, even up until the reservation
15    of rights was entered, that this had been understood and
16    agreed to by the Connecticut parties.  That exhibit went
17    under seal by specific request by the Plaintiffs not by the
18    estate.  Had I known Mr. Kimpler had a question related to
19    Mr. Jones's understanding of these numbers, I would have
20    unquestionably either had him here personally or I would
21    have a declaration for him.
22            THE COURT:  I understand.
23            MS. DRIVER:  And we did all discuss all discuss
24    evidence so that was just a surprising question for me to
25    hear.  And, again, it just -- I try really hard to work on
```

1    evidence on advance of these hearings so that it is smooth.

2         THE COURT:  I don't want anyone to question

3    anything, and that's why I think, you know, it doesn't -- I

4    don't think I should put it off.  I think, you know, you're

5    seeing me kind of giving a preliminary ruling on that based

6    on what I've heard.  I just want that a little bit -- that

7    additional piece of comfort, and then with a that, once I

8    see it, I'll sign the orders.

9         MS. DRIVER:  I just didn't want Your Honor

10   thinking that we had surprised this on anyone.  We've really

11   been working on this for a very long time and Texas has done

12   so much work --

13        THE COURT:  It's been out there for a while.

14        MS. DRIVER:  -- trying to work with Connecticut to

15   get this done.

16        THE COURT:  It's been out there for a while.

17        MS. DRIVER:  And I will be honest.  I didn't talk

18   with Mr. Kimpler before this hearing, but in the future,

19   when there's anything resolved in this, I call Mr. Kimpler

20   and make sure if there's any evidence that he needs from Mr.

21   Jones that I figure out a way to get it here so we don't get

22   surprised in the middle of a hearing again.  Thank you, Your

23   Honor.

24        MR. BATTAGLIA:  I want to correct one thing.  I

25   know I wanted the numbers under seal for Free Speech

1    Systems.

2            THE COURT:  No, I got it because it's -- I got it.

3    You don't want -- if things aren't consensual, you don't

4    want someone throwing the number out there --

5            MR. BATTAGLIA:  Exactly -- against me at some

6    point --

7            THE COURT:   -- to use against you as -- you know,

8    there was an admission that this was what -- I got it.  And

9    --

10            MR. BATTAGLIA:  And I think --

11            THE COURT:  -- I'm signing -- just what I'm

12    saying.  I'm signing the order --

13            MR. BATTAGLIA:  Understood.

14            THE COURT:  -- with the understanding that if the

15    stay lifts, the number was entirely if there was a

16    consensual plan and that's it.  And I'm making no findings -

17    - I'm making findings that the settlement is fair and

18    reasonable and in the best interest of the estate.  That's

19    what I'm finding based on what I have.

20            Do you want me enter Free Speech now or do you

21    want me to wait?  It's (indiscernible) you tell me.

22            MR. BATTAGLIA:  Let's do it all at the same time.

23    I don't think anybody has any particular preference either

24    way but I'm fine with waiting until you get Mr. Jones's

25    declaration to --

1          THE COURT:  Okay.  Well, once that dec is on file

2     and it can really be, you know, all of three lines -- well,

3     not -- all of --  to kind of get to where it is.  You know

4     exactly what I need.  I am happy to -- just let my case

5     manager know and I'll sign it and get it on the docket.

6          MR. BATTAGLIA:  That's all that's on the docket.

7          THE COURT:  Okay.  When do we see each other next?

8     That's the -

9          MR. BATTAGLIA:  The only thing on the docket will

10    be the hearing you see today on cash collateral.  There

11    could be some things that come up in the interim.  I know I

12    need to employ a tax lawyer/accountant (indiscernible) who I

13    think has been used in this court or other courts and I'll

14    probably just set it on an expedited basis just to get him

15    in and working.

16         THE COURT:  Okay.

17         MR. BATTAGLIA:  There's a turnover motion

18    regarding an ATS, about a half million dollars, that's sort

19    of tied up with some consensual -- that was done on negative

20    notice language that (indiscernible) get set on the --

21    whatever day works because, obviously, it's a meaningful sum

22    of money.

23         THE COURT:  No.  That was the one that I had the

24    question about.

25         MR. BATTAGLIA:  Yes, sir.

```
 1              THE COURT:  What are we doing about that one?
 2              MR. BATTAGLIA:  Well, the Debtor had a marketing
 3     contract with --
 4              THE COURT:  I know it's just about ten days old.
 5     Do we need to set something for hearing on that one or do
 6     you want to wait?
 7              MR. BATTAGLIA:  And I'm happy to set it for
 8     hearing and get it done.  It's really only two parties, I
 9     think, that have an interest and one of them would sign an
10     agreed order tomorrow.  I just don't know what the other
11     party will do.
12              THE COURT:  I'm going to have my case manager -- I
13     don't know want to -- I'm going to have her reach out to the
14     parties, just get a date that works for everyone and just
15     propose some dates just taking a look at the calendar.  I
16     know July 20th through the 23rd, I'm not going to be here,
17     but aside from those dates -- maybe we can pick a date in
18     July that makes sense and just have something on the docket.
19     But my case manager will take care of that.
20              MR. BATTAGLIA:  I have no expectation that it will
21     take significant time, but I've been wrong before.
22              THE COURT:  No, no.  No, no, I -- let's just plot
23     it out, make sure that we got it there.  Ms. Driver, from
24     the Alex Jones side, anything else we need to take care?  Or
25     anything I should be aware of; any dates you think you need
```

1    or --

2             MS. DRIVER:  Your Honor, I think we do have an

3    application to employ Norm Pattis.  It's going to be fairly

4    similar to what Mr. -- it's just -- the timing tracked a

5    little different in our case versus his case, but we do have

6    that on file.  There's a couple things that I think I'm

7    going to be filing either this week or early week that can

8    just be set on that date as well and I'll probably just seek

9    to have them set on those dates.

10            THE COURT:  So what I am going to do is just ask -

11   - okay.  Got it.  Once the period runs on the 21 days there,

12   can you just reach out to my case manager or a certificate

13   of no objection or something or just a one-page or let my

14   case manager know so I know that it's on the docket.  I just

15   -- I got it.  Mr. Pattis is going to work -- he's really

16   going to work on both cases almost kind of simultaneously

17   but I think we'll just let the period run and then we'll

18   take it up, but just let me know.

19            MS. DRIVER:  And Mr. Jones's amount have been paid

20   to him pre-petition so there -- and it's a flat fee so it's

21   just fairly simple.

22            THE COURT:  Okay.  I just want to make sure that

23   he knows that we're just going to let the period run and

24   take it up from there.

25            MS. DRIVER:  I will let --

1          THE COURT:  But I don't think we need to set it

2     for hearing if that's the case unless somebody objects and

3     then we'll take it up (indiscernible) what's coming.  Okay.

4          MS. DRIVER:  I believe everybody was okay with

5     that, but we've just got a couple of motions -- a motion to

6     approve a book contract for him.  It's a little bit of a

7     belt and suspenders just because he is who he is and our

8     constituents are who are they are.  I'm seeking a little bit

9     of belt and suspenders even on what I consider ordinary

10    course.  So there's a book contract that was pre-petition

11    that we're going to assume.  He's still getting paid under

12    and then a post-petition contract that we need to get

13    approved.

14          Then there is a motion just -- it's an admin

15    expense claim.  I've been talking to Mr. Battaglia about it

16    for the amounts that were not paid under the original

17    employment contract to Mr. Jones.  We're going to go ahead

18    and get that on file.  It doesn't mean we're going to war

19    with him over this.  It just means that we'd just like to

20    get it on file so they know what it is for their plan and we

21    can start working through the resolution of that.

22          THE COURT:  Okay.

23          MS. DRIVER:  And then there may be a motion --

24    somebody's holding some -- asserting some ownership of some

25    funds so there may be a motion, if I can't get that resolved

1    with that party, a motion for willful violation of the

2    automatic stay.

3            THE COURT:  Okay.

4            MS. DRIVER:  But that's what I see coming up on

5    the horizon other than I'm going to be working this month to

6    get our plan on file so hopefully that and then looking

7    towards that mediation ending.  Hopefully we can have some

8    productive conversations --

9            THE COURT:  I think the parties should -- I'm

10   probably going to -- now is not that time to do it, but

11   sometime in early to mid-August, kind of before the summary

12   judgment stuff happens, I may just call a status conference

13   to just kind of see -- because I know we talked end of July.

14   But maybe we can all kind of touch base early August and

15   kind of see what the world looks like and kind of plot out a

16   course from there.  Okay.  Anything else?

17           MS. DRIVER:  I was able to submit a settlement

18   offer I think on Tuesday of this week.  So my hope is that

19   we can have some productive -- it took a little while from

20   our side, but we've been -- I think we've been constantly

21   engaging with the folks we need to engage with and I'm

22   hopeful that we can have some discussions and move that

23   along.

24           THE COURT:  Okay.  Sounds great.

25           MS. DRIVER:  Thank you, Your Honor.

1            THE COURT:  Alrighty.  Anything else we need to

2   talk about today about anything?  Anyone on the line?  Okay.

3   All right, folks.  Thank you very much.  Have a good day.

4            MR. BATTAGLIA:  (indiscernible) Judge.

5            MR. RUFF:  Thank you, Your Honor.

6            MS. DRIVER:  Have a good day.

7        (Proceedings adjourned at 11:42 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          CERTIFICATION

 2

 3     I certify that the foregoing is a correct transcript from

 4     the electronic sound recording of the proceedings in the

 5     above-entitled matter.

 6

 7

 8

 9

10     Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  July 6, 2023
```