

1500 South Dairy Ashford, Suite 325 │ Houston, Texas 77077
Phone (281) 407-5609 │ Facsimile: (832) 827-4882

**Tax Planning and Preparation Engagement**

Thank you for choosing Evident Tax, LLC ("Evident"). This agreement (the "Agreement") and any attachments incorporated herein confirms the terms, conditions, scope, and limitations of the services Evident will provide.

**Article 1**
**Objective, Scope, Rates, and Payment Terms**

1. We will provide the following scope of services to Free Speech Systems, LLC:
    a. Provide information to debtor's counsel for tax issues concerning the entity and the plan of reorganization.
    b. Devise and recommend tax related provisions of a plan that will legally minimize the burden to the entity while complying Federal and State Tax law;
    c. Be prepared to testify, if necessary, to provide the court with sufficient evidence in the form of expert testimony;
    d. Assist in the implementation of the plan and;
    e. Assist in Federal and State Tax law compliance and reporting requirements.
    f. Determine for federal income tax purposes:
        i. If payments to judgment creditors of either actual damages or punitive damages are deductible.
        ii. When under the "all events test" in IRC §461 any deduction would be allowed.
        iii. If IRC §108 excludes income the Debtor may have from the discharge of indebtedness and if so, what is the effect on the Debtor's tax attributes and future income and deductions.
        iv. If the status of being a disregarded entity is in the best interest of the creditors and other interested parties.
        v. If the Debtor can and should elect to be taxed as a corporation.
        vi. If the Debtor can and should invoke the provisions of 11 USC § 505 (b)(2) to enable the Debtor to obtain an accelerated determination by the Internal Revenue Service ("IRS").
        vii. If the Debtor should obtain a private letter ruling ("PLR") from the IRS under Revenue Procedure 2023-1.
        viii. If applicable prepare and file a PLR with the IRS.
        ix. Prepare a memorandum and if necessary, a brief in support of the tax positions taken regarding the plan and any tax filings.
        x. Draft and review provisions of the plan and all related disclosures relevant to any tax consequence.
        xi. Assess the risk of adverse rulings from the IRS or other taxing authorities and determine appropriate reserves and alternate strategies in the event of an adverse tax ruling.
        xii. Weigh the pros and cons of litigation any disputed tax ruling and assist in the drafting of any pleadings in the event of any such litigation.

xiii. Develop an understanding how the taxation of the Debtor has and will affect the tax consequences of related parties.
xiv. Review previously filed tax returns for the Debtor and related parties and determine if any returns should be amended.
xv. Assist in the preparation of Debtor tax returns or if Debtor remains a DRE, then assist in the preparation of schedules and accountant's workpapers relating to the information delivered to the single member of the Debtor .
xvi. Review corporate or LLC governance documents and contractual documents affecting the Debtor to determine their effect on tax matters and procedures relating to tax matters.
xvii. Review statuary, regulatory and case law applicable to the tax matters relevant to the Debtor.

**Schedule of Fees and Expenses**

**Hourly Professional Rates (Per Hour)**

| | |
|---|---|
| Harold "Hap" May, CPA, JD, CFF, LLM | $600.00 |
| Associate Tax Attorney (Contract services provided through Harold "Hap" May, P.C.) | $250.00 |
| Mark Ng, CPA | $350.00 |
| Stephen Marsh, CFE | $250.00 |
| Florentino "Tino" Morales, MAcc | $250.00 |
| Other Senior Associates | $150.00 |
| Tax Associates | $80.00 |
| Administrative Associates | $50.00 |

**Client Expenses**

| | | | |
|---|---|---|---|
| Postage, Shipping, Deliveries, and Couriers | At Cost | Travel, Lodging, and Meals* | At Cost |
| Filing Fees & Misc. Expenses | At Cost | *Travel time, if any, for professionals will be billed at ½ of the professional's hourly rate(s). | |

1.1 Evident's professional fees for the services outlined above ("Services") are based on our regular Hourly Rates. Time is kept in 1/10-hour increments, and the hourly charge is the time that each professional allocates for all tasks performed under this Agreement, including but not limited to, analysis, communications, meetings, research, calculations, conclusions, preparation of reports, time traveled, and tax software data entry.

1.2 The hourly and base rates are subject to change each month following the signing of this engagement.  Rates are subject to change as demand and staffing changes with our firm.  Evident agrees not to change its schedule of fees more than once per month.  Should rates be adjusted you will be notified either by email or mail.  Additionally, any invoice not paid within 14 days of issuance will incur a $20.00 late fee each month until the outstanding balance is paid.

1.3 Payments can be made via cash or check to the following address:

**Evident Tax, LLC
1500 South Dairy Ashford, STE 325
Houston, TX 77077**

1.4  We also accept credit and debit card transactions which can be paid through our website at www.evidentpros.com/pay. Payments in excess of $10,000.00 must be made via check, ACH, or wire transfer.

1.5  The initial retainer fee for the Services is $50,000.00 or Fifty Thousand Dollars and No Cents. Our normal practice in this type of engagement is to receive the initial fee before beginning work, which means the retainer shall be due at the time you sign and return this letter to us. The retainer is not intended to be an estimate of the total charges for the work to be performed. The retainer will be applied to the periodic invoicing for this Agreement. The retainer will also pay for initial research and other fees incurred prior to this engagement being executed.

1.6  We will submit to you invoices for our services on a periodical or monthly basis. we are not entitled to receive any compensation from the Debtor, except upon application as provided by the Bankruptcy Code, Bankruptcy Rules, and Local Rules of Bankruptcy Procedure, and only after the Bankruptcy Court's approval. The Bankruptcy Court has established an interim compensation procedure, under which we are authorized to be paid by the Debtor on a periodic basis during the case, with those payments credited against our final fee award. You authorize us to seek interim compensation pursuant to such a procedure.   If requested, we will provide you with a separate invoice for any other engagements outstanding with Evident or you may choose to group them together into one invoice.

## Article 2
## Disclosures and Other Provisions

2.   Notwithstanding anything contained herein, both Evident and client agree that regardless of where the client is domiciled and regardless of where this Agreement is physically signed, this Agreement shall have been deemed to have been entered into at Evident's office located in Harris County, Texas, and Harris County, Texas shall be the exclusive jurisdiction for resolving disputes related to this Agreement. This Agreement shall be interpreted and governed in accordance with the Laws of Texas.

2.1  We are NOT a CPA firm and will NOT provide services which include but are not limited to audit, review, compilation, and or any other services regulated by the Texas State Board of Public Accountancy. Our services are not intended to audit or verify the data that you submit to us, although we may ask for clarification of certain information. Our work is not intended to benefit or influence any third party, either to obtain credit or for any other purpose.

2.2  It is your responsibility to safeguard your assets and maintain accurate records pertaining to transactions. We will not hold your property in trust for you, or otherwise accept fiduciary duties in the performance of the engagement.

2.3  We will not respond to any request from banks, mortgage brokers or others for verification of any information reported on these tax returns. We do not communicate with third parties or provide them with copies of tax returns unless expressly authorized with your written consent to do so.

2.4  Evident, its employees, and agents will take whatever actions are necessary or appropriate for us to conduct the engagement, but we will keep you informed of our actions and progress throughout this engagement. If for any reason, we are unable to complete the engagement. We will resign from the engagement if we determine that continuing or completing the engagement will involve a breach of our ethical or professional standards.

2.5  All information and materials of any form or description collected by us during our engagement shall constitute our work files and will always, during and after the completion of our engagement, remain in our exclusive possession. Our files will be retained in accordance with our records retention policy, which is available upon your request. Any originals will be scanned and retained in accordance with the other provisions of 2.5. All original documents and records will be returned to the client either by pickup or delivery (at the client's expense).

2.6  Our engagement cannot be relied on to disclose errors, fraud, or other illegal acts that may exist, nor will we be responsible for the impact on our services of incomplete, missing, or withheld information or mistaken fraudulent data provided from any source or sources. Our engagement does not include any procedures designed to detect errors, fraud, or theft. Therefore, our engagement cannot be relied upon to disclose such matters. In addition, we are not responsible for identifying or communicating deficiencies in your internal

2.7 Evident will attempt to resolve any IRS or any other taxing authority on behalf of the Client. However, Evident cannot guarantee results for matters such as refunds, liens, levies, and waivers, reduction, or abatements of penalties, interest, or amounts owed.

2.8 The obligations of Evident are solely obligations of Evident, and no officer, owner, director, employee, agent, contractor, shareholder, or controlling person shall be subject to any personal liability whatsoever to any person nor will any such claim be asserted by, or on behalf of, any other party to this agreement or any person relying on the tax returns.

2.9 You agree (a) that our liability is limited to the fees that we have collected for services rendered, exclusive of reimbursed expenses and (b) to pay reasonable attorney fees incurred by us to collect or litigation for past due invoices if any portion of our unpaid fees are determined to be due.

2.10 You agree to indemnify and hold us harmless with respect to all claims arising from the use of the tax returns for any purpose other than filing with the IRS, state and local tax authorities regardless of the nature of the claim, including the negligence of any party.

2.11 If the engagement is terminated prior to completion of the scope, Evident will bill for services rendered to the date of termination, which will be due upon presentation. Failure to make the payments required by this agreement or failure by you to comply with the terms of this agreement will give us the sole option to terminate the agreement.

<u>**Article 3**</u><br><u>**Acknowledgement and Acceptance**</u>

3. You acknowledge having read this agreement in its entirety, having had full opportunity to consider its terms, having had full and satisfactory explanation of same, and fully understanding and agreeing to be bound by the terms of this agreement. This Agreement is subject to approval by the Bankrtupcy Court presiding over the Debtor's bankruptcy case.

ACCEPTED AND AGREED:

This Agreement correctly sets forth the entire understanding of you the Client with respect to the services to be provided by Evident:

Signature:   */s/ Patrick Magill*

Print Name:   J. Patrick Magill

Title (If Applicable):   Chief Restructuring Officer

Company:   Free Speech Systems, LLC

Date:   7/12/2023