## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS (HOUSTON)

| | |
|---|---|
| In re: | |
| FREE SPEECH SYSTEMS LLC | Case No. 22-60043 |
| Debtor(s). | |
| | |
| Ally Bank, | Chapter 11 |
|       Movant. | |
| | |
| v. | |
| FREE SPEECH SYSTEMS LLC | |
|       Debtor(s), | |
| | |
| MELISSA A HASELDEN | |
|       Chapter 11 Trustee | |
|       Respondent(s). | |

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY

STATE OF _TEXAS_    §
                    §
COUNTY OF _DALLAS_    §

_PAUL TANGEN_, being duly sworn, deposes and says:

1.    I am employed as a _BANKRUPTCY RESOLUTION SPECIALIST_ by AIS Portfolio Services, LP, the bankruptcy servicer and custodian of records for Ally Bank ("Movant") and declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

2.    I am over the age of eighteen (18) years and am fully competent to testify to the matters hereafter stated from my own personal knowledge.

3.    I have authority to make this affidavit. Further, I have reviewed the records of

Movant, and make statements herein based upon personal knowledge obtained therein.

4.      The information hereinafter given is contained in the original books and records maintained in the office of Movant.

5.      The amount of the indebtedness and the nature and extent of default set forth in the Motion for Relief from the Automatic Stay (the "Motion") is information derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters. The records were kept in the course of the regularly conducted activity and were made by the regularly conducted activity as a regular practice.

6.      I certify that the documents attached to the Motion as exhibits are true and accurate copies of the original documents.

7.      On June 17, 2020, Debtor FREE SPEECH SYSTEMS LLC executed and delivered a Lease Agreement ("Contract") to Movant. *See Exhibit A.*

8.      The Contract was entered into for the purchase of the personal property described as follows: 2020 Chevrolet Tahoe Utility 4D LT 4WD 5.3L V8, V.I.N # 1GNSKBKCXLR288493 ("Collateral"). The transaction occurred and title passed accordingly. *See Exhibit B.*

9.      As of July 18, 2023, the total amount due under the Contract is $51,668.54.

10.     A vehicle such as the Collateral involved herein has an estimated retail value of $47,425.00 according to the industry standard report for a vehicle of a similar age and mileage. *See Exhibit C.* Additionally, the Collateral is depreciating in value, and the Contract payment schedule takes such depreciation into account.

11.     As of July 18, 2023, the Debtor has failed to make payments required by the Contract and is in default as follows:

a.   Pre- petition arrears (2.90 months):          $3,812.37

b.   Post- petition arrears (12.95 months):         $17,031.07

Total Arrearage: $20,843.44[1]

FURTHER, THE AFFIANT SAYETH NAUGHT.

Printed Name: ~~PAUL   TANGEN~~

Job Title: ~~BANKRUPTCY   RESOLUTION   SPECIALIST~~

AIS Portfolio Services, LLC, the bankruptcy
servicer and custodian of records for Ally
Bank

SUBSCRIBED AND SWORN TO BEFORE ME by _____ on
this 18th day of July , 2023

Notary Public

My commission expires: 11/3/2025

CATHERINE SALAZAR
ID #131340164
My Commission Expires
November 03, 2025

---

[1] See Exhibit D.



## ComTRAC ˢᵐ Lease Agreement

This ComTRAC ˢᵐ Lease Agreement ("Lease"), dated as of **June 17, 2020**
is between Ally Financial Inc. ("AFI"), Ally Bank ("AB") (each of AFI and AB, a "Lessor") and

**FREE SPEECH SYSTEMS, LLC**                                    ("Lessee");

### W I T N E S S E T H :

### SECTION 1. VEHICLES COVERED AND TERM.

1.1.  **Intent to Lease and Term.** Lessor hereby agrees to lease to Lessee and Lessee agrees to lease from Lessor the motor vehicles described in "Schedule 1" attached hereto and any additional Schedule 1's which, upon the mutual consent of Lessor and Lessee, may be executed from time to time ("Vehicle" or "Vehicles" as the context may require). This Lease shall become effective with respect to each Vehicle on the date the Schedule 1 identifying same is executed and shall continue for a term of months as specified in the applicable Schedule 1. AB will only be deemed to be a Lessor with respect to those Vehicles which are specifically allocated to AB on a Schedule 1 hereto and AFI will only be deemed to be a Lessor with respect to those Vehicles which are specifically allocated to AFI on a Schedule 1 hereto.

1.2.  **Inspection and Acceptance.** Lessee will inspect each Vehicle upon its receipt of same. If the Vehicle meets Lessee's specifications, Lessee will accept delivery and execute and deliver to Lessor a Schedule 1 identifying such Vehicle. Such Schedule shall conclusively establish that the Vehicle identified therein is acceptable to and accepted by Lessee hereunder.

### SECTION 2. RENTS AND PAYMENT DATES.

2.1.  **Rent.** The monthly rental for the use of each Vehicle shall be specified in each Schedule 1 ("Basic Rent"). In addition, Lessee shall pay to Lessor the amount of any reimbursable expense paid by Lessor with respect to any Vehicle ("Additional Amounts"). The initial rent payment with respect to each Vehicle shall be paid on the Effective Date specified in each Schedule 1 and will consist of Basic Rent and Additional Amounts, if any. Each subsequent payment of Basic Rent and Additional Amounts shall be payable in advance on or before the "Rental Payment Date" as defined in the applicable Schedule 1.

All amounts received either as Basic Rent, Additional Amounts or otherwise shall be applied to payment of Lessee's obligations under this Lease in such order as Lessor, in its sole discretion, shall determine.

2.2.  **Late Payments.** Time is of the essence in this Lease. This Lease is entered into in contemplation of the timely receipt of all rental payments hereunder. Any payment which is not received by Lessor on or before the tenth (10th) calendar day following its due date will be assessed a late charge computed at the rate of five percent (5%) of the past due payment for each vehicle then leased hereunder.

EXHIBIT A



**2.3. <u>Additional Sums Payable by Lessee.</u>** In addition to the Rentals payable by Lessee under the provisions of Section 2.1 hereof:

**a. <u>Taxes.</u>** In addition to sales and use taxes contemplated in the Rentals, Lessee agrees to pay and to indemnify Lessor for, and hold the Lessor harmless from and against, all taxes, levies, fees, or other charges of any nature, including but not limited to any penalties, fines or interest (hereinafter collectively referred to as "Impositions"), arising in connection herewith or any Vehicle hereunder, and imposed by any governmental body or agency upon or with respect to any Vehicle or upon the sale, purchase, ownership, delivery, leasing, possession, use, operation, return or other disposition thereof or upon the Rentals or earnings arising therefrom, or upon or with respect to this Lease. However, these Impositions shall exclude (a) any claim for penalties, fines, or interest resulting from an act, omission, or misrepresentation of Lessor or anyone acting under, through, or on behalf of Lessor; and (b) all taxes on or measured, in part or entirely by (i) the net income; (ii) net worth; and (iii) gross income, rentals or receipts of Lessor unless demonstrably levied in lieu of a sales or use tax and solely attributable to gross income, net income, rentals, or receipts related hereto. All amounts payable by Lessee under this Section shall be payable, to the extent not theretofore paid, within 30 days after Lessee's receipt of written demand of Lessor.

If Lessee fails to pay any taxes, levies, fees or other charges required by this Section 2.3(a), or to discharge any levies, liens, and encumbrances created by Lessee's failure to pay same, Lessor shall have the right but not the obligation to pay same or to effect such discharge. If Lessor elects to make such payment or effect such discharge, Lessee shall remit to Lessor all costs (including the costs incurred in effecting the discharge of any levy, lien, or encumbrance) plus the interest thereon at the rate provided for in Section 2.2, upon receipt of a written demand. Lessee shall provide Lessor with an itemization of any costs required to effect such discharge as well as any other documentation needed by Lessor with respect to same.

In connection with any return, statement, report or license ("Return") required to be made or obtained with respect to any Impositions arising under this Section 2.3(a) and unless Lessor notifies Lessee otherwise, Lessee shall make such Return in a manner as will show the ownership of the Vehicle in Lessor. Lessee will prepare and file, or cause to be prepared and filed, each Return on a proper and timely basis and upon Lessor's request, furnish a copy of such Return to Lessor together with copies of billings, remittances, or other evidence satisfactory to Lessor of Lessee's performance of its duties under this Section 2.3(a). In the event that the Lessor elects to make such Return, the Lessee shall furnish promptly such data as the Lessor may require to prepare the Return and file it on a timely basis; however, Lessee's time for remittance of such data shall not extend beyond 15 days from the date of Lessor's request.

Any payment or reimbursement of any Imposition required to be made by the Lessee pursuant to this Section 2.3 (a) shall be in an amount sufficient to restore Lessor to a position, after considering the effect of the receipt of such payment by Lessor on its United States Federal income taxes, state and city taxes or franchise taxes based on net income or the effect on other taxes, or reductions in taxes then or theretofore realized by Lessor or its affiliates (who may file a consolidated, joint or combined tax return) as a result of this Section 2.3(a), that would maintain Lessor's after tax rate of return on the same basis as would have been the case had such payment not been required.

**b. <u>Maintenance, Servicing and Assignment of Warranty.</u>** Lessee agrees to pay, or cause to be paid, all costs, expenses, license and registration fees and charges incurred in connection with the use and operation of each Vehicle during the lease term thereof, including, but not limited to, storage, servicing, and maintenance as provided in Section 9 of this Lease. Lessor hereby authorizes Lessee to receive the benefits of any warranty available to Lessor, either express or implied, in respect of each Vehicle and agrees to execute and deliver such further instruments, and provide such other assistance, as may be reasonably necessary to enable Lessee to obtain warranty service furnished for each Vehicle by a warrantor thereof.

EXHIBIT A



### 2.4. **Federal Income Tax Benefit.**

a.    Lessor confirms to Lessee, and Lessee acknowledges, that Lessor shall be the party entitled to claim the "maximum allowable amount" of accelerated cost recovery deductions (Depreciation) as provided for in IRC Section 168 and other related IRC sections and the regulations thereunder available to Lessor because of Lessor's purchase and ownership of the Vehicles leased hereunder. The term "maximum allowable amount" is not the reduced amount of depreciation which Lessor may be required to claim pursuant to IRC Section 168(g) (and the regulations thereunder) known as the "Alternative Depreciation System for Certain Property." Any act by the Lessee which would cause the Lessor's Depreciation deduction to be determined (and therefore limited) by IRC Section 168(g) shall constitute an act requiring indemnification to the Lessor as provided for under Section 2.4(b) of this Lease. Lessee agrees that it shall not be entitled to, nor will it claim, such Depreciation. Lessee agrees that neither it nor any corporation controlled by, in control of it, or under common control with it, directly or indirectly, will at any time take any action or file any returns or other documents inconsistent with the foregoing. Notwithstanding the foregoing, if Lessor determines in its sole and absolute discretion that Lessor is not entitled to the foregoing federal income tax benefits or that the legal position for properly claiming any of the federal income tax benefits is unclear (including, but not limited to, the lease of a Vehicle identified in any Schedule 1-Certificate of Acceptance with a stated residual amount or value that is less than 20% of the Selling Price of such Vehicle), Lessor will not claim such federal income tax benefits and Lessee acknowledges that Lessee agrees to be bound by Lessor's corresponding adjustment to the pricing or determination of the rent or other amounts due under the Lease with respect to such Vehicle.

b.    If (i) Lessor shall not be entitled for each of its taxable years (or portions thereof) during which this Lease is in effect to full use of the maximum allowable amount of Depreciation, and (ii) such loss or reduction in the amount of Depreciation (Loss) is not solely attributable to an act of Lessor as described in Section 2.4(c) hereof, then Lessee shall pay to Lessor, as additional Rentals, a sum which, will be sufficient to give Lessor the same after tax cash flow for such taxable year (or portion thereof) as is contemplated by this Lease and would have resulted had such Depreciation been allowed to Lessor in the same amounts and at the same times such Depreciation would otherwise have been allowed on the aforesaid basis, including any interest, additions to tax, penalties or other charges which may be assessed by the United States Government or any other governmental body or agency against Lessor in connection with such Loss. Any sum which shall be payable to Lessor due to such Loss, shall be payable to Lessor together with interest thereon from the date of payment by Lessor to the date of reimbursement by Lessee to Lessor, at the rate set forth in Section 14.2, on written demand made any time after payment of the consequential additional income tax, interest, penalties and other charges.

c.    Lessee shall not be required to pay to Lessor the amounts provided for in Section 2.4(b) with respect to the Vehicles if the Loss is solely attributable to the occurrence of any of the following events:

i.    Lessor shall fail to claim the Depreciation in its income tax returns for the appropriate years, provided that the foregoing does not apply to any Depreciation not claimed because of a good faith determination made by Lessor based on the advice of its tax counsel that it is not properly allowable;

ii.    Lessor (or, if Lessor files its Federal income tax returns as a member of an affiliated group, the group) shall not have sufficient income to benefit from the Depreciation;

iii.    Lessor shall voluntarily transfer legal title to the Vehicles or a portion thereof to anyone or shall dispose of or reduce its interest in the Vehicles and such transfer, disposition or reduction in interest (A) shall be the direct cause of such loss, (B) shall occur at any time when no Event of Default has occurred and is continuing and (C) shall not be pursuant to the written consent of Lessee; or

iv.    Lessee shall have paid Lessor the Early Termination Value of the Vehicles or portion thereof pursuant to Section 14 hereof.

EXHIBIT A



d. Lessor agrees that if, in the opinion of Lessor's tax counsel, a bona fide claim to all or a portion of the Depreciation (with respect to part or all of the Vehicles) exists in respect of which Lessee is required to pay additional Rentals and interest to Lessor as above provided, Lessor shall, on request and at the expense of Lessee, take all such legal or other appropriate action deemed reasonable by Lessor's tax counsel in order to sustain and collect such claim. Lessor hereby agrees to notify Lessee of any proposed disallowance by any governmental body or agency and, provided that Lessee has fully indemnified and secured Lessor to Lessor's reasonable satisfaction, agrees that no settlement or compromise of any claim at any stage prior to final judicial determination of the matter shall be made without Lessee's consent, which consent shall not be unreasonably withheld.

In the event that this Lease is terminated prior to the time Lessee is obligated to pay additional Rentals with respect thereto pursuant to this Section 2.4, then instead of paying such additional Rentals, Lessee shall pay to Lessor, within 30 days after the date of a determination that a Loss has occurred and Lessor is not eligible to claim or retain the Depreciation, or any portion thereof, an amount which, in the reasonable opinion of Lessor, will cause Lessor's discounted after tax rate of return with respect to the Vehicles to be equal to Lessor's discounted after tax rate of return that would have been available if Lessor had been entitled to the utilization of all or such portion of the Depreciation which was not claimed or was disallowed or required to be recaptured, and on such date Lessee shall also pay to Lessor the amount of any interest, additions to tax, penalties or other charges payable pursuant to any laws of the United States or any state or local government or taxing authority in the United States, or under the laws of any taxing authority or political or governmental subdivision of a foreign country by Lessor attributable to the disallowance, recapture or loss of all or any portion of such Depreciation.

e. Lessee agrees to keep and make available for inspection and copying by Lessor those records as will enable Lessor to determine the fulfillment of the foregoing indemnity and the extent to which it is entitled to the benefit of the maximum allowable amount as defined in Section 2.4(a) of Depreciation with respect to the Vehicles.

f. Reference in this Lease to specific sections of the IRC shall be deemed to mean the Internal Revenue Code of 1986, as amended, and to include comparable sections or provisions of any successor laws.

2.5. **Survivability.** In the event that, during the continuance of this Lease, Lessee becomes liable for the payment or reimbursement of any Impositions or Loss pursuant to Sections 2.3 and 2.4, such liability shall continue, notwithstanding by expiration of this Lease, until all such amounts are paid or reimbursed by Lessee.

2.6. **Certification of Trade or Business Use.** Lessee hereby warrants and certifies, under penalty of perjury that (1) Lessee intends that more than 50 percent of the use of the Vehicles listed on the Schedule(s) 1, attached hereto and made a part hereof, which are subject to this Lease, are to be in a trade or business of Lessee, and (2) that Lessee has been advised that it will not be treated as the owner of the Vehicle(s) for Federal income tax purposes.

Lessee agrees that if it is later determined that certification given by Lessee does not meet the requirements of Section 7701(h) of the IRC, or later published Federal regulations thereunder, Lessee will supply such certification at that point in time that will comply.

EXHIBIT A



See Attachment I of this Lease which must be separately signed by the Lessee pursuant to IRC Section 7701(h)(2)(C).

**2.7.  Abatement or Set Off.** Lessee shall not be entitled to any abatement or reduction of Rentals including, but not limited to, those due to any present or future claim of Lessee against the selling dealer, lease facilitator, or Lessor hereunder, or otherwise (unless due to the breach hereof by Lessor, or its negligence, fault or willful misconduct) or against the manufacturer of a Vehicle; nor, except as otherwise expressly provided herein, shall this Lease terminate, or the respective obligations of Lessor or Lessee be otherwise affected by, (i) the taking or requisitioning of any Vehicle by condemnation or otherwise, (ii) the lawful prohibition of Lessee's use of any Vehicle or (iii) the interference with such use by any private person or corporation unless such taking, prohibition or interference is solely attributable to the negligence, fault or willful misconduct of Lessor, it being the intention of the parties hereto that the Rentals and other amounts payable by Lessee hereunder shall continue to be payable in all such events unless the obligation to pay the same shall be terminated pursuant to Section 11 hereof, or until the Vehicles are surrendered pursuant to Section 14 hereof, or as otherwise specified herein.

## SECTION 3. OWNERSHIP AND MARKING OF THE EQUIPMENT.

It is mutually agreed that Lessor or its successors or assigns is the owner and titleholder of Vehicles. Lessee acknowledges and agrees that it has not, and by the execution hereof it does not have or obtain, and by payments and performance hereunder it does not and will not have or obtain, any title to the Vehicles nor any property right or interest, legal or equitable therein, except solely as Lessee hereunder for the term hereof and subject to all the terms and conditions contained herein.

Lessee shall remove all signs or lettering on vehicles returned to Lessor pursuant to Section 15 hereof. Lessee will pay all costs incurred to remove same and to effect repairs required as a result of the removal.

## SECTION 4. DISCLAIMER OF WARRANTIES.

Lessee acknowledges and agrees (i) that each Vehicle is of a design, capacity and manufacture satisfactory to Lessee, (ii) that Lessor is neither a manufacturer nor a dealer in such property, and (iii) **THAT LESSEE LEASES THE VEHICLES "AS IS" AND THAT LESSOR HAS NOT MADE, AND DOES NOT HEREBY MAKE, ANY REPRESENTATION OR WARRANTY OR COVENANT, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO ANY VEHICLE'S COMPLIANCE WITH ANY LAW, REGULATION, OR SPECIFICATION; FITNESS FOR ANY PARTICULAR PURPOSE; MERCHANTABILITY; DESIGN; CONDITION; QUALITY; DURABILITY; OR SUITABILITY FOR THE PURPOSES AND USES OF LESSEE. LESSOR, THEREFORE, SHALL NOT BE LIABLE FOR ANY DEFECT EITHER LATENT OR PATENT IN ANY VEHICLE OR FOR ANY DIRECT OR CONSEQUENTIAL DAMAGE THEREFROM OR FOR ANY LOSS OF USE THEREOF OR FOR ANY INTERRUPTION IN LESSEE'S BUSINESS CAUSED BY ITS INABILITY TO USE ANY VEHICLE.**

EXHIBIT A



## SECTION 5. INDEMNIFICATION.

Lessee agrees to assume liability for, and does hereby agree to indemnify, protect, save and keep harmless Lessor and its respective successors, assigns, legal representatives, agents and servants ("Indemnified Persons") from and against any and all liabilities, obligations, losses, damages, penalties, taxes which are covered respectively in Sections 2.3 and 2.4, claims (including, without limitation, claims involving strict or absolute liability), actions, suits, costs, expenses and disbursements (including, without limitation, legal fees and expenses) of any kind and nature whatsoever ("Claims") which may be imposed on, incurred or asserted against, any Indemnified Person, in any way relating to or arising out of this Lease or any document contemplated hereby, or the performance by Lessee or enforcement against Lessee of any of the terms hereof, or in any way relating to or arising out of meeting eligibility requirements for participation in manufacturer sponsored repurchase and/or fleet incentive programs, the manufacture, purchase, acceptance, rejection, ownership, delivery, lease, sublease, possession, use, operation, maintenance, condition, or registration of any Vehicle or any accident in connection therewith (including, without limitation, latent and other defects, whether or not discoverable and any Claim for patent, trademark or copyright infringement); provided, however, that Lessee shall not be required to indemnify any Indemnified Person for any Claim resulting from acts which would constitute the willful misconduct or fault or negligence of such Indemnified Person. Lessee agrees that, subject to the provisions of this Lease, no Indemnified Person shall be liable to Lessee for any Claim caused directly or indirectly by the inadequacy of any Vehicle for any purpose or any deficiency or defect therein or the use or maintenance thereof or any repair, servicing or adjustment thereto or any delay in providing or failure to provide such or any interruption or loss of service or use thereof or any loss of business, all of which shall be the risk and responsibility of Lessee. The rights and indemnities of each Indemnified Person hereunder are expressly made for the benefit of, and shall be enforceable by, each Indemnified Person notwithstanding the fact that such Indemnified Person is no longer a party to this Lease.

## SECTION 6. INSURANCE.

Lessee will at its sole cost and expense, maintain or cause to be maintained insurance coverage as follows:

a.  Bodily injury and property damage liability insurance to cover accidents arising out of the maintenance or use of each Vehicle. The minimum requirements unless otherwise notified by Lessor in writing are:

    i. For vehicles up to 10,000 lbs. GVW:
    $500,000 combined single limit ("CSL")
        or
    $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident

    ii. For vehicles over 10,000 lbs. GVW:
    $1,000,000 CSL
        or
    $1,000,000 Umbrella coverage.

b.  Comprehensive and collision insurance covering the full insurable value of each Vehicle with a deductible not to exceed $1,000.

**Notice for Rhode Island Lessees:** Liability insurance or self-insurance provided by Lessor providing coverage or liability protection for third party liability claims arising out of the operation of any Vehicle will not be primary. Liability insurance that Lessee obtains will be primary.

EXHIBIT A



All policies of insurance shall be written by insurers acceptable to Lessor, reflect Lessor and any assignee referred to in Section 13 as additional insureds and loss payees and provide for a 30-day written notice to Lessor of any cancellation or reduction of coverage's, unless otherwise approved by Lessor. All such insurance shall cover both the interest of Lessee, Lessor and any assignee referred to in Section 13 of which Lessee has notice and shall provide that losses, if any, shall be payable to such insureds as their respective interests may appear. Lessee shall furnish Lessor with satisfactory evidence of the maintenance of such insurance throughout the term hereof. Lessee shall indemnify and hold Lessor and its successors and assigns harmless from any loss or damage occasioned by Lessee's failure to maintain such insurance.

## SECTION 7. USE OF THE EQUIPMENT.

Absent a default hereunder, Lessee shall be entitled to the possession and use of the Vehicles in accordance with the terms hereof. Lessee agrees that the Vehicles will be used solely by Lessee in the conduct of its business in the United States and Canada and by sub lessees approved in writing by Lessor and that:

a.   Lessee shall permit only licensed operators to operate the Vehicle and shall cause said operators to operate the Vehicle(s) with reasonable care and diligence.

b.   No Vehicle will be (i) used in violation of any Federal, state or municipal statute, law or ordinance, or contrary to the provisions of any applicable insurance policy; (ii) modified, altered or changed in any manner whatsoever; or (iii) used or operated in Mexico.

Lessee shall indemnify and hold Lessor and its successors and assigns harmless from any and all fines, forfeitures, seizures, claims, damages, or penalties resulting from the violation or breach of any of the above.

c.   No Vehicle shall be physically located outside the limits of the United States more than thirty (30) days of any calendar year it is leased hereunder. Lessee shall keep such records as necessary to verify the proportion of time any Vehicle is located outside of the United States and such records shall be made available to Lessor for copying and/or inspection, upon Lessor's request, in order for Lessor to determine compliance with this Section 7 (c) and to enable Lessor to determine the fulfillment of any indemnity under Sections 2.3 and 2.4 hereof.

d.   Lessee shall be liable to Lessor for all losses, damages, expenses and all costs, including reasonable attorney's fees, which Lessor may incur as a result of or arising out of the conversion, sale or concealment of any Vehicle by Lessee.

e.   Lessee shall furnish Lessor with such information as may be reasonably requested by Lessor to evaluate the creditworthiness of any proposed sub lessee. The sub lease shall be acceptable in form to Lessor.

f.    Lessee will not permit its rights or interests hereunder to be subject to any lien, charge or encumbrance other than the rights of Lessee's customers.

g.   Lessee will keep each Vehicle free and clear of any and all liens, charges and encumbrances which may be levied against or imposed upon it as a result of the failure of Lessee for any reason to perform or observe any of the covenants and agreements required to be performed or observed by Lessee hereunder.

EXHIBIT A



## SECTION 8. FINANCING : ASSIGNMENT.

Lessee covenants that it will not make, permit, or suffer to exist any mortgages, liens, encumbrances, or indebtedness on the Units, other than those given by Lessor, and Lessee hereby subordinates its rights hereunder to the lien of any financing source arising from said indebtedness.

**EXCEPT AS HEREIN SPECIFICALLY PERMITTED, LESSEE WILL NEITHER (I) SUBLEASE, RENT, ASSIGN, GRANT A SECURITY INTEREST IN OR OTHERWISE TRANSFER LESSEE'S RIGHT TO USE ANY VEHICLE; NOR (II) ASSIGN, GIVE A SECURITY INTEREST IN, OR OTHERWISE TRANSFER, IN ANY WAY, EITHER ANY VEHICLE, LESSOR'S INTEREST UNDER THIS LEASE, OR LESSOR'S RESIDUAL INTEREST. LESSOR, UPON REQUEST, MAY GIVE PRIOR CONSENT IN WRITING TO A TRANSFER. ANY TRANSFER WITHOUT SUCH CONSENT SHALL BE INEFFECTIVE.**

## SECTION 9. MAINTENANCE AND COST OF OPERATION.

Lessee agrees, during the term of this Lease, to maintain and keep (or cause its sub lessees to maintain and keep) each Vehicle in good operating order, repair and condition and, in this connection, shall pay for all expenses incurred in the operation of any Vehicle including gasoline, oil, repairs, maintenance, tires, storage, parking, tow, licensing and title fees and any other expenses incidental to the use and operation of the Vehicle. Any expenses incurred by Lessor in discharging Lessee's obligations under this Section 9 shall be payable by Lessee.

## SECTION 10. INSPECTION.

Lessor shall have the right, but not the duty, to inspect any Vehicles. Upon the request of Lessor, Lessee or any sub lessee shall confirm to Lessor the location, mileage and condition of each Vehicle and shall, at any reasonable time, make each Vehicle and all records pertaining thereto available to Lessor for inspection.

## SECTION 11. CASUALTY OCCURRENCES AND SETTLEMENT THEREFOR.

In the event that any Vehicle has become lost, stolen, destroyed, or in the opinion of Lessee, has become irreparably damaged ("Casualty Occurrence"), Lessee shall promptly and fully inform the Lessor thereof within a reasonable time on its discovery thereof and shall pay Lessor, on the due date of the next installment of Rental following the Casualty Occurrence, an amount equal to the applicable Casualty Value of such Vehicle. The Casualty Value for each Vehicle shall be equal to the following: (1) the vehicle's residual value set forth in the applicable Schedule 1; plus (2) the monthly Total Monthly Payment for the Vehicle set forth in the applicable Schedule 1 times the number of Total Monthly Payments for the Vehicle not yet due; plus (3) any unpaid, past due Total Monthly Payments for the Vehicle; plus (4) any late charges, fees, charges or other amounts due under this Lease; minus (5) the unearned component of the Total Monthly Payments for the Vehicle not yet due (the "Unearned Charges"); and minus (6) any proceeds received by Lessor from any sale of the Vehicle, net of any expenses expended or incurred in the recovery, storage, rental, transportation or sale of the Vehicle. The Unearned Charges shall be calculated by Lessor in its sole discretion, and Lessee agrees Lessor's determination of the amount of such Unearned Charges shall be final and binding on the Lessee.

Lessor shall provide all necessary documentation to transfer ownership to Lessee, including bills of sale and certificates of title. If Lessee has made rental payments for periods after the date of a Casualty Occurrence, Lessor shall credit such payments against Lessee's responsibility hereunder. Upon payment of the Casualty Value for a Vehicle, the Lease shall terminate with respect to such Vehicle and no further rents shall be payable therefor. All remaining right, title and interest in and to such Vehicle shall vest in the Lessee.

EXHIBIT A



## SECTION 12. LESSEE'S ACCOUNT.

The book value of each Vehicle shall be determined as follows: the Capitalized Cost as set forth in the Schedule 1 in which it is identified less the total reserve for depreciation. The balance so obtained shall be the book value of such Vehicle. If the net sale price of the Vehicle exceeds such book value, Lessor shall issue a rental adjustment to Lessee for the difference. If the net sale price of the Vehicle is less than such book value, Lessor shall bill and Lessee shall pay to Lessor the difference, as a rent adjustment to the depreciation account.

It is anticipated that Lessee will sell Vehicles on behalf of Lessor promptly upon expiration of this Lease with respect thereto. If Lessee does not so sell a Vehicle, Lessor will sell it at wholesale as soon as possible after the expiration or cancellation of this Lease with respect thereto and determine the rental adjustment in accordance with the provisions of this Section. Such rental adjustment shall be paid by the responsible party within 30 days after the date Lessor sells such Vehicles. If Lessee does not sell the Vehicles on behalf of Lessor, recognizing that the Lessor shall incur various transportation, storage and other expenses associated with disposition of the Vehicles, Lessee agrees that the net sale price of the Vehicles shall be reduced by $250 for each Vehicle ($500 for Medium duty trucks) disposed of by Lessor.

## SECTION 13. ASSIGNMENT.

(a)  This Lease shall be binding upon and inure to the benefit of any security or other assignee of Lessor and the successors and assigns of any such assignee, and Lessee and its successors and, to the extent permitted hereby, its assigns.

(b)  Lessee agrees that it will not, without the prior written consent of Lessor assign this Lease or any of its rights hereunder to any other party. Any purported assignment in violation of this Section shall be void and of no force and effect.

(c)  Lessor may assign this Lease to any person at any time, without the consent of or notice to Lessee. AB and AFI may assign their rights and obligations hereunder with respect to the lease of a specific Vehicle (or Vehicles) to the other at any time without the consent of or notice to Lessee.

## SECTION 14. EVENTS OF DEFAULT AND REMEDIES THEREFOR

14.1.  **Events of Default.**  Any one or more of the following shall constitute an event of default ("Event of Default") as that term is used herein:

a.    Lessee shall fail to make payment to Lessor of any amount due hereunder and such default shall continue for more than 10 business days after the due date thereof;

b.    Lessee shall make or permit any unauthorized assignment or transfer hereof and shall fail or refuse to cause same to be canceled by agreement of all parties having any interest therein within 15 days after notice from Lessor to Lessee demanding such cancellation;

c.    Lessee fails to observe or perform any other material covenant, condition, agreement or provision hereof, including, but not limited to, Vehicle marking (Section 3), insurance (Section 6), usage (Section 7), and maintenance (Section 9), and such default shall continue for more than 30 days after written notice thereof from Lessor to Lessee;

d.    If any representation or warranty made by Lessee herein, or in any statement or certificate furnished hereunder including but not limited to applications for eligibility under any manufacturer sponsored repurchase program or fleet incentive program proves untrue in any material respect as of the date of the issuance thereof and shall not be made good within 30 days after notice thereof from Lessor to Lessee;

# EXHIBIT A



e.   Lessee becomes insolvent or bankrupt or admits in writing its inability to pay its debts as they may mature, or makes an assignment for the benefit of creditors or applies for or consents to the appointment of a trustee or receiver for Lessee or for a major part of its property;

f.   A trustee or receiver is appointed for Lessee or for a major part of its property and is not discharged within 30 days after such appointment; or

g.   Bankruptcy, reorganization, insolvency, liquidation or any other proceeding for relief under any bankruptcy or similar law for the relief of debtors, is instituted by or against Lessee, and allowed, consented to or not dismissed within 30 days after such institution.

In the event that Lessee shall have knowledge of an Event of Default under this Lease, Lessee shall give telephonic notice thereof (confirmed in writing) to Lessor within 1 business day of its acquisition of such knowledge.

14.2.   **Remedies.** When any Event of Default has occurred and is continuing, Lessor at its option may:

a.   Give notice to sub lessees to make their rental payments directly to Lessor, and thereafter collect such rentals and give releases therefor and pay over to Lessee any proceeds remaining after deducting all amounts due Lessor hereunder. Lessee hereby appoints Lessor its attorney in fact to collect such rental payments and otherwise enforce the sub lease agreements after notice hereunder to the sub lessee;

b.   Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by Lessee of the applicable covenants and terms of this Lease or to recover damages for the breach hereof, including net after tax losses of Federal and state income tax benefits to which Lessor would otherwise be entitled under this Lease and interest on any and all amounts due hereunder; or

c.   Terminate this Lease and/or any right of possession under this Lease, whereupon all rights and interest of Lessee to the Vehicle(s) shall cease and terminate (but Lessee shall remain liable as hereinafter provided) and thereupon, Lessor may by its agents peaceably enter upon any premises where any Vehicle may be located and take possession thereof and thereafter hold, possess and enjoy the same free from any right to Lessee, or its successor or assigns, to use such Vehicle for any purpose whatever; but Lessor shall, nevertheless, have a right to recover from Lessee any and all amounts then due under this Lease and also to recover forthwith from Lessee (i) as damages for the loss of bargain and not as a penalty and in lieu of any further claim for rent accruing from and after the date of such termination, an amount equal to the following for each Vehicle: (1) the Vehicle's residual value set forth in Schedule 1;  plus (2) the monthly Total Monthly Payment for the Vehicle set forth in Schedule 1 times the number of Total Monthly Payments for the Vehicle not yet due; plus (3) any unpaid, past due Total Monthly Payments for the Vehicle; plus (4) any late charges, fees, charges or other amounts due under this Lease allocable to the Vehicle; plus (5) the applicable $250.00 or $500.00 disposal fee required under Section 15; minus (6) the unearned component of the Total Monthly Payments of the Vehicle not yet due (the "Unearned Charges"); and minus (7) any proceeds received by Lessor from any sale of the Vehicle, net of any expenses expended or incurred in the seizure, storage, transportation, rental, reconditioning or sale of the Vehicle.  The Unearned Charges shall be calculated by Lessor in its sole discretion, and Lessee agrees Lessor's determination of the amount of such Unearned Charges shall be final and binding on the Lessee; (ii) any damages and expenses, including reasonable attorney's fees, in addition thereto which Lessor shall have sustained by reason of the breach of any covenant or covenants of this Lease, other than for the payment of rent, together with reasonable sums for attorney's fees and such expenses as shall be expended or incurred in the seizure, storage, rental or sale of any Vehicle or in the enforcement of any right or privilege under this Lease or any schedules, guaranties, supplements, documents, agreements, instruments, filings, certificates, opinions or assurances evidencing or relating to this Lease or in any consultation or action is such connection; and (iii) interest at 5% per vehicle per month (as defined in Section 2.2) as of the date of the Event of Default, computed from the date payments were originally due Lessor or from the date of any expenditure recoverable pursuant to this Section 14, to and including the date payments are made by Lessee.

EXHIBIT A



Each and every power and remedy hereby specifically given to Lessor shall be in addition to every other power and remedy existing at law, in equity or in bankruptcy and each and every power and remedy may be exercised from time to time and simultaneously and as often and in such order as may be deemed expedient by Lessor; provided, however, that the measure of damages recoverable against Lessee shall in any case be calculated in accordance with the above. All such powers and remedies shall be cumulative, and the exercise of one shall not be deemed a waiver of the right to exercise any other. No delay or omission of Lessor in the exercise of any such power or remedy and no renewal or extension of any payment due hereunder shall impair any such power or remedy or be construed to be a waiver of any default or any acquiescence therein. Any extension of time for payment hereunder or other indulgence duly granted to Lessee shall not otherwise alter or affect Lessor's rights or Lessee's obligations hereunder. Lessor's acceptance of any payment after it shall have become due hereunder shall not be deemed to alter or affect Lessee's obligations or Lessor's rights hereunder with respect to any subsequent payment or default therein.

## SECTION 15. RETURN OF EQUIPMENT.

If Lessee does not sell a Vehicle on behalf of Lessor, Lessee shall promptly, and in no event later than 15 days after the expiration of the lease term related thereto (including any extension hereof), at its own expense, return such Vehicle to a location designated by Lessor in good condition without any missing part, damage, or excessive wear and use. Excess wear is wear that is beyond normal wear and tear. Excess wear includes, but is not limited to: (a) glass that is damaged or that Lessee tinted; (b) damaged or corroded body or trim; (c) damaged finish; (d) a torn, damaged, or stained interior or trunk liner; (e) missing equipment or parts that were in or on the Vehicle when delivered and not replaced with equipment of equal quality and design; (f) missing or unsafe wheels or tires and those that are not of the same size and type the manufacturer recommends, including spare (recapped tires and snow tires are unacceptable); (g) any tire with less than 1/8 inch of tread left at the shallowest point; (h) damaged or worn brakes that do not meet government safety standards; (i) damaged frame, cross member or suspension; (j) damaged or inadequately repaired, engine and/or powertrain components; (k) oil leaks or low oil pressure; (l) improperly functioning instruments or electrical system, including battery and lights; (m) any mechanical damage or other condition that makes the vehicle run in a noisy, rough, improper, unsafe, or unlawful way or that would cause the vehicle to fail a government safety inspection; (n) improperly functioning attached specialized equipment, and (o) any other damage, whether or not insurance covers it. Such Vehicle upon return pursuant hereto, shall be subject to a $250 termination fee ($500 for Medium duty trucks) and shall be free and clear of all mortgages, liens, security interests, charges, encumbrances and claims except those arising through or under this Lease. If requested by Lessor, Lessee agrees, at its sole cost and expense, to store Vehicles on property owned or leased by it for a period of 45 days from the applicable Lease expiration date.

## SECTION 16. GOVERNING LAW.

This Lease shall be governed and interpreted in accordance with the laws of the State of Michigan.

## SECTION 17. NOTICES.

All notices (excluding billings and communications in the ordinary course of business) required under this Lease shall be in writing, personally delivered, delivered by overnight courier service, sent by facsimile transmission (with confirmation of receipt), or sent by certified mail, return receipt requested, addressed to the other party at its respective address identified herein or at such other address as such party shall from time to time designate in writing to the other party; and shall be effective from the date of receipt.

EXHIBIT A



## SECTION 18. AMENDMENTS AND MISCELLANEOUS.

a.  The terms hereof shall not be waived, altered, modified, amended, supplemented or terminated in any manner whatsoever except by written instrument signed by Lessor. No oral changes are binding.

b.  All agreements, representations and warranties contained herein, and in any certificate or other instrument delivered pursuant hereto shall survive the execution and delivery of this Lease and the expiration or other termination hereof.

c.  Any provision hereof which may be determined by competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, only be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

d.  This Lease shall constitute an agreement of lease and nothing herein shall be construed as conveying to Lessee any right, title or interest in or to any Vehicle except as lessee only.

e.  This Lease may be signed in counterparts, each of which is deemed an original and all of which taken together constitute one and the same agreement.

f.  Lessor has the right, in Lessor's sole discretion, to use an electronic signature (including the right to insert the name of the person executing this Lease on behalf of Lessor in Lessor's signature block using an electronic signature) ("Electronic Signature") to sign this Lease and all schedules now or hereafter attached hereto (including all Schedule 1's) and in this event, this Lease will not include an original ink signature from Lessor.  This Lease, if executed by Lessor using an Electronic Signature, will be binding on Lessor as if this Lease had been originally executed by Lessor with an ink signature.  Lessee does not have the right to use an Electronic Signature and this Lease and all schedules now or hereafter attached hereto must be originally executed by Lessee using an ink signature.

## SECTION 19. ENTIRE AGREEMENT.

This document constitutes the entire agreement between the parties concerning the lease of Vehicles. There are no other understandings except those contained herein. No course of performance may be used to determine the meaning of the agreement between the parties or evidence a change to any term hereof.

**WARNING FOR NEW YORK LESSEES: Important consumer protections may not apply if this agreement indicates that you are leasing the vehicle primarily for agricultural, business or commercial use.**

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be executed by their respective officers thereunto duly authorized and their corporate seals to be hereto affixed.

Ally Financial Inc.

(Lessor)

BY:

TITLE:

Authorized Representative

Ally Bank

(Lessor)

BY:

TITLE:

Authorized Representative

FREE SPEECH SYSTEMS, LLC

(Lessee)

BY:

TITLE:

EXHIBIT A



## SCHEDULE 1 - CERTIFICATE OF ACCEPTANCE

Under that *ComTRAC Lease Agreement* (Lease) between Ally Financial Inc. ("AFI"), Ally Bank ("AB") (each of AFI and AB, a Lessor) and the undersigned Lessee, dated as of _____ June 17, 2020 _____ . Lessee hereby certifies that the vehicle(s) listed below has (have) been to Lessee, tested and inspected by Lessee, found to be in good order and accepted as Vehicles under the Lease, on the date indicated below.

| Vehicle Information | Vehicle #1 | Vehicle #2 | Vehicle #3 | Vehicle #4 | Vehicle #5 | Totals |
|---|---|---|---|---|---|---|
| Application Number | | | | | | |
| Lessor (AFI or AB) * | AB | AB | AB | AB | AB | |
| Year | 2020 | | | | | |
| Make | CHEVROLET | | | | | |
| Model | TAHOE | | | | | |
| Vehicle ID Number | 1GNSKBKCXLR288493 | | | | | |
| Term (months) | 48 | | | | | |
| Dealer Installed Option(s) | $0.00 | | | | | |
| Total Selling Price | $63,450.00 | | | | | $63,450.00 |
| Administrative Fee | $250.00 | | | | | $250.00 |
| Negative Equity | $0.00 | | | | | $0.00 |
| Mech/Service Agreement/Tax/Fees | $4,360.63 | | | | | $4,360.63 |
| To Dealer For GAP | $0.00 | | | | | $0.00 |
| Total Cap Cost Reduction(s) | $0.00 | | | | | $0.00 |
| Net Capitalized Cost | $68,060.63 | | | | | $68,060.63 |
| Residual: % | 30% | | | | | |
| Residual: $ | $19,035.00 | | | | | $19,035.00 |
| Basic Rent | $1,314.61 | | | | | $1,314.61 |
| *Sales/Use Tax (Est.) | $0.00 | | | | | $0.00 |
| *Personal Property Tax (Est.) | $0.00 | | | | | $0.00 |
| Total Monthly Payment | $1,314.61 | | | | | $1,314.61 |
| Title/License/Reg. Fees | $0.00 | | | | | $0.00 |
| Tax on Cap Cost Red. | $0.00 | | | | | $0.00 |
| | | | | | | |
| Tire Tax Fee | $0.00 | | | | | $0.00 |
| Initial Amounts Due | $1,314.61 | | | | | $1,314.61 |

**Vehicle Garaging Information:**

Street Address: <u>3019 ALVIN DEVANE BLVD</u>

City, State, ZIP: <u>AUSTIN, TX  78741</u>

*Tax amounts are estimates.

My Lease states that I am responsible for all taxes associated with the above Vehicle(s) (except the Lessor's net income taxes). If Personal Property Taxes are applicable to any of the Vehicles, I have indicated below the method for the billing and payment of Personal Property taxes that I want Lessor to apply in connection with my Lease.

☐    Monthly Payment - Lessor should include an estimated amount for the Personal Property Taxes in my monthly payments. At lease termination, Lessor will reconcile the actual bills against the amount I paid toward the taxes. Lessor will then add that sum to any amounts owed to me at lease termination if a surplus exists or bill me if any additional funds are owed. Any funds still owed for property taxes (and any associated use/excise tax) are due and payable when I receive the Lessor billing.

☒    Annual Payment - Lessor will bill me annually after Lessor receives a tax bill from the taxing jurisdiction(s). Property Taxes (and any associated use/excise tax) are due and payable upon my receipt of a bill from Lessor.

By signing below, Lessee acknowledges that they will remain liable for the final property tax bill, even if the lease ends before Lessor receives the final tax bill.

EXHIBIT A



| Initial Amounts Due (Total of all lease agreements) | | How Initial Amounts Due will be Paid | |
|---|---|---|---|
| Capitalized Cost Reductions | $ - | | |
| Cash | $ - | $ | 1,314.61 |
| Trade | $ - | $ | - |
| Rebate | $ - | $ | - |
| Refundable Security Deposit | $ - | | |
| First Monthly Lease Payment(s) | $1,314.61 | | |
| License/Registration Fee(s) | $ - | | |
| Sales Tax | $ - | | |
| Tire Tax Fee | $ - | | |
| Personal Property Tax | $ - | | |
| Other (Tax on Cap Reduction(s)) | $ - | | |
| | | | |
| Totals | $ 1,314.61 | $ | 1,314.61 |

**ALLY FINANCIAL INC.:**

Accepted by: _____

Title: _____

Authorized Representative

Address:  2911 Lake Vista Drive, Lewisville, TX  75067

**ALLY BANK:**

Accepted by: _____

Title: _____

Authorized Representative

Address:  2911 Lake Vista Drive, Lewisville, TX  75067

**LESSEE:**

FREE SPEECH SYSTEMS, LLC

By: ✗ _alex_ _____

Title: _____

**Date of Acceptance:**
June 17, 2020

The Rental Payment Date will be on day ____17____ of each month for the term of each lease agreemen

EXHIBIT A

Execution Copy

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, Ally Financial Inc. formerly known as GMAC Inc., GMAC LLC, and General Motors Acceptance Corporation d/b/a/ GMAC (the "Company") does hereby make, constitute and appoint Ally Bank a/k/a Ally Bank Corp. and Ally Capital Corp. and its wholly owned subsidiary Ally Servicing LLC (collectively the "Servicer") as its true and lawful attorney-in-fact, with full power of substitution, with respect to (i) all retail installment sale contracts, lease agreements, and loans serviced and administered by said attorney-in-fact for the benefit of Company, (ii) the collateral securing such retail installment sale contracts and loans and the vehicles related to such lease agreements, (iii) all security documents related to such contracts, loans and leases, and (iv) all payments and proceeds with respect to the foregoing (collectively, the "Property"), (a) to sign, acknowledge, file, appear as lien holder on, in the name, place and stead of Company, all certificates, documents and instruments relating to the Property, including, but not limited to, any instrument of assignment, certificate of title, notice of lien, assignment of lien, application for a certificate of title or duplicate of a certificate of title, application to register or transfer title, document to effect the notation of a lien upon a certificate of title or the assignment of such a lien, notice of any such assignment, application to register or transfer the rights as secured party under any policy of insurance, insurance claim, demand or request for premium refund, bankruptcy proof of claim, claim or demand against any dealer or against any person who may have an obligation to Company pursuant to or with respect to the Property, affidavit of repossession, bill of sale, notice of sale, lien release and odometer statement; (b) to authorize and consummate the sale and disposition of any part of the Property; (c) to collect and receive proceeds relating to or with respect to the Property; (d) to commence or participate, in the Servicer's own name or in the name of Company, a legal proceeding related to the Property under the Agreement, and in connection with any such proceeding to execute and deliver in the Servicer's or Company's name any notices, demands, claims, complaints, responses, affidavits or other documents or instruments; and (e) further as said attorney-in-fact may deem fit and proper to perfect the right, title and interest of Company in any part of the Property.

The undersigned further hereby gives and grants unto said attorney-in-fact full power and authority to do and perform every act necessary and proper to be done in the exercise of any of the foregoing powers as fully as the undersigned might or could do if personally present.

The undersigned further ratifies the actions taken by said attorney-in-fact in connection with the servicing and administration of retail installment sale contracts, loans and lease agreements by said attorney-in-fact prior to the execution date below for the benefit of Company.

This Power of Attorney shall continue in effect until superseded by a newer power of attorney between Company and Servicer or until revoked in writing by the undersigned or another authorized representative of Company. Anyone to whom this Power of Attorney is presented may rely upon it without further inquiry of the undersigned. A photocopy of this Power of Attorney shall have the same effect as an original, manually signed and acknowledged counterpart of this Power of Attorney.

IN WITNESS WHEREOF, the undersigned has executed this instrument on this 28th day of January, 2020.

Ally Financial Inc.

By: _____
Name:   Jeffrey A. Belisle
Title:    Corporate Secretary

EXHIBIT A

Execution Copy

ACKNOWLEDGMENT

STATE OF MICHIGAN     )
                            ) ss.
COUNTY OF WAYNE     )

     On this 28th day of January, 2020, before me personally appeared Jeffrey A. Belisle, who acknowledged to me to be an officer and authorized representative of the above legal entity, and that he, as such officer and authorized representative, being fully authorized to do so, executed the foregoing instrument for the purposes therein contained as the free act and deed of said legal entity, and as his free act and deed as an officer and authorized representative of said legal entity.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Donna M. DiCicco_

Notary Public
My Commission expires: _____

DONNA M. DICICCO
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES May 25, 2025
ACTING IN COUNTY OF _WAYNE_

**EXHIBIT A**

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.

**ALLY FINANCIAL**
**PO BOX 8138**
**COCKEYSVILLE, MD 21031**

 DETACH HERE

## TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES

**TxDMV**

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| **1GNSKBKCXLR288493** | **2020** | **CHEV** | **LL** |

TITLE/DOCUMENT NUMBER       DATE TITLE ISSUED

**227406440023250053 07/21/2020**

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| **TAH** | | **5800** | |

PREVIOUS OWNER                    ODOMETER READING

**AUTONATION CHEVROLET WES AUSTIN TX**      **111**

OWNER                             REMARK(S)

**VAULT (LESSOR)**
**PO BOX 8102**                 **ACTUAL MILEAGE**
**COCKEYSVILLE, MD 21030**

X ................................................................
   SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN                    1ST LIENHOLDER

**06/24/2020 ALLY FINANCIAL**                 1ST LIEN RELEASED _____
            **PO BOX 8102**                                        DATE
            **COCKEYSVILLE, MD 21030**
                                             BY _____
                                                AUTHORIZED AGENT

DATE OF LIEN                    2ND LIENHOLDER                2ND LIEN RELEASED _____
                                                                                 DATE

                                             BY _____
                                                AUTHORIZED AGENT

DATE OF LIEN                    3RD LIENHOLDER                3RD LIEN RELEASED _____
                                                                                 DATE

                                             BY _____
                                                AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

**R I G H T S   O F   S U R V I V O R S H I P   A G R E E M E N T**
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE                    DATE

SIGNATURE                    DATE

SIGNATURE                    DATE

DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

**EXHIBIT B**

# N.A.D.A. Official Used Car Guide
# Vehicle Valuation

Print Date: July 18, 2023

---

Vehicle Description:  2020 Chevrolet Tahoe Utility 4D LT 4WD 5.3L V8

VIN:                         1GNSKBKCXLR288493

**Base Values**

---

Retail: $ 47425.00          Wholesale/Trade-in: $ 43625.00

**Optional Equipment/Adjustments**

---

Estimated Miles: 52500          $ 0.00

**Total Adjusted N.A.D.A. Used Car Guide Values**

---

Retail: $ 47425.00          Retail/Wholesale Average: $ 45525.00

Reference 07/2023 Southwestern

EXHIBIT C

Payment History

| Date | Description | Payment due | Payment made | Balance |
|---|---|---|---|---|
| 6/17/2020 | Lease repayment | 1314.61 | 0.00 | 1314.61 |
| 6/17/2020 | Receipt - paid via dealer | 0.00 | 1314.61 | .00 |
| 7/17/2020 | Lease repayment | 1314.61 | 0.00 | 1314.61 |
| 7/24/2020 | Receipt - AAOS one time pay | 0.00 | 1314.61 | .00 |
| 8/16/2020 | Receipt - payment processing center | 0.00 | 1314.61 | -1314.61 |
| 8/17/2020 | Lease repayment | 1314.61 | 0.00 | .00 |
| 9/17/2020 | Lease repayment | 1314.61 | 0.00 | 1314.61 |
| 9/28/2020 | Late Charge_Accrued | 65.73 | 0.00 | 1380.34 |
| 9/28/2020 | Late Charge_Accrued | 0.00 | 65.73 | 1314.61 |
| 10/4/2020 | Receipt - payment processing center | 0.00 | 1314.61 | .00 |
| 10/17/2020 | Lease repayment | 1314.61 | 0.00 | 1314.61 |
| 10/25/2020 | Receipt - payment processing center | 0.00 | 1380.34 | -65.73 |
| 10/28/2020 | Late Charge_Accrued | 65.73 | 0.00 | .00 |
| 10/28/2020 | Late Charge_Accrued | 0.00 | 65.73 | -65.73 |
| 11/15/2020 | Receipt - payment processing center | 0.00 | 1314.61 | -1380.34 |
| 11/17/2020 | Lease repayment | 1314.61 | 0.00 | -65.73 |
| 12/17/2020 | Lease repayment | 1314.61 | 0.00 | 1248.88 |
| 12/23/2020 | Receipt - payment processing center | 0.00 | 1314.61 | -65.73 |
| 12/28/2020 | Late Charge_Accrued | 65.73 | 0.00 | .00 |
| 12/28/2020 | Late Charge_Accrued | 0.00 | 65.73 | -65.73 |
| 1/13/2021 | Receipt - payment processing center | 0.00 | 1314.61 | -1380.34 |
| 1/17/2021 | Lease repayment | 1314.61 | 0.00 | -65.73 |
| 2/9/2021 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -1380.34 |
| 2/17/2021 | Lease repayment | 1314.61 | 0.00 | -65.73 |
| 3/12/2021 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -1380.34 |
| 3/17/2021 | Lease repayment | 1314.61 | 0.00 | -65.73 |
| 4/17/2021 | Lease repayment | 1314.61 | 0.00 | 1248.88 |
| 4/28/2021 | Late Charge_Accrued | 65.73 | 0.00 | 1314.61 |
| 4/28/2021 | Late Charge_Accrued | 0.00 | 65.73 | 1248.88 |
| 5/6/2021 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -65.73 |
| 5/17/2021 | Lease repayment | 1314.61 | 0.00 | 1248.88 |
| 5/19/2021 | Receipt - AAOS one time pay | 0.00 | 1380.34 | -131.46 |
| 6/17/2021 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 6/18/2021 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -131.46 |
| 7/17/2021 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 7/23/2021 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -131.46 |
| 8/17/2021 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 8/17/2021 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -131.46 |
| 9/17/2021 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 9/17/2021 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -131.46 |
| 10/17/2021 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 10/17/2021 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -131.46 |
| 11/17/2021 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 11/17/2021 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -131.46 |
| 12/13/2021 | PPT (incoming) | 1102.60 | 0.00 | 971.14 |
| 12/17/2021 | Lease repayment | 1314.61 | 0.00 | 2285.75 |
| 12/17/2021 | Receipt - AAOS one time pay | 0.00 | 2417.21 | -131.46 |
| 1/17/2022 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 1/25/2022 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -131.46 |

EXHIBIT D

| Date | Description | Debit | Credit | Balance |
|---|---|---:|---:|---:|
| 2/17/2022 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 2/21/2022 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -131.46 |
| 3/17/2022 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 3/17/2022 | Receipt - AAOS one time pay | 0.00 | 1314.61 | -131.46 |
| 4/17/2022 | Lease repayment | 1314.61 | 0.00 | 1183.15 |
| 4/28/2022 | Late Charge_Accrued | 65.73 | 0.00 | 1248.88 |
| 4/28/2022 | Late Charge_Accrued | 0.00 | 65.73 | 1183.15 |
| 5/17/2022 | Lease repayment | 1314.61 | 0.00 | 2497.76 |
| 5/28/2022 | Late Charge_Accrued | 65.73 | 0.00 | 2563.49 |
| 5/28/2022 | Late Charge_Accrued | 0.00 | 65.73 | 2497.76 |
| 6/17/2022 | Lease repayment | 1314.61 | 0.00 | 3812.37 |
| 6/28/2022 | Late Charge_Accrued | 65.73 | 0.00 | 3878.10 |
| 6/28/2022 | Late Charge_Accrued | 0.00 | 65.73 | 3812.37 |
| 7/17/2022 | Lease repayment | 1314.61 | 0.00 | 5126.98 |
| 7/22/2022 | Receipt - AAOS one time pay | 0.00 | 1314.61 | 3812.37 |
| 7/28/2022 | Late Charge_Accrued | 65.73 | 0.00 | 3878.10 |
| 7/28/2022 | Late Charge_Accrued | 0.00 | 65.73 | 3812.37 |
| 8/17/2022 | Lease repayment | 1314.61 | 0.00 | 5126.98 |
| 8/26/2022 | Late Charge_Accrued | 65.73 | 0.00 | 5192.71 |
| 8/26/2022 | Late Charge_Accrued | 65.73 | 0.00 | 5258.44 |
| 8/26/2022 | Late Charge_Accrued | 65.73 | 0.00 | 5324.17 |
| 8/26/2022 | Late Charge_Accrued | 65.73 | 0.00 | 5389.90 |
| 8/26/2022 | Late Charge_Accrued | 62.44 | 0.00 | 5452.34 |
| 8/26/2022 | Late Charge_Accrued | 4.03 | 0.00 | 5456.37 |
| 9/17/2022 | Lease repayment | 1314.61 | 0.00 | 6770.98 |
| 10/17/2022 | Lease repayment | 1314.61 | 0.00 | 8085.59 |
| 11/17/2022 | Lease repayment | 1314.61 | 0.00 | 9400.20 |
| 12/7/2022 | PPT (incoming) | 926.36 | 0.00 | 10326.56 |
| 12/17/2022 | Lease repayment | 1314.61 | 0.00 | 11641.17 |
| 1/17/2023 | Lease repayment | 1314.61 | 0.00 | 12955.78 |
| 2/17/2023 | Lease repayment | 1314.61 | 0.00 | 14270.39 |
| 3/17/2023 | Lease repayment | 1314.61 | 0.00 | 15585.00 |
| 4/17/2023 | Lease repayment | 1314.61 | 0.00 | 16899.61 |
| 5/17/2023 | Lease repayment | 1314.61 | 0.00 | 18214.22 |
| 6/17/2023 | Lease repayment | 1314.61 | 0.00 | 19528.83 |
| 7/17/2023 | Lease repayment | 1314.61 | 0.00 | 20843.44 |

EXHIBIT D