```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                      .
IN RE:                                .   Case No. 22-60043
                                      .   Chapter 11
FREE SPEECH SYSTEMS, LLC, et          .
al.                                   .   515 Rusk Street
                                      .   Houston, TX 77002
               Debtors.               .
                                      .   Thursday, July 27, 2023
. . . . . . . . . . . . . . . .       .   9:12 a.m.
```

TRANSCRIPT OF EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 105,
    361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF
    BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE
      PROTECTION TO THE PRE-PETITION SECURED LENDER [6];
   EMERGENCY MOTION TO APPROVE ASSUMPTION OF COMMERCIAL REAL
          PROPERTY LEASE WITH BCC UBC LLC [675]
          BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
             UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For Free Speech            Law Offices of Ray Battaglia, PLLC
Systems, LLC:              By:  RAYMOND WILLIAM BATTAGLIA, ESQ.
                           66 Granburg Circle
                           San Antonio, TX 78218
                           (210) 601-9405


APPEARANCES CONTINUED.

Audio Operator:            Zilde Compean, ECR

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

| | |
|---|---|
| For Alex E. Jones and Free Speech Systems, LLC: | Crowe & Dunlevy, P.C.<br>By:  VICKIE L. DRIVER, ESQ.<br>2525 McKinnon Street, Suite 425<br>Dallas, TX 75201<br>(214) 420-2142 |
| For PQPR Holdings Limited, LLC: | Streusand Landon Ozburn Lemmon LLP<br>By:  STEPHEN WAYNE LEMMON, ESQ.<br>1801 S. Mopac Expressway, Suite 320<br>Austin, TX 78746<br>(512) 220-2688 |
| For the U.S. Trustee: | Office of the United States Trustee<br>By:  HA MINH NGUYEN, ESQ.<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002<br>(713) 718-4650 |
| For the Subchapter V Trustee: | The Law Office of Liz Freeman<br>By:  ELIZABETH CAROL FREEMAN, ESQ.<br>P.O. Box 61209<br>Houston, TX 77208-1209<br>(832) 779-3580 |
| Also Present: | PATRICK MAGILL |

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Official Committee of Unsecured Creditors: | Akin Gump Strauss Hauer & Feld LLP<br>By:  KATHERINE PORTER, ESQ.<br>     SARA L. BRAUNER, ESQ.<br>     ANNA KORDAS, ESQ.<br>     DAVID ZENSKY, ESQ.<br>One Bryant Park<br>Bank of America Tower<br>New York, NY 10036-6745<br>(212) 872-8027 |
| | Akin Gump Strauss Hauer & Feld LLP<br>By:  MARTY L. BRIMMAGE JR., ESQ.<br>2300 North Field Street, Suite 1800<br>Dallas, TX 75201-2481<br>(214) 969-2885 |

```
TELEPHONIC APPEARANCES (Continued):

Subchapter V Trustee:
                        Haselden Farrow PLLC
                        By:  MELISSA A. HASELDEN, ESQ.
                        Pennzoil Place
                        700 Milam, Suite 1300
                        Houston, TX 77002
                        (832) 819-1149

For the Texas
Plaintiffs:             Willkie Farr & Gallagher LLP
                        By:  JENNIFER JAYE HARDY, ESQ.
                        600 Travis Street, Suite 2310
                        Houston, TX 77002
                        (713) 510-1766

For the Connecticut
Plaintiffs:             Paul Weiss Rifkind Wharton &
                        Garrison LLP
                        By:  KYLE KIMPLER, ESQ.
                        1285 Avenue of the Americas
                        New York, NY 10019-6064
                        (212) 373-3253

                        Cain & Skarnulis PLLC
                        By:  RYAN E. CHAPPLE, ESQ.
                        303 Colorado Street, Suite 2850
                        Austin, TX 78701
                        (512) 477-5000

For BCC UBC LLC:        Husch Blackwell
                        By:  LYNN BUTLER, ESQ.
                        111 Congress Avenue, Suite 1400
                        Austin, TX 78701
                        (512) 472-5456
```

1          (Proceedings commence at 9:12 a.m.)

2               THE CLERK:  All rise.

3               THE COURT:  Please be seated.  Okay.  Thanks for

4    everyone's patience.  I apologize.  This is Judge Lopez.  I'm

5    going to call Free Speech, here on a cash collateral issue.

6    And I will take appearances.  Let me start in the courtroom.

7               Mr. Battaglia, good morning.

8               MR. BATTAGLIA:  Good morning, Your Honor.  Ray

9    Battaglia for Free Speech Systems.  Patrick Magill, the chief

10   restructuring officer, is in the courtroom.

11              THE COURT:  Good morning.  Good morning.

12              Ms. Driver, Good morning.

13              MS. DRIVER:  Good morning, Your Honor.  Vickie Driver

14   on behalf of Mr. Jones in his bankruptcy case and as a party in

15   interest in the Free Speech case.

16              THE COURT:  Okay.  Good morning.

17              Mr. Lemmon, good morning.

18              MR. LEMMON:  Good morning, Your Honor.  Steve Lemmon

19   for PQPR.

20              THE COURT:  Alrighty.  Mr. Nguyen, good morning.

21              MR. NGUYEN:  Good morning, Your Honor.  Ha Nguyen for

22   the U.S. Trustee.

23              THE COURT:  Okay.  Ms. Freeman, good morning.

24              MS. FREEMAN :  Good morning, Your Honor.  Elizabeth

25   Freeman on behalf of Melissa Haselden, the Subchapter V

1    trustee.  And Ms. Haselden is on the line.

2              THE COURT:  Okay.  And I see Ms. Haselden there.

3              Let's see.  If anyone else wish to make an

4    appearance, the line is completely unmuted.  So let's see if

5    there's --  Mr. Kimpler, do you wish to make an appearance?

6    I'm just going to go through the boxes, and I see my -- I'll go

7    to Ms. Porter next.

8              MR. KIMPLER:  Yes, Your Honor, if you're able to hear

9    me, it's Kyle Kimpler from Paul Weiss on behalf of the

10   Connecticut plaintiffs.

11             THE COURT:  Okay.  Ms. Porter, good morning.

12             MS. PORTER:  Good morning, Your Honor.  Can you hear

13   me?

14             THE COURT:  Just fine.

15             MS. PORTER:  Great.  Thank you.  Katherine Porter,

16   and I'm appearing with my colleague and partner, Sara Brauner,

17   on behalf of the Committee.

18             THE COURT:  Ms. Brauner, I see you there.  Good

19   morning, as well.

20             MS. BRAUNER:  Good morning, Your Honor.

21             THE COURT:  Mr. Butler, good morning.

22             MR. BUTLER:  Good morning, Your Honor.  Lynn Butler

23   on behalf of the landlord BCC UBC LLC.

24             THE COURT:  Okay.  Good morning.

25             Mr. Chapple, good morning to you, as well.

1          MR. CHAPPLE:  Good morning, Your Honor.  Ryan Chapple

2   on behalf of the Connecticut plaintiffs as well.

3          THE COURT:  Okay.  Ms. Hardy, do you wish to make an

4   appearance?

5          MS. HARDY:  Good morning, Your Honor.  Jennifer Hardy

6   on behalf of the Texas plaintiffs.

7          THE COURT:  Okay.  Good morning.

8          Have I missed anyone who wishes to make an

9   appearance?  Okay.  Mr. Battaglia, I will -- tell me where we

10  are.

11         MR. BATTAGLIA:  Good morning, Your Honor.  There's

12  only one thing that's on the docket, the other that I've

13  communicated with your staff about hearing the motion to assume

14  the lease with BCC.

15         THE COURT:  Yes.

16         MR. BATTAGLIA:  And the cash -- I've had no -- I had

17  one common question regarding the cash collateral motion, but

18  the order was circulated to the parties.  The budget was

19  circulated to the parties.  I've received no questions or

20  comments, and those who have responded have indicated they have

21  no opposition.

22         The one comment that was made, there's -- there

23  was -- there's been a line item on the budget that's come on

24  and off for travel related to Mr. Jones.  It's a $15,000 line

25  item, and it was originally on to represent travel expenses for

1  an event in North Las Vegas of conservative thinkers.  Donald

2  Trump, Jr. is there, a number of other people.  And we budgeted

3  it based on nonprivate travel, so a common carrier.  Hotel is

4  paid for by the sponsor.

5        And then Mr. Jones said that he's not going.  He's a

6  featured speaker, but he says he's not going.

7        THE COURT:  Okay.

8        MR. BATTAGLIA:  We don't -- we think he should go,

9  frankly, but obviously he's going to go or not go of his own

10  accord, so we removed it from the budget.

11        And in discussions with Mr. Jones's counsel this

12  morning, they asked if we would put it back in the budget.  If

13  we don't spend it, we don't spend it.  But if he suddenly

14  changes his mind and decides he needs to be there, we want to

15  make it's budgeted.

16        THE COURT:  You don't have to come back to court and

17  ask for it.

18        MR. BATTAGLIA:  We discussed that with the U.S.

19  Trustee's counsel.  And obviously, all invoices for travel

20  expenses are run through Mr. Magill to be approved and

21  reimbursed.

22        THE COURT:  Yeah, I got it.

23        MR. BATTAGLIA:  So we'd like to add that line item

24  back into the budget.  I'd need to upload a different order

25  when I get back to the office to just add that line item.

1          THE COURT:  Well, why don't we just -- if everybody

2   agrees to it on the record, I'm fine with that, make it more

3   efficient.  I just --

4          MR. BATTAGLIA:  Fine with me.  So it -- I have --

5   this is --

6          THE COURT:  The only stipulation I would have,

7   Mr. Battaglia, is I want to make sure that if that's what the

8   parties agree to as the line item, that it, essentially, is

9   just for that one event and it doesn't get used for other --

10  it's not a $15,000 travel, it's just for one specific event.

11  If the parties have agreed to it, I won't stand in the way.

12  But I know you know that.  I'm just stating it for the record.

13         MR. BATTAGLIA:  Not a slush fund, we understand that.

14         THE COURT:  Yeah.  Okay.

15         MR. BATTAGLIA:  And I -- I've -- obviously others who

16  are on the call, have -- this is the first they're hearing

17  that, so I certainly want to bring it up.  And if anybody has

18  any comments --

19         THE COURT:  No, I got it.  Let me just open it up.

20  Does anyone -- Ms. Driver?

21         MS. DRIVER:  Your Honor, I just do want to make a

22  point.  There was something in the news press about this event,

23  which is actually how I found out about it.

24         THE COURT:  I don't --

25         MS. DRIVER:  That's okay.

```
1              THE COURT:  Yeah.

2              MS. DRIVER:  The only reason I mentioned it is

3    because the UCC and I had had a specific email conversation

4    where I told them Mr. Jones was not going.  So I just want to

5    correct that for them, so they did not believe that I'm pulling

6    the rug out from underneath him.

7              At the time that he said he wasn't going, it was

8    supposed to be an outdoor event.  It would just be, what I

9    would consider, completely miserable in the -- spent August in

10   the -- in Nevada.  But they have moved that event indoors.

11   And, candidly, we really believe that it's a good event for him

12   to go to.

13             And so while he currently does not have booked plans

14   to go, we are just really hopeful that he will change his mind

15   since he has been billed as somebody that is speaking at the

16   event as kind of like -- almost like a keynote speaker.  And we

17   think it just could be really good for the brand.

18             THE COURT:  Okay.  I will leave that up to Mr. Jones

19   as to whether he decides to go.  I have not seen anything on

20   the news.

21             MS. DRIVER:  I just wanted to get the Committee to

22   understand that I'm not trying -- to this is a -- different

23   from what we had emailed prior, but it was just a very new

24   development over the last two days.  So I just didn't want them

25   to think that I was, again, pulling the rug out from underneath
```

1   them at the middle of a hearing.

2           THE COURT:  Okay.  All right.

3           MS. BRAUNER:  Your Honor, Sarah Brauner, Akin Gump

4   Strauss Hauer & Feld, on behalf of the Committee.  That's fine.

5   The Committee has no objection in either direction and

6   appreciate Ms. Driver's comments.

7           THE COURT:  Okay.  I appreciate it.  And I think

8   what -- I just need to pick a date, right, on the matter of

9   cash collateral.

10          MR. BATTAGLIA:  Yes, Your Honor.  Yes, sir.

11          THE COURT:  When in August were you thinking?

12          MR. BATTAGLIA:  The budgets are monthly, so somewhere

13  towards the end of the month.  And I don't have my calendar up.

14  I don't think I have --

15          THE COURT:  Would August 29th --

16          MR. BATTAGLIA:  That'd be fine.  I was just going to

17  say my anniversary is the 31st.  That would be a bad day

18  because I --

19          THE COURT:  Yeah.  No, I'm not --

20          MR. BATTAGLIA:  -- wouldn't be alive to be able to

21  attend.  The 29th is fine, Judge.

22          THE COURT:  August 29 at -- why don't we do 11 a.m.

23  and just kind of see where we are on that?

24          MR. BATTAGLIA:  Okay.  And the other matter that the

25  Court has agreed to take up is the motion to assume a

1   commercial real property lease.  The debtor occupies one

2   property in Austin, Texas, has occupied it for well over a

3   decade now, I think.

4            We're up to the sixth lease amendment, and it is the

5   location of the four studios.  It's also the administrative

6   offices and all of the debtors' installed equipment relating to

7   broadcasting, satellite broadcasting and -- is contained within

8   there.  It's not something that we can move from, certainly not

9   quickly and not readily, and not without great expense.

10           We have, I think, exhausted Mr. Butler's client's

11  willingness to give us another extension, and we certainly are

12  without leverage to force him into yet a third extension.  As I

13  think he told me on the phone one day, his clients have

14  actually picked up some bankruptcy material and figured out

15  that they don't need to do this.  So because of their

16  education, we're compelled to move forward the motion to assume

17  the lease.

18           We're current on the lease.  There are no defaults,

19  of course, other than perhaps the bankruptcy clause, and

20  there's been no request for adequate assurances.  But if there

21  was, I would certainly call Mr. Magill to say that we have the

22  cash and the ability to pay and have paid for ten years running

23  on the lease.

24           THE COURT:  Okay.

25           MR. BATTAGLIA:  So unless the Court requires further

1    evidence, I'll let Mr. Bulter respond.

2              THE COURT:  No, I'll just open it up.  I know we're

3    taking this up on an emergency basis.  Let me just ask if

4    anyone has any issues with me taking this up today or with the

5    assumption of the lease?

6              MR. KIMPLER:  Your Honor, It's Kyle Kimpler.  On

7    behalf of the Connecticut plaintiffs.  I just wanted to make a

8    few quick comments.

9              We did not file an opposition.  You may recall, Your

10   Honor, that a similar motion was filed, I believe, in January

11   or February of this year.  At that time, we did file an

12   opposition listed at Docket Number 454.

13             THE COURT:  Yeah.

14             MR. KIMPLER:  We expressed concern about the

15   potential creation of administrative expense claims here.

16   Frankly, we still have very significant concerns over that, but

17   I'm able to read the statute.  I understand that, you know, as

18   Mr. Battaglia just said, there's really no way to compel the

19   landlord to extend further and, you know, the other option

20   would then just be to move to reject.  And I think that's

21   probably premature too.

22             So we feel like we don't really have good options

23   here, and so we have not filed an objection or made any

24   objection.  But I just did want the Court to know that we

25   remain concerned, you know, over the potential administrative

1  priority claims that may be created here, given what I consider

2  to be still the uncertain path forward so --

3            THE COURT:  Yeah, understood.  I appreciate it.

4            MR. KIMPLER:  Thank you, Your Honor.  That's all we

5  had.

6            THE COURT:  Anyone else wish to be heard?

7            Okay, I'm going to take this up.  I do agree that the

8  statute -- this is a lease of nonresidential real property and

9  the Code does have specific deadlines by which the debtor must

10 either assume or reject.  And parties can agree by stipulation

11 to extend that time, but there are -- the Code, essentially,

12 dictates what happens if that time expires.  And once it

13 happens, it happens and you can't revisit the decision.

14           So -- and this has been -- there have been several

15 extensions, and I think this is obviously where the debtor

16 operates his main facility.  And so certainly the test of

17 business judgment has been met, and I appreciate everyone

18 jumping on, on this one.

19           I'm going to grant -- I'm going to take this up on

20 emergency consideration on the motion, that the consequences of

21 being idle and allowing the Code to, essentially, take effect

22 mandate, really, that I take this up on an emergency basis in

23 my opinion.  So I'm going to grant the motion and can take care

24 of that today, and I'll sign the proposed order that was at

25 675.

1           MR. BATTAGLIA:  Yes, sir.

2           THE COURT:  It's bare bones.  It gets right to the

3   point, Mr. Butler.  So you can tell your clients it's off to

4   docketing today.  Everything will be assumed and --

5           So I -- since we're all here, and I know that we take

6   matters up in Jones and in Free Speech, but I did sign the

7   9019.  I did appreciate that the declaration was placed on

8   file.  I didn't want to leave anyone with the impression -- I

9   probably wouldn't have signed it that day either.  I would have

10  needed to hear from Mr. Jones on that day.

11          It's still In Re Alex Jones, so -- and when you start

12  approving 9019 settlements of an individual, I need an

13  individual to tell me that they're okay with it and the

14  magnitude.  So I -- but I appreciate it.  It's on file.  It

15  gave me what I needed, I think the evidentiary comfort to know.

16  So I signed both of those 9019s.  I just wanted to close the

17  loop on that.

18          I know that we're not taking up summary judgment, but

19  a lot of the parties are here in the Free Speech matter, that

20  we are taking up summary judgment in the Alex Jones matter with

21  respect to the nondischargeability action.  I know that my

22  understanding, based on my -- when I spoke to my case manager,

23  everybody's still trying to figure out a date to have kind of

24  the pre-summary judgment meeting.  If you all want to keep

25  working on it, you can.

1          I do know my -- I guess my case managers alerted me

2    to one issue about video -- use of video clips or something.

3    And I just -- there are some issues that are coming up.  And

4    what I'm asking you all to do is just talk before we have a

5    hearing, and I would rather just have a list.  I don't know if

6    it -- there are issues that are coming up, to my understanding,

7    and I just want to have a meeting about everything, about what

8    could be coming up, what could not be coming up, and I just

9    want everyone to talk.

10          I would rather everyone just agree on what I can

11   consider for summary judgment, and then we have a meeting and

12   we talk about it.  And the day is filled with argument and

13   that's it, because that's all I'm going to consider, is

14   argument on that day.  And I just know a lot of things can come

15   up and -- so we can pick a day.

16          But I just wanted to stress to everyone, I'm really

17   focused on just the legal argument on that day.  I'm not going

18   to rule from the bench on that day.  I'm just going to tell you

19   know.  I'm going to -- I don't want to prejudge anything.  I

20   want people to come in with robust arguments.  And I'm going

21   to -- so whatever the argument is, I want to -- and I want to

22   know exactly what I should be considering as summary judgment

23   evidence, and then I'm going to go back and think about it, and

24   I'm going to write a thoughtful decision.  I think this is of

25   such a magnitude and such importance to all the families that

1    I'm going to sit back and think about it.

2           So whatever evidence is going to be presented, in

3    whatever form it is, I just want everyone to talk about it and

4    we can come up with stuff on that date and kind of figure it

5    out.  So I do think it's important.  But if we all agree on in

6    terms of what the docs are, how they're going to get to me,

7    maybe we need the meeting, maybe we don't, and we can just talk

8    about start time and end time.  But I'm essentially just going

9    to have an argument.

10          I'm focused on the legal argument as I begin my

11   preparation, so I just -- but I don't want it -- I'm not going

12   to rule that day.  I just think it's -- normally everyone

13   should be prepared for that.  But I think on this one, I want

14   to make sure that I sit back and hear the arguments and come

15   back in and think about it, because it's of such magnitude.

16   And I think the parties deserve a thoughtful decision from me,

17   like, kind of laying out the issues and the two sets of

18   plaintiffs.  Lots of legal issues, lot going on, but I'm going

19   to give everyone a chance to tell me what they want.

20          I would tell everyone, don't read into me asking

21   questions.  Don't read into me not asking questions.  I'm just

22   going to -- I mainly want to hear the thoughtful legal argument

23   and what's important and what's not important.  So today's not

24   the day to take any of that up.  I just want parties to talk

25   before we walk into a meeting.

1          What I don't want is to walk in on the summary

2     judgment date and people not having discussed, at least at some

3     level, what everybody can agree on for me to consider.  That's

4     what I care about a lot.  And we can take -- obviously, no one

5     has to agree on everything, but the fact that the discussions

6     were happening were important to me.

7          So I just thought it was important to say all of

8     that.  Today's not really the day to take any of it up.  I

9     probably opened up the door to some comments being said, but

10    I'll just leave it there in terms of -- I'm happy to make the

11    calls on those days.  But I just wanted to give everyone kind

12    of at least a roadmap as to the way I'm thinking about the

13    summary judgment issue.

14          And again, it's just for the Alex Jones matter.

15    We're not taking up the Free Speech.  The stipulation -- the

16    Fifth Circuit will take that, and that course will take

17    whatever course it takes.  And I've got no statements or

18    judgments about that in any way.

19          So today was really about cash collateral and the

20    lease assumptions.  But my understanding is that folks are

21    having conversations about summary judgment, and we may not

22    agree on a date, or maybe a date just doesn't work for all the

23    parties.  So I figured I would get what I really care about,

24    what it is.  And if we need to have the hearing, then let's

25    have it.  But if everybody gets together and agrees on stuff,

1  then let's do that.  If there's disagreements, then let's talk

2  about it.  I don't know, let's pick a date a day before, a week

3  before, and just have a discussion about what it is.  So we've

4  got plenty of time.

5          I'm just looking at my calendar now, and I'm sure

6  you've heard from my case manager a lot more who has a much

7  better read on all of this.  But whenever you need me, I'll

8  come in.  And if we've got to come in late on a date, then

9  let's do that.  Okay?  I'll just leave it there, and I won't

10  say anymore.

11          And I probably shouldn't end it taking comments,

12  because that -- I just figured I would just -- is there someone

13  that -- I'm just going to ask they please put your phone on

14  mute, whoever it is.  That's probably enough for today.

15          MR. BATTAGLIA:  Your Honor, obviously I'm much more

16  than an interested spectator, but on --

17          THE COURT:  Yeah.

18          MR. BATTAGLIA:  -- on the summary judgment hearing,

19  and I thought that is set on the 15th.  Is that correct?

20          THE COURT:  Correct.

21          MR. BATTAGLIA:  Okay.  We had talked -- or you had

22  mentioned it the last time we were here about wanting a case

23  status conference.  And I know August 9th was floated as a

24  date.  I don't know that anything was set though.

25          THE COURT:  Yeah.  It was really kind of to talk

1  about stuff like this and kind of what -- where we are and

2  what's going on.  But I want everyone focused on the summary

3  judgment.  But I -- but with so much at stake --

4          MR. BATTAGLIA:  That's fine.

5          THE COURT:  -- what I didn't want to do was spend the

6  first hour --

7          MR. BATTAGLIA:  Understood.

8          THE COURT:  -- where no one had spoken.  You know,

9  sometimes we pick a date, then it forces people to talk so that

10  they know they're going to -- because they know I'm going to

11  ask questions.  So that was really kind of the driver on that.

12          MR. BATTAGLIA:  We do have some other matters that

13  we're going to ask your staff to get set.  There's a turnover

14  motion with respect to Cicack --

15          THE COURT:  I did see that.

16          MR. BATTAGLIA:  -- ATS money, and I know there's a

17  related issue with the platinum products with ESG common

18  parties represented by Mr. Patterson that we probably need to

19  get set.  I mean, we're still working and trying to get them

20  resolved, but if we can, it's just time to put an end date.

21          THE COURT:  Good.  Why don't we just -- so what I

22  would ask today is why don't we -- I will -- I'm asking

23  everyone today.  I've got a couple of matters, but my case

24  manager will be around.  Why don't we just pick a date, and it

25  can be early in the morning or late in the afternoon.  And why

1  don't we just carve out an hour?  And we can -- we'll put those

2  matters on the agenda, and then we'll just have a general --

3  I'll call both cases, and we'll just kind of take everything up

4  there.  Not sure it'll be an evidentiary hearing on like a

5  turnover motion, but if you need more time then we'll pick --

6  we'll have to adjust it.

7         But maybe we can just carve out our hour and a half

8  and just kind of see where it is, so if we need the full hour,

9  hour and a half, we have it.  If not, then -- but what I am

10  asking the parties is to talk before we kind of get in there.

11         MR. BATTAGLIA:  Yes, sir.

12         THE COURT:  Okay?

13         MR. BATTAGLIA:  You got a date to suggest, or you

14  want us to just talk with all your staff?

15         THE COURT:  No, I'm -- I'll make it work,

16  whatever date y'all need.  But I want it the week of the 7th.

17  I don't want -- yeah, I definitely want it the week of the 7th

18  because -- the reality is the 14th -- I'm not here on the 14th,

19  15th is summary judgment, and I fly out somewhere on the 16th.

20  So it's got to be the week of the 7th if we're going to have

21  meetings and stuff.

22         MR. BATTAGLIA:  Are there dates that aren't available

23  on that week or -- it's a --

24         THE COURT:  No, no.

25         MR. BATTAGLIA:  Okay.  I'll get with Mr. Patterson,

1    Mr. Cicack, and Ms. Driver, and we'll find a date that works.

2              THE COURT:  And I would just ask that whatever time

3    we pick, let's just pick it so we can have our pre-summary

4    judgment discussion, if it's needed.  And if it's not needed

5    and if everybody agrees on stuff, then it's all good with me.

6              MR. BATTAGLIA:  We'll include the plaintiffs' counsel

7    also, as far as an available date.

8              THE COURT:  I can tell you -- I'm just looking now --

9    give me a second, let me -- I think the 7th, in the afternoon

10   has opened up, right?  And so that means anytime in the

11   afternoon on the 7th.  And if that doesn't work -- I'm just

12   throwing out dates.  I'm just giving you options.  I think the

13   morning of August the 8th, the afternoon of August the 9th --

14   give me a second, what is this -- the afternoon of August the

15   10th, August the 11th, I don't know.

16             MR. BATTAGLIA:  Okay.  That's enough days.  If we

17   can't figure that out with those four days -- yeah, I

18   understand.

19             THE COURT:  Yeah.  And again, I don't care if we have

20   a hearing at eight o'clock at night.  If we need to have it,

21   we'll have it one of those days.  You know, I'm just saying the

22   afternoon, and we can -- I'll make it work if it works for the

23   parties.  And I got it.  Sometimes folks have multiple

24   hearings.  Someone may be in trial or something.  And if we've

25   got to split it up for two days, you now have four days where

1  maybe we can have our summary judgment discussion or at least

2  have something on the books.  At least I want dates there, and

3  we'll kind of figure it out.

4        MR. BATTAGLIA:  We'll work amongst ourselves and get

5  with your staff.

6        THE COURT:  Okay.

7        MR. BATTAGLIA:  That's all I have, Judge.

8        THE COURT:  Alrighty.  Folks, anything else we need

9  to talk about today?

10        Alrighty.  Thanks for everyone in jumping on the

11  line.  I did mention -- I do want anyone who's going to argue

12  on the summary judgment, I want you here in person.  I don't

13  want technical issues, and stranger things have happened.  You

14  know, people dial in.  So at least if something happens to the

15  video -- and I'm not saying it does, and we've got excellent

16  technology -- I just want -- everyone can dial in and listen,

17  right?  And we've got the option of video.  And I just want

18  everyone to be here, and I want to make sure that I can hear

19  what's going on.  And cell phone noise and I don't know how

20  many people are going to dial in, I just want avoid all of

21  that.  Whoever's going to argue, I'd like you to come in.

22        The weather seems to be getting a little better in

23  Houston, so if I would have called you in last month, that

24  might have been cruel and unusual, but I think now it seems to

25  be getting a little better.  But no promises, no guarantees.

1    Just come on in and just make the argument live where I know we

2    can avoid the technical issues.  And obviously encourage the

3    parties to continue to talk throughout the period.

4            So in terms of time for a decision, I -- two weeks

5    after argument, by no later than that, you'll have a decision.

6    I just don't want to prejudge it.  I don't want to come in with

7    thoughts.  I'm beginning my preparations now.  If anything

8    changes, you all let me know.  But I'm going to continue to

9    prepare as I've been, and you'll probably have a thoughtful

10   decision, hopefully within -- no later than two weeks after --

11   so whatever, August 29th date, it'll probably be right around

12   that time that we have -- that you get a decision on the

13   summary judgment, if that's what the parties choose for me to

14   do.  Okay?

15           MR. BATTAGLIA:  Yes, sir.

16           THE COURT:  Alrighty, folks.  Thank you.  Have a good

17   day.

18       (Proceedings concluded at 9:37 a.m.)

19                           *  *  *  *  *

20

21

22

23

24

25

1                       **C E R T I F I C A T I O N**

2

3          I, Alicia Jarrett, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9

10   _____

11   ALICIA JARRETT, AAERT NO. 428      DATE: July 31, 2023

12   ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25