**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 3

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | Case No. 22-60043 |
| **FREE SPEECH SYSTEMS, LLC.,** § | Chapter 11 (Subchapter V) |
| § | |
| Debtor. § | |

## INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "Order") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court, having considered the Motion, and having held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved by agreement or order of the Court or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1. <u>The Chapter 11 Case</u>. On July 29, 2022 (the "Petition Date") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the ~~Western~~ Southern District of Texas (this "Court").

2. <u>Debtor-in-Possession</u>. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner

has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

4. <u>Committee Formation</u>. To date, no official committee (a "<u>Committee</u>") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5. <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("<u>PQPR</u>"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule 4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6. <u>Immediate Need for Use of Cash Collateral</u>. The Debtor asserts that an immediate and critical need exists for the Debtor to use the alleged cash collateral[1] of PQPR as set forth in the budget defined below (the "<u>Cash Collateral</u>") in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

---

[1] As defined at 11 U.S.C. § 363(a).

7. <u>Conditional Consent to Use of Cash Collateral</u>. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to this Order as Exhibit A (the "<u>Budget</u>") for the period (the "<u>Interim Period</u>") from the Petition Date through and including August 26, 2022 (the "<u>Termination Date</u>"). The lender has agreed to the Debtor's use of Cash Collateral during the Interim Period exclusively in accordance with the terms, conditions, and limitations set forth in this Order and the Budget.

8. <u>Good Cause/Fair and Reasonable Terms</u>. The Debtor asserts that good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein.

2. <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3. <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor

shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4. <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5. <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Payments to any insider during the Interim Period shall not exceed $20,000 in the aggregate.

6. <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR $250,000 as provided in the Budget for "Repay PQPR Inventory" (the "<u>PQPR Payment</u>"). The PQPR Payment shall not be used to pay down the PQPR Notes (as defined in the Motion). Creditors and parties in interest shall have thirty (30) days from the date a notice is filed on the docket that the PQPR Payment has been issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment.

7. <u>Further Authorization</u>. The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8. <u>Taxes</u>. Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall

remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9. <u>Adequate Protection – Replacement Liens</u>. As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "<u>Diminution in Value</u>"), the Pre-Petition Lender is hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "<u>Replacement Liens</u>") in all currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "<u>Adequate Protection Collateral</u>") to the same extent as existed on the Petition Date. The Replacement Liens granted pursuant to this Order shall be subject to the Carve Out.

10. <u>Carve Out</u>. The Replacement Liens and Adequate Protection Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "<u>Estate Professionals</u>"), for incurred but unpaid fees, expenses and other costs; fees and expenses of the appointed Subchapter V Trustee (all such carve-out amounts referenced above, collectively, the "<u>Carve Out</u>").

11. <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

12. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, the Subchapter V Trustee, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

13. <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August 24, 2022, at 10:00 a.m. Central time.

Signed: August 05, 2022

Christopher Lopez
United States Bankruptcy Judge

# Forecasted Interim Cash Collateral Budget
**Between July 29, 2022 and August 26, 2022**

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| **Week Number** | 1 | 2 | 3 | 4 |
| **Income** | | | | |
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 |
| Advertising | - | - | - | 480,166.46 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 |
| **Total Income** | **598,630.26** | **598,630.26** | **598,630.26** | **1,078,796.72** |
| **Selling & Product Costs** | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) |
| Repay PQPR Inventory | - | (250,000.00) | - | - |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) |
| eCommerce Store Maintenance | (27,270.00) | - | - | - |
| Texas Sales Tax | (5,337.87) | - | - | - |
| **Total Cost of Goods Sold** | **(262,569.67)** | **(479,961.80)** | **(229,961.80)** | **(229,961.80)** |
| **Operating Expenses** | | | | |
| **Advertising & Promotion** | | | | |
| Advertising & Promotion | (3,041.98) | - | - | - |
| Print Media | (3,000.00) | - | - | - |
| Radio Show Advertising | (11,500.00) | - | - | - |
| **Total Advertising & Promotion** | **(17,541.98)** | **-** | **-** | **-** |
| **Computer/IT/IP Expense** | | | | |
| Internet & TV services | (2,082.90) | - | (1,608.39) | - |
| Software License Fees | (140.80) | - | - | - |
| Server Hosting Service | (28,595.13) | - | - | - |
| CDN Video Cloud Storage | (55,728.00) | - | - | - |
| Satellite Service | (137,282.93) | - | - | - |
| Imaging License Fee | (9,201.25) | - | - | - |
| Software & Apps | (5,000.00) | - | - | - |
| Website Hosting | - | - | (266.50) | - |
| **Total Computer/IT/IP Expense** | **(238,031.01)** | **-** | **(1,874.89)** | **-** |
| Insurance | (2,166.50) | - | - | - |
| **Office & Administrative Expense** | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) |
| Equipment Rental | (1,989.90) | - | - | - |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) |
| **Total Office & Administrative Expense** | **(2,318.36)** | **(328.46)** | **(328.46)** | **(328.46)** |
| | | | | |
| Outsourced Services | - | - | - | - |
| Consulting Services | - | - | - | - |
| **Utilities** | | | | |
| Utility Deposit | (10,000.00) | | | |
| Electricity | - | - | (5,107.63) | - |
| HVAC | (256.19) | - | - | - |
| CAM Charges | (20,364.16) | - | - | - |
| Water & Sewer | (1,708.55) | - | - | - |
| Gas Service | (132.09) | - | - | - |
| Pest Control | (244.65) | - | - | - |
| Waste Management | (351.81) | - | - | - |
| **Total Utilities** | **(33,057.46)** | **-** | **(5,107.63)** | **-** |
| **Occupancy** | | | | |
| Rent | (33,408.51) | - | - | - |
| Office Security | (31,111.90) | - | - | - |
| Repair & Maintenance - Building | (1,777.19) | - | - | - |
| Janitorial | (5,983.33) | - | - | - |



EXHIBIT A

| Period+A5:E83 | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| **Total Occupancy** | (72,280.93) | - | - | - |
| Supplies | (1,258.02) | - | - | - |
| Telephone | (18,337.88) | - | - | |
| **Personnel Expenses** | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - |
| Payroll Tax | (13,087.76) | - | (13,087.76) | - |
| Alex Jones Salary | (10,000.00) | - | (10,000.00) | - |
| **Total Personnel Expenses** | (191,555.20) | - | (191,555.20) | - |
| **Travel** | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) |
| Vehicle Leases | - | (1,470.56) | - | - |
| **Total Travel Expenses** | (99.69) | (1,570.25) | (99.69) | (99.69) |
| **Total Operating Expenses** | (576,647.03) | (1,898.71) | (198,965.88) | (428.15) |
| ***Non-Operating Expenses*** | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) |
| AMEX Payment | - | - | - | - |
| **Total Other Expenses** | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) |
| **Professional Fees** | | | | |
| CRO Fees | - | - | - | - |
| Financial Adviosr Fee | - | - | - | - |
| Shannon & Lee LLP | - | - | - | - |
| Ray Battaglia | - | - | - | - |
| **Total Professional Fees** | - | - | - | - |
| **Total Cash Flow** | $ (245,586.44) | $ 111,769.75 | $ 164,702.59 | $ 843,406.77 |