**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS LLC, | ) Case No. 22-60043 (CML) |
| Debtor. | ) |

**JOINT OBJECTION OF THE SANDY HOOK FAMILIES
TO DEBTOR'S NOTICE OF CASH COLLATERAL BUDGET
FOR NOVEMBER 2023 WITH CONSENT OF SECURED CREDITOR**

The Connecticut Plaintiffs[1] and the Texas Plaintiffs[2] (together, the "Sandy Hook Families"), as creditors and parties-in-interest in the above-captioned chapter 11 case, submit this objection (this "Objection") to the *Debtor's Notice of Cash Collateral Budget for November 2023 With Consent of Secured Creditor* [Docket No. 749] (the "Notice").

### I. PRELIMINARY STATEMENT

1. For months, the Debtor[3] and its insider and sole owner, Alex Jones ("Jones"), have attempted to ***more than double*** Jones's historical salary. Having withdrawn Jones's Administrative Expense Motion and unwilling to move forward on their pending *Joint Motion to Approve Employment Contract Pursuant to 11 U.S.C. §§ 105 and 363(b)* [Docket No. 707], FSS and Jones now appear to adopt the "ask for

---

[1] The "Connecticut Plaintiffs" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, and Robert Parker.

[2] The "Texas Plaintiffs" are Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine. For purposes of this Motion, Marcel Fontaine is one of the "Sandy Hook Families" for ease of identification, but his claims against the Debtor are distinct and not "Sandy Hook" related.

[3] The "Debtor" or "FSS" is Free Speech Systems LLC, the above-captioned debtor and debtor-in-possession.

forgiveness, not permission" approach. Under the guise of a wholly unnecessary cash collateral order and budget—the Debtor, the Subchapter V Trustee, and the Sandy Hook Families *all agree* that PQPR is not a valid secured creditor entitled to any adequate protection—the Debtor has unilaterally decided that, effective November 1, 2023 (*i.e.*, two days *before* the Notice was even filed), it would begin *for the first time ever* paying Jones a salary equal to $1.5 million per year, even though no evidence suggests he ever received a salary from FSS greater than $640,000 in a single year.

2. The November budget within the Notice provides that Jones will receive bi-weekly payments of $57,692.31, almost three times the $20,000 he has been receiving under prior cash collateral budgets. This raise will only fuel Jones's out-of-control spending and squandering of estate assets; in September alone, Jones spent approximately $80,000 (excluding professional fees) on items such as housekeeping ($3,900 in September), non-business meals and entertainment ($2,974), non-business travel ($2,979), groceries ($1,728), childcare and activities ($13,347), and maintaining non-exempt second, third, and fourth homes that Jones has refused to sell ($6,461).[4]

3. The Debtor initially sought this Court's approval of a proposed employment agreement providing Jones with a $1.5 million annual salary. The Sandy Hook Families objected; this objection is attached as **Exhibit A** and fully incorporated herein. Rather than confront the merits of the Sandy Hook Families' objection, the Debtor simply granted its own Motion by filing the Notice and started paying Jones a $1.5 million salary without Court approval.

---

[4] *See* September Monthly Operating Report [Jones Docket No. 467-1].

2

4. The Debtor's attempt to sidestep the Sandy Hook Families' objection should be denied. Such a boost in salary to the Debtor's sole shareholder is most certainly not within the ordinary course of FSS's business—no evidence shows it ever had an employment contract with Jones or paid him a salary greater than $640,000—and is unquestionably governed by section 503 of the Bankruptcy Code.

5. As in their prior efforts, the Debtor and Jones offer no legitimate rationale for Jones's raise. Indeed, the Debtor does not point to *any* consideration that it will receive in exchange for nearly tripling Jones's salary. That is because the only consideration the Debtor will receive is the retention of Jones—thus confirming the applicability of section 503—who otherwise threatens to leave if his salary is not increased nearly 300%.

6. Rather than shrugging off the Sandy Hook Families' legitimate objections and claiming victory by fiat through the Notice, the Debtor should satisfy its burden under the Bankruptcy Code for granting Jones such a substantial increase in salary. The Court should likewise reject the Debtor's attempt to bury a massive salary increase to its sole shareholder under the cover of a *seventeenth* interim cash collateral order providing adequate protection to a creditor whose liens are challenged by the Debtor, its creditors, and the Subchapter V Trustee.

## II. BACKGROUND

7. As set forth in the *Joint Objection of the Sandy Hook Families to Debtors' Joint Motion to Approve Employment Contract Pursuant to 11 U.S.C. §§ 105 and 363(b)* [Docket No. 740] (the "Employment Agreement Objection" or "EAO"), attached hereto

3

as **Exhibit A**, the Debtor has never had a valid written employment contract with Jones and has never paid Jones an annual salary greater than $640,000.

8. On July 6, 2023, Jones filed a *Motion for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(1)* [Docket No. 659] (the "Administrative Expense Motion") seeking allowance and immediate payment of an administrative claim in an amount not less than $680,000 (the "Asserted Claim"). The basis of the Asserted Claim was that Jones was entitled to an annual salary of $1.3 million under a supposed employment agreement that Jones negotiated with himself in April 2022, just days before he put his shell companies into bankruptcy. *See* EAO ¶ 12. FSS itself agrees that such contract was not valid. *Id.*

9. Immediately upon Jones filing the Administrative Expense Motion, the Sandy Hook Families, together with the Committee, initiated talks with Jones and the Debtor to reach a consensual resolution with respect to the Asserted Claim. All parties agreed to extend the deadline by which parties were required to respond to the Administrative Expense Motion and continued to do so each week that the Administrative Expense Motion was pending. The Sandy Hook Families and the Committee, in turn, agreed to delay any discovery in connection with the Administrative Expense Motion. Ultimately, on October 18, 2023, Jones withdrew the Administrative Expense Motion.[5]

10. On August 29, 2023, Jones and the Debtor filed the *Debtors' Joint Motion to Approve Employment Contract Pursuant to 11 U.S.C. §§ 105 and 363(b)*

---

[5] *See Alexander E. Jones's Notice of Withdrawal of Motion for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(1)* [Docket No. 744].

[Docket No. 707] (the "Employment Agreement Motion"), seeking approval of an employment agreement under which Jones would receive a $1.5 million annual base salary in addition to potential bonuses. Once again, the Sandy Hook Families and the Committee engaged with Jones and the Debtor to reach a consensual result. While these discussions took place, the response deadline for the Employment Agreement Motion was extended. On or about October 9, 2023, the Debtor abruptly informed the Sandy Hook Families and the Committee that it would proceed with seeking approval of the Employment Agreement Motion as filed. As such, on October 11, 2023, the Sandy Hook Families were compelled to file the Employment Agreement Objection. The Debtor has not set a hearing for the Employment Agreement Motion, which remains pending.

   11. On November 3, 2023, the Debtor filed the Notice, whereby it states that it has increased Jones's salary "as an 'at will' employee of the Debtor" from $20,000 to $57,692.31 per pay period, effective November 1, 2023—*i.e.*, two days before filing the Notice (the "Salary Increase"). Notice at 1, Ex. A. On an annual basis, the Salary Increase reflects a $1.5 million salary, the same amount proposed in the Employment Agreement Motion. To justify the Salary Increase to Jones, the Notice offers a bare assertion that the Debtor's management believes the Salary Increase is "commensurate with the value of his services to the Debtor" and "reflects the exercise of management's best business judgment." Notice at 1. The Notice also states that the Salary Increase has been consented to by PQPR Holdings, LLC ("PQPR"), the Debtor's affiliate (owned by Jones and his parents) and supposed secured lender. The validity of PQPR's debt and

liens on the Debtor's assets are disputed and the subject of avoidance actions in an adversary proceeding brought in this chapter 11 case.[6]

### III. ARGUMENT

12. The Debtor is not authorized to give Jones the Salary Increase, and the Court should not permit the Debtor to do so in the context of a completely unrelated—and unnecessary—cash collateral order. The Notice simply grants the very relief that the Debtor has requested—but not received—in the Employment Agreement Motion. Accordingly, for many of the same reasons that justify denying the Employment Agreement Motion, which are detailed in the Employment Agreement Objection, the Court should prohibit the Salary Increase.

13. *First*, the Salary Increase is barred as a retentive payment to an insider under section 503(c)(1) of the Bankruptcy Code. Jones is indisputably an insider of the Debtor, and the record in the Bankruptcy Cases makes clear that this proposed immediate Salary Increase is a retentive transfer. *See* EAO ¶¶ 30–31. Other than retaining Jones's services, the Debtor has not identified a single benefit it (or its creditors) will receive by doubling Jones's salary. The Salary Increase is not tied to ***any*** performance metrics, and the Debtor does not even attempt to argue that the Salary Increase can clear the "high hurdles" and "severely restrict[ive]" requirements under which the Debtor could make such payment to an insider in light of section 503(c)(1). *See In re Velo Holdings, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012); *In re Global Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007).

---

[6] *See Free Speech Sys., LLC* v. *PQPR Holdings Ltd. (In re Free Speech Sys.)*, No. 23-03127 (Bankr. S.D. Tex. July 14, 2023).

14. *Second*, section 503(c)(3) independently warrants the Court prohibiting the Salary Increase, regardless of any retentive purpose. Since the Debtor's inception, Jones's salary has never exceeded $640,000 per year. The Salary Increase, which more than doubles Jones's long-standing prepetition salary during the Debtor's bankruptcy case, is not an ordinary-course transaction. *See* EAO ¶¶ 38–40 (citing cases supporting proposition that courts approving bonuses or substantial salary raises as ordinary-course transactions typically require years of substantially similar past practice). The Debtor has not demonstrated how this non-ordinary course transfer is "justified" by the "facts and circumstances" here. *See* 11 U.S.C. § 503(c)(3). It is not. Indeed, there are ***no*** increased responsibilities or obligations tied to the Salary Increase, and the Debtor ***identifies no*** added value that will flow to the Debtor's estate from the Salary Increase.

15. *Third*, the Debtor's statement that the Salary Increase "reflects the exercise of management's best business judgment," *see* Notice at 1, is irrelevant and does not provide a basis for permitting the Salary Increase. Where transfers are made, or obligations incurred on behalf of, a debtor's insiders, section 503(c) of Bankruptcy Code governs the analysis. 11 U.S.C. § 503(c); *see also In re Country Fresh Holding Co. Inc.*, 2021 WL 2932680, at *11 (Bankr. S.D. Tex. July 12, 2021). Accordingly, given Jones's insider status, section 363(b) and the business-judgment standard do not apply. *See* EAO ¶¶ 25–26. Moreover, the Debtor's statement is unsubstantiated—no declaration or any other evidence has been offered to support the Notice or the claim that the Salary Increase passes business-judgment scrutiny.

16. *Fourth*, the Salary Increase is—like the Proposed Employment Agreement and the Asserted Claim—a transparent attempt to convert the Equity Draws that Jones

7

took from the Debtor prepetition into a "salary" paid to him post-petition and, therefore, reducing the "net income" payable to the Debtor's creditors. The lack of any valid basis to siphon another almost $40,000 per pay period from the Debtor's creditors shows that this is simply an attempt to extract the net income of the Debtor's estate for Jones's own benefit to replace the Equity Draws Jones received prepetition. This circumvents the statutory mandate of subchapter V. *See* EAO ¶¶ 18–23.

17. *Finally*, the Notice is the wrong procedural vehicle to effectuate the Salary Increase. It provides no legal or evidentiary basis to justify the Salary Increase. While the Debtor touts—unsurprisingly—that PQPR consents to the Salary Increase, PQPR's consent is irrelevant to an issue governed by section 503 of the Bankruptcy Code. Moreover, PQPR is not entitled to any adequate protection under the Bankruptcy Code. Under section 363(p) of the Bankruptcy Code, PQPR bears the burden of proving it is entitled to adequate protection, though PQPR has failed to do so. Meanwhile, the Debtor has filed an adversary proceeding challenging the validity of PQPR's liens and the Subchapter V Trustee has concluded that PQPR "should not retain secured status or payment priority senior or pari passu with creditors of FSS." *Subchapter V Trustee's Initial Findings of Free Speech Systems, LLC Investigation* [Docket No. 550] at 11; *Complaint*, Adv. Pro. 23-03127 [Docket No. 1]. Given both the Debtor and the Subchapter V Trustee's view that PQPR is not entitled to adequate protection because it is not a secured creditor of the Debtor, it is unclear why the Debtor continues to seek interim cash collateral orders at all—much less with PQPR's blessing. In sum, the Notice is not the correct way to cram down something as significant as the Salary Increase.

\*　　　\*　　　\*

18. The Debtor's efforts to circumvent the procedural and substantive requirements for the Salary Increase, disregard the Sandy Hook Families' Employment Agreement Objection, and proceed unilaterally with the Salary Increase without Court approval should not be permitted. Rather, the Court should prohibit the Debtor from effectuating the Salary Increase.

Dated: November 21, 2023

Respectfully submitted,

**MCDOWELL HETHERINGTON LLP**
By: */s/ Avi Moshenberg*
Avi Moshenberg
State Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone: (713) 337-5580
Fax: (713) 337-8850
E-mail: Avi.Moshenberg@mhllp.com

**CHAMBERLAIN, HRDLICKA,
WHITE, WILLIAMS & AUGHTRY, PC**
By: */s/ Jarrod B. Martin*
Jarrod B. Martin
State Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, TX 77002
Telephone: (713) 356-1280
Fax: (713) 658-2553
E-mail: jarrod.martin@chamberlainlaw.com

**WILLKIE FARR & GALLAGHER LLP**
By: */s/ Jennifer J. Hardy*
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766
Fax: (713) 510-1799
E-mail: jhardy2@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Fax: (212) 728-8111
E-mail: rstrickland@willkie.com
E-mail: slombardi@willkie.com
E-mail: csisco@willkie.com

*Co-Counsel to the Texas Plaintiffs*

**CAIN & SKARNULIS PLLC**
By: */s/ Ryan E. Chapple*
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone: (512) 477-5000
Fax: (512) 477-5011
E-mail: rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
E-mail: asterling@koskoff.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Stephanie P. Lascano (admitted *pro hac vice*)
Vida Robinson (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
E-mail: kkimpler@paulweiss.com
E-mail: slascano@paulweiss.com
E-mail: virobinson@paulweiss.com

*Co-Counsel to the Connecticut Plaintiffs*