**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS LLC, | ) ) | Case No. 22-60043 (CML) |
| Debtor | ) ) ) | |
| In re: | ) ) | Chapter 11 |
| ALEXANDER E. JONES, | ) ) | Case No. 22-33553 (CML) |
| Debtor | ) ) ) | |

# EXHIBIT 26

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>FREE SPEECH SYSTEMS, LLC,<br><br>Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 22-60043 (CML) |
| In re:<br><br>ALEXANDER E. JONES,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-33553 (CML) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' (I) RESERVATION OF RIGHTS IN RESPECT OF ALEXANDER JONES'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. § 503(B)(1) TO THE EXTENT SUCH MOTION IS NOT WITHDRAWN AND (II) LIMITED OBJECTION AND JOINDER IN RESPECT OF JOINT MOTION TO APPROVE EMPLOYMENT CONTRACT PURSUANT TO 11 U.S.C. §§ 105 AND 363(B)**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case of Alexander E. Jones ("Jones" and such case, the "Jones Case"), by and through its undersigned counsel, hereby submits this (a) reservation of rights in respect of Jones's *Motion for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(1)* (the "Admin Claim Motion") filed in the above-captioned chapter 11 case of Free Speech Systems, LLC ("FSS" and together with Jones, the "Debtors," and such case the "FSS Case" and together with the Jones Case, the "Chapter 11 Cases")[1] and (b) limited objection and

---

[1] As discussed in further detail herein, the Committee understands that Jones does not intend to pursue the Admin Claim Motion and will be withdrawing such motion without prejudice in the near term. Because, however, the Admin Claim Motion has not yet been withdrawn, the Committee hereby reserves all rights with respect to such motion out of an abundance of caution and due to inter-related issues raised by the two Motions. To the extent Jones does not

joinder in respect of the *Joint Motion to Approve Employment Contract Pursuant to 11 U.S.C. §§ 105 and 363(b)* (the "Employment Agreement Motion" and together with the Admin Claim Motion, the "Motions") filed jointly by Jones and FSS in the FSS Case (collectively, the "Limited Objection").[2] In support of this Limited Objection, the Committee respectfully states as follows.[3]

## PRELIMINARY STATEMENT

1. Since its appointment, the Committee has endeavored to encourage value maximizing efforts by Jones, including limiting waste of estate assets and selling non-exempt property, while simultaneously investigating the extent to which additional value could be recovered from other sources. Unfortunately, the Committee's efforts have not resulted in meaningful changes in Jones's extravagant lifestyle or efforts to preserve value for the benefit of creditors.[4]

2. These Motions are no different. Neither Motion was filed with the goal of maximizing value for the benefit of the Debtors' respective creditors—which, in each case, comprise predominantly the Sandy Hook Families, nor is either Motion appropriate under the present circumstances of these inextricably linked Chapter 11 Cases. Rather, the Admin Claim

---

withdraw the Admin Claim Motion or elects to pursue it at a later date, the Committee submits that such motion should be denied and reserves the right to file an objection in respect of the same.

[2] Contemporaneously herewith, the Sandy Hook Families (as defined below) submitted the *Joint Objection of the Sandy Hook Families to Debtors' Joint Motion to Approve Employment Contract Pursuant to 11 U.S.C. §§ 105 and 363(b)* (the "Sandy Hook Families Objection"). The Committee joins the arguments set forth therein.

[3] While the Committee is not a party in the FSS Case, the creditors comprising the Committee's constituency are also holders of the largest claims against FSS's estate and, for the reasons explained herein, the Committee has a direct interest in the resolution of the Motions.

[4] On August 29, 2023, the Committee filed a reservation of rights [ECF No. 419] (the "MOR Reservation of Rights") in the Jones Case in respect of Jones's July Monthly Operating Report raising the Committee's significant concerns in respect of Jones's extravagant spending, which seemed to increase over the course of the case, and Jones's unwillingness to commit to a reasonable budget. On September 18, 2023, Jones responded to the Committee's concerns [ECF No. 445] making clear that, among other things, Jones had no intention of curtailing his spending in any material way. Following long negotiations, the Committee understands that Jones has now agreed to file a motion in the very near term seeking authorization to sell discrete categories of non-exempt assets, including certain cars, boats and watches. While an important step, the Committee submits that these efforts are woefully insufficient to preserve estate value.

Motion is a thinly veiled attempt to increase liquidity in the Jones estate, primarily for the benefit of estate professionals, without having to compromise Jones's standard of living or sell significant non-exempt assets. But the Admin Claim Motion fails to provide any basis for the relief it seeks. Jones's desire to increase the liquidity in his estate without taking cost-cutting measures or selling assets is not a basis to demand immediate payment on an administrative claim tied to a highly questionable employment agreement, which was never assumed and presently has no bearing on either of the Chapter 11 Cases. As noted above, the Committee understands that Jones intends to withdraw the Admin Claim Motion without prejudice and, therefore, simply reserves its rights in respect of the same.

3. Similarly, the Employment Agreement Motion, which was filed jointly by the Debtors, appears to have been motivated by the dual goals of shoehorning additional value into the Jones estate to support liquidity challenges and supporting the feasibility of a plan in the FSS Case by ensuring Jones's continued employment. The Employment Agreement Motion achieves neither such goal. *First*, the motion contemplates more than doubling Jones's salary from the amount that was approved by this Court in connection with ongoing cash collateral requests in the FSS Case, without imposing any safeguards in respect of how that money will be spent when received by the Jones estate. Particularly in light of Jones's reckless spending (which has continued month after month during his bankruptcy), any attempt to provide Jones with more funds, which will almost certainly be frittered away, is both unpalatable and inconsistent with Jones's fiduciary duties to his creditors.

4. *Second*, with respect to Jones's supposed go-forward commitment to work for FSS, this goal is eviscerated by the very terms of the New Employment Agreement (as defined below) for which the Debtors now seek approval. As discussed herein and in the Sandy Hook Families

3

Objection, Jones's commitment to continue to work for FSS is entirely contingent upon a successful resolution of both the FSS Case and the Jones Case. Thus, seeking approval of the Employment Agreement Motion now, in advance of confirmation proceedings in connection with an FSS plan, necessarily is premature and amounts to an impermissible *sub rosa* plan. Underscoring the improper timing of the Debtors' request is the fact that the Debtors agreed to adjourn both Motions for months while the parties engaged in discussions in an effort to negotiate a consensual solution to Jones's liquidity concerns that imposed appropriate guardrails on Jones's spending and ensured that the rights of all parties were preserved in connection with broader case issues. An agreement to resolve the Admin Claim Motion, sell certain assets and reinforce Jones's obligations to continue performing his duties to FSS during the Chapter 11 Cases (while reserving all rights with respect to terms of any employment agreement) had been largely final as among Jones, the Committee and the Sandy Hook Families when FSS abruptly determined to barrel forward with the Employment Agreement Motion over the objection of creditors.

5. The Committee fully appreciates that Jones's continued employment with FSS on reasonable terms and conditions may be critical to a resolution in both of the Chapter 11 Cases. Indeed, in the event the Jones Case is resolved through a chapter 11 plan that allocates to creditors an appropriate percentage of Jones's post-bankruptcy income for an appropriate number of years, a long-term contract between FSS and Jones that incentivizes him to maximize creditor recoveries may very well make sense. But no such plan has been proposed. And the outcome of the Jones Case remains elusive. The Committee is hopeful that this Court's rulings in respect of the nondischargeability adversary proceedings will help to propel resolution. At this time, however, there can be no assurance that a plan can ever be confirmed in the Jones Case. To the extent the Jones Case ends in liquidation, for example, the future of FSS may be very different. As such,

4

consideration of the Employment Agreement Motion prior to confirmation proceedings and/or determination of a path forward in *both* of the Chapter 11 Cases is premature.

6. For these reasons and the reasons set forth in the Sandy Hook Families Objection, the Committee submits that the Employment Agreement Motion should be denied without prejudice or, alternatively, held in abeyance until such time as the Court considers confirmation of a plan in the FSS Case, which in turn, should be tied to a path forward in the Jones Case—whether that is a plan or some other outcome.

## BACKGROUND

7. Jones is a notorious right-wing conspiracy theorist engaged in the business of producing radio and video talk shows and selling a wide array of dietary supplements, survivalist preparedness items and other products through Infowars.com and FSS, of which Jones is the sole managing member. The vast majority of FSS's revenue comes from the sale of these supplements, which are advertised during Jones's radio talk shows. Jones is also FSS's only meaningful talent.

8. The current employment relationship between Jones and FSS allegedly is governed by the Employment Agreement and Accompanying Employee Annuity and Life Insurance Plan, dated April 14, 2022 (the "Prepetition Employment Agreement"), pursuant to which Jones agreed to continue broadcasting his public programming and promote products and services on his show in exchange for an annual salary of $1,300,000 payable in bi-monthly installments. It is the Committee's understanding that Jones, as the managing member and sole owner of FSS, with the aid of his then-counsel, negotiated the Prepetition Employment Agreement on behalf of FSS. Importantly, the $1.3 million annual salary set forth in the Prepetition Employment Agreement was significantly higher than Jones's prior reported salary of $625,000 a year.[5] Additionally, the

---

[5] *See The Sandy Hook Plaintiffs' Witness and Exhibit List for Hearing Scheduled for August 3, 2022* at 10:00 A.M. (Prevailing Central Time), Ex. 12, dated August 3, 2022, Case No. 22-60043 [ECF No. 28] at 2 (Deposition Notes by

5

Prepetition Employment Agreement embodied an unusual payment structure, pursuant to which wages could be directed into an Employee Annuity and Life Insurance Plan, which purportedly was beyond the reach by creditors and claimants.[6] Upon information and belief, no employment agreement existed between Jones and FSS prior to April 14, 2022. However, on the eve of what became a string of chapter 11 filings by Jones's companies and ultimately Jones himself, Jones entered into the Prepetition Employment Agreement with FSS.

9. The Chapter 11 Cases and related filings were precipitated by entry of certain judgments against Jones and entities owned and/or controlled by Jones in connection with lawsuits commenced beginning in 2018 in Connecticut and Texas state courts (the "<u>Defamation Cases</u>") by families of victims of the 2012 mass shooting that occurred at Sandy Hook Elementary School in Newtown, Connecticut (the "<u>Sandy Hook Families</u>"). The Defamation Cases sought damages for claims including defamation and intentional infliction of emotional distress, among others, as a result of Jones's repeated and damaging lies and inflammatory public statements about the Sandy Hook shooting. The lawsuits ultimately resulted in judgments against Jones and related entities totaling approximately $1.5 billion in the aggregate, with additional litigation stayed by the commencement of the Chapter 11 Cases.

10. On April 18, 2022—just days after the execution of the Prepetition Employment Agreement—InfoW, LLC, which was one of the defendants in the Defamation Cases, along with certain affiliates, commenced bankruptcy cases under subchapter V of chapter 11 of title 11 of the

---

Corporate Representative of Free Speech Systems, LLC dated Feb. 15, 2022, stating that "AJ paid a salary $625000/year."). While Jones had previously taken additional draws from FSS to cover his other personal expenses, the Prepetition Employment Agreement and the salary arrangement outlined therein do not prevent him from continuing to do so. *See e.g.*, Aug. 3, 2022 Hr'g Tr. dated August 12, 2022, FSS Case [ECF No. 63] 152:21-23 ("Q: And that's salary separate from the draws that he's taking out of the company, right?" "A: Correct.").
[6] *See* Prepetition Employment Agreement, Exhibit 1 ¶ 3.02.

6

United States Code (the "Bankruptcy Code").[7] Shortly thereafter, on July 29, 2022, FSS filed a voluntary petition under subchapter V of chapter 11 of the Bankruptcy Code in this Court. Jones's individual chapter 11 filing followed on December 2, 2022.

11. In August 2022, shortly after the commencement of the FSS Case, the Court capped Jones's salary pursuant to certain cash collateral orders that outlined a budget for FSS. Jones's salary initially was capped at $10,000 per pay period, but subsequently was raised to $20,000 per pay period.[8] As a result, according to the Admin Claim Motion, Jones purports to hold a $680,000.00 claim against FSS's estate for the remaining compensation not paid pursuant to the Cash Collateral Orders (the "Purported Administrative Claim"). Notably, FSS never sought to assume the Prepetition Employment Agreement. And while, at a certain point, Jones sought to fix a date by which the Prepetition Employment Agreement would have to be assumed or rejected, FSS and Jones failed to bring the issue to a conclusion or request entry of an order resolving this motion.[9] Moreover, FSS admitted in the Employment Agreement Motion that it disputed the validity of the Prepetition Employment Agreement.[10]

12. On July 6, 2023, Jones filed the Admin Claim Motion seeking immediate payment of the Purported Administrative Claim. Immediately thereafter, the Committee reached out to Jones's counsel to request an extension of the objection deadline in an effort to resolve the motion

---

[7] *See In re InfoW, LLC*, Case No. 22-60020 (Bankr. S.D. Tex. Apr. 17, 2023); *In re IW Health, LLC*, Case No. 22-60021 (Bankr. S.D. Tex. Apr. 17, 2023); *In re Prison Planet TV, LLC*, Case No. 22-60022 (Bankr. S.D. Tex. Apr. 17, 2023) (collectively, the "InfoW Cases"). The InfoW Cases subsequently were dismissed on June 10, 2022. *In re InfoW, LLC*, Case No. 22-60020 [ECF No. 114] (Bankr. S.D. Tex. June 10, 2022).
[8] *Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection*, Case No. 22-60043 [ECF No. 41] (Bankr. S.D. Tex. Aug. 5, 2022); *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection*, Case No. 22-60043 [ECF No. 98] (Bankr. S.D. Tex. Aug. 24, 2022) (collectively with all subsequently entered cash collateral orders in the FSS Case, the "Cash Collateral Orders").
[9] *See Emergency Motion of Alexander E. Jones to Fix a Date by Which Debtor Must Assume or Reject Executory Contract*, Case No. 22-60043 [ECF No. 349] (Bankr. S.D. Tex. Dec. 21, 2022); *see also Proposed Order Granting Emergency Motion of Alexander E. Jones to Fix a Date By Which Debtor Must Assume or Reject Executory Contract*, Case No. 22-60043 [ECF No. 413] (Bankr. S.D. Tex. Jan. 31, 2023).
[10] *See* Employment Agreement Motion ¶ 5.

7

by way of a stipulation permitting the transfer of value from the FSS estate to the Jones estate with appropriate protections to ensure such value was used exclusively to pay estate professionals. Upon mutual agreement among the Committee, the Sandy Hook Families, Jones and FSS, the objection deadline was extended continuously for nearly two months, while the parties engaged in constructive negotiations to resolve the Admin Claim Motion and address payment of estate professionals. While these negotiations were ongoing, and without any notice to or advanced discussion with the Committee, on August 29, 2023, the Debtors unexpectedly filed the Employment Agreement Motion, seeking approval of a new employment agreement between FSS and Jones, which is attached to the Employment Agreement Motion as Exhibit A (the "New Employment Agreement").

13. The New Employment Agreement is meant to supplant the Prepetition Employment Agreement (which FSS never sought to assume) and contemplates an annual base salary of $1.5 million.[11] In addition, the New Employment Agreement provides for broad expense reimbursement and incentive bonuses for Jones based on FSS meeting certain revenue milestones.[12] The New Employment Agreement is divided into two terms: the first runs until the date of FSS's emergence from bankruptcy and the second runs for five years following emergence.[13]

14. Importantly, the New Employment Agreement is terminable at will upon 90-days' notice.[14] That means that upon FSS's emergence from chapter 11, Jones can terminate his employment at any time, *for any reason*. Jones's unfettered right to walk away from employment with FSS certainly does not bode well for feasibility of FSS's chapter 11 plan. Additionally, and

---

[11] *See* New Employment Agreement § 4.1.
[12] *See id.* §§ 4.2, 4.3.
[13] *See id.* § 1.
[14] *See id.* § 5.4.

8

critically, the New Employment Agreement provides that Jones may terminate his obligations for cause in the event a chapter 11 plan confirmed in either the FSS Case or the Jones Case is not in form or substance acceptable to him.[15] Of course, the inclusion of this provision broadcasts that both FSS and Jones are keenly aware that the approval of an employment agreement that purports to set the terms of Jones's go-forward employment before any confirmable plan is put forward in either of the Chapter 11 Cases is premature.

15. Despite the unexpected filing of the Employment Agreement Motion, the Committee went back to the drawing board and engaged in good faith discussions with the Sandy Hook Families, FSS and Jones in hopes of resolving creditors' concerns in respect of both Motions without costly litigation.[16] Again, the Committee, the Sandy Hook Families and Jones appeared to be close to a resolution to bring liquidity into the Jones estate to pay professionals, ensure that Jones would continue performing his duties to FSS during the pendency of the Chapter 11 Cases and reserve all rights in respect of the go-forward employment arrangement following resolution of the cases.

16. On October 9, 2023, FSS informed the Committee and the Sandy Hook Families

---

[15] *See id.* §§ 5.5.5, 5.5.6.

[16] The deadlines to object to both Motions were extended week after week by mutual agreement for another month and a half. The Committee similarly agreed to delay any discovery in connection with the Motions in light of the progressing settlement discussions. The Committee had served interrogatories and requests for production of relevant documents on FSS and Jones in connection with the Admin Claim Motion on July 12, 2023 (the "July Discovery"). Neither FSS nor Jones provided responses to the interrogatories or produced any documents responsive to the requests for production, claiming that the July Discovery was duplicative of the pending rule 2004 requests served earlier in the Jones Case. This characterization is inaccurate—the July Discovery was narrowly tailored to the relief requested in the Admin Claim Motion, and none of the prior requests included any interrogatories. The fact that there may be some overlap with prior discovery requests does not mean that the requests are unreasonable or burdensome and does not justify failure to even attempt to comply with such requests. Both FSS and Jones were similarly resistant to any discovery efforts in connection with the Employment Agreement Motion. The Committee did not push the issue because it was optimistic (and in fact was led to believe) that a consensual resolution was under way. The Committee expressly reserves all rights in respect of the July Discovery and the right to serve discovery in connection with the Employment Agreement Motion.

9

that FSS intended to seek approval of the New Employment Agreement promptly.[17] As such, the Committee is constrained to submit this Limited Objection.

## ARGUMENT

17. Jones's goal with respect to each of the Motions is clear: to pump needed liquidity into the cash-strapped Jones estate, without compromising Jones's lavish standard of living or requiring him to sell significant non-exempt assets. Indeed, the Motions admit as much.[18] But neither Motion is supported by the circumstances of the Chapter 11 Cases. Jones's desire to increase the liquidity in his estate without taking cost-cutting measures or selling a vast majority of his non-exempt assets is not a basis to demand immediate payment of an administrative claim tied to a highly questionable employment agreement that has not been assumed. Similarly, rushed entry into a new employment agreement that contemplates a salary untethered to historical dealings between the parties and gives Jones an unfettered right to walk away similarly is not appropriate or in the best interest of Jones's stakeholders.

18. While it may seem antithetical for the Committee to object to Jones's attempts to bring more cash into his bankruptcy estate, the Committee is deeply troubled by the dramatic waste of estate assets that has occurred month after month and that would only worsen if Jones were to be given unconstrained access to additional cash. As the Committee recently expressed in its MOR Reservation of Rights, Jones has engaged in a pattern of excessive spending in utter disregard of his creditors' interests and has refused to engage with the Committee on the terms of a reasonable budget. Given the virtually complete overlap between the creditor bodies in the FSS Case and the

---

[17] As the only accommodation of the abrupt change in circumstances, FSS granted the parties an additional twenty-four-hour extension of the objection deadline.

[18] *See* Admin Claim Motion ¶ 14 ("Finally, Jones would request that the Court direct FSS to pay the [a]dministrative expense immediately, as it is able. ***These funds would be very helpful in paying time sensitive administrative expenses in the Jones Bankruptcy Case***.") (emphasis added); Employment Agreement Motion ¶ 12 ("Jones believes that entering into the New Employment Agreement will benefit the Jones bankruptcy estate because the increased funds will allow Jones to fund additional administrative expenses. . . .").

10

Jones Case (namely, the Sandy Hook Families), and the fact that cash in the Jones case is being spent without appropriate oversight, transfer of cash from one estate to another does not benefit the Committee's constituency. Rather, if the FSS estate is dissipated in favor of the Jones estate, and such value, in turn, is wasted through reckless spending without appropriate budgeting and safeguards, the Committee's constituency will be harmed irreparably.

19. This concern is heightened by the uncertainty surrounding the outcome of the Jones Case and the realistic possibility that such case could be dismissed or converted in the absence of a consensual plan. Jones's ability to walk away from the New Employment Agreement for any reason, including if he is not satisfied with the resolution in either the FSS Case or the Jones Case—all without breaching the agreement or incurring other consequences—casts serious doubt on such agreement's ability to support a viable go-forward FSS in the absence of a broader resolution. These provisions, of course, are consistent with the Committee's understanding of Jones's position—namely that he will not commit to work for FSS for the benefit of creditors, as would be required by any confirmable plan in the FSS case, absent resolution of his own bankruptcy. Indeed, why would he?

20. Moreover, FSS is a wholly owned asset of the Jones estate. Therefore, even if an FSS plan were to be confirmed before a resolution of the Jones Case was reached, that resolution would be temporary at best. To the extent the Jones Case results in liquidation, Jones's creditors would be entitled to the entire current value of FSS and, potentially, control over any go-forward entity. The Committee remains hopeful that this Court's rulings in respect of the nondischargeability proceedings, coupled with continued efforts by all parties in interest, will chart a viable path forward—whether that is a consensual plan or some other outcome.

21. Ultimately, however, the New Employment Agreement is an ineffective band-aid

11

slapped onto a problem that requires a holistic resolution of both Chapter 11 Cases. Indeed, as addressed in detail in the Sandy Hook Families Objection, the Employment Agreement Motion is nothing more than a request to shore up feasibility of any FSS plan and, thus, amounts to an impermissible *sub rosa* plan. Nor will approving the New Employment Agreement now rather than in connection with the FSS plan process—which the Committee submits should, in turn, be linked to a resolution of the Jones Case—do anything to move the needle toward emergence for FSS or Jones.

22. As such, the Employment Agreement should be denied without prejudice or, alternatively, held in abeyance to be addressed in connection with confirmation proceedings or another resolution of the Chapter 11 Cases. Similarly, to the extent the Admin Claim Motion is not withdrawn, it should be denied without prejudice and the Committee reserves all rights in respect of the same.

## CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court: (i) deny the relief sought by the Employment Agreement Motion and (ii) grant such other and further relief as is just, proper and equitable.

Dated: October 11, 2023

Respectfully submitted,

By: */s/ Marty L. Brimmage, Jr.*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr.
Texas Bar No. 00793386
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com

*-and-*

David M. Zensky (admitted *pro hac vice*)
Sara L. Brauner (admitted *pro hac vice*)
Katherine Porter (admitted *pro hac vice*)
Anna Kordas (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: dzensky@akingump.com
       sbrauner@akingump.com
       kporter@akingump.com
       akordas@akingump.com

***Counsel to the Official Committee of Unsecured Creditors of Alexander E. Jones***

## CERTIFICATE OF ACCURACY

Pursuant to Bankruptcy Local Rule 9013-1(i), I hereby certify that the factual statements contained herein are true and correct, to the best of my personal knowledge, and that emergency relief is necessary in light of impending hearings and deadlines.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 11, 2023, a true and correct copy of the foregoing Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.