**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS LLC, | ) | Case No. 22-60043 (CML) |
| Debtor | ) | |
| In re: | ) | Chapter 11 |
| ALEXANDER E. JONES, | ) | Case No. 22-33553 (CML) |
| Debtor | ) | |

# EXHIBIT 27

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | Bankruptcy Case No. 22-60043 |
| Debtor. | § | |

| | | |
|---|---|---|
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 23-03127 |
| | § | |
| PQPR HOLDINGS LIMITED LLC, JLJR | § | |
| HOLDINGS, LLC, PLJR HOLDINGS, LLC, | § | |
| AEJ AUSTIN HOLDINGS, LLC, AEJ 2018 | § | |
| TRUST, CAROL JONES and DAVID JONES. | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**AMENDED COMPLAINT**

Free Speech Systems, LLC (the "Debtor" and sometimes referred to as "FSS" or "Plaintiff"), through its undersigned counsel, brings this complaint (the "Complaint") to avoid and recover transfers, and for related relief, under §§ 544, 547, 548, 550, and for lien avoidance under §506 and disallowance or subordination of claims under §§502 and 510 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor alleges:

**NATURE OF THE CASE**

Debtor seeks to avoid and recover from the Defendants, or any other person or entity for whose benefit the Avoidable Transfers were made, all transfers of property that occurred within the applicable limitations period prior to the Petition Date. To the extent that a Defendant filed a

proof of claim or has a claim listed on the Debtor's schedules as undisputed, liquidated and not contingent, or otherwise requested payment from the Debtor or its chapter 11 estate, this complaint is also an objection to such claims pursuant to § 502(d) of the Bankruptcy Code, and such rights are expressly reserved. In addition, the Debtor seeks to disallow claims of certain Defendants and to avoid liens asserted by those Defendants against property of the Debtor's estate as further stated below. To the extent that a Defendant retains a claim against the Debtor, the Debtor seeks subordination of those claims under § 510 of the Bankruptcy Code.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this adversary proceeding (the "Adversary Proceeding"), which arises under the Bankruptcy Code, and arises in and relates to a case in the United States Bankruptcy Court for the Southern District of Texas, case number 22-60043, under 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue is proper in the Southern District of Texas under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested in this Complaint are §§ 544, 547, 548, 550, and for lien avoidance under §506 and disallowance or subordination of claims under §§502 and 510 of title 11 of the United States Code and the Federal Rule of Bankruptcy Procedure 7001(1).

## PARTIES

5.       Free Speech Systems, LLC is the Plaintiff in this adversary proceeding. Plaintiff is a Texas limited liability company, wholly owned by Alex Jones[1].

---

[1] Alex Jones is a Debtor in a chapter 11 bankruptcy pending before this Court as Case Number 22-33553.

6.      Defendant PQPR Holdings Limited LLC ("PQPR") is a Nevada limited-liability company. It may be served at the address of its registered agent, Registered Agents Inc., at 401 Ryland St., Suite 200-A, Reno, NV 89502. PQPR is represented by counsel and may be served through counsel of record.

7.      Defendant JLJR Holdings, LLC ("JLJR") is a Nevada limited-liability company. It directly owns 20% of the member interest in PQPR. It may be served at the address of its registered agent, Registered Agents Inc., at 401 Ryland St., Suite 200-A, Reno, NV 89502. JLJR is represented by counsel and may be served through counsel of record.

8.      Defendant PLJR Holdings, LLC (PLJR") is a Nevada limited-liability company. It directly owns 80% of the member interest in PQPR. It may be served at the address of its registered agent, Registered Agents Inc., at 401 Ryland St., Suite 200-A, Reno, NV 89502. PLJR is represented by counsel and may be served through counsel of record.

9.      Defendant Carol Jones is a resident of Austin, Texas. She is Alex Jones's mother and owns equity interests in JLJR and PLJR. She can be served personally at 3402 Clawson Road, Austin, Texas 78704. Carol Jones is represented by counsel and may be served through counsel of record.

10.      Defendant David Jones is a resident of Austin, Texas. He is Alex Jones's father and owns equity interests in JLJR and PLJR. He can be served personally at 3402 Clawson Road, Austin, Texas 78704. David Jones is represented by counsel and may be served through counsel of record.

11.      Defendant AEJ Austin Holdings, LLC ("AEJ") is a Texas limited liability company which owns 80% of the member interests in PLJR. It may be served at the address

of its registered agent, David Jones at 3402 Clawson Road, Austin, Texas 78704. AEJ is represented by counsel and may be served through counsel of record.

12.     Defendant AEJ 2018 Trust ("AEJ Trust") is a trust formed in Texas. Alex Jones is the sole trustee of the AEJ Trust and may be served and may be served through counsel of record.

## BACKGROUND

13.     On July 29, 2022 (the "Petition Date"), Plaintiff filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Plaintiff has continued to operate its businesses and manage its affairs as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

14.     Plaintiff is engaged in the business of producing and syndicating Alex Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, which airs on over 100 radio stations across the United States and via the internet through websites including Infowars.com.

15.     On its Infowars.com website today, FSS makes available for sale to customers assorted dietary supplements. The website also has available books, t-shirts and other products Jones advertises during his radio talk show. The vast majority of FSS revenues comes from sales of dietary supplements.

16.     FSS purchases two categories of products to sell on its website: (a) dietary supplements ("Supplements"), and (b) books, DVDs, t-shirts, and other merchandise ("Non-Supplements"). Prior to the Petition Date, FSS relied on PQPR to source Supplements as no other vendor would supply the Supplements for Jones to advertise on his shows. PQPR ordered and

paid for Supplements, which it marked up, and then sold to FSS. Jones would publicize the Supplements on his show and FSS and/or PQPR fulfilled the orders to ship to its customers.

17. As to Non-Supplements, FSS purchased the products, sold them, and fulfilled the sale through its own employees from its warehouse in Austin. Depending on whether a Supplement or Non-Supplement was sold, FSS and PQPR split the cost of the sale on a formula allegedly agreed to between FSS and PQPR. No written agreement existed between the parties prior to November 2021 establishing the allocation of sales proceeds between the parties.

18. PQPR was founded in 2013. The business began operations in September 2013.

19. PQPR is engaged in the online sale and marketing of primarily nutritional supplements which it sells under its own label as well as acquiring nutritional supplements for FSS. PQPR also advertises its products exclusively through FSS/The Alex Jones Show.

20. PQPR is managed by David Jones.

21. The current owners and their ownership interests in PQPR are as follows:

| **MEMBER OWNER** | **PERCENTAGE OWNED** |
|:---:|:---:|
| PLJR | 80.00% |
| JLJR | 20.00% |

22. David and Carol Jones indirectly own 28% of PQPR through their ownership of PLJR and JLJR. David Jones is the manager of PQPR, PLJR and JLJR and is the Trustee of the AEJ Trust. David Jones is the father of Alex Jones.

23. Through AEJ and the AEJ Trust, Alex Jones has an indirect 72% membership interest in PLJR and PQPR.

24. Alex Jones is the sole owner and managing member of FSS.

25.     As a result of the relationships of the parties to FSS and Alex Jones, PQPR, PLJR, JLJR, AEJ, the AEJ Trust and David and Carol Jones are insiders as defined at § 101(31) of the Bankruptcy Code.

26.     Prior to the Petition Date, PQPR ordered and paid for Supplements which it marked up and then sold to FSS for distribution. These products would then be sold to FSS' customers. FSS would collect payment through credit card transactions and the funds would be deposited into FSS' bank account. For several years, FSS did not remit the full balance PQPR alleged it was due for the products sold.

27.     Notwithstanding FSS's failure to pay PQPR in full, PQPR continued to purchase product and sell it through FSS sales channels thereby allowing FSS to remain in control over the proceeds from the sale of PQPR's products.

28.     In April 2018, Alex Jones and FSS were sued in a series of lawsuits alleging defamation, among other claims, based on statements Alex Jones made on air alleging that the Sandy Hook murders were a hoax (the "Defamation Cases"). The Defamation Cases included the following lawsuits:

- *Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

- *Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

- *Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, InfoWars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

- *Scarlett Lewis vs. Alex E. Jones, InfoWars, LLC, Free Speech Systems, LLC and Owen Shroyer*, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars,*

*LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division; and

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046437-S in the Superior Court of Connecticut, Waterbury Division;

29.     On or about August 13, 2020, FSS and PQPR executed a Promissory Note in the principal amount of $29,588,000.00 made payable to PQPR, ostensibly to memorialize the accrued obligations of FSS to PQPR through December 31, 2018 (the "2020 Secured Note"). The 2020 Secured Note matures on August 1, 2050, with interest due and payable annually. The 2020 Secured Note bears interest at 1.75%.

30.     The 2020 Secured Note is secured by a Security Agreement entered into as of August 13, 2020, between FSS and PQPR (the "2020 Security Agreement"). The 2020 Security Agreement provides in paragraph II that the "Collateral" securing the repayment of the 2020 Secured Note consists of all personal property owned by FSS.

31.     On November 18, 2020, PQPR filed a UCC-1 Financing Statement with the Texas Secretary of State ("2020 UCC Financing Statement").

32.     On or about November 10, 2021, FSS and PQPR entered into a second Promissory Note in the principal amount of $25,300,000.00 made payable to PQPR, which allegedly memorialized the accrued obligations of FSS to PQPR from January 1, 2019, to December 31, 2020 (the "2021 Secured Note"). Principal and interest of $1,939,644.81 was due on each anniversary of the 2021 Secured Note. The 2021 Secured Note bears interest at 1.8% and matures on November 10, 2036.

33.     The 2021 Secured Note is secured by the 2020 Security Agreement and the 2020 UCC Financing Statement.

34.     Several notable developments occurred in the Defamation Cases shortly before, and immediately after, the 2021 Secured Note for $25.3MM was executed on November 10, 2021.

- On September 27, 2021, forty-four days before the 2021 Secured Note was executed, default judgements were entered against Alex Jones and FSS in Texas Defamation Cases, largely predicated on a failure to abide by court orders and turn over documents to the plaintiffs in those cases.

- On November 15, 2021, five days after the 2021 Secured Note was executed, a default judgement was entered against Alex Jones and FSS in the Connecticut Defamation Cases, again for refusal to turn over proper financial and web analytics data, which had previously been ordered by the court.

35.     As of the Petition Date, $53,646,6876.82 of principal and $11,787.16 of interest are alleged to be owed under the two Secured Notes.

36.     Following the execution of the two Secured Notes, the pattern of business affairs remained unchanged. FSS continued to collect proceeds from the sale of PQPR inventory and failed to remit the balance alleged to be due to PQPR. According to PQPR's proof of claim filed in this Bankruptcy Case [Claim No. 11-1] the following additional indebtedness accrued from FSS to PQPR on "open account"[2];

| Open Account | |
|---|---|
| Advance to FSS | $ 121,920.27 |
| Due to PQPR | $ 23,808,367.00 |
| PQPR Reimbursement Receivable | $ (9,538,413.22) |
| Balance | $ 14,391,874.05 |

37.     The transactions between FSS and PQPR are contrary to any normal, customary, or reasonable business practices in a number or facets:

---

[2] The alleged indebtedness under the two Secured Notes, together with the "open account" debt are referred to collectively as the "PQPR Claim".

- There are no written agreements setting forth the terms and conditions of the business relationship between PQPR and FSS such as the pricing of PQPR product, the allocation of sales proceeds to FSS or, in the alternative, charges to PQPR for marketing, advertising and the allocation of overhead to PQPR.

- The alleged nature of the business relationship varied over time without any apparent business justification.

- Despite significant unpaid accruals of alleged debt to PQPR, prior to the execution of the Secured Notes, PQPR never made demand, exercised any remedies, or took any action to alter its business practices in any fashion.

- The continuation of a business relationship following FSS' continued failure to remit sales proceeds allegedly due to PQPR.

- The Secured Notes are not consistent with normal lending practices or market financial terms, including interest rates, maturity date and amortization.

Simply stated there are no indicia of an arm's length relationship between PQPR and FSS.

38.     In addition to overlapping ownership between PQPR and FSS, those entities shared common management. At all relevant times, David Jones maintained an office at FSS' leased premises. David Jones was involved in the day-to-day operations of FSS and exercised authority over important business functions at FSS. He also served as Director of Human Resources for FSS until approximately 2020. At the same time David Jones served as the managing member of PQPR and was the managing member or trustee of the other trusts and entities identified as Defendants.

39.     Until 2022, PQPR had no employees. Rather PQPR utilized FSS employees to manage PQPR's affairs. PQPR also availed itself of the use of FSS' computer systems and physical space. In addition to David Jones use of an office at FSS, PQPR warehoused its non FSS inventory at FSS leased warehouse without charge and fulfilled orders outside of FSS sales channels using FSS resources and employees.

40.     David Jones participated in decisions regarding the use of FSS cash and the allocation of FSS cash between it and PQPR.

41.     During the year prior to the Petition Date, FSS transferred payments to PQPR for payments on the Secured Notes and to repay additional advances in the total amount of $3,078,934.33. PQPR may also have received additional avoidable Transfers which may be discovered during the discovery process (collectively, the "Preference Payments"). A schedule of the known Preference Payments is attached as Exhibit A.

**42.**     Including the alleged PQPR Claim, FSS was insolvent at all times relevant to the causes of action stated in this Complaint. FSS liabilities, including the liability to PQPR exceeded the book value of its assets from at least January 1, 2018, through the Petition Date.

<u>**COUNT I**</u>
**Avoidance of Avoidable Transfers Under 11 U.S.C. § 547(b)**

43.     The Plaintiff incorporates paragraphs 1-42 as if fully realleged here.

44.     The Plaintiff made the Preference Payments to PQPR during the Preference Period.

45.     PQPR was a creditor of the Debtor within the meaning of § 101(10)(A) of the Bankruptcy Code at the time of each of the Preference Payments.

46.     The Preference Payments made by the Plaintiff were transfers of an interest of the Plaintiff in property consisting of payments totaling at least $3,078,934.33.

47.     Each Preference Payment was made to or for the benefit of PQPR, within the meaning of § 547(b)(1) of the Bankruptcy Code, because each Preference Payment either reduced or fully satisfied a debt then owed by the Plaintiff to PQPR.

48.     Each Preference Payment was made for or on account of an antecedent debt owed by the Plaintiff to PQPR before the Preference Payment was made.

49.     PQPR is an insider to the Debtor as defined at § 101(31) of the Bankruptcy Code.

50.     Each Preference Payment was made on or within one year before the Petition Date.

51.     Each Preference Payment enabled PQPR to receive more than PQPR would have if: (a) the Plaintiff's case was initiated under chapter 7 of the Bankruptcy Code; (b) the Preference Payments had not been made; and (c) PQPR had received payment of such debt to the extent provided by the Bankruptcy Code.

52.     Accordingly, the Debtor may avoid the Preference Payments under § 547 of the Bankruptcy Code.

## COUNT II
### Recovery of Fraudulent Transfers Under 11 U.S.C. §§ 544, 548(a)(1)(B) and 550

53.     The Plaintiff incorporates paragraphs 1-52 as if fully realleged here.

54.     Plaintiff made transfers or a portion thereof to or for the benefit of PQPR and incurred an obligation to PQPR (collectively the "Transfers"), including but not limited to the following:

    a.      The granting of security interests to PQPR encumbering Plaintiff's assets by the 2020 and 2021 Security Agreement;

    b.      The incurrence of an obligation to PQPR through the 2020 and 2021 Secured Notes;

    c.      Transfers of cash to PQPR allegedly in payment of obligations to PQPR; and

    d.      PQPR may also have received additional avoidable Transfers which may be discovered during the discovery process.

55.     The Transfers were made to PQPR within four years prior to the Petition Date. Necessarily, such Transfers were also made within two years prior to the Petition Date or other limitations period prescribed by the applicable state fraudulent transfer law.

56.     Upon information and belief, Plaintiff received less than reasonably equivalent value in exchange for some or all of the Transfers, because the property rights, interests, goods and/or services and obligations were in fact less in value than the Transfers.

57.     Upon information and belief, on the date of each Transfer, Plaintiff: (i) was insolvent or became insolvent as a result of such Transfer; (ii) was engaged in business or a transaction, or about to engage in business or transactions, for which any property remaining with Plaintiff was an unreasonably small capital at the time of, or as a result of the Transfers; and/or (iii) intended, at the times relevant to this Complaint, to incur, or believed that Plaintiff would incur, debts that would be beyond its ability to pay as such debts matured.

58.     Upon information and belief, at all times relevant to this Complaint, there were actual creditors of the Debtor holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code that could have avoided the Transfers under applicable state fraudulent transfer law, including but not limited to, section 548(a)(1)(B) of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. § 24.001 et seq.,

59.     Based upon the foregoing, Plaintiff is entitled to an order and judgment against PQPR: (i) avoiding the Transfers under section 544(b) of the Bankruptcy Code pursuant to applicable state fraudulent transfer law; (ii) avoiding the Transfers under section 548(a)(1)(B) of the Bankruptcy Code; and (iii) entitling Plaintiff to recover the Transfers or the value of the Transfers from PQPR under section 550(a) of the Bankruptcy Code, together with the award of

pre and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment.

## COUNT III
**Recovery of Fraudulent Transfers Under 11 U.S.C. §§ 544, 548(a)(1)(A) and 550**

60.     The Plaintiff incorporates paragraphs 1-59 as if fully realleged here.

61.     The Transfers to PQPR were (or incurred such obligation) with actual intent to hinder or delay any entity to which the Plaintiff was or became indebted on or after the date that such transfer was made or such obligation was incurred,.

62.     Based upon the foregoing, Plaintiff is entitled to an order and judgment against PQPR: (i) avoiding the Transfers under section 544(b) of the Bankruptcy Code pursuant to applicable state fraudulent transfer law, including, but not limited to Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. § 24.001 et seq.; (ii) avoiding the Transfers under section 548(a)(1)(A) of the Bankruptcy Code; and (iii) entitling Plaintiff to recover the Transfers or the value of the Transfers from PQPR under section 550(a) of the Bankruptcy Code, together with the award of pre and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment.

## COUNT IV
**Recovery of Avoidable Transfers Under 11 U.S.C. § 550**

63.     The Debtor incorporates paragraphs 1-62 as if fully realleged here.

64.     Each Defendant was either (i) the initial transferee of the Transfers; (ii) the entity for whose benefit the Transfers were made; or (iii) an immediate or mediate transferee thereof.

65.     Under § 550 of the Bankruptcy Code the Debtor may recover the Transfers, or the value of the Transfers, from PQPR or any mediate or immediate transferee upon the avoidance of the Transfers under §§ 547 or 548 of the Bankruptcy Code.

66. Accordingly, the Debtor may recover from the Transfers or the value of the Transfers from PQPR or any other Defendant who was a mediate or immediate transferee of PQPR, under § 550 of the Bankruptcy Code.

67. Based upon the foregoing, Plaintiff is entitled to an order and judgment against PQPR and any other Defendant who was the mediate or immediate transferee of PQPR to recover the Transfers or the value of the Transfers, under § 550(a) of the Bankruptcy Code, together with the award of pre and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment

## COUNT IV
### Disallowance of Claims Under 11 U.S.C. § 502(d)

68. The Debtor incorporates paragraphs 1-67 as if fully realleged here.

69. Section 502(d) of the Bankruptcy Code provides that the claim of any entity or transferee receiving a payment that is avoidable under §§ 544, 547 or 548 of the Bankruptcy Code shall be disallowed unless the entity or transferee turns over the payment or value of the payment.

70. PQPR is the transferee of the Transfers and Preference Payments (collectively the "Avoidable Transfers").

71. PQPR has, or may claim to have, a claim or claims against the Debtor's estate.

72. PQPR has neither paid nor surrendered the Avoidable Transfers or the value of the Avoidable Transfers to the Debtor.

73. The Debtor objects to any and all claims of the PQPR including, without limitation, all pre-petition and post-petition claims under § 502(d) of the Bankruptcy Code.

74. Accordingly, the Debtor is entitled to judgment against PQPR disallowing all claims of PQPR unless and until PQPR returns all amount due to the Debtor's estate, and any other

separately filed objections to such claims are resolved as provided by § 502(d) of the Bankruptcy Code.

## COUNT V
### Disallowance of Claims Under 11 U.S.C. § 502(b)

75. The Debtor incorporates paragraphs 1-74 as if fully realleged here.

76. PQPR filed its proof of claim as claim number 11 on the Court's claim register alleging a secured claim in the total amount of $68,154,691.46 (the "PQPR Claim").

77. David Jones is scheduled on the Debtor's Schedules as a creditor with an unsecured claim in the amount of $150,000 (the "Jones Claim").

78. No other Defendant has filed a proof of claim and none are scheduled by the Debtor as creditors of the Debtor's estate.

79. The PQPR Claim and the Jones Claim are unenforceable in their entirety against the Debtor and property of the Debtor, under any agreement or applicable law.

80. The Debtor is not indebted to PQPR or David Jones in any amount.

81. Accordingly, the Debtor is entitled to judgment against PQPR and David Jones disallowing all of their claims pursuant to section 502(b) of the Bankruptcy Code.

## COUNT VI
### Subordination under 11 U.S.C. § 510

82. The Debtor incorporates paragraphs 1-81 as if fully realleged here.

83. Based on the foregoing facts, and only to the extent the Court finds that PQPR or David Jones hold allowed claims, any allowed claims by PQPR and David against Plaintiff should be subordinated to the claims of other creditors and equity interest holders under 11 U.S.C. § 510(c).

84.     Without limiting the foregoing, PQPR and David Jones claims should be equitably subordinated because they engaged in inequitable conduct that resulted in an injury to the creditors of the company or conferred an unfair advantage on those Defendants, and equitable subordination of the claim is not inconsistent with the provisions of the Bankruptcy Code.

## COUNT VII
## Avoidance of Liens under 11 U.S.C. § 506(d)

85.     The Debtor incorporates paragraphs 1-84 as if fully realleged here.

86.     PQPR asserts a security interest in all of the Debtor's personal property pursuant to the 2020 Security Agreement and 2020 UCC Financing Statement to secure the PQPR Claim.

87.     To the extent that PQPR's lien secures a claim against the Debtor that is not an allowed secured claim, such lien is void.

88.     Accordingly, the Debtor is entitled to judgment against PQPR voiding their security interest in the Debtor's property pursuant to section 506(d) of the Bankruptcy Code.

## RESERVATION OF RIGHTS

89.     The Debtor reserves the right to bring any and all other causes of action it may maintain against the Defendants including, without limitation, causes of action arising out of the same transactions set forth in this Complaint, and to the extent discovery is necessary in this action or further investigation by the Debtor reveals such other causes of action.

## RELIEF REQUESTED

WHEREFORE, the Debtor respectfully requests that the Court enter judgment in its favor and against the Defendant, granting the following relief:

A.     Avoidance of the Preference Payments under § 547 of the Bankruptcy Code;

B.     Avoidance of the Transfers under §§ 544, 548(a)(1)(A), and 548(a)(1)(B) of the Bankruptcy Code;

C.      Recovery from the Defendants of an amount equal to the value of the Avoidable Transfers under § 550 of the Bankruptcy Code;

D.      Disallowance of any and all claims filed by the Defendants under § 502(d) of the Bankruptcy Code;

E.      Disallowance of any and all claims filed by the Defendants PQPR and David Jones under § 502(b) of the Bankruptcy Code;

F.      To the extent the Court determines that any Defendant holds an allowed claim against the Debtor, that such claim be subordinated under § 510 of the Bankruptcy Code;

G.      An award to the Debtor of prejudgment interest at the legally allowable rate;

H.      An award to the Debtor of costs and expenses of this suit; and

I.      Any other further relief the Court deems appropriate under the circumstances.

Respectfully submitted this July 31, 2023.

THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
66 Granburg Circle
San Antonio, Texas 78218
Telephone (210) 601-9405
Email: rbattaglialaw@outlook.com


By:  */s/  Raymond W. Battaglia*
      Raymond W. Battaglia
      Texas Bar No. 01918055

**ATTORNEYS FOR FREE SPEECH SYSTEMS, LLC**

**(Payments to Insiders)**
**Payments to PQPR**
**July 29, 2021 - July 29, 2022**

| Date | Transaction Type | Num | Name | Memo/Description | Account | Split | Amount |
|------|-----------------|-----|------|-----------------|---------|-------|--------|
| 7/26/2022 | Journal Entry | 140 | | To record principal payment on Note 2 between July 1 and July 26 2022 | 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | -Split- | -45,722.54 |
| 6/30/2022 | Journal Entry | 40 | | To record Jun 2022 Note 2 Principal Payment | 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | -Split- | -152,664.03 |
| 6/28/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 8555 4572368 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -300,000.00 |
| 6/13/2022 | Transfer | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 8555 4862320 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -150,000.00 |
| 5/31/2022 | Journal Entry | 39 | | To record May 2022 Note 2 Principal Payment | 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | -Split- | -147,207.82 |
| 5/31/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 1550 4179825 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -250,000.00 |
| 5/24/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -75,000.00 |
| 5/24/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 1550 4006193 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -200,000.00 |
| 5/23/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 1550 3766594 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -200,000.00 |
| 4/30/2022 | Journal Entry | | | | Interest Payable | | -2,622.17 |
| 4/30/2022 | Journal Entry | 38 | | To record Apr 2022 Note 2 Principal Payment | 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | -Split- | -154,835.39 |
| 4/29/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -50,000.00 |
| 4/28/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -50,000.00 |
| 4/26/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -100,000.00 |
| 4/18/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -50,000.00 |
| 4/14/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8563 TO CHK 1550 7502977 | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -75,000.00 |
| 4/1/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 1550 3118799 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -175,000.00 |
| 3/31/2022 | Journal Entry | 37 | | To record Mar 2022 Note 2 Principal Payment | 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | -Split- | -171,342.36 |
| 2/28/2022 | Journal Entry | 36 | | To record Feb 2022 Note 2 Principal Payment | 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | -Split- | -126,689.16 |
| 2/18/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -160,000.00 |
| 1/31/2022 | Journal Entry | 35 | | To record Jan 2022 Note 2 Principal Payment | 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | -Split- | -135,256.08 |
| 12/31/2021 | Journal Entry | 40 | | To record Dec 2021 Principal payment on Note 2 | 29000 Note Payable PQPR | -Split- | -170,676.17 |
| 12/31/2021 | Journal Entry | 42 | | To reverse incorrect Dec Entries | 29000 Note Payable PQPR | -Split- | 8,000.00 |
| 12/10/2021 | Journal Entry | Aur121021 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/9/2021 | Journal Entry | Aur120921 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/8/2021 | Journal Entry | Aur120821 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/7/2021 | Journal Entry | Aur120721 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |

**EXHIBIT A**

| Date | Type | Num | Name | Memo | Account | Split | Amount |
|------|------|-----|------|------|---------|-------|--------|
| 12/6/2021 | Journal Entry | Aur120621 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/3/2021 | Journal Entry | Aur120321 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/2/2021 | Journal Entry | Aur120121 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/2/2021 | Journal Entry | Aur120221 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/30/2021 | Journal Entry | 39 | | To record Nov 2021 Interest payment on Note 2 | 29000 Note Payable PQPR | -Split- | -87,102.25 |
| 11/30/2021 | Journal Entry | 39 | | To record Nov 2021 Interest payment on Note 2 | 29000 Note Payable PQPR | -Split- | -20,650.61 |
| 11/30/2021 | Journal Entry | 41 | | To reverse incorrect Nov Entries | 29000 Note Payable PQPR | -Split- | 19,000.00 |
| 11/30/2021 | Journal Entry | Aur113021 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/29/2021 | Journal Entry | Aur112921 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/26/2021 | Journal Entry | Aur112621 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/24/2021 | Journal Entry | Aur112421 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/23/2021 | Journal Entry | Aur112321 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/22/2021 | Journal Entry | Aur112221 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/19/2021 | Journal Entry | Aur111921 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/18/2021 | Journal Entry | Aur111821 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/17/2021 | Journal Entry | Aur111721 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/16/2021 | Journal Entry | Aur111621 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/15/2021 | Journal Entry | Aur111521 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/12/2021 | Journal Entry | Aur111221 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/10/2021 | Journal Entry | Aur111021 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/9/2021 | Journal Entry | Aur110921 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/8/2021 | Journal Entry | Aur110821 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/5/2021 | Journal Entry | Aur110521 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/4/2021 | Journal Entry | Aur110421 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/3/2021 | Journal Entry | Aur110321 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/2/2021 | Journal Entry | Aur110221 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 10/8/2021 | Check | WIRE | PQPR Holdings Limited, LLC | PQPR/FSS 081320 Note Payment 14 - Interest & Principle | 29000 Note Payable PQPR | 10710 SECURITY BANK OF CRAWFORD:Sec Bank of Crawford Depository | -5,825.16 |

| | | | | | | | |
|---|---|---|---|---|---|---|---:|
| 9/28/2021 | Check | WIRE | PQPR Holdings Limited, LLC | PQPR/FSS 081320 Note Payment 13 - Interest & Principle | 29000 Note Payable PQPR | 10710 SECURITY BANK OF CRAWFORD:Sec Bank of Crawford Depository | -13,654.89 |
| 9/20/2021 | Journal Entry | 33 | | | 29000 Note Payable PQPR | -Split- | -1,708.05 |
| 8/24/2021 | Check | WIRE | PQPR Holdings Limited, LLC | PQPR/FSS 081320 Note Payment 10 - Interest & Principle | 29000 Note Payable PQPR | 10710 SECURITY BANK OF CRAWFORD:Sec Bank of Crawford Depository | -6,559.05 |
| 8/11/2021 | Check | WIRE | PQPR Holdings Limited, LLC | PQPR/FSS 081320 Note Payment 9 - Interest & Principle | 29000 Note Payable PQPR | 10710 SECURITY BANK OF CRAWFORD:Sec Bank of Crawford Depository | -1,418.60 |
| | | | | | | | **(3,078,934.33)** |