**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS LLC, | ) |
| | ) Case No. 22-60043 (CML) |
| Debtor. | ) |
| | ) |
| | ) |

**EXHIBIT 9**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS LLC, | § | |
| | § | Case No. 22-60043 |
| | § | |
| Debtor. | § | |

**DEBTOR'S RESPONSE TO THE "EMERGENCY MOTION OF THE LAW OFFICES
OF RAY BATTAGLIA, PLLC, TO WITHDRAW AS COUNSEL FOR FREE SPEECH
SYSTEMS, LLC"**
[Relates to ECF #830]

Free Speech Systems LLC ("FSS"), debtor ("Debtor"), respectfully shows:

**Background**

1.      FSS employs approximately 50 personnel and has the potential to generate very

real, significant[1] value for its creditors.

2.      Unfortunately, its principal, Alex Jones, can be unreliable, and is unable to

competently manage the affairs of FSS without the assistance of an ***independent*** chief

restructuring officer.   See transcript excerpt in paragraph 21 below.   The ***independence*** of a

chief restructuring officer in this case is even more critical now than when the Court initially

appointed J. Patrick Magill.  After appointment of the chief restructuring officer, that is, Mr.

Jones became a debtor in separate chapter 11 filing, thereby taking on separate fiduciary duties

that do not always align with the interest of FSS.

3.      While Mr. Jones is undoubtedly important to both bankruptcy cases, in many

instances tensions exist where matters may benefit Mr. Jones and his estate but are detrimental

---

[1] The chapter 11 plan on file projects $35 million distribution to creditors.

1

to FSS, and  vice versa. Thus, even in the best of circumstances it would be difficult for the owner of FSS to navigate the natural conflicts that arise.  Adding pressure, on October 19, 2023, this Court ruled that over $1 billion in debt is nondischargeable in Mr. Jones personal bankruptcy case.

4.      This Court appointed J. Patrick Magill as the chief restructuring officer ("CRO") to maximize the value of FSS. This Court did so only after declining to authorize FSS's prior application to employ a different proposed CRO—one hand-selected by Alex Jones and his professionals —-and only after declining FSS's application to employ counsel who is not movant.  ECF # 182.  At the same time, however, the Court allowed, rather than declined, FSS's employment of movant, a different attorney (with an excellent reputation) originally selected by Alex Jones and his professionals. Movant, who represented Mr. Jones in certain prepetition matters (including a prior involuntary bankruptcy), is a solo practitioner so the unplanned additional responsibilities no doubt were a strain.

5.      After more than a year at the helm, the CRO has stabilized operations, increased profitability, and reduced expenses.  As a result, FSS has a clear path forward for getting its creditors paid.  In addition, the CRO-- *on his own* -- identified an inappropriate use of FSS assets by Mr. Jones that, if left unchecked, would have cost the estate a significant amount of cash.  After personally discovering it, the CRO swiftly terminated the inappropriate activity (i.e., prevented future damage), persuaded FSS's counsel to disclose it to the Court, and recaptured value for the FSS estate.[2]

6.      The CRO has also attempted in good faith to negotiate with the major constituencies in this case, including through mediation.  At a hearing in the last quarter of

---

[2] See ECF #s 539, 542 (audio), and 548.

2023, the Court announced termination of the mediation process[3] and directed FSS to file any required plan amendments to move the FSS case along.   The Debtor, through the CRO and counsel, has done so.   ECF # 756.   Plan confirmation is currently scheduled to commence March 25, 2024.   ECF # 807.

7.      The CRO takes his responsibilities to this Court with the utmost seriousness.  The Court quite rightly expects from the CRO, among other things, "***independen[ce].***"   See transcript excerpt in paragraph 21 below.  It is true that the relationship between the CRO and movant has been unusually strained. In the withdrawal motion, movant tells this Court that "the lawyer client relationship is fundamentally broken, and the trust required between client and lawyer irreparably damaged."   ECF 830 at paragraph 17.   As set forth below, for reasons different than those set forth in the motion, FSS agrees.

8.      To add perspective, there have been times when the CRO learned that movant, without informing the CRO, appeared to be disregarding the CRO's direct instructions.   See paragraph 17 below for an example.    (But there were other times.[4])   Yet with a successful reorganization within reach—***one that could yield real, significant value for FSS's creditors*** -- the CRO, on behalf of FSS, opted to look past the communication disconnects and move forward.

9.      More broadly, tension has flowed from, on the one hand, the CRO's zeal to move swiftly forward (i.e., as directed by this Court on May 19, 2023, see paragraph 21 below, to reduce costs, force all constituencies to make hard decisions driven by deadlines, and thereby

---

[3]      Of course, that does not mean that negotiations are terminated.

[4]      For instance, to the CRO's surprise, in December of 2023, against the CRO's instructions, movant traveled to New York to attend a multi-party settlement conference.

fulfill the subchapter V policy of expeditious bankruptcy case administration), and on the other

hand, the desire of the debtors' professionals (in both cases) to do things by consensus.

10.     Being bankruptcy counsel for FSS is not a desirable representation. Now movant

seeks permission to withdraw.  Now FSS has replacement counsel.  With new counsel, FSS does

not oppose.

**Responses to Controversial Allegations**

11.     **With new counsel, no opposition**. Subject to the following, FSS does not

oppose withdrawal. Debtor has engaged the law firms of O'ConnorWechsler PLLC and Harold

"Hap" May, P.C.  See ECF #s 809 and 835.    With new counsel FSS believes that withdrawal

(contemporaneous with an order approving new counsel) can be accomplished without

disruption.   Still, FSS's litigation target, PQPR—an insider who according to the statement of

affairs received millions during the 12-months immediately preceding the case,[5] who claims a

purported interest in cash, and who is currently being sued by FSS in adversary proceeding no.

23-03127 -–may disagree.   It appears that PQPR desires to weigh in on its litigation opponent's

choice of counsel.  That is, it has objected to FSS's application to employ Hap May.  See ECF #

811. It also appears that insider PQPR, without explaining why, also wants to voice its concerns

regarding "the status of debtor's management."  See the request for status conference at ECF #

828.

12.     **Violation of confidentiality rules**. Texas Rule of Professional Conduct requires

that an attorney keep confidential his client's "confidential information."   Under the rule

"confidential information" includes "unprivileged client information," defined as "all

information relating to a client or furnished by the client, other than privileged information,

---

[5]     ECF # 22 at PACER page 22.

acquired by the lawyer during the course of or by reason of the representation of the client[.]"

Tex. Disciplinary R. Prof'l Conduct 1.05 (underscoring added). [6]

13.     Some of the allegations included in the withdrawal motion, filed February 29, 2024, appear to violate a Texas attorney's obligation of confidentiality.  See paragraphs 17 and 21 below.     Making public the private communication between counsel and a chapter 11 debtor, among other serious consequences, potentially aids those whose interests are adverse to the interests of the debtor and its  creditors.   Left unaddressed, the inappropriate allegations might leave the Court with a material misunderstanding of events, and might weaken the Court's confidence in management.   This response, therefore, is to address those allegations, and to provide the Court with crucial (omitted) context.    Unfortunately, a response requires further (otherwise inappropriate) discussion of confidential matters.    For that reason, this response is filed under seal.

14.     **<u>Movant advised that he does not answer to the CRO</u>**.     The CRO's engagement letter approved by this Court (as modified by the employment order) provides that the CRO shall (i) "assist in managing the day to day operations and business [of] FSS" (ii) "assist FSS with managing due diligence requests and other items that may be requested by various constituents as part of the restructuring process" (iii) "prepare cash flow forecasts and related financial and business models", (iv) "***hire and terminate professionals***", (v) "assist FSS in obtaining credit as needed", (vi) "prepare Amended Statements of Financial Affairs and Schedules as needed,"  (vii) "prepare monthly operating reports, and other similar regular chapter 11 administrative, financial, and accounting reports required by the United State Bankruptcy Court," (viii) "review inventory marketability and provide monetization alternatives

---

[6]     "Rule 1.05 extends ethical protection generally to unprivileged information relating to the client or furnished by the client during the course of or by reason of the representation of the client." *Id.* comment 4.

as deemed appropriate," (ix) "*make operational decisions*, with consultation of current ownership, directed to maximizing the value of FSS," (x) "supervise the banking relationships, cash management and the budgeting process of FSS and *act as a primary signatory and authority on all bank accounts, with full rights to add or remove any signatory authority*," (xi) "supervise management, employees, and other personnel or FSS," (xii) "*hire and terminate personnel of FSS,*" (xiii) "*develop and implement restructuring plan*, *including* plans contemplating restructuring of debts, sales of assets, divestitures, *liquidations*, or disposition of assets of FSS," (xiv) "*formulate all strategic direction* and alternatives of FSS," (xv) "implement cost containment measures," (xvi) "*negotiate with creditors*, prospective purchasers, equity holders, equity committees, official committee of unsecured creditors, and all other parties in interest," (xvii) "*make business decisions on behalf of FSS* as necessary or required, utilizing CRO's business judgment in aid of the restructuring," and (xviii) "execute all documents and take all *other actions necessary to effectuate restructuring of FSS*, including in the Bankruptcy Case, in consultation with current ownership." ECF # 205 and 239.

15.     With that context, in a recent heated moment, movant advised the CRO that he does **not** take his instructions from the CRO -- the clear implication being that movants takes instructions from FSS membership, i.e.,  from his former client, Mr. Jones[7] (and/or his professionals).

16.     In the motion to withdraw, at paragraph 8, movant writes that "the order [employing the CRO] imposed certain limits on the authority of the CRO at the request of the United States Trustee." ECF 830.  Thus, it appears that, according to movant, the input of Mr. Jones (and/or his professionals)  outweighs contrary instructions of the CRO.     The CRO

---

[7]     That prior representation is disclosed at See ECF # 84-2 at p. 4, ¶10.

disagrees and finds this unacceptable. [8]   Given these events, FSS urges that swift substituting in of new counsel is the right course.[9]

17.     **<u>Authority to negotiate the Jones administrative claim.</u>** The withdrawal motion complains that the CRO advised movant that he has "[…]no authority to 'negotiate on behalf of FSS, including a decision to extend a deadline.'" ECF# 830 at paragraph 9.   Setting aside the breach of confidentiality, as framed, the excerpt is badly misleading.   What prompted this particular comment by the CRO was a continuing disconnect between the CRO's instructions and movant's actions; that is, the CRO instructed that any portion of Mr. Jones' (large) administrative claim[10] based upon a dubious prepetition employment agreement purportedly between FSS and Mr. Jones was <u>not</u> acceptable, and <u>not</u> to be negotiated. Movant, however, continued over multiple months to negotiate just that, without the CRO's consent.

18.     More broadly, the CRO's overarching concern has been for speed.   FSS is a subchapter V debtor.  Subchapter V bankruptcy cases are intended to move swiftly. FSS filed its original subchapter V plan on March 7, 2023.  ECF # 502.  By contrast, Mr. Jones' separate chapter 11 plan was not filed *until nine months later*. [11]   During that time frame, there was no parallel course between the cases. And, during that time frame, the CRO had (and still has) compelling reasons to avoid delay.  One, every single dollar that does not go to a professional goes to FSS's creditors.   Getting the case administered sooner rather than later reduces the professional fee burn. Two, the effect of the continued passage of time is that (i) the pressure on

---

[8]     In hindsight, movant's comment probably explains prior friction between the CRO and movant earlier in the case.

[9]     It is not FSS's goal to impugn movant.  Rather, the point of this response to is give the Court much needed context surrounding inappropriately disclosed (and out of context) communications between a client and its counsel.

[10]     ECF # 659.

[11]     December 15, 2023.

Mr. Jones to demand more money  from FSS (to get professional fees paid) mounts, (ii) the pressure on Mr. Jones to, through counsel, threaten to quit FSS mounts, and (iii) correspondingly, the bargaining position of parties who gain from the dissention (e.g., PQPR, the entity controlled by Jones-family and who asserts an interest in FSS cash and who received millions pre-petition) grows.

19. **Negotiations with the Sandy Hook plaintiffs**.   At paragraph 10 of the motion, very regrettably, movant leaves the Court with the misimpression that the CRO is somehow refusing to negotiate with the Sandy Hook plaintiffs.  First, the opposite is true.   The CRO, an *independent* officer appointed by this Court, intends to fulfill his role as the individual with the authority to "negotiate with creditors," see (xvi) of paragraph 14 herein, and to "take all other actions necessary to effectuate restructuring of FSS," see (xviii) of paragraph 14 herein.   With new counsel, the CRO, the individual with authority, shall be far more directly involved.  The CRO is determined not to let movant's mistake of publicly erring (truncated and misleading) confidential client communication impede FSS's attempts to find common ground (if reasonably possible) with the Sandy Hook plaintiffs.

20. Second, more to the point, as explained above at paragraph 17, the truncated quote was in response to the CRO's discovery of  movant's ongoing negotiations of an administrative claim contrary to the instructions of the CRO.

21. **The "ill-advised" litigation**.   Movant is not the CRO.  At paragraphs 11 and 17, movant describes what he calls "ill-advised" litigation that the CRO directed him to prosecute. For crucial context, last summer, the Court again made it clear that the bankruptcy case should progress.

THE COURT: What about claims against PQPR? Not just

the allowance with a claim, but –

 MR. BATTAGLIA: It's -- the plan proposes to allow another -- an independent party to evaluate and prosecute those claims.

THE COURT: ***But isn't Mr. McGill independent***?

MR. BATTAGLIA: Judge, from the outset, the perspective that I've had in this case is whatever the debtor does is suspect. And that's not a -- I'm not casting aspersions on me or Mr. McGill.

THE COURT: No, I know that. But at some point, the debtor -- I mean**, *if Mr. McGill's decided to come in and be the CRO, then he's going to have to be the CRO, and he's going to have to take positions*** and –

MR. BATTAGLIA: If the court thinks that –

THE COURT: I'm not telling him what to do. I just think that, you know, that this is a case where anything I do, anything that the debtor does, is going to be viewed one way or the other. We just -- ***everybody still has to do their job***. And I've tried to do mine to the best of my ability, and I think everyone's got to take positions. So I agree with you. It won't shock anyone, ***I do think the case needs to progress***. And so let me hear from other parties. I'm going to share some thoughts, but I -- let me just say, I share your sentiment that, at some point, I think the debtor has got to put something on the table. And ***either there's agreement or  not agreement, and I'll make decisions one way or the other.*** But if you all have formed a position and you think there needs to be a claim filed or an objection filed or something, ***then file it***, ***and I'll take it up*** and decide it based on the facts and the law as I've always done. …

Tr. 5/19/2023, pp 11:25-13:1 (emphasis added).  The CRO is attempting to do his job, without fear, favor, or non-management interference. In those instances that the parties cannot reach consensus, this Court will "make decisions one way or the other." *Id.*

22.   **Unpaid fees**.   The motion describes unpaid fees for invoices for work performed in December 2023 and January 2024. The motion to withdraw was filed February 29, 2024. The fees are, or shortly will be, paid.   The balance of this response is submitted pursuant to B.L.R. 9013-1(g)(1).

9

**Admissions & Denials**

23.     Debtor admits the allegations in the following paragraphs: 1-6, 7 (not including the last sentence), 8 (first sentence only), the first sentence of 9 (except that as to whether the relationship was constructive Debtor (i) denies that the relationship has always been constructive, and (ii) further denies for lack of knowledge the alleged constructive relationship in view of the apparent authority controversy discussed above),  the second sentence of 9, the first sentence of 10 (a key objective, not *the* key objective),  11 (except that the allegation that pursuit of the claim is not in the best interest of the estate is denied - see also the discussion above of pursuit of litigation and decision-making authority), the first and second sentence of 12 (except other attorneys have not been paid), the first sentence of 13,  14 (except that the email was to the CFO), 15 (except to clarify, Hap May and his accounting firm have already been hired as tax advisers, not as attorneys – Hap May and his separate law firm are the subject of the pending application) and 16 (except that Debtor strenuously denies pursuit of anything repugnant or imprudent).

24.     Debtor denies the allegations in the following paragraphs: 8 (second sentence only, and except that Debtor admits that the U.S. Trustee negotiated language into the order – see above discussion of the apparent controversy regarding the CRO's authority), the third sentence of 9 (as set forth above, the partial quote leaves out key context and is in that respect, is misleading), the fourth sentence of 9 (except that Debtor concedes that is an accurate partial quote),  the third sentence of 10 (except that Debtor admits that the Sandy Hook plaintiffs have appeared only through counsel – principals of other parties have negotiated—also, see discussion), 12 (last sentence),  the last sentence of 13 (the order authorizes payment, it does not order payment by a particular date), and 17 (except (i) for the removal of doubt, Debtor does not

oppose withdrawal in a manner that complies with the Rules of Professional Conduct, and (ii) generally, non-payment can be cause for withdrawal).

25.     Debtor lacks sufficient personal knowledge to admit or deny the allegations in the following paragraphs:  7 (last sentence only, except that Debtor admits that representation has lasted 17 months), 10 (second sentence only), 18 ((i) prejudice depends on the circumstances and timing of the withdrawal, (ii) Debtor denies that there are no adversary proceedings pending, and (iii) Debtor admits that Hap May participated in drafting the Trust Distribution Procedures and that they are an important part of the plan, and (iv) Debtor denies that Hap May has knowledge of "operations" however).  As such, the allegations are denied.

26.     Allegations not addressed above are denied.

### Prayer

FSS prays that the Court contemporaneously (i) enter orders approving FSS's application to employ Hap May, P.C. and O'ConnorWechsler PLLC, and (ii) enter an order granting the motion to withdraw at ECF # 830.

Respectfully submitted,

O'CONNORWECHSLER PLLC
By: */s/ Annie Catmull*
Annie E. Catmull
State Bar No. 00794932
aecatmull@o-w-law.com
Kathleen A. O'Connor
State Bar. No. 00793468
4400 Post Oak Plaza, Suite 2360
Houston, Texas 77027
Telephone: (281) 814-5977

PROPOSED  COUNSEL  FOR  FREE  SPEECH SOLUTIONS, LLC

11

**Certificate of Conference**

I certify that on March 1, 2024, I conferred with movant and we are negotiating the terms of an agreed withdrawal order.

*/s/ Annie Catmull*
Annie E. Catmull

**Certificate of Service**

I certify that on March 5, 2024, all parties who have made an electronic appearance were served a copy of the attached FSS response through the Court's ECF notification system.

*/s/ Annie Catmull*
Annie E. Catmull