**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 (Subchapter V) |
| | ) |
| FREE SPEECH SYSTEMS LLC, | ) Case No. 22-60043 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

**RESPONSE OF THE CONNECTICUT**
**FAMILIES TO THE COUNSEL RETENTION PLEADINGS**

The Connecticut Families,[1] the largest creditors in the above-captioned chapter 11 case (this "Chapter 11 Case") holding more than $1.4 billion in claims, submit the following response (this "Response") to *Debtor's Amended Emergency Application for Entry of an Order Authorizing the Debtor to Retain and Employ Harold "Hap" May, PC as Co-Counsel* [Docket No. 809] (the "May Retention Application"), the *Emergency Motion of the Law Offices of Ray Battaglia, PLLC, to Withdraw as Counsel for Free Speech Systems, LLC* [Docket No. 830] (the "Withdrawal Motion"), and the *Debtor's Emergency Application for Entry of an Order (I) Authorizing the Debtors to Retain and Employ O'ConnorWeschler, PLLC as Bankruptcy Counsel and (II) Granting Related Relief* [Docket No. 835] (the "O'ConnorWeschler Retention Application," and together with the May Retention Application and the Withdrawal Motion, the "Counsel Retention Pleadings").

---

[1]     The "Connecticut Families" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.

The Connecticut Families file this Response to (i) express concern about the apparent dysfunction in the case implied by the Counsel Retention Pleadings, (ii) object to the Counsel Retention Pleadings, solely to the extent they will impose higher and unnecessary costs on the Debtor's estate, and (iii) to clarify certain statements in the Counsel Retention Pleadings.

**RESPONSE**

**I.    FSS's Dysfunction Should Have Been Disclosed to this Court and Creditors Months Ago.**

1.    The Connecticut Families are alarmed by the recent developments in this Chapter 11 Case.  The plethora of recent pleadings reveal a level of dysfunction and poor communication among FSS's key professionals that appears to have been ongoing for more than six months without notice to the Court or FSS's creditors.  The lack of notice is especially troubling because it is FSS's creditors—the Sandy Hook Families—that will bear the financial burden of this dysfunction.  While the Connecticut Plaintiffs have no desire to make heads or tails of the finger-pointing in the Counsel Retention Pleadings, the situation is concerning to any stakeholder relying on the Debtor and its professionals to be fiduciary stewards of the estate.

2.    The Withdrawal Motion alleges that Patrick McGill (the "<u>CRO</u>") prohibited Ray Battaglia, FSS's retained counsel ("<u>FSS Counsel</u>"), from engaging in negotiations with the Sandy Hook Families.   Withdrawal Mot. ¶ 10 ("The CRO's instructions not to engage in negotiations is contrary to the duties of debtor's counsel in a chapter11 [sic] case.").  While the Debtor's Response suggests that this needs "context," it does not seriously dispute that the CRO instructed FSS Counsel not to attend settlement discussions with the Sandy Hook Families.  *Debtor's Response to the*

*Emergency Motion of the Law Offices of Ray Battaglia, PLLC, to Withdraw as Counsel for Free Speech Systems, LLC* [Docket No. 836] (the "Debtor's Response").  And while the Debtor's Response suggests that the CRO has been engaged in settlement negotiations with the Sandy Hook Families, the Connecticut Families are not aware of any negotiations with the CRO having taken place before the filing of the Debtor's Response.

3.     The Withdrawal Motion also alleges that the CRO has refused to communicate with FSS Counsel or advise FSS Counsel on key developments in the case. *See, e.g.*, Withdrawal Mot. ¶ 14 ("[FSS Counsel] sent the CRO an email advising that [FSS Counsel] would file [the Withdrawal Motion] . . . the CRO has . . . [not] responded to [FSS Counsel]'s email."); ¶ 15 (alleging that the FSS Counsel was "never contacted" regarding the May Retention Application or the proposed division of labor between the firms).  The Debtor admits these allegations.  *See* Debtor's Resp. ¶ 23.  This lack of communication demonstrates a fundamental breakdown of process that is inconsistent with the duties of an estate fiduciary.

4.     Likewise, the Debtor's Response implies that FSS Counsel was not independent, particularly with respect to the Debtor's sole shareholder, Alex Jones.  *See, e.g.*, Debtor's Resp. ¶ 14 n.7.  The Connecticut Families are particularly concerned that the Debtor and its CRO have never raised this serious concern to the Sandy Hook Families until this week.  If the Debtor harbored such concerns—which the Debtor's Response suggests surfaced as early as summer 2023 in connection with Mr. Jones' asserted administrative claims against FSS—the Debtor should have raised these concerns with this Court and FSS's creditors months ago.  In the face of such concerns,

refusing to pay FSS Counsel until FSS Counsel was forced to withdraw was inadequate, especially now that FSS has agreed it will pay FSS Counsel in full.

5.      The Connecticut Families are bewildered by the various finger-pointing that underlies the current dispute.  But more importantly, they are concerned about the pattern of dysfunction revealed by the pleadings and the fact that none of these events were brought to the creditors' or the Court's attention in advance of FSS Counsel filing its Withdrawal Motion, mere weeks before the confirmation hearing was scheduled in this Chapter 11 Case.

## II.   Replacing FSS Counsel at this Stage Will Impose Increased Costs on FSS Creditors.

6.      The Debtor's proposed solution to this general dysfunction is to replace one law firm with almost two years of experience in this Chapter 11 Case with two law firms with limited or no experience in this case whatsoever.  This switch—especially in the midst of upcoming plan confirmation deadlines—will undoubtably cause additional expenses to the estate.  Although the Debtor makes general assertions that replacing counsel can be done efficiently, the Debtor's Response fails to provide any reassurance that this change of counsel will not cause additional expense or delay plan confirmation.  Nor could it—the notion that two new law firms could get up to speed immediately, and without additional cost, on a case that has been in bankruptcy for almost two years is unrealistic.   Indeed, this "transition" has already caused delay in this case:   the Connecticut Families have waited over a week—and are still waiting—for the Debtor's response to a scheduling order to align FSS plan confirmation with the recently revised schedule for the Jones Chapter 11 Case.  The risk of delay and additional expense alone warrants this Court declining the Counsel Retention Pleadings.  *See*, *e.g.*, *Broughten* v.

*Voss*, 634 F.2d 880, 882 (5th Cir. Jan. 1981) ("Even when good cause exists, the Court must 'assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel.'"); *Keyes* v. *Wells Fargo Bank, N.A.*, 2020 WL 10963960, at *1 (N.D. Tex. May 1, 2020) ("[c]hief among" the factors courts consider in granting a motion to withdraw as counsel are "undue delay in the proceedings, prejudice to the client, and the interests of justice.").

7.      Moreover, the need for two law firms is unexplained.  Originally, the May Retention Application was filed to provide "additional assistance" to FSS Counsel—a solo practitioner—in prosecuting plan confirmation.    May Retention Appl.  ¶ 7. Subsequently, the O'ConnerWechsler Retention Application was filed.   Given that O'ConnerWeschsler, a firm with multiple capable attorneys, seeks to replace FSS Counsel, retaining yet another firm—Mr. May's firm—as co-counsel is unnecessary and unjustified.  Compounding these issues, not one of the Counsel Retention Pleadings suggests that any discount is being provided by any of these three law firms to account for the significant costs the transition will undoubtedly bring—again, leaving creditors to bear the full burden of this dysfunction.  As the Debtor's Response points out, "every single dollar that does not go to a professional goes to FSS's creditors."   Debtor's Resp. ¶ 18.

8.      The Connecticut Families want the Debtor to have independent and competent counsel and will not second guess the Debtor's decisions to retain counsel of its choosing.  They object to the Counsel Retention Pleadings solely to the extent that they impose unnecessary costs on the Debtor's estate.  If the Debtor believes that FSS Counsel acted under a conflict of interest or refused to follow the CRO's valid

instructions, then it should object to the FSS Counsel's fee applications.  Likewise, having now filed the O'ConnerWechsler Retention Application, the Debtor should reconsider the need for the May Retention Application, or provide a justification for why two firms with multiple attorneys is necessary to replace one single-practitioner.

**III.     The Connecticut Plaintiffs Remain Concerned by the Lack of Any Progress in the PQPR Adversary.**

9.     The ten page Debtor's Response discusses the CRO's "independence" at least seven distinct times, while implying in various places that FSS Counsel is not similarly independent given a purported relationship with Alex Jones.  *See* Debtor's Resp. ¶¶ 1, 5, 7, 16, 19, 21.  To buttress this, the Debtor's Response suggests that the Debtor is aggressively pursuing claims against PQPR—its "litigation target"—an entity majority owned by Alex Jones but purportedly controlled and managed by David Jones. Debtor's Resp. ¶ 11.

10.     The Connecticut Families hope that, if the Counsel Retention Pleadings are granted, FSS and its new counsel will take seriously its obligation to pursue claims against PQPR.  But, as this Court is aware, FSS (presumably with the CRO's knowledge) refused to bring an action against PQPR, even after the Subchapter V Trustee's Report concluded that such action was meritorious.  *See Subchapter V Trustee's Initial Findings of Free Speech Systems, LLC Investigation* [Docket No. 549] at 21 ("The Trustee believes that the PQPR Debt should not retain secured status or payment priority senior or pari passu with creditors of FSS.").  Only after the Connecticut Families pushed for action and this Court, at a hearing on May 19, 2023, encouraged the Debtor to "take a position," did the Debtor take any action.  *See* May 19, 2023 Hr'g Tr. 12:20.  Since filing its Complaint and initiating an adversary proceeding against PQPR (the "PQPR

Adversary"), the Debtor, presumably under the CRO's direction, has taken no action in the PQPR Adversary of which the Connecticut Families are aware, other than to object to the Sandy Hook Families' request to intervene in the adversary proceeding.

11.     After this Court granted their intervention motion, the Sandy Hook Families contacted PQPR and the Debtor to inquire about the status and next steps with respect to the PQPR Adversary.  FSS and PQPR substantively ignored this—and several follow up—emails, other than to inform the Sandy Hook Families that no action had been taken in the PQPR Adversary, not even a Rule 26(f) conference.  To the knowledge of the Connecticut Families, no material action has been taken in the PQPR Adversary since a Complaint was first filed on July 14, 2023.

12.     Now, with confirmation fast approaching, various parties, including PQPR, have suggested that the PQPR Adversary should be settled.[2]  The Connecticut Families have recently informed counsel to FSS, the Subchapter V Trustee, Jones, and PQPR that they will not support a settlement of a litigation that had not been pursued in any meaningful way by the Debtor (or pursued, if at all, without notice to or consultation with, the intervenors).  It is against this backdrop that the Connecticut Families view the Debtor's recent emphasis on "independence" and the purported animosity—after more than six months of failing to advance the PQPR Adversary—between the Debtor and PQPR.   To be clear:  the Debtor must do more than merely file a complaint, hit "pause" for six months, and proclaim itself "independent," if it seeks to settle substantial claims against an insider like PQPR with the support of the Connecticut Families.

---

[2]      *See PQPR Holdings Limited, LLC's Response and Objection to Emergency Motion of the Law Offices of Ray Battaglia, PLLC, to Withdraw as Counsel for Free Speech Systems, LLC* [Docket No. 846] (the "PQPR Motion").

13.     The Connecticut Families truly hope that, if the Counsel Retention Pleadings are granted, FSS's new counsel will actively and zealously pursue such claims against PQPR in coordination with the intervenors in the PQPR Adversary.   This includes, at a minimum, obtaining full discovery from PQPR.

Dated: March 8, 2024

Respectfully submitted,

**CAIN & SKARNULIS PLLC**
By: */s/ Ryan E. Chapple*
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone:  (512) 477-5000
Fax:  (512) 477-5011
E-mail:  rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone:  (203) 336-4421
E-mail:  asterling@koskoff.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Paul Paterson (admitted *pro hac vice*)
Stephanie P. Lascano (admitted *pro hac vice*)
Vida Robinson (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Fax:  (212) 757-3990
E-mail:  kkimpler@paulweiss.com
E-mail:  ppaterson@paulweiss.com
E-mail:  slascano@paulweiss.com
E-mail:  virobinson@paulweiss.com

*Co-Counsel to the Connecticut Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response of the Connecticut Families to the Counsel Retention Pleadings has been served on counsel for Debtors, Debtors, and all parties receiving or entitled to notice through CM/ECF on this 8th day of March 2024.

*/s/ Ryan E. Chapple*
Ryan E. Chapple