UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Case No. 22--60043 |
| | § | |
| DEBTOR. | § | (Subchapter V Debtor) |
| | § | Chapter 11 |

**LAW OFFICES OF RAY BATTAGLIA, PLLC'S FOURTH INTERIM AND FINAL FEE APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM JULY 29, 2022, THROUGH MARCH 11, 2024[1]**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

---

[1] The Court entered its *Agreed Order Granting Emergency Motion of The Law Offices of Ray Battaglia, PLLC, to Withdraw as Counsel for Free Speech Systems, LLC* on March 11, 2024. Applicant continued to provide services to the estate following March 11, 2024, to protect the interests of the Debtor an insure a smooth transition to new counsel.

**SUMMARY**

| | | |
|---|---|---|
| Name of applicant: | | Law Offices of Ray Battaglia, PLLC |
| Applicant's professional role in case: | | Attorney for Debtor |
| Indicate whether this is an interim or final application: | | Fourth Interim and Final |
| Date order of employment was signed: | | September 20, 2022 |
| | Beginning of Period | Ending of Period |
| Total period covered in application | July 29, 2022 | March 11, 2023 |
| Time periods covered by any prior applications: | | |
| Third Interim [ECF #778] | July 1, 2023 | November 30, 2023 |
| Second Interim [ECF #676] | March 1, 2023 | June 30, 2023 |
| First Interim [ECF #523] | July 29, 2022 | February 28, 2023 |
| Total amounts awarded in all prior applications | | $679,693.60 |
| Amount of retainer received in the case | | $77,235[2] |
| Total fees applied for in this application and in all prior applications (include any retainer amounts applied or to be applied) | | $802,218.98 |
| Total professional fees requested in this application | | $118,935.10 |
| Total professional hours covered by this application | | 192.6 |
| Average hourly rate for professionals during this application[3] | | $617.53 |
| Total paraprofessional hours covered by this application | | 0.0 |
| Average hourly rate for paraprofessionals | | N/A |
| Reimbursable expenses sought in this application | | $3,500.28 |
| Total amount to be paid to Priority Unsecured Creditors | | TBD |
| Anticipated % Dividend to Priority Unsecured Creditors | | TBD |
| Total to be paid to General Unsecured Creditors | | TBD |
| Anticipated % Dividend to General Unsecured Creditors | | TBD |
| Date of confirmation hearing | | TBD |

---

[2] Applicant received a prepetition retainer for its prepetition and post petition services rendered and expenses incurred on behalf of the Debtor. After reconciliation of the amount of the prepetition drawdown and payment, the balance of the retainer amount is $77,235.00 (the "Retainer") on the Petition Date.

[3] Applicant's average hourly rate for the Application Period was $560.

| Indicate whether the plan has been confirmed | No |
|---|---|

**TO THE HONORABLE CHRISTOPHER LOPEZ, UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW the Law Offices of Ray Battaglia, PLLC (the "Applicant") and files this Fourth Interim and Final Fee Application (the "Application") for final approval of Applicant's fees in the total amount of $778,212.21 and reimbursement of all expenses totaling $24,006.77 incurred during its employment as counsel to Free Speech Systems, LLC (the "Debtor") from July 29, 2022, through March 11, 2024, and for transition services rendered thereafter (the "Application Period"). In support of this Application, the Applicant respectfully states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference from the United States District Court for the Southern District of Texas. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief sought herein is 11 U.S.C. §§ 330 and 331, Federal Rule of Bankruptcy Procedure 2016(a), and the Local Rules of this Court.

### RETENTION OF APPLICANT AND PRIOR COMPENSATION

3. On July 29, 2022 (the "Petition Date"), Free Speech Systems, LLC (the "Debtor" or "FSS") commenced a case by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code (the "Case") with the Court.

4. On August 20, 2022, the Debtor filed its *Application to Employ the Law Offices of Ray Battaglia, PLLC as Bankruptcy Co-counsel Effective as of July 29. 2022* [ECF #84]. On September 20.2022, this Court approved the retention of Applicant as co-counsel for the Debtor (the "Retention Order") [ECF #180].

5. On September 30, 2022, the Court entered its *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* ("Interim Compensation Order") [ECF # 202] permitting Applicant to receive payment of 80% of fees and 100% of expenses. Throughout Applicant's engagement, Applicant has submitted monthly invoices, followed by interim fee applications.

6. Applicant has filed three interim fee applications as set out below. Each of those interim fee applications was granted without objection.

| | PERIOD | FEES REQUESTED | EXPENSES REQUESTED | TOTAL | AMOUNT AWARDED & PAID | BALANCE DUE |
|---|---|---|---|---|---|---|
| First Interim Fee Application | July 29, 2022 - February 28, 2023 | $ 263,986.61 | $ 2,965.56 | $ 266,952.17 | $ 266,952.17 | $ - |
| Second Interim Fee Application | March 1, 2023 - June 30, 2023 | $ 163,990.00 | $ 4,961.66 | $ 168,951.66 | $ 168,951.66 | $ - |
| Third Interim Fee Application | July 1, 2023 - November 30, 2023 | $ 231,300.50 | $ 12,579.27 | $ 243,879.77 | $ 243,879.77 | $ - |
| Fourth and Final Fee Application | December 1, 2023 - March 11, 2024 | $ 118,935.10 | $ 3,500.28 | $ 122,435.38 | $ 41,309.11 | $ 81,126.27 |
| TOTAL: | | $ 778,212.21 | $ 24,006.77 | $802,218.98 | $ 721,092.71 | $ 81,126.27 |

7. Applicant has submitted monthly fee statements for the period following its Third Interim Fee Application [ECF #778] and has received payments on some of those monthly fee statements as set forth below:

| Invoice Period | Invoice Number | Fees | Expenses | Invoice Total | Amount Paid | Remaining Balance |
|---|---|---|---|---|---|---|
| Dec-23 | 1090 | $ 17,810.00 | $ - | $ 17,810.00 | $ 14,248.00 | $ 3,562.00 |
| Jan-24 | 1096 | $ 32,937.60 | $ 711.03 | $ 33,648.63 | $ 27,061.11 | $ 6,587.52 |
| Feb-24 | 1112 | $ 43,562.50 | $ 201.00 | $ 43,763.50 | $ - | $ 43,763.50 |
| Mar-24 | 1119 | $ 24,625.00 | $ 2,588.25 | $ 27,213.25 | $ - | $ 27,213.25 |
| TOTALS: | | $ 118,935.10 | $ 3,500.28 | $ 122,435.38 | $ 41,309.11 | $ 81,126.27 |

8. This is Applicant's combined Fourth Interim and Final Fee application. This Application seeks approval and allowance of fees and expenses incurred during the entire Application Period and allowance and payment of fees and expenses incurred during the period from December 1, 2023, through March 11, 2024, and thereafter in connection with transition services (the "Final Period").

9. All of the services were rendered, and expenses incurred during Applicant's representation of the Debtor in this case. Applicant believes such fees and expenses were reasonable, necessary, and appropriate, given the circumstances.

10. Applicant reserves the right to request additional compensation for the Application Period to the extent that it is later determined that time or disbursement charges for services rendered, or disbursements incurred during such time period have not yet been submitted.

## NATURE AND EXTENT OF LEGAL SERVICES PROVIDED

11. Applicant has provided extensive legal services to the Debtor during the twenty (20) months comprising the Application Period. Attached to this Application are records of the time keeping entries during the Application Period generated by Applicant's personnel who have worked on this engagement (the "<u>Invoices</u>").[4] These entries provide detailed descriptions of Applicant's services on the Debtor's behalf during the Application Period.

12. The Invoices also specify each attorney who provided compensable services during the Interim Period. Specifically, the Invoice identifies the person providing the service, as well as the following: (1) that person's individual billing rate and (2) the total number of hours expended by that person.

13. Applicant has broken down its legal services rendered according to the project categories propounded by the Guidelines of the Office of the United States Trustee. The pertinent project categories are:

- Asset Analysis and Recovery
- Asset Disposition
- Assumption and Rejection of Leases and Contracts
- Avoidance Action Analysis

---

[4] See **Exhibit A**.

- Business Operations
- Case Administration
- Claims Administration and Objections
- Employment and Fee Applications
- Fee/Employment Objections
- Financing and Cash Collateral
- Litigation
- Meetings and Communications with Creditors
- Non-working Travel
- Plan of Reorganization

14. The figures for the time and amounts billed per project category cover the Final Period. The following chart generally describes the services rendered by Applicant to the Debtor in each of the relevant project categories, with more additional detail provided by in ***Exhibit A***:

| FEES INCURRED IN FINAL PERIOD | | |
|---|---|---|
| **CATEGORY OF SERVICE** | **HOURS** | **FEES** |
| Asset Analysis and Recovery | 5.1 | $3,052.50 |
| Business Operations | 16.1 | $9,872.50 |
| Case Administration | 19.4 | $12,040.00 |
| Claims Administration and Objections | 5.6 | $3,500.00 |
| Employment and Fee Applications Objections | 5.7 | $3,187.50 |
| Employment and Fee Applications | 30.8 | $18,945.00 |
| Financing and Cash Collateral | 5.3 | $3,187.50 |
| Meetings and Communications with Creditors | 38.9 | $24,197.50 |
| Plan of Reorganization | 23.5 | $14,522.50 |
| Litigation | 34.2 | $21,090.50 |
| Non-working Travel[5] | 8 | $5,000.00 |
| **Totals** | 192.6 | 118,935.10 |

---

[5] Billed at one-half time.

**FOURTH INTERIM AND FINAL FEE APPLICATION**    **PAGE 6 OF 18**

**REQUEST FOR REIMBURSEMENT OF EXPENSES INCURRED**

15. While providing legal services to the Debtor, Applicant incurred certain reasonable and necessary out-of-pocket expenses while representing the Debtor. A detailed record of these expenses is included in the Invoices. Expenses were billed at actual cost. Applicant does not charge for long distance telephone, outgoing faxes, and in-house charges for copying and postage. Outside copies ($.15 per page) and postage are billed at the rate charged by the vendor. Applicant has made no request for general overhead expenses.

16. Applicant's post-petition expenses are separated into relevant categories as set forth in the table below, with additional detail set forth in *Exhibit A*. The expenses incurred during the Final Period are broken out from the total expenses incurred during the Application Period.

| EXPENSE CATEGORY | INCURRED DURING THE FINAL PERIOD | TOTAL EXPENSES INCURRED DURING THE APPLICATION PERIOD |
|---|---|---|
| Court Fees | | $ 1,050.00 |
| Outside printing and mailing | | $ 1,458.08 |
| Records Search – Texas Secretary of State | | $ 15.00 |
| Travel - Airfare | $ 1,301.92 | $ 8,303.45 |
| Travel - Hotel | | $ 1,347.88 |
| Travel - Mileage | | $ 3,192.26 |
| Travel - Parking | $ 201.00 | $ 263.00 |
| Travel - Taxi | $ 116.16 | $ 910.67 |
| Document Production Software License | $ 1,881.20 | $ 7,466.43 |
| **TOTAL:** | **$ 3,500.28** | **$ 24,006.77** |

17. Applicant believes that the expense request is reasonable, appropriate, and necessary and requests that the Court grant it reimbursement for $3,500.28 in reimbursable expenses incurred by Applicant on the Debtor's behalf during the Final Period and approve all expenses incurred during the Application Period in the amount of $24,006.77.

**FACTORS AFFECTING COMPENSATION**

18. Courts recognize that factors other than the number of hours spent and the hourly rate

normally charged may be considered in fixing the amount of reasonable attorneys' fees to be awarded in a bankruptcy proceeding. Such factors are set forth in *In re First Colonial Corporation of America*, 544 F.2d 1291 (5th Cir. 1977) and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). One or more of these *Johnson* factors may serve as a basis for enhancing the hourly rate which might otherwise be allowed. *Wolf v. Frank,* 555 F.2d 1213 (5th Cir. 1987). The *Johnson* factors are discussed in further detail below.

A. **Time and Labor Required**. *Exhibit A* lists in detail all the work performed for which compensation is sought. Time entries include project categories, the date the services were rendered, the individual performing such services, a description of the services, and the time expended are all detailed. Applicant believes that such detail establishes that its request for compensation is reasonable. All the services specified were actual and necessary for the Debtor to perform its statutory duties.

B. **Novelty and Difficulty.** As set forth in greater detail in *Exhibit A*, this case has involved a number of challenging legal and operational issues. This Case involved a subchapter V filing which is somewhat novel in that the case law surrounding such cases is not fully developed. The Debtor faced operational issues throughout the case. The Debtor has been de-banked and de-platformed. The Debtor lacked access to credit markets and required creative measures to purchase inventory and process credit card receipts. The Sandy Hook Litigation presented unique issues and hurdles to overcome to preserve the Debtor's operations and develop a path towards reorganization.

C. **Skill Required to Perform the Legal Services Properly**. Bankruptcy is a specialized area of federal practice, requiring knowledge of the Bankruptcy Code and other related state and federal statutes and precedent. It also requires a working knowledge of a number of other areas of complicated legal issues, many of which were on an expedited basis and required a substantial

amount of skill. The Court is familiar with the extensive and often emergency hearings held in this case. The nature of the claims involved in this case, the relationship between this case and the Alex Jones chapter 11 case and the filing of this case as a case under subchapter V of the Code have all presented unique problems and issues.

    **D.** **Preclusion of Other Employment**. Applicant is a solo practitioner. Accordingly, representation in this case has limited Applicant's firm's ability to accept other employment. Representation of this Debtor has required a significant amount of Applicant's capacity (1400 hours of billable time) over the twenty (20) months the case has been pending. Moreover, due to the frequency of hearings and the demands of creditors for documents and information, Applicant has declined other representations in order to ensure capacity to appear on short notice.

    **E.** **Customary Fee**. The hourly rates for each professional are summarized above and in *Exhibit A* filed in support of this Application. The rates for bankruptcy attorneys reflect the usual rates charged by the Applicant. The hourly rates requested by Applicant compare favorably with average costs for similar legal services provided by law firms representing debtors in chapter 11 cases involving the level of sophistication required in this case. Applicant's hourly rates are significantly lower than the hourly rates charged by other professionals who have appeared in this case.

    **F.** **Whether the Fee is Fixed or Contingent**. Applicant's fee is neither fixed nor contingent, other than the contingency of court-allowance and available assets to pay professionals. Applicant's fee is based upon the actual total number of hours worked plus the actual costs incurred.

    **G.** **Amount Involved and Results Obtained**. *Exhibit A* details Applicant's work during the Application Period. The dates such services were rendered, the individual performing such services, descriptions of the services and the time expended are all detailed. Applicant believes that

such information establishes that its requested compensation is reasonable. As a result of Applicant's efforts during the Application Period, the Debtor has maintained its standing as a small business debtor, stabilized and upgraded its operations maintained open communications with creditors and other stakeholders and filed its plan of reorganization.

       **H.**       **Experience, Reputation, and Ability of the Attorneys**. Mr. Battaglia has regularly appeared in significant representations over many years, including bankruptcy cases throughout Texas and the United States and has confirmed more than 35 chapter 11 plans, reorganizing over $1.5 billion in claims. Mr. Battaglia has 41 years' experience focusing on bankruptcy matters and has a positive reputation in the business and legal community. He is Board Certified in Business Bankruptcy Law for over 35 years. He is recognized among the best lawyers in Texas by Best Lawyers and by Texas Monthly.

       **I.**       **"Undesirability" of Case**. Representation of the Debtor in this chapter 11 case was undesirable. The Debtor's principal is a controversial figure and the subject of public ire. Further, given the contentious nature of the Sandy Hook Litigation and the underlying claims, even matters that should be easily agreed are fiercely contested. Upon disqualification of proposed co-counsel, Applicant was unable to locate a firm willing to undertake representation of the Debtor and has been obligated to continue to represent the Debtor without assistance and against the opposition of a number of AmLaw 100 law firms.

       19.       **Awards in Similar Cases**. Based on Applicant's experience in the Texas legal market and throughout the country, Applicant's fees are lower than the fees allowed in proceedings of similar scope for the services rendered and results obtained. Other bankruptcy practitioners involved in cases of comparable size and complexity regularly charge hourly rates ranging from $600 to over $1500 per hour. Applicant's approved hourly rate during the Application Period,

which has ranged from $500 to $625 per hour in this case and has averaged $560 per hour. Applicant's hourly rate is meaningfully lower than the lowest rate in that range charged by debtor's counsel in comparable cases. Based upon the services described and the results obtained, the fees requested in this Application are fair and reasonable.

## RESULTS OBTAINED

20.     Pursuant to the U.S. Trustee's Guidelines, Applicant classified all services performed for which compensation is sought into categories. Applicant attempted to divide the services it rendered the Debtors in this bankruptcy case into appropriate categories. However, because certain services may relate to more than a single category, services pertaining to one category may be included in another category.  The following is a summary, by category, of the most significant professional services provided by Applicant during the Application Period.

   a.     **Asset Analysis and Recovery** – During the Application Period, Applicant spent 72 hours and approximately $42,600 in professional fees investigating and analyzing assets of the estate and assisting in recovering assets.  A significant amount of time spent in this category related to the disputed claims to proceeds from the sale of Platinum supplement products between the Debtor and Elevated Solutions Group and a related dispute between those parties and CSC relating to marketing and product sales agreements.  Applicant ultimately resolved the Platinum products dispute unlocking the distribution of funds to all of those parties and the resumption of certain product sales to the benefit of the Debtor.  Additional efforts related to sorting out ownership of assets between the Jones estate and the Debtor's estate, including but not limited to cryptocurrency, selling excess assets of the estate and participating in discovery by other stakeholders regarding property of the estate.

   b.     **Assumption and Rejection of Leases and Contract** – During the Application

Period, Applicant spent 24 hours and approximately $13,200 in professional fees in connection with administration of executory contracts. Applicant analyzed the Debtors commercial property leases, credit card processing agreements, payroll agreements and other executory contracts. Applicant sought and obtained extensions of the time to assume or reject certain of those contracts and obtained court approval of the rejection of the Debtor's warehouse lease and credit card processing and payroll agreements and assumption of the lease of the Debtor's business premises.

      c.    **Avoidance Action Analysis** - During the Application Period, Applicant spent 12.2 hours and approximately $7,000 in professional fees in connection with analyzing and pursuing avoidance actions. Specifically, Applicant analyzed recovery of a sanctions award paid shortly before the petition date and made demand for the return of those funds. Addition services were provided in connection with the evaluation of claims against PQPR and related entities which are included in the litigation category.

      d.    **Business Operations** – During the Application Period, Applicant spent 193 hours and approximately $120,500 in professional fees in connection with the Debtor's business operations. Services rendered in this category during the Application Period cover a broad range of activities from responding to internal and external daily operating and personnel issues, monitoring financial performance of the business, consulting and negotiating product acquisition and fulfillment contracts, and managing banking relationships. Applicant expended a substantial amount of time negotiating business arrangements between the Debtor and the Jones bankruptcy estate to expand the product lines available to the Debtor resulting in additional revenue sources. Applicant also spent significant time negotiating and drafting an employment agreement with Jones. The Debtor took significant measures to modify the manner it conducts business. Applicant has assisted the Debtor in evaluating existing and prospective business opportunities and has negotiated with counterparties

regarding inventory purchasing, marketing contracts, and credit card processing, among others. Applicant has assisted the Debtor in a wide range of business matters including employment agreements, vendor relationships and contracts, and intellectual property matters.

e. **Case Administration** – During the Application Period, Applicant spent 79 hours and approximately $43,800 in professional fees in connection with various case administration matters and tasks necessary to the Debtor's compliance with its obligations under the Bankruptcy Code and Rules, orders of the Court and requirements of the U.S. Trustee's Office. Applicant guided the Debtor through the administrative aspects of a bankruptcy case. Applicant represented the Debtor in connection with drafting, filing and prosecuting "First Day" motions. Applicant assisted the Debtor in preparation of its Schedules and SOFA's and compliance with the Debtor's obligation to the U.S. Trustee and the Subchapter V Trustee. Applicant reviewed and commented on each MOR prior to filing and is the conduit with Court personnel and the U.S. Trustee's Office. Applicant assisted the Debtor in the preparation of Amended Schedules and SOFA's. Applicant managed and administered this chapter 11 case as sole counsel for the Debtor for 20 months.

f. **Claims Administration and Objections** - During the Application Period, Applicant spent 24 hours and approximately $14,100 in professional fees in attending to claims filed against the Debtor. Applicant analyzed the secured claims filed by Auriam and Ally Bank, administrative and priority claims of various taxing authorities and communicated with creditors to discuss same. The majority of the time spent on this category related to the administrative claim filed by the Alex Jones bankruptcy estate, including negotiations with various stakeholders regarding that claim, discovery related to that claim and ultimately drafting and filing an objection to that claim. The Jones estate ultimately withdrew the administrative claim prior to a hearing.

g. **Fee/Employment Applications and Objections** – During the Application Period,

Applicant spent 115 hours and approximately $65,000 in professional fees in in connection with applications to employ professionals for the estate, including co-counsel, special litigation counsel, and chief restructuring officers. Applicant assisted in negotiating the terms of retention of professionals and prepared and prosecuted applications for retention of those professionals. In certain instances, Applicant participated in litigating the retention of professionals in the face of opposition. Applicant obtained approval of an interim compensation process and Applicant managed the relationships with the special counsel and assisted in processing their compensation in conformity with existing rules and orders governing this case. Applicant also reviewed the fee statements of case professionals retained by other parties. Applicant services in this category include time spent in connection with approval and payment of Applicant's fees through monthly interim compensation and filing of three interim fee applications as well as preparation and filing of this Application. Finally, Applicant filed and prosecuted its motion to withdraw as counsel for the Debtor.

h. **Financing and Cash Collateral** - During the Application Period, Applicant spent 100 hours and approximately $53,700 in professional fees in connection with the Debtor's use of cash collateral. Initially, Applicant prepared and filed a motion seeking authority to use cash collateral and subsequently filed pleadings to modify the terms of the order authorizing use of cash collateral. Applicant defended the right to use cash collateral over strenuous objections of the Sandy Hook Plaintiffs and succeeded in obtaining interim authority to use cash collateral. Thereafter, Applicant succeeded in obtaining seventeen interim orders renewing the interim authority to use cash collateral. Applicant assisted the Debtor's management in the preparation of monthly cash collateral budgets, consulted with stakeholders regarding those budgets and prepared and drafted appropriate notices and orders allowing the use of cash collateral. As the result of

these services, the Debtor was able to obtain use of cash collateral on an interim basis, continuing through seventeenth interim cash collateral order and thereafter on a modified notice process required by the Court.

    i.    **Meetings and Communications with Creditors** – During the Application Period, Applicant spent 161 hours and approximately $90,000 in professional fees in meeting with and communicating with various stakeholders in this case. Applicant maintained open lines of communication with all stakeholders. Applicant has communicated on a regular basis with the U.S. Trustee's office, the Subchapter V Trustee, as well as counsel for PQPR, Alex Jones and counsel for the Sandy Hook Plaintiffs.

    j.    **Litigation** – The single largest component of Applicants' fees relates to services provided in this category. During the Application Period, Applicant spent 338 hours and approximately $190,400 in professional fees in litigation related matters. The overwhelming majority of the time spent in this category related to analyzing and responding to discovery requests made by various parties, including the Subchapter V trustee, the Jones UCC, the Sandy Hook Plaintiffs and the US Trustee. Applicant reviewed numerous document production requests, lodged informal objections to most of those requests and negotiated with the propounding party to refine and limit the scope of the request.

Notwithstanding agreements limiting the scope of discovery, Applicant obtained, reviewed and produced over 35,000 pages of documents to one or more of the requesting parties. Applicant reviewed over 3TB of data from the Debtor's email server in order to respond to document production requests lodged by the Jones UCC. Applicant also attended numerous 2004 examinations in the Jones chapter 11 bankruptcy related in part to the assets and operations of the Debtor.

Applicant reviewed and analyzed litigation claims against various parties, most significantly against PQPR.  Applicant sought and obtained removal of a TUFTA lawsuit filed by the Sandy Hook Plaintiffs against PQPR and negotiated an abatement of those proceedings.  Ultimately, Applicant drafted and filed an adversary proceeding against PQPR and related parties alleging avoidance actions, among other claims.  Applicant engaged in informal information and document exchanges with PQPR and the Subchapter V trustee in an effort to streamline litigation and engage in a mediation of those claims for the benefit of the Debtor's estate.

Applicant participated with the Debtor in mediation of the claims of the Sandy Hook Plaintiffs and their treatment with Judge Isgur serving as mediator.

Applicant negotiated the terms of a settlement of claims of disqualified estate professionals and sought and obtained court approval of that settlement over the objections of the U.S. Trustee and the Sandy Hook Plaintiffs.

Applicant defeated a motion brought by the Sandy Hook Plaintiffs to revoke the Debtor's subchapter V designation.

    k.    **Plan**– During the Application Period, Applicant spent 133 hours and approximately $77,000 in professional fees in connection with drafting and filing a Plan of Reorganization and an Amended Plan of Reorganization. Applicant worked with the Debtor's management and other professionals to draft the Plan and Amended Plan together with (i) projections of the Debtor's performance over the plan period, (ii) a Trust Agreement to accompany the Plan and (iii) detailed Trust Distribution Procedures.  Applicant also drafted solicitation materials such as ballots and notices and solicited votes in connection with Plan confirmation.  Applicant negotiated with counsel for stakeholders regarding terms of the Plan,  amended the Plan of Reorganization, updated and revised the plan projections and related financial reporting.

  **l.** **Relief from Stay** - During the Application Period, Applicant spent 53 hours and approximately $27,800 in professional fees in connection with lift stay proceedings. During the pendency of the case, four motions for relief from stay were filed. Applicant responded to each motion and negotiated settlements of each motion. Two of the motions were prosecuted by Sandy Hook Plaintiff's in connection with pending state court lawsuits. Applicant negotiated the resolutions and assisted in drafting pleadings to obtain court approval of those settlements.

  **m.** **Transition Services** – Subsequent to the entry of the Order allowing Applicant to withdraw as counsel for the Debtor, Applicant has rendered services vital to the transition to Debtor's new counsel. Applicant's services in this category were rendered primarily in response to requests from Debtor's counsel. Applicant spent 4.6 hours and approximately $2,800 in services for the benefit of the Debtor and its estate in connection with the transition to new counsel.

## CONCLUSION

21. At all times covered by this Application, Applicant diligently fulfilled its duty as counsel for the Debtor. All services rendered by Applicant benefited the estate at the time that such services were rendered. Services performed by Applicant throughout this case were done in a professional, skilled, and expeditious manner. The services and expenses incurred were necessary and the amounts charged are reasonable.

22. Pursuant to this Application, Applicant seeks approval on a final basis of compensation in the total sum of $802,218.98 consisting of (i) fees in the amount of $778,212.21 and (ii) reimbursement of expenses in the total sum of $24,006.77 during the Application Period from July 29, 2022, through March 11, 2024, and for transition services provided thereafter. Applicant requests that such fees and expenses be allowed as an administrative claim under 11 U.S.C. §503(b)(2).

## PRAYER

WITSEFORE, Applicant respectfully prays that the Court enter an order (i) approving this Final Application; (ii) allowing, on a final basis, the reasonable attorney fees and expenses claimed herein as allowed administrative expenses of the Debtor's estate under 11 U.S.C. §503(b)(2); (iii) authorizing Applicant to apply the balance in its retainer account to the unpaid balance of the amounts awarded, and (iv) directing the Debtor to remit the remaining unpaid balance of approved amounts to Applicant; and (iv) granting such other and further relief to which Applicant is justly entitled.

Respectfully submitted April 29, 2024.

THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
66 Granburg Circle
San Antonio, Texas 78218
Telephone (210) 601-9405
Email: rbattaglialaw@outlook.com

By: */s/ Raymond W. Battaglia*
Raymond W. Battaglia
Texas Bar No. 01918055

**FORMER ATTORNEYS FOR FREE SPEECH SYSTEMS, LLC.**

## CERTIFICATE OF SERVICE

On April 29, 2024, a true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, as set forth below.

*/s/ Raymond W. Battaglia*