## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) ) ) Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS, LLC, | ) ) ) Case No. 22-60043 (CML) |
| Debtor. | ) ) ) ) |

## EMERGENCY MOTION OF THE CONNECTICUT FAMILIES
## FOR AN ORDER PURSUANT TO BANKRUPTCY CODE
## SECTIONS 105(a) AND 1112(b) CONVERTING THE DEBTOR'S
## CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

> **Emergency relief has been requested. Relief is requested by not later than 10:00 a.m. (prevailing Central Time) on June 14, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez." Click the settings icon in the upper right corner and enter your number under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

The Connecticut Families,[1] as creditors and parties in interest in the above-captioned case (the "FSS Case") proceeding under subchapter V of chapter 11 of the Bankruptcy Code (as defined below), respectfully state as follows in support of this motion (the "Motion"):[2]

## RELIEF REQUESTED

1.      By this Motion, the Connecticut Families seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) authorizing and approving the conversion of the FSS Case to a case under chapter 7 of the Bankruptcy Code and (b) granting related relief.

## PRELIMINARY STATEMENT

2.      FSS has now lingered in bankruptcy for almost two years.  At this time, FSS has no prospect of a confirmable plan of reorganization, and has failed to demonstrate any hope of beginning to satisfy the Connecticut Families' claims.  As the Court has made clear, it is time for the FSS Case to come to a conclusion—the relevant question at this juncture is ***how*** it should come to a conclusion.  At the hearing held on May 21, 2024 (the "May 21 Hearing"), the Court indicated that the FSS Case "is either going to get dismissed or confirmed" at the hearing scheduled for June 14, 2024, although parties would have "the opportunity to try to convince [the Court] otherwise." May 21, 2024 Hrg Tr. at 12:23–13:1.  The Connecticut Families respectfully submit that conversion of the FSS Case to a chapter 7 case is most appropriate under the circumstances. Section 1112(b) of the Bankruptcy Code provides that, upon a finding of cause, the Court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter,

---

[1]     The "Connecticut Families" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, and Robert Parker.

[2]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the *Debtor's First Amended Plan of Reorganization Under Subchapter V of the Bankruptcy Code* [Docket No. 756] (as amended, modified, or supplemented from time to time, the "FSS Plan").

*whichever is in the best interests of creditors and the estate*."  11 U.S.C. § 1112(b) (emphasis

added).  The Connecticut Families firmly believe the interests of the estate and all creditors would

be best served by conversion, as opposed to dismissal, of the FSS Case in light of the unique

circumstances.  Jones's public statements over the past 48 hours—which expressed his belief that

this Court will "wash[] his hands like Pontius Pilate" of the case, and thereby enable Jones to

regain control of FSS and frustrate creditor claims, even if it requires physically blockading FSS's

offices—only reinforce the significant need for conversion.

3.      As set forth herein, there is ample support and precedent for converting a

subchapter V case to a case under chapter 7 of the Bankruptcy Code where there is "cause."

Indeed, the provisions of the Bankruptcy Code allowing for conversion or dismissal of a regular-

way chapter 11 case apply with equal force to a case proceeding under subchapter V.  Here, cause

readily exists.  FSS has suffered substantial and continuing loss during the course of the FSS Case,

with no likelihood of rehabilitation—total cash on hand and receivables have decreased by *over*

*50%* since the Petition Date, all while FSS has incurred *nearly $2.3 million* in professional fees

since the commencement of the FSS Case.  FSS's failure to effectuate substantial consummation

of a confirmed plan constitutes independent grounds for "cause" to convert the case—two years

have passed and FSS has failed to propose any viable plan of reorganization, much less one with

creditor support.

4.      Accordingly, the appropriate inquiry is whether conversion or dismissal is in the

best interests of the estate and FSS's creditors.  The Connecticut Families believe that there are

substantial, critical benefits to creditors upon conversion.  *First*, appointment of a chapter 7 trustee

would safeguard the Debtor's assets for the benefit of creditors and allow an orderly winddown

process which, in light of Jones's recent statements, is more critical than ever.  *Second*, a chapter

7 liquidation would allow a trustee to pursue approximately $4 million in potential preference claims that have already been identified by the Debtor. *Third*, conversion would promote the Bankruptcy Code's core tenet of equal distributions to similarly situated creditors, and avoid the "race to the courthouse" that would inevitably occur following dismissal. *Fourth*, dismissal would likely be followed by a chapter 7 filing and, as such, would merely delay FSS's inevitable liquidation. *Finally*, dismissal would materially prejudice the rights and potential recoveries of the Connecticut Families to pursue important, value-maximizing claims such as fraudulent transfer claims.

5.      The Connecticut Families' concerns about a potential dismissal of the FSS Case have only been amplified by Jones's very recent, public statements on his June 1 "Emergency Broadcast" episode.  Jones made several false and offensive statements about FSS's own chief restructuring officer (the "CRO") and other critical players in the FSS Case, and declared that Jones will, upon dismissal, resume full control of FSS and employ whatever means necessary to do so.  Jones made clear that he will not "play along" with others' plans after he takes "control" back of FSS, and even threatened to blockade the FSS offices in the event its operations are threatened.  Jones's statements are concerning for a number of reasons, but most notably, they undermine the ability of a trustee to carry out any liquidation of Jones's estate that involves his divestiture from FSS, as well as creditors' ability to exercise their state law rights to enforce their claims.  Jones's threats to undermine this Court's orders should not be condoned.

6.      The Connecticut Families firmly believe that a supervised liquidation is critical at this time, and will bring the FSS Case to a much-needed conclusion in a manner that will allow creditors to realize immediate recovery.  The Connecticut Families respectfully request that the Court convert the FSS Case to a case under chapter 7 of the Bankruptcy Code.

## JURISDICTION

7.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Connecticut Families confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory bases for the relief requested herein are sections 105(a) and 1112(b) of the title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

9.      In May 2018, the Connecticut Families brought an action in Connecticut state court against, among others, Free Speech Systems LLC (the "Debtor" or "FSS") and Alexander E. Jones ("Jones"), alleging defamation, intentional infliction of emotional distress, invasion of privacy, and civil conspiracy.  They obtained judgments exceeding $1.4 billion against the Debtor, Jones, and certain other defendants in the consolidated litigation captioned *Lafferty* v. *Jones*, No. UWY-CV18-6046436-S, Docket No. 1044 (Conn. Super. Ct. Dec. 22, 2022).

10.     Also in 2019, the Texas Families[3] (together with the Connecticut Families, the "Sandy Hook Families") brought actions in Texas state court against the Debtor and Jones.[4]

---

[3]     The "Texas Families" are Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine.

[4]     *See Heslin* v. *Jones*, Case No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas; *Lewis* v. *Jones*, Case No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas; *Pozner* v. *Jones*, Case

Certain of the Texas Families obtained judgments against the Debtor and Jones in the amount of $50,043,653.80.  *See Heslin* v. *Jones*, Case No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas.  Additional lawsuits filed by the other Texas Families remain stayed as a result of the FSS Case and the Jones Case (as defined below).

11.     On July 29, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The FSS Case is proceeding under subchapter V of chapter 11 of the Bankruptcy Code, and a subchapter V trustee (the "Subchapter V Trustee") was appointed pursuant to section 1183 of the Bankruptcy Code in the FSS Case on August 8, 2022.  *Notice of Appointment of Subchapter V Trustee* [Docket No. 22].

12.     On December 2, 2022, Jones also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case is pending as Case No. 22-33553 (CML) before the Court (the "Jones Case").

13.     On March 10, 2023, the Connecticut Families and the Texas Families each filed adversary complaints in the FSS Case and the Jones Case to confirm the nondischargeability of the judgments and awards entered in the underlying Connecticut and Texas state court proceedings, respectively.[5]

14.     On April 13, 2023, the Court entered a stipulation and agreed order abating the FSS adversary proceedings until the earlier of fourteen (14) days after the Fifth Circuit Court of Appeals

---

No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; *Fontaine* v. *Jones*, Case No. D-1-GN-18-001605, in the 459th District Court for Travis County, Texas.

[5]     *See Complaint to Determine Dischargeability of Debt*, *Heslin v. Jones*, Adv. Pro. No. 23-03035-CML, dated March 10, 2023 [Docket No. 1]; *Adversary Complaint Seeking Judgment that Sandy Hook Judgment is Non-Dischargeable Under Bankruptcy Code § 523(a)*, *Wheeler v. Jones*, No. 23-03037-CML, dated March 10, 2023 [Docket No. 1]; *Complaint to Determine Dischargeability of Debt*, *Heslin v. Jones*, Adv. Pro. No. 23-03034-CML, dated March 10, 2023 [Docket No. 1]; *Adversary Complaint Seeking Judgment that Sandy Hook Judgment is Non-Dischargeable Under Bankruptcy Code § 523(a)*, *Wheeler v. Jones*, No. 23-03036-CML, dated March 10, 2023 [Docket No. 1].

issued a decision in, or declined to hear, the appeal certified on February 2, 2023 in *Avion Funding, LLC v. GFS Industries, LLC*, Case No. 223-90009. *Stipulation and Agreed Order Abating FSS Adversary Proceedings* [Adv. Pro. No. 23-03036, Docket No. 40]. Following the issuance of a decision in *Avion Funding*, the Court entered a stipulation and agreed order on May 2, 2024, which extended the Debtor's deadline to answer the pending adversary complaints through and to June 28, 2024. *Stipulation & Agreed Order* [Adv. Pro. No. 23-03036, Docket No. 62].

15.    On October 19, 2023, the Court confirmed that the vast majority of the Sandy Hook Families' Claims—approximately $1.115 billion of the Connecticut Families' claims and $4.3 million of the Texas Families claims—were nondischargeable pursuant to section 523(a)(6) of the Bankruptcy Code in the Jones Case.[6]

16.    On November 18, 2023, the Debtor filed the FSS Plan.

17.    On March 26, 2024, the Court entered an order appointing Judge Edward L. Morris to serve as mediator and directing certain parties to participate in an in-person mediation session. *Order Appointing Mediator* [Docket No. 878]. As a final attempt to reach a global consensus around the terms of a plan of reorganization, the Connecticut Families participated in good faith in a two-day mediation session in Fort Worth, Texas commencing on April 17, 2024. Unfortunately, the mediation session concluded without a consensus, and on April 22, 2024, the Court formally terminated the mediation.

18.    Following the conclusion of the Court-ordered mediation, the Debtor and the Connecticut Families, together with other parties in interest, continued to work in good faith to determine whether an alternative plan of reorganization would be feasible and value-maximizing.

---

[6]    *See Memorandum Decision on Texas Plaintiffs' Motion for Summary Judgment Against Jones*, dated October 19, 2023 [Adv. Pro. No. 23-03035, Docket No. 46]; *Memorandum Decision on Connecticut Plaintiffs' Motion for Summary Judgment Against Jones*, dated October 19, 2023 [Adv. Pro. No. 23-03037, Docket No. 76].

Despite their best efforts, the Connecticut Families ultimately determined that a consensual plan of reorganization was not viable.

19.     At the May 21 Hearing, the Court made certain statements regarding the path forward in the FSS Case, including that the FSS Case would either "get dismissed or confirmed" at a hearing on June 14, 2024, but that parties would have an opportunity to make arguments with respect to whether the FSS Case should be converted.   May 21, 2024 Hrg Tr. at 12:20–13:3.

20.     On June 1, 2024—ten days after the May 21 Hearing—Jones released an "Alex Jones Emergency Broadcast." *Breaking: Deep State Attempted to Shut Down Infowars Headquarters Last Night,* June 2, 2024, https://www.infowars.com/posts/breaking-deep-state-attempted-to-shut-down-infowars-headquarters-last-night/ (the "June 1 Episode").   On the June 1 Episode, Jones discussed the Court's statements at the May 21 Hearing, stating "so, the judge says a week and a half ago, no I'm not going to liquidate and shut down Infowars, I'm going to kick it out of bankruptcy and give it back to Alex Jones. . .  He washes his hands like Pontius Pilate."  June 1 Episode at 20:30.   Jones repeatedly stated that he would resume control of FSS, in place of the CRO.  *See, e.g.*, June 1 Episode at 22:50.

21.     On the June 1 Episode, Jones also plays lengthy recordings of conversations with the CRO.  He follows these with threatening statements that "if people want to get into a fight with me, then they better believe they got one . . . I will not sit there and play along with this bullshit," and that "you bit off a lot more than you can chew."  June 1 Episode at 3:55.  Jones makes other false and offensive comments regarding the CRO on the June 1 Episode, and inaccurately describes the contents of filings that have been made under seal with this Court.  June 1 Episode at 19:00.

22.     On that same day, Jones also released a different "Emergency Broadcast."  *Is This Infowars' Last Broadcast? Patriots Rally Behind Alex Jones and Crew,* June 2, 2024,

https://www.infowars.com/posts/is-this-infowars-last-broadcast-patriots-rally-behind-alex-jones-and-crew/ (the "June 1 Bannon Episode").  In discussions with Steve Bannon, Jones asks "they could literally lock this up in the next few days.  What is your advice to Infowars and our crew?"  Bannon responds "let's get people down there and surround the building.  Make them come through a chain of patriots."  Jones says "That's what I'm going to do . . . we need to surround the building and just make a big issue of this and expose this."  June 1 Bannon Episode at 1:56:25.

23.     On June 2, 2024, the Subchapter V Trustee filed the *Third Status Report of the Subchapter V Trustee* [Docket No. 923] (the "Subchapter V Trustee Report"), which document was filed under seal.  Upon request of the Connecticut Families to see the Subchapter V Trustee Report, the Connecticut Families were told that the report is only being shared with the Office of the United States Trustee in advance of the hearing scheduled for June 3, 2024.  As of the filing of this Motion, the Connecticut Families have not seen the Subchapter V Trustee Report.

**BASIS FOR RELIEF**

**I.      Cause Exists to Convert the FSS Case to Chapter 7**

24.     Section 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances, a court should convert or dismiss a bankruptcy case "for cause."  Section 1112(b) of the Bankruptcy Code, provides, in pertinent part:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). Under section 1112(b), conversion or dismissal is *mandatory* upon a finding of "cause."  *See* 11 U.S.C. § 1112(b)(1); *DCNC North Carolina I, LLC* v. *Wachovia Bank, N.A.*, Case No. 09-3775, 09-3776, 2009 WL 3209728, *6 (E.D. Pa. Oct. 5, 2009; *see also In re*

*The Reserves Resort, Spa & Country Club LLC*, No. 12-13316 (KG), 2013 WL 3523289, *2 (Bankr. D. Del. July 12, 2013).   Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of factors that constitute "cause" for conversion.   11 U.S.C. § 1112(b)(4)(A)-(P).   *See In re Gateway Access Solutions*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'") (quoting *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)).[7]   The Fifth Circuit requires courts, in evaluating cause, to examine the totality of the circumstances.   *See Matter of Little Creek Dev. Co.*, 779 F.2d at 1072-74.

25.       "The party seeking dismissal or conversion bears the burden of proving cause by a preponderance of the evidence."   *In re TMT Procurement Corp.*, 534 B.R. 912, 918 (Bankr. S.D. Tex. 2015).   If cause is found, the burden then shifts to the objector to identify "unusual circumstances" establishing that converting or dismissing the case is not in the best interests of creditors and the estate.   11 U.S.C. § 1112(b)(2).

26.       Here, at least two separate and independent grounds exist under section 1112(b)(4) and mandate conversion or dismissal of the FSS Case.   Specifically, there is (i) both a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, and (ii) an inability to effectuate substantial consummation of a confirmed plan.   11 U.S.C. § 1112(b)(4)(A) and (M).

---

[7]    In *In re TCR of Denver*, the court recognized the apparent typographical error in § 1112(b)(4) of the Bankruptcy Code.   The sixteen illustrative examples of "cause" set forth in that section are linked by the word "and" after subsection (O).   Accordingly, strict construction of the statute would require that a debtor establish all of the items constituting "cause" before a case can be dismissed by the court.   The TCR court held that Congress could not have intended to require a "perfect storm" of all sixteen circumstances listed before a case be converted or dismissed.   *See In re TCR of Denver*, 338 B.R. at 498.

**A.  Cause Exists To Convert the FSS Case under Section 1112(b)(4)(A)**

27.    Cause may be found where a party-in-interest shows that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).  *See, e.g.*, *In re Citi-Toledo Partner*s, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) ("Section 1112(b)(1) contemplates a 'two-fold' inquiry into whether there has been a 'continuing diminution of the estate and absence of a reasonable likelihood of rehabilitation.'") (citing *In re Photo Promotion Associates, Inc.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985)).  The purpose of this ground for cause is "to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation."  *In re TMT Procurement Corp.*, 534 B.R. at 918 (quoting *Loop Corp.* v. *United States Trustee*, 379 F.3d 511, 516 (8th Cir. 2004)).  In other words, a debtor should not be required to maintain control of its business and estate beyond the point at which reorganization is no longer realistic.  *See In re The AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003).

28.    To satisfy the first prong of section 1112(b)(4)(A), a loss may be substantial or continuing—it need not be both.  *See In re Ford Steel, LLC*, 629 B.R. 871, 879 (Bankr. S.D. Tex. 2021) (citing *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013)).  If the loss is sufficiently large given the financial circumstances of the debtor as to materially negatively impact the bankruptcy estate and interest of creditors, the loss is substantial.  *In re Ozcelebi*, 639 B.R. 365, 384 (Bankr. S.D. Tex. 2022).  Cause can be shown by demonstrating that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the order for relief.  *In re TMT Procurement Corp.*, 534 B.R. at 918.  Negative cash flow alone can be sufficient cause to dismiss or convert.  *Id.*

29.    With respect to the second prong, courts have consistently understood "rehabilitation" to refer to a debtor's ability to restore the viability of its business.  *Loop Corp.*,

379 F.3d at 516 (citing *In re Gonic Realty Trust*, 909 F.2d 624, 627 (1st Cir. 1990)); *In re The Ledges Apartments*, 58 B.R. 84, 87 (Bankr. D. Vt. 1986); *In re Wright Air Lines, Inc.*, 51 B.R. 96, 100 (Bankr. N.D. Ohio 1985)).  A court should consider whether the debtor's continuing losses can be corrected and whether the debtor or another party in interest is capable of performing the necessary remediation to re-establish debtor's business.  *In re Ford Steel, LLC*, 629 B.R. 871, 880 (Bankr. S.D. Tex. 2021).  Rehabilitation does not equate to reorganization, but rather "signifies something more, with it being described as to put back in good condition; re-establish on a firm, sound basis."  *In re TMT Procurement Corp.*, 534 B.R. at 920 (internal quotations omitted).  The "rehabilitation" of an individual debtor similarly lies in the reorganization of his financial life.  *See In re East Coast Airways, Ltd.*, 146 B.R. 325, 327 (Bankr. E.D.N.Y. 1992).  Moreover, a debtor's confidence that reorganization will be successful is not a sufficient basis on which to conclude that rehabilitation is possible.  *See In re Sakon*, 617 B.R. 7, 69 Bankr. Ct. Dec. (CRR) 208 (Bankr. D. Conn. 2020), *aff'd*, Bankr. L. Rep. (CCH) P 83615, 2021 WL 165014 (D. Conn. 2021).

30.    The two-fold inquiry under section 1112(b)(4)(A) is easily satisfied here.  With respect to the first prong, by Jones's own admission, the Debtor has suffered both a substantial and a continuing loss during the course of the FSS Case.  Jones himself has testified that the chapter 11 cases have "train wrecked" his operations and "had a major detrimental effect" on his business.  Jones Apr. 15, 2024 Deposition Tr. 17:24–18:11.  The Debtor's latest monthly operating report demonstrates that, as of April 30, 2024, the Debtor's total cash on hand and receivables has decreased by approximately 55% since May 31, 2022.  *See* Monthly Operating Report [Docket No. 915]; *see also* Voluntary Petition [Docket No. 1].  At the same time, the Debtor has continued to expend significant estate resources to fund the FSS Case at the expense of its creditors.  As set forth in the Debtor's latest monthly operating report, as of April 30, 2024, the Debtor had paid

*nearly $2.3 million* in professional fees related to the bankruptcy since the commencement of the FSS Case.  *See* Monthly Operating Report [Docket No. 915].  Permitting the FSS Case to proceed under subchapter V will only increase the administrative burden on the Debtor's estate and continue to dissipate what little value remains.

31.    The second prong of the analysis is satisfied because there is no likelihood of rehabilitation.  Despite the parties' determination to explore every potential avenue for a value-maximizing reorganization, the parties have run out of time.  The only option left on the table that could potentially "rehabilitate" FSS is the FSS Plan—however, the FSS Plan is fatally flawed and unconfirmable for a number of reasons.  Among other things, the only financial projections provided by FSS to date are premised on entry into an employment agreement with Jones and confirmation of a plan of reorganization in the Jones Case—but as the Court is aware, this is no longer a viable option.  Moreover, the Debtor has failed to set forth a realistic business plan that would restore FSS to its prepetition value, nor has it attempted to propose a plan that would begin to address the Connecticut Families' nondischargeable claims.  As the Court has made clear, the Debtor should not be permitted to remain in bankruptcy beyond the point at which reorganization is no longer realistic, and the FSS Case must be brought to a conclusion.  May 21, 2024 Hr'g Tr. at 13:23–14:1 ("So I don't think there's anything to say on Free Speech other than [on] the 14th, I'm going to make a decision on that one way or the other.").

32.    Accordingly, cause exists pursuant to section 1121(b)(4)(A) to convert the FSS Case to chapter 7.[8]

---

[8]    While a court generally has the ability to deny conversion even if cause is found based on a finding of "unusual circumstances", where the "cause" is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" then the court does not have discretion to deny conversion based on such a finding. 11 U.S.C. § 1112(b)(2) ("unusual circumstances" exception only applies to grounds for dismissal other than Section 1112(b)(4)(A)).

**B.  Cause Exists To Convert the FSS Case under Section 1112(b)(4)(M)**

33.     Conversion is also warranted where a debtor presents an "inability to effectuate substantial consummation of a confirmed plan."  11 U.S.C. § 1112(b)(4)(M).  A debtor is unable to effectuate a plan where it "lacks the ability to formulate a plan or to carry one out."  *See In re AdBrite Corp.*, 290 B.R. at 216.  Courts have found that a plan could not be effectuated for purposes of section 1112(b)(4)(M) where, practically speaking, the proposed plan could not be confirmed due to the size and amount of certain objecting creditors' claims.  *See In re Local Union 722 Int'l Bhd. of Teamsters,* 414 B.R. 443, 453 (Bankr. N.D. Ill. 2009) (cause to convert was present where a single creditor held 78% of the unsecured debt and objected to the plan because his claim was impaired, making the plan not confirmable); *see also In re Babayoff*, 445 B.R. 64 (Bankr. E.D.N.Y. 2011) (cause to convert present where debtor's largest unsecured creditor, holding 99% of the unsecured claims, stated his intention not to vote for it); *In re B & B West 164th Street Corp.*, 147 B.R. 832, 842 (Bankr. E.D.N.Y. 1992) (finding cause where plan confirmation was impossible over objection of creditor who controlled over one-third of a class).  Courts have also found that cause exists where a debtor's proposed plan fails to comply with the confirmation requirements set forth in section 1129 of the Bankruptcy Code, and the debtor has had ample time to propose a confirmable plan.  *See In re Mulholland*, 2022 WL 145151 at *6 (Bankr. M.D. Fla. Jan. 14, 2022) ("The Debtors cannot continue to 'park' their case in the bankruptcy court as a means of shielding them from the Judgment Debt.  The Debtors were given ample opportunities and time to propose a confirmable plan.  Unfortunately, the potential in those opportunities was not realized.  The Court therefore finds there is cause to dismiss the case.").

34.     The Debtor has had two years to propose a viable plan of reorganization that complies with the Bankruptcy Code's requirements for a subchapter V case.  While not for lack of effort—the parties have participated in two separate court-ordered mediation sessions and, until

recently, continued to explore the possibility of a go-forward business—the parties have reached

a final impasse. At this time, the only plan before the Court is the FSS Plan which, for the reasons

set forth above, is fatally flawed. The Debtor has also indicated that it does not intend to proceed

with confirmation of the FSS Plan, leaving the parties with two options—conversion or dismissal.

35.     Accordingly, the FSS Case should come to a much-needed conclusion in a manner

that satisfies the best interests of the estate and the Debtor's creditors.

## II.     Conversion of the FSS Case Is in the Best Interests of the Debtor's Estate and Creditors

36.     Once a court has determined that cause exists under section 1112(b) of

the Bankruptcy Code, it must decide between dismissal and conversion of the case, "whichever is

in the best interests of creditors and the estate." *See* 11 U.S.C. § 1112(b)(1); *see also Rollex Corp.*

v. *Associated Materials (In re Superior Siding & Window)*, 14 F.3d 240, 242 (4th Cir. 1994)

("Once 'cause' is established, a court is required to consider this second question of whether to

dismiss or convert."). A court "must ascertain the impact on the creditors and on the estate of each

of the options. . . .   Moreover, in evaluating the interests, the court must consider the interests of

*all* of the creditors." *Rollex Corp.*, 14 F.3d at 243.

37.     In doing so, courts may consider, among other things, the ability of a chapter 7

trustee to reach assets for the benefit of creditors, whether equality of distribution would be better

served by conversion rather than dismissal, whether creditors are in need of a chapter 7 trustee to

protect their interests due to the debtor's misconduct, and whether there would be a loss of rights

granted in the case if it were dismissed rather than converted. *See, e.g.*, *In re BTS, Inc.*, 247 B.R.

301, 310 (Bankr. N.D. Okla 2000) ("[I]f the bankruptcy case is dismissed, any preferential claims

which may exist will be lost. This factor warrants in favor of conversion."); *In re Superior Siding*

*& Window)*, 14 F.3d at 242 (finding that conversion was appropriate because chapter 7 would

permit a trustee to avoid certain preferential transfers for the benefit of all creditors, thereby fulfilling the fundamental bankruptcy policy of equality among creditors); *Kates* v. *Mazzocone (In re Mazzocone)*, 180 B.R. 782, 788 (E.D. Penn. 1995) (finding that dismissal was inappropriate because removing the bankruptcy court's supervision of the debtor could lead to continued diminution of the debtor's assets and a reduction in the proportion of claims that would be satisfied); *In re Mechanical Maint., Inc.*, 128 B.R. 382, 385–88 (E.D. Pa. 1991) (dismissal inappropriate where bankruptcy court failed to fully determine if creditor would lose benefit of right under section 506(c)); *see Ozcelebi* 639 B.R. at 425 (conversion was appropriate because, by the debtor's own admission, dismissal of the case was unlikely to result in recovery for the debtor's unsecured creditors and keeping the case in the bankruptcy system would bring finality to the decades long fight between the parties); *In re Gow Ming Chao*, 2011 WL 5855276, at *7 (Bankr. S.D. Tex. Nov. 21, 2011) (finding dismissal inappropriate where it "would send the wrong message to debtors in general . . . that there are no material consequences for completely shirking fundamental duties of the Code" and would not guarantee payment of any claims to creditors).

38.     While the Court has indicated that dismissal may be the only viable option absent a consensual plan, the Connecticut Families respectfully submit that conversion, rather than dismissal, of the FSS Case is in the best interest of the Debtor's estate and creditors. ***First***, appointment of a chapter 7 trustee to safeguard the Debtor's assets and supervise the liquidation process is appropriate under the circumstances to protect the interests of creditors. Courts have determined that conversion is in the best interest of creditors in circumstances where the debtor has engaged in misconduct and where removing the debtor from the court's supervision could jeopardize the payment of claims. *See, e.g.*, *In re Mazzocone*, 180 B.R. at 788; *In re Gow Ming Chao*, 2011 WL 5855276, at *7. Such supervision is imperative here. The very purpose of the

Debtor's chapter 11 case is to address over $1 billion of liability resulting from its intentionally harmful practices.  Moreover, Jones and his family members have consistently—both prior to and throughout the FSS Case—endeavored to reappropriate assets earmarked for the Connecticut Families for their personal gain.[9]  The Connecticut Families have no reason to believe that the Jones family will not continue to drain FSS of its remaining assets and siphon off value for their own benefit.  Appointment of a chapter 7 trustee will ensure that actual recoveries are provided to creditors.

39.    The Connecticut Families' concerns have only been heightened by the public, on-air statements made by Jones over the weekend.  Jones's threats and clear lack of respect for the judicial system—amounting at times to calls for his followers to "surround the building" and physically barricade the FSS studios if FSS's operations are threatened—should not be condoned.[10]  Among other things, Jones has made it clear that upon dismissal, FSS will return to business as usual, and that he intends to stall any lawful collection efforts of the Connecticut Families—whether by physical force or otherwise.  Apart from insulting, Jones's statements pose real consequences to the Connecticut Families that would be realized upon dismissal of the FSS Case, and could be prevented by conversion.  Namely, if FSS is not immediately wound down, Jones's statements indicate that he may seek to defy any order in the Jones Case that transfers the equity of FSS—a non-exempt asset of Jones—to a trustee (whether appointed pursuant to a plan of liquidation or a chapter 7 liquidation process).  Jones's creditors should not be asked to take this

---

[9]    In the four years preceding the Petition Date, Jones transferred (a) two luxury vehicles and approximately $1.5 million to his wife, and (b) three luxury vehicles, a ranch, and more than $500,000 in cash to his father. *Proposed Specific Disclosure Statement for the Creditor's Chapter 11 Plan* [Docket No. 539] at p.22.

[10]    In discussions with Steve Bannon, Jones asks "they could literally lock this up in the next few days.  What is your advice to Infowars and our crew?"  Bannon responds "let's get people down there and surround the building.  Make them come through a chain of patriots."  Jones says "That's what I'm going to do . . . we need to surround the building and just make a big issue of this and expose this."  June 1 Bannon Episode at 1:56:25. Jones repeatedly stated that he would resume control of FSS, in place of the CRO. *See, e.g.*, June 1 Episode at 22:50.

risk.  Nor should they be subjected to whatever unfettered actions Jones and his family members determine to take with respect to the business—or statements that they determine to make on air—upon dismissal without the continued protection of the automatic stay.  Additionally, to the extent the Connecticut Families and other creditors seek to enforce their legal rights outside of bankruptcy with respect to their claims against FSS, Jones has made it clear that he will not cooperate with such efforts.  This is precisely the situation in which a chapter 7 trustee is necessary.  A court-supervised liquidation directed by a court-appointed trustee would ensure that proceeds are fairly and equitably distributed to creditors who have, to date, received no recovery.

40.     *Second*, the Debtor has certain preferential claims against parties-in-interest that would be lost in a dismissal.  Namely, the Debtor has identified ***nearly $4 million*** of potential preference claims that would bring valuable consideration into the estate for the benefit of creditors, and which would be lost upon dismissal.  *See Statement of Financial Affairs* [Docket No. 900].  The Debtor has also commenced an adversary proceeding against PQPR to avoid its unsubstantiated $68 million secured claim against the Debtor (the "PQPR Claim").  If the adversary proceeding is dismissed, PQPR will wrongfully claim that it can maintain its secured status, jeopardizing the Connecticut Families' ability to ever receive a recovery from the Debtor, and improperly funneling potential recoveries to Jones and his parents.[11]  Accordingly, dismissal of the FSS Case would destroy material value that has already been ascertained for the estate's benefit, and nullify the extensive efforts and estate resources that have been expended to date to uncover such value.

---

[11]  At this time, the Court has not ruled on *PQPR Holdings Limited LLC's, JLJR Holdings LLC's, and PLJR Holdings LLC's Motion for Partial Summary Judgment* [Docket No. 44].  On May 20, 2024, the Debtor and the Sandy Hook Families each filed a response to such motion [Docket Nos. 55, 56].

41.     **Third**, the Bankruptcy Code's principal tenet of equal distribution to similarly situated creditors would be best served by a conversion.  The Sandy Hook Families are comprised of twenty (20) plaintiffs, each with unique claims against the Debtor.  Moreover, while the Connecticut Families have been awarded judgments in Connecticut state court, the Texas Families have judgments in Texas state court, and the families are represented by separate counsel.  Dismissal of the FSS Case would, inevitably, result in a "race to the courthouse" benefitting the first to act, to the detriment of all other creditors.  Such inequity should not be permitted when an organized, chapter 7 liquidation can be administered, ensuring the *pro rata* distribution of proceeds to creditors.  *See In re Superior Siding & Window*, 14 F.3d at 242 ("[U]nder dismissal, the assets of the debtor would be seized under state law by the first to act . . . .  This scenario is precisely the kind of unequal access to assets which the bankruptcy laws intend to forestall.").

42.     **Fourth**, dismissal of the FSS Case is inappropriate because it is likely to be followed by a chapter 7 filing.  As a non-exempt asset of the Jones estate, 100% of the equity in FSS would be transferred to a trustee for the benefit of creditors either upon conversion of the Jones Case or upon confirmation of any proposed liquidating plan.  As the primary beneficiaries of the FSS equity, the Connecticut Families intend to commence a chapter 7 proceeding immediately thereafter.  Accordingly, dismissal of the FSS Case will merely delay FSS's inevitable liquidation.

43.     **Finally**, dismissal of the FSS Case would materially prejudice the rights and potential recoveries of the Connecticut Families.  The commencement of the FSS Case in 2022 imposed an immediate stay on all collection efforts and potential claims that the Connecticut Families could bring against, or on behalf of, the Debtor.  Nearly two years later, the Connecticut Families are now running up against the clock to bring any such claims, including fraudulent

transfer claims, prior to the expiration of the applicable statute of limitations.  If the FSS Case is dismissed, this potential value will be jeopardized.

44.  For these reasons set forth above, the Connecticut Families submit that an orderly conversion and wind-down of the Debtor's estate is in the best interests of all creditors and the Debtor's estate.

**III.  Conversion Pursuant to Section 1112(b) Is Appropriate for Subchapter V Cases**

45.  Finally, the Court has authority to convert the FSS Case—which is proceeding under subchapter V of chapter 11 of the Bankruptcy Code—to the same extent as other chapter 11 cases pursuant to section 1112(b), and courts have routinely done so.

46.  While section 1181 of the Bankruptcy Code makes certain provisions inapplicable to subchapter V cases, it does not invalidate section 1112 of the Bankruptcy Code.  Accordingly, the standard for conversion or dismissal set forth in section 1112 of the Bankruptcy Code should apply in equal force to subchapter V cases as it does to chapter 11 cases, generally.  Notably, the Handbook for Small Business Chapter 11 Subchapter V Trustees published by the Office of the U.S. Trustee in 2020 (the "Trustee Handbook") also explicitly provides that "[t]he court may order that the case be converted to another chapter, or dismissed, on request of a party in interest and for cause shown pursuant to 11 U.S.C. § 1112(b)."  Trustee Handbook at 3–17.

47.  Courts have routinely applied section 1112(b), and found cause thereunder, to convert cases proceeding under subchapter V of chapter 11 to chapter 7.  *See, e.g.*, *In re Ozcelebi*, 639 B.R. 365, 373, 383 (Bankr. S.D. Tex. 2022) (finding cause to convert subchapter V case pursuant to section 1112(b)); *In re Double H Transp. LLC*, 603 F. Supp. 3d 468, 479 (W.D. Tex. 2022) (same); *In re Hao*, 644 B.R. 339, 341 (Bankr. E.D. Vir. 2022) (same); *In re Happy Beavers, LLC*, 2022 Bankr. LEXIS 339, *1 (Bankr. D. Colo. 2022) (same); *In re Gabbidon Builders, LLC*, 2021 Bankr. LEXIS 1300, *1 (Bankr. W.D.N.C. 2021) (same).

48.     Accordingly, the fact that the FSS Case is proceeding under subchapter V of chapter 11 does not preempt the Court's ability to convert the FSS Case to chapter 7.

## NOTICE

49.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to rule 9013-1(d) of the Bankruptcy Local Rules for the Southern District of Texas.

## RESERVATION OF RIGHTS

50.     For the avoidance of doubt, the Connecticut Families reserve their rights to amend or supplement this Motion on any basis and reserve all rights and remedies with respect to the Motion and otherwise in the FSS Case.

## EMERGENCY CONSIDERATION

51.     Pursuant to Local Rule 9013-1, the Connecticut Families respectfully request emergency consideration of this Motion.  Any delay in granting the relief requested herein would cause irreparable harm to the Connecticut Families and other parties in interest.  The Motion seeks prompt conversion of the FSS Case, which the Connecticut Families believe is paramount and in the best interests of FSS's creditors and the estate.  Moreover, the Court has indicated that it will make a final determination in the FSS Case at the hearing on June 14, 2024.  Accordingly, it is paramount that the motion be heard in connection with any such determination.  The Connecticut Families respectfully request that the Court grant the relief requests in this Motion on an emergency basis, on or before June 14, 2024.

## CONCLUSION

WHEREFORE, the Connecticut Families requests that this Court enter the Proposed Order converting the FSS Case to a case under chapter 7 and granting such other relief as may be appropriate under the circumstances.

21

Dated: June 2, 2024                          Respectfully submitted,

*/s/ Ryan E. Chapple*
**CAIN & SKARNULIS PLLC**
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone:  (512) 477-5000
Fax:  (512) 477-5011
E-mail:  rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone:  (203) 336-4421
E-mail:  asterling@koskoff.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Paul Paterson (admitted *pro hac vice*)
Leslie Liberman (admitted *pro hac vice*)
Vida Robinson (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Fax:  (212) 757-3990
E-mail:  kkimpler@paulweiss.com
            ppaterson@paulweiss.com
            lliberman@paulweiss.com
            virobinson@paulweiss.com

*Co-Counsel to the Connecticut Families*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Motion has been served on counsel for the Debtor, the Debtor, and all parties receiving or entitled to notice through CM/ECF on this 2nd day of June, 2024.

*/s/ Ryan E. Chapple*
Ryan E. Chapple
