# AJ - 6

```
 1                      UNITED STATES BANKRUPTCY COURT
                         SOUTHERN DISTRICT OF TEXAS
 2                              HOUSTON DIVISION

 3                                      )   CASE NO: 22-60043-cml
     FREE SPEECH SYSTEMS LLC,            )   Houston, Texas
 4                                      )
            Debtor.                      )   Monday, November 27, 2023
 5                                      )   2:02 PM to 4:48 PM
     ------------------------------)
 6                                      )   CASE NO: 22-33553-cml
     ALEXANDER E. JONES,                 )
 7                                      )
            Debtor.                      )
 8   ------------------------------)

 9                                    TRIAL

10             BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                     UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For Free Speech              RAYMOND BATTAGLIA
13   Systems and Alex Jones:      Law Office of Ray Battaglia
                                  66 Granburg Circle
14                                San Antonio, TX 78218

15   For Alex E. Jones:           VICKIE L. DRIVER
                                  Crowe & Dunlevy PC
16                                2525 McKinnon Street, Suite 425
                                  Dallas, TX 75201
17
     For the U.S. Trustee:        JAYSON RUFF
18                                HA MINH NGUYEN
                                  Office of the United States Trustee
19                                515 Rusk Street, Suite 3516
                                  Houston, TX 77002
20
     For Melissa Haselden:        ELIZABETH CAROL FREEMAN
21                                The Law Office of Liz Freeman
                                  PO Box 61209
22                                Houston, TX 77208-1209

23   For Leonard Pozner,          AVI MOSHENBERG
     et al.:                      McDowell Hetherington LLP
24                                1001 Fannin Street, Suite 2400
                                  Houston, TX 77002
25
```

| | | |
|---|---|---|
| 1 | For Committee: | **SARA BRAUNER** |
| | | **MARTY L. BRIMMAGE** |
| 2 | | **KATHERINE PORTER** |
| | | Akin Gump Strauss Hauer & Feld LLP |
| 3 | | 23 N. Field Street |
| | | Dallas, TX 75201 |
| 4 | | |
| | For Elevated Solutions | **JOHNIE J. PATTERSON** |
| 5 | Group: | Walker & Patterson, PC |
| | | P.O. Box 61301 |
| 6 | | Houston, TX 77208 |
| 7 | For Texas Plaintiffs: | **JENNIFER J. HARDY** |
| | | Willkie Farr & Gallagher LLP |
| 8 | | 600 Travis Street |
| | | Houston, TX 77002 |
| 9 | | |
| | For PQPR Holdings | **STEPHEN WAYNE LEMMON** |
| 10 | Limited, LLC: | Streusand Landon Ozburn Lemmon LLP |
| | | 1801 S. Mopac Expressway, Suite 320 |
| 11 | | Austin, TX 78746 |
| 12 | For Connecticut | **KYLE J. KIMPLER** |
| | Plaintiffs: | Paul, Weiss, Rifkind, Wharton & |
| 13 | | Garrison LLP |
| | | 1285 Avenue of the Americas |
| 14 | | New York, NY 10019 |
| 15 | Also Present | **ALEX E. JONES** |
| | | **PATRICK McGILL** |
| 16 | | **ALINOR STERLING** |
| | | **RYAN CHAPPLE** |
| 17 | | **ROBERT SCHLEIZER** |
| 18 | Court Reporter: | UNKNOWN |
| 19 | Courtroom Deputy: | UNKNOWN |
| 20 | Transcribed by: | Veritext Legal Solutions |
| | | 330 Old Country Road, Suite 300 |
| 21 | | Mineola, NY 11501 |
| | | Tel: 800-727-6396 |
| 22 | | |
| 23 | Proceedings recorded by electronic sound recording; Transcript produced by transcription service. | |
| 24 | | |
| 25 | | |

1  know, they're still discussing, but they're -- will be back
2  in here shortly.
3          THE COURT:  Okay.  No worries.  I'm just going to
4  sign the order.  I'm completely fine.  Working on the
5  rejection order, so we're all good.  Just give me one
6  minute.
7          Okay, why don't somebody tell me where we are?
8          MR. BATTAGLIA:  I think the mutual Debtors'
9  decision is to ask the Court to approve the rate of pay in
10 the cash collateral order and to present evidence.
11         THE COURT:  Okay.  Let's go.
12         MR. BATTAGLIA:  And so I would call Patrick
13 Magill.
14         THE COURT:  Okay.  Magill, can you please raise
15 your right hand?  Do you swear to tell the truth, the whole
16 truth, and nothing but the truth?
17         THE WITNESS:  I do.
18         THE COURT:  Okay.  Please be seated and I will let
19 the record reflect that the witness has been duly sworn in.
20              DIRECT EXAMINATION OF PATRICK MAGILL
21 BY MR. BATTAGLIA:
22 Q    Good afternoon, Mr. Magill.  Can you tell the Court
23 what your role is in this case?
24 A    Chief restructuring officer of Free Speech Systems.
25 Q    And what are your duties in that connection?

1   A   I manage the bankruptcy process and I am -- run the
2   business.  I'm chief operating officer of the business.
3   Q   What is your role in connection with the compensation
4   of employees?
5   A   Day-to-day operations include the review of all
6   expenses including salaries and duties.
7   Q   Have you, outside of Free Speech Systems, been a CRO or
8   a CEO of other businesses?
9   A   Yes.
10  Q   And have you had experience in that capacity in the
11  retention and compensation of employees?
12  A   Yes.
13  Q   How many employees have you managed, would you say,
14  over the last dozen years or so?
15  A   A thousand.
16  Q   You're familiar with what Mr. Jones' role is with Free
17  Speech Systems, are you not?
18  A   Yes.
19  Q   Can you tell the Court how important he is to the
20  operations of Free Speech Systems?
21  A   He's in a role -- without Alex Jones in Free Speech
22  Systems, there is no Free Speech Systems.  So he is the one
23  individual in the company that's indispensable.
24  Q   And have you conducted an analysis of gross revenue
25  generated by the business when Mr. Jones is not on the air?

1  A    Yes.

2  Q    And what has your analysis concluded?

3  A    When Alex is not in the studio on the air, we suffer

4  about a 40 percent reduction in revenues day-to-day.

5  Q    And that's on short term or long term?

6  A    It really doesn't matter.  It's usually long term. If

7  he's gone for a week to ten days, let's say he's on

8  vacation, there's a significant reduction in revenues.

9  Q    Do you know what Mr. Jones's compensation historically

10 has been from Free Speech Systems?

11 A    It usually has run on a salary basis.  It runs in the

12 600 range.  In the profit sharing, as he was experiencing

13 when he was not in bankruptcy, several million dollars a

14 year.  It's ranged on the low end, you know, $4 million

15 total compensation.  I believe there was one year where he

16 had about an $8 million compensation.

17 Q    Is it extraordinary for a small business owner to take

18 compensation in multiple forms?

19 A    No, it's very common for any -- someone, particularly

20 for tax purposes, to take a salary, a reasonably modest

21 salary for pick up purposes and then to take bonuses or

22 profit share at the end of the year or during the year.

23 Q    What's --

24 A    It's very common.

25 Q    What's Mr. Jones's current rate of -- prior to

1  November, rate of pay?

2  A    Prior to November --

3  Q    2023.

4  A    -- 2023, I believe he was making roughly $540,000 a
5  year, 560, something in that range.

6  Q    $20,000 a pay --

7  A    $20,000 biweekly.

8  Q    And do you know how that number came to be?

9  A    I really don't.  That was set about the time that I
10 showed up in October, so that was basically the pay that he
11 had when I arrived.

12 Q    Do you believe that's an appropriate rate of
13 compensation?

14 A    No.

15 Q    Why not?

16 A    I believe it's too low.  I mean, the pay represents a
17 small amount relative to the revenues that is generated 100
18 -- virtually 100 percent of all the revenues of Free Speech
19 is a direct relation shift to Alex's effort.  So, we
20 estimate this year we'll do about $30 million in revenue.
21 So, our -- my position was at the time that that was
22 significantly lower than it should have been.  And taking
23 into consideration his gross compensation in years past, it
24 was a fraction of what he used to make.

25 Q    How many hosts are there for the broadcast on Infowars?

1  A   There are three.

2  Q   And who are they?

3  A   They're Harrison Schmidt and Owen Shroyer.

4  Q   And Mr. Jones?

5  A   And Mr. Jones.

6  Q   Mr. Shroyer been broadcasting for the last 30 days?

7  A   No.  He has been a host of the federal government.

8  Q   What effect has that had on the estate's ability to

9  generate revenue?

10 A   Well, let's put a crimp on us.  We've had to do some

11 substitute hosting.  We've moved some people around.  We

12 have a pretty -- we run a pretty lean ship at Free Speech,

13 so we have a pretty thin bench for talent like that.  So

14 we've managed to get by with two hosts and some substitute

15 hosts.

16 Q   But in terms of revenue, have you noticed a meaningful

17 decline in revenue with Mr. Shroyer's absence?

18 A   There has been some decline, yes.

19 Q   With respect to current payroll, how are employees

20 paid?  In advance, in arrears?

21 A   They're paid in arrears.

22 Q   So if the Court were to approve the payment that's

23 proposed in the cash collateral order, is that an inducement

24 for Mr. Jones to stay?

25 A   No.

1  you're saying, I'm going to triple how much I'm going to pay
2  him every two weeks?  That's your position here, because
3  it's just the right thing to do.  It has nothing to do with
4  him --
5  A    It's good business.
6  Q    Why is it good business?
7  A    I've explained this to you.  I'll try to do this again.
8  when you have a staff and you have people that are working
9  for you in this business, you need to make sure that you're
10 not only competitive, you don't wait for people to threaten
11 to leave or to leave.  You're proactive in the way you do
12 things.  In the case of Alex Jones, it was very clear that
13 this is a half a million dollars a year for a man who
14 contributes 100 percent of the revenue of the business
15 needed to have a pay adjustment.  I do not wait until
16 there's a fire alarm or somebody threatens to quit in order
17 to be able to fix the problem.  I try to fix the problem
18 before it happens.
19 Q    Sir, you said he didn't need to pay adjustment earlier.
20 You said it's very common for business owners to take a
21 small salary and then get a percentage of the profits.  That
22 was very normal.
23 A    That was -- that's normal when you're not in
24 bankruptcy, yes.
25 Q    It's also normal when you're not the owner of the