IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 22-60043 |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

### JONES' RESPONSE AND OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR COURT INSTRUCTIONS AND MOTION TO CONVERT

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Alexander E. Jones ("Jones"), as the sole manager and 100% owner of the debtor-in-possession in the above-referenced Subchapter V case, files this *Response and Objection* (the "Response") *to Debtor's Emergency Motion for Court Instructions (1) Regarding Disposition of Debtor's Property and, (2) Clarity as to the Chief Restructuring Officer's Responsibilities and Authority, in the Event of either a Dismissal of this Case or a Conversion to Chapter 7* [Docket No. 933] (the "Motion for Instruction") and *Emergency Motion of the Connecticut Families for an Order Pursuant to Bankruptcy Sections 105(a) and 1112(b) Converting Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [Docket No. 921] (the "Motion to Convert") and respectfully states as follows:

### I.     INTRODUCTION

1. On July 29, 2022 (the "Petition Date"), Free Speech Systems, LLC (the "Debtor" or "FSS") commenced a case by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code (the "Case") with the Court.

Response and Objection – Page 1

2.      On June 2, 2024, without any communication with Jones or his counsel, the Connecticut Plaintiffs filed a twenty-three page motion seeking to convert the FSS case ("<u>Motion to Convert</u>") [Docket No. 921].

3.      On June 11, 2024, the Debtor withdrew its Amended Chapter 11 Plan [Docket No. 756] that had been on file since November 18, 2023, and filed the Motion for Instruction, indicating it would be supporting the conversion of the FSS Case to Chapter 7.  These actions were taken unilaterally by the CRO of FSS, without the consent or consultation of Jones or any of his professionals.

4.      A deposition taken of FSS' CRO in advance of the June 3, 2024, hearing contained testimony that the FSS CRO had no plan for liquidation and hadn't even begun to think about it. While FSS has claimed to have some "liquidation plan" no details and no budget have been shared with Jones or his professionals as of the time of this filing. FSS represents that such "liquidation plan" would not involve Jones, which calls into question how such plan to conceivably be as lucrative for creditors as one involving Jones. In light of the FSS CRO's prior testimony to this Court that FSS sales dip at a minimum of 40% during Jones' time off, and Jones' responsibility for "100%" of FSS' historical revenue generation, it is hard to conceive of what credible evidence could be introduced to refute this clear testimony.

## II.      RESPONSE

5.      Jones remains the 100% owner and manager of FSS.  In the *Order (A) Authorizing Employment of Patrick Magill as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Magill PC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief* [Doc. No. 239] (the "<u>CRO Order</u>"), it was made clear that the CRO is to report to the members of the Debtor, and that the CRO Order does not remove or displace any member of the

Debtor under the FSS Company Agreement. Furthermore, the CRO Agreement states that the CRO would make operational decisions with consultation of current ownership, directed to maximizing the value of FSS.[1]

6. Notwithstanding the CRO's duties to work with Jones as the sole owner of FSS, Jones was not consulted regarding these major corporate FSS decisions. The FSS CRO is acting unilaterally and without the authority of the owner and manager of the Debtor. The Motion attempts to prematurely "tee up" the issue of post-dismissal management authority over FSS, incorrectly characterizing an issue of Texas law by citing to a case where this Court analyzed an issue under a Delaware statute. Mot. At ¶ 7.[2] This issue will be addressed appropriately in due time, after the conversion of Mr. Jones' personal case and discussion with the Chapter 7 Trustee appointed.

7. In any event, the premature hand-wringing over Mr. Jones managerial control over FSS after the conversion of his personal bankruptcy case is in direct contradiction to the dismissal wind-down Mr. Jones has been attempting to facilitate-one that would best serve the interests of creditors and employees of FSS via an organized wind down, preserving the employee's jobs and benefits for that period, and ceding control of management to a professional who would work with employees of FSS who have held the trust of FSS' CRO for the entirety of this case, but eliminating the administrative burden of a Chapter 7 or continuing the Chapter 11 that has lingered far too long.

8. Further, the Motion for Instruction seems to want the Court to tell the CRO whom to assign banking relationships to upon his departure on June 14th. Had FSS been candid with this

---

[1] The second sentence of #9 "Notwithstanding the same, CRO shall be solely responsible for making all operational decisions." was struck by the CRO Order.
[2] FSS' Counsel ignores that the cited case interprets Delaware law in a multi-member LLC, not a single-member Texas LLC.  These factual differences distinguish it from this case and render it not controlling.

**Response and Objection – Page 3**

Court, it would have revealed that Jones has identified a firm to take that control to avoid any angst over his resuming the control he had pre-petition. This is relatively normal process of ceding control upon dismissal of a middle-market case, and working together with pre-petition ownership, as the CRO was ordered to do, is the way to accomplish this goal. Simply asking the Court to tell the CRO how to exit his role is asking the Court to assume the CRO's current fiduciary responsibility.

9.  To further this point, Jones has served as proposed Exhibit 5 for the June 14th hearing filed at Docket No. 696-5 a proposed dismissal order that outlines the precise actions the CRO could take to avoid all the uncertain hypothetical issues raised by the Motion to Convert and the Motion for Instructions. Simple coordination amongst the parties could have resolved this; however, Jones was never consulted by either party on these issues.

10.  Jones does not believe conversion of FSS is in the best interest of its creditors. The Court has previously acknowledged that conversion is not the ideal solution for the end of this Case.[3] Looking at the steps to conversion, it would be followed by an immediate shutdown of FSS. First, Jones is unwilling to commit to work for an unknown Chapter 7 Trustee under hypothetical terms. As stated by the FSS CRO in testimony to the Court, Jones is critical to the operations, his broadcast directly resulting in the overwhelming majority of sales by FSS. Second, if the employees are not immediately reassured of payment on payroll, they can be expected to leave *en masse*. The ability of a Chapter 7 Trustee to operate would further be hampered in time by the Connecticut Plaintiffs' stated goal of electing their own trustee, unquestionably delaying the process past the point that any employee reliant on their paycheck and wait for confirmation it will

---

[3] "I think Free Speech is a Subchapter V case. It has been pending for two years. Subchapter V is far different than Chapter 11. That case is either going to be confirmed on the 14th or I'm going to dismiss it. I'm not converting that case." Page 12, Lines 9-15, *Transcript, Status Conference on May 21, 2024*.

**Response and Objection – Page 4**

be funded. This reality renders conversion a far worse financial outcome for creditors and employees, leaving FSS with millions in inventory that will be unable to be sold for its usual markup with Jones broadcasting.

11. The Connecticut Plaintiffs want a conversion of FSS, seeking to gain an advantage over similarly situated creditors located in Texas. No other party benefits from a conversion of this Case. Reinstating all parties to their pre-petition position results in the most even playing field possible in this difficult case where constituents have failed to reach any consensus in nearly two grueling and administratively expensive years.

12. The $4 million is identified preferential transfers, Jones submits, is a red herring. Jones believes no party has done an analysis of any defenses to those claims, or the collectability of any claims if successful. Identifying potential claims with no analysis after nearly two years to do so is a specious reason to convert this case.

13. Therefore, Jones would object to such conversion, and to FSS's unauthorized agreement to same.

### III.     RESERVATION OF RIGHTS

14. Jones reserves all rights and remedies with regard to this Response, including without limitation, the right to amend, supplement or clarify this Response as allowed under applicable law.

WHEREFORE, Jones respectfully requests that the Court sustain his objections set forth herein and grant him such other and further relief as the Court may deem just and proper.

Dated: June 12, 2024

        Respectfully submitted,

        **CROWE & DUNLEVY, P.C.**

        By: */s/ Christina W. Stephenson*
        Vickie L. Driver
        State Bar No. 24026886
        Christina W. Stephenson
        State Bar No. 24049535
        2525 McKinnon St., Suite 425
        Dallas, TX 75201
        Telephone: 737.218.6187
        Email: crissie.stephenson@crowedunlevy.com

        -and-

        Shelby A. Jordan
        State Bar No. 11016700
        S.D. No. 2195
        Antonio Ortiz
        State Bar No. 24074839
        S.D. No. 1127322
        **JORDAN & ORTIZ, P.C.**
        500 North Shoreline Blvd., Suite 900
        Corpus Christi, TX  78401
        Telephone: (361) 884-5678
        Facsimile:  (361) 888-5555
        Email:  sjordan@jhwclaw.com
                aortiz@jhwclaw.com
        Copy to: cmadden@jhwclaw.com

        **ATTORNEYS FOR**
        **ALEXANDER E. JONES**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system, including the United States Trustee, on this 12th day of June 2024.

/s/ *Christina W. Stephenson*
Christina W. Stephenson