IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Case No. 22-60043 (CML) |
| Free Speech Systems, LLC, | § § | Chapter 11 (Subchapter V) |
| Debtor. | § | Jointly Administered |

### THE TEXAS PLAINTIFFS' STATEMENT SUPPORTING DISMISSAL OF CHAPTER 11 CASE AND OBJECTING TO CONVERSION

*"Free Speech is a Subchapter V case. It has been pending for two years. Subchapter V is far different than Chapter 11. That case is either going to be confirmed on the 14th or I'm going to dismiss it. I'm not converting that case."*

1. At the May 21st hearing, the Court was correct when it explained that the FSS case needed to be dismissed if a plan couldn't be reached. In seeking bankruptcy protection under Subchapter V, FSS pursued a speedy path to pay the Sandy Hook families millions of dollars while continuing to operate. The Texas Plaintiffs embraced that path because accountability requires FSS to meaningfully pay the judgments rendered against it. The Texas Plaintiffs have always been outspoken about this view, and behind the scenes they've painstakingly worked to broker a payment plan between Alex Jones, his company, and all the Sandy Hook families. But for many reasons—including noneconomic ones—the parties did not settle their differences.

2. What's left to decide is whether judgment creditors like the Texas Plaintiffs should be allowed to pursue real collections against FSS in a dismissal, or whether FSS's parts should be sold for scraps under a chapter 7 liquidation. Because the Texas Plaintiffs believe meaningful collections is in the creditors' best interests, they agree with the Court that the FSS case should be dismissed. They therefore submit this statement explaining why the Court should deny the Conversion Motion and order dismissal on the terms outlined in the *Order Dismissing Chapter 11 Case* [Docket No. 696-5] (the "Proposed Dismissal Order").

**A. Dismissal would enable the creditors to meaningfully recover from FSS post-bankruptcy.**

3.  The Court should order dismissal and deny the Conversion Motion.[1] This Court is already familiar with the torment the Sandy Hook families have been forced to endure because of Alex Jones and his company Free Speech Systems. The Court also knows how the families have fought Jones and FSS for years to obtain judgments to hold them accountable. And the Court knows that the families have recovered nothing to date under those judgments because the bankruptcies filed by Jones and FSS have halted their collections efforts.

4.  FSS sought bankruptcy protection under Subchapter V, which is supposed to be a speedy and streamlined chapter 11 process that enables businesses to continue operating under a payment plan.[2] Suffice to say that Subchapter V is not designed to immediately shut down a business, fire its workers, and be sold for parts over the objection of its owner.

5.  Naturally, the Court instructed at the May 21st hearing that by June 14th a plan would either be confirmed or the FSS case dismissed: "Free Speech is a Subchapter V case. It has been pending for two years. Subchapter V is far different than Chapter 11. That case is either going to be confirmed on the 14th or I'm going to dismiss it. I'm not converting that case."[3]

6.  Despite the Texas Plaintiffs' best efforts to corral the parties to a deal, a plan will not be confirmed. And after spending two years in bankruptcy trying to bridge the canyon between the parties—after years already spent litigating against Jones and FSS—the Texas Plaintiffs wish to have the opportunity to enforce their rights as judgment creditors under state law.

---

[1] *See Emergency Motion of the Connecticut Families for an Order Pursuant to Bankruptcy Code Sections 105(a) and 1112(b) Converting the Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [Docket No. 921].

[2] *In re Free Speech Sys., LLC*, 649 B.R. 729, 734 (Bankr. S.D. Tex. 2023); *Matter of GFS Indus., L.L.C.*, 99 F.4th 223, 232 (5th Cir. 2024); H.R. Rep. No. 116-171, at 1, 4 (2019).

[3] May 21, 2024 Hrg Tr. at 12:10–14.

7. Dismissal on the terms outlined in the Proposed Dismissal Order is in the best interests of creditors and the estate because it maximizes the FSS estate's value and minimizes the disruption to its employees' lives.

8. And just as important, dismissal allows the creditors to exercise available remedies in state court *immediately*—not after waiting for a new protracted bankruptcy under chapter 7 to play out. The Texas Plaintiffs have sat on their rights for nearly two years hoping a consensual resolution would be reached where FSS meaningfully pays its judgment. Enough is enough. The Sandy Hook families should be allowed to enforce their rights so they can finally move on with their lives.

**B. Converting this case into a new bankruptcy under chapter 7 only thwarts the parties' rights and is not in the creditors' best interests.**

9. At the May 21st hearing, the Court also rightly noted why converting to chapter 7 doesn't work here: "[W]e would just be keeping a case open for the sake of operating it. People have state law rights. Free Speech is continuing to operate. We're now going to have to take up 523 actions, which means that a Subchapter V case would proceed, quite frankly, potentially even until 2025."[4] Even so, the Court has been asked to convert this case.

10. But starting a new FSS bankruptcy under chapter 7 is not in the creditors' best interests. Bankruptcy Code § 1112(b) states that upon finding cause the Court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate."[5] No one disputes that cause exists here because FSS's attempt to reorganize under Subchapter V's protections is doomed. As cause exists, the issue here

---

[4] May 21, 2024 Hrg Tr. at 12:18–22.

[5] 11 U.S.C. § 1112(b).

3

is what's in the estate's and the creditors' best interests.[6] While "courts generally accommodate the parties' choices when they all agree upon one course of action over the other, the test for what is in the 'best interests of creditors and the estate' is not one of majority rule."[7]

11.   Courts have identified factors to help decide whether to dismiss or convert, including (among others): (1) which maximizes the estate's value as an economic enterprise; (2) are any remaining issues better resolved outside bankruptcy; (3) would rights be lost if the case were dismissed; (4) could the chapter 7 trustee reach assets for the creditors' benefit; and (5) do creditors need chapter 7 to protect their interests.[8] No factor is determinative, and the Court need not weigh each factor equally.[9] But courts in this district put heavy weight on which option maximizes the estate's value: "[t]he best interest of the estate ultimately turns on whether its economic value is greater in or out of bankruptcy."[10] Through this lens, the Court is right to favor dismissal.

12.   After all, under the first factor, dismissing FSS provides more value for the estate and its creditors. Creditors' recoveries in a chapter 7 conversion will amount to crumbs compared with the potential recovery the creditors stand to gain from FSS post-dismissal. FSS is sitting on inventory worth millions of dollars that must be sold to recoup value for the creditors. But Jones

---

[6] *In re Peak Serum, Inc.*, 623 B.R. 609 (Bankr. D.Colo. 2020).

[7] *In re Fleetstar LLC*, 614 B.R. 767 (Bankr. E.D.La. 2020) (citing *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994).

[8] *In re Sandia Resorts, Inc.*, 562 B.R. 490, 495-96 (Bankr. D.N.M. 2016).

[9] *Id.*

[10] *In re M.A.R. Designs & Construction, Inc.*, 653 B.R. 843, 872 (Bankr. S.D.Tex. 2023); *see also In re H2D Motorcycle Ventures, LLC*, 617 B.R. 625, 634 (Bankr. E.D.Wis. 2020) (finding that creditors are "typically best served by the course of action that results in the largest number of [them] being paid the largest amount of money in the shortest amount of time.").

refuses to work for a chapter 7 trustee.[11] Because FSS experiences "gross revenue declines of as much as 40%" when Jones is absent from FSS broadcast, that inventory will be fire sold in a chapter 7 conversion.[12] In a dismissal, Jones will keep selling FSS's inventory, preserving millions of dollars in value. That reality, coupled with the benefit of not hemorrhaging any more money on professional fees under chapter 7, settles that dismissal maximizes value for the creditors—meaning this factor heavily favors dismissal.

13. The second factor does too because it's faster. This is not a case where unrepresented creditors need bankruptcy tools to recover on their claims. Nor are these traditional creditors with limited tools to enforce business debts. Rather, the Texas and Connecticut Plaintiffs have adept counsel and judgment debts. Upon dismissal, they'll instantly have state-court remedies to enforce their judgments. Vindicating their rights under chapter 7, on the other hand, will take years. Especially when considering that several Texas Plaintiffs don't have final judgments yet and they'd first need to liquidate their claims in trial and appeal before *any* creditors could collect.[13] And of course any collection would be reduced by the administrative fee burn that comes with chapter 7. The administrative fees and costs to date have already been astronomical. Yet to date none of the families have received a penny through bankruptcy. The creditors should be allowed to control their own destiny. This factor favors dismissal.

14. Dismissal is also warranted because the creditor's rights would be enhanced, not hindered. The Connecticut Plaintiffs argue for conversion to preserve the adversary proceeding

---

[11] *Jones' Response and Objection to Debtor's Emergency Motion for Court Instructions and Motion to Convert* ¶ 10 [Docket No. 943].

[12] *Debtors' Joint Motion to Approve Employment Contract Pursuant to 11 U.S.C. § 105 and 363(b)* [Docket No. 707].

[13] *See* Joint Notice Regarding Agreed Order on Debtors' Motion for Approval of Compromise and Settlement Under Federal Rule of Bankruptcy Procedure 9019 [Docket No. 823].

against PQPR to avoid its supposed secured claim.[14] But the Proposed Dismissal Order contemplates jurisdiction of the PQPR adversary proceeding remaining with the Bankruptcy Court. And even if the Court dismissed that adversary too, the Texas and Connecticut Plaintiffs already brought a state-court fraudulent-transfer action to avoid the PQPR "debt" (and others) before the bankruptcy.[15] So dismissal doesn't hamper any creditor's rights. The Connecticut Plaintiffs also assert FSS has $4 million in preference claims that would be lost if the case were dismissed.[16] But nothing shows that FSS has done any reasonable due diligence on those supposed claims in the two years it's been in bankruptcy, which is required by section 547(b) of the Bankruptcy Code. And given that $1 million of those alleged preference claims would be against the Texas Plaintiffs, dismissal especially enhances the Texas Plaintiffs' rights. After all, they will not need to spend their time and money defending a meritless lawsuit by a chapter 7 trustee for alleged preferences that occurred when FSS paid $1 million in monetary sanctions in the state-court case. Again, these payments were not preferences. But the Conversion Motion alludes to a preference suit against the Texas Plaintiffs to help sell conversion. Avoiding a path that could result in the Sandy Hook families getting sued by a chapter 7 trustee is another reason why dismissal is more beneficial. This factor favors dismissal too.

15. Another factor supporting dismissal is that a trustee's reach toward assets is no greater than the creditors' outside bankruptcy. Again, the Connecticut and Texas Plaintiffs have

---

[14] Conversion Motion ¶ 40.

[15] *Heslin, et. al. v. Alex E. Jones, et. al*, Cause No. D-1-GN-22-001610, in the 200th District Court of Travis County, Texas.

[16] *See, e.g.,* Conversion Motion ¶ 4 (seeking conversion because "a chapter 7 liquidation would allow a trustee to pursue approximately $4 million in potential preference claims that have already been identified by the Debtor); ¶ 37 (arguing conversion is preferable because chapter 7 would permit a trustee to avoid preferential transfers); ¶ 40 ("the Debtor has identified *nearly $4 million* of potential preference claims that would bring valuable consideration into the estate for the benefit of creditors, and which would be lost upon dismissal" (emphasis in original)).

judgment debts and state-law remedies to enforce their tort judgments. And they can do so with the benefit of avoiding the delay and hefty administrative fees that come with a new bankruptcy under chapter 7.

16.     Finally, the fifth factor favors dismissing the FSS case since the creditors don't need chapter 7 to protect their interests. Again, chapter 7 offers no added benefit in the Connecticut and Texas Plaintiffs' abilities to collect on their judgments. The only benefit to chapter 7 would be continued oversight of FSS. Of course FSS could not fraudulently transfer assets without violating the Texas Uniform Fraudulent Transfer Act and having those transfers clawed back. And the Proposed Dismissal Order protects against shenanigans because it transfers control and signing authority over FSS's bank accounts to Bob Schleizer, of Blackbriar Advisors LLC, and requires dual signing authority with Jeff Shulse for checks over $25,000. (Schleizer and Shulse were both hired in these bankruptcies.) These guardrails protect FSS's bank accounts and assets without enabling Jones to engage in skullduggery. And more importantly, any negligible benefit that added oversight provides would come at the painful cost of liquidating a company that can still generate millions of dollars for pittances. Dismissal gives the creditors the best of both worlds—oversight and the chance to immediately collect on their judgments. But forcing creditors who've already waited years to languish further for the scraps of a liquidation is no protection at all.

## Conclusion

Converting FSS's bankruptcy may be a noneconomic win in terms of holding Alex Jones accountable, but the chief way our justice system shows accountability is by requiring wrongdoers to pay their judgments. That reality is no different in bankruptcy, where the pole star is maximizing value. Because dismissing this bankruptcy is in the best interest of the creditors, the Texas Plaintiffs support this Court entering the proposed order dismissing the FSS bankruptcy case.

Dated: June 12, 2024                                Respectfully submitted,

        **WILLKIE FARR & GALLAGHER LLP**
Jennifer J. Hardy (Texas Bar No. 24096068)
600 Travis Street
Houston, Texas 77002
Telephone: 713-510-1700
Facsimile: 713-510-1799
Email: jhardy2@willkie.com

    -AND-

Rachel C. Strickland (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Email: rstrickland@willkie.com
      slombardi@willkie.com
      csisco@willkie.com

    -AND-

**LAWSON & MOSHENBERG PLLC**
Avi Moshenberg (TX Bar No. 24083532)
801 Travis Street
Suite 2101 #838
Houston, TX 77002
Telephone: (832) 280-5670
Email: avi.moshenberg@lmbubsinesslaw.com

    -AND-

*/s/ Jarrod B. Martin*
**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**
Jarrod B. Martin (TX Bar No. 24070221)
1200 Smith Street
Suite 1400
Houston, Texas 77002
Telephone: 713-356-1280
Email: jarrod.martin@chamberlainlaw.com

*Bankruptcy Co-Counsel to the Texas Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that, on June 12, 2024, a copy of the foregoing motion was served on all parties registered to receive such service via the Court's ECF system.

                                      */s/ Jarrod B. Martin*
                                      Jarrod B. Martin