UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION

                                  )  CASE NO: 22-60043-cml
                                  )
FREE SPEECH SYSTEMS LLC           )  Houston, Texas
                                  )
         Debtor.                  )  Wednesday, October 26, 2022
                                  )
                                  )  1:02 PM to 1:23 PM
    -----------------------------)


                              TRIAL

        BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
              UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Free Speech Systems   RAYMOND WILLIAM BATTAGLIA
LLC:                      Law Offices of Ray Battaglia PLLC
                          66 Granburg Circle
                          San Antonio, TX 78218

                          R.J. SHANNON
                          Shannon & Lee LLP
                          2100 Travis Street, Suite 1525
                          Houston, TX 77002

For PQPR Holdings         STEPHEN WAYNE LEMMON
Limited LLC:              Streusand Landon Ozburn Lemmon LLP
                          1801 S. Mopac Expressway, Suite 320
                          Austin, TX 78746

David Wheeler, et al.:    RYAN E. CHAPPLE
                          Cain & Skarnulis PLLC
                          303 Colorado Street, Suite 2850
                          Austin, TX 78701

For Melissa Haselden:     ELIZABETH CAROL FREEMAN
                          The Law Office of Liz Freeman
                          P.O. Box 61209
                          Houston, TX 77208

For Marcel Fontaine:      NICHOLAS LAWSON
                          Lawson & Moshenberg PLLC

```
                                  801 Travis Street, Suite 2101
                                  Houston, TX 77002

     For the United States    HA MINH NGUYEN
     Trustee:                 Office of the U.S. Trustee
                              515 Rusk Street, Suite 3516
                              Houston, TX 77002

     For Texas Comptroller    CHRISTOPHER DYLLA
     Of Public Accounts:      Office of the AZ Attorney General
                              Bankruptcy Collections &
                              Enforcement
                              2005 N. Central Avenue
                              Phoenix, AZ 85004

     For Marc Schwartz:       MICHAEL P. RIDULFO
                              Kane Russell Coleman Logan
                              5151 San Felipe, Suite 800
                              Houston, TX 77056

     Court Reporter:          UNKNOWN

     Courtroom Deputy:        ZILDE MARTINEZ

     Transcribed by:          Veritext Legal Solutions
                              330 Old Country Road, Suite 300
                              Mineola, NY 11501
                              Tel: 800-727-6396


     Proceedings recorded by electronic sound recording;
     Transcript produced by transcription service.
```

HOUSTON, TEXAS; WEDNESDAY, OCTOBER 26, 2022; 1:02 PM

(Call to Order)

CLERK: All rise.

THE COURT: Please be seated. Okay, good afternoon. This is Judge Lopez. Today is October 26th. I'm going to call the 1:00 PM case, which is Free Speech Systems. I'm going to go ahead and take appearances. Why don't I start in the courtroom.

MS. FREEMAN: Good afternoon, Your Honor. Elizabeth Freeman, counsel for, proposed counsel, for Melissa Haselden, the Subchapter 5 Trustee.

THE COURT: Good afternoon. Ms. Haselden, I see you're on camera as well. Good afternoon.

MR. LAWSON: Good afternoon, Nick Lawson for the Texas for the Texas Plaintiffs, Your Honor.

THE COURT: Good afternoon, Mr. Lawson.

MR. NGUYEN: Good afternoon, Your Honor. Ha Nguyen for the US Trustee.

THE COURT: God afternoon, good afternoon. Mr. Battaglia, I see you're there. Can you hear me okay?

MR. BATTAGLIA: I can, Your Honor. Ray Battaglia for the Debtor, Free Speech Systems, Patric Magill, the Chief Restructuring Officer is on the line as well.

THE COURT: Okay. And … Magill, I see you there. Good afternoon. Can you hear me okay?

MR. MAGILL:  Yes, Your Honor, I can.

THE COURT:  Okay.  And nice Earl Campbell background, I … that's good stuff.  Okay.  Who else wishes to make an appearance?  The line is completely unmuted, but just, let's see how this goes.

MR. LEMMON:  Your Honor, Steve Lemmon, for UPR.

THE COURT:  Okay, good afternoon.

MR. CHAPPLE:  Good afternoon, Your Honor, Ryan Chapple, for the Connecticut Plaintiffs.

THE COURT:  Good afternoon, Mr. Chapple.

MR. DYLLA:  Good afternoon, Your Honor, Christopher Dylla on behalf of the Texas Consular Public Accounts.

THE COURT:  Good afternoon.

MR. SHANNON:  Good afternoon, Your Honor, this is RJ Shannon, on behalf of Shannon & Lee, LLP.

THE COURT:  Good afternoon, Mr. Shannon.  Anyone else?

MR. RIDULFO:  Mike Ridulfo, for Marc Schwartz and Schwartz Associates.

THE COURT:  Okay, good afternoon.  I'm going to just ask everyone to take a look at their phone and place it on mute.  Let's see how this goes.  I'm trying to avoid muting the entire line just so everyone has an opportunity to speak.  But it gets a little out of hand, I'll have to

mute the line, as I just did to someone.  Okay.  Anyone else wish to make an appearance?  Okay, Mr. Battaglia, it may make sense for me to turn it over to you, sir.

MR. BATTAGLIA:  Yes, Your Honor.  Thank you.  Ray Battaglia for Free Speech Systems.  There is only one matter on the Court's docket today, and that is the continuation of the cash collateral motion.  Uh, the Debtor has submitted to the major constituents a proposed form of order and a revised budget, uh, that has been reviewed with, uh, anyone who had question, Ms. Haselden specifically was invited to a meeting to discuss line item by line item.  But I've also had conversations with the US Trustee's Office, with the (indiscernible) Connecticut Plaintiffs' counsel, among others, regarding the form of the budget in response to any questions.

The order has been … was uploaded last night.  It is before the Court.  If I can, I'll just point out a few major features of this --

THE COURT:  Okay.

MR. BATTAGLIA:  -- that may answer some questions before you have a chance to ask them.  One is that the prior, I'll call it a credit card buffer entity who's … the reasons for any confidentiality have now expired; REM Services is no longer servicing for the Debtor, effective last Friday.  We have identified a replacement and we will,

although I think it arguably is ordinary course of business, we will be bringing the motion before the Court.  For the first 30 days, that processor has agreed to charge no fee as opposed to the 4 percent that had been provided for in the last modification of the REM agreement.  And too, when we get Court approval, increase that to 1.5 percent, so it's a considerable reduction in the fee that we're being assessed. We also think that there's a reduction in the actual merchant card, credit card companies that were being charged.  We think that's a reduction.  It could be as … between .4 percent to 1.4 percent.  We're not quite sure what it is that REM was adding on, on the merchant credit card charges.  And so, that is reflected here in this budget, that there is no such fee being paid at this particular point in time.

I think that's probably the major change here. The … Mr. Magill finally has more of his arms around the Debtor's operations and budgeting process.  He's bringing in, and I believe it's anything that requires Court approval, but bookkeeping service, for example, to assist in keeping the day-to-day records of the Debtor.  And so, I think we're further down the road in terms of Mr. Magill's tenure as CRO here.  I know he's physically present on site between two and three days a week in Austin, and is actively involved in trying to, potentially, modify the manner in

which it better operates, that it affects for film and product acquisition and so forth.  Premature to go into much detail with the Court at this juncture, although, suffice it to say that these have been open conversations that I've had with Ms. Haselden and Ms. Freeman, Texas Plaintiff's, and Mr. Nguyen on behalf of the US Trustee's Office.  And as we get further along, I'll be bringing a motion before the Court in that regard as well.

So, at this point, it's probably best for me to shut up and let you ask whatever questions you may have, and Mr. Magill or I will be happy to answer.

THE COURT:  I took a look at the budget.  I appreciate the update.  It may surprise you, but I have no questions.  I just really wanted to just hear from Mr. Magill and just hear how things were going.  Um, it sounds like he's getting his arms wrapped around the issue, and the issues here in this case, and I just wanted to make sure I gave him an opportunity to kind of tell me how things are going.

MR. BATTAGLIA:  Let me interject one more thing before Mr. Magill answers your inquiry.  There was a budgeted $500,000 inventory acquisition payment to PTPR in, I think, the second and the third interim cash collateral orders that has not been paid.  We have discovered that for reasons unknown to us, that there was an overpayment of the

$5,000 weekly adequate protection payment by the tune of about $100-, maybe to $120,000.  When we get that reconciled, we will have a conversation with Mr. Lemmon, probably about crediting that overpayment to the half-million dollar inventory acquisition payment.  And you'll note that there's an addition $50,000 installment that's going towards that half a million.  It's a not a new payment or a new number, it's going to be applied to that.  And consequently, the order has been modified to sort of extend the callback notice period to the last day when the last payment is made, and that's when I'll send the notice to parties, and that will start the 30-day (indiscernible).

THE COURT:  Perfect.

MR. BATTAGLIA:  I just wanted to add that.

THE COURT:  No, actually, you know what?  I did have one question.  The refund of the chargeback reserve, I was just going to ask what that was.

MR. BATTAGLIA:  Sure.  And I'll take the first stab, and Mr. Magill can amplify.  The Debtor had a full REM services.  The Debtor had a prior credit card servicing company, who had established their own reserve against chargebacks, which was customary and ordinary in the industry.  The chargeback provisions of that contract, although I have not seen that particular agreement, typically, these have a runout period of up to six months.

And in this instance, the six months expired already, but in the press of things that were going on, I don't think anybody realized that money was sitting there. And so, in connection with the changeover to the new servicer, they identified that and the money (indiscernible) tell you whether it has been received, but it's imminent.

THE COURT: Perfect. Thank you. Okay, Mr. Magill, is there anything you can tell me?

MR. MAGILL: Sorry, Your Honor, I got distracted. Yes, it's been received and it should be in the bank. We're transferring that money, it was either yesterday or today. I haven't had a chance to confirm it. It's not imminent; we have it.

THE COURT: Okay. Let me just open it up. Is there anyone who wishes to be heard in connection with this cash collateral, fifth interim order?

MR. DYLLA: Your Honor, if I may? This is Christopher Dylla on behalf of the Texas Comptroller of Public Accounts.

THE COURT: Yes, sir.

MR. DYLLA: I just wanted to bring to the Court's attention -- and it is a requirement under the, both the most current, the fifth proposed attached collateral order, as well as the prior ones, the Debtor continued to remain current with its filing and payment of taxes. Since the

filing of the bankruptcy, this Debtor has not yet filed a sales tax return, which would be inclusive of August and September.  The September one was due last week.  I've had conversations with Mr. Magill about this, as well as Mr. Battaglia, and I'm hoping that by the next time that we have a interim cash collateral hearing, that those issues will be resolved.

THE COURT:  Okay.  Thank you.  One question -- I don't know if the UST is here or … the Subchapter 5 Trustee -- I was searching yesterday, I didn't see any of the kind of small business MORs.  Have any of those been … why don't you get close to the mic, I just want to make sure we can hear … if not, I just wanted to put that on Mr. Magill's radar.

MR. NGUYEN:  That's correct, Your Honor.  They haven't been filed.  I know Mr. Battaglia had a draft of one, but then we had a new CR put in.  I did email Mr. Battaglia this morning to get those on file.  I told Mr. Battaglia it would be beneficial for everyone to see what the actual operating costs were over the last 90 days.  So, I don't speak for Mr. Battaglia, but it is on his radar and I did ask him to get them on.

THE COURT:  That's all I need to know.  That's all I need to know.  I just wanted to make sure that we covered that base.  And I know Mr. Magill is getting his arms around

the issue.  I just wanted to make sure that was on someone's radar.  And it sounds like it is, so that's good with me.  Anyone else wish to be heard in connection with cash collateral?  Mr. Battaglia, it sounds like … looks like the proposed interim order requiring me to … add in a new kind of date, right, for when we can meet again --

MR. BATTAGLIA:  Yes, sir.

THE COURT:  What did you have in mind?

MR. BATTAGLIA:  The budget runs through November 25th, which I can't recall whether that's a Saturday.  I think it's a Saturday.  Let me get my calendar up.  So, typically, we would want … no, it is a Friday.  Obviously, there's a holiday there, sometime in that week of the 20th we, hopefully, could have just a shorter hearing and present the Court with another budget and circulate it to parties.  I wouldn't imagine the substance of the order changes appreciably.  But that's kind of my thinking, Judge.

THE COURT:  Okay.  Let me just take a look at my calendar here.  I could give you … let's see, Monday, November 21st at like 2:00 PM, if that would work?

MR. BATTAGLIA:  Mr. Magill, if you're available, that's fine by me.

MR. MAGILL:  That's fine with me.

THE COURT:  Why don't we do that?  As we start getting close to Thanksgiving, and I know folks may be

traveling, and I'm trying to find a time that could accommodate everyone.  The 25th, I'm not sure I will be available on that day so … I'm in mediation on the 22nd, so it would have to be … why don't we shoot for the 21st.  I think it's probably the safest day, to make sure everybody is there.  Would that work, November 21st at 2:00 PM?  Ms. Freeman, Ms. Haselden, would that work for you?

MR. BATTAGLIA:  It works for me?

MS. FREEMAN:  Yes, Your Honor.

THE COURT:  Okay, perfect.  Okay, why don't we go along with that date there, see where we go.  Anything else we need to talk about today?  Anything else anyone wishes to raise?

MR. BATTAGLIA:  You know, Court, the Judge, the Connecticut Court has come in with a, this jury verdict on actual damages.  There's still more activity in that case regarding cumulative claims, regarding attorneys' fees claims, and we'll just leave it at that with respect to Connecticut.  With respect to Texas, there was a hearing set on the 20th of October for entry of judgment.  The Court continued that hearing at -- I don't recall the date -- in November I think there were a rush of leadings that came up just prior to hearing and she wanted time to consider those. The mediation, I know there's been a communication circulated by Judge Isgur to start preliminary conversations

-- I don't know that we've set a date, I don't think he has. I think he wants to get through around preliminary communications to figure out how best to proceed. And I think that's sort of a general overview of where things are currently with respect to the litigation.

THE COURT: Okay, thank you. And I did, I think you saw the order that I extended the time to file --

MR. BATTAGLIA: I did.

THE COURT: -- to December 16th. I just … I know you asked until January, but I thought, I just want to make sure that we're kind of keeping on top of things. So, it's certainly without prejudice, the ability to ask for further time (indiscernible) the medication was going to be scheduled.

So, I figured we can always just touch base at the end of November, middle of December, and they seem like the checkpoints, to kind of … before the end of the year ahead of us. So, I think the way you filed it is fine, if you need to file another extension, but at least we haven't kicked anything into the new year. We can at least have a good stopping point in the middle of December and see where things go. Okay?

MR. BATTAGLIA: I noted that, Judge. And frankly, my date in January was trying to figure a date that wasn't in the middle of the holidays, so … 60, 70, it doesn't

matter to me.

THE COURT:  You got it.  Okay.  Anything else we need to talk about today?

MR. CHAPPLE:  Your Honor, this is Ryan Chapple. Can you hear me okay?  I have one issue I'd like to raise.

THE COURT:  Oh, Mr. Chapple, yes, sir.

MR. CHAPPLE:  Your Honor, I believe the original deadline to object to dischargeability is set for tomorrow. And with the extension of the deadline to file a plan, I don't know if I need to move orally or if I need to file an emergency motion after we get off, we get off this hearing. But I believe it's, it would be appropriate to extend that deadline contemporaneously as well.

THE COURT:  I think … I'll leave that up to your discussions with Mr. Battaglia.  I'm around tomorrow if we need to have an emergency hearing on that, but if you'll agree to stip to something, I'll -- that's fine with me as well.  I'll leave it up to you.  If not …

MR. CHAPPLE:  Okay, and Your Honor, just to … sorry to interrupt you, but just make sure I understand the Court is amenable to a stipulation between the Debtor and the (indiscernible) Plaintiffs to extend that deadline?

THE COURT:  Yeah, I'm open to it.  I've done it other cases.  I'm open to it, but I'm not going to … I don't think it would be fair to entertain an oral motion at this

time.  But you call can agree to … you can stip something out if you want, and I can sign it.

MR. CHAPPLE:  I understand, Your Honor.  I will circle back.

THE COURT:  If not then --

MR. BATTAGLIA:  Mr. Chapple and I have a very open line of communication, so I'm sure when we get offline we can figure this out.  I need to talk to Mr. Magill, but I'm sure we can figure something out.

THE COURT:  Okay.  Let me hear, Ms. Freeman?

MS. FREEMAN:  Just a process question that I think relates to the question about that deadline and a stipulation extending the deadline.  You know, and first, I know that there is a degree of disagreement amongst the courts about whether or not non-dischargeability in a corporate sub-5 is applicable or not.  And so, I just want to go ahead and reserve any sort of comment on that issue at this point.  And I don't want our silence to be viewed as an agreement that 523 is or is not applicable in this type of case.

THE COURT:  No, I got it.

MS. FREEMAN:  And question with regards to request to extend time.  I know that in the complex procedure, there's an automatic bridge that is created, but if you file a motion to extend the time that is statutorily based, or is

based on anything other than an order, that the filing of the motion itself acts to toll that deadline until an order can be entered.  I know that there is no such companion in the local rules.  I know by practice and procedure, some of the judges will follow the complex thoughts.  And I didn't know if this Court had a policy with regards to extensions.

THE COURT:  I certainly believe if you got something in timely before, that's good enough for me.  I … and we need to have an emergency hearing.  We'll have one, but if the parties are open to it, I certainly think that the filing of a motion before its filed would certainly, I grand the bridge.

MS. FREEMAN:  Very helpful, thank you.

THE COURT:  No, no, I certainly would.  And just so I tall makes sense.  And again, I agree with you, I know that there's a split, or there are some courts that have gone way, some courts that have gone the other way and I would need to make that call if we got there.  So, but certainly, I do agree I would need to make that call if we got there.  So, but certainly I do agree.

Mr. Chapple, if you wanted to get something in to preserve the right, and to make the argument, then I think that's the way to do it, if you wanted to get something on to make sure that you preserve the right to make the argument.  But if you all want to talk about it, if you stip

on something, that's fine with me.  If someone needs to file a motion and take something up, they all work … I'm open to all of it.  Okay?

MR. CHAPPLE:  Understood Your Honor, I appreciate that.

THE COURT:  Mr. Lawson, I think you may have --

MR. LAWSON:  My comment is unrelated to this discussion.  I just wanted to say that the Motion to Enter the Judgment in the Texas case is November the 22nd.

THE COURT:  Okay.

MR. LAWSON:  It was brought up without a date, so I just --

THE COURT:  Got it, thank you.  Okay.  I will sign an order.  Let's see … if it's okay with you all, I'm going to sit here and sign the order right now so I don't forget you've got it on the … November 21st.  I said 2:00 PM, right?

MR. LAWSON:  Yes, sir.

THE COURT:  Okay.  I have signed the cash collateral loan.  I appreciate everyone, efforts on this. Mr. Magill, thanks for jumping in.  Sounds like you've been doing a lot of work and I appreciate it.  All righty, sounds like we'll see each other, well, at least on November 21st, maybe sooner.  Thank you very much for your time. Everybody's excused.  I'm just going to sit here and sign

this order to make sure that I can enter cash collateral, and you've got something.  Thank you.  We're adjourned.

(Proceedings adjourned at 1:23 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  November 25, 2024