UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION

                                    )   CASE NO: 22-60043-cml
                                    )
FREE SPEECH SYSTEMS LLC             )   Houston, Texas
                                    )
          Debtor.                   )   Wednesday, October 12, 2022
                                    )
                                    )   10:03 AM to 10:52 AM
-----------------------------)


                                 TRIAL

          BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                 UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Free Speech Systems      RAYMOND WILLIAM BATTAGLIA
LLC:                         Law Offices of Ray Battaglia PLLC
                             66 Granburg Circle
                             San Antonio, TX 78218

                             R.J. SHANNON
                             Shannon & Lee LLP
                             2100 Travis Street, Suite 1525
                             Houston, TX 77002

For PQPR Holdings            STEPHEN WAYNE LEMMON
Limited LLC:                 Streusand Landon Ozburn Lemmon LLP
                             1801 S. Mopac Expressway, Suite 320
                             Austin, TX 78746

David Wheeler, et al.:       RYAN E. CHAPPLE
                             Cain & Skarnulis PLLC
                             303 Colorado Street, Suite 2850
                             Austin, TX 78701

For Melissa Haselden:        ELIZABETH CAROL FREEMAN
                             The Law Office of Liz Freeman
                             P.O. Box 61209
                             Houston, TX 77208

For Neil Heslin:            JARROD B. MARTIN
                           Chamberlain Hrdlicka White Williams
                           & Aughtry P.C.
                           1200 Smith Street, Suite 1400
                           Houston, TX 77002

For the United States      HA MINH NGUYEN
Trustee:                   Office of the U.S. Trustee
                           515 Rusk Street, Suite 3516
                           Houston, TX 77002

For Marc Schwartz:         MICHAEL P. RIDULFO
                           Kane Russell Coleman Logan
                           5151 San Felipe, Suite 800
                           Houston, TX 77056

For Alex Jones:            SHELBY A. JORDAN
                           Jordan & Ortiz, P.C.
                           500 N. Shoreline Blvd., Suite 804
                           Corpus Christi, TX 78401

For Melissa Haselden:      MELISSA A. HASELDEN
                           Haselden Farrow PLLC
                           Pennzoil Place
                           700 Milam, Suite 1300
                           Houston, TX 77002

Court Reporter:            UNKNOWN

Courtroom Deputy:          ZILDE MARTINEZ

Transcribed by:            Veritext Legal Solutions
                           330 Old Country Road, Suite 300
                           Mineola, NY 11501
                           Tel: 800-727-6396


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

HOUSTON, TEXAS; WEDNESDAY, OCTOBER 12, 2022; 10:03 AM

(Call to Order)

CLERK:  All rise.

THE COURT:  Okay.  Mr. Martin, can you hear me okay?  Okay.  Good morning, everyone.  This is Judge Lopez.  Today is October 12th.  I'm going to call the 10:00 a.m. case, 22-60043, Free Speech Systems LLC, here on a couple of issues.

So, why don't I take appearances in the Courtroom first, and then I'll take any on the phone.  I've muted the entire line, so if you wish to speak, you'll need to hit 5 star.  And let's get started.  Who wishes to make an appearance this morning?

MR. BATTAGLIA:  Good morning, Your Honor.  Ray Battaglia, for the Debtor, Free Speech Systems.

THE COURT:  Okay.  Good morning.

MR. LEMMON:  Your Honor, Steve Lemmon for PQPR.

THE COURT:  Good morning, Mr. Lemmon.

MR. CHAPPLE:  Good morning, Your Honor.  Ryan Chapple, for the Connecticut Plaintiffs.

THE COURT:  Good morning.

MR. NGUYEN:  Good morning, Your Honor.  Ha Nguyen, for the U.S. Trustee.  I also have Jayson Ruff and Millie Sal, of the U.S. Trustee's Office.

THE COURT:  Good morning to all of you.

MR. SHANNON:  Good morning, Your Honor.  R.J. Shannon, on behalf of Shannon & Lee LLP.

THE COURT:  Good morning, Mr. Shannon.

MR. RIDULFO:  Good morning, Your Honor.  Mike Ridulfo, for Mark Schwartz and Schwartz Associates.

THE COURT:  Good morning.

MR. JORDAN:  Your Honor, good morning.  Shelby Jordan.  I represent Alex Jones.

THE COURT:  Good morning.

MS. HASELDEN:  Good morning, Your Honor.  Melissa Haselden, Subchapter V Trustee, and I have with me proposed counsel Elizabeth Freeman.

THE COURT:  Good morning to both of you.  Okay, I think I've covered the courtroom.  Why don't -- if you wish to speak, I'd ask that you please hit 5 star.  Okay, I'm going to 6261, last four digits.

MR. MARTIN:  Good morning, Your Honor.  Jarrod Martin, for the Texas Plaintiffs.

THE COURT:  Okay.  Good morning, Mr. Martin. Anyone else?  I'm going to leave your line open.  If you can, just please mute your line.  Anyone else wish to make an appearance?  You can certainly reserve your right.

Okay, I believe I have covered inside the courtroom and online.  So, there are a number of matters set for today.  Looks like we've got two motions for

reconsideration of applications, or re-hearings of application.  I think there's cash collateral, things we need to talk about, and I think there was a proposed order for mediation that was filed on the docket, and we can talk about that as well.

So, I'm not sure the order folks want to go, and I'm happy to listen to it.  Maybe, Mr. Chapple, go ahead.

MR. CHAPPLE:  Sure.

THE COURT:  I'm sure there's other things that we need to talk about.

MR. CHAPPLE:  One other item pending.  We had what I've been referring to as our tort committee motion --

THE COURT:  Ah, yes.

MR. CHAPPLE:  -- which was originally set for the 12th.  We filed an emergency motion to continue, which is unopposed.

THE COURT:  Okay.

MR. CHAPPLE:  Mr. Battaglia and I have been discussing.  I just wanted to let you know that --

THE COURT:  Thank you.

MR. CHAPPLE:  -- that is --

THE COURT:  Thank you, I did see that.  I did see that, and I appreciate you mentioning it.  Does it make sense to take up rehearing first, talk about those two, and then I'll let the parties tell me where they want to go,

depending on --

MR. BATTAGLIA:  Your Honor --

MR. CHAPPLE:  Whatever your preference is, Your Honor.

THE COURT:  Mr. Battaglia?

MR. BATTAGLIA:  If I may, I think that everything else on the docket, obviously subject to --

THE COURT:  Mm hmm.

MR. BATTAGLIA:  -- questions that the Court has, is basically resolved.  I'm not sure about the motions for reconsideration.  I've heard competing things on whether there's to be a continuance or it's going forward.

I think maybe that if we took that last, people who didn't need to or want to hang around for that could depart.

THE COURT:  Okay.

MR. BATTAGLIA:  I think the rest of it will be handled relatively quickly.

THE COURT:  Okay.  So, what do you think we can take up now that is uncontested?  I suspect the motion for a continuance on the Committee motion.  That probably makes sense.

MR. BATTAGLIA:  It's uncontested, Your Honor.  I think at that point, the Court may want to talk about the mediation proposal.  They're sort of interrelated,

obviously.

THE COURT:  Yeah.

MR. BATTAGLIA:  Everything here is generally.

THE COURT:  That's why I didn't want to take --
well --

MR. BATTAGLIA:  But more people may be interested
in that than they are on the (indiscernible).

THE COURT:  I agree with you there.  But I've got
to rule on the rehearing --

MR. BATTAGLIA:  Yes, sir.

THE COURT:  And I --

MR. BATTAGLIA:  I'm open --

THE COURT:  -- so that it's all connected.

MR. BATTAGLIA:  -- to whatever the Court wants to
do, obviously.

THE COURT:  Yeah, let me -- I feel more
comfortable taking up rehearing and then --

MR. BATTAGLIA:  That's fine, Judge.

THE COURT:  And then we'll see where things go.  I
know that we also -- there's an emergency motion to take up
a new proposed CRO.  That's on my list as well, matter of
fact.  So, I hope my clerk is taking good notes.  You don't
just get to -- you don't just get to observe.  Put them to
work.

So, let's take up the rehearing motion.  Mr.

Shannon, good morning.

MR. SHANNON: Good morning, Your Honor. R.J. Shannon again, for the record, on behalf of Shannon & Lee LLP. We filed the motion for rehearing under Rule 59 at ECF 206. And Your Honor, we are going to request a continuance. I don't believe that the U.S. Trustee opposes it or that Mr. Jones opposes a continuance.

And really, Your Honor, that motion was just to resolve potential issues with respect to any compensation or reimbursement for expenses for matters already done. I know that Shannon & Lee LLP is not trying to force the Debtor to employ them and retain them. I believe that's true of Mr. Schwartz as well, but I'll allow Mr. Ridulfo to speak for Mr. Schwartz.

And the reason we would like a continuance is there have been discussions with the U.S. Trustee, with Mr. Jones's attorney, about those issues. And I really think that the dispute about standing kind of demonstrates why a continuance would be useful. Because one of two things is either true, or maybe both. It's either that Shannon & Lee has a pecuniary interest and therefore has standing. Or, you know, as set out in some case law, for example, In re Mehdipour, 202 B.R. 474, there is a mechanism by which those -- by which that compensation can be sought, despite the Court's ruling on the applications to employ.

So, one of those two things is true.  We would like some time to continue the negotiations about how that gets resolved.  And I believe, Your Honor, that if the mediation goes forward, that's something that could also be dealt with.  Obviously not the important part of the mediation, but a thing that could be resolved at that time as well.

So, you know, I think what I would propose is that the Rule 59 motion be continued out about 35 days to allow that process to continue and allow the mediation to continue.  And, you know, if necessary, if there's not an agreement otherwise, there could also be a request for an administrative expense as well that could be dealt with at the same time.

THE COURT:  Okay, thank you.  Let me hear from the objectors.

MR. NGUYEN:  Good morning, Your Honor.  Ha Nguyen, for the U.S. Trustee.  Your Honor, like I mentioned to Mr. Shannon, we don't oppose.  I mean, it's his motion.  I can't force him to bring his motion today.  But we pretty much laid out our position in our objection what we think.  We don't think it's a proper Rule 59 motion and we have an issue with the requisite authority to file the Rule 59 motion.  So, everything is laid out in our objection.  That's our position.

But in terms of the continuance, I don't oppose it. If there's a dialogue to be had with Shannon & Lee and Mr. Schwartz, we'll talk about it. But whether we get to some sort of resolution, it's -- I don't know at this time.

So, I'm happy to discuss, I'm open to discussions, but we laid our position out in our objections and those objections still stand, Your Honor.

THE COURT: As you stand there, if I continue the hearing on the rehearing motions, do you think I -- do you see any issue with me taking up the proposed mediation, cash collateral, the new CRO application? Any issues that you see there?

MR. NGUYEN: No, Your Honor. I think the rehearing motion really comes down to compensation for S&L and Mr. Schwartz. The mediation can go forward from our perspective, the CRO application can go forward. I think, really, we're talking about fees and the mechanism to get those fees paid.

THE COURT: Okay.

MR. NGUYEN: Thank you, Your Honor.

THE COURT: Mr. Shelby?

MR. JORDAN: Judge, our position is basically the same as the U.S. Trustee's Office. I think that the statement by counsel for the movants is that the motion was designed more to preserve or perfect, if that's the right

way they would put it, their position on fees.  There's been no fees requested.  I seriously doubt that my client's going to be involved in a fee issue one way or another.

The concerns that we had was that there would be a hiatus in getting new professionals involved if this reconsideration motion were not resolved.  And I think that statement resolved that for us.

Our position is set out in our objection in that I think the order itself is final as to the Debtor.  I mean, the Debtors -- it was the Debtors motion, the Debtor didn't within 14 days file a motion to reconsider.  I don't think it's final on the issues carved out, now that I understand what they're trying to do.  I don't suspect it's final for the movants on their fees.  That's probably -- they had standing to file something in respect to that if they thought that order impacted their fees.  We don't take a position one way or another.  I didn't see that order as impacting their fees.

The other problem that we had was that the motion that was filed included what we believe was a unilateral decision to publish common interest counsel emails and I have had conversations with Mr. Nguyen, and there won't be any more, so whatever has been done has been done.  And that was my principal concern is I didn't know where this was heading.  And I certainly didn't want to get into some major

issue about that if it wasn't necessary.

So, we have no objection to continue with this, and I think my role is probably going to fade away, hopefully, and I'll let the U.S. Trustee deal with -- and the movants deal with their issues, and then it should be resolved.

THE COURT:  Okay.  Thank you.

MR. JORDAN:  Thank you, Judge.

THE COURT:  Mr. Chapple, I guess you're the last one.  Your client filed a joinder to the --

MR. CHAPPLE:  That's correct, Your Honor.

THE COURT:  -- objection and I want --

MR. CHAPPLE:  We would defer to the Trustee's arguments that he just made.

THE COURT:  Okay.  So, if I've got it right, every party who has filed an objection or a joinder is okay with a continuance.  Did I get that right?

MR. CHAPPLE:  Yes.  That's correct.

THE COURT:  I think I've covered the U.S. Trustee, Mr. Jones and the Plaintiffs, the Sandy Hook Plaintiffs.  If that's the case, and it seems like it is, I'm fine continuing.

MR. BATTAGLIA:  And Your Honor, I just thought as the Debtor's counsel I probably ought to let you know where the Debtor stands on this, and we -- somewhat Switzerland

and not entirely so -- but these are not our motions.  We didn't authorize them.  We didn't oppose them filing whatever motions they felt they needed to file to protect their right to be paid fees.  Obviously, the Debtor -- the ship has sailed.  We're not rehiring.  And I don't think either professional anticipates or expects that.

You know, we were largely without management in the sense of me being able to take positions by the time these were filed.

THE COURT:  Mm hmm.

MR. BATTAGLIA:  I think that the issue is, as has been outlined here, the Court said I'm not trying to get -- keep you from being paid.  And I think the U.S. Trustee has said that as a general statement.  But I think the concern is the mechanism.  What's this Code section we rely on to get a fee paid?  And that's not my issue today, and we're not opposed to a continuance.  Anything that we can push off without an expensive fight, I think is to all our benefit and it may come out as part of the mediation.

THE COURT:  Okay.  I'm (indiscernible) of all the statements made, I'll grant -- just going to grant A continuance today.  Everybody's rights are reserved.  Every party who filed something -- I'm not extending the objection deadline obviously to anything here, but status quo will be preserved.  Everybody's arguments are preserved.

I'm going to -- I'll make no comments one way or the other about how I feel about the relief requested or the objections.  I'll just pick a new date at that time.  Thirty-five days from today -- oh, that's going to require...  You know, that starts to put you close to the Thanksgiving holiday.

MR. SHANNON:  The way I calculated it, Your Honor, November 16th, but --

THE COURT:  Well, no, that's probably right.  That's probably right.  I'm -- let's see, when do I...  Yeah, November 17th and the 18th I am out.  So why don't we do the 16th?  That works for me.

MR. BATTAGLIA:  That's the date, Your Honor, that we had tentatively discussed --

THE COURT:  Okay.

MR. BATTAGLIA:  -- as a hold date --

THE COURT:  That works for me.

MR. BATTAGLIA:  -- on the tort Committee motion as well.

THE COURT:  Maybe the 16th at 10:00 a.m.?  Kind of keep the same time?  Would that work?

MR. SHANNON:  That works for me, Your Honor.

THE COURT:  And so --

MR. NGUYEN:  That works, Your Honor.  Thank you.

THE COURT:  All right.  So, what we're continuing

are the two motions for rehearing and all the objections related to will carry with that.  Okay.  Where do we go next?

MR. BATTAGLIA:  Your Honor, the remaining matters -- and I'll skip for a moment the motion to appoint a tort committee, which is a motion to continue -- is I think we take that up in concert.  I don't think there's any opposition to continuing it.  It's the setting date and dealing with the mediation, and I think Ms. Freeman will be best able to speak to the mediation.  She's had more direct communications with all the parties on that.

THE COURT:  Okay.

MR. BATTAGLIA:  The other matters are the cash collateral motion, the motion to direct the Subchapter V Trustee to investigate filed by PQPR, which I think is moot at this point.

THE COURT:  Yeah, I --

MR. BATTAGLIA:  It's carried on the docket.

THE COURT:  I would consider that moot, unless, Mr. Lemmon, you tell me that you don't think it's moot.  And maybe we can just -- if you think it is, we can just do a docket entry today and just put out the need for additional filing.  But if you disagree with me, let me know and we'll take it up.

MR. LEMMON:  And Your Honor, I filed a notice of

withdrawal on the 22nd.

THE COURT:  Oh, okay.  Well, that makes --

MR. LEMMON:  Withdrawing it is moot.

THE COURT:  Okay, perfect.  Thank you very much.

MR. LEMMON:  (indiscernible)

MR. BATTAGLIA:  No, go ahead.

MR. LEMMON:  No, I'm sorry.  I was just -- are you going to take up cash collateral now?

MR. BATTAGLIA:  That would be my next --

MR. LEMMON:  Okay.

MR. BATTAGLIA:  Yes.  The two remaining matters are cash collateral and the application to employ the chief restructuring officer.  I had some conversations with the U.S. Trustee about some additional provisions they wanted in the order that we are happy to add.  They basically are clarifying or ensuring that the CRO is not appointed as a trustee, which is not the case.

THE COURT:  To which order?

MR. BATTAGLIA:  The CRO.

THE COURT:  The CRO order?

MR. BATTAGLIA:  Yes, sir.

THE COURT:  Okay.  Okay.

MR. BATTAGLIA:  So, I'll be -- we can discuss that in more detail, but, as far as status, there's no opposition to it.  As I said, there's been a conversation with Mr.

Nguyen about some additional terms.  So, I think, subject to what the Court wants to hear, we won't need any significant time on that on cash collateral.

I uploaded -- I apologize for the late hour, but getting budget information together when we don't have real financial accounting without a CRO --

THE COURT:  Yeah.

MR. BATTAGLIA:  -- has been a chore.  So, I did circulate it.  I answered some questions this morning for anybody who had them.  And I think the form of order is acceptable, and I'll elaborate a little bit more.

And so, if it's okay with the Court, let's just take up cash collateral first.

THE COURT:  Yeah.  And I did get a chance to read it.  I did have an opportunity to review that, and there's no need to apologize for filing something at a late hour.  I'm up late -- or up early, so it's not a problem.

MR. BATTAGLIA:  It's just -- it's been a chore making sure that we have access to financial information without --

THE COURT:  Always easier to file something late.  You know, it's when someone files something at like 9:58 before the 10 o'clock, that's where it gets tricky.

MR. BATTAGLIA:  Yes, sir.

THE COURT:  But --

MR. BATTAGLIA:  So, this budget is a two-week budget.  It's another interim.  And it's intended to -- PQPR's concern was that in the last several weeks we haven't been able to comply with financial reporting because we don't have accounting staff.  And so they want access to some financial reporting.  I want access to some financial reporting.  And until we can get back to some point of stabilization with the new CRO, I think we just wanted to put a two-week interim budget in place so that we can get to a point where Mr. Magill will be able to provide information to all the parties in this case and get a budget that he's even more comfortable with than the one that we've submitted.

And so, we've submitted a two-week budget and ask the Court for a continued hearing sometime at the end of that two weeks or inside of that two-week period.

THE COURT:  That would put you around the 26th of October.  Is that what you're thinking?  Or what date were you thinking?

MR. BATTAGLIA:  Yes, sir.  The budget expires 10/28, so some day prior to that.  And my expectation and hope is that if we get an order that everybody agrees to, we don't have to show up, as this Court has allowed us to do in the past.

THE COURT:  Okay.  What's better for you, the 26th

or the 27th?  Mr. Lemmon?  I just want to have something on the books.

MR. LEMMON:  26th, Your Honor.

THE COURT:  The 26th?

MR. LEMMON:  Yes, Your Honor.

THE COURT:  Do you think we can do -- let me take a look at this hearing I've got.

MR. LEMMON:  And I think that Mr. Battaglia is accurate.  It is our hope that Mr. Magill will be able to get his arms around the financial situation --

THE COURT:  Okay.

MR. LEMMON:  -- and we'll be able to agree on a budget.

THE COURT:  Okay.  So, why don't we do the 26th at 11:00 a.m.?  Would that work?

MR. BATTAGLIA:  Is the afternoon possible, Judge?

THE COURT:  Yeah, 1:00.

MR. BATTAGLIA:  1:00 would be better for me. Thank you.

THE COURT:  Okay.  That's not a problem.  So, cash collateral is -- let me ask before we do that -- let me ask the Subchapter V Trustee and the U.S. Trustee, any issues with me signing this cash collateral order?  I did get an opportunity to review it.

MS. HASELDEN:  Your Honor, I have reviewed the

order and the budget, and I don't have any objections either.

THE COURT:  Okay.

MR. NGUYEN:  Ha Nguyen, for the U.S. Trustee.  I did have some questions for Mr. Battaglia.  He answered those questions this morning for me.  He's going to provide me additional information on some of the wages and contractors so we can have a list of names and just take a look at them to make sure that there's no other insiders being paid.  But other than that, no objection to the entry of the order.

THE COURT:  Okay.  Thank you.  Let me just take a look one last time.  Okay.  Yeah, this looks fine.  Mr. Battaglia, you filed this around 6:45 last night, I think somewhere in there?

MR. BATTAGLIA:  I couldn't tell you.  I've been -- yes.

THE COURT:  We call that noon around here, Mr. Battaglia.  Don't you worry about that.

MR. BATTAGLIA:  I'd like to be more proactive, but I can only do what I can do.  Your Honor, I filed this as a notice.  I didn't --

THE COURT:  Yeah.

MR. BATTAGLIA:  -- act presumptuously and upload it as a proposed order.

THE COURT: No, no, no. I appreciate it. I'm --

MR. BATTAGLIA: But I'm happy to upload a proposed order when I get back to my office this afternoon.

THE COURT: No, let me just take a look at it. I think I can sign this. If anything comes up -- I don't -- I know it's got the big Exhibit A stamp, but I can remove it. I'll do it. If not, I'll just ask you all to upload an agreed order.

MR. BATTAGLIA: That'd be fine, Judge.

THE COURT: That will --

MR. BATTAGLIA: Whatever suits the Court, I'll --

THE COURT: -- will do that.

MR. BATTAGLIA: -- happy to do.

THE COURT: Let me just note that there has been proper notice of an interim -- a continued hearing on cash collateral for today. It was proper notice. And I appreciate the parties continuing to work together on this issue, and I appreciate the input from the Subchapter V Trustee and the United States Trustee. So, I've reviewed the order. And I think everyone knows I review those orders carefully and ask questions when appropriate.

I've reviewed the proposed order that was filed at Docket Number 229 and I'm going to sign that order. Mr. Battaglia, any issues, we'll let you know right away.

MR. BATTAGLIA: Sure.

THE COURT:  As a matter of fact, I would ask my case manager, Ms. Saldana, to take a look and see if I can sign that order, if we can remove that Exhibit A sticker if we can.  And if we can't, just let me know and I'll let you know before you leave today.

MR. BATTAGLIA:  Yes, sir.

THE COURT:  Okay, where do we go next?

MR. BATTAGLIA:  The last matter on the docket, Your Honor, is the application to employ Patrick Magill as the new CRO --

THE COURT:  Okay.

MR. BATTAGLIA:  -- for the Debtor.  As I indicated --

THE COURT:  Well, we want to take that up with the mediation one first.  I want to just make sure the parties -- at least we've talked about the mediation.

MR. BATTAGLIA:  At your pleasure, whatever order you want to go in.

THE COURT:  No, no, no.  Let's take up Mr. Magill and then we'll talk about mediation.

MR. BATTAGLIA:  So, Mr. Magill is in the courtroom this morning, Your Honor.  Mr. Magill's CV was attached to the application.  He's had considerable experience, both as an accountant and as an operating officer of multiple entities and as a CRO, and in fact, recently in front of

this Court in a case.

The Debtor, when it interviewed potential candidates -- and I guess by the Debtor, I mean me -- to take over as CRO, had a couple of easy qualifications that someone had to meet.  First was willingness to take on this case.  And as you've heard before, not everybody is willing to get involved, and that's certainly -- the word no is something I heard with some regularity.

The second concern was, of course, cost.  There's always a cost.  There are, you know, national outfits that I think would be prohibitively expensive.

The third consideration was what we really needed as a CRO.  The Court having expanded the powers of the Sub V Trustee, you know, I'm less inclined for the Debtor to do a forensic analysis than to participate and assist with the Trustee in doing her forensic analysis, or whatever analysis she needs to do, so that we're not duplicating effort.

So, I was less interested in having a forensically qualified CRO, and more interested in an operating CRO.  And Mr. Magill has a wealth of operating experience, both in his non-bankruptcy related life, as well as in his bankruptcy-related life.

His fee requirement is a flat fee, plus expenses of $50,000 a month.  I know that he has jumped into the middle of the fray, which has been a little bit messy these

last couple of weeks, with the uncertainty, and has spent, I think, the first two days of this week out there, and one day last week out at FSS trying to get his arms around what this company needs.

So, I believe he has the qualifications.  His declaration clearly shows he is disinterested.  The only connection that he has with any party in this case is that he has been a CRO in cases in which Sub V Trustee was the Sub V Trustee.  And I believe you may have represented him -- we have disclosed all of those connections.  But beyond those connections, I've never worked with, nor has the Debtor or any of its officers or employees had any relationship with Mr. Magill prior to this application.

THE COURT:  Okay.

MR. BATTAGLIA:  And so, I'm happy to answer any questions the Court may have.  As I indicated, the U.S. Trustee has asked for some additions to the proposed order.  I will incorporate those and upload a new order if the Court grants this relief.

THE COURT:  Okay.

MR. BATTAGLIA:  And Mr. Magill is here if you have any questions of him.

THE COURT:  No, I just have one question for Mr. Magill.  Come on up.  Mr. Magill, can you please raise your right hand?  Do you swear to tell the truth, the whole

truth, and nothing but the truth?

MR. MAGILL:  I do.

THE COURT:  Okay.  Thank you.  I've reviewed your application, and I've reviewed the disclosures in the application.  I've reviewed the other supplemental disclosures that have been filed with the Court.

I'm comfortable with where things stand.  I just want to hear from you.  Is there anything aside from what's in your declaration, any connections to this Debtor, any principals of the Debtor, any related entities to the Debtor, that you are aware of that's not disclosed in any public filing?

MR. MAGILL:  I'm aware of none.

THE COURT:  Okay.  And you understand, I think we've -- in prior cases, we've talked about how important I view the role of the CRO if there's any issues, and how I view the fiduciary role that you would be taking on, and if there's any issues, that you're to come to me.

MR. MAGILL:  I understand.

THE COURT:  Okay.  That's all I had.  Does anyone have any questions for Mr. Magill?  I think you got off easy today.  Thank you.

Let me ask the U.S. Trustee.  I've reviewed the application.  They're asking me to consider it on an emergency basis, and obviously, I think emergency

consideration makes a lot of sense for today.  The Debtor currently has no CRO because I denied an application.  So, I do think emergency consideration is warranted.  Sounds like -- I appreciate -- it sounds like you all have had conversations with him.  I just want to make sure you're okay with the disclosures that are there and the application.

MR. NGUYEN:  Ha Nguyen, for the U.S. Trustee.  Your Honor, no objection to their emergency request.  Mr. Magill and Ms. Haselden, before they actually filed their declaration, they did -- they came to me and we talked about all the connections.  We went through them, and they addressed all of my concerns.

There are some issues with the language on the proposed order.  We just don't want -- wanted to make sure -- make that Mr. Magill is some pseudo Chapter 11 Trustee.  We asked Mr. Battaglia to incorporate some language just to maintain the general corporate governance of the Debtor, preserving all rights for parties.  If a Trustee is to be appointed, it doesn't cure that by having Mr. Magill.  Those are some of the language that I asked Mr. Battaglia this morning, and there are no objections to the proposed language.

I'm okay with the compensation structure that is requested, and I'm also okay with all the disclosures that

were made in the declaration.  The professionals, if they're correcting, they came to us and they disclosed all the connections, and we worked through any issues beforehand. So, even though it was filed for emergency, I got plenty of notice of it, so no objections.

THE COURT:  Thank you.  Does anyone else wish to be heard in connection with the emergency application to employ Mr. Magill as CRO?  Okay.  Let me just check the phone line.  Okay.  No one wants to be heard.  Okay.  Okay.

So, before the Court is an emergency application to employ Mr. Magill as Chief Restructuring Officer.  It was filed on October 3rd at Docket Number 205.  The application requests emergency consideration.  For the reasons that I stated earlier, I believe emergency consideration is appropriate under the circumstances, and I'm going to grant emergency consideration of the application.

There's no opposition by any party in interest that has appeared today.  And I would note that it's normally the parties who have appeared regularly in this case had the opportunity to review it; take comfort that the United States Trustee is comfortable with the application. And I appreciate the parties working and speaking to the United States Trustee and the transparency that is apparent in connection with this application.  I've also had the opportunity, the independent duty, to review the application

and the declarations therein.

Before I rule, is there -- I do note, I want to note for the record, that Mr. Magill's engagement letter is attached as Exhibit A and his declaration is attached as Exhibit B here, and I asked Mr. Magill if there were any other additional connections I should be aware of, and he said no.  But he knows that if anything does come up, to let me know.  And so, I'm comfortable granting the application.

Sounds like there's going to be a revised proposed form of order that is submitted to the Court.  As is customary, if you would let my case manager know, and when it's uploaded, we'll take a look at it, and if it looks good, I'll sign it.

MR. BATTAGLIA:  Thank you, Your Honor.  I will revise the order submitted to Mr. Nguyen for his approval before I upload it, and I will advise your case manager when I've done so.

THE COURT:  Sounds great.  Thank you.  Okay.  On the motion to continue and the mediation, how do you all want to handle that?

MR. BATTAGLIA:  I think that the motion to continue is not disputed by any party, and we picked November 16th as a -- I'll say a reset date.  And depending upon where we stand on the mediation, it may get moved again.  But Ms. Freeman has had communications with all the

parties and with Judge Isgur.  So, really, I think it's appropriate to just let her discuss this matter with the Court.

THE COURT:  Let me just ask, the November 16th date, is that the same date that --

MR. BATTAGLIA:  Yes, sir.

THE COURT:  Okay.  So, if I were to move this to the same date, we technically are having further reconsideration motions that would work for all the parties, I'm assuming?

MR. BATTAGLIA:  We might be short on time, but if we actually had to try both of them --

THE COURT:  No, no.  Yeah.  But I could at least have that date, we have it penciled in if anything changes. Yep, I agree.  Okay.  It's an unopposed motion, unless anyone wishes to be heard in connection with this.  Again, upon agreement of the parties, it's unopposed.  I'm going to grant the continuance, and I'll move it to the same date and time on November 16th as we have set the rehearing motions. Everybody's rights are preserved and reserved as appropriate.  Thank you.

Now, turning to proposed mediation.  Okay, let me...

MS. FREEMAN:  Good morning, Your Honor.  Elizabeth Freeman, proposed counsel for Melissa Haselden, the Sub V

Trustee.  A couple of things that we wanted to make certain to be clear to the Court and to all of the parties.

First, we filed a preliminary status report just to provide an update on some of the work that the Trustee has been doing since the hearing on September 20th.  That was filed at Docket Number 227 and under seal at 228.

THE COURT:  Mm hmm.

MS. FREEMAN:  Wanted the Court to know that we provided the unredacted report to all of the parties in the case.

THE COURT:  Thank you.

MS. FREEMAN:  But because of the sensitivities with some of the names, we wanted the item on the docket to remain redacted and under seal.

THE COURT:  I think it's appropriate.

MS. FREEMAN:  Okay.  When the Trustee began her work, she heard what this Court said and understood the mandate and the investigation that included the items that were listed in addition to anything else that would be deemed appropriate.

Since we began, the parties have been incredibly cooperative, and thus far we have been able to meet with most of the parties in the case.  We have received a lot of documents.  We know that we have a lot more documents coming.  We did not want the parties, the Court, or any of

the public to believe that the proposal for mediation was meant to be in any way in lieu of the investigation.  That investigation is ongoing.  It will continue.

We anticipate filing a finance -- an application to employ a financial advisory firm that is undertaking their role in this case at a discount as a service to the parties in this case.  They are fantastic.  We've vetted them with the parties and have either no opposition or active support from the parties with regards to the applicants.  We hope to have that application on file in the next couple of days.

THE COURT:  Okay.

MS. FREEMAN:  We have made a lot of progress, but there is more work to be done.  We expect that the investigation is going to take at least a couple of weeks to get us in a position where we will be able to mediate.  The goal was to bring down the fire in this case from a roar to, you know, a lower simmer, and I think that we've been able to do that.  The people have been approaching the case very productively.  I think that the parties have a mindset where they see potential opportunity for there to be a resolution and hopefully a confirmable plan.

And we believe that having Judge Isgur facilitate those discussions and development of a potential plan would be incredibly helpful for the case.  It would reduce the

costs, the expense, the efficiencies, and the challenges that all of the parties face.

We approached Judge Isgur about the possibility of mediating. We're sensitive to the nuances and the unique position of the parties in this particular case, and he has agreed that he would be willing to serve as a mediator.

The form of order that we utilized adopts the complex procedures and sets them out without any modification. The parties have all had an opportunity to review the form of order, and as you saw, based on the signatures, all agreed to the form of that order.

Now, the timing with regards to when the mediation will take place has not yet been established. I think that at least reaching a preliminary conclusion with regards to a number of the items in the investigation is going to be a gating issue to commencing that mediation. However, we believe that since the concept of the mediation has been put out and the parties have signed on to the concept, that we've been able to move forward much more productively in this case.

And it's for that reason we would ask that the Court enter the order approving Judge Isgur as a mediator at this point in time.

THE COURT: Okay. Thank you. Does anyone wish to be heard in connection with the proposed stipulation and

agreed order for mediation?  Okay.  Let me go online here.

Okay.  I'll note just for the record that the proposed stipulation and agreed order requesting mediation filed at Docket Number 211, it is signed by counsel for Mr. Alex Jones, counsel for FSS, Mr. Battaglia; counsel for PQPR; counsel for the Subchapter V Trustee; Mr. Martin, counsel for Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine; and Mr. Chapple, who is also here, represents other Sandy Hook-related plaintiffs.

Mr. Nguyen, I believe you indicated you had no opposition to the mediation.  I just want to --

MR. NGUYEN:  No opposition, Your Honor.

THE COURT:  Okay.  And the mediation would be before Judge Marvin Isgur.  I'm going to sign the mediation -- I'm going to sign the stip and agreed order.  I'm going to authorize the parties to proceed with mediation before Judge Isgur.

It seems like the Subchapter V Trustee is doing an outstanding job.  And one of the roles of the Subchapter V Trustee is to try to facilitate a consensual plan and perhaps getting everyone in the room.  And it sounds like everyone is going to literally get in the room on this one, which quite frankly is one of the reasons I'm approving it.

Mediation could be useful here, if the parties

think it will be helpful, and I'm willing to allow that process to play out.  I don't know where it goes.  I won't know where it goes.  As everyone I believe knows, I'm not going to -- I will not speak to Judge Isgur about this mediation.  You all will communicate directly with Judge Isgur.  I won't know anything when the mediation is happening, unless somebody here tells me.

So, I mean it when I say somebody can file something and just let me know when the mediation is going to occur.  And maybe we can have a status after the mediation and just kind of see where things stand, just so I can get a better understanding of kind of where things are.  But I'll sign that order and let you all proceed and speak to Judge Isgur, see where it goes.  So, I'll sign that order today.

Let me just ask -- I'm thinking about this out loud.  Are we running upon any Subchapter V deadlines that I need to be aware of that we should think about while we're all here?

MR. BATTAGLIA:  Yes, Your Honor.  The deadline to file a plan of reorganization is coming at the end of the month.  And I'm sort of debating whether it would be more productive to file a plan that can be a template for mediation, or to ask this Court for an extension, and I haven't come to a conclusion.

THE COURT:  I will tell you, my preference is for you...  Why don't we get you a hearing, if that's what you're asking for is additional time, in light of the mediation?

MR. BATTAGLIA:  Yes, sir.

THE COURT:  And we'll take it up before that period expires.  I don't want you wasting time and money putting together a template.  I want you to -- when you file one, if you get to file -- if you file one, when you file it, I want it to be a serious effort.  And I think the standard for extending the time to file a plan in a Subchapter V case, the standard is different.  I'll let someone tell me differently, but I certainly believe that if the parties are going to go to mediation, that sounds like a good idea to give that some time to see where it plays out.

The standard is, you know, for reasons that the Debtor should not be justly held accountable.  And I think -- why don't you just get something short on time but let it -- maybe the amount of time that you have kind of tracks some of these time periods, maybe end of November.

MR. BATTAGLIA:  Yes, sir.

THE COURT:  Seems like that makes sense.

MR. BATTAGLIA:  And so, I'll file a motion and we can -- I'll ask to get it set on the date that we set the cash collateral.  I think that's inside the 90-day window --

THE COURT:  Okay.

MR. BATTAGLIA:  -- on the 26th.  And then we can use the --

THE COURT:  And let my case manager know.

MR. BATTAGLIA:  And I'll talk to the parties about how long we're willing to go.

THE COURT:  If that date is within the window --

MR. BATTAGLIA:  I believe it is.

THE COURT:  -- and if it works, then we will just -- you're authorized to use that date to take it up.  Just let my case manager know it's on file so we can schedule it as well and you can get notice out.

MR. BATTAGLIA:  I'll short and sweet and file it this week.

THE COURT:  Okay.  Alrighty.  Anything else we need to talk about today?

MR. BATTAGLIA:  Not that I'm aware of, Your Honor.

THE COURT:  Okay.  So, I am signing a stip and order approving the mediation.  I'm going to sign a cash collateral order.  Hearings on the rehearing motions are continued to the 16th.

Am I signing -- do I have to sign anything else today?  Just want to make sure I've got my --

MR. BATTAGLIA:  Retention order, but subject to me getting --

THE COURT:  Subject to the -- okay.  And you all are going to let me know?

MR. BATTAGLIA:  Yes.

THE COURT:  Okay.  Anything else we need to talk about today?  Mr. Shelby?  Yes, absolutely.

MR. JORDAN:  Two matters.  One thing, I do want to let the Court know that my client intends to participate actively in the mediation in whatever respect that means.  He will be involved, and I will be involved.

I wanted to point out that the Subchapter V Trustee's counsel has been very active in pushing for discovery and we're going to furnish as much as we can think will be helpful in that process.  That, however, will be marked mediation privilege, and so I have to wait for your order to get entered, and then we'll be furnishing counsel with what she's asking, plus I think more information.

But I want to let the Court know that that's the only reason we would mark it that way is that they have to -- for instance, you have asked a question several times about comments from this podium that Alex Jones withdrew $50 million in the two years before the bankruptcy.  Those (indiscernible) -- in fact, that was in the newspaper before 5:00 of the day it was on -- from this podium.  We're going to produce everything that we have that illustrates, that that was -- that's a total fabrication, that that never

happened.  But it'll be marked mediation privilege.  It won't be redacted.

Anything that appears before your court at this point that establishes what his draws have been over the last 15 years will be redacted because they're critical issues that we don't want to just create questions and problems for him in the public.  But otherwise, they'll be produced fully so that -- I'm hoping that counsel for the Subchapter V Trustee and hopefully the mediator believes that they have enough information from Mr. Alex Jones to be able to reliably participate and hopefully reach some conclusion.

The only other observation I have -- and it's not a -- I haven't filed a motion to this respect and I don't think I will -- but there are a number of plaintiffs lawyers that have appeared in this Court, but no one's filed a 2019. And there's been no disclosure of lawyers saying I represent all the plaintiffs in Connecticut, or I represent all the plaintiffs in Texas.  But no one has filed any of those reports.  And to me, I think that would be an important element for the mediator because the parties that show up hopefully will have some specific pedigree that will help to move the mediation along.  But it could be quite a volume of plaintiffs lawyers showing up if there is no restriction on who is representing whom and how that should be handled.

So, I'm just making that observation, and it may be that the lawyers themselves respond. But from my perspective, that seems to me to be something that the person most in charge seems to be so far, Ms. Freeman, considers asking the Court to require that to be filed, at least by the day of the mediation, so everyone will know.

THE COURT: Okay.

MR. JORDAN: Thank you.

THE COURT: One question I have, since I'm here, and I really try my very best to avoid reading anything outside of the issues that are before me as it relates to those things. What is the status of the Connecticut litigation? Is it...?

MR. BATTAGLIA: The case has gone to the jury, Your Honor.

THE COURT: Oh, okay.

MR. BATTAGLIA: So, they haven't come back. And Mr. Chapple can elaborate.

MR. CHAPPLE: That's correct, Your Honor. It went to the jury late last week and they were off on Monday. They deliberated yesterday and again today.

THE COURT: Okay.

MR. CHAPPLE: After the verdict comes back, the judge will take up, I believe, punitive damages and attorney's fees. And that's in the Judge's Court in

Connecticut, is my understanding.

THE COURT:  Okay.  So that process is still continuing?

MR. CHAPPLE:  Correct, Your Honor.

THE COURT:  Okay.  That's all I needed to know.  I was just curious, as an update.

Okay.  I will -- the orders that I can sign, I will sign right away.  We'll get this -- we'll get them out and I'll get them on file.

Thanks, everyone.  Have a good day.

CLERK:  All rise.

(Whereupon these proceedings were concluded at 10:52 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from

the electronic sound recording of the proceedings in the

above-entitled matter.

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  November 25, 2024